JOHN W. DILLON
Gatzke Dillon & Ballance LLP
State Bar No. 296788
  2762 Gateway Road
  Carlsbad, California 92009
  Telephone: (760) 431-9501
  Fax: (760) 431-9512
  E-mail:  jdillon@gdandb.com
*Attorney for Plaintiffs*

XAVIER BECERRA
Attorney General of California
STEPAN A. HAYTAYAN
Supervising Deputy Attorney General
JENNIFER E. ROSENBERG
Deputy Attorney General
State Bar No. 275496
  300 South Spring Street, Suite 1702
  Los Angeles, CA  90013
  Telephone:  (213) 269-6617
  Fax:  (916) 731-2124
  E-mail:  Jennifer.Rosenberg@doj.ca.gov
*Attorneys for Defendants Xavier Becerra, in
his official capacity as Attorney General of
the State of California, and Brent E. Orick,
in his official capacity as Acting Director of
the Department of Justice Bureau of
Firearms*

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MATTHEW JONES, et al.,**<br><br>Plaintiffs,<br><br>**v.**<br><br>**XAVIER BECERRA, in his official capacity as Attorney General of the State of California, et al.,**<br><br>Defendants. | 3:19-cv-01226-L-AHG<br><br>**JOINT CASE MANAGEMENT STATEMENT** |

On August 29, 2019 and September 11, 2019, counsel for Plaintiffs Matthew Jones, et al. ("Plaintiffs") and Defendants Xavier Becerra (in his official capacity as Attorney General of the State of California) and Brent E. Orick (in his official capacity as Acting Director of the Department of Justice Bureau of Firearms) ("Defendants") held a conference in accordance with Federal Rule of Civil Procedure 26(f) (Rule 26(f)), Magistrate Judge Barbara L. Major's August 22, 2019 Notice and Order for Early Neutral Evaluation Conference and Case Management Conference (ECF No. 6, "ENE Order"), and the Chambers Rules for Civil Cases of Magistrate Judge Major.  During that conference, the parties discussed the matters required by Rule 26(f), the Chambers rules, and orders of this Court.

Subsequently, on September 17, 2019, this case was reassigned from Magistrate Judge Major to Magistrate Judge Allison H. Goddard pursuant to a Transfer Order. ECF No. 7.  Also on September 17, 2019, Magistrate Judge Goddard rescheduled the previously set combined ENE and Rule 16 conference for October 9, 2019.  ECF No. 9.  That same day, the parties filed a Joint Motion seeking excusal from the ENE generally, or in the alternative, excusal from the in-person party attendance requirement, in light of the nature of the claims and the lack of any possibility of settlement.  ECF No. 8.  On September 18, 2019, Magistrate Judge Goddard found that the parties' shared position was well-founded with regard to settlement possibilities, and accordingly granted the parties' Joint Motion and vacated the ENE. ECF No. 10.  Magistrate Judge Goddard's order also instructed the parties to file this

1

Rule 16 report in place of the joint discovery plan previously ordered by Magistrate Judge Major.  ECF No. 10.  Pursuant to Magistrate Judge Goddard's order granting the parties' Joint Motion, the parties again met and conferred by conference call on September 23, 2019 pursuant to Rule 26(f).

The parties, through their respective counsel, submit this Joint Case Management Statement as directed by this Court's September 18, 2019 Order.  ECF No. 10.

## I.  JURISDICTION AND SERVICE

This Court has subject-matter jurisdiction over Plaintiffs' claims in this action under 28 U.S.C. § 1331, because the action arises under the Constitution and laws of the United States; and, thus, raises federal questions.  The Court also has jurisdiction under 28 U.S.C. § 1343 and 42 U.S.C. § 1983, because this action seeks to redress the deprivation, under color of the laws and statutes of the State of California and political subdivisions thereof, of rights, privileges, and immunities secured by the U.S. Constitution and laws.

Plaintiffs' claims for declaratory and injunctive relief are authorized under 28 U.S.C. §§ 2201 and 2202, and 42 U.S.C. § 1983; and their claim for attorneys' fees is authorized under 42 U.S.C. §1988.  Additionally, venue is proper in this Court under 28 U.S.C. § 1391(b)(1) and (b)(2).  All parties have been served with Plaintiffs' First Amended Complaint.

## II.   CHRONOLOGY OF FACTS AND FACTUAL ISSUES IN DISPUTE

**Plaintiffs' Statement**

On September 28, 2018, then Governor Edmund G. Brown, Jr. signed into law Senate Bill 1100 ("SB 1100", 2017-2018 Reg. Sess.).  SB 1100 amended Penal Code section 27510 to increase the State's minimum age for firearm purchase and possession, from 18-to-21 years of age.  SB 1100 became effective January 1, 2019.

Prior to enactment of SB 1100, existing California law prohibited the sale or transfer of a handgun, except as exempted, to any person under the age of 21.  However, then-existing California law also allowed a person at least 18 years of age to buy or transfer a firearm that is not a handgun (e.g., shotguns, rifles).

With enactment of SB 1100, however, this prohibition applies to all firearm transfers, and all types of firearms for ordinary law-abiding individuals ages 18-to-20 years old ("Young Adults"), except for a few irrelevant and inapplicable statutory exemptions found in the new law.  For example, Penal Code section 27510, as amended, states the law "does not apply to" the sale, supplying, delivery, or giving possession or control of a firearm to (i) a person 18 years of age or older that holds a valid hunting license, (ii) an active peace officer that is 18 years of age or older, (iii) an active federal officer or law enforcement agent that is 18 or older, (iv) a reserve peace officer that is 18 or older, (v) an active member in the U.S. military that is 18 or older, and (vi) a person honorably discharged from the military that is 18 or older.

Since SB 1100 when into effect, the individual Plaintiffs Jones, Furrh, and Yamamoto have each been denied the ability to purchase and/or transfer a firearm due solely to their age.  Additionally, Plaintiffs with federally licensed gun stores and/or gun ranges (Plaintiffs PWG, Beebe Arms, and NCSC), have been forced to deny otherwise lawful individuals the ability to purchase, rent, transfer, or acquire firearms due solely to the individual's age. They also have been forced to prevent Young Adults from attending their firearm classes, renting and possessing firearms, and using their gun ranges.  Further, the institutional Plaintiffs (Plaintiffs FPC, FPF, CGF, and SAF) have Young Adult members and members who will eventually turn 18, that have been denied, or will be denied the ability to purchase, transfer, or acquire any firearm in California for self-defense and other lawful purposes.

Plaintiffs allege that Penal Code section 27510 bans the purchase, sale, transfer, and acquisition of any firearm by otherwise lawful Young Adults; and thus, violates the Second Amendment rights of Plaintiffs' and other similarly situated Young Adults.  On July 1, 2019, Plaintiffs filed a complaint in this Court. On July 30, 2019, Plaintiffs' filed their First Amended Complaint. Plaintiffs' First Amended Complaint was served August 1, 2019.

**Defendants' Statement**

On September 28, 2018, then Governor Edmund G. Brown Jr. signed into law Senate Bill 1100 ("SB 1100", 2017-2018 Reg. Sess.).  As relevant here, SB 1100 amended Penal Code § 27510 to increase the State's minimum age for the sale or

4

transfer of long guns by a licensed firearms dealer in California from 18 years of age to 21 years of age.  More specifically, SB 1100 amended Section 27510 to prohibit licensed firearms dealers from selling or otherwise transferring any firearm to any person under the age of 21, with several exceptions described below.  Section 27510, as amended by SB 1100, restricts licensed firearms dealers under certain circumstances; it is by no means a ban on possession of firearms by Young Adults aged 18 to 20.  SB 1100's amendments to Section 27510 became effective January 1, 2019.

Prior to the enactment of SB 1100, existing California law prohibited the sale or transfer of a handgun by a licensed firearms dealer, except as exempted, to any person under the age of 21.  Prior to January 1, 2019, California law permitted licensed firearms dealers to sell or transfer a firearm that is not a handgun, such as a shotgun or rifle, to a person 18 years of age or older.

With enactment of SB 1100, however, the limitation on a licensed firearm dealer's ability to sell or otherwise transfer firearms to persons aged 18-20 ("Young Adults") now applies to all firearms transfers, and all types of firearms, except as provided in statutory exemptions.  Section 27510, as amended by SB 1100, expressly states that it does not prohibit licensed firearms dealers from selling, supplying, delivering, or giving possession or control of a firearm to a person 18 years of age or older who:  (i) "possesses a valid, unexpired hunting license issued by the Department of Fish and Wildlife"; (ii) is "[a]n active peace officer . . . who is authorized to carry

5

a firearm in the course and scope of his or her employment"; (iii) is "[a]n active federal officer or law enforcement agent who is authorized to carry a firearm in the course and scope of his or her employment"; (iv) is "[a] reserve peace officer, as defined in Section 832.6, who is authorized to carry a firearm in the course and scope of his or her employment as a reserve peace officer"; (v) is "[a] person who provides proper identification of his or her active membership in the United States Armed Forces, the National Guard, the Air National Guard, or active reserve components of the United States"; or (vi) is "[a] person who provides proper identification that he or she is an honorably discharged member of the United States Armed Forces, the National Guard, the Air National Guard, or the active reserve components of the United States." Cal. Pen. Code § 27510(b)(1) & (2).

Defendants deny that Section 27510 bans all purchase, sale, transfer, or acquisition of any firearm by "otherwise lawful Young Adults." Defendants further deny that the Second Amendment rights of any Plaintiff in this matter are violated by SB 1100's amendments to Section 27510.

## III.   PARTIES BRIEF STATEMENTS ON DISPUTED POINTS OF LAW

### Plaintiffs' Statement

Plaintiffs allege that the Second Amendment to the U.S. Constitution provides, the people with the right to keep and bear arms. U.S. Const. amend. II.

The Second Amendment protects the people's right to acquire, keep, bear, and possess firearms for all lawful purposes, including but not limited to self-defense. The Second Amendment "guarantee[s] the individual right to possess and carry" firearms, and "elevates above all other interests the right of law-abiding responsible citizens to use arms in defense of hearth and home." *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008).

Once an individual turns 18 years old in this country, he or she is considered a legal adult free to exercise fundamental constitutional rights pursuant to the U.S. Constitution. Additionally, individuals 18 years and older are considered adults for almost all purposes. For example, at 18 years old, U.S. citizens can (i) vote, (ii) fully exercise their freedom of speech, (iii) receive the full protections under the 4th, 5th, and 6th Amendments, (iv) enter into contracts, and (v) serve in the United States military.

Indeed, male citizens over 18 years of age are designated members of the militia pursuant to federal statute, 10 U.S.C. § 246(a), and may be selected and inducted for training and service into the United States armed forces, 50 U.S.C. § 3803(a). As such, they are eligible to serve in the military and die for their country.

The ordinary definition of the militia "[i]s all able-bodied men." *Heller*, 554 U.S. at 707 (Breyer, J. dissenting). The Supreme Court in *Heller* recognized that through Congress' plenary power, it organized all able-bodied men between 18 and 45 as part of the militia in the first Militia Act. *Heller*, 554 U.S. at 596. Thus,

7

the Supreme Court recognized 18-to-20-year-olds as part of the militia; and as such, they necessarily have the right to keep and bear arms.  Further, as affirmed in *Heller*, the right to keep and bear arms extends beyond the militia, reserving an *individual* right to keep and bear arms for all lawful purposes, "most notably for self-defense within the home."  *McDonald v. City of Chicago*, 561 U.S. 742, 780 (2010).

Penal Code section 27510 violates Plaintiffs' core Second Amendment right to keep and bear arms for self-defense and other lawful purposes.  Because section 27510 is a categorical prohibition on Young Adults' ability to purchase and acquire firearms, the constitutionality of such a law does not require a two-step scrutiny analysis, but rather a historical analysis of the text, history, and tradition of the Second Amendment. This analysis shows that age-based firearms restrictions have been virtually non-existent until most recently and that Young Adults have always held Second Amendment rights to keep and bear arms. Accordingly, section 27510 significantly infringes on Plaintiffs' Second Amendment Rights and should be enjoined in its entirety.

**Defendants' Statement**

Section 27510, as amended by SB 1100, is an appropriate exercise of state power to regulate the sale and transfer of firearms that satisfies constitutional scrutiny.  "To evaluate post-*Heller* Second Amendment claims, the Ninth Circuit, consistent with the majority of our sister circuits, employs a two-prong test: (1) the court 'asks whether the challenged law burdens conduct protected by the Second

8

Amendment'; and (2) if so, what level of scrutiny should be applied."  *Fyock v. Sunnyvale*, 779 F.3d 991, 996 (9th Cir. 2015) (quoting *United States v. Chovan*, 735 F.3d 1127, 1136 (9th Cir. 2013)).

As an initial matter, it is likely that SB 1100's age-based limitation on sale of long guns to Young Adults aged 18-20 does not affect conduct within the ambit of the Second Amendment at all, and thus Plaintiffs' challenge to SB 1100 must fail at step one.  Courts addressing such age-based restrictions on the rights of 18-20 year-olds to purchase or carry firearms have reasoned that such

> statutes enacted to safeguard the public using age-based restrictions on access to and use of firearms are part of a succession of "longstanding prohibitions," *Heller*, 554 U.S. at 626, 128 S.Ct. 2783, that are likely outside the scope of the Second Amendment, because such restrictions are "consistent with" both the "longstanding tradition of targeting select groups' ability to access and to use arms for the sake of public safety" and the "longstanding tradition of age-and safety-based restrictions on the ability to access arms."  [*Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 203 (5th Cir. 2012) (*BATF*), *cert. denied*, 571 U.S. 1196 (2014))].

*Nat'l Rifle Ass'n of Am., Inc. v. McCraw*, 719 F.3d 338, 347 (5th Cir. 2013); *see also BATF*, 700 F.3d at 204 ("Modern restrictions on the ability of persons under 21 to purchase handguns—and the ability of persons under 18 to possess handguns—seem, to us, to be firmly historically rooted," particularly in light of historical evidence showing the age of majority at the founding was 21, even though younger individuals could serve in militias).

Even if Section 27510's new limitations on the transfer of long guns to 18-20

year olds do address conduct within the scope of Second Amendment protection, the law would survive constitutional scrutiny at step two.  "The Supreme Court has made clear that '[l]ike most rights, the right secured by the Second Amendment is not unlimited.'"  *Horsley v. Trame*, 808 F.3d 1126, 1130 (7th Cir. 2015) (quoting *Heller*, 554 U.S. at 626).  Courts have consistently applied intermediate scrutiny in the context of Second Amendment challenges to statutory limitations on Second Amendment conduct where—as here—such limitations affect only a "discrete category" (18-20 year-olds) and do not amount to a total ban having the effect of "disarm[ing] an entire community."  *BATF*, 700 F.3d at 205; *see also*, *e.g.*, *Horsley v. Trame*, 61 F. Supp. 3d 788, 793 (S.D. Ill. 2014), *aff'd*, 808 F.3d 1126 (7th Cir. 2015).  That level of scrutiny requires: "(1) the government's stated objective to be significant, substantial, or important; and (2) a reasonable fit between the challenged regulation and the asserted objective."  *Fyock*, 779 F.3d at 1000 (quoting *Chovan*, 735 F.3d at 1139).

The government has important and compelling interests in promoting public safety and preventing crime and gun violence.  *See*, *e.g.*, *United States v. Salerno*, 481 U.S. 739, 749 (1987); *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 768 (1994); *Fyock*, 779 F.3d at 1000; *Chovan*, 735 F.3d at 1135.  Section 27510's limitation on transfer of long guns to Young Adults between the ages of 18 and 20, except as expressly permitted, furthers those interests by promoting firearm safety training—either by confirming training and supervision as a member of law

10

enforcement, the armed forces or the reserves, or by confirming training by way of firearms education under the hunting licensing process.

In addition, raising the minimum age for purchasing long guns to 21 was necessary in light of the increasing incidence of gun violence committed by youth and Young Adults in America's schools and other public places. Under California law, the minimum age requirement to purchase a handgun is 21 years of age. Cal. Pen. Code § 27510(a). However, prior to the implementation of SB 1100 in January 2019, a long gun could be transferred to a person as young as 18. SB 1100 appropriately harmonized California's gun laws by restricting long gun transfers by licensed dealers to persons under 21 years of age.

Moreover, SB 1100's amendments to Section 27510 provide *ample* avenues for responsible adults between the ages of 18 and 20 to purchase or receive long guns by transfer. The new limitation imposed by SB 1100 is *solely* a limitation promoting safety and responsible firearm ownership and use by way of a limitation on who licensed dealers may sell or transfer to, not an outright ban. Rather, as described above, SB 1100 permits the sale, rental, delivery, or transfer of long guns to those with valid, unexpired hunting licenses (with prerequisite training), Young Adults currently serving in law enforcement or the armed forces, and Young Adults who have been honorably discharged from the armed forces or reserves. Cal. Pen. Code § 27510(b)(1) & (2). Those Young Adults between the ages of 18 and 20 who wish to purchase long guns and who do not currently or have not previously served in law

enforcement, the armed forces, or the reserves thus may become eligible to purchase long guns by simply taking a hunter education course and paying a minimal fee for a hunting license.   Thus, SB 1100's additions to Section 27510 represent narrow, conditional limitations appropriately aimed at ensuring safety.

Because there is a "reasonable fit" between the challenged amendments to Section 27510 and the State's important interests, the law satisfies the applicable level of scrutiny.  *Chovan*, 735 F.3d at 1139.

### IV.   MOTIONS

Plaintiffs and Defendants previously filed a joint motion seeking excusal from the mandatory ENE Conference originally scheduled for September 27, 2019.  ECF No. 8.  Because Plaintiffs challenge the constitutionality of a state law and are seeking solely declaratory and injunctive relief, Magistrate Judge Goddard found the parties' shared position regarding the lack of any possibility of settlement to be well-founded and excused the parties from the ENE conference.  ECF No. 10.  No other motions have been filed in this case as of October 1, 2019.

Plaintiffs intend to file a motion for preliminary injunction.  This motion will be filed the week of October 1, 2019.  The parties have previously met and agreed that they will file a joint stipulation seeking to amend the briefing schedule and hearing date for the preliminary injunction motion after the motion is filed.  The parties will meet and confer further on an agreed briefing and hearing schedule, and file their joint stipulation shortly after Plaintiffs file their motion.

## V.   RULE 26(F) DISCOVERY ISSUES

### A.   Rule 26(a) Disclosures (FRCP 26(f)(3)(A))

Pursuant to the Magistrate Judge Goddard's Order on September 18, 2019, the exchange of initial disclosures shall occur on or before October 7, 2019.  The parties do not anticipate any changes to the timing, form, or requirement for such disclosures under Rule 26(a).

### B.   Anticipated Scope of Discovery (FRCP 26(f)(3)(B))

In accordance with Federal Rule 26(f)(3)(B), the parties agree that discovery will be conducted on the allegations and claims contained with Plaintiffs' First Amended Complaint (ECF No. 3, "FAC") and the denials and defenses raised in Defendants' Answer.  ECF No. 5.  The parties plan on stipulating to electronic service of discovery to the extent possible.

The parties intend to propound written discovery in the form of interrogatories, requests for production, and requests for admissions as authorized by the Federal Rules.  The parties also intend to conduct depositions of certain expert and lay witnesses, as they become known.  The parties plan to wait to conduct discovery until after resolution of Plaintiffs' anticipated preliminary injunction motion, although all parties reserve the right to alter that plan should the need arise in the course of the litigation.

### **Plaintiffs**

Plaintiffs currently intend to serve each Defendant with written discovery,

including interrogatories, requests for production of documents, and requests for admission. Plaintiffs also intend to take discovery concerning the nature of the fit of the challenged statute with the purported justifications, as well as the scope and impact the law has on the ability of law-abiding Young Adults to acquire, possess, and use constitutionally-protected firearms for self-defense and other lawful purposes. Plaintiffs' written discovery will also concern information relevant to the factual basis, if any, for the defenses, affirmative defenses, and legal theories in Defendants' Answer (ECF No. 5), any assertions made in opposition to Plaintiffs' anticipated preliminary injunction motion.

Plaintiffs also intend to notice the depositions of some or all of the Defendants, including any individual(s) who submit declarations in opposition to Plaintiffs' anticipated preliminary injunction motion, Defendants' person most knowledgeable concerning these topics, and any expert witness(es) that Defendants may designate, in order to: (1) test the factual allegations and statements in Defendants' Answer and/or those made in opposition of Plaintiffs anticipated preliminary injunction motion; and (2) discover evidence relevant to the claims and defenses asserted in this case.  Plaintiffs anticipate that the need for further discovery and additional topics may be identified during the course of the discovery process.

### Defendants

Defendants currently intend to serve each Plaintiff with written discovery, including interrogatories, requests for production of documents, and requests for

14

admission, relevant to the factual basis, if any, for the allegations and legal theories in the FAC, as well as any assertions made in support of Plaintiffs' anticipated motion for a preliminary injunction.  Defendants also intend to notice the depositions of some or all of the Plaintiffs, including Rule 30(b)(6) depositions of the plaintiff businesses and nonprofit organizations, any individual(s) who submit declarations in support of Plaintiffs' anticipated motion for a preliminary injunction, and any expert witness(es) that Plaintiffs may designate, in order (1) to test the factual allegations in Plaintiffs' FAC and/or those made in support of Plaintiffs' anticipated motion for preliminary injunction, (2) to discover evidence relevant to the claims and defenses asserted in this action, and (3) to examine standing issues.  The Attorney General anticipates that the need for further discovery and additional topics may be identified during the course of the discovery process.

## C.   Electronically Stored Information (FRCP 26(f)(3)(C))

In accordance with Federal Rule 26(f)(3)(C) and Magistrate Judge Goddard's September 18, 2019 Order, the parties have reviewed the Checklist for Rule 26(f) Meet and Confer Regarding Electronically Stored Information ("ESI") and have met and conferred regarding the preservation and discovery of ESI.  As guiding principles, the parties agree to meet and confer in good faith concerning issues that arise with respect to the disclosure or discovery of electronically stored information, and to use their best efforts to produce electronically stored information in the format

preferred by the requesting party, including reasonable requests for production of such information with metadata intact.

Counsel for the parties discussed the range of creation or receipt dates for any ESI to be preserved, and Plaintiffs agree to preserve any ESI relating to the issues in this matter going back to at least January 1, 2018 and extending to the present. Counsel also discussed the type of ESI data and sources which may be the subject of discovery, and agreed that ESI possibly the subject of discovery includes ESI on Plaintiffs' computers, servers, and telephones, including e-mails, text messages, and other types of ESI. The parties have not yet identified the number or identities of all custodians who may possess relevant ESI, and they anticipate that the parties will continue discussions regarding ESI and other discovery issues throughout the course of the litigation.

The parties do not anticipate needing to conduct discovery in phases.

**D.    Privilege Issues (FRCP 26(f)(3)(D))**

In accordance with Federal Rule 26(f)(3)(D), the parties have discussed privilege and protection issues. The parties agree that all privileges are in full force and effect. The parties further agree that any privileged information that is inadvertently disclosed shall be subject to a clawback if invoked by the disclosing party. In the event one of the parties believes that a protective order is necessary, the parties agree to meet and confer and, if they both agree that a protective order is necessary, negotiate a stipulated protective order.

### E.    Changes to Discovery Limitations (FRCP 26(f)(3)(E))

With one exception, the parties do not anticipate any changes to the rules on discovery limitations and adopt the default limitations on discovery imposed by the Federal Rules of Civil Procedure, local rules, and applicable case law.  Given the number of Plaintiffs, the likelihood that expert testimony will be needed in the action, and the unknown number of declarants or other potential witnesses on which Plaintiffs may rely to support their anticipated motion for a preliminary injunction, Defendants may need to exceed 10 depositions, which would require either a stipulation or court approval under Federal Rule of Civil Procedure 30.  In addition, the parties reserve the right to seek leave of Court to exceed any other discovery limitations if necessary.

### F.    Other Discovery & Scheduling Orders (FRCP 26(f)(3)(F))

In accordance with Federal Rule 26(f)(3)(F), the parties have discussed the need for other discovery or scheduling orders under Rule 26(c), 16(b), and 16(c). The parties do not currently request any other orders, but they may seek additional orders as discovery proceeds and if the need arises.

## VI.    ADDITIONAL DISCOVERY ISSUES

### A.    Amendment of Pleadings

Plaintiffs anticipate the possibility of up to two further amendments of the pleadings.

17

First, the entity formerly known as The Calguns Foundation, a plaintiff in this action, has undergone a name change and its new name is The Cal Gun Rights Foundation.  Plaintiffs may submit a request to amend the pleadings to memorialize this name change.  Defendants do not oppose an amendment or correction for this purpose.

Second, on September 13, 2019, Senate Bill 61 (SB 61), passed in the Senate and is awaiting the Governor's signature or veto.  This bill would amend California Penal Code sections, including, Penal Code sections 27510, 27540, and 27590.  Because SB 61, if signed into law, would alter the specific Penal Code section challenged in this case, Plaintiffs may be forced to amend the pleadings to reflect current law.  Defendants have not yet determined whether they would stipulate to or oppose amendment of the pleadings.

**B.   Protective Order**

As described above, the parties do not currently anticipate the need for any protective orders for the exchange of information.  However, in the event a party believes that a protective order is necessary, the parties agree to meet and confer and, if they both agree that a protective order is necessary, negotiate a stipulated protective order.  Each party also reserves the right to seek a protective order regardless of whether any other party declines to stipulate to entry of such an order.

### C.   Procedures for Claiming Privilege

The parties agree to the following procedure for asserting claims of privilege in response to discovery requests:

The party asserting privilege must serve a privilege log within a reasonable time from service of responses.  The parties agree that the privilege log shall include all information required by Federal Rules of Civil Procedure 26(b)(5) and 34(b)(2)(C).

### D.   Evidence Preservation

As discussed above, the parties have discussed issues relating to the preservation of evidence.  Counsel for Plaintiffs have instructed Plaintiffs to preserve evidence, including paper and electronic evidence.  The parties do not anticipate any area of disagreement, but reserve the right to seek an order of the Court should any disagreements or issues arise in the course of the litigation.

### E.   Electronic Discovery

As discussed above, the parties agree to meet and confer in good faith concerning issues that arise with respect to the disclosure or discovery of electronically stored information, and to use their best efforts to produce electronically stored information in the format preferred by the requesting party, including reasonable requests for production of such information with metadata intact.  The parties do not anticipate any issues arising regarding electronically stored information that may not be reasonably accessible, but agree to meet and confer in

good faith concerning resolving any such issues that may arise.  The parties reserve the right to seek an order of the Court if they are unable to resolve any such issues.

## F.    Discovery

No discovery has been taken to date, and the parties have not identified any discovery disputes at this time.  Plaintiffs plan to file a preliminary injunction motion, and both Plaintiffs and Defendants plan to wait to conduct discovery until after resolution of such motion.  All parties reserve the right to alter that plan should the need arise in the course of the litigation.

As discussed above, the parties do not anticipate any changes to the rules on discovery limitations and adopt the default limitations on discovery imposed by the Federal Rules of Civil Procedure, local rules, and applicable case law, except to the extent that Defendants may seek to take more than 10 depositions in light of the number of Plaintiffs in this action, the likelihood that the parties will present expert testimony in support of and opposition to Plaintiffs' claims and Defendants' defenses, and the unknown number of declarants or other potential witnesses on which Plaintiffs may rely to support their anticipated motion for a preliminary injunction.

## G.    Related Cases

There are no related cases pending before another judge of this Court or before another court or administrative body.

**H.   Relief Sought**

Plaintiffs seek solely declaratory and injunctive relief.  No damages are being sought.

**I.   Settlement**

All parties agree that because Plaintiffs' challenge the constitutionality of a State law and because the claims are solely for declaratory and injunctive relief, there is no possibility of settlement in this case. No other settlement discussions have taken place.

**J.   Consent to Magistrate Judge for all Purposes**

Plaintiffs and Defendants do not consent to have a Magistrate Judge conduct all further proceedings, including trial and entry of judgment.

**K.   Arbitration, Special Master, or the Judicial Panel on Multidistrict Litigation**

All parties agree that because Plaintiffs challenge the constitutionality of a state law and because the FAC seeks solely declaratory and injunctive relief, this case is not suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**L.   Narrowing of Issues**

The parties have met and conferred regarding the possibility of narrowing of issues by agreement or motion, and do not believe such narrowing is possible at this time. At this time, there is no indication of any possibility to expedite the presentation

21

of evidence at trial (e.g., through summaries or stipulated facts).  Nor are there currently any requests to bifurcate issues, claims, or defenses.  The parties agree to discuss any matters in good faith if they should arise in the future.

## M.   Scheduling

In light of Plaintiffs' anticipated preliminary injunction motion and due to the likelihood that any decision on that motion will be appealed, the parties believe that it is premature to set a schedule for discovery and dispositive motion deadlines.  Nonetheless, in accordance with the Court's ENE Order, the parties propose a schedule below.

As context for the proposed schedule, the parties note that they expect that this case may be resolved at the summary judgment stage.  The parties also expect that experts will play an important role in this case.  At this point, Defendants anticipate retaining at least one or two experts, and possibly more.  Having litigated similar claims before, the parties anticipate that retaining experts, having those experts prepare reports, reviewing the other side's expert reports, and scheduling and taking expert depositions will likely take longer than typical discovery schedules.   In addition, Defendants believe that the number of Plaintiffs could cause fact discovery to take longer than in a typical case.

Accordingly, the parties propose that the Court set discovery and other case deadlines farther out than in a typical case, and that the dates correspond to the resolution of Plaintiffs' anticipated preliminary injunction motion.  Assuming, as

discussed above, that the preliminary injunction motion will be heard and resolved in January or February 2020, the parties propose the following deadlines:

- Completion of fact discovery: **July 23, 2020**

- Designation and service of expert reports: **September 10, 2020**

- Supplemental designation and service of rebuttal expert witness reports: **October 12, 2020**

- Completion of expert discovery: **November 9, 2020**

- Date by which dispositive motions shall be filed: **January 22, 2021**

- Mandatory settlement conference: The parties believe this case poses unique barriers to settlement. They anticipate requesting relief from any mandatory settlement conference. In the event the Court denies that request, the parties request permission to meet and confer after any decision on their anticipated cross-motions for summary judgment to propose a time for a mandatory settlement conference, rather than setting any schedule for such conference at this stage.

- Final pretrial conference: **March 25, 2021**

- Trial: **April 26, 2021**

### N.   Professional Conduct

All attorneys of record for the parties have reviewed Civil Local Rule 83.4 on Professionalism and agree to abide by the Court's Code of Conduct.

**O.   Trial**

All parties agree that this case will by tried to the Court.  Until further discovery is completed, the parties cannot predict the expected length of the trial.

**P.   Disclosure of Non-Party Interested Entities or Persons**

If applicable, Plaintiff entities/organizations will file a Notice of Party with Financial Interest required by CivLR 40.2. 3.

**Q.   Class Actions and Patent Cases**

This matter is not a class action or a patent-related case.

**R.   Miscellaneous and Other Matters**

The parties do not anticipate any other issues at this time.

October 1, 2019                    Respectfully submitted,

                                   Gatzke, Dillon & Ballance LLP


                                   By: _____
                                        JOHN DILLON
                                        *Attorney for Plaintiffs*

October 1, 2019                    XAVIER BECERRA
                                   Attorney General of California
                                   STEPAN A. HAYTAYAN
                                   Supervising Deputy Attorney General


                                   By: _____
                                        JENNIFER E. ROSENBERG
                                        Deputy Attorney General
                                        *Attorneys for Defendants Xavier*
                                        *Becerra, in his official capacity as*

24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Attorney General of the State of California, and Brent E. Orick, in his official capacity as Acting Director of the Department of Justice Bureau of Firearms*