John W. Dillon (Bar No. 296788)
Gatzke Dillon & Ballance LLP
2762 Gateway Road
Carlsbad, California 92009
Telephone: (760) 431-9501
Facsimile: (760) 431-9512
E-mail: jdillon@gdandb.com

Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW JONES; THOMAS FURRH; KYLE YAMAMOTO; PWGG, L.P. (d.b.a. POWAY WEAPONS AND GEAR and PWG RANGE); NORTH COUNTY SHOOTING CENTER, INC.; BEEBE FAMILY ARMS AND MUNITIONS LLC (d.b.a. BFAM and BEEBE FAMILY ARMS AND MUNITIONS); FIREARMS POLICY COALITION, INC.; FIREARMS POLICY FOUNDATION; CALIFORNIA GUN RIGHTS FOUNDATION; and SECOND AMENDMENT FOUNDATION, | Case No.: 3:19-cv-01226-L-AHG |
| | Hon. M. James Lorenz and Magistrate Judge Allison H. Goddard |
| Plaintiffs, | **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |
| v. | Complaint Filed: July 1, 2019 Second Amended Complaint Filed: November 8, 2019 |
| XAVIER BECERRA, in his official capacity as Attorney General of California et al., | Date:  Monday, December 16, 2019 Time: 10:30 a.m. Place: Department 5B (5th Floor) |
| Defendants. | No oral argument should be heard unless ordered by the Court |

# TOPICAL INDEX

I.      INTRODUCTION ........................................................................... 1

II.     THE CHALLENGED CALIFORNIA AGE-BASED
        GUN BAN ...................................................................................... 7

III.    FACTUAL BACKGROUND .......................................................... 9

IV.     LEGAL STANDARD ................................................................... 11

V.      ARGUMENT – LIKELIHOOD OF SUCCESS ............................ 11

        A.     California's Age-Based Gun Ban Cannot Stand
               under the Textual and Historical Analysis Mandated by *Heller* ..... 11

        B.     Under *Heller*, California's Age-Based Gun Ban Abridges
               Young Adults' Second Amendment Right ...................................... 14

        C.     California's Age-Based Gun Ban Flunks Strict
               Scrutiny and Intermediate Scrutiny ............................................. 17

               1.     Section 27510 is not "Substantially Related" to the
                      State's Interests, nor a "Reasonable Fit" ......................... 18

                      a.     "Mass School Shootings" .................................. 19

                      b.     "Maturity, Impulsive, Reckless" ...................... 20

                      c.     "Reduce Crime/Gun Violence" ......................... 22

                      d.     "Disproportionality" ......................................... 23

                      e.     Section's 27510's So-Called "Exemptions" .... 24

        D.     The Other Preliminary Injunction Factors Warrant Relief ............ 27

VI.     CONCLUSION ............................................................................ 30

1

## TABLE OF AUTHORITIES

2

**Page**

**Federal Cases**

3

*Alliance for the Wild Rockies v. Cottrell*

4
632 F.3d 1127 (9th Cir. 2011) .................................................. 29

5
*Am. Trucking Assn's, Inc. v. City of Los Angeles*
559 F.3d 1046 (9th Cir. 2009) .................................................. 11

6

7
*Ashcroft v. Free Speech Coal.*
(2002) 535 U.S. 234.................................................................. 24

8
*Bauer v. Becerra,*

9
858 F.3d 1216 (9th Cir. 2017) .................................................... 5

10
*Binderup v. Attorney General*
836 F.3d 336 (3d Cir. 2016) ..................................................... 16

11
*Chalk v. U.S. Dist. Ct.* (*Orange Cty. Superintendent of Schools*),

12
840 F.2d 701 (9th Cir. 1998) .................................................... 11

13
*Cf. Forsyth County v. Nationalist Movement*

14
(1992) 505 U.S. 123.................................................................. 26

*Cf. Rodriguez v. United States*

15
575 U.S. __ (2015).................................................................... 26

16
*Cf. Wrenn v. D.C.*

17
864 F.3d (D.C. Cir. 2017)............................................................ 5

18
*District of Columbia v. Heller*
(2008) 554 U.S. 570.........................................................*passim*

19
*Edenfield v. Fane*

20
(1993) 507 U.S. 761.......................................................... 18, 24

21
*Elrod v. Burns*
(1976) 427 U.S. 347.................................................................. 27

22

23
*Ezell v. Chicago*
651 F.3d 684 (7th Cir. 2011) ................................................... 28

24
*Ezell v. City of Chicago*

25
846 F.3d 888 (7th Cir. 2017) ................................................... 21

26
*Fiscal v. City and County of San Francisco*
(2008) 158 Cal.App.4th 895 ...................................................... 7

27
*Heller v. District of Columbia*

28
670 F.3d 1244 (D.C. Cir 2011).................................................. 17

# TABLE OF AUTHORITIES
## (Continued)

**Page**

**Federal Cases**

*Kev, Inc. v. Kitsap County*
793 F.2d 1053 (9th Cir. 1986) ........................................................................ 26

*Keyes v. Lynch*
195 F. Supp.3d 702 (M.D. Pa. 2016) ............................................................. 16

*Klein v. City of San Clemente,*
584 F.3d 1196 (9th Cir. 2009) ....................................................................... 28

*Lorillard Tobacco Co. v. Reilly*
(2001) 533 U.S. 525 ...................................................................................... 18

*McDonald v. City of Chicago*
(2010) 561 U.S. 742 ................................................................................. *passim*

*Melendres v. Arpaio*
695 F.3d 990 (9th Cir. 2012) ......................................................................... 27

*Monterey Mech. Co. v. Wilson*
125 F.3d 702 (9th Cir. 1997) ......................................................................... 28

*Nat'l Rifle Ass'n. v. Bureau of Alcohol, Tobacco, Firearms,*
*and Explosives (NRA I)*
700 F.3d 185 (5th Cir. 2012) ......................................................................... 15

*Nat'l Rifle Ass'n v. Bureau of Alcohol, Tobacco, Firearms,*
*and Explosives (NRA II)*
714 F.3d 334 (5th Cir. 2013) ......................................................................... 16

*Nunn v. State*
1 Ga. 243 (1846) ............................................................................................ 14

*Parker v. District of Columbia*
478 F.3d 370 (D.C. Cir. 2007) ....................................................................... 15

*Planned Parenthood Arizona, Inc. v. Humble*
753 F.3d 905 (9th Cir. 2014) ......................................................................... 25

*Rodde v. Bonta*
357 F.3d 988 (9th Cir. 2004) ......................................................................... 30

*Rodriguez v. Robbins*
715 F.3d 1127 (9th Cir. 2013) ....................................................................... 30

1
2

# TABLE OF AUTHORITIES
## (Continued)

Page

3

**Federal Cases**

4

*Southeastern Promotions, Ltd. V. Conrad*
(1975) 420 U.S. 546 ................................................................................. 24

5

6

*Silvester v. Harris*
843 F.3d 816 (9th Cir. 2016) .............................................................. *passim*

7

*Stanley v. Georgia*
(1969) 394 U.S. 557 ................................................................................. 24

8

9

*Turner Broad. Sys., Inc. v. F.C.C.*
(1994) 512 U.S. 622 ................................................................................... 6

10

*Tyler v. Hillsdale County Sheriff's Dep't (Tyler II)*
837 F.3d 678 (6th Cir. 2016) ............................................................. 16, 18

11

12

*United States v. Chovan*
735 F.3d 1127 (9th Cir. 2013) ............................................................ 5, 17

13

14

*United States v. Miller*
(1939) 307 U.S. 174 ................................................................................. 13

15

*United States v. Torres*
911 F.3d 1253 (9th Cir. 2019) ................................................................. 5

16

17

*United States v. Virginia*
(1996) 518 U.S. 515 ............................................................................ 13, 18

18

*Valle del Sol Inc. v. Whiting*
732 F.3d 1006 (9th Cir. 2013) ................................................................ 30

19

20

*Vicenty v. Bloomberg*
476 F.3d 74 (2nd Cir. 2007) ................................................................... 24

21

*Wilson v. Lynch*
835 F.3d 1083 (9th Cir. 2016) ........................................................... 25, 28

22

23

*Winter v. Nat. Res. Def. Council, Inc.*
(2008) 55 U.S. 7 ...................................................................................... 11

24

**State Statutes and Regulations**

25

California Penal Code

26

§26700 ................................................................................. 1, 7, 8

27

§26915 .........................................................................................7

28

# TABLE OF AUTHORITIES
## (Continued)

**Page**

**State Statutes and Regulations**

California Penal Code *(continued)*

§27510 ......................................................................................................*passim*

§27510(a) ................................................................................................ 1, 25

§27510(b) ...................................................................................................... 26

§27510(b)(1) .................................................................................................... 8

§27545 ............................................................................................................. 1

§27590 ............................................................................................................. 9

§27510(b)(2)(A)-(E) ...................................................................................... 8

**Federal Statutes**

10 U.S.C. § 246(a) ....................................................................................... 14

18 U.S.C. § 922(b)(1) .................................................................................... 8

50 U.S.C. § 3803(a) ...................................................................................... 14

Militia Act, 1 Stat. 271 ................................................................................. 13

Naval Militia Cal. Mil. and Vet. Code § 120 .............................................. 14

Naval Militia Cal. Mil. and Vet. Code § 121 .............................................. 14

Naval Militia Cal. Mil. and Vet. Code § 122 .............................................. 14

**Publications**

1 ANNALS OF CONG. app. 2141 ................................................................ 12

26 Writings Of George Washington 389
[John C. Fitzpartick ed., 1938] ............................................................. 12, 13

Bureau of Justice Statistics, Special Report, Age Patterns of Victims of
Serious Violent Crime at 1-7 ....................................................................... 29

Christopher M. Johnson, *Second-Class: Heller, Age, and the Prodigal
Amendment*, Columbia Law Review, Vol. 117, No. 6 (Oct. 2017), at
1585-1586, 1594-1595 (Johnson 2017) ...................................................... 16

# TABLE OF AUTHORITIES
## (Continued)

**Page**

**Publications**
*(continued)*

David B. Kopel & Joseph G.S. Greenlee, *The Second Amendment Rights of Young Adults* (forthcoming in 2019), 43 Southern Illinois Law Journal (2019) (hereinafter Kopel & Greenlee 2019) ....................................................4

U.S. Const. art. I, § 8, cl. 16 ...........................................................................12

**Other Authorities**

Cal. Fam. Code § 6501 ....................................................................................2

Cal. Fam. Code § 6502 ....................................................................................2

Senate Bill 61 ...............................................................................9, 24, 25

Senate Bill 1100 ..........................................................................7 8 , 20, 23

## I.    INTRODUCTION

The U.S. Supreme Court held in *District of Columbia v. Heller*, (2008) 554 U.S. 570, 595 (2008) that the Second Amendment's text, structure, and history confirm it "confer[s] an individual right to keep and bear arms." Since then, the Supreme Court concluded in *McDonald v. City of Chicago*, (2010) 561 U.S. 742 that this individual right is fundamental and applies with full force to the states. *Id*. at 748 (plurality opinion); *id*. at 805 (Thomas, J., concurring in part and concurring in the judgment). Further, "self-defense is a basic right" and the "central component" of the Second Amendment's guarantee of an individual's right to keep and bear arms. *Id.* at 767.

Against this backdrop, in 2019, California expanded its prohibition on the sale, supply, delivery, possession, or control of *any* firearm to *any* person under 21 years of age. Cal. Penal Code § 27510(a). The ban encompasses all licensed persons, including those with a valid federal firearms license (commonly called "FFL dealers"). *Id*. §§ 27510(a), 26700. It applies to any FFL firearm sale or transfer and all private party firearm transfers to persons 18-to-20 years of age. See Cal. Penal Code § 27545. The ban precludes licensed gun ranges from renting firearms to those 18-to-20, and from allowing young adults to use or handle firearms during firearms safety classes. The result – Penal Code section 27510 prohibits an entire class of law-abiding adults — 18-to-20-years-old (Young Adults) — from obtaining *any* firearm.

This ban on Young Adults' acquisition and possession of any firearm in California hits directly at the Second Amendment's core right of self-defense. It

represents a ban on acquisition, and a ban on possession. It is an under-21 firearm ban. The ban is applicable to all ordinary law-abiding Young Adults[1] and its so-called "exemptions" are inapplicable, illusory, and irrelevant (hereafter, "California age-based gun ban" or "Section 27510").[2]

California's age-based gun ban goes farther than did the District of Columbia's ordinance struck down in *Heller* — a citizen was required to keep his or her firearm inoperable, but he or she could at least acquire and possess a rifle. *Heller, 554 U.S.* at 630; *and see Jackson v. City & County of San Francisco*, 135 S. Ct. 2799 (2015) (Thomas, J., dissenting from denial of certiorari). ("But nothing in our decision in *Heller* suggested that a law must rise to the level of the absolute prohibition at issue in that case to constitute a "substantial burden" on the core of the Second Amendment right.") (citing *Heller*, 554 U.S. at 628-635); Similarly, the California' age-based gun ban, which categorically prohibits the purchase, transfer, acquisition, possession, use, or control of *any* firearm by *any* Young Adult fails under *Heller*. Simply stated, the ban flunks the *Heller* standards.

Based on *Heller*, the Ninth Circuit employs a two-step analysis when evaluating Second Amendment claims. *Silvester v. Harris*, 843 F.3d 816, 820-822 (9th Cir. 2016)

---

[1] In California, "[a]n adult is an individual who is 18 years of age or older." Cal. Fam. Code § 6501; *and see* § 6502.

[2] For all practical purposes, as explained below, California's law is a complete, categorical ban because it only provides a handful of so-called "exemptions" inapplicable to ordinary, law-abiding Young Adults. See Declaration of Brandon Combs (Combs Dec.), ¶¶ 16-32, **Exhibits 6** through **13**, filed concurrently herewith.

*cert. denied*, 138 S. Ct. 945 (2018). Courts ask whether the challenged law "falls within a 'well-defined and narrowly limited' category of prohibitions 'that have been historically unprotected.'" *Jackson v. City & County of San Francisco*, 746 F.3d 953, 960 (9th Cir. 2014), *cert. denied,* 135 S. Ct. 2799 (2015) (citations omitted.) This limited category may involve "one of the 'presumptively lawful regulatory measures' identified in *Heller*," or a prohibition where "*persuasive historical evidence*" demonstrates falls outside the *historical scope* of the Second Amendment." *Id.* (citations omitted; emphasis added).

*Heller* states the government may continue to impose laws on the sale, possession, or use of firearms that are traditional, "longstanding" prohibitions. *Id.* 554 U.S. at 626-627. The *Heller* Court listed examples of such longstanding (and, thus, presumptively permissible) laws such as those prohibiting the possession of guns by felons and the mentally ill. *Id.* at 626. The Supreme Court added that the analysis of whether other firearm restrictions are permissible must be based on their "historical justifications." *Id.* at 635.

Here, there are no "historical justifications" for banning the acquisition and possession of firearms by law-abiding Young Adults. Indeed, the text and historical evidence mandated by *Heller* demonstrates that Young Adults always have been considered part of both the "organized" and "unorganized" militia in the United States. No age-based firearm acquisition/possession restrictions existed during the pre-colonial and founding-era of the United States. In fact, during the founding era,

numerous militia and other acts (both federal and state) explicitly *required* Young Adults to be armed and keep guns in the home.[3]

Further, because the Second Amendment right to keep and bear arms is not limited to militia service, Young Adults maintain the *individual right* to keep and bear arms for self-defense and all other lawful purposes. *Heller,* 554 U.S. at 627. Accordingly, California's age-based gun ban is an impermissible restriction under the Second Amendment, destroying such rights. *Silvester v. Harris,* 843 F.3d at 821 ("A law that imposes such a severe restriction on the fundamental right of self defense of the home that it amounts to a destruction of the Second Amendment right is unconstitutional under any level of scrutiny.") (citation omitted).

The proper analysis for Second Amendment challenges is found in the text of the Constitution itself, using history, tradition, and other indicia of original public meaning to clarify the meaning and scope of such text. Although *Heller may* have left open the precise analytical framework court are to apply to *certain* Second Amendment challenges *that do not* apply firearm "hardware regulations," affect weapons' function, or impair self-defense (e.g., gun store zoning laws or serial number requirements), the Supreme Court provided an explicit test for regulations that ban firearms and impair one's ability to keep and bear arms. ("*Heller* and *McDonald*

---

[3] *See* Declaration of David T. Hardy (Hardy Dec.) filed concurrently herewith, **Ex. 17,** at 383-391, 413-465, 480. Kopel & Greenlee 2019, provides exhaustive — indeed, overwhelming — historical evidence that when the Second Amendment was ratified, Young Adults had the right to keep and bear arms.

leave little doubt that courts are to assess gun bans and regulations based on text, history, and tradition, not by a balancing test such as strict or intermediate scrutiny." *Heller v. District of Columbia*, 670 F.3d 1244, 1271 (D.C. Cir. 2011) (Kavanaugh, J., dissenting)). Section 27510 bans ordinary law-abiding Young Adults' core Second Amendment rights to purchase, transfer, acquire, and possess *all firearms* for lawful purposes. Just as in *Heller*, Section 27510's ban is unconstitutional; there is no need to apply any form of scrutiny analysis and the challenged law must be enjoined. *Cf. Wrenn v. District of Columbia*, 864 F.3d 650, 666 (D.C. Cir. 2017) ("*Heller I*'s categorical approach is appropriate here even through our previous cases have always applied tiers of scrutiny to gun laws.")[4] However, since the decisions in *Heller* and *McDonald*, the Ninth Circuit has applied a two-part test when considering Second Amendment challenges to state law. First, a court must evaluate the burden and apply the correct scrutiny. *United States v. Torres*, 911 F.3d 1253, 1258 (9th Cir. 2019); *Jackson*, 746 F.3d at 960 (citing *United States v. Chovan*, 735 F.3d 1127, 1136-37 (9th Cir. 2013)). This two-part inquiry asks "'(1) how close the challenged law comes to the core of the Second Amendment right, and (2) the severity of the law's burden on that right.'" *Bauer v. Becerra*, 858 F.3d 1216, 1222 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 982 (2018) (quoting *Silvester*, 843 F.3d at 821).

---

[4] See also *McDonald v. City of Chicago*, (2010) 561 U.S. 742, which analyzed a Second Amendment challenge based on history and tradition, rather than a means-end scrutiny analysis.

Applying the Ninth Circuit two-part test, an historical analysis of Young Adults Second Amendment rights unquestionably establishes that Section 27510 strikes at the core of the Second Amendment. Further, Section 27510 is a categorical ban on all types of *any* firearm for Young Adults and severely burdens their right to keep and bear arms for self-defense and other lawful purposes; and thus, should tiered scrutiny be applied, it should be *strict* scrutiny.

However, even if this Court applies intermediate scrutiny, the challenged law must fail. The Ninth Circuit precedents demand that even under intermediate scrutiny, "(1) the government's stated objective … be significant, substantial, or important; and (2) there be … a 'reasonable fit' between the challenged regulation and the asserted objective." *Silvester*, 843 F.3d at 821-822 (citation omitted).  "[The government] must demonstrate that the recited harms are real, not merely conjectural, and that the regulation will in fact alleviate these harms in a direct and material way". *Turner Broad. Sys., Inc. v. F.C.C.*, (1994) 512 U.S. 622, 664. As shown below, the State of California made no showing of any substantiated legitimate objective — let alone a "significant, substantial, or important" one — for the challenged ban. Further, the state's attempt to do so does not satisfy the *additional* "reasonable fit" requirement as they cannot show that Section 27510 "will in fact alleviate these harms in a direct and material way." *Id*.

Thus, Plaintiffs are likely to succeed on the merits. They also satisfy all other preliminary injunction requirements. California's age-based gun ban has denied an

*PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION*

enumerated constitutional right, which represents an irreparable injury per se. There is no public interest in denying otherwise legally eligible people a constitutional right, especially since California has allowed Young Adults to purchase, at the very least, rifles and shotguns up until December 31, 2018. Moreover, the prior status quo can be preserved with no demonstrable harm to anyone. The State of California must not be allowed to eliminate the fundamental, individual rights of law-abiding Young Adults based on conjecture. California's age-based ban on Young Adults, Penal Code § 27510(a), should be declared unconstitutional and enjoined.

## II.     THE CHALLENGED CALIFORNIA AGE-BASED GUN BAN

In 1917, California law contained no age restrictions on firearm sales or transfers. Hardy Dec. ¶ 51. In 1923, California largely adopted the Uniform Firearms Act requiring, and imposed a requirement that receiving individuals to be 18 years of age or older for the sale, delivery, or transfer of "any pistol, revolver or other firearm capable of being concealed upon the person .…" Hardy Dec. ¶ 51; *See also Fiscal v. City and County of San Francisco*, (2008) 158 Cal.App.4th 895, 906. Even then, there was no state law ban on the sale, supply, delivery, possession, or control of any "*long guns*" (e.g., shotguns, rifles) based on age — *none*. *Ibid*.

However, effective January 1, 2019, then-Governor Edmund G. Brown, Jr., signed into law Senate Bill 1100 ("SB 1100," 2017-2018 Reg. Sess.), amending Section 27510 to provide that a person licensed under Penal Code sections 26700 to 26915, inclusive — *i.e.*, a person with a "valid federal firearms license" — "shall not

7

sell, supply, deliver, or give possession or control of a firearm to any person under 21 years of age." *See* Cal. Penal Code § 27510 and § 26700.

Prior to enactment of SB 1100, California law prohibited the sale or transfer of a *handgun*, except as exempted, to any person under the age of 21, but expressly *allowed* a person at least 18 years of age to buy or transfer "long guns" (e.g., all rifles and shotguns). *See* Hardy Dec. ¶ 52. Existing federal law also already prohibited Young Adults from purchasing handguns *only* from licensed federal firearms dealers. 18 U.S.C. § 922(b)(1). Thus, under federal law, Young Adults are permitted to purchase, transfer, and acquire rifles and shotguns through licensed dealers and private party transactions, and to purchase, transfer, and acquire handguns through private party transactions.

With enactment of SB 1100, however, California's ban applies to all types of firearms. There can be *no* sale, supply, delivery, possession, or control of ***any firearm to any person under 21 years of age*** in California (both private party transactions and dealer transactions) — except for a few so-called "exemptions" that are illusory, inapplicable, and irrelevant to virtually all ordinary, law-abiding Young Adults. *See* Cal. Penal Code § 27510(b)(1), (b)(2)(A)-(E);[5] *See also* Combs Dec. ¶¶ 16-32.

---

[5] Plaintiffs have no desire to hunt, join law enforcement, or enlist in military purely in order to exercise their constitutional rights. They simply wish to acquire firearms for self-defense and other lawful purposes. *See* Plaintiff Declarations filed concurrently herewith — Declarations of Matthew Jones (Jones Dec.) ¶¶ 2-8; Thomas Furrh (Furrh Dec.) ¶¶ 2-11; Kyle Yamamoto (Yamamoto Dec.) ¶¶ 2-10 filed concurrently herewith. Also, it is no answer that some may be able to get a hunter's

8

On October 11, 2019, only 10 months after the ban went into effect, California Governor Gavin Newsom signed Senate Bill 61 (SB 61), which placed even more restrictions on Section 27510's so-called "exemptions." Now, even if a Young Adult were to go through the significant time and expense of obtaining a hunting license (even if they have no interest in hunting), they are still prohibited from purchasing all handguns and now *all semiautomatic centerfire rifles*. Additionally, this new restriction on all semiautomatic centerfire rifles applies to honorably retired military, if they are under 21. The licensed firearms dealers and ranges face substantial criminal penalties if they violate the current law. Penal Code section 27510(a); Penal Code § 27590.[6] Make no mistake, California's age-based gun ban does not impose reasonable *conditions and qualifications* on the commercial sale of firearms. Instead, it is a ban on the sale or transfer of *any* firearms to *any* person under age 21.

## III.   FACTUAL BACKGROUND

The individual Plaintiffs are lawful, ordinary, law-abiding Young Adults, not otherwise prohibited from acquiring and possessing firearms. Jones Dec. ¶ 2-8; Furrh Dec. ¶ 2-11; Yamamoto Dec. ¶ 2-10; Williams Dec. ¶ 2-11. Each Plaintiff attempted to purchase a firearm in California, and each was denied their Second Amendment rights *based solely on their age*. *Id*. As Young Adults, each Plaintiff can vote, enter

---

license, as that license is not "easy" to obtain or a relevant gun-safety program. *See* Declaration of David Bogan (Bogan Dec.)¶¶ 1-30.

[6]  *See* Declarations John Phillips, (Phillips Dec.) ¶¶ 2-8; Darin Prince, (Prince Dec.) ¶¶ 2-10; Matthew Beebe, (Beebe Dec.) ¶¶2-7; Anthony Williams, (Williams Dec.)¶¶ 2-12, filed concurrently herewith.

9

into contracts, get married, enter the military voluntarily, be selected for and inducted for service into the military — all without restriction on the basis of their age. Hardy Dec. ¶ 25, **Ex. 17**, at 478-480.

Plaintiffs Poway Weapons and Gear (PWG), Beebe Family Arms and Munitions (Beebe Arms), and North County Shooting Center (NCSC) have been forced to stop all sales and firearm transfers to Young Adults. Phillips Dec. ¶ 2-8; Beebe Dec. ¶ 2-7; Prince Dec. ¶ 2-10. Plaintiffs PWG and NCSC are licensed shooting ranges. Each entity has been forced to deny Young Adults the ability to rent, use, and train for proficiency and safety with firearms at their ranges. Phillips Dec. ¶ 3-8; Prince Dec. ¶ 2-10. Even if a Young Adult is accompanied by an individual over 21, PWG, NCSC, and other gun ranges cannot rent or provide firearms to them for fear of violating Section 27510. *Id*. Further, PWG and NCSC have been forced to prevent Young Adults from attending and taking part in firearms and hunter education courses, as each course calls for attendees to handle, use, and control firearms. Phillips Dec. ¶ 3-8; Prince Dec. ¶ 2-10.

Plaintiffs Firearms Policy Coalition (FPC), Firearms Policy Foundation (FPF), California Gun Rights Foundation (CGF), and Second Amendment Foundation (SAF) represent Young Adult members that have been denied their Second Amendment rights and that would otherwise purchase and acquire firearms but for Section 27510. Combs Dec. ¶ 2-10; Declaration of Alan Gottlieb (Gottlieb Dec.) ¶ 2-5, filed concurrently herewith. Some Young Adults own their own homes, others rent. Some

10

are married, others are single parents raising children. Some are alone, at college. To deprive these Young Adults the right to acquire and possess a firearm for self-defense and other lawful purposes infringes on the "core" of their Second Amendment rights.

## IV.   LEGAL STANDARD

"The purpose of a preliminary injunction is to preserve the status quo pending a determination of the action on the merits." *Chalk v. U.S. Dist. Ct.* (*Orange Cty. Superin. Of Schs.),* 840 F.2d 701, 704 (9th Cir. 1998). To obtain such relief, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm absent preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Am. Trucking Assn's, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council, Inc.,* (2008) 55 U.S. 7, 20.

## V.   ARGUMENT – LIKELIHOOD OF SUCCESS

### A.   California's Age-Based Gun Ban Cannot Stand under the Textual and Historical Analysis Mandated by *Heller*

The original text and historical understanding of the Second Amendment confirm that law-abiding, 18-to-20-year-olds were part of the militia since both the colonial and founding periods. *See* Hardy Dec. ¶¶ 25, 71; **Ex. 17**, at 413-465. In fact, "over 250 colonial and state militia statutes through 1799 mandated that persons," usually 16 or 18 (and older) serve in the military using *their own* arms. *Id.* **Ex. 17**, at 413-414.

"[M]assive and uncontradictory evidence from the Founding era" shows that "18-to-20-year-olds *did* have the right to keep and bear arms, and indeed were required by law to exercise that right." See Hardy Dec. ¶¶ 9-77, **Ex. 16**, at 354-360. For example, only months after the Second Amendment was ratified, Congress took steps to "provide for orgainizing, arming, and disciplining, the Militia" (U.S. Const. art. I, § 8, cl. 16), by enacting the Militia Act of 1792, requiring that every citizen of each respective state, "*who is or shall be of the age of eighteen years*, and under the age of forty-five years … shall severally and respectively be enrolled in the militia[.]" Hardy Dec. ¶¶ 16, 23; **Ex. 17**, at 460-462; **Ex. 15** (emphasis added). The original Militia Act provides powerful evidence that Second Amendment rights vest at age 18. The legislative history of the Militia Act further supports this contention.

In 1790, Secretary of War Henry Knox submitted a militia plan to Congress stating that "all men of the legal military age should be armed," and that [t]he period of life in which military service shall be required of [citizens] [was] to commence at eighteen." 1 ANNALS OF CONG. app. 2141, 2145-2146; Hardy Dec. ¶¶ 28-31, **Ex. 17**, at 462. Representative Jackson agreed "that from *eighteen to twenty-one* was found to be the *best* age to make soldiers of." *Ibid*. (emphasis added). Eighteen was the age that George Washington recommended for militia enrollment. See Hardy Dec. ¶¶ 28-31, **Ex. 17**, at 463; 26 WRITINGS OF GEORGE WASHINGTON 389 (John C. Fitzpartick ed., 1938). Further, that "18-year-olds should be part of the militia was hardly controversial," as they "had been part of every colonial and state militia from

the very beginning, except for a nineteen-year period in Virginia in the middle of the eighteenth century." Hardy Dec. ¶ 17, **Ex. 17**, at 463. Indeed, numerous state militia laws enacted shortly before the Second Amendment provide additional evidence that the right to arms encompassed 18-year-olds. *Id*. ¶ 16, **Ex. 17**, at 413-460.

Able-bodied 18-to-20-year-olds not only were entrusted with the responsibility of bearing arms in defense of their country but were also required by law to keep their own arms to do so. See Hardy Dec. ¶¶ 26-27, 32-34, **Ex. 15** (Militia Act, 1 Stat. 271 [requiring each enrollee, regardless of age, to "provide himself with a good musket or firelock"]); *United States v. Miller*, (1939) 307 U.S. 174, 179 ("when called for service these men were expected to appear bearing arms supplied by themselves").

*Heller* may not have "clarif[ied] the entire field" of Second Amendment analysis, 554 U.S. at 634, but it surely foreclosed any argument that the Second Amendment does not protect individuals who, at the time of ratification, were *required* by both state and federal law to keep and bear arms in service of the militia. While the right protected by the Second Amendment is by no means limited to militia service, "the threat that the new Federal Government would destroy the citizens' militia by taking away their arms was the reason that the right … was codified in the written Constitution." *Heller*, 554 U.S. at 559. Unsurprisingly, there are no colonial or founding era laws prohibiting the acquisition or possession of firearms by Young Adults due solely to age. Hardy Dec. ¶¶ 35, 67 **Ex. 16**, at 354-360. Similarly, "there

were no age-based arms restrictions in the early republic or the Jacksonian period." *Id.*, **Ex. 17**, at 465.

Even present day, able-bodied male citizens at least 17 years of age (and under 45 years of age) are designated members of the U.S. militia pursuant to federal statute, (10 U.S.C. § 246(a)), and may be selected and inducted for training and service into the United States armed forces (50 U.S.C. § 3803(a)). As such, they are eligible to serve in the military and to die for their country based on their age. In addition, the "militia of the State" consists of both the organized and unorganized militia. The State's *organized* militia encompasses the National Guard, State Military Reserve and Naval Militia. Cal. Mil. and Vet. Code § 120. The *unorganized* militia "consist of all persons liable to service in the militia, but not members of the National Guard, the State Military Reserve, or the Naval Militia." *Id.* § 121. Accordingly, both the State's organized and unorganized militia consist of "all able-bodied male citizens … who are *between the ages of eighteen and forty-five …*." *Id.* § 122 (emphasis added).

**B.      Under *Heller*, California's Age-Based Gun Ban Abridges Young Adults' Second Amendment Right**

Under *Heller*, "the Second Amendment right is exercised individually and belongs to all Americans." 554 U.S. at 581. "'The right of the whole people, *old and young*, men, women and boys, *and not militia only*, to keep and bear arms of every description, and not just such merely as are used by the militia, shall not be infringed, curtailed, or broken in upon, in the smallest degree.'" *Id.* at 612-613 (quoting *Nunn v. State*, 1 Ga. 243, 250 (1846) (emphasis added).

14

Accordingly, Young Adults' right is not limited to keeping and bearing arms for militia service; it also embraces an individual's right for self-defense and other lawful purposes. *Heller*, 554 U.S. at 629, 635; and *McDonald*, 561 U.S. at 780. Thus, in addition to the militia right, the Second Amendment guarantees the personal right to keep and bear arms. Under both interpretations, Young Adults have the right to keep and bear arms. California's age-based gun ban destroys that right.

Now, the Fifth Circuit decision in *Nat'l Rifle Ass'n. v. Bureau of Alcohol, Tobacco, Firearms, and Explosives (NRA I)*, 700 F.3d 185 (5th Cir. 2012), rejected the Second Amendment rights of Young Adults in response to a challenge to the federal statute prohibiting *licensed dealers* from selling *handguns* to 18-to-20-year-olds; however, it is not controlling, nor persuasive; it has been roundly criticized; and it is easily distinguished. First, the Fifth Circuit itself emphasised that the federal law was "[f]ar from a total prohibition on handgun possession and use" because, among other things, Young Adults may purchase long-guns (e.g., shotguns, rifles) through licensed dealers and through private transfers. *NRA I*, 700 F.3d at 206-207 (citations omitted). Second, unlike California's age-based gun ban, the Fifth Circuit decision still allowed private transfers of handguns to Young Adults. In short, the Fifth Circuit was *not* presented with a ban on all sales or transfers of *all* firearms by Young Adults. But cf. *Heller*, 554 U.S. at 629 ("it is no answer to say, … that it is permissible to ban the possession of handguns so long as the possession of other firearms (i.e., long guns) is allowed"); *Parker v. District of Columbia*, 478 F.3d 370, 400 (D.C. Cir. 2007).

Third, the Fifth Circuit relied on inapplicable, generalized gun safety regulations; dubious laws disarming and prohibiting sales of arms to certain groups — such as Indians, slaves, Loyalists, felons, and the mentally ill — and wrongly tied those laws to Young Adults. *NRA I*, 700 F.3d at 200, 206-207; *See also* Hardy Dec. ¶¶ 44-47, **Ex. 16**, at 354-360. Further, subsequent successful challenges to the federal law by various groups continue to raise significant doubts as to the constitutionality of age-based restrictions.[7]

Fourth, the Fifth Circuit declined (by a one-vote margin) to consider en banc the constitutionality of the federal law, but Judge Edith H. Jones, joined by five of her colleagues, issued a compelling dissent in which she contended that the law was an unconstitutional infringement on Second Amendment rights. *Nat'l Rifle Ass'n v. Bureau of Alcohol, Tobacco, Firearms, and Explosives (NRA II)*, 714 F.3d 334, 336 (5th Cir. 2013) (Jones, J., dissenting from denial of rehearing en banc). "History and tradition yield proof that 18-to-20-year olds had full Second Amendment rights." *Id.* at 339. Moreover, "using the 1968 Omnibus Crime Control gun regulations against this age group to *contradict* the original meaning of the Second Amendment is contrary to *Heller*.... Drawing analogies between this age group and felons and the mentally ill is

---

[7] *See Tyler v. Hillsdale County Sheriff's Dep't (Tyler II)*, 837 F.3d 678, 699 (6th Cir. 2016); *Binderup v. Attorney General*, 836 F.3d 336, 356-357 (3d Cir. 2016); *Keyes v. Lynch*, 195 F. Supp.3d 702, 722 (M.D. Pa. 2016); *and see* Hardy Dec. ¶¶ 44-47, **Ex. 16**, Christopher M. Johnson, *Second-Class: Heller, Age, and the Prodigal Amendment*, Columbia Law Review, Vol. 117, No. 6 (Oct. 2017), at 1585-1586, 1594-1595 (Johnson 2017).

not only offensive but proves too much." *Id.* at 343. Secondary authorities support this analysis. *See* Hardy Dec. ¶¶ 44-47, **Ex. 16**, at 342, 355-372.

### C.   California's Age-Based Gun Ban Flunks Strict Scrutiny and Intermediate Scrutiny

As shown above, the challenged law abridges conduct that falls within the historical core of the Second Amendment right. Thus, like *Heller* and *McDonald*, the focus should be on the "history and tradition" of the right to keep and bear arms rather than a balancing test because Section 27510 is a firearm ban for Young Adults eliminating their Second Amendment rights. *Heller II*, 670 F.3d 1244, 1269-70, 1280, 1284 (D.C. Cir. 2001) (Kavanaugh, J. dissenting). As such, Section 27510 is unconstitutional and should be enjoined.

If, however, a means-end review is selected by this Court, strict scrutiny is the test. Strict scrutiny requires the government to prove the restriction on a constitutional right furthers a compelling interest and is narrowly tailored to achieve that interest. *Silvester*, 843 F.3d at 821 ("A law that implicates the core of the Second Amendment right and severely burdens that right warrants strict scrutiny"). Without waiving its contentions, however, Plaintiffs note that the Ninth Circuit has previously applied an intermediate scrutiny two-step analysis in other Second Amendment challenges, *see, e.g.*, *Chovan*, 735 F.3d at 1138-1139. Thus, to prevent duplicative analysis, Plaintiffs present their contentions under intermediate scrutiny, as any law that fails intermediate scrutiny necessarily fails strict scrutiny.

17

First, to uphold a statute under intermediate scrutiny, the Ninth Circuit has identified two requirements: "(1) the government's stated objective must be significant, substantial, or important; *and* (2) there must be a 'reasonable fit' between the challenged regulation and the asserted objective." *Silvester,* 843 F.3d at 821-822 (citation omitted). Second, intermediate scrutiny requires that the government "demonstrate that the harms it recites are real," beyond "mere speculation or conjecture" (*Edenfield v. Fane,* (1993) 507 U.S. 761, 770-771), and will "in fact alleviate" the government's concerns. *Lorillard Tobacco Co. v. Reilly*, (2001) 533 U.S. 525, 555. Third, "the burden of justification is demanding and it rests entirely on the State." *Tyler v. Hillsdale County Sheriff's Dept*., 837 F.3d 678, 694 (6th Cir. 2016), quoting *United States v. Virginia*, (1996) 518 U.S. 515, 533. Defendants' cannot meet their burden.

### 1. Section 27510 is not "Substantially Related" to the State's Interests, nor a "Reasonable Fit"

The State of California has generally identified the following state interests in passing California's age-based gun ban: (1) "mass school shootings," such as those that occurred at Stoneman Douglas High School in Parkland, Florida, Sandy Hook Elementary School in Newtown, Connecticut, and Columbine High School in Colorado (Combs Dec. ¶¶ 12-15, **Ex. 5**, at 23); (2) Young Adults are immature, impulsive, and reckless (*id*. **Ex. 2**, at 12 and **Ex. 4**, at 20); (3) crime reduction/reduced gun violence (*id*. **Ex. 3**, at 15); and (4) Young Adults are disproportionally linked to crime. *Id*. **Ex. 4**, at 20. Each are important concerns, but none are supported by facts

18

and reasonable inferences based on relevant data. Further, the California age-based ban is not a "reasonable fit" for achieving the stated interests. *See* Declaration of Thomas B Marvell (Marvell Dec.) ¶¶ 1-19; and Declaration of John Lott (Lott Dec.) ¶¶ 1-22, filed concurrently herewith

### a.    "Mass School Shootings"

Although horrific, mass school shootings are rare, and those shootings committed by Young Adults are even rarer. *See* Marvell Dec. ¶¶ 18-19 and **Ex. 10**, at 238-244; Lott Dec. ¶ 16. In fact, no credible evidence supports the proposition that raising the age to purchase or acquire a firearm will make any difference in curtailing mass school shootings. Marvell Dec ¶¶ 5-8; Lott Dec. ¶¶ 6-19, **Ex. 1-7**. This is because (1) shooters buy guns from sources other than licensed dealers (Lott Dec. ¶¶ 7-8, **Ex. 2**); (2) criminals are still going to obtain guns (Lott Dec. ¶ 9, **Ex. 3**); (3) age is not a significant factor in mass public shootings (Lott Dec. ¶ 10, **Ex. 4** [average shooter age is approximately 33 years-old] and Declaration of John W. Dillon (Dillon Dec.) ¶ 9, **Ex. 7** [average age of school attackers is 15]); and (4) contrary to government statements, mass school shootings are *not* generally committed by people "under 21." (Lott Dec. ¶ 16).[8] Further, the other government-referenced shooting in California was in San Bernardino (a *non-school* shooting by people *older* than 21 years of age). See Dillon Dec., ¶ 9, **Ex. 6**.

Though an attempt to reduce mass school shootings is an understandable

---

[8] *See also* Dillon Dec., ¶ 9, **Ex. 7**., at 116 (average age of school attackers is 15)

interest, Section 27510's ban is *also* not a "reasonable fit." There is no connection, no "fit." In short, the Legislature did not analyze the purported issue (mass school shootings committed by Young Adults) and the proposed solution (banning Young Adults from all lawful firearms sales, transfers, use, rentals). *See also* Marvell Dec. ¶¶ 18-19, **Ex. 11**.

**b.**     **"Maturity, Impulsive, Reckless"**

Supporters of the California age-based gun ban assert that "[m]aturity, impulsive, or reckless behavior, and responsibility vary greatly among 18-20-year-olds" and that other laws prohibit those under 21 from buying alcohol or renting a car, so that the same age restriction should apply to ban the purchase or acquisition of all firearms. Combs Dec. ¶ 10, **Ex. 2**, at 11-12. The author of SB 1100 echoed the above-sentiments, claiming "there are a number of instances when lawmakers have limited the ability of persons under the age of 21 to engage in activities which are otherwise lawful (e.g., under 21 bans on alcohol, cigarettes, and marijuana). *Id*. at 11. This comparison is *extraordinarily flawed*; fundamental rights are not vices, nor can they be treated as vices. Lott Dec. ¶ 14. Additionally, no evidence or data was provided to support such assertions. These same Young Adults "are considered mature enough to vote, contract, marry, and register to train and serve in the U.S. armed forces." Lott Dec. ¶ 17. Also contrary to supporter's anecdotal statements is the relatively low revocation rates of college age students that have concealed carry permits. *Id*. at ¶¶ 18-19.

20

Further, Section 27510 is not closely drawn to the State's interest as it prevents lawful Young Adults from even becoming proficient in the safe handling and use of firearms. Section 27510's ban prevents Young Adults from even going to a licensed shooting range and renting any firearm or using an FFL's rented firearm in a firearms safety or self-defense class. See Phillips Dec.,¶¶ 5-8; See Prince Dec., ¶¶ 5-9.

The Second Amendment protects the right to learn and practice firearm use at shooting ranges. *Ezell v. City of Chicago*, 846 F.3d 888, 890 (7th Cir. 2017). Age restrictions *on minors* preventing this protected activity already have failed intermediate scrutiny. *Id.* The Seventh Circuit held "that the core individual right of armed defense — as recognized in *Heller* and incorporated against the stated in *McDonald* — includes a corresponding right to acquire and maintain proficiency in firearm use through target practice at a range." *Id.* at 892, citing *Ezell I*, 651 F.3d at 704. "The core right to possess firearms for protection "wouldn't mean much without the training and practice that make it effective." *Id*. Range training "lies close to the core of the individual right of armed defense." *Id.* at 893. *Ezell* held this limitation unconstitutional *on minors* under intermediate scrutiny. Section 27510 is unconstitutionally restricting Young Adults' "core individual right of armed defense," which includes the "corresponding right to acquire and maintain proficiency in firearm use through target practice at a range." *Id.* at 892.

Moreover, the Section 27510 ban is not narrowly tailored, nor substantially related to the perceived problem. The ban applies to lawful dealer sales and transfers,

not illegal transfers. The ban applies to Young Adults with and without criminal histories. It applies to Young Adults with mental health issues and those without. It applies to Young Adults who live with their parents and those who live alone. It also applies to those who are married with children. But to ban sales and transfers of all guns to all Young Adults based on speculation that some of them might be immature goes way too far and it not a reasonable fit solution to any supposed problem.

### c.    "Reduce Crime/Gun Violence"

The "author's statement" justifying California's age-based gun ban states it is a "proper step toward public safety" and responsive to requests to reduce "gun violence." Combs Dec. ¶ 13, **Ex. 3**, at 15. No evidence or data is offered, but certainly they are laudable interests — public safety and reduced gun violence. However, with this level of generality, the interests could justify any law and virtually any statutory ban. Importantly, "there is no evidence that gun laws banning the purchase or possession of legal firearms based on age restrictions have the intended effect of reducing gun homicides and suicides." Marvell Dec. ¶ 5. After undertaking an in-depth analysis, Marvell concludes: "I have found no discernable crime-reduction impact." *Id*. Moreover, despite the federal law prohibiting gun dealers from selling handguns to persons under 21, an important study tested whether arrests for three violent crimes trended downward or upward *after* the law went into effect. Study results show that "the federal law had *no impact* on the 18-to-20-year-old share of arrests for violent crime." *Id*. ¶ 9, **Ex. 2**. Moreover, the ban is a *categorical ban*, the

22

opposite of a narrowly tailored, or a "reasonable fit." Marvell Dec. ¶ 17, **Ex. 10**.

### d.   "Disproportionality"

Supporters of SB 1100 cite statistics that those under 21-years-old are "disproportionally linked to crime." Combs Dec. ¶ 14, **Ex. 4**, at 20. This data is badly skewed. Yes, persons 18-to-20 commit murders at a higher rate comparatively. But the same can be said of persons 21-to-25, who commit murders at a higher rate than people in the 26-30 age range. Persons 36-45 commit crimes at a considerably higher rate than those 46-50, but this finding does *not* mean we ought to ban firearms from people 36 through 45. Lott ¶ 11-12; *and see* Hardy Dec. ¶ 25, **Ex. 17**, at 472. The *same* flawed point can be made based on race. Americans of some races commit violent crimes at higher rates than persons of other races. Lott Dec. ¶¶ 12; Hardy Dec. ¶¶ 25, 69-70, **Ex. 17**, at 472. Likewise, males perpetuate violent crimes at a much higher rate than females. Lott Dec. ¶ 13; Hardy Dec. ¶¶ 25, 69-70, **Ex. 17**, at 472. Rights of the overwhelming majority of law-abiding citizens in a particular group cannot be destroyed because of irresponsible behavior by other persons of the same age, race, or sex.

Further, *Heller* already rejected the notion that protected arms could be banned because criminals might misuse them. The Supreme Court concluded that a ban on possession by law-abiding citizens is not a permissible means of preventing misuse by criminals. *Heller* at 628-29 (maj. op.). The State's "fit" is grossly over broad. Prohibiting lawful conduct of all Young Adults is contrary to the fundamental

23

principle, "deeply etched in our law [that] a free society prefers to punish the few who abuse rights … *after* they break the law *than to throttle them and all others beforehand*." *Vicenty v. Bloomberg*, 476 F.3d 74, 85 (2nd Cir. 2007) quoting *Southeastern Promotions, Ltd. V. Conrad*, 420 (1975) U.S. 546, 559 (upholding injunction against ban on sale to and possession of spray paint and broad-tipped markers by person under 21 to combat graffiti); *and see Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 245 (2002) (government cannot ban virtual child pornography because it might lead to child abuse because "[t]he prospect of crime" "does not justify laws suppressing protected speech"); *Edenfield*, 507 U.S. at 770-71 (state cannot impose a "flat ban" on solicitations by public accountants because solicitations "create[] the dangers of fraud, overreaching, or compromised independence"); *Stanley v. Georgia*, (1969) 394 U.S. 557, 567 ("the State may no more prohibit mere possession of obscene matter on the ground that it may lead to antisocial conduct than it may prohibit possession of chemistry books [because] they may lead to the manufacture of homemade spirits").

### e. Section's 27510's So-Called "Exemptions"

On October 11, 2019, SB 61 amended Section 27510 by placing even more restrictions on the law's already illusory so-called "exemptions." The amended portions of Section 27510 now provide:

(b) (1) Subdivision (a) does not apply to or affect the sale, supplying, delivery, or giving possession or control of a firearm **that is not a handgun or a semiautomatic centerfire rifle** to a person 18 years of

24

age or older who possesses a valid, unexpired hunting license issued by the Department of Fish and Wildlife.

(2) Subdivision (a) does not apply to or affect the sale, supplying, delivery, or giving possession or control of a firearm **that is not a handgun or a semiautomatic centerfire rifle** to a person who is 18 years of age or older and provides proper identification of being an honorably discharged member of the United States Armed Forces, the National Guard, the Air National Guard, or the active reserve components of the United States…. SB 61 (2019-2020 Reg. Sess.), Cal. Penal Code § 27510(a)-(b) (bold added).

Thus, even if a Young Adult obtained a hunting license in order to exercise their Second Amendment rights, under the new law, they are *still prohibited* from acquiring all semiautomatic, centerfire rifles *and* handguns of any kind. Moreover, this burden is not one that can be immediately remedied. *Wilson v. Lynch* 835 F.3d 1083, 1093 (9th Cir. 2016). (Plaintiff "could acquire firearms and exercise her right to self-defense at any time by surrendering her [medical marijuana] registry card, timely demonstrating to a firearms dealer that there is no reasonable cause to believe she is an unlawful drug user.").

To obtain a hunter's license, an individual must first sign up, pay a fee, and complete an online hunter's education course. Applicants also must pay another fee and attend a 4-hour in-person hunter's education class. See Bogan Dec. at ¶¶ 11-12, **Ex. 2.** Only after completing and passing this course can applicants then purchase a hunting license. *Id*. at ¶¶ 18-19. This process can take over a month to complete. Compare *Planned Parenthood Arizona, Inc. v. Humble*, 753, F.3d 905, 917 (2014) (Ninth Circuit invalidated an Arizona law, for example, partly because it "delayed"

25

women seeking an abortion.) Similarly, the Ninth Circuit struck down a county's 5-day waiting period for nude-dancing licenses because it "unreasonably prevent[ed] a dancer from exercising first amendment rights while an application [was] pending." *Kev, Inc., v. Kitsap County*, 793 F.2d 1053, 1060 (9th Cir. 1986). Further, even a *10-minute* delay of a traffic stop is considered a substantial burden. *Cf. Rodriguez v. United States*, 575 U.S. __ (2015) (holding that the Fourth Amendment prohibits the police from delaying a traffic stop seven or eight minutes to conduct a dog sniff.) Finally, the additional fees associated with taking a hunter's education course have been held invalid in other constitutional contexts. *Cf. Forsyth County v. Nationalist Movement*, (1992) 505 U.S. 123 (holding that the First Amendment forbids a county from charging even a small permitting fee to offset the costs of providing security for a white-nationalist rally).

Section 27510's "exemptions under Section 27510(b) are entirely illusory and unconstitutional. Section 27510 permits the sale, supplying, delivery, or giving possession or control of a firearm to an active peace officer, federal officer, or reserve peace officer 18 or older. However, no person should be *required* to enter into a highly dangerous career of law enforcement or military in which they could easily die in order to exercise a constitutional right. Further, to even apply for many law enforcement positions, applicants must be at least 19 and even 20 years old; and, to be active and permitted to carry a firearm, most agencies require the individual to be 21. Combs Dec. ¶¶ 20-25, **Exs. 7-12**. Thus, law enforcement minimum age requirements

26

do *not* allow Plaintiffs or others similarly situated to take part in this "exemption." *Id.*

Additionally, in order to apply for a law enforcement position, applicants are required

to go through vigorous testing which can last up to a year, even before P.O.S.T.

training, rendering the "exemption" illusory. *Id.*

Section 27510's last so-called "exemption" proves that Section 27510 has

nothing to do with safety instruction or training as it prohibits a person honorably

discharged from the military 18 or older from acquiring *any handgun and any*

*semiautomatic centerfire rifles.* Honorably retired military receive and passed the

same training as active military in the use of firearms — however Section 27510 still

bans them from acquiring common firearms. In other words, an 18 year old who is

prohibited from acquiring firearms could enter the military and become exempt, then,

if he retires before 21, the person would be banned again. Section 27510 is a ban; it

does not have "ample" exemptions. The so-called "exemptions" are illusory,

inapplicable, and contradict the State's own "reasoning" for the law. See Combs Dec.

¶¶ 26-32, **Exs. 13-14.**

> ### D.     The Other Preliminary Injunction Factors Warrant Relief

Plaintiffs also satisfy the other preliminary injunction factors. "It is well

established that the deprivation of constitutional rights 'unquestionably constitutes

irreparable injury." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting

*Elrod v. Burns*, (1976) 427 U.S. 347, 373); 11A Charles Alan Wright et al., *Federal*

*Practice and Procedure* § 2948.1 (2d ed. 1995) ("When an alleged deprivation of a

constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary."). Plaintiffs have been deprived of their Second Amendment rights.

Further, the Ninth Circuit has applied the First Amendment's "irreparable-if-only-for-a-minute" rule to cases involving other rights and, in doing so, has held a deprivation of these rights represents irreparable harm per se. *Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997). S*ee also Ezell v. Chicago*, 651 F.3d 684, 700 (7th Cir. 2011) (a deprivation of the right to arms is "irreparable," with "no adequate remedy at law").

When challenging government action that affects the exercise of constitutional rights, "[t]he public interest … tip[s] sharply in favor of enjoining the" law. *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009). Plaintiffs seek to restore their Second Amendment rights and continue to be able to acquire firearms for self-defense and all other lawful purposes. Thus, not only are Plaintiffs' rights at stake, but so are the rights of all Young Adults in California — as well as those who will become Young Adults in the future. Thus, the public interest tips sharply in Plaintiffs' favor. *Id.* at 1208.

Defendants have no plausible argument that enjoining enforcement of California's age-based gun ban will endanger public safety or lead to an increase in mass school shootings. Marvell Dec. ¶¶ 1-19, **Exs. 1-10**; Lott Dec. ¶¶ 1-19, **Exs. 1- 8**. Young Adults were able to purchase/acquire all long guns up until January 1, 2019;

and those that did can keep them.

Further, if properly enjoined, all firearm purchases must still go through federal and state background checks; they also must still: (a) take and pass the firearms safety test (Bogan Dec., ¶¶ 24-32, **Exs. 3-4**); (b) present a valid firearm safety certificate for any such purchase; (c) provide multiple proofs of age and residency; (d) complete a ten-day waiting period; (e) complete a safe handling demonstration of the firearm being purchased; (f) sign a gun safe affidavit or purchase a firearm cable lock; and (g) complete a background check for ammunition. This list is not exhaustive but provides a brief summary of the vast array of firearms regulations already in place that, according to Defendants, ensure public safety.

Further, Defendants have cited no evidence that Young Adults who pass and complete the above conditions are more prone to commit an act of violence with that firearm than any other lawful adult. Again, all evidence suggests that age-based firearm restrictions have no effect on homicides, suicides, and mass shootings. *See* Marvell Dec. ¶¶ 5-19, **Exs. 2-11**. On the other hand, continuing to allow Young Adults to purchase firearms serves the public interest as it allows this class — one that is most likely to fall victim to violent crime — to protect themselves. Lott Dec. ¶ 21.[9]

The final factor considers "the balance of hardships between the parties." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1137 (9th Cir. 2011). The

---

[9] *See also* Dillon Dec., ¶ 3, **Ex. 1** (Bureau of Justice Statistics, Special Report, Age Patterns of Victims of Serious Violent Crime at 1-7).

29

state "cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required to avoid constitutional concerns." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013); *see also Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) ("[I]t is clear that it would not be equitable… to allow the state… to violate the requirements of federal law.") (citations omitted).

The balance of harms tips sharply in Plaintiffs' favor. Prohibiting *lawful sales*, transfers, acquisitions, use, handling, and rentals of any firearm does not increase public safety, especially where, as here, all such purchases must comply with a vast array of regulations, identified as "the most stringent gun laws in the country." Combs Dec. ¶ 12, **Ex. 2**, at 8. Plaintiffs merely seek to "preserve, rather than alter, the status quo while they litigate the merits of th[eir] action." *Rodde v. Bonta*, 357 F.3d 988, 999 n. 14 (9th Cir. 2004). Granting Plaintiffs' request for an injunction will merely allow law-abiding Young Adults to purchase/acquire firearms in compliance with state law. By enjoining Section 27510, Plaintiffs, as well as those similarly situated, will be free to exercise their fundamental Second Amendment right.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs' request that the Court declare the law to be unconstitutional and enjoined.

November 12, 2019                    Respectfully submitted,

                                     Gatzke, Dillon & Ballance LLP

                                     By: _____
                                            John Dillon

30