1  John W. Dillon (Bar No. 296788)
   Gatzke Dillon & Ballance LLP
2
   2762 Gateway Road
3  Carlsbad, California 92009
   Telephone: (760) 431-9501
4  Facsimile: (760) 431-9512
5  E-mail:  jdillon@gdandb.com

6
   Attorney for Plaintiffs
7

8              **UNITED STATES DISTRICT COURT**

9             **SOUTHERN DISTRICT OF CALIFORNIA**

10

11 | MATTHEW JONES; THOMAS FURRH;     | Case No.: 3:19-cv-01226-L-AHG
   | KYLE YAMAMOTO; PWGG, L.P. (d.b.a. |
12 | POWAY WEAPONS AND GEAR and        | Hon. M. James Lorenz and Magistrate
   | PWG RANGE); NORTH COUNTY          | Judge Allison H. Goddard
13 | SHOOTING CENTER, INC.; BEEBE      |

14 FAMILY ARMS AND MUNITIONS LLC     **DECLARATION OF BRANDON**
   (d.b.a. BFAM and BEEBE FAMILY      **COMBS IN SUPPORT OF**
15 ARMS AND MUNITIONS); FIREARMS     **PLAINTIFFS' MOTION FOR**
   POLICY COALITION, INC.; FIREARMS   **PRELIMINARY INJUNCTION**
16 POLICY FOUNDATION; CALIFORNIA     **(Part 1 of 2)**
   GUN RIGHTS FOUNDATION; and
17 SECOND AMENDMENT                   Complaint Filed: July 1, 2019
   FOUNDATION,                        Second Amended Complaint Filed:
18                                    November 8, 2019
19                        Plaintiffs,

20 v.                                 Date: Monday, December 16, 2019
                                      Time: 10:30 a.m.
21 XAVIER BECERRA, in his official    Department: 5B (5th Floor)
   capacity as Attorney General of the
22 State of California, et al.,

23                       Defendants.  No oral argument should be heard unless
                                      ordered by the Court
24

25

26

27

28

---

I, Brandon Combs, declare as follows:

1.  I have personal knowledge of the facts stated herein and, if called as a witness, could and would competently testify to such facts.

2.  I am the President of the Institutional Plaintiff Firearms Policy Coalition, Inc. (FPC), a non-profit organization incorporated under the laws of Delaware, with its principal place of business in Sacramento, California. FPC's members and supporters reside both within and outside the State of California, including in San Diego County, California. FPC serves its members, supporters, and the public through direct legislative advocacy, grassroots advocacy, litigation, legal and policy efforts, research, education, outreach, and other such programs. The purposes of FPC include defending the United States Constitution and the people's rights, privileges, and immunities deeply rooted in this Country's history and tradition, especially the fundamental right to acquire, keep, and bear arms under the Second Amendment.

3.  In addition to the individually-named Plaintiffs, who are each and every one of them FPC members, FPC has other members and supporters in California or who may move into California, who possess all the indicia of membership — individuals of more than 18 and less than 21 years of age who, but for the challenged law, are not otherwise legally prohibited from acquiring or possessing firearms but who are not exempt from the challenged law and Defendants' policies, practices, and customs that infringe on their fundamental, individual rights ("Constitutionally

1

Injured Legal Adults" or "Young Adults"). FPC also has members and supporters that will become Constitutionally Injured Legal Adults in the near future.

4.     FPC strongly opposed the legislation, Senate Bill 1100, (2017-2018 Reg. Sess.) ("SB 1100") that led to enactment of the challenged law and Defendants' policies, practices, and customs that infringe on the fundamental, individual rights of Constitutionally Injured Legal Adults. As an institutional Plaintiff, FPC represents its Constitutionally Injured Legal Adult members and supporters, and similarly situated members of the public, who include gun owners throughout California and others affected by California's unconstitutional and burdensome gun control schemes, such as licensed firearm retailers, who were and are adversely and directly harmed and injured by Defendants' enforcement of the challenged law, policies, practices, and customs.

5.     The challenged law and Defendants' actions and omissions have caused FPC to expend and divert resources that would otherwise be available for other purposes to protect the rights and property of its members, supporters, and the general public, including by and through this litigation.

6.     I obtained and reviewed the available legislative history of SB 1100. Attached hereto as **Exhibit 1** is a true and correct copy of the California Department of Finance Department SB 1100 finance analysis, summary, and comments. The Department's analysis for fiscal years 2018-19 and 2020-21 shows estimated adverse

2

fiscal impacts to California with the passage of this new law. Specifically, for those fiscal periods, the Department estimated incurring increase costs of more than $1.5 million, plus the need for three additional staff positions to administer "the expected increase in arrest prints, update departmental documentation and procedures, and [support] the ongoing maintenance…for the required systems." (**Ex.1,** p. 2.) The Department also anticipated annual revenue losses of more than $235,000.00, from special accounts and funds due to lost sales resulting from increasing "the minimum age to purchase firearms." (*Ibid*.)

7.    Further, the Department *opposed* SB 1100 "because it expands an existing crime which would lead to additional cases entering the court system, increase the statewide adult jail population, and impact the ability of counties to manage their offender population…." (**Ex. 1**, p. 3.) The Department pointed out that the new law will "impose additional criminal sanctions [which] will further strain the local criminal justice system…[and create] General fund cost measures that are not included in the Administration's fiscal plan." (**Ex. 1**, pp.2-3.)

8.    The challenged law (Penal Code section 27510(a)) and Defendants' policies, practices, and customs apply to *any* person or entity licenced by the federal and state government, to sell or transfer firearms.

9.    In short, anyone who engages in the highly regulated, licensed firearms business is barred from selling, supplying, delivering, transferring, or giving

3

possession or control of, *any* firearm to any Young Adult — all of whom have an individual right to acquire, keep, and bear arms for lawful purposes, including but not limited to self-defense.

10.     In spite of the State of California's clear animus towards it and those who exercise it, the Second Amendment right to keep and bear arms is not a second-class right. I am not aware of any other constitutionally enumerated, fundamental, individual right — particularly a 'negative right' against government infringement — that would be subject to a ban, or even significant restrictions, for Young Adults who are not adjudicated as mentally defective, incarcerated, imprisoned, subject to probation or parole, or the like. Other fundamental rights, including the right to freedom of speech, protest, assembly, due process, speedy trial, and worship, for example, are all fully available to law-abiding Young Adults. A ban on such rights, affecting law-abiding legal adults over the age of 18 and under the age of 21, would almost certainly be fiercely rejected and enjoined from enforcement.

11.     The challenged law, (Penal Code section 27510), and Defendants' policies, practices, and customs, have denied, and will continue to deny, millions of Constitutionally Injured Legal Adults their fundamental, individual right to acquire, keep, and bear arms secured under the Second and Fourteenth Amendments to the United States Constitution.

4

12.     Attached hereto as **Exhibit 2** is a true and correct copy of the Senate Committee on Public Safety (April 17, 2018) from the legislative history of the challenged law (SB 1100).

13.     Attached hereto as **Exhibit 3** is a true and correct copy of the Assembly Committee on Public Safety, Background Information Request from the legislative history of the challenged law (SB 1100).

14.     Attached hereto as **Exhibit 4** is a true and correct copy of the Assembly Committee on Public Safety (June 19, 2018) from the legislative history of the challenged law (SB 1100).

15.     Attached hereto as **Exhibit 5** is a true and correct copy of the Department of Justice letter to Hon. Anthony Portantino (August 3, 2018) from the legislative history of the challenged law (SB 1100).

16.     I have reviewed the Joint Case Management Statement ("CMS") submitted on October 1, 2019. Dkt. No. 11.  In the CMS, Defendants' counsel states that "SB 1100's amendments to Section 27510 provide *ample* avenues for responsible adults between the ages of 18 and 20 to purchase or receive long guns by transfer." Dkt. No. 11, p. 11 (emphasis added).  First, this statement highlights that Section 27510 bans the sale, supply, delivery, and giving possession or control of *any* handgun *and* any long guns (e.g., rifles, shotguns) to *any* Constitutionally Injured Legal Adult who is not otherwise prohibited from acquiring or possessing firearms for

lawful purposes. Said differently, this constitutes an absolute ban applicable to all ordinary, law-abiding Young Adults in California. Second, as explained below, the exemptions listed in Section 27510 are not "ample." Instead, as shown below, the few Section 27510 exemptions amount to window dressing to blur the *de facto* ban enacted by the Legislature and enforced by Defendants against all ordinary, law-abiding Young Adults.

17. However, on October 11, 2019, only *10 months* after the SB 1100's amendments went into effect, Governor Gavin Newsom signed Senate Bill 61 (SB 61) into law. SB 61 made amendments to Section 27510 and further restricted its so-called "exemptions." Now, even if a Young Adult were to go through the process of obtaining a hunting license they would still be prohibited from purchasing, transferring, acquiring, or obtaining possession of all handgun *and all semiautomatic centerfire rifles.* This new restriction also applies to Young Adults that successfully enter into the military and *who are subsequently honorably retired.*

18. I obtained and reviewed the available legislative history of SB 61. Attached hereto as **Exhibit 6** is a true and correct copy of SB 61's legislative history.

19. As amended by SB 61, Section 27510 states:

(a) A person licensed under Sections 26700 to 26915, inclusive, shall not sell, supply, deliver, or give possession or control of a firearm to any person who is under 21 years of age.

(b) (1) Subdivision (a) does not apply to or affect the sale, supplying, delivery, or giving possession or control of a firearm that is **not a**

6

**handgun or a semiautomatic centerfire rifle** to a person 18 years of age or older who possesses a valid, unexpired hunting license issued by the Department of Fish and Wildlife.

(2) Subdivision (a) does not apply to or affect the sale, supplying, delivery, or giving possession or control of a firearm that is **not a handgun or a semiautomatic centerfire rifle** to a person who is 18 years of age or older and **provides proper identification of being an honorably discharged member of the United States Armed Forces, the National Guard, the Air National Guard, or the active reserve components of the United States.** For purposes of this subparagraph, proper identification includes an Armed Forces Identification Card or other written documentation certifying that the individual is an honorably discharged member

(3) Subdivision (a) does not apply to or affect the sale, supplying, delivery, or giving possession or control of a firearm that is not a handgun to any of the following persons who are 18 years of age or older:

(A) An active peace officer, as described in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2, who is authorized to carry a firearm in the course and scope of employment.

(B) An active federal officer or law enforcement agent who is authorized to carry a firearm in the course and scope of employment.

(C) A reserve peace officer, as defined in Section 832.6, who is authorized to carry a firearm in the course and scope of employment as a reserve peace officer.

(D) A person who provides proper identification of active membership in the United States Armed Forces, the National Guard, the Air National Guard, or active reserve components of the United States. For purposes of this subparagraph, proper identification includes an Armed Forces Identification Card or other written documentation certifying that the individual is an active member.

Cal. Pen. Code § 27510(a)-(b)(1) and (b)(2) (A)-(E).

7

20.     Based on my review of publically available information regarding the application requirements of the various law enforcement agencies and the U.S. Military, these so-called "exemptions" do not allow Young Adults to exercise their fundamental, individual right (*e.g.*, buying a firearm).

21.     For example, in California, based on my review of local law enforcement agencies webpages, many law enforcement agencies require that individuals be at least 20 years old before they are *even eligible to apply* for the initial pre-hiring testing and screening requirements for law enforcement training.  Attached hereto as **Exhibit 7** is a true and correct copy of the San Diego Sheriff's Department "Sheriff's Hiring Process" found on the San Diego Sheriff's website. It states the minimum age for a Deputy Sheriff Patrol position is "20 ½ years of age at time of application; 21 years of age at time of appointment."  Attached hereto as **Exhibits 8, 9, 10, and 11** are true and correct copies of other California law enforcement agencies hiring requirements and application processes (*e.g.*, San Diego Police Department, Chula Vista Police Department, Los Angeles Police Department, and Los Angeles Sheriff Department).   Each of these agencies has minimum age requirement of *over 18* and as high as 20, just *to apply* for a position, and a minimum age of 21 at graduation.  Additionally, after calling the California Highway Patrol (CHP) recruiting office (online at https://www.chp.ca.gov/CHP-Careers/Officer) at (888) 843-3275, I spoke with a CHP representative and learned that the CHP requires

8

CHP officer applicants to be 20-years-old at the time of initial application, and cannot join their force until a qualified candidate is 21 years old.

22. Further, San Diego Sheriff applicants must take part in and pass testing/screening to even be accepted into training.[1] For example, as a part of the San Diego Sheriff Department's application process, applicants must:

(1) Fill out the initial online application;

(2) Wait for and then answer a subsequent questionnaire with 27 supplemental questions;

(3) Watch a mandatory video;

(4) Register and take a written exam;

(5) Wait 3-to-6 weeks for exam results;

(6) Upon passing the exam, applicants are placed on an "eligibility list for one year" and if selected, they are invited to meet with a background investigator to move on to the next step of the application process;

(7) Applicants then fill out a "Prescreen Questionnaire (Personal History Statement) and watch an additional mandatory video;

(8) Undergo and pass a comprehensive "background investigation;"

(9) Take and pass a "Computer Voice Stress Analysis" … or polygraph test;

---

[1] Based on my review of a number of California law enforcement agency websites, other law enforcement agencies also have similar application and hiring processes. *See* **Exhibits 8-11.**

9

(10)   Take and pass an Employment Interview or "Lieutenant's Interview;"

(11)   Take and pass a "Physical Agility Test …;"

(12)   Take and pass a "Psychological Evaluation," which includes a written exam and a meeting with a psychologist;

(13)   Take and pass a medical exam; and

(14)   Applicants can then *wait to potentially receive a job offer* and be assigned to an academy where they will undergo further training only after all such requirements have been completed and passed.

**Exhibit 7**.

23.   Completion of all the above *does not guarantee* that the applicant will become an active law enforcement officer. Thus, completion the requirements does not even guarantee the ability to purchase a firearm.

24.   Further, for an ordinary law-abiding Constitutionally Injured Legal Adult to make use of this so-called "exemption," they must *switch careers, apply for, and obtain a highly dangerous job that could result in their death.* All for the ability to exercise their fundamental rights to purchase and acquire a firearm for self-defense and other lawful purposes. This could hardly be considered an "exemption" to Section 27510's ban.

25.   Similar, *more extreme* requirements are required to meet another Section 27510 exemption — namely, becoming an "active federal officer or law enforcement agent." Attached hereto as **Exhibit 12** is a true and correct copy of the eligibility and

10

employment requirements from FBI Jobs.gov.  This publicly available website lists the minimum requirements to become an active special agent with the FBI.  Notably, for a special agent position, applicants must be at least 23 years old. See **Exhibit 12**.

26.    Moreover, similar testing, contract, and oath requirements are imposed, to apply for and become an active member of the armed forces. Attached hereto as **Exhibit 13** is a true and correct copy of "Today's Military – Enlisting in the Military," which depicts the general requirements to enlist in the military.  For example, applicants must:

(1)    Visit a Military Entrance Processing Station (MEPS). "The MEPS is a joint service organization that determines an applicant's physical qualifications, aptitude and moral standards as set by each branch of military service."  Each MEPS is staffed with military and civilian professionals who carefully screen each applicant to ensure they meet the physical, academic, and moral standards set by each Service."  See **Exhibit 13**.

(2)    Take the Armed Services Vocational Aptitude Battery (ASVAB). The ASVAB is a 3-hour multiple choice exam that "helps determine the careers for which an individual is best suited" and "has questions about standard school subjects like math, English, writing, and science." See **Exhibit 13**.

(3)    Take and pass the physical exam

(4)    Meet with a service enlistment counselor to find a job specialty.

(5)    Take the Oath of Enlistment. See **Exhibit 13**.

(6)    Afterwards, applicants will do one of two things, depending on the terms of their enlistment: (i) *Direct Ship*: Report to basic training shortly after completing MEPS testing requirements. (It varies

based on job assignment and branch.) A recruiter will provide instructions on transportation to basic training at this time; or (ii) *Delayed Entry Program (DEP):* Commit to basic training at a time in the future, generally within one year. See **Exhibit 13**.

27.     Depending on the applicant's job assignment and branch of the armed services, they will have to complete, at minimum, some form of basic training.

28.     I have also reviewed publically available information regarding basic training in the U.S. Army.  Attached hereto as **Exhibit 14** is a true and correct copy of Military.com - "What to Except In Army Boot Camp."

29.     The requirements to take and pass Army basic training are extremely extensive and dangerous. For example, Army basic training is a 10-week course in which applicants learn Army rules, regulations, and processes in classroom instruction. They are required to conduct daily physical fitness, marksmanship training, and courses on map reading and first aid.  Additionally, applicant must take and pass the "Basic Rifle Marksmanship Qualification Course" and "Fit to Win Obstacle Course." Later, hand grenade training, live fire exercises, and foot marching are all tested in the "Confidence Course."  In Week 8, applicants take part in "combat skill development" right before taking part in the final test of a three-day field retreat to Victory Forge.  After 10 weeks of training, applicants may graduate and then can be assigned to any part of the country for service.  See **Exhibit 14**.

12

30.     Again, this could hardly be considered an "ample" exemption. This exemption requires a binding military service contract that can last for years, weeks of initial demanding and dangerous training, and the potential to be relocated anywhere in the country for service. There is also the potential to take part in and fight in wars. Again, all such requirements must be satisfied before a Young Adult can buy a gun.   As shown above, the Section 27510 exemptions are extremely narrow, and inapplicable to all ordinary, law-abiding Young Adults in California.

31. Prior to SB 61, Section 27510 permitted "[a] [Constitutionally Injured Legal Adult] who provides proper identification that he or she is an honorably discharged member of the United States Armed Forces, the National Guard, the Air National Guard, or the active reserve components of the United States" to purchase a firearm.  However, that individual must still complete the numerous requirements and tests stated above, *and then be honorably discharged* in order to be able to use this exemption. Again, exemption this does not apply to ordinary, law-abiding Young Adults.  Further, by the time that individual is honorably discharged, they are likely over 21 years of age, rendering the exemption an illusion.

32.     With the signing of SB 61, the State has further restricted this exemption and now prevents honorably retired Young Adults ages 18-20 from purchasing, transferring, acquiring, or gaining possession of all semiautomatic centerfire rifles. No explanation is given for this amendment. The additional restriction shows that

13

Section 27510 is not a safety and training provision to buy firearms – because honorably retired military have gone through the same training as active military. One is permitted to purchase semiautomatic centerfire rifles; and one is prohibited. The only logical conclusion is that training has nothing to do with the law. Instead, it is an under 21 firearms ban.

33.     In reviewing the legislative history of SB 61, of the approximately 400 pages of legislative history, there are only three general statements on two pages that discuss any reason for the new amendments to Section 27510 and the three general statements are pure speculation.

34.     The three statements are as follows:

More and more shootings are occurring with long guns so it is important that we treat the laws of both handguns and long guns the same. The law that passed last year requiring no one under the age of 21 to purchase a firearm has exemptions that we are strengthening and tightening when it comes to the purchase of semi-automatic center fire rifle by requiring the person to obtain a [certificate of eligibility] with the DOJ as well. See **Exhibit 6**, at 180.

The issue is that semi-automatic centerfire rifles are a more common choice of firearm when committing a mass shooting and is rarely used for Hunting. It is prevalent that we eliminate someone under the age of 21 years from obtaining this type of firearm. See **Exhibit 6**, at 406.

With the recent shooting in San Diego, CA by a 19 year old with news outlets reporting he obtained the firearm legally, but has not come out of how he obtained it legally. It is important we insure there are no loopholes with-in the system which is why the existing hunting license and honorably retired military exemption be tightened up as to semiautomatic centerfire rifle. See **Exhibit 6**, at 406.

14

35.     First, no certificate of eligibility exemption was ever implemented in the signed bill.

36.     Second, all murders in which a firearm was used in the United States totaled 10,265. Murders involving *all rifles* (not just semiautomatic centerfire rifles) totaled 297. Attached hereto as **Exhibit 15** is a true and correct copy of the Federal Bureau of Investigation, Criminal Justice Information Services Division, 2018 Crime in the United States, Table 8. In California, murders committed with rifles and shotguns totaled 51, compared to 252 murders committed by knives, and 87 murders committed by "hand, fists, feet." See **Exhibit 15**. Attached hereto as **Exhibit 16** is a true and correct copy of the Federal Bureau of Investigation, Criminal Justice Information Services Division, 2018 Crime in the United States, Table 20. These common firearms are hardly a significant problem. See **Exhibit 16.**

37.     Third, most mass shootings are committed with handguns. See attached hereto as **Exhibit 17,** is a true and correct copy of the digital article, *ALLERRT Active Shooter Data: Characteristics of Active Shootings*, Advanced Law Enforcement Rapid Response Training. Available at: http://activeshooterdata.org/the-event.html

38.    Fourth, there is no support provided for the Legislature's contention that semiautomatic centerfire rifles are *rarely* used for hunting. In fact, semiautomatic centerfire rifles are used in hunting and many other lawful purposes. See **Exhibit 18** attached hereto, which is a true and correct copy of various digital articles discussing semiautomatic centerfire firearms being used for hunting and websites selling semiautomatic centerfire rifles for hunting purposes. Importantly, "semiautomatic centerfire rifles" include many other models of rifles beyond the common AR15 style firearm. These articles are available at:

https://www.nssf.org/msr/

https://biggamelogic.com/deer-rifles/

https://www.fieldandstream.com/ultimate-ar-for-deer-hunting/

https://ruger.com/products/mini14RanchRifle/specSheets/5801.html

https://www.browning.com/products/firearms/rifles/bar/current-production.html

https://www.benelliusa.com/rifles

https://time.com/4390506/gun-control-ar-15-semiautomatic-rifles/

39.    Finally, the Legislature admits that they are placing further restrictions on Young Adults based on a single shooting in which they do not

16

have all the facts – "with news outlets reporting he obtained the firearm legally, but has not come out of how he obtained it legally."

40.    Thus, five of the six Section 27510 exemptions have: (i) minimum age requirements; (ii) minimum education requirements; (iii) physical fitness requirements; (iv) binding Military Service commitments (which are subject to criminal penalties if violated); (v) mandatory involvement in highly dangerous activities and training; (vi) psychological testing; (vii) and relocation.  This list is not exhaustive.  And even if a Young Adult applicant were to meet the requirements and pass the tests, they could still not obtain the desired position and, therefore, not meet the illusory section 27510 exemptions.  To be sure, these are not actual and accessible exemptions, but rather *additional restrictions and tests* required by the State and enforced by Defendants to preclude Young Adults from exercising their Second Amendment right to keep and bear arms for self-defense and other lawful purposes.

41.    Even Section 27510's "most accessible" [2] hunting license exemption – after meeting all requirements, making all payments, and passing all tests – is irrelevant and inapplicable to ordinary, law-abiding Constitutionally Injured Legal Adults who wish to purchase a firearm for self-defense in the home and for other

---

[2] In this instance, the term "most accessible" is only used to identify that the exemption listed in Section 27510(b)(1) — requiring a valid hunting license — is the only exemption that does not require a Young Adult to enter into a highly dangerous career.

17

lawful purposes, including proficiency training and competition at shooting ranges. Further, with the amendments made by SB 61, Young Adults that obtain a hunting license are still prohibited from purchasing semiautomatic centerfire rifles.

42.    Notably, a person cannot simply purchase a hunting license "over the counter" without meeting significant requirements and requiring significant time and money.  *See* Bogan Declaration filed concurrently herewith.  Young Adults should not have to feign an interest in, pay for, and take a *hunting safety and conservation course*, or acquire a hunting license in order to exercise their Second Amendment rights.

I declare under penalty of perjury that the foregoing is true and correct. Executed within the United States on November 12, 2019.

_____
Brandon Combs

Line numbers 1 through 28 appear in the left margin.

| | **EXHIBITS**<br>**TABLE OF CONTENTS** | |
|---|---|---|
| **Exhibit** | **Description** | **Page(s)** |
| 1 | Excerpt from Legislative History of California Penal Code § 27510 *As Amended By* Statutes of 2018, Chapter 894, § 1, Senate Bill 1100 – Portantino ("Legislative History") – Department of Finance Materials, Department of Finance Bill Analysis (as provided by LRI History LLC, 2018-894, pages 250-252). | 0001-0004 |
| 2 | Legislative History – Senate Committee on Public Safety, Bill Analysis, SB 1100 (as provided by LRI History LLC, 2018-894, pages 50-56). | 0005-0012 |
| 3 | Legislative History – Assembly Committee on Public Safety Background Information Request Form – Measure SB 1100 (as provided by LRI History LLC, 2018-894, pages 69-71). | 0013-0016 |
| 4 | Legislative History – Assembly Committee on Public Safety, SB 1100 (Portantino) – As Amended June 11, 2018 (as provided by LRI History LLC, 2018-894, page 72-75). | 0017-0021 |
| 5 | Legislative History – August 3, 2018 Letter to Senator Portantino from Mario De Bernardo, Deputy Attorney General, for Xavier Becerra, Attorney General (as provided by LRI History LLC, 2018-894, pages 248-249). | 0022-0024 |
| 6 | The Core Legislative History of Pending California Senate Bill 61- Portantino (2019-2020) (as provided by LRI History LLC) | 0025-0437 |
| 7 | San Diego Sheriff's Department "Sheriff's Hiring Process" found on the San Diego Sheriff's website | 0438-0441 |
| 8 | San Diego Police Department Hiring Requirements and Application Processes | 0442-0445 |
| 9 | Chula Vista Police Department Hiring Requirements and Application Processes | 0446-0450 |
| 10 | Los Angeles Police Department Hiring Requirements and Application Processes | 0451-0456 |
| 11 | Los Angeles Sheriff Department Hiring Requirements and Application Processes | 0457-0459 |

*Declaration Of Brandon Combs In Support of Plaintiffs' Motion For Preliminary Injunction*

| 12 | Eligibility and Employment Requirements from FBI Jobs.gov | 0460-0466 |
|----|------------------------------------------------------------|-----------|
| 13 | "Today's Military – Enlisting in the Military" | 0467-0473 |
| 14 | Military.com - "What to Except In Army Boot Camp" | 0474-0481 |
| 15 | Federal Bureau of Investigation, Criminal Justice Information Services Division, 2018 Crime in the United States, Table 8 | 0482-0484 |
| 16 | Federal Bureau of Investigation, Criminal Justice Information Services Division, 2018 Crime in the United States, Table 20 | 0485-0488 |
| 17 | ALLERRT Active Shooter Data: Characteristics of Active Shootings, Advanced Law Enforcement Rapid Response Training | 0489-0498 |
| 18 | Various digital articles discussing semiautomatic centerfire firearms being used for hunting and websites selling semiautomatic centerfire rifles for hunting purposes | 0499-0554 |

20

# EXHIBIT "1"

**Exhibit 1**
**0001**



# LRI History LLC

PO Box 2166, Placerville, CA 95667
(916) 442.7660 · intent@lrihistory.com
www.lrihistory.com

# Department of Finance Materials

LRI History LLC hereby certifies that the accompanying record/s is/are true and correct copies of the original/s obtained from one or more official, public sources in California unless another source is indicated, with the following exceptions :  In some cases,  pages may have been reduced in size to fit an 8 ½"  x 11" sized  paper.  Or, for readability purposes, pages may have been enlarged or cleansed of  black marks or spots. Lastly, for ease of reference, paging and relevant identification have been inserted.

**Exhibit 1**
**0002**

**Provided by LRI History LLC**

**2018-894  Page 250 of 358**

**AMENDMENT DATE:** 06/28/2018  **BILL NUMBER:** SB 1100
**POSITION:** Oppose            **AUTHOR:** Portantino, Anthony

<u>**BILL SUMMARY**</u>: **Firearms: transfers.**

This bill prohibits the sale or transfer of any firearm by a licensed dealer to any person under 21 years of age, except as specifically exempted.

## FISCAL SUMMARY

The Department of Justice estimates costs of $342,000 and 3.0 positions in fiscal year 2018-19, $654,000 in 2019-20, and $556,000 in 2020-21 and ongoing to administer this bill. Specifically, the California Justice Information Services Division requires 3.0 positions and additional staff time to address the expected increase in arrest prints, update departmental documentation and procedures, and the ongoing maintenance support for the required systems. The Bureau of Firearms also requires additional staff time to update existing regulations. The Dealers' Record of Sale Special Account, which collects fees imposed on firearm purchasers, currently has a structural deficit and is unable to cover the costs of this bill. Therefore, this bill creates a General Fund cost pressure to fund these activities. Any request for additional resources will be evaluated through the annual budget process.

The Department of Justice anticipates annual revenue loss of $152,000 to the Dealers' Record of Sale Special Account, $75,000 to the Firearms Safety and Enforcement Special Fund, and $8,000 to the Firearm Safety Account due to a reduction in Dealers' Record of Sale submissions and Firearms Safety Certificates resulting from the increased minimum age to purchase firearms. The major revenue sources for these funds are fees imposed on the firearms purchasing process, course fees, duplicate certificate fees, and test fees.

By expanding the definition of an existing crime, this bill would have an impact on the county jail population. Under certain circumstances, the California Constitution requires the state to reimburse local entities for the increased costs associated with a state-imposed program that requires local entities to implement a new program or provide a higher level of service. Any local government costs resulting from the mandate in this measure would not be state-reimbursable because the mandate only involves the definition of a crime or the penalty for conviction of a crime. We note this measure could, however, impose new costs and workload on counties, which creates additional fiscal pressure on the local criminal justice system.

## COMMENTS

The Department of Finance is opposed to this bill because it expands an existing crime which would lead to additional cases entering the court system, increase the statewide adult jail population, and impact the ability of counties to manage their offender population since certain lower-level offenders now serve their sentence in county jails and/or are supervised by county probation departments. To successfully implement public safety realignment, counties must have maximum flexibility in allocating their public safety resources. New laws that impose additional criminal sanctions at this critical time will further strain the

| Analyst/Principal<br>(0210) E.Jungwirth | Date | Program Budget Manager<br>Amy Jarvis | Date |
|---|---|---|---|
| Department Deputy Director | | | Date |
| Governor's Office: | By: | Date: | Position Approved<br>Position Disapproved |
| BILL ANALYSIS | | | Form DF-43 (Rev 03/95 Buff) |

**Exhibit 1**
**0003**

**Provided by LRI History LLC**

| AUTHOR | AMENDMENT DATE | BILL NUMBER |
|---|---|---|
| Portantino, Anthony | 06/28/2018 | SB 1100 |

<u>**COMMENTS**</u> (continued)

local criminal justice system by imposing additional fiscal pressure on county public safety resources.  In addition, this bill creates General Fund cost pressures that are not included in the Administration's fiscal plan.

Existing law prohibits the sale or transfer of a handgun, except as specifically exempted, to any person under 21 years of age.  Existing law also prohibits the sale or transfer of a firearm, other than a handgun, except as specifically exempted, to any person under 18 years of age. This bill would prohibit the sale or transfer of any firearm by a licensed dealer, except as specifically exempted, to any person under 21 years of age.

Existing law also requires a person who wishes to manufacture or assemble a firearm to first apply to the Department of Justice for a unique serial number or other identifying mark.  Applicants must be at least 18 years of age for a firearm that is not a handgun, and at least 21 years of age for a firearm that is a handgun.  This bill instead requires an applicant to be at least 21 years of age for any firearm, except that applications made before February 1, 2019, can be granted for an applicant who is at least 18 years of age but less than 21 years of age for a firearm that is not a handgun.

This bill also includes specific exemptions to these prohibitions, including, among others, an active peace officer who is authorized to carry a firearm in the course and scope of his or her employment.

According to the author's office, raising the age limit to 21 years of age to purchase a firearm insures we as Californians are taking proper steps toward public safety.

|  | SO | (Fiscal Impact by Fiscal Year) | | | | |
|---|---|---|---|---|---|---|
| Code/Department | LA | (Dollars in Thousands) | | | | |
| Agency or Revenue | CO | PROP | | | | Fund |
| Type | RV | 98 | FC | 2018-2019 FC | 2019-2020 FC | 2020-2021 Code |
| 0820/Justice | SO | No | C | 342  C | 654  C | 556 0001 |

**Exhibit 1**
**0004**

# EXHIBIT "2"

**Exhibit 2**
**0005**

| | | | | |
|---|---|---|---|---|
| **Bill No:** | SB 1100 | **Hearing Date:** | April 17, 2018 | |
| **Author:** | Portantino | | | |
| **Version:** | March 19, 2018 | | | |
| **Urgency:** | No | **Fiscal:** | Yes | |
| **Consultant:** | GC | | | |

**Subject:** *Firearms: Transfers*

## HISTORY

Source:      Author

Prior Legislation:      AB 1674 (Santiago), 2015, vetoed
AB 202 (Knox), Ch. 128, Stats. of 1999

Support:      California Chapters of the Brady Campaign; Giffords Law Center to Prevent Gun Violence

Opposition:      Firearms Policy Coalition

## PURPOSE

*The purpose of this bill is to extend the prohibition on purchasing more than one handgun a month to include all firearms and increases the age from 18 to 21 years for a person to purchase a firearm from a licensed dealer.*

*Existing law* prohibits a person from making more than one application to purchase a handgun within any 30-day period. (Pen. Code § 27535.)

*Existing law* prohibits a firearms dealer from delivering a handgun to a person whenever the dealer is notified by the Department of Justice that within the preceding 30-day period the purchaser has made another application to purchase a handgun that does not fall within an exception to the 30-day prohibition. A violation of that delivery prohibition by the dealer is a crime. (Pen. Code § 27540.)

*This bill* extends the prohibition on purchasing more than one handgun a month to all firearms, including long guns.

*Existing law* exempts the following from the one handgun a month prohibition:  (Pen. Code, § 27535, subd. (b).)

- Any law enforcement agency.
- Any agency duly authorized to perform law enforcement duties.
- Any state or local correctional facility.

**Exhibit 2**
0006

Provided by LRI History LLC

- Any private security company licensed to do business in California.
- Any person who is properly identified as a full-time paid peace officer and who is authorized to, and does carry a firearm during the course and scope of employment as a peace officer.
- Any motion picture, television, or video production company or entertainment or theatrical company whose production by its nature involves the use of a firearm.
- Any person who may make a valid claim an exemption from the waiting period set forth in Section 27540.
- Any transaction conducted through a licensed firearms dealer pursuant to Chapter 5 (commencing with Section 28050).
- Any person who is licensed as a collector and has a current certificate of eligibility issued by the Department of Justice.
- The exchange of a handgun where the dealer purchased that firearm from the person seeking the exchange within the 30-day period immediately preceding the date of exchange or replacement.
- The replacement of a handgun when the person's handgun was lost or stolen, and the person reported that firearm lost or stolen prior to the completion of the application to purchase to any local law enforcement agency of the city, county, or city and county in which the person resides.
- The return of any handgun to its owner.
- A community college that is certified by the Commission on Peace Officer Standards and Training to present the law enforcement academy basic course or other commission-certified law enforcement training.

*This bill* adds the following exceptions to the one gun a month prohibition:

- The purchase of a firearm, other than a handgun, by a person who possesses a valid, unexpired hunting license issued by the Department of Fish and Wildlife.
- The acquisition of a firearm, other than a handgun, at an auction or similar event conducted by a nonprofit public benefit or mutual benefit corporation to fund the activities of that corporation or local chapters of that corporation.

*Existing law* prohibits the sale or transfer of a handgun, except as specifically exempted, to any person below the age of 21 years. (Pen. Code § 27510.)

*Existing law* also prohibits the sale or transfer of a firearm, other than a handgun, except as specifically exempted, to any person below the age of 18 years. (Pen. Code § 27510.)

*This bill* prohibits the sale or transfer by a licensed dealer of a long gun to a person below the age of 21 years, increasing the age from 18 years to 21 years of age. The bill exempts long gun purchases or transfers when the purchaser or transferee has a valid, unexpired hunting permit.

**Exhibit 2**
**0007**
**Provided by LRI History LLC**                                    **2018-894  Page 51 of 358**

## COMMENTS

### 1. Need for This Bill

According to the author:

> While handguns are used in the majority of gun deaths, long guns have been used to perpetrate many of the largest mass shootings in U.S. history, including the tragic event that took place in San Bernardino, California.

> California is home to the most stringent gun laws in the county. One example is requiring an individual to be 21 years of age in order to purchase a handgun. Another is the general limitation on a gun dealer delivery of only one handgun to an individual in a 30 day period.

> Since these laws have taken effect, data shows that there has been a successful reduction in the incidence of gun trafficking while not burdening legitimate gun owners or persons who wish to acquire guns.

> In order to be uniformly consistent, California should apply the 30 day delivery period and 21 year age limit to long guns.

> Firearms will not be delivered whenever the dealer is notified by the DOJ that within the preceding 30-day period the purchaser has made another application to purchase a firearm. In addition, because of the interaction of state and federal law, receivers or frames (the gun minus the barrel) are also applicable to the 30-day purchase period. This bill will also define a frame or a receiver of a firearm.

> Lastly, this bill would also prohibit the sale or transfer of any firearm by a licensed dealer, except as specially exempted, to any person below the age of 21 years.

### 2. One Gun a Month

According to the Senate Public Safety Analysis of Assembly Bill 202 (Knox, of 1999), which created the one-handgun-a-month law in California:

> The State of Virginia enacted a "one-handgun-a-month" law in 1993 (before the Federal Brady Bill, which required at least a five day waiting period plus a background check for states without such requirements). That state had weak restrictions on handgun sales and it has been stated that gun traffickers from New York City routinely traveled to Virginia to purchase quantities of weapons to take back for illegal sale in other states. Purchases of more than one handgun per 30-day period in Virginia is allowed upon completion of an "enhanced" background check when the purchase is for lawful business or personal use, for purposes of collectors, bulk sales and purchases from estates, to replace a lost or stolen weapon, and similar situations.

**Exhibit 2**
**0008**

**Provided by LRI History LLC**

**2018-894 Page 52 of 358**

Supporters of limits on purchases of handguns assume that the Virginia limits and the limits in this bill would only affect a very small proportion of legitimate handgun purchasers. A family of two adults could still purchase 24 handguns a year under the provisions of both this bill and the Virginia law.

Virginia repealed this law in 2012. But, according to the Law Center to Prevent Gun Violence:

Virginia's one-gun-a-month law – which was in effect from 1993 to 2012 and prohibited the purchase of more than one handgun per person in any 30-day period – significantly reduced the number of crime guns traced to Virginia dealers. Virginia initially adopted its law after the state became recognized as a primary source of crime guns recovered in states in the northeastern U.S. After the law's adoption, the odds of tracing a gun originally acquired in the Southeast to a Virginia gun dealer (as opposed to a dealer in a different southeastern state) dropped by:

- 71% for guns recovered in New York;
- 72% for guns recovered in Massachusetts; and
- 66% for guns recovered in New Jersey, New York, Connecticut, Rhode Island and Massachusetts combined.

(http://smartgunlaws.org/multiple-purchases-sales-of-firearms-policy-summary/ [footnotes omitted].)

Other states that have limits on the number of firearms that can be sold in one month include:

- California: California law prohibits any person from purchasing more than one handgun within any 30-day period. In addition, a licensed firearms dealer may not deliver a handgun to any person following notification from the California Department of Justice that the purchaser has applied to acquire a handgun within the preceding 30-day period. Finally, firearms dealers must conspicuously post in their licensed premises a warning, in block letters at least one inch in height, notifying purchasers of these restrictions.

- District of Columbia: A person may not register more than one handgun in the District during any 30-day period. Since every handgun must be registered, this amounts to a purchase and sale limitation of one handgun per 30-day period. . .

- Maryland: Maryland prohibits any person from purchasing more than one handgun or assault weapon within a 30-day period. Under limited circumstances, a person may be approved by the Secretary of the Maryland State Police to purchase multiple handguns or assault weapons in a 30-day period. Maryland also penalizes any dealer or other seller who knowingly participates in an illegal purchase of a handgun or assault weapon. . .

- New Jersey: New Jersey prohibits licensed firearms dealers from knowingly delivering more than one handgun to any person within any 30-day period. With limited exceptions, no person may purchase more than one handgun within any 30-day period. New Jersey requires a handgun purchaser to obtain a separate permit for

**Exhibit 2**
**0009**

each handgun purchased, and present the permit to the seller. The seller must keep a copy of each permit presented.

(http://smartgunlaws.org/multiple-purchases-sales-of-firearms-policy-summary/[footnotes omitted].)

*Senate Bill 1674 (Santiago), of 2015: Veto Message*

The Governor stated in his veto message of Senate Bill 1674, which would have prohibited any person from making an application to purchase more than one firearm within any 30-day period:

> This bill generally prohibits the purchase of more than one firearm within any 30-day period. It should be noted that California already bans the purchase of more than one handgun per month.

> While well-intentioned, I believe this bill would have the effect of burdening lawful citizens who wish to sell certain firearms that they no longer need.

> Given California's stringent laws restricting gun ownership, I do not believe this additional restriction is needed.

## 3. Increasing the Age for Purchase of Long Guns

This bill would increase the minimum age from 18 to 21 years for a person to purchase all firearms in California. The age restriction would also impact the ability to transfer a weapon. Under current law a person must be 21 years of age to purchase a handgun, and this bill applies those same rules to the purchase and transfer of all firearms (including long guns). The bill creates an exception to this rule when the purchaser or transferee has a valid, unexpired hunting license issued by the Department of Fish and Wildlife.

On February 14, 2018 Nikolas Cruz shot and killed seventeen people and wounded an additional seventeen people at Marjory Stoneman Douglas High School in Parkland, Florida. The perpetrator was 19-years old at the time of the incident, and he used assault rifles. Following the incident Florida passed legislation to increase the minimum age for buying rifles to 21-years. The National Rifle Association challenged the law and filed a lawsuit in the United States District court for the Northern District of Florida alleging that the ban on gun sales to people under 21 years of age is unconstitutional because it violates their rights under the Second and Fourteenth Amendments to the U.S. Constitution because 18-year-olds are classified as adults.

On March 1, 2018 George Skelton wrote an editorial for the LA Times[1] on this bill. He stated the following regarding this provision:

> In Sacramento, state Sen. Anthony Portantino (D-La Cañada Flintridge) proposes taking an even bigger step. He introduced legislation Wednesday to increase the legal age to 21 in California for buying any gun, including a shotgun or rifle with low ammo capacity. A shooter with a hunting license would be exempt because he'd taken a gun safety course.

---

[1] http://www.latimes.com/politics/la-pol-ca-skelton-guns-schools-teachers-20180301-story.html

**Exhibit 2**
**0010**

**Provided by LRI History LLC**                              **2018-894 Page 54 of 358**

What about a skeet shooter? Or someone who just likes to plink tin cans out by the barn?

Doesn't make sense that an 18-year-old can enlist in the Army and be armed with an automatic M-16 to fight terrorists, but can't buy a bolt-action plinker back home until he's 21.

In Florida, where the gun lobby usually prevails in the Legislature, a House committee bucked the NRA on Tuesday and approved a bill to raise the rifle-buying age from 18 to 21. This came after emotional testimony from parents of students killed in the school shooting.

The committee also voted to allow arming of teachers. But it rejected a ban on assault weapons.

Everyone needs to get their priorities straight: Let the teachers teach. Treat 18-year-olds like adults. Get rid of all assault weapons.

However, there are a number of instances when lawmakers have limited the ability of person's under the age of 21 to engage in activities which are otherwise lawful. Notably, persons under the age of 21 are not allowed to ingest alcohol or marijuana under California law.

## 4. California Hunting Licenses

This bill creates an exemption from the prohibition on persons under the age of 21 purchasing or receiving a long gun if the person under the age of 21 has a valid, unexpired hunting license. In order to obtain a hunting license in California a person must:

- Complete the California Hunter Education Certification requirements
- Choose the correct type of hunting license.
- Purchase a license through the California Department of Fish and Wildlife website or a California approved agent.

The Official California Hunter Safety Course is an online course that costs $28.95. There is no minimum age for the course. The course requires a follow-up course that is a 4-hour review of the online course with a certified hunter education instructor. The course includes a student demonstration of safe firearm handling and a test. Following completion of the follow-up course the enrollee receives a Hunter Education Certificate.

## 5. Argument in Support

According to the California Chapters of the Brady Campaign:

The California Brady Campaign generally believes that handguns and long guns (rifles, shotguns and lower receivers) should be subject to the same laws. Modern sporting rifles are often high powered semi-automatic weapons with exchangeable magazines that can pose a greater threat than handguns. In the early 1990s, it was thought that handguns made up an overwhelming share of crime guns, but the data shows that is no longer the case. Of the 26,682 crime guns entered into the

**Exhibit 2**
**0011**

**Provided by LRI History LLC**                              **2018-894  Page 55 of 358**

Department of Justice Firearms Systems database in 2009, 11,500 were long guns.[i]

Existing law prohibits the sale or transfer of a handgun to a person below the age of 21 years. SB 1100 will similarly prohibit, with exceptions, the sale or transfer of a long gun by a licensed firearm dealer to a person under age 21. Additionally, the bill will require those who manufacture or assemble a long gun to be at least 21 years old in order to obtain a serial number for the firearm and register it with the California Department of Justice. These provisions makes sense as those under age 21 are disproportionly linked to crime. In 2015, 23.4 percent of those arrested for murder and non-negligent manslaughter in the U.S. were under 21[ii] and 26.5 percent of those arrested for "weapons carrying, possession, etc." were under age 21.[iii] Individuals age 18 to 20 comprise only 4% of the population but commit 17% of gun homicides.[iv]

Maturity, impulsive or reckless behavior, and responsibility vary greatly among 18-20 year olds. This is recognized in other areas – those under age 21 cannot buy alcohol, rent a car, or purchase a handgun – and the same age restriction should apply to long guns.

Additionally, SB 1100 will limit purchases of long guns from licensed firearms dealers in California to no more than one gun per person per 30-day period, with appropriate exemptions. This is current law for handguns and is a recognized strategy for curbing the illegal flow of guns by taking the profit out of selling guns from bulk purchases on the black market. It stands to reason that a person buying large quantities of guns at one time may be acting as a straw purchaser or gun trafficker. Moreover, many of these bulk purchases are for lower receivers, which can be built up into military-style weapons and sold for a big profit. Firearms acquired in bulk are frequently used in crime. A University of Pennsylvania report found that a quarter of all guns used in crime were purchased as part of a multiple-gun sale and that guns purchased in bulk were up to 64% more likely to be used for illegal purposes than guns purchased individually.[v] Limiting multiple-gun sales within a short period of time for all firearm, including long guns, is clearly in the interest of public safety.

**-- END –**

[i] Data provided by the California Department of Justice, April 6, 2010.
[ii] FBI 2015 Crime in the United States, https://ucr.fbi.gov/crime-in-the-u.s/2015/crime-in-the-u.s.-2015/tables/table-41.
[iii] Ibid.
[iv] "Uniform Crime Reporting Program Data: Supplementary Homicide Reports, 2015," US Department of Justice, Federal Bureau of Investigation, https://ucr.fbi.gov/nibrs/addendumfor-submitting-cargo-theft-data/shr.
[v] Koper, Christopher S.; Jerry Lee Center of Criminology, Univ. of Penn., *Crime Gun Risk Factors: Buyer, Seller, Firearm, and Transaction Characteristics Associated with Gun Trafficking and Criminal Gun Use -- A report to the National Institute of Justice, U.S. Department of Justice* (2007). https://www.ncjrs.gov/pdffiles1/nij/grants/221074. pdf.

**Exhibit 2**
**0012**
Provided by LRI History LLC                                   **2018-894  Page 56 of 358**

# EXHIBIT "3"

Exhibit 3
0013



ASSEMBLY COMMITTEE ON PUBLIC SAFETY
Reginald Byron Jones-Sawyer, Sr., Chairman
## BACKGROUND INFORMATION REQUEST

*Please complete and return **2 copies of this form** and **2 copies of all supporting materials**
(including, press releases, support/opposition letters, proposed amendments, etc) **ASAP** of
receipt of this form.
A bill cannot be heard if a completed worksheet is not returned.*

In addition, please e-mail this background information request form electronically to:
Estefani Avila (<u>estefani.avila @asm.ca.gov</u>), Committee Secretary, Gary Olson
(<u>gary.olson@asm.ca.gov</u>), Republican Consultant, and Kevin Sabo (<u>kevin.sabo@asm.ca.gov</u>),
Speakers Office of Research **All material sent electronically should be flagged individually
(i.e., support/opposition letters, proposed amendments, news articles)**

**Measure: SB 1100**

**Author:** Portantino

**Staff:** Tara McGee

**Staff Contact Number: 916-651-4025**

**Please use Times New Roman Font and 12 point size for all responses. Thank you.**

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**BILL ORIGIN:**

1) Source: What person, organization, or governmental entity requested introduction? Please include
the name, address, and phone number of the contact person.

Author Sponsored

2) Similar Legislation: Has a similar bill been previously introduced? Please identify the bill number,
author, appropriate legislative session, and disposition of the bill.

AB 3 ( Bonta) -2018

AB 1674 (Santiago)-2015

AB 202 (Knox) – 1999

**BACKGROUND:**

**Exhibit 3**
**0014**
Provided by LRI History LLC                    2018-894  Page 69 of 358

1) What is the problem or deficiency in existing law which this bill will remedy?

While handguns are used in the majority of gun deaths, long guns have been used to perpetrate many of the largest mass shootings in U.S. history, including the tragic event that took place in San Bernardino, California.

California is home to the most stringent gun laws in the county. One example is requiring an individual to be 21 years of age in order to purchase a handgun. Another is the general limitation on a gun dealer delivery of only one handgun to an individual in a 30 day period.

Since these laws have taken effect, data shows that there has been a successful reduction in the incidence of gun trafficking while not burdening legitimate gun owners or persons who wish to acquire guns.

In order to be uniformly consistent, California should apply the 30 day delivery period and 21 year age limit to long guns.

Firearms will not be delivered whenever the dealer is notified by the DOJ that within the preceding 30-day period the purchaser has made another application to purchase a firearm. In addition, because of the interaction of state and federal law, receivers or frames (the gun minus the barrel) are also applicable to the 30-day purchase period. This bill will also define a frame or a receiver of a firearm.

Lastly, this bill would also prohibit the sale or transfer of any firearm by a licensed dealer, except as specially exempted, to any person below the age of 21 years.

2) If there has been an interim committee report, study, news article, statistic or other evidence on the bill, please submit copies and/or links of these materials to the Committee.

   none.

3) Are there any similar federal legislation or related bills or laws in other states? Please attach or provide any information and links, as appropriate.

4) Please include an author's statement as you wish it to appear on the committee analysis:

   Raising the age limit to 21 years of age to purchase a firearm and having the one gun a month law apply to all firearms insures we as Californians are taking proper steps toward public safety. While Washington continues to be unable to pass prudent gun legislation it is imperative that California steps up. Young people across America are demanding that legislators respond to the crisis of gun violence on campuses. As a dad and a legislator I am determined to build on their leadership and help California act appropriately.

**Exhibit 3**
**0015**
**Provided by LRI History LLC**

**SUPPORT**

The CA Chapters of the Brady Campaign: Sponsor
American Academy of Pediatrics
Bay Area Student Activists
City of Santa Monica
Giffords Law Center to Prevent Gun Violence

**OPPOSITION**
California Sportsmen's Lobby
Firearms Policy Coalition
National Shooting Sports Foundation
Outdoor Sportsmen's Coalition of California
Safari Club International

All letters of support or opposition must be forwarded to the committee as soon as possible. Please note that these letters will NOT be returned.

**AMENDMENTS:**

Do you plan ANY amendments to this bill prior to hearing? If so, please submit a copy of the language submitted to Legislative Counsel or provide a brief summary of planned amendments to the committee as soon as possible.

Yes, please see attached amendments. They will be back from Counsel on 6/12/18.


## COMMITTEE POLICY ON AUTHOR'S AMENDMENTS

**Author's amendments must be submitted to the Committee (in Legislative Counsel Form) by Wednesday, 5:00 p.m., prior to the scheduled committee hearing date.** AMENDMENTS (ORIGINAL, SIGNED BY MEMBER, PLUS **EIGHT** COPIES IN LEGISLATIVE COUNSEL FORM) MUST BE **HAND DELIVERED** TO THE COMMITTEE AT 1020 "N" STREET, ROOM 111. **DO NOT** SEND AMENDMENTS THROUGH INTER-AGENCY MAIL.


PLEASE RETURN THIS FORM TO: ASSEMBLY COMMITTEE ON PUBLIC SAFETY
      Phone: 916-319-3744
      Fax: 916-319-3745
      e-mail to: estefani.avila@asm.ca.gov

# EXHIBIT "4"

Exhibit 4
0017

Date of Hearing: June 19, 2018
Chief Counsel:   Gregory Pagan

ASSEMBLY COMMITTEE ON PUBLIC SAFETY
Reginald Byron Jones-Sawyer, Sr., Chair

SB 1100 (Portantino) – As Amended June 11, 2018

**SUMMARY:** Increases the age for which a person can purchase a long-gun from a licensed dealer from 18 to 21 years of age, except as specified. Specifically, **this bill:**

1) Exempts the sale of a firearm, that is not a handgun, to the following persons that are 18 years of age or older:

   a) A person who possesses a valid, unexpired hunting license issued by the Department of Fish and Wildlife;

   b) An active peace officer, who is authorized to carry a firearm in the course and scope of his or her employment;

   c) An active federal officer, or law enforcement agent, who is authorized to carry a firearm in the course and scope of his or her employment;

   d) A reserve peace officer, who is authorized to carry a firearm in the course and scope of his or her employment; and,

   e) An active member of the United States Armed Forces, the National Guard, the Air national Guard, or the active reserve components of the United States, where the individuals in these organizations are properly identified. Proper identification includes the Armed Forces Identification Card or other written documentation certifying that the individual is an active or honorably retired member.

2) Makes conforming changes to the age requirements for an application for the granting of serial number by DOJ to persons wishing to manufacture or assemble a firearm.

**EXISTING LAW:**

1) Prohibits the sale or transfer of a handgun, except as specifically exempted, to any person below the age of 21 years. (Pen. Code § 27510.)

2) Prohibits any person from making an application to purchase more than one handgun within any 30-day period. (Pen. Code, § 27535, subd. (a).)

3) Exempts from the above 30-day prohibition any of the following:

   a) Any law enforcement agency;

**Exhibit 4**
**0018**

**Provided by LRI History LLC**

b) Any agency duly authorized to perform law enforcement duties;

c) Any state or local correctional facility;

d) Any private security company licensed to do business in California;

e) Any person who is a peace officer, as specified, and is authorized to carry a firearm in the course and scope of employment;

f) Any motion picture, television, video production company or entertainment or theatrical company whose production by its nature involves a firearm;

g) Any authorized representative of a law enforcement agency, or a federally licensed firearms importer or manufacturer;

h) Any private party transaction conducted through a licensed firearms dealer;

i) Any person who is a licensed collector and has a current certificate of eligibility issued by the Department of Justice (DOJ);

j) The exchange, replacement, or return of a handgun to a licensed dealer within the 30-day period; and,

k) A community college that is certified by the Commission on Peace Officer Standards and Training (POST) to present law enforcement academy basic course or other commission-certified training. (Pen. Code, § 27535, subd. (b).)

4) Prohibits a handgun from being delivered when a licensed firearms dealer is notified by the DOJ that within the preceding 30-day period the purchaser has made another application to purchase a handgun and the purchase was not exempted, as specified. (Pen. Code, § 27540, subd. (f).

5) Provides that the penalties for making more than one application to purchase a handgun within any 30-day period is as follows:

a) A first violation is an infraction punishable by a fine of fifty dollars ($50);

b) A second violation is an infraction punishable by a fine of one hundred ($100); and,

c) A third violation is a misdemeanor. (Pen. Code, § 27590, subd. (e)(1)-(3).)

**FISCAL EFFECT**: Unknown

**COMMENTS**:

1) **Author's Statement**: According to the author, "Raising the age limit to 21 years of age to purchase a firearm and having the one gun a month law apply to all firearms insures we as Californians are taking proper steps toward public safety. While Washington continues to be unable to pass prudent gun legislation it is imperative that California steps up. Young people

**Exhibit 4**

across America are demanding that legislators respond to the crisis of gun violence on campuses. As a dad and a legislator I am determined to build on their leadership and help California act appropriately."

2) **Argument in Support**: According to the *California Chapters of the Brady Campaign to Prevent Gun Violence*, "Existing law prohibits the sale or transfer of a handgun to any person below the age of 21 years. SB 1100 will similarly prohibit, with exceptions, the sale or transfer of a long gun by a licensed firearm dealer to a person under age of 21. Additionally, the bill will require those who manufacture or assemble a long gun to be at least 21 years old in order to obtain a serial number for the firearm and register it with the California Department of Justice. These provisions makes sense as those under age 21 are disproportionally linked to crime. In 2015, 23.4 percent of those arrested for murder and non-negligent manslaughter in the U.S. were under 21 and 26.5 percent of those arrested for "weapons carrying, possession, etc." were under age 21. Individuals age 18 to 20 compromise only 4% of the population but commit 17% of gun homicides.
"Maturity, impulsive or reckless behavior, and responsibility vary greatly among 18-20 year olds. This is recognized in other areas – those under age 21 cannot buy alcohol, rent a car, or purchase a handgun – and the same age restriction should apply to long guns.

3) **Argument in Opposition**: According to the *Outdoor Sportsmen's Coalition of California*, "SB 1100 would needlessly raise the age for purchasing a rifle or shotgun from 18 to 21onth.

"Rather than raise the minimum age for lawful individuals to purchase a rifle or shotgun, or limit such purchases to one firearm per month, experience with mass homicides and other crimes involving firearms has clearly shown that the focus should be on preventing criminals and individuals suffering from mental illness from acquiring firearms, not on those who are not a part of the problem.

"Persons who have an intent to commit such crimes, or other illegal acts involving the use of a firearm, will always be able to obtain firearms through unlawful sources without going through a licensed firearms dealer.

"The restrictions proposed in SB 1100 will not prevent it.

4) **Related Legislation**: AB 3 (Bonta) is similar to this bill in that it prohibits the sale of any firearm to a person under 21 years of age. AB 3 is pending hearing in the Senate public Safety Committee.


**REGISTERED SUPPORT / OPPOSITION:**

**Support**

California Chapters of the Brady Campaign to prevent Gun Violence
Giffords Law Center to Prevent Gun Violence
American Academy of Pediatrics
Bay Area Student Activists
City of Santa Monica

**Exhibit 4**
**0020**

**Opposition**

California Sportsman's Lobby
Gun Owners of California
Firearms Policy Coalition
National Shooting Sports Foundation
Outdoor Sportsmen's Coalition of California
Safari Club International
California Sportsman's Lobby
National Shooting Sports Foundation

**Analysis Prepared by**:   Gregory Pagan / PUB. S. / (916) 319-3744

**Exhibit 4**
**0021**
**Provided by LRI History LLC**

# EXHIBIT "5"

Exhibit 5
0022

**XAVIER BECERRA**
*Attorney General*



*State of California*
**DEPARTMENT OF JUSTICE**

1300 I STREET, SUITE 125
P.O. BOX 944255
SACRAMENTO, CA 94244-2550

Public: (916) 445-9555
Telephone: (916) 210-6032
Facsimile: (916) 322-2630
E-Mail: mario.debernardo@doj.ca.gov

August 3, 2018

The Honorable Anthony Portantino
State Capitol, Room 3086
Sacramento, CA 95814

RE:   **Minimum Age Requirement for Long Guns (SB 1100):  SUPPORT**

Dear Senator Portantino:

On behalf of Attorney General Xavier Becerra, I am pleased to inform you that the California Department of Justice (DOJ) supports SB 1100 (Portantino). This bill would help protect our schools and communities by prohibiting a person under 21 from purchasing or possessing long guns, such as semi-automatic rifles.

Under California law, the minimum age requirement to purchase or possess a handgun is 21 years of age. However, the minimum age requirement to purchase or possess a long gun is 18. While handguns are used in the majority of gun deaths, long guns have been used to carry out many of the largest mass shootings in U.S. history. Moreover, mass shootings carried out at schools are generally committed by people under 21—e.g., Nikolas Cruz (Stoneman Douglas High School, 17 killed); Dimitrios Pagourtzis (Santa Fe High School, 10 killed); Adam Lanza (Sandy Hook Elementary School, 27 killed); Jeff Weise (Red Lake High School, 9 killed); and Eric Harris and Dylan Klebold (Columbine High School, 13 killed).

Our country's tragic history of mass shootings clearly demonstrates that long guns are as dangerous as handguns, especially in the hands of minors. In recognition of this, SB 1100 would bring parity to California's gun laws by setting the minimum age requirement to purchase or possess a long gun to 21—the same requirement for handguns.

The Attorney General is honored to support this common sense measure. If you have any questions or comments for DOJ, please do not hesitate to contact me.

**Exhibit 5**
**0023**

**Provided by LRI History LLC**

The Honorable Anthony Portantino
August 3, 2018
Page 2

Sincerely,

MARIO De BERNARDO
Deputy Attorney General

For    XAVIER BECERRA
       Attorney General

cc:    Assembly Appropriations Committee
       Assembly Republican Caucus

**Exhibit 5**
0024

**Provided by LRI History LLC**                          **2018-894 Page 249 of 358**

# EXHIBIT "6"

Exhibit 6
0025



LRI History LLC

intent@lrihistory.com
www.lrihistory.com
(916) 442.7660

*The Core*
*Legislative History of*

Pending California
Senate Bill 61 – Portantino
(2019-2020)

Exhibit 6
0026

© 2019 LRI, All Rights Reserved

No part of this report may be reproduced or transmitted in any form or by any means without the express written consent of LRI History LLC.  Reproduction of any part of this report beyond permitted by the United States Copyright Act without the express written consent of the copyright owner is unlawful.

**Exhibit 6**
**0027**



# LRI History LLC

intent@lrihistory.com
www.lrihistory.com
(916) 442.7660

---

*Authentication of the Records and Table of Contents*

Core Legislative History Research Report Regarding:
Pending California SB 61 – Portantino (2019-2020)

I, Lisa Hampton, declare that this report includes:

- *Historical documents relating to the above legislation.* These documents were obtained by the staff of LRI History LLC, or under their direction, and are true and correct copies of the originals obtained from the designated official, public sources in California unless another source is indicated, with the following exceptions: In some cases, pages may have been reduced in size to fit an 8 ½" x 11" sized paper. Or, for readability purposes, pages may have been enlarged or cleansed of black marks or spots. Lastly, paging and relevant identification have been inserted.

  Since 1983 LRI has specialized in the historical research surrounding the adoption, amendment and/or repeal of California statutes, regulations and constitutional provisions pursuant to California Code of Civil Procedure § 1859 which states in pertinent part: "In the construction of a statute the intention of the Legislature ... is to be pursued, if possible ...." Our research and expert witness services have assisted the courts in understanding and applying the underlying purpose of enactments in countless cases, such as *Redlands Community Hospital v. New England Mutual Life Insurance Co,* 23 Cal. App.4th 899 at 906 (1994). LRI also provides similar research for other states and at the federal level. (Formerly Legislative Research Institute, Legislative Research, Incorporated, and Legislative Research & Intent LLC).

- *A table of contents itemizing the documents.* This table of contents cites the sources of the documents.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct and that I could and would so testify in a court of law if called to be a witness.

Executed October 10, 2019.

Lisa Hampton, President

Exhibit 6
0028

# Table of Contents

*PRIMARY SOURCE RECORDS (UNPUBLISHED HARDCOPY):  At least one official California source is cited for the primary source records provided in this report. Multiple copies may have been obtained from various sources (primarily State Capitol, the state library system and/or legislative offices), but the clearest/most legible version was selected for this report.*

ENACTMENT HISTORY

*GENERAL*

**Printed bill materials** ...................................................................................................................2
(Source: Official Legislative Online Database)

**Calendar or <u>Final History</u> excerpt of the bill** ...........................................................119
(Source: Official Legislative Online Database)

*UNITEMIZED MATERIALS BY SOURCE*

<u>**Online Analyses**</u> ..............................................................................................................121

    Bill analyses .............................................................................................................122

    (Source: Official Legislative Online Database)


<u>**Senate policy committee file – Public Safety**</u> ...........................................................169

    Bill analysis..............................................................................................................170

    Unitemized materials ...............................................................................................175

    (Source: State Capitol)

**Exhibit 6**
**0029**

**Senate fiscal committee file – Appropriations** .......................................................................226

    Bill analyses ..................................................................................................................227

    Unitemized materials ...................................................................................................232

    (Source: State Capitol)

**Office of Senate Floor Analyses file** .......................................................................................233

    Bill analysis ..................................................................................................................234

    Unitemized materials ...................................................................................................246

    (Source: State Capitol)

**Assembly policy committee file – Public Safety** ....................................................................289

    Bill analyses ..................................................................................................................290

    Unitemized materials ...................................................................................................308

    (Source: State Capitol)

**Assembly fiscal committee file – Appropriations** .................................................................365

    Bill analysis ..................................................................................................................366

    (Source: State Capitol)

**Exhibit 6**
**0030**



## LRI History LLC

intent@lrihistory.com
www.lrihistory.com
(916) 442.7660

# General Enactment History

LRI History LLC hereby certifies that the accompanying record/s is/are true and correct copies of
the original/s obtained from one or more official, public sources in California unless another source
is indicated, with the following exceptions :  In some cases,  pages may have been reduced in size to
fit an 8 ½"  x 11" sized  paper.  Or, for readability purposes, pages may have been enlarged
or cleansed of  black marks or spots. Lastly, for ease of reference, paging and relevant identification
have been inserted.

**Exhibit 6**
**0031**
**Provided by LRI History LLC**                                    **SB 61 (2019)  Page 1 of 367**

# SENATE BILL No. 61

**Introduced by Senator Portantino**
**(Principal coauthors: Senators Glazer and Wiener)**
(Coauthor: Assembly Member Bonta)

January 3, 2019

An act to amend Sections 26835, 27535, 27540, and 27590 of the Penal Code, relating to firearms.

LEGISLATIVE COUNSEL'S DIGEST

SB 61, as introduced, Portantino. Firearms: transfers.

Existing law, subject to exceptions, prohibits a person from making more than one application to purchase a handgun within any 30-day period. A violation of that prohibition is a crime. Existing law prohibits a firearms dealer from delivering a handgun to a person whenever the dealer is notified by the Department of Justice that within the preceding 30-day period the purchaser has made another application to purchase a handgun that does not fall within an exception to the 30-day prohibition. A violation of that delivery prohibition by the dealer is a crime.

This bill would make the 30-day prohibition and the dealer delivery prohibition described above applicable to all types of firearms. The bill would also exempt from that prohibition the purchase of a firearm, other than a handgun, by a person who possesses a valid, unexpired hunting license issued by the state, and the acquisition of a firearm, other than a handgun, at specified charity fundraising events.

By expanding the scope of existing crimes, this bill would impose a state-mandated local program.

The California Constitution requires the state to reimburse local agencies and school districts for certain costs mandated by the state. Statutory provisions establish procedures for making that reimbursement.

**Exhibit 6**
**0032**

**Provided by LRI History LLC**                    **SB 61 (2019)  Page 2 of 367**

This bill would provide that no reimbursement is required by this act for a specified reason.

Vote: majority. Appropriation: no. Fiscal committee: yes. State-mandated local program: yes.

*The people of the State of California do enact as follows:*

1    SECTION 1.   Section 26835 of the Penal Code is amended to
2   read:
3    26835.   ~~(a)~~ A licensee shall ~~post~~ conspicuously *post* within
4   the licensed premises the following warnings in block letters not
5   less than one inch in height:
6    ~~(1)~~
7    *(a)* "FIREARMS MUST BE HANDLED RESPONSIBLY AND
8   SECURELY STORED TO PREVENT ACCESS BY CHILDREN
9   AND OTHER UNAUTHORIZED USERS. CALIFORNIA HAS
10  STRICT LAWS PERTAINING TO FIREARMS, AND YOU
11  MAY BE FINED OR IMPRISONED IF YOU FAIL TO COMPLY
12  WITH THEM. VISIT THE WEB SITE OF THE CALIFORNIA
13  A T T O R N E Y        G E N E R A L        A T
14  HTTPS://OAG.CA.GOV/FIREARMS FOR INFORMATION ON
15  FIREARM LAWS APPLICABLE TO YOU AND HOW YOU
16  CAN COMPLY."
17   ~~(2)~~
18   *(b)* "IF YOU KEEP A LOADED FIREARM WITHIN ANY
19  PREMISES UNDER YOUR CUSTODY OR CONTROL, AND
20  A PERSON UNDER 18 YEARS OF AGE OBTAINS IT AND
21  USES IT, RESULTING IN INJURY OR DEATH, OR CARRIES
22  IT TO A PUBLIC PLACE, YOU MAY BE GUILTY OF A
23  MISDEMEANOR OR A FELONY UNLESS YOU STORED
24  THE FIREARM IN A LOCKED CONTAINER OR LOCKED
25  THE FIREARM WITH A LOCKING DEVICE, TO KEEP IT
26  FROM TEMPORARILY FUNCTIONING."
27   ~~(3)~~
28   *(c)* "CHILDREN MAY BE UNABLE TO DISTINGUISH
29  FIREARMS FROM TOYS AND MAY OPERATE FIREARMS,
30  CAUSING SEVERE INJURIES OR DEATH. IF YOU KEEP A
31  PISTOL, REVOLVER, OR OTHER FIREARM CAPABLE OF
32  BEING CONCEALED UPON THE PERSON, WITHIN ANY
33  PREMISES UNDER YOUR CUSTODY OR CONTROL, AND

**Exhibit 6**
**0033**

**Provided by LRI History LLC**                    **SB 61 (2019)  Page 3 of 367**

A PERSON UNDER 18 YEARS OF AGE GAINS ACCESS TO
THE FIREARM, AND CARRIES IT OFF-PREMISES, YOU
MAY BE GUILTY OF A MISDEMEANOR, UNLESS YOU
STORED THE FIREARM IN A LOCKED CONTAINER, OR
LOCKED THE FIREARM WITH A LOCKING DEVICE, TO
KEEP IT FROM TEMPORARILY FUNCTIONING."
    (4)
    *(d)* "YOU MAY BE GUILTY OF A MISDEMEANOR,
INCLUDING A SIGNIFICANT FINE OR IMPRISONMENT, IF
YOU KEEP A FIREARM WHERE A MINOR IS LIKELY TO
ACCESS IT OR IF A MINOR OBTAINS AND IMPROPERLY
USES IT, OR CARRIES IT OFF OF THE PREMISES TO A
SCHOOL OR SCHOOL-SPONSORED EVENT, UNLESS YOU
STORED THE FIREARM IN A LOCKED CONTAINER OR
LOCKED THE FIREARM WITH A LOCKING DEVICE."
    (5)
    *(e)* "IF YOU NEGLIGENTLY STORE OR LEAVE A
LOADED FIREARM WITHIN ANY PREMISES UNDER YOUR
CUSTODY OR CONTROL, WHERE A PERSON UNDER 18
YEARS OF AGE IS LIKELY TO ACCESS IT, YOU MAY BE
GUILTY OF A MISDEMEANOR, INCLUDING A
SIGNIFICANT FINE, UNLESS YOU STORED THE FIREARM
IN A LOCKED CONTAINER, OR LOCKED THE FIREARM
WITH A LOCKING DEVICE."
    (6)
    *(f)* "DISCHARGING FIREARMS IN POORLY VENTILATED
AREAS, CLEANING FIREARMS, OR HANDLING
AMMUNITION MAY RESULT IN EXPOSURE TO LEAD, A
SUBSTANCE KNOWN TO CAUSE BIRTH DEFECTS,
REPRODUCTIVE HARM, AND OTHER SERIOUS PHYSICAL
INJURY. HAVE ADEQUATE VENTILATION AT ALL TIMES.
WASH HANDS THOROUGHLY AFTER EXPOSURE."
    (7)
    *(g)* "FEDERAL REGULATIONS PROVIDE THAT IF YOU
DO NOT TAKE PHYSICAL POSSESSION OF THE FIREARM
THAT YOU ARE ACQUIRING OWNERSHIP OF WITHIN 30
DAYS AFTER YOU COMPLETE THE INITIAL
BACKGROUND CHECK PAPERWORK, THEN YOU HAVE
TO GO THROUGH THE BACKGROUND CHECK PROCESS

**Exhibit 6**
0034
**Provided by LRI History LLC**          **SB 61 (2019) Page 4 of 367**

1 A SECOND TIME IN ORDER TO TAKE PHYSICAL
2 POSSESSION OF THAT FIREARM."
3 ~~(8)~~
4 *(h)* "NO PERSON SHALL MAKE AN APPLICATION TO
5 PURCHASE MORE THAN ONE ~~PISTOL, REVOLVER, OR~~
6 ~~OTHER~~ FIREARM ~~CAPABLE OF BEING CONCEALED UPON~~
7 ~~THE PERSON~~ WITHIN ANY 30-DAY PERIOD AND NO
8 DELIVERY SHALL BE MADE TO ANY PERSON WHO HAS
9 MADE AN APPLICATION TO PURCHASE MORE THAN ONE
10 ~~PISTOL, REVOLVER, OR OTHER~~ FIREARM ~~CAPABLE OF~~
11 ~~BEING CONCEALED UPON THE PERSON~~ WITHIN ANY
12 30-DAY PERIOD."
13 ~~(9)~~
14 *(i)* "IF A FIREARM YOU OWN OR POSSESS IS LOST OR
15 STOLEN, YOU MUST REPORT THE LOSS OR THEFT TO A
16 LOCAL LAW ENFORCEMENT AGENCY WHERE THE LOSS
17 OR THEFT OCCURRED WITHIN FIVE DAYS OF THE TIME
18 YOU KNEW OR REASONABLY SHOULD HAVE KNOWN
19 THAT THE FIREARM HAD BEEN LOST OR STOLEN."
20 ~~(b) This section shall become operative on January 1, 2019.~~
21    SEC. 2.   Section 27535 of the Penal Code is amended to read:
22    27535.   (a) ~~No~~ *A* person shall *not* make an application to
23 purchase more than one ~~handgun~~ *firearm* within any 30-day period.
24    (b) Subdivision (a) ~~shall~~ *does* not apply to any of the following:
25    (1) Any law enforcement agency.
26    (2) Any agency duly authorized to perform law enforcement
27 duties.
28    (3) Any state or local correctional facility.
29    (4) Any private security company licensed to do business in
30 California.
31    (5) Any person who is properly identified as a full-time paid
32 peace officer, as defined in Chapter 4.5 (commencing with Section
33 830) of Title 3 of Part 2, and who is authorized to, and does carry
34 a firearm during the course and scope of employment as a peace
35 officer.
36    (6) Any motion picture, television, or video production company
37 or entertainment or theatrical company whose production by its
38 nature involves the use of a firearm.
39    (7) Any person who may, pursuant to Article 2 (commencing
40 with Section 27600), Article 3 (commencing with Section 27650),

**Exhibit 6**
**0035**
**Provided by LRI History LLC**                    SB 61 (2019)  Page 5 of 367

1 or Article 4 (commencing with Section 27700), claim an exemption
2 from the waiting period set forth in Section 27540.
3    (8) Any transaction conducted through a licensed firearms dealer
4 pursuant to Chapter 5 (commencing with Section 28050).
5    (9) Any person who is licensed as a collector pursuant to Chapter
6 44 (commencing with Section 921) of Title 18 of the United States
7 Code and the regulations issued pursuant thereto, and has a current
8 certificate of eligibility issued by the Department of Justice
9 pursuant to Article 1 (commencing with Section 26700) of Chapter
10 2.
11    (10) The exchange of a ~~handgun~~ *firearm* where the dealer
12 purchased that firearm from the person seeking the exchange within
13 the 30-day period immediately preceding the date of exchange or
14 replacement.
15    (11) The replacement of a ~~handgun~~ *firearm* when the person's
16 ~~handgun~~ *firearm* was lost or stolen, and the person reported that
17 firearm lost or stolen pursuant to Section 25250 prior to the
18 completion of the application to purchase the ~~replacement handgun.~~
19 *replacement.*
20    (12) The return of any ~~handgun~~ *firearm* to its owner.
21    (13) A community college that is certified by the Commission
22 on Peace Officer Standards and Training to present the law
23 enforcement academy basic course or other commission-certified
24 law enforcement training.
25    *(14) The purchase of a firearm, other than a handgun, by a*
26 *person who possesses a valid, unexpired hunting license issued*
27 *by the Department of Fish and Wildlife.*
28    *(15) The acquisition of a firearm, other than a handgun, at an*
29 *auction or similar event conducted by a nonprofit public benefit*
30 *or mutual benefit corporation to fund the activities of that*
31 *corporation or local chapters of that corporation.*
32    *(c) For the purposes of paragraphs (14) and (15) of subdivision*
33 *(b), the frame or receiver of a firearm is a handgun unless the*
34 *frame or receiver listed in the application to purchase and*
35 *delivered to the recipient is equipped with, is attached to, or is*
36 *concurrently accompanied by, a barrel of 16 inches or greater in*
37 *length.*
38    SEC. 3. Section 27540 of the Penal Code is amended to read:

1    27540.  A dealer, whether or not acting pursuant to Chapter 5
2 (commencing with Section 28050), shall not deliver a firearm to
3 a person, as follows:
4    (a)  Within 10 days of the application to purchase, or, after notice
5 by the department pursuant to Section 28220, within 10 days of
6 the submission to the department of any correction to the
7 application, or within 10 days of the submission to the department
8 of any fee required pursuant to Section 28225, whichever is later.
9    (b)  Unless unloaded and securely wrapped or unloaded and in
10 a locked container.
11    (c)  Unless the purchaser, transferee, or person being loaned the
12 firearm presents clear evidence of the person's identity and age to
13 the dealer.
14    (d)  Whenever the dealer is notified by the Department of Justice
15 that the person is prohibited by state or federal law from possessing,
16 receiving, owning, or purchasing a firearm.
17    (e)  A ~~handgun shall not be delivered unless the purchaser,~~
18 ~~transferee, or person being loaned the handgun presents a handgun~~
19 ~~safety certificate. Commencing January 1, 2015, any~~ firearm,
20 including a handgun, shall not be delivered unless the purchaser,
21 transferee, or person being loaned the firearm presents a firearm
22 safety certificate to the dealer, except that in the case of a handgun,
23 an unexpired handgun safety certificate may be presented.
24    (f)  A ~~handgun~~ *firearm* shall not be delivered whenever the dealer
25 is notified by the Department of Justice that within the preceding
26 30-day period the purchaser has made another application to
27 purchase a ~~handgun~~ *firearm* and that the previous application to
28 purchase ~~involved none~~ *did not involve any* of the entities *or*
29 *circumstances* specified in subdivision (b) of Section 27535.
30    SEC. 4.  Section 27590 of the Penal Code is amended to read:
31    27590.  (a)  Except as provided in subdivision (b), (c), or (e),
32 a violation of this article is a misdemeanor.
33    (b)  If any of the following circumstances apply, a violation of
34 this article is punishable by imprisonment pursuant to subdivision
35 (h) of Section 1170 for two, three, or four ~~years.~~ *years:*
36    (1)  If the violation is of subdivision (a) of Section 27500.
37    (2)  If the defendant has a prior conviction of violating the
38 provisions, other than Section 27535, Section 27560 involving a
39 firearm that is not a handgun, or Section 27565 involving a firearm
40 that is not a handgun, of this article or former Section 12100 of

1  this code, as Section 12100 read at any time from when it was
2  enacted by Section 3 of Chapter 1386 of the Statutes of 1988 to
3  when it was repealed by Section 18 of Chapter 23 of the Statutes
4  of 1994, or Section 8101 of the Welfare and Institutions Code.
5     (3) If the defendant has a prior conviction of violating any
6  offense specified in Section 29905 or of a violation of Section
7  32625 or 33410, or of former Section 12560, as that section read
8  at any time from when it was enacted by Section 4 of Chapter 931
9  of the Statutes of 1965 to when it was repealed by Section 14 of
10 Chapter 9 of the Statutes of 1990, or of any provision listed in
11 Section 16590.
12    (4) If the defendant is in a prohibited class described in Chapter
13 2 (commencing with Section 29800) or Chapter 3 (commencing
14 with Section 29900) of Division 9 of this title, or Section 8100 or
15 8103 of the Welfare and Institutions Code.
16    (5) A violation of this article by a person who actively
17 participates in a "criminal street gang" as defined in Section 186.22.
18    (6) A violation of Section 27510 involving the delivery of any
19 firearm to a person who the dealer knows, or should know, is a
20 minor.
21    (c) If any of the following circumstances apply, a violation of
22 this article shall be punished by imprisonment in a county jail not
23 exceeding one year or pursuant to subdivision (h) of Section 1170,
24 or by a fine not to exceed one thousand dollars ($1,000), or by
25 both that fine and ~~imprisonment.~~ *imprisonment:*
26    (1) A violation of Section 27515, 27520, or subdivision (b) of
27 Section 27500.
28    (2) A violation of Section 27505 involving the sale, loan, or
29 transfer of a handgun to a minor.
30    (3) A violation of Section 27510 involving the delivery of a
31 handgun.
32    (4) A violation of subdivision (a), (c), (d), (e), or (f) of Section
33 27540 involving a handgun.
34    (5) A violation of Section 27545 involving a handgun.
35    (6) A violation of Section 27550.
36    (7) A violation of Section 27585 involving a handgun.
37    (d) If both of the following circumstances apply, an additional
38 term of imprisonment pursuant to subdivision (h) of Section 1170
39 for one, two, or three years shall be imposed in addition and
40 consecutive to the sentence ~~prescribed.~~ *prescribed:*

1    (1) A violation of Section 27510 or subdivision (b) of Section
2  27500.

3    (2) The firearm transferred in violation of Section 27510 or
4  subdivision (b) of Section 27500 is used in the subsequent
5  commission of a felony for which a conviction is obtained and the
6  prescribed sentence is imposed.

7    (e) (1) A first violation of Section 27535 is an infraction
8  punishable by a fine of fifty dollars ($50).

9    (2) A second violation of Section 27535 is an infraction
10  punishable by a fine of one hundred dollars ($100).

11    (3) A third or subsequent violation of Section 27535 is a
12  misdemeanor.

13    (4) For purposes of this ~~subdivision~~ *subdivision*, each application
14  to purchase a ~~handgun~~ *firearm* in violation of Section 27535 ~~shall~~
15  ~~be deemed~~ *is* a separate offense.

16    SEC. 5.   No reimbursement is required by this act pursuant to
17  Section 6 of Article XIII B of the California Constitution because
18  the only costs that may be incurred by a local agency or school
19  district will be incurred because this act creates a new crime or
20  infraction, eliminates a crime or infraction, or changes the penalty
21  for a crime or infraction, within the meaning of Section 17556 of
22  the Government Code, or changes the definition of a crime within
23  the meaning of Section 6 of Article XIII B of the California
24  Constitution.

O

AMENDED IN SENATE MAY 17, 2019

**SENATE BILL**          **No. 61**

---

**Introduced by Senator Portantino**
**(Principal coauthors: Senators Glazer and Wiener)**
***(Coauthor: Senator Skinner)***
(Coauthor: Assembly Member Bonta)

January 3, 2019

---

An act to amend Sections ~~26835, 27535, 27540,~~ *27510, 27540,* and 27590 ~~of~~ *of, and to amend, repeal, and add Sections 26835 and 27535 of,* the Penal Code, relating to firearms.

LEGISLATIVE COUNSEL'S DIGEST

SB 61, as amended, Portantino. Firearms: transfers.

Existing law, subject to exceptions, prohibits a person from making more than one application to purchase a handgun within any 30-day period. A violation of that prohibition is a crime. Existing law prohibits a firearms dealer from delivering a handgun to a person whenever the dealer is notified by the Department of Justice that within the preceding 30-day period the purchaser has made another application to purchase a handgun that does not fall within an exception to the 30-day prohibition. A violation of that delivery prohibition by the dealer is a crime.

This bill ~~would~~ *would, effective July 1, 2021,* make the 30-day prohibition and the dealer delivery prohibition described above applicable to all types of firearms. The bill would also exempt from that prohibition the purchase of a firearm, other than a handgun, by a person who possesses a valid, unexpired hunting license issued by the state, and the acquisition of a firearm, other than a handgun, at specified charity fundraising events.

*Existing law prohibits a licensed firearm dealer from selling a firearm to a person under 21 years of age. Existing law provides an exemption to this prohibition for the sale of a firearm, other than a handgun, to a person 18 years of age or older who has a valid hunting license or is an honorably discharged member of the Armed Forces.*

*This bill would prohibit the sale of a semiautomatic centerfire rifle to either of those exempted persons who are under 21 years of age.*

By expanding the scope of existing crimes, this bill would impose a state-mandated local program.

The California Constitution requires the state to reimburse local agencies and school districts for certain costs mandated by the state. Statutory provisions establish procedures for making that reimbursement.

This bill would provide that no reimbursement is required by this act for a specified reason.

Vote: majority. Appropriation: no. Fiscal committee: yes. State-mandated local program: yes.

*The people of the State of California do enact as follows:*

1 ~~SECTION 1.  Section 26835 of the Penal Code is amended to~~
2 ~~read:~~
3 ~~26835.  A licensee shall conspicuously post within the licensed~~
4 ~~premises the following warnings in block letters not less than one~~
5 ~~inch in height:~~
6 ~~(a)~~
7 ~~"FIREARMS MUST BE HANDLED RESPONSIBLY AND~~
8 ~~SECURELY STORED TO PREVENT ACCESS BY CHILDREN~~
9 ~~AND OTHER UNAUTHORIZED USERS. CALIFORNIA HAS~~
10 ~~STRICT LAWS PERTAINING TO FIREARMS, AND YOU~~
11 ~~MAY BE FINED OR IMPRISONED IF YOU FAIL TO COMPLY~~
12 ~~WITH THEM. VISIT THE WEB SITE OF THE CALIFORNIA~~
13 ~~ATTORNEY GENERAL AT~~
14 ~~HTTPS://OAG.CA.GOV/FIREARMS FOR INFORMATION ON~~
15 ~~FIREARM LAWS APPLICABLE TO YOU AND HOW YOU~~
16 ~~CAN COMPLY."~~
17 ~~(b)~~
18 ~~"IF YOU KEEP A LOADED FIREARM WITHIN ANY~~
19 ~~PREMISES UNDER YOUR CUSTODY OR CONTROL, AND~~
20 ~~A PERSON UNDER 18 YEARS OF AGE OBTAINS IT AND~~
21 ~~USES IT, RESULTING IN INJURY OR DEATH, OR CARRIES~~

**Exhibit 6**
0041
Provided by LRI History LLC · SB 61 (2019)  Page 11 of 367


~~IT TO A PUBLIC PLACE, YOU MAY BE GUILTY OF A MISDEMEANOR OR A FELONY UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER OR LOCKED THE FIREARM WITH A LOCKING DEVICE, TO KEEP IT FROM TEMPORARILY FUNCTIONING."~~

~~(c) "CHILDREN MAY BE UNABLE TO DISTINGUISH FIREARMS FROM TOYS AND MAY OPERATE FIREARMS, CAUSING SEVERE INJURIES OR DEATH. IF YOU KEEP A PISTOL, REVOLVER, OR OTHER FIREARM CAPABLE OF BEING CONCEALED UPON THE PERSON, WITHIN ANY PREMISES UNDER YOUR CUSTODY OR CONTROL, AND A PERSON UNDER 18 YEARS OF AGE GAINS ACCESS TO THE FIREARM, AND CARRIES IT OFF-PREMISES, YOU MAY BE GUILTY OF A MISDEMEANOR, UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER, OR LOCKED THE FIREARM WITH A LOCKING DEVICE, TO KEEP IT FROM TEMPORARILY FUNCTIONING."~~

~~(d) "YOU MAY BE GUILTY OF A MISDEMEANOR, INCLUDING A SIGNIFICANT FINE OR IMPRISONMENT, IF YOU KEEP A FIREARM WHERE A MINOR IS LIKELY TO ACCESS IT OR IF A MINOR OBTAINS AND IMPROPERLY USES IT, OR CARRIES IT OFF OF THE PREMISES TO A SCHOOL OR SCHOOL-SPONSORED EVENT, UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER OR LOCKED THE FIREARM WITH A LOCKING DEVICE."~~

~~(e) "IF YOU NEGLIGENTLY STORE OR LEAVE A LOADED FIREARM WITHIN ANY PREMISES UNDER YOUR CUSTODY OR CONTROL, WHERE A PERSON UNDER 18 YEARS OF AGE IS LIKELY TO ACCESS IT, YOU MAY BE GUILTY OF A MISDEMEANOR, INCLUDING A SIGNIFICANT FINE, UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER, OR LOCKED THE FIREARM WITH A LOCKING DEVICE."~~

~~(f) "DISCHARGING FIREARMS IN POORLY VENTILATED AREAS, CLEANING FIREARMS, OR HANDLING AMMUNITION MAY RESULT IN EXPOSURE TO LEAD, A SUBSTANCE KNOWN TO CAUSE BIRTH DEFECTS, REPRODUCTIVE HARM, AND OTHER SERIOUS PHYSICAL INJURY. HAVE ADEQUATE VENTILATION AT ALL TIMES. WASH HANDS THOROUGHLY AFTER EXPOSURE."~~

1    ~~(g) "FEDERAL REGULATIONS PROVIDE THAT IF YOU~~
2    ~~DO NOT TAKE PHYSICAL POSSESSION OF THE FIREARM~~
3    ~~THAT YOU ARE ACQUIRING OWNERSHIP OF WITHIN 30~~
4    ~~DAYS AFTER YOU COMPLETE THE INITIAL~~
5    ~~BACKGROUND CHECK PAPERWORK, YOU HAVE TO GO~~
6    ~~THROUGH THE BACKGROUND CHECK PROCESS A~~
7    ~~SECOND TIME IN ORDER TO TAKE PHYSICAL~~
8    ~~POSSESSION OF THAT FIREARM."~~
9    ~~(h) "NO PERSON SHALL MAKE AN APPLICATION TO~~
10   ~~PURCHASE MORE THAN ONE FIREARM WITHIN ANY~~
11   ~~30-DAY PERIOD AND NO DELIVERY SHALL BE MADE TO~~
12   ~~ANY PERSON WHO HAS MADE AN APPLICATION TO~~
13   ~~PURCHASE MORE THAN ONE FIREARM WITHIN ANY~~
14   ~~30-DAY PERIOD."~~
15   ~~(i) "IF A FIREARM YOU OWN OR POSSESS IS LOST OR~~
16   ~~STOLEN, YOU MUST REPORT THE LOSS OR THEFT TO A~~
17   ~~LOCAL LAW ENFORCEMENT AGENCY WHERE THE LOSS~~
18   ~~OR THEFT OCCURRED WITHIN FIVE DAYS OF THE TIME~~
19   ~~YOU KNEW OR REASONABLY SHOULD HAVE KNOWN~~
20   ~~THAT THE FIREARM HAD BEEN LOST OR STOLEN."~~
21   ~~SEC. 2.  Section 27535 of the Penal Code is amended to read:~~
22   ~~27535.  (a)  A person shall not make an application to purchase~~
23   ~~more than one firearm within any 30-day period.~~
24   ~~(b) Subdivision (a) does not apply to any of the following:~~
25   ~~(1) Any law enforcement agency.~~
26   ~~(2) Any agency duly authorized to perform law enforcement~~
27   ~~duties.~~
28   ~~(3) Any state or local correctional facility.~~
29   ~~(4) Any private security company licensed to do business in~~
30   ~~California.~~
31   ~~(5) Any person who is properly identified as a full-time paid~~
32   ~~peace officer, as defined in Chapter 4.5 (commencing with Section~~
33   ~~830) of Title 3 of Part 2, and who is authorized to, and does carry~~
34   ~~a firearm during the course and scope of employment as a peace~~
35   ~~officer.~~
36   ~~(6) Any motion picture, television, or video production company~~
37   ~~or entertainment or theatrical company whose production by its~~
38   ~~nature involves the use of a firearm.~~
39   ~~(7) Any person who may, pursuant to Article 2 (commencing~~
40   ~~with Section 27600), Article 3 (commencing with Section 27650),~~

1 ~~or Article 4 (commencing with Section 27700), claim an exemption~~
2 ~~from the waiting period set forth in Section 27540.~~
3 ~~(8) Any transaction conducted through a licensed firearms dealer~~
4 ~~pursuant to Chapter 5 (commencing with Section 28050).~~
5 ~~(9) Any person who is licensed as a collector pursuant to Chapter~~
6 ~~44 (commencing with Section 921) of Title 18 of the United States~~
7 ~~Code and the regulations issued pursuant thereto, and has a current~~
8 ~~certificate of eligibility issued by the Department of Justice~~
9 ~~pursuant to Article 1 (commencing with Section 26700) of Chapter~~
10 ~~2.~~
11 ~~(10) The exchange of a firearm where the dealer purchased that~~
12 ~~firearm from the person seeking the exchange within the 30-day~~
13 ~~period immediately preceding the date of exchange or replacement.~~
14 ~~(11) The replacement of a firearm when the person's firearm~~
15 ~~was lost or stolen, and the person reported that firearm lost or~~
16 ~~stolen pursuant to Section 25250 prior to the completion of the~~
17 ~~application to purchase the replacement.~~
18 ~~(12) The return of any firearm to its owner.~~
19 ~~(13) A community college that is certified by the Commission~~
20 ~~on Peace Officer Standards and Training to present the law~~
21 ~~enforcement academy basic course or other commission-certified~~
22 ~~law enforcement training.~~
23 ~~(14) The purchase of a firearm, other than a handgun, by a~~
24 ~~person who possesses a valid, unexpired hunting license issued by~~
25 ~~the Department of Fish and Wildlife.~~
26 ~~(15) The acquisition of a firearm, other than a handgun, at an~~
27 ~~auction or similar event conducted by a nonprofit public benefit~~
28 ~~or mutual benefit corporation to fund the activities of that~~
29 ~~corporation or local chapters of that corporation.~~
30 ~~(c) For the purposes of paragraphs (14) and (15) of subdivision~~
31 ~~(b), the frame or receiver of a firearm is a handgun unless the frame~~
32 ~~or receiver listed in the application to purchase and delivered to~~
33 ~~the recipient is equipped with, is attached to, or is concurrently~~
34 ~~accompanied by, a barrel of 16 inches or greater in length.~~
35 *SECTION 1. Section 26835 of the Penal Code is amended to*
36 *read:*
37 26835. (a) A licensee shall post conspicuously within the
38 licensed premises the following warnings in block letters not less
39 than one inch in height:

**Exhibit 6**
**0044**
**Provided by LRI History LLC**
**SB 61 (2019) Page 14 of 367**

1    (1) "FIREARMS MUST BE HANDLED RESPONSIBLY AND
2    SECURELY STORED TO PREVENT ACCESS BY CHILDREN
3    AND OTHER UNAUTHORIZED USERS. CALIFORNIA HAS
4    STRICT LAWS PERTAINING TO FIREARMS, AND YOU
5    MAY BE FINED OR IMPRISONED IF YOU FAIL TO COMPLY
6    WITH THEM. VISIT THE WEB SITE OF THE CALIFORNIA
7    A T T O R N E Y    G E N E R A L    A T
8    HTTPS://OAG.CA.GOV/FIREARMS FOR INFORMATION ON
9    FIREARM LAWS APPLICABLE TO YOU AND HOW YOU
10   CAN COMPLY."
11   (2) "IF YOU KEEP A LOADED FIREARM WITHIN ANY
12   PREMISES UNDER YOUR CUSTODY OR CONTROL, AND
13   A PERSON UNDER 18 YEARS OF AGE OBTAINS IT AND
14   USES IT, RESULTING IN INJURY OR DEATH, OR CARRIES
15   IT TO A PUBLIC PLACE, YOU MAY BE GUILTY OF A
16   MISDEMEANOR OR A FELONY UNLESS YOU STORED
17   THE FIREARM IN A LOCKED CONTAINER OR LOCKED
18   THE FIREARM WITH A LOCKING DEVICE, TO KEEP IT
19   FROM TEMPORARILY FUNCTIONING."
20   (3) "CHILDREN MAY BE UNABLE TO DISTINGUISH
21   FIREARMS FROM TOYS AND MAY OPERATE FIREARMS,
22   CAUSING SEVERE INJURIES OR DEATH. IF YOU KEEP A
23   PISTOL, REVOLVER, OR OTHER FIREARM CAPABLE OF
24   BEING CONCEALED UPON THE PERSON, WITHIN ANY
25   PREMISES UNDER YOUR CUSTODY OR CONTROL, AND
26   A PERSON UNDER 18 YEARS OF AGE GAINS ACCESS TO
27   THE FIREARM, AND CARRIES IT OFF-PREMISES, YOU
28   MAY BE GUILTY OF A MISDEMEANOR, UNLESS YOU
29   STORED THE FIREARM IN A LOCKED CONTAINER, OR
30   LOCKED THE FIREARM WITH A LOCKING DEVICE, TO
31   KEEP IT FROM TEMPORARILY FUNCTIONING."
32   (4) "YOU MAY BE GUILTY OF A MISDEMEANOR,
33   INCLUDING A SIGNIFICANT FINE OR IMPRISONMENT, IF
34   YOU KEEP A FIREARM WHERE A MINOR IS LIKELY TO
35   ACCESS IT OR IF A MINOR OBTAINS AND IMPROPERLY
36   USES IT, OR CARRIES IT OFF OF THE PREMISES TO A
37   SCHOOL OR SCHOOL-SPONSORED EVENT, UNLESS YOU
38   STORED THE FIREARM IN A LOCKED CONTAINER OR
39   LOCKED THE FIREARM WITH A LOCKING DEVICE."

**Exhibit 6**
**0045**

**Provided by LRI History LLC**

1    (5) "IF YOU NEGLIGENTLY STORE OR LEAVE A
2    LOADED FIREARM WITHIN ANY PREMISES UNDER YOUR
3    CUSTODY OR CONTROL, WHERE A PERSON UNDER 18
4    YEARS OF AGE IS LIKELY TO ACCESS IT, YOU MAY BE
5    GUILTY OF A MISDEMEANOR, INCLUDING A
6    SIGNIFICANT FINE, UNLESS YOU STORED THE FIREARM
7    IN A LOCKED CONTAINER, OR LOCKED THE FIREARM
8    WITH A LOCKING DEVICE."
9    (6) "DISCHARGING FIREARMS IN POORLY VENTILATED
10   AREAS, CLEANING FIREARMS, OR HANDLING
11   AMMUNITION MAY RESULT IN EXPOSURE TO LEAD, A
12   SUBSTANCE KNOWN TO CAUSE BIRTH DEFECTS,
13   REPRODUCTIVE HARM, AND OTHER SERIOUS PHYSICAL
14   INJURY. HAVE ADEQUATE VENTILATION AT ALL TIMES.
15   WASH HANDS THOROUGHLY AFTER EXPOSURE."
16   (7) "FEDERAL REGULATIONS PROVIDE THAT IF YOU
17   DO NOT TAKE PHYSICAL POSSESSION OF THE FIREARM
18   THAT YOU ARE ACQUIRING OWNERSHIP OF WITHIN 30
19   DAYS AFTER YOU COMPLETE THE INITIAL
20   BACKGROUND CHECK PAPERWORK, THEN YOU HAVE
21   TO GO THROUGH THE BACKGROUND CHECK PROCESS
22   A SECOND TIME IN ORDER TO TAKE PHYSICAL
23   POSSESSION OF THAT FIREARM."
24   (8) "NO PERSON SHALL MAKE AN APPLICATION TO
25   PURCHASE MORE THAN ONE PISTOL, REVOLVER, OR
26   OTHER FIREARM CAPABLE OF BEING CONCEALED UPON
27   THE PERSON WITHIN ANY 30-DAY PERIOD AND NO
28   DELIVERY SHALL BE MADE TO ANY PERSON WHO HAS
29   MADE AN APPLICATION TO PURCHASE MORE THAN ONE
30   PISTOL, REVOLVER, OR OTHER FIREARM CAPABLE OF
31   BEING CONCEALED UPON THE PERSON WITHIN ANY
32   30-DAY PERIOD."
33   (9) "IF A FIREARM YOU OWN OR POSSESS IS LOST OR
34   STOLEN, YOU MUST REPORT THE LOSS OR THEFT TO A
35   LOCAL LAW ENFORCEMENT AGENCY WHERE THE LOSS
36   OR THEFT OCCURRED WITHIN FIVE DAYS OF THE TIME
37   YOU KNEW OR REASONABLY SHOULD HAVE KNOWN
38   THAT THE FIREARM HAD BEEN LOST OR STOLEN."
39   ~~(b) This section shall become operative on January 1, 2019.~~

8

*(b) This section shall remain in effect only until July 1, 2021, and as of that date is repealed.*

SEC. 2.   Section 26835 is added to the Penal Code, to read:

26835.   *(a) A licensee shall conspicuously post within the licensed premises the following warnings in block letters not less than one inch in height:*

*(1) "FIREARMS MUST BE HANDLED RESPONSIBLY AND SECURELY STORED TO PREVENT ACCESS BY CHILDREN AND OTHER UNAUTHORIZED USERS. CALIFORNIA HAS STRICT LAWS PERTAINING TO FIREARMS, AND YOU MAY BE FINED OR IMPRISONED IF YOU FAIL TO COMPLY WITH THEM. VISIT THE WEB SITE OF THE CALIFORNIA ATTORNEY GENERAL AT HTTPS://OAG.CA.GOV/FIREARMS FOR INFORMATION ON FIREARM LAWS APPLICABLE TO YOU AND HOW YOU CAN COMPLY."*

*(2) "IF YOU KEEP A LOADED FIREARM WITHIN ANY PREMISES UNDER YOUR CUSTODY OR CONTROL, AND A PERSON UNDER 18 YEARS OF AGE OBTAINS IT AND USES IT, RESULTING IN INJURY OR DEATH, OR CARRIES IT TO A PUBLIC PLACE, YOU MAY BE GUILTY OF A MISDEMEANOR OR A FELONY UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER OR LOCKED THE FIREARM WITH A LOCKING DEVICE, TO KEEP IT FROM TEMPORARILY FUNCTIONING."*

*(3) "CHILDREN MAY BE UNABLE TO DISTINGUISH FIREARMS FROM TOYS AND MAY OPERATE FIREARMS, CAUSING SEVERE INJURIES OR DEATH. IF YOU KEEP A PISTOL, REVOLVER, OR OTHER FIREARM CAPABLE OF BEING CONCEALED UPON THE PERSON, WITHIN ANY PREMISES UNDER YOUR CUSTODY OR CONTROL, AND A PERSON UNDER 18 YEARS OF AGE GAINS ACCESS TO THE FIREARM, AND CARRIES IT OFF-PREMISES, YOU MAY BE GUILTY OF A MISDEMEANOR, UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER, OR LOCKED THE FIREARM WITH A LOCKING DEVICE, TO KEEP IT FROM TEMPORARILY FUNCTIONING."*

*(4) "YOU MAY BE GUILTY OF A MISDEMEANOR, INCLUDING A SIGNIFICANT FINE OR IMPRISONMENT, IF YOU KEEP A FIREARM WHERE A MINOR IS LIKELY TO ACCESS IT OR IF A MINOR OBTAINS AND IMPROPERLY USES*

Exhibit 6
0047
Provided by LRI History LLC          SB 61 (2019)  Page 17 of 367

1   *IT, OR CARRIES IT OFF OF THE PREMISES TO A SCHOOL*
2   *OR SCHOOL-SPONSORED EVENT, UNLESS YOU STORED*
3   *THE FIREARM IN A LOCKED CONTAINER OR LOCKED THE*
4   *FIREARM WITH A LOCKING DEVICE."*
5   *(5) "IF YOU NEGLIGENTLY STORE OR LEAVE A LOADED*
6   *FIREARM WITHIN ANY PREMISES UNDER YOUR CUSTODY*
7   *OR CONTROL, WHERE A PERSON UNDER 18 YEARS OF AGE*
8   *IS LIKELY TO ACCESS IT, YOU MAY BE GUILTY OF A*
9   *MISDEMEANOR, INCLUDING A SIGNIFICANT FINE, UNLESS*
10  *YOU STORED THE FIREARM IN A LOCKED CONTAINER, OR*
11  *LOCKED THE FIREARM WITH A LOCKING DEVICE."*
12  *(6) "DISCHARGING FIREARMS IN POORLY VENTILATED*
13  *AREAS, CLEANING FIREARMS, OR HANDLING AMMUNITION*
14  *MAY RESULT IN EXPOSURE TO LEAD, A SUBSTANCE KNOWN*
15  *TO CAUSE BIRTH DEFECTS, REPRODUCTIVE HARM, AND*
16  *OTHER SERIOUS PHYSICAL INJURY. HAVE ADEQUATE*
17  *VENTILATION AT ALL TIMES. WASH HANDS THOROUGHLY*
18  *AFTER EXPOSURE."*
19  *(7) "FEDERAL REGULATIONS PROVIDE THAT IF YOU DO*
20  *NOT TAKE PHYSICAL POSSESSION OF THE FIREARM THAT*
21  *YOU ARE ACQUIRING OWNERSHIP OF WITHIN 30 DAYS*
22  *AFTER YOU COMPLETE THE INITIAL BACKGROUND CHECK*
23  *PAPERWORK, YOU HAVE TO GO THROUGH THE*
24  *BACKGROUND CHECK PROCESS A SECOND TIME IN ORDER*
25  *TO TAKE PHYSICAL POSSESSION OF THAT FIREARM."*
26  *(8) "NO PERSON SHALL MAKE AN APPLICATION TO*
27  *PURCHASE MORE THAN ONE FIREARM WITHIN ANY 30-DAY*
28  *PERIOD AND NO DELIVERY SHALL BE MADE TO ANY*
29  *PERSON WHO HAS MADE AN APPLICATION TO PURCHASE*
30  *MORE THAN ONE FIREARM WITHIN ANY 30-DAY PERIOD."*
31  *(9) "IF A FIREARM YOU OWN OR POSSESS IS LOST OR*
32  *STOLEN, YOU MUST REPORT THE LOSS OR THEFT TO A*
33  *LOCAL LAW ENFORCEMENT AGENCY WHERE THE LOSS*
34  *OR THEFT OCCURRED WITHIN FIVE DAYS OF THE TIME*
35  *YOU KNEW OR REASONABLY SHOULD HAVE KNOWN THAT*
36  *THE FIREARM HAD BEEN LOST OR STOLEN."*
37  *(b) This section shall become operative on July 1, 2021.*
38  *SEC. 3. Section 27510 of the Penal Code is amended to read:*

1     27510.  (a)  A person licensed under Sections 26700 to 26915,
2 inclusive, shall not sell, supply, deliver, or give possession or
3 control of a firearm to any person *who is* under 21 years of age.
4     (b) (1) Subdivision (a) does not apply to or affect the sale,
5 supplying, delivery, or giving possession or control of a firearm
6 that is not a handgun *or a semiautomatic centerfire rifle* to a person
7 18 years of age or older who possesses a valid, unexpired hunting
8 license issued by the Department of Fish and Wildlife.
9     (2) Subdivision (a) does not apply to or affect the sale,
10 supplying, delivery, or giving possession or control of a firearm
11 that is not a handgun *or a semiautomatic centerfire rifle* to any of
12 the following persons who are 18 years of age or older:
13     (A) An active peace officer, as described in Chapter 4.5
14 (commencing with Section 830) of Title 3 of Part 2, who is
15 authorized to carry a firearm in the course and scope of ~~his or her~~
16 employment.
17     (B) An active federal officer or law enforcement agent who is
18 authorized to carry a firearm in the course and scope of ~~his or her~~
19 employment.
20     (C) A reserve peace officer, as defined in Section 832.6, who
21 is authorized to carry a firearm in the course and scope of ~~his or~~
22 ~~her~~ employment as a reserve peace officer.
23     (D) A person who provides proper identification of ~~his or her~~
24 active membership in the United States Armed Forces, the National
25 Guard, the Air National Guard, or active reserve components of
26 the United States. For purposes of this subparagraph, proper
27 identification includes an Armed Forces Identification Card or
28 other written documentation certifying that the individual is an
29 active member.
30     (E) A person who provides proper identification ~~that he or she~~
31 ~~is~~ *of being* an honorably discharged member of the United States
32 Armed Forces, the National Guard, the Air National Guard, or the
33 active reserve components of the United States. For purposes of
34 this subparagraph, proper identification includes an Armed Forces
35 Identification Card or other written documentation certifying that
36 the individual is an honorably discharged member.
37     *(c) A person licensed under Sections 26700 to 26915, inclusive,*
38 *shall not sell, supply, deliver, or give possession or control of a*
39 *semiautomatic centerfire rifle to any person who is under 21 years*
40 *of age.*

*(d) Subdivision (c) does not apply to or affect the sale, supplying, delivery, or giving possession or control of a semiautomatic centerfire rifle to any of the following persons who are 18 years of age or older:*

*(1) An active peace officer, as described in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2, who is authorized to carry a firearm in the course and scope of employment.*

*(2) An active federal officer or law enforcement agent who is authorized to carry a firearm in the course and scope of employment.*

*(3) A reserve peace officer, as defined in Section 832.6, who is authorized to carry a firearm in the course and scope of employment as a reserve peace officer.*

*(4) A person who provides proper identification of active membership in the United States Armed Forces, the National Guard, the Air National Guard, or active reserve components of the United States. For purposes of this paragraph, proper identification includes an Armed Forces Identification Card or other written documentation certifying that the individual is an active member.*

*SEC. 4. Section 27535 of the Penal Code is amended to read:*

27535. (a) No person shall make an application to purchase more than one handgun within any 30-day period.

(b) Subdivision (a) shall not apply to any of the following:

(1) Any law enforcement agency.

(2) Any agency duly authorized to perform law enforcement duties.

(3) Any state or local correctional facility.

(4) Any private security company licensed to do business in California.

(5) Any person who is properly identified as a full-time paid peace officer, as defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2, and who is authorized to, and does carry a firearm during the course and scope of employment as a peace officer.

(6) Any motion picture, television, or video production company or entertainment or theatrical company whose production by its nature involves the use of a firearm.

**Exhibit 6**
**0050**
**Provided by LRI History LLC**
**SB 61 (2019) Page 20 of 367**

1    (7) Any person who may, pursuant to Article 2 (commencing
2  with Section 27600), Article 3 (commencing with Section 27650),
3  or Article 4 (commencing with Section 27700), claim an exemption
4  from the waiting period set forth in Section 27540.
5    (8) Any transaction conducted through a licensed firearms dealer
6  pursuant to Chapter 5 (commencing with Section 28050).
7    (9) Any person who is licensed as a collector pursuant to Chapter
8  44 (commencing with Section 921) of Title 18 of the United States
9  Code and the regulations issued pursuant thereto, and has a current
10  certificate of eligibility issued by the Department of Justice
11  pursuant to Article 1 (commencing with Section 26700) of Chapter
12  2.
13    (10) The exchange of a handgun where the dealer purchased
14  that firearm from the person seeking the exchange within the
15  30-day period immediately preceding the date of exchange or
16  replacement.
17    (11) The replacement of a handgun when the person's handgun
18  was lost or stolen, and the person reported that firearm lost or
19  stolen pursuant to Section 25250 prior to the completion of the
20  application to purchase the replacement handgun.
21    (12) The return of any handgun to its owner.
22    (13) A community college that is certified by the Commission
23  on Peace Officer Standards and Training to present the law
24  enforcement academy basic course or other commission-certified
25  law enforcement training.
26    *(c) This section shall remain in effect only until July 1, 2021,*
27  *and as of that date is repealed.*
28    *SEC. 5. Section 27535 is added to the Penal Code, to read:*
29    *27535. (a) A person shall not make an application to purchase*
30  *more than one firearm within any 30-day period.*
31    *(b) Subdivision (a) does not apply to any of the following:*
32    *(1) Any law enforcement agency.*
33    *(2) Any agency duly authorized to perform law enforcement*
34  *duties.*
35    *(3) Any state or local correctional facility.*
36    *(4) Any private security company licensed to do business in*
37  *California.*
38    *(5) Any person who is properly identified as a full-time paid*
39  *peace officer, as defined in Chapter 4.5 (commencing with Section*
40  *830) of Title 3 of Part 2, and who is authorized to, and does carry*

1  a firearm during the course and scope of employment as a peace
2  officer.
3    (6) Any motion picture, television, or video production company
4  or entertainment or theatrical company whose production by its
5  nature involves the use of a firearm.
6    (7) Any person who may, pursuant to Article 2 (commencing
7  with Section 27600), Article 3 (commencing with Section 27650),
8  or Article 4 (commencing with Section 27700), claim an exemption
9  from the waiting period set forth in Section 27540.
10    (8) Any transaction conducted through a licensed firearms
11  dealer pursuant to Chapter 5 (commencing with Section 28050).
12    (9) Any person who is licensed as a collector pursuant to
13  Chapter 44 (commencing with Section 921) of Title 18 of the United
14  States Code and the regulations issued pursuant thereto, and has
15  a current certificate of eligibility issued by the Department of
16  Justice pursuant to Article 1 (commencing with Section 26700) of
17  Chapter 2.
18    (10) The exchange of a firearm where the dealer purchased that
19  firearm from the person seeking the exchange within the 30-day
20  period immediately preceding the date of exchange or replacement.
21    (11) The replacement of a firearm when the person's firearm
22  was lost or stolen, and the person reported that firearm lost or
23  stolen pursuant to Section 25250 prior to the completion of the
24  application to purchase the replacement.
25    (12) The return of any firearm to its owner.
26    (13) A community college that is certified by the Commission
27  on Peace Officer Standards and Training to present the law
28  enforcement academy basic course or other commission-certified
29  law enforcement training.
30    (14) The purchase of a firearm, other than a handgun, or a
31  semiautomatic centerfire rifle by a person who possesses a valid,
32  unexpired hunting license issued by the Department of Fish and
33  Wildlife.
34    (15) The acquisition of a firearm, other than a handgun, or a
35  semiautomatic centerfire rifle at an auction or similar event
36  conducted by a nonprofit public benefit or mutual benefit
37  corporation to fund the activities of that corporation or local
38  chapters of that corporation.
39    (c) For the purposes of paragraphs (14) and (15) of subdivision
40  (b), the frame or receiver of a firearm is a handgun unless the

1 *frame or receiver listed in the application to purchase and*
2 *delivered to the recipient is equipped with, is attached to, or is*
3 *concurrently accompanied by, a barrel of 16 inches or greater in*
4 *length.*
5  *(d) This section shall become operative on July 1, 2021.*
6 ~~SEC. 3.~~
7  *SEC. 6.*  Section 27540 of the Penal Code is amended to read:
8  27540.  A dealer, whether or not acting pursuant to Chapter 5
9 (commencing with Section 28050), shall not deliver a firearm to
10 a person, as follows:
11  (a)  Within 10 days of the application to purchase, or, after notice
12 by the department pursuant to Section 28220, within 10 days of
13 the submission to the department of any correction to the
14 application, or within 10 days of the submission to the department
15 of any fee required pursuant to Section 28225, whichever is later.
16  (b)  Unless unloaded and securely wrapped or unloaded and in
17 a locked container.
18  (c)  Unless the purchaser, transferee, or person being loaned the
19 firearm presents clear evidence of the person's identity and age to
20 the dealer.
21  (d)  Whenever the dealer is notified by the Department of Justice
22 that the person is prohibited by state or federal law from possessing,
23 receiving, owning, or purchasing a firearm.
24  (e)  A firearm, including a handgun, shall not be delivered unless
25 the purchaser, transferee, or person being loaned the firearm
26 presents a firearm safety certificate to the dealer, except that in the
27 case of a handgun, an unexpired handgun safety certificate may
28 be presented.
29  (f)  ~~A  firearm~~ *Until July 1, 2021, a handgun* shall not be
30 delivered whenever the dealer is notified by the Department of
31 Justice that within the preceding 30-day period the purchaser has
32 made another application to purchase a ~~firearm~~ *handgun* and that
33 the previous application to purchase did not involve any of the
34 entities or circumstances specified in subdivision (b) of Section
35 27535.
36  *(g) Commencing July 1, 2021, a firearm shall not be delivered*
37 *whenever the dealer is notified by the Department of Justice that*
38 *within the preceding 30-day period the purchaser has made*
39 *another application to purchase a firearm and that the previous*

**Exhibit 6**
**0053**
**Provided by LRI History LLC**                          **SB 61 (2019)  Page 23 of 367**

1 *application to purchase did not involve any of the entities or*
2 *circumstances specified in subdivision (b) of Section 27535.*
3 ~~SEC. 4.~~
4 *SEC. 7.* Section 27590 of the Penal Code is amended to read:
5 27590. (a) Except as provided in subdivision (b), (c), or (e),
6 a violation of this article is a misdemeanor.
7 (b) If any of the following circumstances apply, a violation of
8 this article is punishable by imprisonment pursuant to subdivision
9 (h) of Section 1170 for two, three, or four years:
10 (1) If the violation is of subdivision (a) of Section 27500.
11 (2) If the defendant has a prior conviction of violating the
12 provisions, other than Section 27535, Section 27560 involving a
13 firearm that is not a handgun, or Section 27565 involving a firearm
14 that is not a handgun, of this article or former Section 12100 of
15 this code, as Section 12100 read at any time from when it was
16 enacted by Section 3 of Chapter 1386 of the Statutes of 1988 to
17 when it was repealed by Section 18 of Chapter 23 of the Statutes
18 of 1994, or Section 8101 of the Welfare and Institutions Code.
19 (3) If the defendant has a prior conviction of violating any
20 offense specified in Section 29905 or of a violation of Section
21 32625 or 33410, or of former Section 12560, as that section read
22 at any time from when it was enacted by Section 4 of Chapter 931
23 of the Statutes of 1965 to when it was repealed by Section 14 of
24 Chapter 9 of the Statutes of 1990, or of any provision listed in
25 Section 16590.
26 (4) If the defendant is in a prohibited class described in Chapter
27 2 (commencing with Section 29800) or Chapter 3 (commencing
28 with Section 29900) of Division 9 of this title, or Section 8100 or
29 8103 of the Welfare and Institutions Code.
30 (5) A violation of this article by a person who actively
31 participates in a "criminal street gang" as defined in Section 186.22.
32 (6) A violation of Section 27510 involving the delivery of any
33 firearm to a person who the dealer knows, or should know, is a
34 minor.
35 (c) If any of the following circumstances apply, a violation of
36 this article shall be punished by imprisonment in a county jail not
37 exceeding one year or pursuant to subdivision (h) of Section 1170,
38 or by a fine not to exceed one thousand dollars ($1,000), or by
39 both that fine and imprisonment:

**Exhibit 6**
**0054**
**Provided by LRI History LLC**          **SB 61 (2019)  Page 24 of 367**

1    (1) A violation of Section 27515, 27520, or subdivision (b) of
2 Section 27500.
3    (2) A violation of Section 27505 involving the sale, loan, or
4 transfer of a handgun to a minor.
5    (3) A violation of Section 27510 involving the delivery of a
6 handgun.
7    (4) A violation of subdivision (a), (c), (d), (e), or (f) of Section
8 27540 involving a handgun.
9    (5) A violation of Section 27545 involving a handgun.
10    (6) A violation of Section 27550.
11    (7) A violation of Section 27585 involving a handgun.
12    (d) If both of the following circumstances apply, an additional
13 term of imprisonment pursuant to subdivision (h) of Section 1170
14 for one, two, or three years shall be imposed in addition and
15 consecutive to the sentence prescribed:
16    (1) A violation of Section 27510 or subdivision (b) of Section
17 27500.
18    (2) The firearm transferred in violation of Section 27510 or
19 subdivision (b) of Section 27500 is used in the subsequent
20 commission of a felony for which a conviction is obtained and the
21 prescribed sentence is imposed.
22    (e) (1) A first violation of Section 27535 is an infraction
23 punishable by a fine of fifty dollars ($50).
24    (2) A second violation of Section 27535 is an infraction
25 punishable by a fine of one hundred dollars ($100).
26    (3) A third or subsequent violation of Section 27535 is a
27 misdemeanor.
28    (4) ~~For~~ *(A) Until July 1, 2021, for* purposes of this subdivision,
29 each application to purchase a ~~firearm~~ *handgun* in violation of
30 Section 27535 is a separate offense.
31    *(B) Commencing July 1, 2021, for purposes of this subdivision,*
32 *each application to purchase a firearm in violation of Section*
33 *27535 is a separate offense.*
34    ~~SEC. 5.~~
35    *SEC. 8.* No reimbursement is required by this act pursuant to
36 Section 6 of Article XIIIB of the California Constitution because
37 the only costs that may be incurred by a local agency or school
38 district will be incurred because this act creates a new crime or
39 infraction, eliminates a crime or infraction, or changes the penalty
40 for a crime or infraction, within the meaning of Section 17556 of

1   the Government Code, or changes the definition of a crime within
2   the meaning of Section 6 of Article XIII B of the California
3   Constitution.

O

AMENDED IN ASSEMBLY JUNE 11, 2019

AMENDED IN SENATE MAY 17, 2019

## SENATE BILL                              No. 61

Introduced by Senator Portantino
(Principal coauthors: Senators Glazer and Wiener)
(Coauthor: Senator Skinner)
(Coauthor: Assembly Member Bonta)

January 3, 2019

An act to amend Sections 27510, 27540, and 27590 of, and to amend, repeal, and add Sections 26835 and 27535 of, the Penal Code, relating to firearms.

LEGISLATIVE COUNSEL'S DIGEST

SB 61, as amended, Portantino. Firearms: transfers.

Existing law, subject to exceptions, prohibits a person from making more than one application to purchase a handgun within any 30-day period. A violation of that prohibition is a crime. Existing law prohibits a firearms dealer from delivering a handgun to a person whenever the dealer is notified by the Department of Justice that within the preceding 30-day period the purchaser has made another application to purchase a handgun that does not fall within an exception to the 30-day prohibition. A violation of that delivery prohibition by the dealer is a crime.

This bill would, effective July 1, 2021, make the 30-day prohibition and the dealer delivery prohibition described above applicable to all types of firearms. The bill would also exempt from that ~~prohibition~~ *prohibition, as specified,* the purchase of a firearm, other than a handgun, by a person who possesses a valid, unexpired hunting license issued by the state, *the purchase of a firearm, other than a handgun, by a person*

Exhibit 6
0057

Provided by LRI History LLC

2

*who is honorably discharged from the armed forces,* and the acquisition of a firearm, other than a handgun, at specified charity fundraising events.

Existing law prohibits a licensed firearm dealer from selling a firearm to a person under 21 years of age. Existing law provides an exemption to this prohibition for the sale of a firearm, other than a handgun, to a person 18 years of age or older who has a valid hunting license or is an honorably discharged member of the Armed Forces.

This bill ~~would~~ *would, effective January 1, 2021,* prohibit the sale of a semiautomatic centerfire rifle to either of those exempted persons who are under 21 years of ~~age.~~ *age, unless they possess a certificate of eligibility from the Department of Justice.*

By expanding the scope of existing crimes, this bill would impose a state-mandated local program.

The California Constitution requires the state to reimburse local agencies and school districts for certain costs mandated by the state. Statutory provisions establish procedures for making that reimbursement.

This bill would provide that no reimbursement is required by this act for a specified reason.

Vote: majority. Appropriation: no. Fiscal committee: yes. State-mandated local program: yes.

*The people of the State of California do enact as follows:*

1    SECTION 1. Section 26835 of the Penal Code is amended to
2    read:
3    26835. (a) A licensee shall post conspicuously within the
4    licensed premises the following warnings in block letters not less
5    than one inch in height:
6    (1) "FIREARMS MUST BE HANDLED RESPONSIBLY AND
7    SECURELY STORED TO PREVENT ACCESS BY CHILDREN
8    AND OTHER UNAUTHORIZED USERS. CALIFORNIA HAS
9    STRICT LAWS PERTAINING TO FIREARMS, AND YOU
10    MAY BE FINED OR IMPRISONED IF YOU FAIL TO COMPLY
11    WITH THEM. VISIT THE WEB SITE OF THE CALIFORNIA
12    ATTORNEY GENERAL AT
13    HTTPS://OAG.CA.GOV/FIREARMS FOR INFORMATION ON
14    FIREARM LAWS APPLICABLE TO YOU AND HOW YOU
15    CAN COMPLY."

1   (2) "IF YOU KEEP A LOADED FIREARM WITHIN ANY
2 PREMISES UNDER YOUR CUSTODY OR CONTROL, AND
3 A PERSON UNDER 18 YEARS OF AGE OBTAINS IT AND
4 USES IT, RESULTING IN INJURY OR DEATH, OR CARRIES
5 IT TO A PUBLIC PLACE, YOU MAY BE GUILTY OF A
6 MISDEMEANOR OR A FELONY UNLESS YOU STORED
7 THE FIREARM IN A LOCKED CONTAINER OR LOCKED
8 THE FIREARM WITH A LOCKING DEVICE, TO KEEP IT
9 FROM TEMPORARILY FUNCTIONING."
10   (3) "CHILDREN MAY BE UNABLE TO DISTINGUISH
11 FIREARMS FROM TOYS AND MAY OPERATE FIREARMS,
12 CAUSING SEVERE INJURIES OR DEATH. IF YOU KEEP A
13 PISTOL, REVOLVER, OR OTHER FIREARM CAPABLE OF
14 BEING CONCEALED UPON THE PERSON, WITHIN ANY
15 PREMISES UNDER YOUR CUSTODY OR CONTROL, AND
16 A PERSON UNDER 18 YEARS OF AGE GAINS ACCESS TO
17 THE FIREARM, AND CARRIES IT OFF-PREMISES, YOU
18 MAY BE GUILTY OF A MISDEMEANOR, UNLESS YOU
19 STORED THE FIREARM IN A LOCKED CONTAINER, OR
20 LOCKED THE FIREARM WITH A LOCKING DEVICE, TO
21 KEEP IT FROM TEMPORARILY FUNCTIONING."
22   (4) "YOU MAY BE GUILTY OF A MISDEMEANOR,
23 INCLUDING A SIGNIFICANT FINE OR IMPRISONMENT, IF
24 YOU KEEP A FIREARM WHERE A MINOR IS LIKELY TO
25 ACCESS IT OR IF A MINOR OBTAINS AND IMPROPERLY
26 USES IT, OR CARRIES IT OFF OF THE PREMISES TO A
27 SCHOOL OR SCHOOL-SPONSORED EVENT, UNLESS YOU
28 STORED THE FIREARM IN A LOCKED CONTAINER OR
29 LOCKED THE FIREARM WITH A LOCKING DEVICE."
30   (5) "IF YOU NEGLIGENTLY STORE OR LEAVE A
31 LOADED FIREARM WITHIN ANY PREMISES UNDER YOUR
32 CUSTODY OR CONTROL, WHERE A PERSON UNDER 18
33 YEARS OF AGE IS LIKELY TO ACCESS IT, YOU MAY BE
34 GUILTY OF A MISDEMEANOR, INCLUDING A
35 SIGNIFICANT FINE, UNLESS YOU STORED THE FIREARM
36 IN A LOCKED CONTAINER, OR LOCKED THE FIREARM
37 WITH A LOCKING DEVICE."
38   (6) "DISCHARGING FIREARMS IN POORLY VENTILATED
39 AREAS, CLEANING FIREARMS, OR HANDLING
40 AMMUNITION MAY RESULT IN EXPOSURE TO LEAD, A

1 SUBSTANCE KNOWN TO CAUSE BIRTH DEFECTS,
2 REPRODUCTIVE HARM, AND OTHER SERIOUS PHYSICAL
3 INJURY. HAVE ADEQUATE VENTILATION AT ALL TIMES.
4 WASH HANDS THOROUGHLY AFTER EXPOSURE."
5 (7) "FEDERAL REGULATIONS PROVIDE THAT IF YOU
6 DO NOT TAKE PHYSICAL POSSESSION OF THE FIREARM
7 THAT YOU ARE ACQUIRING OWNERSHIP OF WITHIN 30
8 DAYS AFTER YOU COMPLETE THE INITIAL
9 BACKGROUND CHECK PAPERWORK, THEN YOU HAVE
10 TO GO THROUGH THE BACKGROUND CHECK PROCESS
11 A SECOND TIME IN ORDER TO TAKE PHYSICAL
12 POSSESSION OF THAT FIREARM."
13 (8) "NO PERSON SHALL MAKE AN APPLICATION TO
14 PURCHASE MORE THAN ONE PISTOL, REVOLVER, OR
15 OTHER FIREARM CAPABLE OF BEING CONCEALED UPON
16 THE PERSON WITHIN ANY 30-DAY PERIOD AND NO
17 DELIVERY SHALL BE MADE TO ANY PERSON WHO HAS
18 MADE AN APPLICATION TO PURCHASE MORE THAN ONE
19 PISTOL, REVOLVER, OR OTHER FIREARM CAPABLE OF
20 BEING CONCEALED UPON THE PERSON WITHIN ANY
21 30-DAY PERIOD."
22 (9) "IF A FIREARM YOU OWN OR POSSESS IS LOST OR
23 STOLEN, YOU MUST REPORT THE LOSS OR THEFT TO A
24 LOCAL LAW ENFORCEMENT AGENCY WHERE THE LOSS
25 OR THEFT OCCURRED WITHIN FIVE DAYS OF THE TIME
26 YOU KNEW OR REASONABLY SHOULD HAVE KNOWN
27 THAT THE FIREARM HAD BEEN LOST OR STOLEN."
28 (b) This section shall remain in effect only until July 1, 2021,
29 and as of that date is repealed.
30 SEC. 2. Section 26835 is added to the Penal Code, to read:
31 26835. (a) A licensee shall conspicuously post within the
32 licensed premises the following warnings in block letters not less
33 than one inch in height:
34 (1) "FIREARMS MUST BE HANDLED RESPONSIBLY AND
35 SECURELY STORED TO PREVENT ACCESS BY CHILDREN
36 AND OTHER UNAUTHORIZED USERS. CALIFORNIA HAS
37 STRICT LAWS PERTAINING TO FIREARMS, AND YOU
38 MAY BE FINED OR IMPRISONED IF YOU FAIL TO COMPLY
39 WITH THEM. VISIT THE WEB SITE OF THE CALIFORNIA
40 A T T O R N E Y    G E N E R A L    A T

**Exhibit 6**
**0060**
**Provided by LRI History LLC**    **SB 61 (2019)  Page 30 of 367**

1 HTTPS://OAG.CA.GOV/FIREARMS FOR INFORMATION ON
2 FIREARM LAWS APPLICABLE TO YOU AND HOW YOU
3 CAN COMPLY."
4    (2) "IF YOU KEEP A LOADED FIREARM WITHIN ANY
5 PREMISES UNDER YOUR CUSTODY OR CONTROL, AND
6 A PERSON UNDER 18 YEARS OF AGE OBTAINS IT AND
7 USES IT, RESULTING IN INJURY OR DEATH, OR CARRIES
8 IT TO A PUBLIC PLACE, YOU MAY BE GUILTY OF A
9 MISDEMEANOR OR A FELONY UNLESS YOU STORED
10 THE FIREARM IN A LOCKED CONTAINER OR LOCKED
11 THE FIREARM WITH A LOCKING DEVICE, TO KEEP IT
12 FROM TEMPORARILY FUNCTIONING."
13    (3) "CHILDREN MAY BE UNABLE TO DISTINGUISH
14 FIREARMS FROM TOYS AND MAY OPERATE FIREARMS,
15 CAUSING SEVERE INJURIES OR DEATH. IF YOU KEEP A
16 PISTOL, REVOLVER, OR OTHER FIREARM CAPABLE OF
17 BEING CONCEALED UPON THE PERSON, WITHIN ANY
18 PREMISES UNDER YOUR CUSTODY OR CONTROL, AND
19 A PERSON UNDER 18 YEARS OF AGE GAINS ACCESS TO
20 THE FIREARM, AND CARRIES IT OFF-PREMISES, YOU
21 MAY BE GUILTY OF A MISDEMEANOR, UNLESS YOU
22 STORED THE FIREARM IN A LOCKED CONTAINER, OR
23 LOCKED THE FIREARM WITH A LOCKING DEVICE, TO
24 KEEP IT FROM TEMPORARILY FUNCTIONING."
25    (4) "YOU MAY BE GUILTY OF A MISDEMEANOR,
26 INCLUDING A SIGNIFICANT FINE OR IMPRISONMENT, IF
27 YOU KEEP A FIREARM WHERE A MINOR IS LIKELY TO
28 ACCESS IT OR IF A MINOR OBTAINS AND IMPROPERLY
29 USES IT, OR CARRIES IT OFF OF THE PREMISES TO A
30 SCHOOL OR SCHOOL-SPONSORED EVENT, UNLESS YOU
31 STORED THE FIREARM IN A LOCKED CONTAINER OR
32 LOCKED THE FIREARM WITH A LOCKING DEVICE."
33    (5) "IF YOU NEGLIGENTLY STORE OR LEAVE A
34 LOADED FIREARM WITHIN ANY PREMISES UNDER YOUR
35 CUSTODY OR CONTROL, WHERE A PERSON UNDER 18
36 YEARS OF AGE IS LIKELY TO ACCESS IT, YOU MAY BE
37 GUILTY OF A MISDEMEANOR, INCLUDING A
38 SIGNIFICANT FINE, UNLESS YOU STORED THE FIREARM
39 IN A LOCKED CONTAINER, OR LOCKED THE FIREARM
40 WITH A LOCKING DEVICE."

1    (6) "DISCHARGING FIREARMS IN POORLY VENTILATED
2    AREAS, CLEANING FIREARMS, OR HANDLING
3    AMMUNITION MAY RESULT IN EXPOSURE TO LEAD, A
4    SUBSTANCE KNOWN TO CAUSE BIRTH DEFECTS,
5    REPRODUCTIVE HARM, AND OTHER SERIOUS PHYSICAL
6    INJURY. HAVE ADEQUATE VENTILATION AT ALL TIMES.
7    WASH HANDS THOROUGHLY AFTER EXPOSURE."
8    (7) "FEDERAL REGULATIONS PROVIDE THAT IF YOU
9    DO NOT TAKE PHYSICAL POSSESSION OF THE FIREARM
10    THAT YOU ARE ACQUIRING OWNERSHIP OF WITHIN 30
11    DAYS AFTER YOU COMPLETE THE INITIAL
12    BACKGROUND CHECK PAPERWORK, YOU HAVE TO GO
13    THROUGH THE BACKGROUND CHECK PROCESS A
14    SECOND TIME IN ORDER TO TAKE PHYSICAL
15    POSSESSION OF THAT FIREARM."
16    (8) "NO PERSON SHALL MAKE AN APPLICATION TO
17    PURCHASE MORE THAN ONE FIREARM WITHIN ANY
18    30-DAY PERIOD AND NO DELIVERY SHALL BE MADE TO
19    ANY PERSON WHO HAS MADE AN APPLICATION TO
20    PURCHASE MORE THAN ONE FIREARM WITHIN ANY
21    30-DAY PERIOD."
22    (9) "IF A FIREARM YOU OWN OR POSSESS IS LOST OR
23    STOLEN, YOU MUST REPORT THE LOSS OR THEFT TO A
24    LOCAL LAW ENFORCEMENT AGENCY WHERE THE LOSS
25    OR THEFT OCCURRED WITHIN FIVE DAYS OF THE TIME
26    YOU KNEW OR REASONABLY SHOULD HAVE KNOWN
27    THAT THE FIREARM HAD BEEN LOST OR STOLEN."
28    (b)  This section shall become operative on July 1, 2021.
29    SEC. 3.  Section 27510 of the Penal Code is amended to read:
30    27510.  (a)  A person licensed under Sections 26700 to 26915,
31    inclusive, shall not sell, supply, deliver, or give possession or
32    control of a firearm to any person who is under 21 years of age.
33    (b) (1)  Subdivision (a) does not apply to or affect the sale,
34    supplying, delivery, or giving possession or control of a firearm
35    that is not a handgun or a semiautomatic centerfire rifle to a person
36    18 years of age or older who possesses a valid, unexpired hunting
37    license issued by the Department of Fish and Wildlife.
38    (2)  Subdivision (a) does not apply to or affect the sale,
39    supplying, delivery, or giving possession or control of a firearm

**Exhibit 6**
**0062**
**Provided by LRI History LLC**                    **SB 61 (2019)  Page 32 of 367**

1 that is not a handgun or a semiautomatic centerfire rifle to any of
2 the following persons who are 18 years of age or older:
3 (A) An active peace officer, as described in Chapter 4.5
4 (commencing with Section 830) of Title 3 of Part 2, who is
5 authorized to carry a firearm in the course and scope of
6 employment.
7 (B) An active federal officer or law enforcement agent who is
8 authorized to carry a firearm in the course and scope of
9 employment.
10 (C) A reserve peace officer, as defined in Section 832.6, who
11 is authorized to carry a firearm in the course and scope of
12 employment as a reserve peace officer.
13 (D) A person who provides proper identification of active
14 membership in the United States Armed Forces, the National
15 Guard, the Air National Guard, or active reserve components of
16 the United States. For purposes of this subparagraph, proper
17 identification includes an Armed Forces Identification Card or
18 other written documentation certifying that the individual is an
19 active member.
20 (E) A person who provides proper identification of being an
21 honorably discharged member of the United States Armed Forces,
22 the National Guard, the Air National Guard, or the active reserve
23 components of the United States. For purposes of this
24 subparagraph, proper identification includes an Armed Forces
25 Identification Card or other written documentation certifying that
26 the individual is an honorably discharged member.
27 (c) A *Commencing January 1, 2021, a* person licensed under
28 Sections 26700 to 26915, inclusive, shall not sell, supply, deliver,
29 or give possession or control of a semiautomatic centerfire rifle to
30 any person who is under 21 years of age.
31 (d) Subdivision (c) does not apply to or affect the sale,
32 supplying, delivery, or giving possession or control of a
33 semiautomatic centerfire rifle to any of the following persons who
34 are 18 years of age or older:
35 (1) An active peace officer, as described in Chapter 4.5
36 (commencing with Section 830) of Title 3 of Part 2, who is
37 authorized to carry a firearm in the course and scope of
38 employment.

**Exhibit 6**
**0063**
**Provided by LRI History LLC**          **SB 61 (2019)  Page 33 of 367**

1    (2) An active federal officer or law enforcement agent who is
2 authorized to carry a firearm in the course and scope of
3 employment.

4    (3) A reserve peace officer, as defined in Section 832.6, who is
5 authorized to carry a firearm in the course and scope of
6 employment as a reserve peace officer.

7    (4) A person who provides proper identification of active
8 membership in the United States Armed Forces, the National
9 Guard, the Air National Guard, or active reserve components of
10 the United States. For purposes of this paragraph, proper
11 identification includes an Armed Forces Identification Card or
12 other written documentation certifying that the individual is an
13 active member.

14    *(5) A person who provides proper identification as an honorably*
15 *discharged member of the United States Armed Forces, the*
16 *National Guard, the Air National Guard, or the active reserve*
17 *components of the United States and has a current certificate of*
18 *eligibility issued by the Department of Justice pursuant to Article*
19 *1 (commencing with Section 26700) of Chapter 2. For purposes*
20 *of this paragraph, proper identification includes an Armed Forces*
21 *Identification Card or other written documentation certifying that*
22 *the individual is an honorably discharged member.*

23    *(6) A person who possesses a valid, unexpired hunting license*
24 *issued by the Department of Fish and Wildlife and has a current*
25 *certificate of eligibility issued by the Department of Justice*
26 *pursuant to Article 1 (commencing with Section 26700) of Chapter*
27 *2.*

28    SEC. 4.  Section 27535 of the Penal Code is amended to read:
29    27535.  (a) No person shall make an application to purchase
30 more than one handgun within any 30-day period.

31    (b) Subdivision (a) shall not apply to any of the following:
32    (1) Any law enforcement agency.
33    (2) Any agency duly authorized to perform law enforcement
34 duties.

35    (3) Any state or local correctional facility.
36    (4) Any private security company licensed to do business in
37 California.

38    (5) Any person who is properly identified as a full-time paid
39 peace officer, as defined in Chapter 4.5 (commencing with Section
40 830) of Title 3 of Part 2, and who is authorized to, and does carry

1 a firearm during the course and scope of employment as a peace
2 officer.
3    (6) Any motion picture, television, or video production company
4 or entertainment or theatrical company whose production by its
5 nature involves the use of a firearm.
6    (7) Any person who may, pursuant to Article 2 (commencing
7 with Section 27600), Article 3 (commencing with Section 27650),
8 or Article 4 (commencing with Section 27700), claim an exemption
9 from the waiting period set forth in Section 27540.
10    (8) Any transaction conducted through a licensed firearms dealer
11 pursuant to Chapter 5 (commencing with Section 28050).
12    (9) Any person who is licensed as a collector pursuant to Chapter
13 44 (commencing with Section 921) of Title 18 of the United States
14 Code and the regulations issued pursuant thereto, and has a current
15 certificate of eligibility issued by the Department of Justice
16 pursuant to Article 1 (commencing with Section 26700) of Chapter
17 2.
18    (10) The exchange of a handgun where the dealer purchased
19 that firearm from the person seeking the exchange within the
20 30-day period immediately preceding the date of exchange or
21 replacement.
22    (11) The replacement of a handgun when the person's handgun
23 was lost or stolen, and the person reported that firearm lost or
24 stolen pursuant to Section 25250 prior to the completion of the
25 application to purchase the replacement handgun.
26    (12) The return of any handgun to its owner.
27    (13) A community college that is certified by the Commission
28 on Peace Officer Standards and Training to present the law
29 enforcement academy basic course or other commission-certified
30 law enforcement training.
31    (c) This section shall remain in effect only until July 1, 2021,
32 and as of that date is repealed.
33    SEC. 5. Section 27535 is added to the Penal Code, to read:
34    27535. (a) A person shall not make an application to purchase
35 more than one firearm within any 30-day period.
36    (b) Subdivision (a) does not apply to any of the following:
37    (1) Any law enforcement agency.
38    (2) Any agency duly authorized to perform law enforcement
39 duties.
40    (3) Any state or local correctional facility.

1    (4) Any private security company licensed to do business in
2 California.
3    (5) Any person who is properly identified as a full-time paid
4 peace officer, as defined in Chapter 4.5 (commencing with Section
5 830) of Title 3 of Part 2, and who is authorized to, and does carry
6 a firearm during the course and scope of employment as a peace
7 officer.
8    (6) Any motion picture, television, or video production company
9 or entertainment or theatrical company whose production by its
10 nature involves the use of a firearm.
11    (7) Any person who may, pursuant to Article 2 (commencing
12 with Section 27600), Article 3 (commencing with Section 27650),
13 or Article 4 (commencing with Section 27700), claim an exemption
14 from the waiting period set forth in Section 27540.
15    (8) Any transaction conducted through a licensed firearms dealer
16 pursuant to Chapter 5 (commencing with Section 28050).
17    (9) Any person who is licensed as a collector pursuant to Chapter
18 44 (commencing with Section 921) of Title 18 of the United States
19 Code and the regulations issued pursuant thereto, and has a current
20 certificate of eligibility issued by the Department of Justice
21 pursuant to Article 1 (commencing with Section 26700) of Chapter
22 2.
23    (10) The exchange of a firearm where the dealer purchased that
24 firearm from the person seeking the exchange within the 30-day
25 period immediately preceding the date of exchange or replacement.
26    (11) The replacement of a firearm when the person's firearm
27 was lost or stolen, and the person reported that firearm lost or
28 stolen pursuant to Section 25250 prior to the completion of the
29 application to purchase the replacement.
30    (12) The return of any firearm to its owner.
31    (13) A community college that is certified by the Commission
32 on Peace Officer Standards and Training to present the law
33 enforcement academy basic course or other commission-certified
34 law enforcement training.
35    (14) The purchase of a firearm, other than a handgun, or a
36 semiautomatic centerfire rifle by a person who possesses a valid,
37 unexpired hunting license issued by the Department of Fish and
38 Wildlife.
39    (15) The acquisition of a firearm, other than a handgun, or a
40 semiautomatic centerfire rifle at an auction or similar event

**Exhibit 6**
**0066**
**Provided by LRI History LLC**
**SB 61 (2019) Page 36 of 367**

1 conducted by a nonprofit public benefit or mutual benefit
2 corporation to fund the activities of that corporation or local
3 chapters of that corporation.
4 *(16) The purchase of a semiautomatic centerfire rifle by a person*
5 *who possesses a valid, unexpired hunting license issued by the*
6 *Department of Fish and Wildlife and has a current certificate of*
7 *eligibility issued by the Department of Justice pursuant to Article*
8 *1 (commencing with Section 26700) of Chapter 2.*
9 *(17) The acquisition of a semiautomatic centerfire rifle, at an*
10 *auction or similar event conducted by a nonprofit public benefit*
11 *or mutual benefit corporation to fund the activities of that*
12 *corporation or local chapters of that corporation by a person who*
13 *possesses a valid, unexpired hunting license issued by the*
14 *Department of Fish and Wildlife.*
15 *(18) The acquisition of a semiautomatic centerfire rifle at an*
16 *auction or similar event conducted by a nonprofit public benefit*
17 *or mutual benefit corporation to fund the activities of that*
18 *corporation or local chapters of that corporation by a person who*
19 *has a current certificate of eligibility issued by the Department of*
20 *Justice pursuant to Article 1 (commencing with Section 26700) of*
21 *Chapter 2.*
22 *(19) The purchase of a firearm, other than a handgun, by a*
23 *person who provides proper identification as an honorably*
24 *discharged member of the United States Armed Forces, the*
25 *National Guard, the Air National Guard, or the active reserve*
26 *components of the United States and has a current certificate of*
27 *eligibility issued by the Department of Justice pursuant to Article*
28 *1 (commencing with Section 26700) of Chapter 2. For purposes*
29 *of this paragraph, proper identification includes an Armed Forces*
30 *Identification Card or other written documentation certifying that*
31 *the individual is an honorably discharged member.*
32 (c) For the purposes of paragraphs (14) and (15) of subdivision
33 (b), the frame or receiver of a firearm is a handgun unless the frame
34 or receiver listed in the application to purchase and delivered to
35 the recipient is equipped with, is attached to, or is concurrently
36 accompanied by, a barrel of 16 inches or greater in length.
37 (d) This section shall become operative on July 1, 2021.
38 SEC. 6. Section 27540 of the Penal Code is amended to read:

**Exhibit 6**
0067
**Provided by LRI History LLC**          **SB 61 (2019)  Page 37 of 367**

27540. A dealer, whether or not acting pursuant to Chapter 5 (commencing with Section 28050), shall not deliver a firearm to a person, as follows:

(a) Within 10 days of the application to purchase, or, after notice by the department pursuant to Section 28220, within 10 days of the submission to the department of any correction to the application, or within 10 days of the submission to the department of any fee required pursuant to Section 28225, whichever is later.

(b) Unless unloaded and securely wrapped or unloaded and in a locked container.

(c) Unless the purchaser, transferee, or person being loaned the firearm presents clear evidence of the person's identity and age to the dealer.

(d) Whenever the dealer is notified by the Department of Justice that the person is prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm.

(e) A firearm, including a handgun, shall not be delivered unless the purchaser, transferee, or person being loaned the firearm presents a firearm safety certificate to the dealer, except that in the case of a handgun, an unexpired handgun safety certificate may be presented.

(f) Until July 1, 2021, a handgun shall not be delivered whenever the dealer is notified by the Department of Justice that within the preceding 30-day period the purchaser has made another application to purchase a handgun and that the previous application to purchase did not involve any of the entities or circumstances specified in subdivision (b) of Section 27535.

(g) Commencing July 1, 2021, a firearm shall not be delivered whenever the dealer is notified by the Department of Justice that within the preceding 30-day period the purchaser has made another application to purchase a firearm and that the previous application to purchase did not involve any of the entities or circumstances specified in subdivision (b) of Section 27535.

SEC. 7. Section 27590 of the Penal Code is amended to read:

27590. (a) Except as provided in subdivision (b), (c), or (e), a violation of this article is a misdemeanor.

(b) If any of the following circumstances apply, a violation of this article is punishable by imprisonment pursuant to subdivision (h) of Section 1170 for two, three, or four years:

(1) If the violation is of subdivision (a) of Section 27500.

(2) If the defendant has a prior conviction of violating the provisions, other than Section 27535, Section 27560 involving a firearm that is not a handgun, or Section 27565 involving a firearm that is not a handgun, of this article or former Section 12100 of this code, as Section 12100 read at any time from when it was enacted by Section 3 of Chapter 1386 of the Statutes of 1988 to when it was repealed by Section 18 of Chapter 23 of the Statutes of 1994, or Section 8101 of the Welfare and Institutions Code.

(3) If the defendant has a prior conviction of violating any offense specified in Section 29905 or of a violation of Section 32625 or 33410, or of former Section 12560, as that section read at any time from when it was enacted by Section 4 of Chapter 931 of the Statutes of 1965 to when it was repealed by Section 14 of Chapter 9 of the Statutes of 1990, or of any provision listed in Section 16590.

(4) If the defendant is in a prohibited class described in Chapter 2 (commencing with Section 29800) or Chapter 3 (commencing with Section 29900) of Division 9 of this title, or Section 8100 or 8103 of the Welfare and Institutions Code.

(5) A violation of this article by a person who actively participates in a "criminal street gang" as defined in Section 186.22.

(6) A violation of Section 27510 involving the delivery of any firearm to a person who the dealer knows, or should know, is a minor.

(c) If any of the following circumstances apply, a violation of this article shall be punished by imprisonment in a county jail not exceeding one year or pursuant to subdivision (h) of Section 1170, or by a fine not to exceed one thousand dollars ($1,000), or by both that fine and imprisonment:

(1) A violation of Section 27515, 27520, or subdivision (b) of Section 27500.

(2) A violation of Section 27505 involving the sale, loan, or transfer of a handgun to a minor.

(3) A violation of Section 27510 involving the delivery of a handgun.

(4) A violation of subdivision (a), (c), (d), (e), or (f) of Section 27540 involving a handgun.

(5) A violation of Section 27545 involving a handgun.

(6) A violation of Section 27550.

(7) A violation of Section 27585 involving a handgun.

Exhibit 6
0069

Provided by LRI History LLC

1   (d) If both of the following circumstances apply, an additional
2  term of imprisonment pursuant to subdivision (h) of Section 1170
3  for one, two, or three years shall be imposed in addition and
4  consecutive to the sentence prescribed:
5   (1) A violation of Section 27510 or subdivision (b) of Section
6  27500.
7   (2) The firearm transferred in violation of Section 27510 or
8  subdivision (b) of Section 27500 is used in the subsequent
9  commission of a felony for which a conviction is obtained and the
10  prescribed sentence is imposed.
11   (e) (1) A first violation of Section 27535 is an infraction
12  punishable by a fine of fifty dollars ($50).
13   (2) A second violation of Section 27535 is an infraction
14  punishable by a fine of one hundred dollars ($100).
15   (3) A third or subsequent violation of Section 27535 is a
16  misdemeanor.
17   (4) (A) Until July 1, 2021, for purposes of this subdivision,
18  each application to purchase a handgun in violation of Section
19  27535 is a separate offense.
20   (B) Commencing July 1, 2021, for purposes of this subdivision,
21  each application to purchase a firearm in violation of Section 27535
22  is a separate offense.
23   SEC. 8.  No reimbursement is required by this act pursuant to
24  Section 6 of Article XIII B of the California Constitution because
25  the only costs that may be incurred by a local agency or school
26  district will be incurred because this act creates a new crime or
27  infraction, eliminates a crime or infraction, or changes the penalty
28  for a crime or infraction, within the meaning of Section 17556 of
29  the Government Code, or changes the definition of a crime within
30  the meaning of Section 6 of Article XIII B of the California
31  Constitution.

O

AMENDED IN ASSEMBLY SEPTEMBER 3, 2019

AMENDED IN ASSEMBLY JUNE 11, 2019

AMENDED IN SENATE MAY 17, 2019

## SENATE BILL                                              No. 61

### Introduced by Senator Portantino
### (Principal coauthors: Senators Glazer and Wiener)
### (Coauthor: Senator Skinner)
(~~Coauthor:~~ *Coauthors:* Assembly ~~Member~~ *Members* Bonta *and*
*Maienschein*)

January 3, 2019

An act to amend Sections 27510, 27540, and 27590 of, and to amend,
repeal, and add Sections 26835 and 27535 of, the Penal Code, relating
to firearms.

LEGISLATIVE COUNSEL'S DIGEST

SB 61, as amended, Portantino. Firearms: transfers.
Existing law, subject to exceptions, prohibits a person from making
more than one application to purchase a handgun within any 30-day
period. A violation of that prohibition is a crime. Existing law prohibits
a firearms dealer from delivering a handgun to a person whenever the
dealer is notified by the Department of Justice that within the preceding
30-day period the purchaser has made another application to purchase
a handgun that does not fall within an exception to the 30-day
prohibition. A violation of that delivery prohibition by the dealer is a
crime.
This bill would, effective July 1, 2021, make the 30-day prohibition
and the dealer delivery prohibition described above *also* applicable to
~~all types of firearms. The bill would also exempt from that prohibition,~~

**Exhibit 6**
**0071**

**Provided by LRI History LLC**                **SB 61 (2019)  Page 41 of 367**

~~as specified, the purchase of a firearm, other than a handgun, by a person who possesses a valid, unexpired hunting license issued by the state, the purchase of a firearm, other than a handgun, by a person who is honorably discharged from the armed forces, and the acquisition of a firearm, other than a handgun, at specified charity fundraising events.~~ *semiautomatic centerfire rifles.*

Existing law prohibits a licensed firearm dealer from selling a firearm to a person under 21 years of age. Existing law provides an exemption to this prohibition for the sale of a firearm, other than a handgun, to a person 18 years of age or older who has a valid hunting ~~license~~ *license, is a law enforcement officer, as specified,* or is an honorably discharged member of the Armed Forces. *Existing law makes a violation of this prohibition a crime.*

This bill ~~would, effective January 1, 2021,~~ *would* prohibit the sale of a semiautomatic centerfire rifle to ~~either of those exempted persons who are under 21 years of age, unless they possess a certificate of eligibility from the Department of Justice.~~ *any person under the age of 21, except a law enforcement officer or active duty member of the Armed Forces, as specified.*

*The bill would state that its provisions are severable.*

By expanding the scope of existing crimes, this bill would impose a state-mandated local program.

The California Constitution requires the state to reimburse local agencies and school districts for certain costs mandated by the state. Statutory provisions establish procedures for making that reimbursement.

This bill would provide that no reimbursement is required by this act for a specified reason.

Vote: majority. Appropriation: no. Fiscal committee: yes. State-mandated local program: yes.

*The people of the State of California do enact as follows:*

1  SECTION 1. Section 26835 of the Penal Code is amended to
2  read:
3  26835. (a) A licensee shall post conspicuously within the
4  licensed premises the following warnings in block letters not less
5  than one inch in height:
6  (1) "FIREARMS MUST BE HANDLED RESPONSIBLY AND
7  SECURELY STORED TO PREVENT ACCESS BY CHILDREN
8  AND OTHER UNAUTHORIZED USERS. CALIFORNIA HAS

**Exhibit 6**
0072
**Provided by LRI History LLC**          **SB 61 (2019)  Page 42 of 367**

1 STRICT LAWS PERTAINING TO FIREARMS, AND YOU
2 MAY BE FINED OR IMPRISONED IF YOU FAIL TO COMPLY
3 WITH THEM. VISIT THE WEB SITE OF THE CALIFORNIA
4 A T T O R N E Y        G E N E R A L        A T
5 HTTPS://OAG.CA.GOV/FIREARMS FOR INFORMATION ON
6 FIREARM LAWS APPLICABLE TO YOU AND HOW YOU
7 CAN COMPLY."
8    (2) "IF YOU KEEP A LOADED FIREARM WITHIN ANY
9 PREMISES UNDER YOUR CUSTODY OR CONTROL, AND
10 A PERSON UNDER 18 YEARS OF AGE OBTAINS IT AND
11 USES IT, RESULTING IN INJURY OR DEATH, OR CARRIES
12 IT TO A PUBLIC PLACE, YOU MAY BE GUILTY OF A
13 MISDEMEANOR OR A FELONY UNLESS YOU STORED
14 THE FIREARM IN A LOCKED CONTAINER OR LOCKED
15 THE FIREARM WITH A LOCKING DEVICE, TO KEEP IT
16 FROM TEMPORARILY FUNCTIONING."
17    (3) "CHILDREN MAY BE UNABLE TO DISTINGUISH
18 FIREARMS FROM TOYS AND MAY OPERATE FIREARMS,
19 CAUSING SEVERE INJURIES OR DEATH. IF YOU KEEP A
20 PISTOL, REVOLVER, OR OTHER FIREARM CAPABLE OF
21 BEING CONCEALED UPON THE PERSON, WITHIN ANY
22 PREMISES UNDER YOUR CUSTODY OR CONTROL, AND
23 A PERSON UNDER 18 YEARS OF AGE GAINS ACCESS TO
24 THE FIREARM, AND CARRIES IT OFF-PREMISES, YOU
25 MAY BE GUILTY OF A MISDEMEANOR, UNLESS YOU
26 STORED THE FIREARM IN A LOCKED CONTAINER, OR
27 LOCKED THE FIREARM WITH A LOCKING DEVICE, TO
28 KEEP IT FROM TEMPORARILY FUNCTIONING."
29    (4) "YOU MAY BE GUILTY OF A MISDEMEANOR,
30 INCLUDING A SIGNIFICANT FINE OR IMPRISONMENT, IF
31 YOU KEEP A FIREARM WHERE A MINOR IS LIKELY TO
32 ACCESS IT OR IF A MINOR OBTAINS AND IMPROPERLY
33 USES IT, OR CARRIES IT OFF OF THE PREMISES TO A
34 SCHOOL OR SCHOOL-SPONSORED EVENT, UNLESS YOU
35 STORED THE FIREARM IN A LOCKED CONTAINER OR
36 LOCKED THE FIREARM WITH A LOCKING DEVICE."
37    (5) "IF YOU NEGLIGENTLY STORE OR LEAVE A
38 LOADED FIREARM WITHIN ANY PREMISES UNDER YOUR
39 CUSTODY OR CONTROL, WHERE A PERSON UNDER 18
40 YEARS OF AGE IS LIKELY TO ACCESS IT, YOU MAY BE

**Exhibit 6**
**0073**
**Provided by LRI History LLC**          **SB 61 (2019)  Page 43 of 367**

1  GUILTY OF A MISDEMEANOR, INCLUDING A
2  SIGNIFICANT FINE, UNLESS YOU STORED THE FIREARM
3  IN A LOCKED CONTAINER, OR LOCKED THE FIREARM
4  WITH A LOCKING DEVICE."
5  (6) "DISCHARGING FIREARMS IN POORLY VENTILATED
6  AREAS, CLEANING FIREARMS, OR HANDLING
7  AMMUNITION MAY RESULT IN EXPOSURE TO LEAD, A
8  SUBSTANCE KNOWN TO CAUSE BIRTH DEFECTS,
9  REPRODUCTIVE HARM, AND OTHER SERIOUS PHYSICAL
10  INJURY. HAVE ADEQUATE VENTILATION AT ALL TIMES.
11  WASH HANDS THOROUGHLY AFTER EXPOSURE."
12  (7) "FEDERAL REGULATIONS PROVIDE THAT IF YOU
13  DO NOT TAKE PHYSICAL POSSESSION OF THE FIREARM
14  THAT YOU ARE ACQUIRING OWNERSHIP OF WITHIN 30
15  DAYS AFTER YOU COMPLETE THE INITIAL
16  BACKGROUND CHECK PAPERWORK, THEN YOU HAVE
17  TO GO THROUGH THE BACKGROUND CHECK PROCESS
18  A SECOND TIME IN ORDER TO TAKE PHYSICAL
19  POSSESSION OF THAT FIREARM."
20  (8) "NO PERSON SHALL MAKE AN APPLICATION TO
21  PURCHASE MORE THAN ONE PISTOL, REVOLVER, OR
22  OTHER FIREARM CAPABLE OF BEING CONCEALED UPON
23  THE PERSON WITHIN ANY 30-DAY PERIOD AND NO
24  DELIVERY SHALL BE MADE TO ANY PERSON WHO HAS
25  MADE AN APPLICATION TO PURCHASE MORE THAN ONE
26  PISTOL, REVOLVER, OR OTHER FIREARM CAPABLE OF
27  BEING CONCEALED UPON THE PERSON WITHIN ANY
28  30-DAY PERIOD."
29  (9) "IF A FIREARM YOU OWN OR POSSESS IS LOST OR
30  STOLEN, YOU MUST REPORT THE LOSS OR THEFT TO A
31  LOCAL LAW ENFORCEMENT AGENCY WHERE THE LOSS
32  OR THEFT OCCURRED WITHIN FIVE DAYS OF THE TIME
33  YOU KNEW OR REASONABLY SHOULD HAVE KNOWN
34  THAT THE FIREARM HAD BEEN LOST OR STOLEN."
35  (b) This section shall remain in effect only until July 1, 2021,
36  and as of that date is repealed.
37  SEC. 2. Section 26835 is added to the Penal Code, to read:
38  26835. (a) A licensee shall conspicuously post within the
39  licensed premises the following warnings in block letters not less
40  than one inch in height:

1    (1) "FIREARMS MUST BE HANDLED RESPONSIBLY AND
2    SECURELY STORED TO PREVENT ACCESS BY CHILDREN
3    AND OTHER UNAUTHORIZED USERS. CALIFORNIA HAS
4    STRICT LAWS PERTAINING TO FIREARMS, AND YOU
5    MAY BE FINED OR IMPRISONED IF YOU FAIL TO COMPLY
6    WITH THEM. VISIT THE ~~WEB SITE~~ *INTERNET WEBSITE* OF
7    THE    CALIFORNIA    ATTORNEY    GENERAL    AT
8    HTTPS://OAG.CA.GOV/FIREARMS FOR INFORMATION ON
9    FIREARM LAWS APPLICABLE TO YOU AND HOW YOU
10    CAN COMPLY."
11    (2) "IF YOU KEEP A LOADED FIREARM WITHIN ANY
12    PREMISES UNDER YOUR CUSTODY OR CONTROL, AND
13    A PERSON UNDER 18 YEARS OF AGE OBTAINS IT AND
14    USES IT, RESULTING IN INJURY OR DEATH, OR CARRIES
15    IT TO A PUBLIC PLACE, YOU MAY BE GUILTY OF A
16    MISDEMEANOR OR A FELONY UNLESS YOU STORED
17    THE FIREARM IN A LOCKED CONTAINER OR LOCKED
18    THE FIREARM WITH A LOCKING DEVICE, TO KEEP IT
19    FROM TEMPORARILY FUNCTIONING."
20    (3) "CHILDREN MAY BE UNABLE TO DISTINGUISH
21    FIREARMS FROM TOYS AND MAY OPERATE FIREARMS,
22    CAUSING SEVERE INJURIES OR DEATH. IF YOU KEEP A
23    PISTOL, REVOLVER, OR OTHER FIREARM CAPABLE OF
24    BEING CONCEALED UPON THE PERSON, WITHIN ANY
25    PREMISES UNDER YOUR CUSTODY OR CONTROL, AND
26    A PERSON UNDER 18 YEARS OF AGE GAINS ACCESS TO
27    THE FIREARM, AND CARRIES IT OFF-PREMISES, YOU
28    MAY BE GUILTY OF A MISDEMEANOR, UNLESS YOU
29    STORED THE FIREARM IN A LOCKED CONTAINER, OR
30    LOCKED THE FIREARM WITH A LOCKING DEVICE, TO
31    KEEP IT FROM TEMPORARILY FUNCTIONING."
32    (4) "YOU MAY BE GUILTY OF A MISDEMEANOR,
33    INCLUDING A SIGNIFICANT FINE OR IMPRISONMENT, IF
34    YOU KEEP A FIREARM WHERE A MINOR IS LIKELY TO
35    ACCESS IT OR IF A MINOR OBTAINS AND IMPROPERLY
36    USES IT, OR CARRIES IT OFF OF THE PREMISES TO A
37    SCHOOL OR SCHOOL-SPONSORED EVENT, UNLESS YOU
38    STORED THE FIREARM IN A LOCKED CONTAINER OR
39    LOCKED THE FIREARM WITH A LOCKING DEVICE."

1     (5) "IF YOU NEGLIGENTLY STORE OR LEAVE A
2 LOADED FIREARM WITHIN ANY PREMISES UNDER YOUR
3 CUSTODY OR CONTROL, WHERE A PERSON UNDER 18
4 YEARS OF AGE IS LIKELY TO ACCESS IT, YOU MAY BE
5 GUILTY OF A MISDEMEANOR, INCLUDING A
6 SIGNIFICANT FINE, UNLESS YOU STORED THE FIREARM
7 IN A LOCKED CONTAINER, OR LOCKED THE FIREARM
8 WITH A LOCKING DEVICE."
9     (6) "DISCHARGING FIREARMS IN POORLY VENTILATED
10 AREAS, CLEANING FIREARMS, OR HANDLING
11 AMMUNITION MAY RESULT IN EXPOSURE TO LEAD, A
12 SUBSTANCE KNOWN TO CAUSE BIRTH DEFECTS,
13 REPRODUCTIVE HARM, AND OTHER SERIOUS PHYSICAL
14 INJURY. HAVE ADEQUATE VENTILATION AT ALL TIMES.
15 WASH HANDS THOROUGHLY AFTER EXPOSURE."
16     (7) "FEDERAL REGULATIONS PROVIDE THAT IF YOU
17 DO NOT TAKE PHYSICAL POSSESSION OF THE FIREARM
18 THAT YOU ARE ACQUIRING OWNERSHIP OF WITHIN 30
19 DAYS AFTER YOU COMPLETE THE INITIAL
20 BACKGROUND CHECK PAPERWORK, YOU HAVE TO GO
21 THROUGH THE BACKGROUND CHECK PROCESS A
22 SECOND TIME IN ORDER TO TAKE PHYSICAL
23 POSSESSION OF THAT FIREARM."
24     (8) "NO PERSON SHALL MAKE AN APPLICATION TO
25 PURCHASE MORE THAN ONE ~~FIREARM~~ *HANDGUN OR*
26 *SEMIAUTOMATIC CENTERFIRE RIFLE* WITHIN ANY 30-DAY
27 PERIOD AND NO DELIVERY SHALL BE MADE TO ANY
28 PERSON WHO HAS MADE AN APPLICATION TO
29 PURCHASE MORE THAN ONE ~~FIREARM~~ *HANDGUN OR*
30 *SEMIAUTOMATIC CENTERFIRE RIFLE* WITHIN ANY 30-DAY
31 PERIOD."
32     (9) "IF A FIREARM YOU OWN OR POSSESS IS LOST OR
33 STOLEN, YOU MUST REPORT THE LOSS OR THEFT TO A
34 LOCAL LAW ENFORCEMENT AGENCY WHERE THE LOSS
35 OR THEFT OCCURRED WITHIN FIVE DAYS OF THE TIME
36 YOU KNEW OR REASONABLY SHOULD HAVE KNOWN
37 THAT THE FIREARM HAD BEEN LOST OR STOLEN."
38     (b) This section shall become operative on July 1, 2021.
39     SEC. 3. Section 27510 of the Penal Code is amended to read:

1    27510.  (a)  A person licensed under Sections 26700 to 26915,
2  inclusive, shall not sell, supply, deliver, or give possession or
3  control of a firearm to any person who is under 21 years of age.

4    (b) (1) Subdivision (a) does not apply to or affect the sale,
5  supplying, delivery, or giving possession or control of a firearm
6  that is not a handgun or a semiautomatic centerfire rifle to a person
7  18 years of age or older who possesses a valid, unexpired hunting
8  license issued by the Department of Fish and Wildlife.

9  ~~(2)  Subdivision (a) does not apply to or affect the sale,~~
10  ~~supplying, delivery, or giving possession or control of a firearm~~
11  ~~that is not a handgun or a semiautomatic centerfire rifle to any of~~
12  ~~the following persons who are 18 years of age or older:~~

13  ~~(A)  An active peace officer, as described in Chapter 4.5~~
14  ~~(commencing with Section 830) of Title 3 of Part 2, who is~~
15  ~~authorized to carry a firearm in the course and scope of~~
16  ~~employment.~~

17  ~~(B)  An active federal officer or law enforcement agent who is~~
18  ~~authorized to carry a firearm in the course and scope of~~
19  ~~employment.~~

20  ~~(C)  A reserve peace officer, as defined in Section 832.6, who~~
21  ~~is authorized to carry a firearm in the course and scope of~~
22  ~~employment as a reserve peace officer.~~

23  ~~(D)  A person who provides proper identification of active~~
24  ~~membership in the United States Armed Forces, the National~~
25  ~~Guard, the Air National Guard, or active reserve components of~~
26  ~~the United States. For purposes of this subparagraph, proper~~
27  ~~identification includes an Armed Forces Identification Card or~~
28  ~~other written documentation certifying that the individual is an~~
29  ~~active member.~~

30  ~~(E)  A person who provides proper identification of being an~~
31  ~~honorably discharged member of the United States Armed Forces,~~
32  ~~the National Guard, the Air National Guard, or the active reserve~~
33  ~~components of the United States. For purposes of this~~
34  ~~subparagraph, proper identification includes an Armed Forces~~
35  ~~Identification Card or other written documentation certifying that~~
36  ~~the individual is an honorably discharged member.~~

37  ~~(c)  Commencing January 1, 2021, a person licensed under~~
38  ~~Sections 26700 to 26915, inclusive, shall not sell, supply, deliver,~~
39  ~~or give possession or control of a semiautomatic centerfire rifle to~~
40  ~~any person who is under 21 years of age.~~

**Exhibit 6**
0077

**Provided by LRI History LLC**

1 (d) Subdivision (c) does not apply to or affect the sale,
2 supplying, delivery, or giving possession or control of a
3 semiautomatic centerfire rifle to any of the following persons who
4 are 18 years of age or older:
5 (1) An active peace officer, as described in Chapter 4.5
6 (commencing with Section 830) of Title 3 of Part 2, who is
7 authorized to carry a firearm in the course and scope of
8 employment.
9 (2) An active federal officer or law enforcement agent who is
10 authorized to carry a firearm in the course and scope of
11 employment.
12 (3) A reserve peace officer, as defined in Section 832.6, who is
13 authorized to carry a firearm in the course and scope of
14 employment as a reserve peace officer.
15 (4) A person who provides proper identification of active
16 membership in the United States Armed Forces, the National
17 Guard, the Air National Guard, or active reserve components of
18 the United States. For purposes of this paragraph, proper
19 identification includes an Armed Forces Identification Card or
20 other written documentation certifying that the individual is an
21 active member.
22 (5) A person who provides proper identification as an honorably
23 discharged member of the United States Armed Forces, the
24 National Guard, the Air National Guard, or the active reserve
25 components of the United States and has a current certificate of
26 eligibility issued by the Department of Justice pursuant to Article
27 1 (commencing with Section 26700) of Chapter 2. For purposes
28 of this paragraph, proper identification includes an Armed Forces
29 Identification Card or other written documentation certifying that
30 the individual is an honorably discharged member.
31 (6) A person who possesses a valid, unexpired hunting license
32 issued by the Department of Fish and Wildlife and has a current
33 certificate of eligibility issued by the Department of Justice
34 pursuant to Article 1 (commencing with Section 26700) of Chapter
35 2.
36 *(2) Subdivision (a) does not apply to or affect the sale,*
37 *supplying, delivery, or giving possession or control of a firearm*
38 *that is not a handgun or a semiautomatic centerfire rifle to a person*
39 *who is 18 years of age or older and provides proper identification*
40 *of being an honorably discharged member of the United States*

Exhibit 6
0078
**Provided by LRI History LLC**     **SB 61 (2019)  Page 48 of 367**

1 *Armed Forces, the National Guard, the Air National Guard, or*
2 *the active reserve components of the United States. For purposes*
3 *of this subparagraph, proper identification includes an Armed*
4 *Forces Identification Card or other written documentation*
5 *certifying that the individual is an honorably discharged member*
6 *(3) Subdivision (a) does not apply to or affect the sale,*
7 *supplying, delivery, or giving possession or control of a firearm*
8 *that is not a handgun to any of the following persons who are 18*
9 *years of age or older:*
10 *(A) An active peace officer, as described in Chapter 4.5*
11 *(commencing with Section 830) of Title 3 of Part 2, who is*
12 *authorized to carry a firearm in the course and scope of*
13 *employment.*
14 *(B) An active federal officer or law enforcement agent who is*
15 *authorized to carry a firearm in the course and scope of*
16 *employment.*
17 *(C) A reserve peace officer, as defined in Section 832.6, who is*
18 *authorized to carry a firearm in the course and scope of*
19 *employment as a reserve peace officer.*
20 *(D) A person who provides proper identification of active*
21 *membership in the United States Armed Forces, the National*
22 *Guard, the Air National Guard, or active reserve components of*
23 *the United States. For purposes of this subparagraph, proper*
24 *identification includes an Armed Forces Identification Card or*
25 *other written documentation certifying that the individual is an*
26 *active member.*
27 　　SEC. 4.　Section 27535 of the Penal Code is amended to read:
28 　　27535.　(a)　No person shall make an application to purchase
29 more than one handgun within any 30-day period.
30 　　(b)　Subdivision (a) shall not apply to any of the following:
31 　　(1)　Any law enforcement agency.
32 　　(2)　Any agency duly authorized to perform law enforcement
33 duties.
34 　　(3)　Any state or local correctional facility.
35 　　(4)　Any private security company licensed to do business in
36 California.
37 　　(5)　Any person who is properly identified as a full-time paid
38 peace officer, as defined in Chapter 4.5 (commencing with Section
39 830) of Title 3 of Part 2, and who is authorized to, and does carry

**Exhibit 6**
**0079**

**Provided by LRI History LLC** 　　　　　　　　　　　　　　　**SB 61 (2019)  Page 49 of 367**

1  a firearm during the course and scope of employment as a peace
2  officer.

3  (6) Any motion picture, television, or video production company
4  or entertainment or theatrical company whose production by its
5  nature involves the use of a firearm.

6  (7) Any person who may, pursuant to Article 2 (commencing
7  with Section 27600), Article 3 (commencing with Section 27650),
8  or Article 4 (commencing with Section 27700), claim an exemption
9  from the waiting period set forth in Section 27540.

10  (8) Any transaction conducted through a licensed firearms dealer
11  pursuant to Chapter 5 (commencing with Section 28050).

12  (9) Any person who is licensed as a collector pursuant to Chapter
13  44 (commencing with Section 921) of Title 18 of the United States
14  Code and the regulations issued pursuant thereto, and has a current
15  certificate of eligibility issued by the Department of Justice
16  pursuant to Article 1 (commencing with Section 26700) of Chapter
17  2.

18  (10) The exchange of a handgun where the dealer purchased
19  that firearm from the person seeking the exchange within the
20  30-day period immediately preceding the date of exchange or
21  replacement.

22  (11) The replacement of a handgun when the person's handgun
23  was lost or stolen, and the person reported that firearm lost or
24  stolen pursuant to Section 25250 prior to the completion of the
25  application to purchase the replacement handgun.

26  (12) The return of any handgun to its owner.

27  (13) A community college that is certified by the Commission
28  on Peace Officer Standards and Training to present the law
29  enforcement academy basic course or other commission-certified
30  law enforcement training.

31  (c)

32  This section shall remain in effect only until July 1, 2021, and
33  as of that date is repealed.

34  SEC. 5.  Section 27535 is added to the Penal Code, to read:

35  27535.  (a) A person shall not make an application to purchase
36  more than one ~~firearm~~ *handgun or semiautomatic centerfire rifle*
37  within any 30-day period. *This subdivision does not authorize a*
38  *person to make an application to purchase both a handgun and*
39  *semiautomatic centerfire rifle within the same 30-day period.*

40  (b) Subdivision (a) does not apply to any of the following:

Exhibit 6
0080

**Provided by LRI History LLC**    

1    (1) Any law enforcement agency.

2    (2) Any agency duly authorized to perform law enforcement
3  duties.

4    (3) Any state or local correctional facility.

5    (4) Any private security company licensed to do business in
6  California.

7    (5) Any person who is properly identified as a full-time paid
8  peace officer, as defined in Chapter 4.5 (commencing with Section
9  830) of Title 3 of Part 2, and who is authorized to, and does carry
10  a firearm during the course and scope of employment as a peace
11  officer.

12    (6) Any motion picture, television, or video production company
13  or entertainment or theatrical company whose production by its
14  nature involves the use of a firearm.

15    (7) Any person who may, pursuant to Article 2 (commencing
16  with Section 27600), Article 3 (commencing with Section 27650),
17  or Article 4 (commencing with Section 27700), claim an exemption
18  from the waiting period set forth in Section 27540.

19    (8) Any transaction conducted through a licensed firearms dealer
20  pursuant to Chapter 5 (commencing with Section 28050).

21    (9) Any person who is licensed as a collector pursuant to Chapter
22  44 (commencing with Section 921) of Title 18 of the United States
23  Code and the regulations issued pursuant thereto, and has a current
24  certificate of eligibility issued by the Department of Justice
25  pursuant to Article 1 (commencing with Section 26700) of Chapter
26  2.

27    (10) The exchange of a ~~firearm~~ *handgun or semiautomatic*
28  *centerfire rifle* where the dealer purchased that firearm from the
29  person seeking the exchange within the 30-day period immediately
30  preceding the date of exchange or replacement.

31    (11) The replacement of a ~~firearm~~ *handgun or semiautomatic*
32  *centerfire rifle* when the person's firearm was lost or stolen, and
33  the person reported that firearm lost or stolen pursuant to Section
34  25250 prior to the completion of the application to purchase the
35  replacement.

36    (12) The return of any ~~firearm~~ *handgun or semiautomatic*
37  *centerfire rifle* to its owner.

38    (13) A community college that is certified by the Commission
39  on Peace Officer Standards and Training to present the law

**Exhibit 6**
**0081**

**Provided by LRI History LLC**

1 enforcement academy basic course or other commission-certified
2 law enforcement training.
3 ~~(14) The purchase of a firearm, other than a handgun, or a~~
4 ~~semiautomatic centerfire rifle by a person who possesses a valid,~~
5 ~~unexpired hunting license issued by the Department of Fish and~~
6 ~~Wildlife.~~
7 ~~(15) The acquisition of a firearm, other than a handgun, or a~~
8 ~~semiautomatic centerfire rifle at an auction or similar event~~
9 ~~conducted by a nonprofit public benefit or mutual benefit~~
10 ~~corporation to fund the activities of that corporation or local~~
11 ~~chapters of that corporation.~~
12 ~~(16) The purchase of a semiautomatic centerfire rifle by a person~~
13 ~~who possesses a valid, unexpired hunting license issued by the~~
14 ~~Department of Fish and Wildlife and has a current certificate of~~
15 ~~eligibility issued by the Department of Justice pursuant to Article~~
16 ~~1 (commencing with Section 26700) of Chapter 2.~~
17 ~~(17) The acquisition of a semiautomatic centerfire rifle, at an~~
18 ~~auction or similar event conducted by a nonprofit public benefit~~
19 ~~or mutual benefit corporation to fund the activities of that~~
20 ~~corporation or local chapters of that corporation by a person who~~
21 ~~possesses a valid, unexpired hunting license issued by the~~
22 ~~Department of Fish and Wildlife.~~
23 ~~(18) The acquisition of a semiautomatic centerfire rifle at an~~
24 ~~auction or similar event conducted by a nonprofit public benefit~~
25 ~~or mutual benefit corporation to fund the activities of that~~
26 ~~corporation or local chapters of that corporation by a person who~~
27 ~~has a current certificate of eligibility issued by the Department of~~
28 ~~Justice pursuant to Article 1 (commencing with Section 26700) of~~
29 ~~Chapter 2.~~
30 ~~(19) The purchase of a firearm, other than a handgun, by a~~
31 ~~person who provides proper identification as an honorably~~
32 ~~discharged member of the United States Armed Forces, the~~
33 ~~National Guard, the Air National Guard, or the active reserve~~
34 ~~components of the United States and has a current certificate of~~
35 ~~eligibility issued by the Department of Justice pursuant to Article~~
36 ~~1 (commencing with Section 26700) of Chapter 2. For purposes~~
37 ~~of this paragraph, proper identification includes an Armed Forces~~
38 ~~Identification Card or other written documentation certifying that~~
39 ~~the individual is an honorably discharged member.~~

**Exhibit 6**
0082
**Provided by LRI History LLC**          **SB 61 (2019)  Page 52 of 367**

1  (c)  For the purposes of paragraphs (14) and (15) of subdivision
2  (b), the frame or receiver of a firearm is a handgun unless the frame
3  or receiver listed in the application to purchase and delivered to
4  the recipient is equipped with, is attached to, or is concurrently
5  accompanied by, a barrel of 16 inches or greater in length.
6  (d)
7  *(c)*  This section shall become operative on July 1, 2021.
8  SEC. 6.  Section 27540 of the Penal Code is amended to read:
9  27540.  A dealer, whether or not acting pursuant to Chapter 5
10 (commencing with Section 28050), shall not deliver a firearm to
11 a person, as follows:
12 (a)  Within 10 days of the application to purchase, or, after notice
13 by the department pursuant to Section 28220, within 10 days of
14 the submission to the department of any correction to the
15 application, or within 10 days of the submission to the department
16 of any fee required pursuant to Section 28225, whichever is later.
17 (b)  Unless unloaded and securely wrapped or unloaded and in
18 a locked container.
19 (c)  Unless the purchaser, transferee, or person being loaned the
20 firearm presents clear evidence of the person's identity and age to
21 the dealer.
22 (d)  Whenever the dealer is notified by the Department of Justice
23 that the person is prohibited by state or federal law from possessing,
24 receiving, owning, or purchasing a firearm.
25 (e)  A firearm, including a handgun, shall not be delivered unless
26 the purchaser, transferee, or person being loaned the firearm
27 presents a firearm safety certificate to the dealer, except that in the
28 case of a handgun, an unexpired handgun safety certificate may
29 be presented.
30 (f)  Until July 1, 2021, a handgun shall not be delivered whenever
31 the dealer is notified by the Department of Justice that within the
32 preceding 30-day period the purchaser has made another
33 application to purchase a handgun and that the previous application
34 to purchase did not involve any of the entities or circumstances
35 specified in subdivision (b) of Section 27535.
36 (g)  Commencing July 1, 2021, a firearm *handgun or*
37 *semiautomatic centerfire rifle* shall not be delivered whenever the
38 dealer is notified by the Department of Justice that within the
39 preceding 30-day period *period,* the purchaser has made another
40 application to purchase a firearm *either a handgun or*

Exhibit 6
0083
Provided by LRI History LLC          SB 61 (2019)  Page 53 of 367

1 *semiautomatic centerfire rifle* and that the previous application to
2 purchase did not involve any of the entities or circumstances
3 specified in subdivision (b) of Section 27535.
4   SEC. 7.   Section 27590 of the Penal Code is amended to read:
5   27590.   (a)  Except as provided in subdivision (b), (c), or (e),
6 a violation of this article is a misdemeanor.
7   (b)  If any of the following circumstances apply, a violation of
8 this article is punishable by imprisonment pursuant to subdivision
9 (h) of Section 1170 for two, three, or four years:
10   (1)  If the violation is of subdivision (a) of Section 27500.
11   (2)  If the defendant has a prior conviction of violating the
12 provisions, other than Section 27535, Section 27560 involving a
13 firearm that is not a handgun, or Section 27565 involving a firearm
14 that is not a handgun, of this article or former Section 12100 of
15 this code, as Section 12100 read at any time from when it was
16 enacted by Section 3 of Chapter 1386 of the Statutes of 1988 to
17 when it was repealed by Section 18 of Chapter 23 of the Statutes
18 of 1994, or Section 8101 of the Welfare and Institutions Code.
19   (3)  If the defendant has a prior conviction of violating any
20 offense specified in Section 29905 or of a violation of Section
21 32625 or 33410, or of former Section 12560, as that section read
22 at any time from when it was enacted by Section 4 of Chapter 931
23 of the Statutes of 1965 to when it was repealed by Section 14 of
24 Chapter 9 of the Statutes of 1990, or of any provision listed in
25 Section 16590.
26   (4)  If the defendant is in a prohibited class described in Chapter
27 2 (commencing with Section 29800) or Chapter 3 (commencing
28 with Section 29900) of Division 9 of this title, or Section 8100 or
29 8103 of the Welfare and Institutions Code.
30   (5)  A violation of this article by a person who actively
31 participates in a "criminal street gang" as defined in Section 186.22.
32   (6)  A violation of Section 27510 involving the delivery of any
33 firearm to a person who the dealer knows, or should know, is a
34 minor.
35   (c)  If any of the following circumstances apply, a violation of
36 this article shall be punished by imprisonment in a county jail not
37 exceeding one year or pursuant to subdivision (h) of Section 1170,
38 or by a fine not to exceed one thousand dollars ($1,000), or by
39 both that fine and imprisonment:

Exhibit 6
0084
Provided by LRI History LLC

1    (1)  A violation of Section 27515, 27520, or subdivision (b) of
2  Section 27500.
3    (2)  A violation of Section 27505 involving the sale, loan, or
4  transfer of a handgun to a minor.
5    (3)  A violation of Section 27510 involving the delivery of a
6  handgun.
7    (4)  A violation of subdivision (a), (c), (d), (e), or (f) of Section
8  27540 involving a handgun.
9    (5)  A violation of Section 27545 involving a handgun.
10   (6)  A violation of Section 27550.
11   (7)  A violation of Section 27585 involving a handgun.
12   (d)  If both of the following circumstances apply, an additional
13  term of imprisonment pursuant to subdivision (h) of Section 1170
14  for one, two, or three years shall be imposed in addition and
15  consecutive to the sentence prescribed:
16   (1)  A violation of Section 27510 or subdivision (b) of Section
17  27500.
18   (2)  The firearm transferred in violation of Section 27510 or
19  subdivision (b) of Section 27500 is used in the subsequent
20  commission of a felony for which a conviction is obtained and the
21  prescribed sentence is imposed.
22   (e) (1)  A first violation of Section 27535 is an infraction
23  punishable by a fine of fifty dollars ($50).
24   (2)  A second violation of Section 27535 is an infraction
25  punishable by a fine of one hundred dollars ($100).
26   (3)  A third or subsequent violation of Section 27535 is a
27  misdemeanor.
28   (4) (A)  Until July 1, 2021, for purposes of this subdivision,
29  each application to purchase a handgun in violation of Section
30  27535 is a separate offense.
31   (B)  Commencing July 1, 2021, for purposes of this subdivision,
32  each application to purchase a ~~firearm~~ *handgun or semiautomatic*
33  *centerfire rifle* in violation of Section 27535 is a separate offense.
34   *SEC. 8.  The provisions of this act are severable. If any*
35  *provision of this act or its application is held invalid, that invalidity*
36  *shall not affect other provisions or applications that can be given*
37  *effect without the invalid provision or application.*
38  ~~SEC. 8.~~
39   *SEC. 9.*  No reimbursement is required by this act pursuant to
40  Section 6 of Article XIII B of the California Constitution because

1   the only costs that may be incurred by a local agency or school
2   district will be incurred because this act creates a new crime or
3   infraction, eliminates a crime or infraction, or changes the penalty
4   for a crime or infraction, within the meaning of Section 17556 of
5   the Government Code, or changes the definition of a crime within
6   the meaning of Section 6 of Article XIII B of the California
7   Constitution.

O

**Exhibit 6**
**0086**

**Provided by LRI History LLC**

AMENDED IN ASSEMBLY SEPTEMBER 6, 2019

AMENDED IN ASSEMBLY SEPTEMBER 3, 2019

AMENDED IN ASSEMBLY JUNE 11, 2019

AMENDED IN SENATE MAY 17, 2019

# SENATE BILL                                    No. 61

## Introduced by Senator Portantino
### (Principal coauthors: Senators Glazer and Wiener)
### (Coauthor: Senator Skinner)
(Coauthors: Assembly Members Bonta and Maienschein)

January 3, 2019

An act to amend Sections 27510, 27540, and 27590 of, and to amend, repeal, and add Sections 26835 and 27535 of, the Penal Code, relating to firearms.

LEGISLATIVE COUNSEL'S DIGEST

SB 61, as amended, Portantino. Firearms: transfers.

Existing law, subject to exceptions, prohibits a person from making more than one application to purchase a handgun within any 30-day period. A violation of that prohibition is a crime. Existing law prohibits a firearms dealer from delivering a handgun to a person whenever the dealer is notified by the Department of Justice that within the preceding 30-day period the purchaser has made another application to purchase a handgun that does not fall within an exception to the 30-day prohibition. A violation of that delivery prohibition by the dealer is a crime.

This bill would, effective July 1, 2021, make the 30-day prohibition and the dealer delivery prohibition described above also applicable to semiautomatic centerfire rifles.

Exhibit 6
0087
SB 61 (2019) Page 57 of 367
Provided by LRI History LLC

Existing law prohibits a licensed firearm dealer from selling a firearm to a person under 21 years of age. Existing law provides an exemption to this prohibition for the sale of a firearm, other than a handgun, to a person 18 years of age or older who has a valid hunting license, is a law enforcement officer, as specified, or is an honorably discharged member of the Armed Forces. Existing law makes a violation of this prohibition a crime.

This bill would prohibit the sale of a semiautomatic centerfire rifle to any person under the age of 21, except a law enforcement officer or active duty member of the Armed Forces, as specified.

The bill would state that its provisions are severable.

By expanding the scope of existing crimes, this bill would impose a state-mandated local program.

*This bill would incorporate additional changes to Section 26835 of the Penal Code proposed by AB 645 and SB 172 to be operative only if this bill and AB 645, SB 172, or both are enacted and this bill is enacted last.*

The California Constitution requires the state to reimburse local agencies and school districts for certain costs mandated by the state. Statutory provisions establish procedures for making that reimbursement.

This bill would provide that no reimbursement is required by this act for a specified reason.

Vote: majority. Appropriation: no. Fiscal committee: yes. State-mandated local program: yes.

*The people of the State of California do enact as follows:*

1     SECTION 1. Section 26835 of the Penal Code is amended to
2 read:
3     26835. (a) A licensee shall post conspicuously within the
4 licensed premises the following warnings in block letters not less
5 than one inch in height:
6     (1) "FIREARMS MUST BE HANDLED RESPONSIBLY AND
7 SECURELY STORED TO PREVENT ACCESS BY CHILDREN
8 AND OTHER UNAUTHORIZED USERS. CALIFORNIA HAS
9 STRICT LAWS PERTAINING TO FIREARMS, AND YOU
10 MAY BE FINED OR IMPRISONED IF YOU FAIL TO COMPLY
11 WITH THEM. VISIT THE WEB SITE OF THE CALIFORNIA
12 A T T O R N E Y      G E N E R A L      A T
13 HTTPS://OAG.CA.GOV/FIREARMS FOR INFORMATION ON

1 FIREARM LAWS APPLICABLE TO YOU AND HOW YOU
2 CAN COMPLY."
3    (2) "IF YOU KEEP A LOADED FIREARM WITHIN ANY
4 PREMISES UNDER YOUR CUSTODY OR CONTROL, AND
5 A PERSON UNDER 18 YEARS OF AGE OBTAINS IT AND
6 USES IT, RESULTING IN INJURY OR DEATH, OR CARRIES
7 IT TO A PUBLIC PLACE, YOU MAY BE GUILTY OF A
8 MISDEMEANOR OR A FELONY UNLESS YOU STORED
9 THE FIREARM IN A LOCKED CONTAINER OR LOCKED
10 THE FIREARM WITH A LOCKING DEVICE, TO KEEP IT
11 FROM TEMPORARILY FUNCTIONING."
12    (3) "CHILDREN MAY BE UNABLE TO DISTINGUISH
13 FIREARMS FROM TOYS AND MAY OPERATE FIREARMS,
14 CAUSING SEVERE INJURIES OR DEATH. IF YOU KEEP A
15 PISTOL, REVOLVER, OR OTHER FIREARM CAPABLE OF
16 BEING CONCEALED UPON THE PERSON, WITHIN ANY
17 PREMISES UNDER YOUR CUSTODY OR CONTROL, AND
18 A PERSON UNDER 18 YEARS OF AGE GAINS ACCESS TO
19 THE FIREARM, AND CARRIES IT OFF-PREMISES, YOU
20 MAY BE GUILTY OF A MISDEMEANOR, UNLESS YOU
21 STORED THE FIREARM IN A LOCKED CONTAINER, OR
22 LOCKED THE FIREARM WITH A LOCKING DEVICE, TO
23 KEEP IT FROM TEMPORARILY FUNCTIONING."
24    (4) "YOU MAY BE GUILTY OF A MISDEMEANOR,
25 INCLUDING A SIGNIFICANT FINE OR IMPRISONMENT, IF
26 YOU KEEP A FIREARM WHERE A MINOR IS LIKELY TO
27 ACCESS IT OR IF A MINOR OBTAINS AND IMPROPERLY
28 USES IT, OR CARRIES IT OFF OF THE PREMISES TO A
29 SCHOOL OR SCHOOL-SPONSORED EVENT, UNLESS YOU
30 STORED THE FIREARM IN A LOCKED CONTAINER OR
31 LOCKED THE FIREARM WITH A LOCKING DEVICE."
32    (5) "IF YOU NEGLIGENTLY STORE OR LEAVE A
33 LOADED FIREARM WITHIN ANY PREMISES UNDER YOUR
34 CUSTODY OR CONTROL, WHERE A PERSON UNDER 18
35 YEARS OF AGE IS LIKELY TO ACCESS IT, YOU MAY BE
36 GUILTY OF A MISDEMEANOR, INCLUDING A
37 SIGNIFICANT FINE, UNLESS YOU STORED THE FIREARM
38 IN A LOCKED CONTAINER, OR LOCKED THE FIREARM
39 WITH A LOCKING DEVICE."

1    (6) "DISCHARGING FIREARMS IN POORLY VENTILATED
2    AREAS, CLEANING FIREARMS, OR HANDLING
3    AMMUNITION MAY RESULT IN EXPOSURE TO LEAD, A
4    SUBSTANCE KNOWN TO CAUSE BIRTH DEFECTS,
5    REPRODUCTIVE HARM, AND OTHER SERIOUS PHYSICAL
6    INJURY. HAVE ADEQUATE VENTILATION AT ALL TIMES.
7    WASH HANDS THOROUGHLY AFTER EXPOSURE."
8    (7) "FEDERAL REGULATIONS PROVIDE THAT IF YOU
9    DO NOT TAKE PHYSICAL POSSESSION OF THE FIREARM
10   THAT YOU ARE ACQUIRING OWNERSHIP OF WITHIN 30
11   DAYS AFTER YOU COMPLETE THE INITIAL
12   BACKGROUND CHECK PAPERWORK, THEN YOU HAVE
13   TO GO THROUGH THE BACKGROUND CHECK PROCESS
14   A SECOND TIME IN ORDER TO TAKE PHYSICAL
15   POSSESSION OF THAT FIREARM."
16   (8) "NO PERSON SHALL MAKE AN APPLICATION TO
17   PURCHASE MORE THAN ONE PISTOL, REVOLVER, OR
18   OTHER FIREARM CAPABLE OF BEING CONCEALED UPON
19   THE PERSON WITHIN ANY 30-DAY PERIOD AND NO
20   DELIVERY SHALL BE MADE TO ANY PERSON WHO HAS
21   MADE AN APPLICATION TO PURCHASE MORE THAN ONE
22   PISTOL, REVOLVER, OR OTHER FIREARM CAPABLE OF
23   BEING CONCEALED UPON THE PERSON WITHIN ANY
24   30-DAY PERIOD."
25   (9) "IF A FIREARM YOU OWN OR POSSESS IS LOST OR
26   STOLEN, YOU MUST REPORT THE LOSS OR THEFT TO A
27   LOCAL LAW ENFORCEMENT AGENCY WHERE THE LOSS
28   OR THEFT OCCURRED WITHIN FIVE DAYS OF THE TIME
29   YOU KNEW OR REASONABLY SHOULD HAVE KNOWN
30   THAT THE FIREARM HAD BEEN LOST OR STOLEN."
31   (b) This section shall remain in effect only until July 1, 2021,
32   and as of that date is repealed.
33   *SEC. 1.1. Section 26835 of the Penal Code is amended to read:*
34   26835. (a) A licensee shall ~~post~~ conspicuously *post* within the
35   licensed premises the following warnings in block letters not less
36   than one inch in height:
37   (1) "FIREARMS MUST BE HANDLED RESPONSIBLY AND
38   SECURELY STORED TO PREVENT ACCESS BY CHILDREN
39   AND OTHER UNAUTHORIZED USERS. CALIFORNIA HAS
40   STRICT LAWS PERTAINING TO FIREARMS, AND YOU

1 MAY BE FINED OR IMPRISONED IF YOU FAIL TO COMPLY
2 WITH THEM. VISIT THE ~~WEB SITE~~ *WEBSITE* OF THE
3 CALIFORNIA        ATTORNEY        GENERAL        AT
4 HTTPS://OAG.CA.GOV/FIREARMS FOR INFORMATION ON
5 FIREARM LAWS APPLICABLE TO YOU AND HOW YOU
6 CAN COMPLY."
7    (2) "IF YOU KEEP A ~~LOADED~~ FIREARM WITHIN ANY
8 PREMISES UNDER YOUR CUSTODY OR CONTROL, AND
9 A PERSON UNDER 18 YEARS OF AGE OBTAINS IT AND
10 USES IT, RESULTING IN INJURY OR DEATH, OR CARRIES
11 IT TO A PUBLIC PLACE, YOU MAY BE GUILTY OF A
12 MISDEMEANOR OR A FELONY UNLESS YOU STORED
13 THE FIREARM IN A LOCKED CONTAINER OR LOCKED
14 THE FIREARM WITH A LOCKING DEVICE, TO KEEP IT
15 FROM TEMPORARILY FUNCTIONING."
16    (3) "CHILDREN MAY BE UNABLE TO DISTINGUISH
17 FIREARMS FROM TOYS AND MAY OPERATE FIREARMS,
18 CAUSING SEVERE INJURIES OR DEATH. IF YOU KEEP A
19 ~~PISTOL, REVOLVER, OR OTHER~~ FIREARM ~~CAPABLE OF~~
20 ~~BEING CONCEALED UPON THE PERSON,~~ WITHIN ANY
21 PREMISES UNDER YOUR CUSTODY OR CONTROL, AND
22 A PERSON UNDER 18 YEARS OF AGE GAINS ACCESS TO
23 THE FIREARM, AND CARRIES IT OFF-PREMISES, YOU
24 MAY BE GUILTY OF A MISDEMEANOR, UNLESS YOU
25 STORED THE FIREARM IN A LOCKED CONTAINER, OR
26 LOCKED THE FIREARM WITH A LOCKING DEVICE, TO
27 KEEP IT FROM TEMPORARILY FUNCTIONING."
28    (4) "YOU MAY BE GUILTY OF A MISDEMEANOR,
29 INCLUDING A SIGNIFICANT FINE OR IMPRISONMENT, IF
30 YOU KEEP A FIREARM WHERE A MINOR IS LIKELY TO
31 ACCESS IT OR IF A MINOR OBTAINS AND IMPROPERLY
32 USES IT, OR CARRIES IT OFF OF THE PREMISES TO A
33 SCHOOL OR SCHOOL-SPONSORED EVENT, UNLESS YOU
34 STORED THE FIREARM IN A LOCKED CONTAINER OR
35 LOCKED THE FIREARM WITH A LOCKING DEVICE."
36    (5) "IF YOU NEGLIGENTLY STORE OR LEAVE A
37 ~~LOADED~~ FIREARM WITHIN ANY PREMISES UNDER YOUR
38 CUSTODY OR CONTROL, WHERE A PERSON UNDER 18
39 YEARS OF AGE IS LIKELY TO ACCESS IT, YOU MAY BE
40 GUILTY    OF    A    MISDEMEANOR,    INCLUDING    A

**Exhibit 6**
**0091**
**Provided by LRI History LLC**                    **SB 61 (2019)  Page 61 of 367**

1  SIGNIFICANT FINE, UNLESS YOU STORED THE FIREARM
2  IN A LOCKED CONTAINER, OR LOCKED THE FIREARM
3  WITH A LOCKING DEVICE."
4  (6) "DISCHARGING FIREARMS IN POORLY VENTILATED
5  AREAS, CLEANING FIREARMS, OR HANDLING
6  AMMUNITION MAY RESULT IN EXPOSURE TO LEAD, A
7  SUBSTANCE KNOWN TO CAUSE BIRTH DEFECTS,
8  REPRODUCTIVE HARM, AND OTHER SERIOUS PHYSICAL
9  INJURY. HAVE ADEQUATE VENTILATION AT ALL TIMES.
10 WASH HANDS THOROUGHLY AFTER EXPOSURE."
11 (7) "FEDERAL REGULATIONS PROVIDE THAT IF YOU
12 DO NOT TAKE PHYSICAL POSSESSION OF THE FIREARM
13 THAT YOU ARE ACQUIRING OWNERSHIP OF WITHIN 30
14 DAYS AFTER YOU COMPLETE THE INITIAL
15 BACKGROUND CHECK PAPERWORK, THEN YOU HAVE
16 TO GO THROUGH THE BACKGROUND CHECK PROCESS
17 A SECOND TIME IN ORDER TO TAKE PHYSICAL
18 POSSESSION OF THAT FIREARM."
19 (8) "NO PERSON SHALL MAKE AN APPLICATION TO
20 PURCHASE MORE THAN ONE PISTOL, REVOLVER, OR
21 OTHER FIREARM CAPABLE OF BEING CONCEALED UPON
22 THE PERSON WITHIN ANY 30-DAY PERIOD AND NO
23 DELIVERY SHALL BE MADE TO ANY PERSON WHO HAS
24 MADE AN APPLICATION TO PURCHASE MORE THAN ONE
25 PISTOL, REVOLVER, OR OTHER FIREARM CAPABLE OF
26 BEING CONCEALED UPON THE PERSON WITHIN ANY
27 30-DAY PERIOD."
28 (9) "IF A FIREARM YOU OWN OR POSSESS IS LOST OR
29 STOLEN, YOU MUST REPORT THE LOSS OR THEFT TO A
30 LOCAL LAW ENFORCEMENT AGENCY WHERE THE LOSS
31 OR THEFT OCCURRED WITHIN FIVE DAYS OF THE TIME
32 YOU KNEW OR REASONABLY SHOULD HAVE KNOWN
33 THAT THE FIREARM HAD BEEN LOST OR STOLEN."
34 (b) This section shall become operative on January 1, 2019.
35 *remain in effect only until July 1, 2021, and as of that date is*
36 *repealed.*
37 *SEC. 1.2. Section 26835 of the Penal Code is amended to read:*
38 26835. (a) A licensee shall post conspicuously within the
39 licensed premises the following warnings in block letters not less
40 than one inch in height:

**Exhibit 6**
0092
**Provided by LRI History LLC**          **SB 61 (2019)  Page 62 of 367**

1  (1) "FIREARMS MUST BE HANDLED RESPONSIBLY AND
2  SECURELY STORED TO PREVENT ACCESS BY CHILDREN
3  AND OTHER UNAUTHORIZED USERS. CALIFORNIA HAS
4  STRICT LAWS PERTAINING TO FIREARMS, AND YOU
5  MAY BE FINED OR IMPRISONED IF YOU FAIL TO COMPLY
6  WITH THEM. VISIT THE WEB SITE OF THE CALIFORNIA
7  A T T O R N E Y        G E N E R A L        A T
8  HTTPS://OAG.CA.GOV/FIREARMS FOR INFORMATION ON
9  FIREARM LAWS APPLICABLE TO YOU AND HOW YOU
10 CAN COMPLY."
11  (2) "IF YOU KEEP A LOADED FIREARM WITHIN ANY
12 PREMISES UNDER YOUR CUSTODY OR CONTROL, AND
13 A PERSON UNDER 18 YEARS OF AGE OBTAINS IT AND
14 USES IT, RESULTING IN INJURY OR DEATH, OR CARRIES
15 IT TO A PUBLIC PLACE, YOU MAY BE GUILTY OF A
16 MISDEMEANOR OR A FELONY UNLESS YOU STORED
17 THE FIREARM IN A LOCKED CONTAINER OR LOCKED
18 THE FIREARM WITH A LOCKING DEVICE, TO KEEP IT
19 FROM TEMPORARILY FUNCTIONING."
20  (3) "CHILDREN MAY BE UNABLE TO DISTINGUISH
21 FIREARMS FROM TOYS AND MAY OPERATE FIREARMS,
22 CAUSING SEVERE INJURIES OR DEATH. IF YOU KEEP A
23 PISTOL, REVOLVER, OR OTHER FIREARM CAPABLE OF
24 BEING CONCEALED UPON THE PERSON, WITHIN ANY
25 PREMISES UNDER YOUR CUSTODY OR CONTROL, AND
26 A PERSON UNDER 18 YEARS OF AGE GAINS ACCESS TO
27 THE FIREARM, AND CARRIES IT OFF-PREMISES, YOU
28 MAY BE GUILTY OF A MISDEMEANOR, UNLESS YOU
29 STORED THE FIREARM IN A LOCKED CONTAINER, OR
30 LOCKED THE FIREARM WITH A LOCKING DEVICE, TO
31 KEEP IT FROM TEMPORARILY FUNCTIONING."
32  (4) "YOU MAY BE GUILTY OF A MISDEMEANOR,
33 INCLUDING A SIGNIFICANT FINE OR IMPRISONMENT, IF
34 YOU KEEP A FIREARM WHERE A MINOR IS LIKELY TO
35 ACCESS IT OR IF A MINOR OBTAINS AND IMPROPERLY
36 USES IT, OR CARRIES IT OFF OF THE PREMISES TO A
37 SCHOOL OR SCHOOL-SPONSORED EVENT, UNLESS YOU
38 STORED THE FIREARM IN A LOCKED CONTAINER OR
39 LOCKED THE FIREARM WITH A LOCKING DEVICE."

**Exhibit 6**
0093
**Provided by LRI History LLC**                    **SB 61 (2019)  Page 63 of 367**

1    (5) "IF YOU NEGLIGENTLY STORE OR LEAVE A
2    LOADED FIREARM WITHIN ANY PREMISES UNDER YOUR
3    CUSTODY OR CONTROL, WHERE A PERSON UNDER 18
4    YEARS OF AGE IS LIKELY TO ACCESS IT, YOU MAY BE
5    GUILTY OF A MISDEMEANOR, INCLUDING A
6    SIGNIFICANT FINE, UNLESS YOU STORED THE FIREARM
7    IN A LOCKED CONTAINER, OR LOCKED THE FIREARM
8    WITH A LOCKING DEVICE."
9    (6) "DISCHARGING FIREARMS IN POORLY VENTILATED
10    AREAS, CLEANING FIREARMS, OR HANDLING
11    AMMUNITION MAY RESULT IN EXPOSURE TO LEAD, A
12    SUBSTANCE KNOWN TO CAUSE BIRTH DEFECTS,
13    REPRODUCTIVE HARM, AND OTHER SERIOUS PHYSICAL
14    INJURY. HAVE ADEQUATE VENTILATION AT ALL TIMES.
15    WASH HANDS THOROUGHLY AFTER EXPOSURE."
16    (7) "FEDERAL REGULATIONS PROVIDE THAT IF YOU
17    DO NOT TAKE PHYSICAL POSSESSION OF THE FIREARM
18    THAT YOU ARE ACQUIRING OWNERSHIP OF WITHIN 30
19    DAYS AFTER YOU COMPLETE THE INITIAL
20    BACKGROUND CHECK PAPERWORK, THEN YOU HAVE
21    TO GO THROUGH THE BACKGROUND CHECK PROCESS
22    A SECOND TIME IN ORDER TO TAKE PHYSICAL
23    POSSESSION OF THAT FIREARM."
24    (8) "NO PERSON SHALL MAKE AN APPLICATION TO
25    PURCHASE MORE THAN ONE PISTOL, REVOLVER, OR
26    OTHER FIREARM CAPABLE OF BEING CONCEALED UPON
27    THE PERSON WITHIN ANY 30-DAY PERIOD AND NO
28    DELIVERY SHALL BE MADE TO ANY PERSON WHO HAS
29    MADE AN APPLICATION TO PURCHASE MORE THAN ONE
30    PISTOL, REVOLVER, OR OTHER FIREARM CAPABLE OF
31    BEING CONCEALED UPON THE PERSON WITHIN ANY
32    30-DAY PERIOD."
33    (9) "IF A FIREARM YOU OWN OR POSSESS IS LOST OR
34    STOLEN, YOU MUST REPORT THE LOSS OR THEFT TO A
35    LOCAL LAW ENFORCEMENT AGENCY WHERE THE LOSS
36    OR THEFT OCCURRED WITHIN FIVE DAYS OF THE TIME
37    YOU KNEW OR REASONABLY SHOULD HAVE KNOWN
38    THAT THE FIREARM HAD BEEN LOST OR STOLEN."

Exhibit 6
0094

Provided by LRI History LLC

1     (b) This section shall ~~become operative on January 1, 2019.~~
2 *remain in effect only until June 1, 2020, and as of that date is*
3 *repealed.*
4     *SEC. 1.3.  Section 26835 of the Penal Code is amended to read:*
5     26835.  (a)  A licensee shall ~~post~~ conspicuously *post* within the
6 licensed premises the following warnings in block letters not less
7 than one inch in height:
8     (1)  "FIREARMS MUST BE HANDLED RESPONSIBLY AND
9 SECURELY STORED TO PREVENT ACCESS BY CHILDREN
10 AND OTHER UNAUTHORIZED USERS. CALIFORNIA HAS
11 STRICT LAWS PERTAINING TO FIREARMS, AND YOU
12 MAY BE FINED OR IMPRISONED IF YOU FAIL TO COMPLY
13 WITH THEM. VISIT THE ~~WEB SITE~~ *WEBSITE* OF THE
14 CALIFORNIA      ATTORNEY      GENERAL      AT
15 HTTPS://OAG.CA.GOV/FIREARMS FOR INFORMATION ON
16 FIREARM LAWS APPLICABLE TO YOU AND HOW YOU
17 CAN COMPLY."
18     (2) "IF YOU KEEP A ~~LOADED~~ FIREARM WITHIN ANY
19 PREMISES UNDER YOUR CUSTODY OR CONTROL, AND
20 A PERSON UNDER 18 YEARS OF AGE OBTAINS IT AND
21 USES IT, RESULTING IN INJURY OR DEATH, OR CARRIES
22 IT TO A PUBLIC PLACE, YOU MAY BE GUILTY OF A
23 MISDEMEANOR OR A FELONY UNLESS YOU STORED
24 THE FIREARM IN A LOCKED CONTAINER OR LOCKED
25 THE FIREARM WITH A LOCKING DEVICE, TO KEEP IT
26 FROM TEMPORARILY FUNCTIONING."
27     (3) "CHILDREN MAY BE UNABLE TO DISTINGUISH
28 FIREARMS FROM TOYS AND MAY OPERATE FIREARMS,
29 CAUSING SEVERE INJURIES OR DEATH. IF YOU KEEP A
30 ~~PISTOL, REVOLVER, OR OTHER~~ FIREARM ~~CAPABLE OF~~
31 ~~BEING CONCEALED UPON THE PERSON,~~ WITHIN ANY
32 PREMISES UNDER YOUR CUSTODY OR CONTROL, AND
33 A PERSON UNDER 18 YEARS OF AGE GAINS ACCESS TO
34 THE FIREARM, AND CARRIES IT OFF-PREMISES, YOU
35 MAY BE GUILTY OF A MISDEMEANOR, UNLESS YOU
36 STORED THE FIREARM IN A LOCKED CONTAINER, OR
37 LOCKED THE FIREARM WITH A LOCKING DEVICE, TO
38 KEEP IT FROM TEMPORARILY FUNCTIONING."
39     (4) "YOU MAY BE GUILTY OF A MISDEMEANOR,
40 INCLUDING A SIGNIFICANT FINE OR IMPRISONMENT, IF

**Exhibit 6**
**0095**

**Provided by LRI History LLC**     

1   YOU KEEP A FIREARM WHERE A MINOR IS LIKELY TO
2   ACCESS IT OR IF A MINOR OBTAINS AND IMPROPERLY
3   USES IT, OR CARRIES IT OFF OF THE PREMISES TO A
4   SCHOOL OR SCHOOL-SPONSORED EVENT, UNLESS YOU
5   STORED THE FIREARM IN A LOCKED CONTAINER OR
6   LOCKED THE FIREARM WITH A LOCKING DEVICE."
7   (5) "IF YOU NEGLIGENTLY STORE OR LEAVE A
8   ~~LOADED~~ FIREARM WITHIN ANY PREMISES UNDER YOUR
9   CUSTODY OR CONTROL, WHERE A PERSON UNDER 18
10  YEARS OF AGE IS LIKELY TO ACCESS IT, YOU MAY BE
11  GUILTY OF A MISDEMEANOR, INCLUDING A
12  SIGNIFICANT FINE, UNLESS YOU STORED THE FIREARM
13  IN A LOCKED CONTAINER, OR LOCKED THE FIREARM
14  WITH A LOCKING DEVICE."
15  (6) "DISCHARGING FIREARMS IN POORLY VENTILATED
16  AREAS, CLEANING FIREARMS, OR HANDLING
17  AMMUNITION MAY RESULT IN EXPOSURE TO LEAD, A
18  SUBSTANCE KNOWN TO CAUSE BIRTH DEFECTS,
19  REPRODUCTIVE HARM, AND OTHER SERIOUS PHYSICAL
20  INJURY. HAVE ADEQUATE VENTILATION AT ALL TIMES.
21  WASH HANDS THOROUGHLY AFTER EXPOSURE."
22  (7) "FEDERAL REGULATIONS PROVIDE THAT IF YOU
23  DO NOT TAKE PHYSICAL POSSESSION OF THE FIREARM
24  THAT YOU ARE ACQUIRING OWNERSHIP OF WITHIN 30
25  DAYS AFTER YOU COMPLETE THE INITIAL
26  BACKGROUND CHECK PAPERWORK, THEN YOU HAVE
27  TO GO THROUGH THE BACKGROUND CHECK PROCESS
28  A SECOND TIME IN ORDER TO TAKE PHYSICAL
29  POSSESSION OF THAT FIREARM."
30  (8) "NO PERSON SHALL MAKE AN APPLICATION TO
31  PURCHASE MORE THAN ONE PISTOL, REVOLVER, OR
32  OTHER FIREARM CAPABLE OF BEING CONCEALED UPON
33  THE PERSON WITHIN ANY 30-DAY PERIOD AND NO
34  DELIVERY SHALL BE MADE TO ANY PERSON WHO HAS
35  MADE AN APPLICATION TO PURCHASE MORE THAN ONE
36  PISTOL, REVOLVER, OR OTHER FIREARM CAPABLE OF
37  BEING CONCEALED UPON THE PERSON WITHIN ANY
38  30-DAY PERIOD."
39  (9) "IF A FIREARM YOU OWN OR POSSESS IS LOST OR
40  STOLEN, YOU MUST REPORT THE LOSS OR THEFT TO A

**Exhibit 6**
**0096**
**Provided by LRI History LLC**

1 LOCAL LAW ENFORCEMENT AGENCY WHERE THE LOSS
2 OR THEFT OCCURRED WITHIN FIVE DAYS OF THE TIME
3 YOU KNEW OR REASONABLY SHOULD HAVE KNOWN
4 THAT THE FIREARM HAD BEEN LOST OR STOLEN."
5 (b) This section shall ~~become operative on January 1,~~
6 ~~2019.~~*remain in effect only until June 1, 2020, and as of that date*
7 *is repealed.*
8 SEC. 2. Section 26835 is added to the Penal Code, to read:
9 26835. (a) A licensee shall conspicuously post within the
10 licensed premises the following warnings in block letters not less
11 than one inch in height:
12 (1) "FIREARMS MUST BE HANDLED RESPONSIBLY AND
13 SECURELY STORED TO PREVENT ACCESS BY CHILDREN
14 AND OTHER UNAUTHORIZED USERS. CALIFORNIA HAS
15 STRICT LAWS PERTAINING TO FIREARMS, AND YOU
16 MAY BE FINED OR IMPRISONED IF YOU FAIL TO COMPLY
17 WITH THEM. VISIT THE INTERNET WEBSITE OF THE
18 CALIFORNIA ATTORNEY GENERAL AT
19 HTTPS://OAG.CA.GOV/FIREARMS FOR INFORMATION ON
20 FIREARM LAWS APPLICABLE TO YOU AND HOW YOU
21 CAN COMPLY."
22 (2) "IF YOU KEEP A LOADED FIREARM WITHIN ANY
23 PREMISES UNDER YOUR CUSTODY OR CONTROL, AND
24 A PERSON UNDER 18 YEARS OF AGE OBTAINS IT AND
25 USES IT, RESULTING IN INJURY OR DEATH, OR CARRIES
26 IT TO A PUBLIC PLACE, YOU MAY BE GUILTY OF A
27 MISDEMEANOR OR A FELONY UNLESS YOU STORED
28 THE FIREARM IN A LOCKED CONTAINER OR LOCKED
29 THE FIREARM WITH A LOCKING DEVICE, TO KEEP IT
30 FROM TEMPORARILY FUNCTIONING."
31 (3) "CHILDREN MAY BE UNABLE TO DISTINGUISH
32 FIREARMS FROM TOYS AND MAY OPERATE FIREARMS,
33 CAUSING SEVERE INJURIES OR DEATH. IF YOU KEEP A
34 PISTOL, REVOLVER, OR OTHER FIREARM CAPABLE OF
35 BEING CONCEALED UPON THE PERSON, WITHIN ANY
36 PREMISES UNDER YOUR CUSTODY OR CONTROL, AND
37 A PERSON UNDER 18 YEARS OF AGE GAINS ACCESS TO
38 THE FIREARM, AND CARRIES IT OFF-PREMISES, YOU
39 MAY BE GUILTY OF A MISDEMEANOR, UNLESS YOU
40 STORED THE FIREARM IN A LOCKED CONTAINER, OR

1 LOCKED THE FIREARM WITH A LOCKING DEVICE, TO
2 KEEP IT FROM TEMPORARILY FUNCTIONING."
3    (4) "YOU MAY BE GUILTY OF A MISDEMEANOR,
4 INCLUDING A SIGNIFICANT FINE OR IMPRISONMENT, IF
5 YOU KEEP A FIREARM WHERE A MINOR IS LIKELY TO
6 ACCESS IT OR IF A MINOR OBTAINS AND IMPROPERLY
7 USES IT, OR CARRIES IT OFF OF THE PREMISES TO A
8 SCHOOL OR SCHOOL-SPONSORED EVENT, UNLESS YOU
9 STORED THE FIREARM IN A LOCKED CONTAINER OR
10 LOCKED THE FIREARM WITH A LOCKING DEVICE."
11    (5) "IF YOU NEGLIGENTLY STORE OR LEAVE A
12 LOADED FIREARM WITHIN ANY PREMISES UNDER YOUR
13 CUSTODY OR CONTROL, WHERE A PERSON UNDER 18
14 YEARS OF AGE IS LIKELY TO ACCESS IT, YOU MAY BE
15 GUILTY OF A MISDEMEANOR, INCLUDING A
16 SIGNIFICANT FINE, UNLESS YOU STORED THE FIREARM
17 IN A LOCKED CONTAINER, OR LOCKED THE FIREARM
18 WITH A LOCKING DEVICE."
19    (6) "DISCHARGING FIREARMS IN POORLY VENTILATED
20 AREAS, CLEANING FIREARMS, OR HANDLING
21 AMMUNITION MAY RESULT IN EXPOSURE TO LEAD, A
22 SUBSTANCE KNOWN TO CAUSE BIRTH DEFECTS,
23 REPRODUCTIVE HARM, AND OTHER SERIOUS PHYSICAL
24 INJURY. HAVE ADEQUATE VENTILATION AT ALL TIMES.
25 WASH HANDS THOROUGHLY AFTER EXPOSURE."
26    (7) "FEDERAL REGULATIONS PROVIDE THAT IF YOU
27 DO NOT TAKE PHYSICAL POSSESSION OF THE FIREARM
28 THAT YOU ARE ACQUIRING OWNERSHIP OF WITHIN 30
29 DAYS AFTER YOU COMPLETE THE INITIAL
30 BACKGROUND CHECK PAPERWORK, YOU HAVE TO GO
31 THROUGH THE BACKGROUND CHECK PROCESS A
32 SECOND TIME IN ORDER TO TAKE PHYSICAL
33 POSSESSION OF THAT FIREARM."
34    (8) "NO PERSON SHALL MAKE AN APPLICATION TO
35 PURCHASE MORE THAN ONE HANDGUN OR
36 SEMIAUTOMATIC CENTERFIRE RIFLE WITHIN ANY
37 30-DAY PERIOD AND NO DELIVERY SHALL BE MADE TO
38 ANY PERSON WHO HAS MADE AN APPLICATION TO
39 PURCHASE MORE THAN ONE HANDGUN OR

Exhibit 6
0098

Provided by LRI History LLC

1 SEMIAUTOMATIC CENTERFIRE RIFLE WITHIN ANY
2 30-DAY PERIOD."
3   (9) "IF A FIREARM YOU OWN OR POSSESS IS LOST OR
4 STOLEN, YOU MUST REPORT THE LOSS OR THEFT TO A
5 LOCAL LAW ENFORCEMENT AGENCY WHERE THE LOSS
6 OR THEFT OCCURRED WITHIN FIVE DAYS OF THE TIME
7 YOU KNEW OR REASONABLY SHOULD HAVE KNOWN
8 THAT THE FIREARM HAD BEEN LOST OR STOLEN."
9   (b) This section shall become operative on July 1, 2021.
10   *SEC. 2.1. Section 26835 is added to the Penal Code, to read:*
11   *26835. (a) A licensee shall conspicuously post within the*
12 *licensed premises the following warnings in block letters not less*
13 *than one inch in height:*
14   *(1) "FIREARMS MUST BE HANDLED RESPONSIBLY AND*
15 *SECURELY STORED TO PREVENT ACCESS BY CHILDREN*
16 *AND OTHER UNAUTHORIZED USERS. CALIFORNIA HAS*
17 *STRICT LAWS PERTAINING TO FIREARMS, AND YOU MAY*
18 *BE FINED OR IMPRISONED IF YOU FAIL TO COMPLY WITH*
19 *THEM. VISIT THE INTERNET WEBSITE OF THE CALIFORNIA*
20 *ATTORNEY GENERAL AT HTTPS://OAG.CA.GOV/FIREARMS*
21 *FOR INFORMATION ON FIREARM LAWS APPLICABLE TO*
22 *YOU AND HOW YOU CAN COMPLY."*
23   *(2) "IF YOU KEEP A FIREARM WITHIN ANY PREMISES*
24 *UNDER YOUR CUSTODY OR CONTROL, AND A PERSON*
25 *UNDER 18 YEARS OF AGE OBTAINS IT AND USES IT,*
26 *RESULTING IN INJURY OR DEATH, OR CARRIES IT TO A*
27 *PUBLIC PLACE, YOU MAY BE GUILTY OF A MISDEMEANOR*
28 *OR A FELONY UNLESS YOU STORED THE FIREARM IN A*
29 *LOCKED CONTAINER OR LOCKED THE FIREARM WITH A*
30 *LOCKING DEVICE, TO KEEP IT FROM TEMPORARILY*
31 *FUNCTIONING."*
32   *(3) "CHILDREN MAY BE UNABLE TO DISTINGUISH*
33 *FIREARMS FROM TOYS AND MAY OPERATE FIREARMS,*
34 *CAUSING SEVERE INJURIES OR DEATH. IF YOU KEEP A*
35 *FIREARM WITHIN ANY PREMISES UNDER YOUR CUSTODY*
36 *OR CONTROL, AND A PERSON UNDER 18 YEARS OF AGE*
37 *GAINS ACCESS TO THE FIREARM, AND CARRIES IT*
38 *OFF-PREMISES, YOU MAY BE GUILTY OF A MISDEMEANOR,*
39 *UNLESS YOU STORED THE FIREARM IN A LOCKED*

1 *CONTAINER, OR LOCKED THE FIREARM WITH A LOCKING*
2 *DEVICE, TO KEEP IT FROM TEMPORARILY FUNCTIONING."*
3 *(4) "YOU MAY BE GUILTY OF A MISDEMEANOR,*
4 *INCLUDING A SIGNIFICANT FINE OR IMPRISONMENT, IF*
5 *YOU KEEP A FIREARM WHERE A MINOR IS LIKELY TO*
6 *ACCESS IT OR IF A MINOR OBTAINS AND IMPROPERLY USES*
7 *IT, OR CARRIES IT OFF OF THE PREMISES TO A SCHOOL*
8 *OR SCHOOL-SPONSORED EVENT, UNLESS YOU STORED*
9 *THE FIREARM IN A LOCKED CONTAINER OR LOCKED THE*
10 *FIREARM WITH A LOCKING DEVICE."*
11 *(5) "IF YOU NEGLIGENTLY STORE OR LEAVE A FIREARM*
12 *WITHIN ANY PREMISES UNDER YOUR CUSTODY OR*
13 *CONTROL, WHERE A PERSON UNDER 18 YEARS OF AGE IS*
14 *LIKELY TO ACCESS IT, YOU MAY BE GUILTY OF A*
15 *MISDEMEANOR, INCLUDING A SIGNIFICANT FINE, UNLESS*
16 *YOU STORED THE FIREARM IN A LOCKED CONTAINER, OR*
17 *LOCKED THE FIREARM WITH A LOCKING DEVICE."*
18 *(6) "DISCHARGING FIREARMS IN POORLY VENTILATED*
19 *AREAS, CLEANING FIREARMS, OR HANDLING AMMUNITION*
20 *MAY RESULT IN EXPOSURE TO LEAD, A SUBSTANCE KNOWN*
21 *TO CAUSE BIRTH DEFECTS, REPRODUCTIVE HARM, AND*
22 *OTHER SERIOUS PHYSICAL INJURY. HAVE ADEQUATE*
23 *VENTILATION AT ALL TIMES. WASH HANDS THOROUGHLY*
24 *AFTER EXPOSURE."*
25 *(7) "FEDERAL REGULATIONS PROVIDE THAT IF YOU DO*
26 *NOT TAKE PHYSICAL POSSESSION OF THE FIREARM THAT*
27 *YOU ARE ACQUIRING OWNERSHIP OF WITHIN 30 DAYS*
28 *AFTER YOU COMPLETE THE INITIAL BACKGROUND CHECK*
29 *PAPERWORK, THEN YOU HAVE TO GO THROUGH THE*
30 *BACKGROUND CHECK PROCESS A SECOND TIME IN ORDER*
31 *TO TAKE PHYSICAL POSSESSION OF THAT FIREARM."*
32 *(8) "NO PERSON SHALL MAKE AN APPLICATION TO*
33 *PURCHASE MORE THAN ONE HANDGUN OR*
34 *SEMIAUTOMATIC CENTERFIRE RIFLE WITHIN ANY 30-DAY*
35 *PERIOD AND NO DELIVERY SHALL BE MADE TO ANY*
36 *PERSON WHO HAS MADE AN APPLICATION TO PURCHASE*
37 *MORE THAN ONE HANDGUN OR SEMIAUTOMATIC*
38 *CENTERFIRE RIFLE WITHIN ANY 30-DAY PERIOD."*
39 *(9) "IF A FIREARM YOU OWN OR POSSESS IS LOST OR*
40 *STOLEN, YOU MUST REPORT THE LOSS OR THEFT TO A*

**Exhibit 6**
**0100**

**Provided by LRI History LLC**                    **SB 61 (2019)  Page 70 of 367**

1 *LOCAL LAW ENFORCEMENT AGENCY WHERE THE LOSS*
2 *OR THEFT OCCURRED WITHIN FIVE DAYS OF THE TIME*
3 *YOU KNEW OR REASONABLY SHOULD HAVE KNOWN THAT*
4 *THE FIREARM HAD BEEN LOST OR STOLEN."*
5 *(b) This section shall become operative on July 1, 2021.*
6 *SEC. 2.2. Section 26835 is added to the Penal Code, to read:*
7 *26835. (a) A licensee shall conspicuously post within the*
8 *licensed premises the following warnings in block letters not less*
9 *than one inch in height:*
10 *(1) "FIREARMS MUST BE HANDLED RESPONSIBLY AND*
11 *SECURELY STORED TO PREVENT ACCESS BY CHILDREN*
12 *AND OTHER UNAUTHORIZED USERS. CALIFORNIA HAS*
13 *STRICT LAWS PERTAINING TO FIREARMS, AND YOU MAY*
14 *BE FINED OR IMPRISONED IF YOU FAIL TO COMPLY WITH*
15 *THEM. VISIT THE INTERNET WEBSITE OF THE CALIFORNIA*
16 *ATTORNEY GENERAL AT HTTPS://OAG.CA.GOV/FIREARMS*
17 *FOR INFORMATION ON FIREARM LAWS APPLICABLE TO*
18 *YOU AND HOW YOU CAN COMPLY."*
19 *(2) "IF YOU KEEP A LOADED FIREARM WITHIN ANY*
20 *PREMISES UNDER YOUR CUSTODY OR CONTROL, AND A*
21 *PERSON UNDER 18 YEARS OF AGE OBTAINS IT AND USES*
22 *IT, RESULTING IN INJURY OR DEATH, OR CARRIES IT TO A*
23 *PUBLIC PLACE, YOU MAY BE GUILTY OF A MISDEMEANOR*
24 *OR A FELONY UNLESS YOU STORED THE FIREARM IN A*
25 *LOCKED CONTAINER OR LOCKED THE FIREARM WITH A*
26 *LOCKING DEVICE TO KEEP IT FROM TEMPORARILY*
27 *FUNCTIONING."*
28 *(3) "CHILDREN MAY BE UNABLE TO DISTINGUISH*
29 *FIREARMS FROM TOYS AND MAY OPERATE FIREARMS,*
30 *CAUSING SEVERE INJURIES OR DEATH. IF YOU KEEP A*
31 *PISTOL, REVOLVER, OR OTHER FIREARM CAPABLE OF*
32 *BEING CONCEALED UPON THE PERSON, WITHIN ANY*
33 *PREMISES UNDER YOUR CUSTODY OR CONTROL, AND A*
34 *PERSON UNDER 18 YEARS OF AGE GAINS ACCESS TO THE*
35 *FIREARM AND CARRIES IT OFF-PREMISES, YOU MAY BE*
36 *GUILTY OF A MISDEMEANOR, UNLESS YOU STORED THE*
37 *FIREARM IN A LOCKED CONTAINER, OR LOCKED THE*
38 *FIREARM WITH A LOCKING DEVICE TO KEEP IT FROM*
39 *TEMPORARILY FUNCTIONING."*

**Exhibit 6**
**0101**
**Provided by LRI History LLC**          **SB 61 (2019) Page 71 of 367**

1     *(4) "YOU MAY BE GUILTY OF A MISDEMEANOR,*
2  *INCLUDING A SIGNIFICANT FINE OR IMPRISONMENT, IF*
3  *YOU KEEP A FIREARM WHERE A MINOR IS LIKELY TO*
4  *ACCESS IT OR IF A MINOR OBTAINS AND IMPROPERLY USES*
5  *IT, OR CARRIES IT OFF OF THE PREMISES TO A SCHOOL*
6  *OR SCHOOL-SPONSORED EVENT, UNLESS YOU STORED*
7  *THE FIREARM IN A LOCKED CONTAINER OR LOCKED THE*
8  *FIREARM WITH A LOCKING DEVICE."*
9     *(5) "IF YOU NEGLIGENTLY STORE OR LEAVE A LOADED*
10  *FIREARM WITHIN ANY PREMISES UNDER YOUR CUSTODY*
11  *OR CONTROL WHERE A PERSON UNDER 18 YEARS OF AGE*
12  *IS LIKELY TO ACCESS IT, YOU MAY BE GUILTY OF A*
13  *MISDEMEANOR, INCLUDING A SIGNIFICANT FINE, UNLESS*
14  *YOU STORED THE FIREARM IN A LOCKED CONTAINER OR*
15  *LOCKED THE FIREARM WITH A LOCKING DEVICE."*
16     *(6) "DISCHARGING FIREARMS IN POORLY VENTILATED*
17  *AREAS, CLEANING FIREARMS, OR HANDLING AMMUNITION*
18  *MAY RESULT IN EXPOSURE TO LEAD, A SUBSTANCE KNOWN*
19  *TO CAUSE BIRTH DEFECTS, REPRODUCTIVE HARM, AND*
20  *OTHER SERIOUS PHYSICAL INJURY. HAVE ADEQUATE*
21  *VENTILATION AT ALL TIMES. WASH HANDS THOROUGHLY*
22  *AFTER EXPOSURE."*
23     *(7) "FEDERAL REGULATIONS PROVIDE THAT IF YOU DO*
24  *NOT TAKE PHYSICAL POSSESSION OF THE FIREARM THAT*
25  *YOU ARE ACQUIRING OWNERSHIP OF WITHIN 30 DAYS*
26  *AFTER YOU COMPLETE THE INITIAL BACKGROUND CHECK*
27  *PAPERWORK, THEN YOU HAVE TO GO THROUGH THE*
28  *BACKGROUND CHECK PROCESS A SECOND TIME IN ORDER*
29  *TO TAKE PHYSICAL POSSESSION OF THAT FIREARM."*
30     *(8) "NO PERSON SHALL MAKE AN APPLICATION TO*
31  *PURCHASE MORE THAN ONE PISTOL, REVOLVER, OR*
32  *OTHER FIREARM CAPABLE OF BEING CONCEALED UPON*
33  *THE PERSON WITHIN ANY 30-DAY PERIOD AND NO*
34  *DELIVERY SHALL BE MADE TO ANY PERSON WHO HAS*
35  *MADE AN APPLICATION TO PURCHASE MORE THAN ONE*
36  *PISTOL, REVOLVER, OR OTHER FIREARM CAPABLE OF*
37  *BEING CONCEALED UPON THE PERSON WITHIN ANY*
38  *30-DAY PERIOD."*
39     *(9) "IF A FIREARM YOU OWN OR POSSESS IS LOST OR*
40  *STOLEN, YOU MUST REPORT THE LOSS OR THEFT TO A*

**Exhibit 6**
**0102**

**Provided by LRI History LLC**

1 *LOCAL LAW ENFORCEMENT AGENCY WHERE THE LOSS*
2 *OR THEFT OCCURRED WITHIN FIVE DAYS OF THE TIME*
3 *YOU KNEW OR REASONABLY SHOULD HAVE KNOWN THAT*
4 *THE FIREARM HAD BEEN LOST OR STOLEN."*
5 *(b) In addition to the notice required by subdivision (a), a*
6 *licensee shall post conspicuously within the licensed premises, in*
7 *block letters not less than one inch in height, an additional notice,*
8 *including, but not limited to, a notice provided by a suicide*
9 *prevention program, containing the following statement:*
10 *"IF YOU OR SOMEONE YOU KNOW IS CONTEMPLATING*
11 *SUICIDE, PLEASE CALL THE NATIONAL SUICIDE*
12 *PREVENTION LIFELINE AT 1-800-273-TALK (8255)."*
13 *(c) This section shall become operative on June 1, 2020.*
14 *(d) This section shall remain in effect only until July 1, 2021,*
15 *and as of that date is repealed.*
16 *SEC. 2.3. Section 26835 is added to the Penal Code, to read:*
17 *26835. (a) A licensee shall conspicuously post within the*
18 *licensed premises the following warnings in block letters not less*
19 *than one inch in height:*
20 *(1) "FIREARMS MUST BE HANDLED RESPONSIBLY AND*
21 *SECURELY STORED TO PREVENT ACCESS BY CHILDREN*
22 *AND OTHER UNAUTHORIZED USERS. CALIFORNIA HAS*
23 *STRICT LAWS PERTAINING TO FIREARMS, AND YOU MAY*
24 *BE FINED OR IMPRISONED IF YOU FAIL TO COMPLY WITH*
25 *THEM. VISIT THE INTERNET WEBSITE OF THE CALIFORNIA*
26 *ATTORNEY GENERAL AT HTTPS://OAG.CA.GOV/FIREARMS*
27 *FOR INFORMATION ON FIREARM LAWS APPLICABLE TO*
28 *YOU AND HOW YOU CAN COMPLY."*
29 *(2) "IF YOU KEEP A LOADED FIREARM WITHIN ANY*
30 *PREMISES UNDER YOUR CUSTODY OR CONTROL, AND A*
31 *PERSON UNDER 18 YEARS OF AGE OBTAINS IT AND USES*
32 *IT, RESULTING IN INJURY OR DEATH, OR CARRIES IT TO A*
33 *PUBLIC PLACE, YOU MAY BE GUILTY OF A MISDEMEANOR*
34 *OR A FELONY UNLESS YOU STORED THE FIREARM IN A*
35 *LOCKED CONTAINER OR LOCKED THE FIREARM WITH A*
36 *LOCKING DEVICE TO KEEP IT FROM TEMPORARILY*
37 *FUNCTIONING."*
38 *(3) "CHILDREN MAY BE UNABLE TO DISTINGUISH*
39 *FIREARMS FROM TOYS AND MAY OPERATE FIREARMS,*
40 *CAUSING SEVERE INJURIES OR DEATH. IF YOU KEEP A*

**Exhibit 6**
**0103**
**Provided by LRI History LLC** SB 61 (2019) Page 73 of 367

1  *PISTOL, REVOLVER, OR OTHER FIREARM CAPABLE OF*
2  *BEING CONCEALED UPON THE PERSON, WITHIN ANY*
3  *PREMISES UNDER YOUR CUSTODY OR CONTROL, AND A*
4  *PERSON UNDER 18 YEARS OF AGE GAINS ACCESS TO THE*
5  *FIREARM AND CARRIES IT OFF-PREMISES, YOU MAY BE*
6  *GUILTY OF A MISDEMEANOR, UNLESS YOU STORED THE*
7  *FIREARM IN A LOCKED CONTAINER, OR LOCKED THE*
8  *FIREARM WITH A LOCKING DEVICE TO KEEP IT FROM*
9  *TEMPORARILY FUNCTIONING."*
10  *(4) "YOU MAY BE GUILTY OF A MISDEMEANOR,*
11  *INCLUDING A SIGNIFICANT FINE OR IMPRISONMENT, IF*
12  *YOU KEEP A FIREARM WHERE A MINOR IS LIKELY TO*
13  *ACCESS IT OR IF A MINOR OBTAINS AND IMPROPERLY USES*
14  *IT, OR CARRIES IT OFF OF THE PREMISES TO A SCHOOL*
15  *OR SCHOOL-SPONSORED EVENT, UNLESS YOU STORED*
16  *THE FIREARM IN A LOCKED CONTAINER OR LOCKED THE*
17  *FIREARM WITH A LOCKING DEVICE."*
18  *(5) "IF YOU NEGLIGENTLY STORE OR LEAVE A LOADED*
19  *FIREARM WITHIN ANY PREMISES UNDER YOUR CUSTODY*
20  *OR CONTROL WHERE A PERSON UNDER 18 YEARS OF AGE*
21  *IS LIKELY TO ACCESS IT, YOU MAY BE GUILTY OF A*
22  *MISDEMEANOR, INCLUDING A SIGNIFICANT FINE, UNLESS*
23  *YOU STORED THE FIREARM IN A LOCKED CONTAINER OR*
24  *LOCKED THE FIREARM WITH A LOCKING DEVICE."*
25  *(6) "DISCHARGING FIREARMS IN POORLY VENTILATED*
26  *AREAS, CLEANING FIREARMS, OR HANDLING AMMUNITION*
27  *MAY RESULT IN EXPOSURE TO LEAD, A SUBSTANCE KNOWN*
28  *TO CAUSE BIRTH DEFECTS, REPRODUCTIVE HARM, AND*
29  *OTHER SERIOUS PHYSICAL INJURY. HAVE ADEQUATE*
30  *VENTILATION AT ALL TIMES. WASH HANDS THOROUGHLY*
31  *AFTER EXPOSURE."*
32  *(7) "FEDERAL REGULATIONS PROVIDE THAT IF YOU DO*
33  *NOT TAKE PHYSICAL POSSESSION OF THE FIREARM THAT*
34  *YOU ARE ACQUIRING OWNERSHIP OF WITHIN 30 DAYS*
35  *AFTER YOU COMPLETE THE INITIAL BACKGROUND CHECK*
36  *PAPERWORK, THEN YOU HAVE TO GO THROUGH THE*
37  *BACKGROUND CHECK PROCESS A SECOND TIME IN ORDER*
38  *TO TAKE PHYSICAL POSSESSION OF THAT FIREARM."*
39  *(8) "NO PERSON SHALL MAKE AN APPLICATION TO*
40  *PURCHASE MORE THAN ONE HANDGUN OR*

Exhibit 6
0104
**Provided by LRI History LLC**          **SB 61 (2019)  Page 74 of 367**

1 *SEMIAUTOMATIC CENTERFIRE RIFLE WITHIN ANY 30-DAY*
2 *PERIOD AND NO DELIVERY SHALL BE MADE TO ANY*
3 *PERSON WHO HAS MADE AN APPLICATION TO PURCHASE*
4 *MORE THAN ONE HANDGUN OR SEMIAUTOMATIC*
5 *CENTERFIRE RIFLE WITHIN ANY 30-DAY PERIOD."*
6 *(9) "IF A FIREARM YOU OWN OR POSSESS IS LOST OR*
7 *STOLEN, YOU MUST REPORT THE LOSS OR THEFT TO A*
8 *LOCAL LAW ENFORCEMENT AGENCY WHERE THE LOSS*
9 *OR THEFT OCCURRED WITHIN FIVE DAYS OF THE TIME*
10 *YOU KNEW OR REASONABLY SHOULD HAVE KNOWN THAT*
11 *THE FIREARM HAD BEEN LOST OR STOLEN."*
12 *(b) In addition to the notice required by subdivision (a), a*
13 *licensee shall post conspicuously within the licensed premises, in*
14 *block letters not less than one inch in height, an additional notice,*
15 *including, but not limited to, a notice provided by a suicide*
16 *prevention program, containing the following statement:*
17 *"IF YOU OR SOMEONE YOU KNOW IS CONTEMPLATING*
18 *SUICIDE, PLEASE CALL THE NATIONAL SUICIDE*
19 *PREVENTION LIFELINE AT 1-800-273-TALK (8255)."*
20 *(c) This section shall become operative on July 1, 2021.*
21 *SEC. 2.4. Section 26835 is added to the Penal Code, to read:*
22 *26835. (a) A licensee shall conspicuously post within the*
23 *licensed premises the following warnings in block letters not less*
24 *than one inch in height:*
25 *(1) "FIREARMS MUST BE HANDLED RESPONSIBLY AND*
26 *SECURELY STORED TO PREVENT ACCESS BY CHILDREN*
27 *AND OTHER UNAUTHORIZED USERS. CALIFORNIA HAS*
28 *STRICT LAWS PERTAINING TO FIREARMS, AND YOU MAY*
29 *BE FINED OR IMPRISONED IF YOU FAIL TO COMPLY WITH*
30 *THEM. VISIT THE INTERNET WEBSITE OF THE CALIFORNIA*
31 *ATTORNEY GENERAL AT HTTPS://OAG.CA.GOV/FIREARMS*
32 *FOR INFORMATION ON FIREARM LAWS APPLICABLE TO*
33 *YOU AND HOW YOU CAN COMPLY."*
34 *(2) "IF YOU KEEP A FIREARM WITHIN ANY PREMISES*
35 *UNDER YOUR CUSTODY OR CONTROL, AND A PERSON*
36 *UNDER 18 YEARS OF AGE OBTAINS IT AND USES IT,*
37 *RESULTING IN INJURY OR DEATH, OR CARRIES IT TO A*
38 *PUBLIC PLACE, YOU MAY BE GUILTY OF A MISDEMEANOR*
39 *OR A FELONY UNLESS YOU STORED THE FIREARM IN A*
40 *LOCKED CONTAINER OR LOCKED THE FIREARM WITH A*

**Exhibit 6**
**0105**
**Provided by LRI History LLC**          **SB 61 (2019)  Page 75 of 367**

1 *LOCKING DEVICE, TO KEEP IT FROM TEMPORARILY*
2 *FUNCTIONING."*
3 *(3) "CHILDREN MAY BE UNABLE TO DISTINGUISH*
4 *FIREARMS FROM TOYS AND MAY OPERATE FIREARMS,*
5 *CAUSING SEVERE INJURIES OR DEATH. IF YOU KEEP A*
6 *FIREARM WITHIN ANY PREMISES UNDER YOUR CUSTODY*
7 *OR CONTROL, AND A PERSON UNDER 18 YEARS OF AGE*
8 *GAINS ACCESS TO THE FIREARM, AND CARRIES IT*
9 *OFF-PREMISES, YOU MAY BE GUILTY OF A MISDEMEANOR,*
10 *UNLESS YOU STORED THE FIREARM IN A LOCKED*
11 *CONTAINER, OR LOCKED THE FIREARM WITH A LOCKING*
12 *DEVICE, TO KEEP IT FROM TEMPORARILY FUNCTIONING."*
13 *(4) "YOU MAY BE GUILTY OF A MISDEMEANOR,*
14 *INCLUDING A SIGNIFICANT FINE OR IMPRISONMENT, IF*
15 *YOU KEEP A FIREARM WHERE A MINOR IS LIKELY TO*
16 *ACCESS IT OR IF A MINOR OBTAINS AND IMPROPERLY USES*
17 *IT, OR CARRIES IT OFF OF THE PREMISES TO A SCHOOL*
18 *OR SCHOOL-SPONSORED EVENT, UNLESS YOU STORED*
19 *THE FIREARM IN A LOCKED CONTAINER OR LOCKED THE*
20 *FIREARM WITH A LOCKING DEVICE."*
21 *(5) "IF YOU NEGLIGENTLY STORE OR LEAVE A FIREARM*
22 *WITHIN ANY PREMISES UNDER YOUR CUSTODY OR*
23 *CONTROL, WHERE A PERSON UNDER 18 YEARS OF AGE IS*
24 *LIKELY TO ACCESS IT, YOU MAY BE GUILTY OF A*
25 *MISDEMEANOR, INCLUDING A SIGNIFICANT FINE, UNLESS*
26 *YOU STORED THE FIREARM IN A LOCKED CONTAINER, OR*
27 *LOCKED THE FIREARM WITH A LOCKING DEVICE."*
28 *(6) "DISCHARGING FIREARMS IN POORLY VENTILATED*
29 *AREAS, CLEANING FIREARMS, OR HANDLING AMMUNITION*
30 *MAY RESULT IN EXPOSURE TO LEAD, A SUBSTANCE KNOWN*
31 *TO CAUSE BIRTH DEFECTS, REPRODUCTIVE HARM, AND*
32 *OTHER SERIOUS PHYSICAL INJURY. HAVE ADEQUATE*
33 *VENTILATION AT ALL TIMES. WASH HANDS THOROUGHLY*
34 *AFTER EXPOSURE."*
35 *(7) "FEDERAL REGULATIONS PROVIDE THAT IF YOU DO*
36 *NOT TAKE PHYSICAL POSSESSION OF THE FIREARM THAT*
37 *YOU ARE ACQUIRING OWNERSHIP OF WITHIN 30 DAYS*
38 *AFTER YOU COMPLETE THE INITIAL BACKGROUND CHECK*
39 *PAPERWORK, THEN YOU HAVE TO GO THROUGH THE*

**Exhibit 6**
**0106**
**Provided by LRI History LLC** **SB 61 (2019) Page 76 of 367**

1 *BACKGROUND CHECK PROCESS A SECOND TIME IN ORDER*
2 *TO TAKE PHYSICAL POSSESSION OF THAT FIREARM."*
3 *(8) "NO PERSON SHALL MAKE AN APPLICATION TO*
4 *PURCHASE MORE THAN ONE PISTOL, REVOLVER, OR*
5 *OTHER FIREARM CAPABLE OF BEING CONCEALED UPON*
6 *THE PERSON WITHIN ANY 30-DAY PERIOD AND NO*
7 *DELIVERY SHALL BE MADE TO ANY PERSON WHO HAS*
8 *MADE AN APPLICATION TO PURCHASE MORE THAN ONE*
9 *PISTOL, REVOLVER, OR OTHER FIREARM CAPABLE OF*
10 *BEING CONCEALED UPON THE PERSON WITHIN ANY*
11 *30-DAY PERIOD."*
12 *(9) "IF A FIREARM YOU OWN OR POSSESS IS LOST OR*
13 *STOLEN, YOU MUST REPORT THE LOSS OR THEFT TO A*
14 *LOCAL LAW ENFORCEMENT AGENCY WHERE THE LOSS*
15 *OR THEFT OCCURRED WITHIN FIVE DAYS OF THE TIME*
16 *YOU KNEW OR REASONABLY SHOULD HAVE KNOWN THAT*
17 *THE FIREARM HAD BEEN LOST OR STOLEN."*
18 *(b) In addition to the notice required by subdivision (a), a*
19 *licensee shall post conspicuously within the licensed premises, in*
20 *block letters not less than one inch in height, an additional notice,*
21 *including, but not limited to, a notice provided by a suicide*
22 *prevention program, containing the following statement:*
23 *"IF YOU OR SOMEONE YOU KNOW IS CONTEMPLATING*
24 *SUICIDE, PLEASE CALL THE NATIONAL SUICIDE*
25 *PREVENTION LIFELINE AT 1-800-273-TALK (8255)."*
26 *(c) This section shall become operative on June 1, 2020.*
27 *(d) This section shall remain in effect only until July 1, 2021,*
28 *and as of that date is repealed.*
29 *SEC. 2.5. Section 26835 is added to the Penal Code, to read:*
30 *26835. (a) A licensee shall conspicuously post within the*
31 *licensed premises the following warnings in block letters not less*
32 *than one inch in height:*
33 *(1) "FIREARMS MUST BE HANDLED RESPONSIBLY AND*
34 *SECURELY STORED TO PREVENT ACCESS BY CHILDREN*
35 *AND OTHER UNAUTHORIZED USERS. CALIFORNIA HAS*
36 *STRICT LAWS PERTAINING TO FIREARMS, AND YOU MAY*
37 *BE FINED OR IMPRISONED IF YOU FAIL TO COMPLY WITH*
38 *THEM. VISIT THE INTERNET WEBSITE OF THE CALIFORNIA*
39 *ATTORNEY GENERAL AT HTTPS://OAG.CA.GOV/FIREARMS*

**Exhibit 6**
**0107**
**Provided by LRI History LLC**         **SB 61 (2019) Page 77 of 367**

1 *FOR INFORMATION ON FIREARM LAWS APPLICABLE TO*
2 *YOU AND HOW YOU CAN COMPLY."*
3 *(2) "IF YOU KEEP A FIREARM WITHIN ANY PREMISES*
4 *UNDER YOUR CUSTODY OR CONTROL, AND A PERSON*
5 *UNDER 18 YEARS OF AGE OBTAINS IT AND USES IT,*
6 *RESULTING IN INJURY OR DEATH, OR CARRIES IT TO A*
7 *PUBLIC PLACE, YOU MAY BE GUILTY OF A MISDEMEANOR*
8 *OR A FELONY UNLESS YOU STORED THE FIREARM IN A*
9 *LOCKED CONTAINER OR LOCKED THE FIREARM WITH A*
10 *LOCKING DEVICE TO KEEP IT FROM TEMPORARILY*
11 *FUNCTIONING."*
12 *(3) "CHILDREN MAY BE UNABLE TO DISTINGUISH*
13 *FIREARMS FROM TOYS AND MAY OPERATE FIREARMS,*
14 *CAUSING SEVERE INJURIES OR DEATH. IF YOU KEEP A*
15 *FIREARM WITHIN ANY PREMISES UNDER YOUR CUSTODY*
16 *OR CONTROL, AND A PERSON UNDER 18 YEARS OF AGE*
17 *GAINS ACCESS TO THE FIREARM AND CARRIES IT*
18 *OFF-PREMISES, YOU MAY BE GUILTY OF A MISDEMEANOR,*
19 *UNLESS YOU STORED THE FIREARM IN A LOCKED*
20 *CONTAINER, OR LOCKED THE FIREARM WITH A LOCKING*
21 *DEVICE TO KEEP IT FROM TEMPORARILY FUNCTIONING."*
22 *(4) "YOU MAY BE GUILTY OF A MISDEMEANOR,*
23 *INCLUDING A SIGNIFICANT FINE OR IMPRISONMENT, IF*
24 *YOU KEEP A FIREARM WHERE A MINOR IS LIKELY TO*
25 *ACCESS IT OR IF A MINOR OBTAINS AND IMPROPERLY USES*
26 *IT, OR CARRIES IT OFF OF THE PREMISES TO A SCHOOL*
27 *OR SCHOOL-SPONSORED EVENT, UNLESS YOU STORED*
28 *THE FIREARM IN A LOCKED CONTAINER OR LOCKED THE*
29 *FIREARM WITH A LOCKING DEVICE."*
30 *(5) "IF YOU NEGLIGENTLY STORE OR LEAVE A FIREARM*
31 *WITHIN ANY PREMISES UNDER YOUR CUSTODY OR*
32 *CONTROL WHERE A PERSON UNDER 18 YEARS OF AGE IS*
33 *LIKELY TO ACCESS IT, YOU MAY BE GUILTY OF A*
34 *MISDEMEANOR, INCLUDING A SIGNIFICANT FINE, UNLESS*
35 *YOU STORED THE FIREARM IN A LOCKED CONTAINER OR*
36 *LOCKED THE FIREARM WITH A LOCKING DEVICE."*
37 *(6) "DISCHARGING FIREARMS IN POORLY VENTILATED*
38 *AREAS, CLEANING FIREARMS, OR HANDLING AMMUNITION*
39 *MAY RESULT IN EXPOSURE TO LEAD, A SUBSTANCE KNOWN*
40 *TO CAUSE BIRTH DEFECTS, REPRODUCTIVE HARM, AND*

**Exhibit 6**
**0108**
**Provided by LRI History LLC**          **SB 61 (2019)  Page 78 of 367**

1 *OTHER SERIOUS PHYSICAL INJURY. HAVE ADEQUATE*
2 *VENTILATION AT ALL TIMES. WASH HANDS THOROUGHLY*
3 *AFTER EXPOSURE."*
4   *(7) "FEDERAL REGULATIONS PROVIDE THAT IF YOU DO*
5 *NOT TAKE PHYSICAL POSSESSION OF THE FIREARM THAT*
6 *YOU ARE ACQUIRING OWNERSHIP OF WITHIN 30 DAYS*
7 *AFTER YOU COMPLETE THE INITIAL BACKGROUND CHECK*
8 *PAPERWORK, THEN YOU HAVE TO GO THROUGH THE*
9 *BACKGROUND CHECK PROCESS A SECOND TIME IN ORDER*
10 *TO TAKE PHYSICAL POSSESSION OF THAT FIREARM."*
11   *(8) "NO PERSON SHALL MAKE AN APPLICATION TO*
12 *PURCHASE    MORE    THAN    ONE    HANDGUN    OR*
13 *SEMIAUTOMATIC CENTERFIRE RIFLE WITHIN ANY 30-DAY*
14 *PERIOD AND NO DELIVERY SHALL BE MADE TO ANY*
15 *PERSON WHO HAS MADE AN APPLICATION TO PURCHASE*
16 *MORE    THAN    ONE    HANDGUN    OR    SEMIAUTOMATIC*
17 *CENTERFIRE RIFLE WITHIN ANY 30-DAY PERIOD."*
18   *(9) "IF A FIREARM YOU OWN OR POSSESS IS LOST OR*
19 *STOLEN, YOU MUST REPORT THE LOSS OR THEFT TO A*
20 *LOCAL LAW ENFORCEMENT AGENCY WHERE THE LOSS*
21 *OR THEFT OCCURRED WITHIN FIVE DAYS OF THE TIME*
22 *YOU KNEW OR REASONABLY SHOULD HAVE KNOWN THAT*
23 *THE FIREARM HAD BEEN LOST OR STOLEN."*
24   *(b) In addition to the notice required by subdivision (a), a*
25 *licensee shall post conspicuously within the licensed premises, in*
26 *block letters not less than one inch in height, an additional notice,*
27 *including, but not limited to, a notice provided by a suicide*
28 *prevention program, containing the following statement:*
29   *"IF YOU OR SOMEONE YOU KNOW IS CONTEMPLATING*
30 *SUICIDE,    PLEASE    CALL    THE    NATIONAL    SUICIDE*
31 *PREVENTION LIFELINE AT 1-800-273-TALK (8255)."*
32   *(c) This section shall become operative on July 1, 2021.*
33   SEC. 3.  Section 27510 of the Penal Code is amended to read:
34   27510.  (a)  A person licensed under Sections 26700 to 26915,
35 inclusive, shall not sell, supply, deliver, or give possession or
36 control of a firearm to any person who is under 21 years of age.
37   (b) (1) Subdivision (a) does not apply to or affect the sale,
38 supplying, delivery, or giving possession or control of a firearm
39 that is not a handgun or a semiautomatic centerfire rifle to a person

**Exhibit 6**
**0109**
**Provided by LRI History LLC**          **SB 61 (2019)  Page 79 of 367**

1 18 years of age or older who possesses a valid, unexpired hunting
2 license issued by the Department of Fish and Wildlife.
3    (2) Subdivision (a) does not apply to or affect the sale,
4 supplying, delivery, or giving possession or control of a firearm
5 that is not a handgun or a semiautomatic centerfire rifle to a person
6 who is 18 years of age or older and provides proper identification
7 of being an honorably discharged member of the United States
8 Armed Forces, the National Guard, the Air National Guard, or the
9 active reserve components of the United States. For purposes of
10 this subparagraph, proper identification includes an Armed Forces
11 Identification Card or other written documentation certifying that
12 the individual is an honorably discharged member
13    (3) Subdivision (a) does not apply to or affect the sale,
14 supplying, delivery, or giving possession or control of a firearm
15 that is not a handgun to any of the following persons who are 18
16 years of age or older:
17    (A) An active peace officer, as described in Chapter 4.5
18 (commencing with Section 830) of Title 3 of Part 2, who is
19 authorized to carry a firearm in the course and scope of
20 employment.
21    (B) An active federal officer or law enforcement agent who is
22 authorized to carry a firearm in the course and scope of
23 employment.
24    (C) A reserve peace officer, as defined in Section 832.6, who
25 is authorized to carry a firearm in the course and scope of
26 employment as a reserve peace officer.
27    (D) A person who provides proper identification of active
28 membership in the United States Armed Forces, the National
29 Guard, the Air National Guard, or active reserve components of
30 the United States. For purposes of this subparagraph, proper
31 identification includes an Armed Forces Identification Card or
32 other written documentation certifying that the individual is an
33 active member.
34    SEC. 4.  Section 27535 of the Penal Code is amended to read:
35    27535.  (a) No person shall make an application to purchase
36 more than one handgun within any 30-day period.
37    (b) Subdivision (a) shall not apply to any of the following:
38    (1) Any law enforcement agency.
39    (2) Any agency duly authorized to perform law enforcement
40 duties.

Exhibit 6
0110
**Provided by LRI History LLC**                    **SB 61 (2019)  Page 80 of 367**

1    (3) Any state or local correctional facility.
2    (4) Any private security company licensed to do business in
3  California.
4    (5) Any person who is properly identified as a full-time paid
5  peace officer, as defined in Chapter 4.5 (commencing with Section
6  830) of Title 3 of Part 2, and who is authorized to, and does carry
7  a firearm during the course and scope of employment as a peace
8  officer.
9    (6) Any motion picture, television, or video production company
10  or entertainment or theatrical company whose production by its
11  nature involves the use of a firearm.
12    (7) Any person who may, pursuant to Article 2 (commencing
13  with Section 27600), Article 3 (commencing with Section 27650),
14  or Article 4 (commencing with Section 27700), claim an exemption
15  from the waiting period set forth in Section 27540.
16    (8) Any transaction conducted through a licensed firearms dealer
17  pursuant to Chapter 5 (commencing with Section 28050).
18    (9) Any person who is licensed as a collector pursuant to Chapter
19  44 (commencing with Section 921) of Title 18 of the United States
20  Code and the regulations issued pursuant thereto, and has a current
21  certificate of eligibility issued by the Department of Justice
22  pursuant to Article 1 (commencing with Section 26700) of Chapter
23  2.
24    (10) The exchange of a handgun where the dealer purchased
25  that firearm from the person seeking the exchange within the
26  30-day period immediately preceding the date of exchange or
27  replacement.
28    (11) The replacement of a handgun when the person's handgun
29  was lost or stolen, and the person reported that firearm lost or
30  stolen pursuant to Section 25250 prior to the completion of the
31  application to purchase the replacement handgun.
32    (12) The return of any handgun to its owner.
33    (13) A community college that is certified by the Commission
34  on Peace Officer Standards and Training to present the law
35  enforcement academy basic course or other commission-certified
36  law enforcement training.
37    (c)
38    This
39    *(c) This* section shall remain in effect only until July 1, 2021,
40  and as of that date is repealed.

**Exhibit 6**
0111
**Provided by LRI History LLC**     **SB 61 (2019)  Page 81 of 367**

1    SEC. 5.  Section 27535 is added to the Penal Code, to read:

2    27535.  (a)  A person shall not make an application to purchase

3 more than one handgun or semiautomatic centerfire rifle within

4 any 30-day period. This subdivision does not authorize a person

5 to make an application to purchase both a handgun and

6 semiautomatic centerfire rifle within the same 30-day period.

7    (b)  Subdivision (a) does not apply to any of the following:

8    (1)  Any law enforcement agency.

9    (2)  Any agency duly authorized to perform law enforcement

10 duties.

11    (3)  Any state or local correctional facility.

12    (4)  Any private security company licensed to do business in

13 California.

14    (5)  Any person who is properly identified as a full-time paid

15 peace officer, as defined in Chapter 4.5 (commencing with Section

16 830) of Title 3 of Part 2, and who is authorized to, and does carry

17 a firearm during the course and scope of employment as a peace

18 officer.

19    (6)  Any motion picture, television, or video production company

20 or entertainment or theatrical company whose production by its

21 nature involves the use of a firearm.

22    (7)  Any person who may, pursuant to Article 2 (commencing

23 with Section 27600), Article 3 (commencing with Section 27650),

24 or Article 4 (commencing with Section 27700), claim an exemption

25 from the waiting period set forth in Section 27540.

26    (8)  Any transaction conducted through a licensed firearms dealer

27 pursuant to Chapter 5 (commencing with Section 28050).

28    (9)  Any person who is licensed as a collector pursuant to Chapter

29 44 (commencing with Section 921) of Title 18 of the United States

30 Code and the regulations issued pursuant thereto, and has a current

31 certificate of eligibility issued by the Department of Justice

32 pursuant to Article 1 (commencing with Section 26700) of Chapter

33 2.

34    (10)  The exchange of a handgun or semiautomatic centerfire

35 rifle where the dealer purchased that firearm from the person

36 seeking the exchange within the 30-day period immediately

37 preceding the date of exchange or replacement.

38    (11)  The replacement of a handgun or semiautomatic centerfire

39 rifle when the person's firearm was lost or stolen, and the person

1 reported that firearm lost or stolen pursuant to Section 25250 prior
2 to the completion of the application to purchase the replacement.
3 (12) The return of any handgun or semiautomatic centerfire rifle
4 to its owner.
5 (13) A community college that is certified by the Commission
6 on Peace Officer Standards and Training to present the law
7 enforcement academy basic course or other commission-certified
8 law enforcement training.
9 (c) This section shall become operative on July 1, 2021.
10 SEC. 6. Section 27540 of the Penal Code is amended to read:
11 27540. A dealer, whether or not acting pursuant to Chapter 5
12 (commencing with Section 28050), shall not deliver a firearm to
13 a person, as follows:
14 (a) Within 10 days of the application to purchase, or, after notice
15 by the department pursuant to Section 28220, within 10 days of
16 the submission to the department of any correction to the
17 application, or within 10 days of the submission to the department
18 of any fee required pursuant to Section 28225, whichever is later.
19 (b) Unless unloaded and securely wrapped or unloaded and in
20 a locked container.
21 (c) Unless the purchaser, transferee, or person being loaned the
22 firearm presents clear evidence of the person's identity and age to
23 the dealer.
24 (d) Whenever the dealer is notified by the Department of Justice
25 that the person is prohibited by state or federal law from possessing,
26 receiving, owning, or purchasing a firearm.
27 (e) A firearm, including a handgun, shall not be delivered unless
28 the purchaser, transferee, or person being loaned the firearm
29 presents a firearm safety certificate to the dealer, except that in the
30 case of a handgun, an unexpired handgun safety certificate may
31 be presented.
32 (f) Until July 1, 2021, a handgun shall not be delivered whenever
33 the dealer is notified by the Department of Justice that within the
34 preceding 30-day period the purchaser has made another
35 application to purchase a handgun and that the previous application
36 to purchase did not involve any of the entities or circumstances
37 specified in subdivision (b) of Section 27535.
38 (g) Commencing July 1, 2021, a handgun or semiautomatic
39 centerfire rifle shall not be delivered whenever the dealer is notified
40 by the Department of Justice that within the preceding 30-day

**Exhibit 6**
**0113**
**Provided by LRI History LLC**    **SB 61 (2019) Page 83 of 367**

28

period, the purchaser has made another application to purchase either a handgun or semiautomatic centerfire rifle and that the previous application to purchase did not involve any of the entities or circumstances specified in subdivision (b) of Section 27535.

SEC. 7.  Section 27590 of the Penal Code is amended to read:

27590.  (a) Except as provided in subdivision (b), (c), or (e), a violation of this article is a misdemeanor.

(b) If any of the following circumstances apply, a violation of this article is punishable by imprisonment pursuant to subdivision (h) of Section 1170 for two, three, or four years:

(1) If the violation is of subdivision (a) of Section 27500.

(2) If the defendant has a prior conviction of violating the provisions, other than Section 27535, Section 27560 involving a firearm that is not a handgun, or Section 27565 involving a firearm that is not a handgun, of this article or former Section 12100 of this code, as Section 12100 read at any time from when it was enacted by Section 3 of Chapter 1386 of the Statutes of 1988 to when it was repealed by Section 18 of Chapter 23 of the Statutes of 1994, or Section 8101 of the Welfare and Institutions Code.

(3) If the defendant has a prior conviction of violating any offense specified in Section 29905 or of a violation of Section 32625 or 33410, or of former Section 12560, as that section read at any time from when it was enacted by Section 4 of Chapter 931 of the Statutes of 1965 to when it was repealed by Section 14 of Chapter 9 of the Statutes of 1990, or of any provision listed in Section 16590.

(4) If the defendant is in a prohibited class described in Chapter 2 (commencing with Section 29800) or Chapter 3 (commencing with Section 29900) of Division 9 of this title, or Section 8100 or 8103 of the Welfare and Institutions Code.

(5) A violation of this article by a person who actively participates in a "criminal street gang" as defined in Section 186.22.

(6) A violation of Section 27510 involving the delivery of any firearm to a person who the dealer knows, or should know, is a minor.

(c) If any of the following circumstances apply, a violation of this article shall be punished by imprisonment in a county jail not exceeding one year or pursuant to subdivision (h) of Section 1170, or by a fine not to exceed one thousand dollars ($1,000), or by both that fine and imprisonment:

**Exhibit 6**
**0114**

28

period, the purchaser has made another application to purchase either a handgun or semiautomatic centerfire rifle and that the previous application to purchase did not involve any of the entities or circumstances specified in subdivision (b) of Section 27535.

SEC. 7.  Section 27590 of the Penal Code is amended to read:

27590.  (a) Except as provided in subdivision (b), (c), or (e), a violation of this article is a misdemeanor.

(b) If any of the following circumstances apply, a violation of this article is punishable by imprisonment pursuant to subdivision (h) of Section 1170 for two, three, or four years:

(1) If the violation is of subdivision (a) of Section 27500.

(2) If the defendant has a prior conviction of violating the provisions, other than Section 27535, Section 27560 involving a firearm that is not a handgun, or Section 27565 involving a firearm that is not a handgun, of this article or former Section 12100 of this code, as Section 12100 read at any time from when it was enacted by Section 3 of Chapter 1386 of the Statutes of 1988 to when it was repealed by Section 18 of Chapter 23 of the Statutes of 1994, or Section 8101 of the Welfare and Institutions Code.

(3) If the defendant has a prior conviction of violating any offense specified in Section 29905 or of a violation of Section 32625 or 33410, or of former Section 12560, as that section read at any time from when it was enacted by Section 4 of Chapter 931 of the Statutes of 1965 to when it was repealed by Section 14 of Chapter 9 of the Statutes of 1990, or of any provision listed in Section 16590.

(4) If the defendant is in a prohibited class described in Chapter 2 (commencing with Section 29800) or Chapter 3 (commencing with Section 29900) of Division 9 of this title, or Section 8100 or 8103 of the Welfare and Institutions Code.

(5) A violation of this article by a person who actively participates in a "criminal street gang" as defined in Section 186.22.

(6) A violation of Section 27510 involving the delivery of any firearm to a person who the dealer knows, or should know, is a minor.

(c) If any of the following circumstances apply, a violation of this article shall be punished by imprisonment in a county jail not exceeding one year or pursuant to subdivision (h) of Section 1170, or by a fine not to exceed one thousand dollars ($1,000), or by both that fine and imprisonment:

**Exhibit 6**
**0114**

Provided by LRI History LLC

SB 61 (2019)  Page 84 of 367

1    (1) A violation of Section 27515, 27520, or subdivision (b) of
2  Section 27500.
3    (2) A violation of Section 27505 involving the sale, loan, or
4  transfer of a handgun to a minor.
5    (3) A violation of Section 27510 involving the delivery of a
6  handgun.
7    (4) A violation of subdivision (a), (c), (d), (e), or (f) of Section
8  27540 involving a handgun.
9    (5) A violation of Section 27545 involving a handgun.
10    (6) A violation of Section 27550.
11    (7) A violation of Section 27585 involving a handgun.
12    (d) If both of the following circumstances apply, an additional
13  term of imprisonment pursuant to subdivision (h) of Section 1170
14  for one, two, or three years shall be imposed in addition and
15  consecutive to the sentence prescribed:
16    (1) A violation of Section 27510 or subdivision (b) of Section
17  27500.
18    (2) The firearm transferred in violation of Section 27510 or
19  subdivision (b) of Section 27500 is used in the subsequent
20  commission of a felony for which a conviction is obtained and the
21  prescribed sentence is imposed.
22    (e) (1) A first violation of Section 27535 is an infraction
23  punishable by a fine of fifty dollars ($50).
24    (2) A second violation of Section 27535 is an infraction
25  punishable by a fine of one hundred dollars ($100).
26    (3) A third or subsequent violation of Section 27535 is a
27  misdemeanor.
28    (4) (A) Until July 1, 2021, for purposes of this subdivision,
29  each application to purchase a handgun in violation of Section
30  27535 is a separate offense.
31    (B) Commencing July 1, 2021, for purposes of this subdivision,
32  each application to purchase a handgun or semiautomatic centerfire
33  rifle in violation of Section 27535 is a separate offense.
34    SEC. 8.  The provisions of this act are severable. If any
35  provision of this act or its application is held invalid, that invalidity
36  shall not affect other provisions or applications that can be given
37  effect without the invalid provision or application.
38    *SEC. 9. (a) Sections 1.1 and 2.1 of this bill incorporate*
39  *amendments to Section 26835 of the Penal Code proposed by both*
40  *this bill and Senate Bill 172. Those sections shall only become*

**Exhibit 6**
**0115**
**Provided by LRI History LLC**          **SB 61 (2019)  Page 85 of 367**

1    *operative if (1) both bills are enacted and become effective on or*
2    *before January 1, 2020, (2) each bill amends Section 26835 of the*
3    *Penal Code, (3) Assembly Bill 645 is not enacted or as enacted*
4    *does not amend that section, and (4) this bill is enacted after Senate*
5    *Bill 172, in which case Sections 1, 1.2, 1.3, 2, 2.2, 2.3, 2.4, and*
6    *2.5 of this bill shall not become operative.*
7      *(b) Sections 1.2, 2.2, and 2.3 of this bill incorporate amendments*
8    *to Section 26835 of the Penal Code proposed by both this bill and*
9    *Assembly Bill 645. Those sections shall only become operative if*
10   *(1) both bills are enacted and become effective on or before*
11   *January 1, 2020, (2) each bill amends Section 26835 of the Penal*
12   *Code, (3) Senate Bill 172 is not enacted or as enacted does not*
13   *amend that section, and (4) this bill is enacted after Assembly Bill*
14   *645, in which case Sections 1, 1.1, 1.3, 2, 2.1, 2.4, and 2.5 of this*
15   *bill shall not become operative.*
16     *(c) Sections 1.3, 2.4, and 2.5 of this bill incorporate amendments*
17   *to Section 26835 of the Penal Code proposed by this bill, Assembly*
18   *Bill 645, and Senate Bill 172. Those sections of this bill shall only*
19   *become operative if (1) all three bills are enacted and become*
20   *effective on or before January 1, 2020, (2) all three bills amend*
21   *Section 26835 of the Penal Code, and (3) this bill is enacted after*
22   *Assembly Bill 645 and Senate Bill 172, in which case Sections 1,*
23   *1.1, 1.2, 2, 2.1, 2.2 and 2.3 of this bill shall not become operative.*
24   ~~SEC. 9.~~
25     *SEC. 10.* No reimbursement is required by this act pursuant to
26   Section 6 of Article XIII B of the California Constitution because
27   the only costs that may be incurred by a local agency or school
28   district will be incurred because this act creates a new crime or
29   infraction, eliminates a crime or infraction, or changes the penalty
30   for a crime or infraction, within the meaning of Section 17556 of
31   the Government Code, or changes the definition of a crime within
32   the meaning of Section 6 of Article XIII B of the California
33   Constitution.

O

## Senate Bill No. 61

———

Passed the Senate  September 13, 2019

_____

*Secretary of the Senate*

———

Passed the Assembly  September 13, 2019

_____

*Chief Clerk of the Assembly*

———

This bill was received by the Governor this _____ day
of _____, 2019, at _____ o'clock ____м.

_____

*Private Secretary of the Governor*

**Exhibit 6**
**0117**

**Provided by LRI History LLC**                    **SB 61 (2019)  Page 87 of 367**

CHAPTER _____

An act to amend Sections 27510, 27540, and 27590 of, and to amend, repeal, and add Sections 26835 and 27535 of, the Penal Code, relating to firearms.

LEGISLATIVE COUNSEL'S DIGEST

SB 61, Portantino. Firearms: transfers.

Existing law, subject to exceptions, prohibits a person from making more than one application to purchase a handgun within any 30-day period. A violation of that prohibition is a crime. Existing law prohibits a firearms dealer from delivering a handgun to a person whenever the dealer is notified by the Department of Justice that within the preceding 30-day period the purchaser has made another application to purchase a handgun that does not fall within an exception to the 30-day prohibition. A violation of that delivery prohibition by the dealer is a crime.

This bill would, effective July 1, 2021, make the 30-day prohibition and the dealer delivery prohibition described above also applicable to semiautomatic centerfire rifles.

Existing law prohibits a licensed firearm dealer from selling a firearm to a person under 21 years of age. Existing law provides an exemption to this prohibition for the sale of a firearm, other than a handgun, to a person 18 years of age or older who has a valid hunting license, is a law enforcement officer, as specified, or is an honorably discharged member of the Armed Forces. Existing law makes a violation of this prohibition a crime.

This bill would prohibit the sale of a semiautomatic centerfire rifle to any person under the age of 21, except a law enforcement officer or active duty member of the Armed Forces, as specified.

The bill would state that its provisions are severable.

By expanding the scope of existing crimes, this bill would impose a state-mandated local program.

This bill would incorporate additional changes to Section 26835 of the Penal Code proposed by AB 645 and SB 172 to be operative only if this bill and AB 645, SB 172, or both are enacted and this bill is enacted last.

**Exhibit 6**
**0118**
**Provided by LRI History LLC**　　　　　　　　　　　　　　**SB 61 (2019)  Page 88 of 367**

The California Constitution requires the state to reimburse local agencies and school districts for certain costs mandated by the state. Statutory provisions establish procedures for making that reimbursement.

This bill would provide that no reimbursement is required by this act for a specified reason.

*The people of the State of California do enact as follows:*

SECTION 1. Section 26835 of the Penal Code is amended to read:

26835. (a) A licensee shall post conspicuously within the licensed premises the following warnings in block letters not less than one inch in height:

(1) "FIREARMS MUST BE HANDLED RESPONSIBLY AND SECURELY STORED TO PREVENT ACCESS BY CHILDREN AND OTHER UNAUTHORIZED USERS. CALIFORNIA HAS STRICT LAWS PERTAINING TO FIREARMS, AND YOU MAY BE FINED OR IMPRISONED IF YOU FAIL TO COMPLY WITH THEM. VISIT THE WEB SITE OF THE CALIFORNIA ATTORNEY GENERAL AT HTTPS://OAG.CA.GOV/FIREARMS FOR INFORMATION ON FIREARM LAWS APPLICABLE TO YOU AND HOW YOU CAN COMPLY."

(2) "IF YOU KEEP A LOADED FIREARM WITHIN ANY PREMISES UNDER YOUR CUSTODY OR CONTROL, AND A PERSON UNDER 18 YEARS OF AGE OBTAINS IT AND USES IT, RESULTING IN INJURY OR DEATH, OR CARRIES IT TO A PUBLIC PLACE, YOU MAY BE GUILTY OF A MISDEMEANOR OR A FELONY UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER OR LOCKED THE FIREARM WITH A LOCKING DEVICE, TO KEEP IT FROM TEMPORARILY FUNCTIONING."

(3) "CHILDREN MAY BE UNABLE TO DISTINGUISH FIREARMS FROM TOYS AND MAY OPERATE FIREARMS, CAUSING SEVERE INJURIES OR DEATH. IF YOU KEEP A PISTOL, REVOLVER, OR OTHER FIREARM CAPABLE OF BEING CONCEALED UPON THE PERSON, WITHIN ANY PREMISES UNDER YOUR CUSTODY OR CONTROL, AND A PERSON UNDER 18 YEARS OF AGE GAINS ACCESS TO

Exhibit 6
0119
Provided by LRI History LLC          SB 61 (2019)  Page 89 of 367

THE FIREARM, AND CARRIES IT OFF-PREMISES, YOU MAY BE GUILTY OF A MISDEMEANOR, UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER, OR LOCKED THE FIREARM WITH A LOCKING DEVICE, TO KEEP IT FROM TEMPORARILY FUNCTIONING."

(4) "YOU MAY BE GUILTY OF A MISDEMEANOR, INCLUDING A SIGNIFICANT FINE OR IMPRISONMENT, IF YOU KEEP A FIREARM WHERE A MINOR IS LIKELY TO ACCESS IT OR IF A MINOR OBTAINS AND IMPROPERLY USES IT, OR CARRIES IT OFF OF THE PREMISES TO A SCHOOL OR SCHOOL-SPONSORED EVENT, UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER OR LOCKED THE FIREARM WITH A LOCKING DEVICE."

(5) "IF YOU NEGLIGENTLY STORE OR LEAVE A LOADED FIREARM WITHIN ANY PREMISES UNDER YOUR CUSTODY OR CONTROL, WHERE A PERSON UNDER 18 YEARS OF AGE IS LIKELY TO ACCESS IT, YOU MAY BE GUILTY OF A MISDEMEANOR, INCLUDING A SIGNIFICANT FINE, UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER, OR LOCKED THE FIREARM WITH A LOCKING DEVICE."

(6) "DISCHARGING FIREARMS IN POORLY VENTILATED AREAS, CLEANING FIREARMS, OR HANDLING AMMUNITION MAY RESULT IN EXPOSURE TO LEAD, A SUBSTANCE KNOWN TO CAUSE BIRTH DEFECTS, REPRODUCTIVE HARM, AND OTHER SERIOUS PHYSICAL INJURY. HAVE ADEQUATE VENTILATION AT ALL TIMES. WASH HANDS THOROUGHLY AFTER EXPOSURE."

(7) "FEDERAL REGULATIONS PROVIDE THAT IF YOU DO NOT TAKE PHYSICAL POSSESSION OF THE FIREARM THAT YOU ARE ACQUIRING OWNERSHIP OF WITHIN 30 DAYS AFTER YOU COMPLETE THE INITIAL BACKGROUND CHECK PAPERWORK, THEN YOU HAVE TO GO THROUGH THE BACKGROUND CHECK PROCESS A SECOND TIME IN ORDER TO TAKE PHYSICAL POSSESSION OF THAT FIREARM."

(8) "NO PERSON SHALL MAKE AN APPLICATION TO PURCHASE MORE THAN ONE PISTOL, REVOLVER, OR OTHER FIREARM CAPABLE OF BEING CONCEALED UPON THE PERSON WITHIN ANY 30-DAY PERIOD AND NO

Exhibit 6
0120
Provided by LRI History LLC          SB 61 (2019)  Page 90 of 367

DELIVERY SHALL BE MADE TO ANY PERSON WHO HAS MADE AN APPLICATION TO PURCHASE MORE THAN ONE PISTOL, REVOLVER, OR OTHER FIREARM CAPABLE OF BEING CONCEALED UPON THE PERSON WITHIN ANY 30-DAY PERIOD."

(9) "IF A FIREARM YOU OWN OR POSSESS IS LOST OR STOLEN, YOU MUST REPORT THE LOSS OR THEFT TO A LOCAL LAW ENFORCEMENT AGENCY WHERE THE LOSS OR THEFT OCCURRED WITHIN FIVE DAYS OF THE TIME YOU KNEW OR REASONABLY SHOULD HAVE KNOWN THAT THE FIREARM HAD BEEN LOST OR STOLEN."

(b) This section shall remain in effect only until July 1, 2021, and as of that date is repealed.

SEC. 1.1. Section 26835 of the Penal Code is amended to read:

26835. (a) A licensee shall conspicuously post within the licensed premises the following warnings in block letters not less than one inch in height:

(1) "FIREARMS MUST BE HANDLED RESPONSIBLY AND SECURELY STORED TO PREVENT ACCESS BY CHILDREN AND OTHER UNAUTHORIZED USERS. CALIFORNIA HAS STRICT LAWS PERTAINING TO FIREARMS, AND YOU MAY BE FINED OR IMPRISONED IF YOU FAIL TO COMPLY WITH THEM. VISIT THE WEBSITE OF THE CALIFORNIA ATTORNEY GENERAL AT HTTPS://OAG.CA.GOV/FIREARMS FOR INFORMATION ON FIREARM LAWS APPLICABLE TO YOU AND HOW YOU CAN COMPLY."

(2) "IF YOU KEEP A FIREARM WITHIN ANY PREMISES UNDER YOUR CUSTODY OR CONTROL, AND A PERSON UNDER 18 YEARS OF AGE OBTAINS IT AND USES IT, RESULTING IN INJURY OR DEATH, OR CARRIES IT TO A PUBLIC PLACE, YOU MAY BE GUILTY OF A MISDEMEANOR OR A FELONY UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER OR LOCKED THE FIREARM WITH A LOCKING DEVICE, TO KEEP IT FROM TEMPORARILY FUNCTIONING."

(3) "CHILDREN MAY BE UNABLE TO DISTINGUISH FIREARMS FROM TOYS AND MAY OPERATE FIREARMS, CAUSING SEVERE INJURIES OR DEATH. IF YOU KEEP A FIREARM WITHIN ANY PREMISES UNDER YOUR

Exhibit 6
0121

Provided by LRI History LLC

CUSTODY OR CONTROL, AND A PERSON UNDER 18 YEARS OF AGE GAINS ACCESS TO THE FIREARM, AND CARRIES IT OFF-PREMISES, YOU MAY BE GUILTY OF A MISDEMEANOR, UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER, OR LOCKED THE FIREARM WITH A LOCKING DEVICE, TO KEEP IT FROM TEMPORARILY FUNCTIONING."

(4) "YOU MAY BE GUILTY OF A MISDEMEANOR, INCLUDING A SIGNIFICANT FINE OR IMPRISONMENT, IF YOU KEEP A FIREARM WHERE A MINOR IS LIKELY TO ACCESS IT OR IF A MINOR OBTAINS AND IMPROPERLY USES IT, OR CARRIES IT OFF OF THE PREMISES TO A SCHOOL OR SCHOOL-SPONSORED EVENT, UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER OR LOCKED THE FIREARM WITH A LOCKING DEVICE."

(5) "IF YOU NEGLIGENTLY STORE OR LEAVE A FIREARM WITHIN ANY PREMISES UNDER YOUR CUSTODY OR CONTROL, WHERE A PERSON UNDER 18 YEARS OF AGE IS LIKELY TO ACCESS IT, YOU MAY BE GUILTY OF A MISDEMEANOR, INCLUDING A SIGNIFICANT FINE, UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER, OR LOCKED THE FIREARM WITH A LOCKING DEVICE."

(6) "DISCHARGING FIREARMS IN POORLY VENTILATED AREAS, CLEANING FIREARMS, OR HANDLING AMMUNITION MAY RESULT IN EXPOSURE TO LEAD, A SUBSTANCE KNOWN TO CAUSE BIRTH DEFECTS, REPRODUCTIVE HARM, AND OTHER SERIOUS PHYSICAL INJURY. HAVE ADEQUATE VENTILATION AT ALL TIMES. WASH HANDS THOROUGHLY AFTER EXPOSURE."

(7) "FEDERAL REGULATIONS PROVIDE THAT IF YOU DO NOT TAKE PHYSICAL POSSESSION OF THE FIREARM THAT YOU ARE ACQUIRING OWNERSHIP OF WITHIN 30 DAYS AFTER YOU COMPLETE THE INITIAL BACKGROUND CHECK PAPERWORK, THEN YOU HAVE TO GO THROUGH THE BACKGROUND CHECK PROCESS A SECOND TIME IN ORDER TO TAKE PHYSICAL POSSESSION OF THAT FIREARM."

(8) "NO PERSON SHALL MAKE AN APPLICATION TO PURCHASE MORE THAN ONE PISTOL, REVOLVER, OR

**Exhibit 6**
**0122**
Provided by LRI History LLC        **SB 61 (2019)  Page 92 of 367**

OTHER FIREARM CAPABLE OF BEING CONCEALED UPON THE PERSON WITHIN ANY 30-DAY PERIOD AND NO DELIVERY SHALL BE MADE TO ANY PERSON WHO HAS MADE AN APPLICATION TO PURCHASE MORE THAN ONE PISTOL, REVOLVER, OR OTHER FIREARM CAPABLE OF BEING CONCEALED UPON THE PERSON WITHIN ANY 30-DAY PERIOD."

(9) "IF A FIREARM YOU OWN OR POSSESS IS LOST OR STOLEN, YOU MUST REPORT THE LOSS OR THEFT TO A LOCAL LAW ENFORCEMENT AGENCY WHERE THE LOSS OR THEFT OCCURRED WITHIN FIVE DAYS OF THE TIME YOU KNEW OR REASONABLY SHOULD HAVE KNOWN THAT THE FIREARM HAD BEEN LOST OR STOLEN."

(b) This section shall remain in effect only until July 1, 2021, and as of that date is repealed.

SEC. 1.2. Section 26835 of the Penal Code is amended to read:

26835. (a) A licensee shall post conspicuously within the licensed premises the following warnings in block letters not less than one inch in height:

(1) "FIREARMS MUST BE HANDLED RESPONSIBLY AND SECURELY STORED TO PREVENT ACCESS BY CHILDREN AND OTHER UNAUTHORIZED USERS. CALIFORNIA HAS STRICT LAWS PERTAINING TO FIREARMS, AND YOU MAY BE FINED OR IMPRISONED IF YOU FAIL TO COMPLY WITH THEM. VISIT THE WEB SITE OF THE CALIFORNIA A T T O R N E Y    G E N E R A L    A T HTTPS://OAG.CA.GOV/FIREARMS FOR INFORMATION ON FIREARM LAWS APPLICABLE TO YOU AND HOW YOU CAN COMPLY."

(2) "IF YOU KEEP A LOADED FIREARM WITHIN ANY PREMISES UNDER YOUR CUSTODY OR CONTROL, AND A PERSON UNDER 18 YEARS OF AGE OBTAINS IT AND USES IT, RESULTING IN INJURY OR DEATH, OR CARRIES IT TO A PUBLIC PLACE, YOU MAY BE GUILTY OF A MISDEMEANOR OR A FELONY UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER OR LOCKED THE FIREARM WITH A LOCKING DEVICE, TO KEEP IT FROM TEMPORARILY FUNCTIONING."

(3) "CHILDREN MAY BE UNABLE TO DISTINGUISH FIREARMS FROM TOYS AND MAY OPERATE FIREARMS,

**Exhibit 6**
**0123**
**Provided by LRI History LLC**          **SB 61 (2019)  Page 93 of 367**

CAUSING SEVERE INJURIES OR DEATH. IF YOU KEEP A PISTOL, REVOLVER, OR OTHER FIREARM CAPABLE OF BEING CONCEALED UPON THE PERSON, WITHIN ANY PREMISES UNDER YOUR CUSTODY OR CONTROL, AND A PERSON UNDER 18 YEARS OF AGE GAINS ACCESS TO THE FIREARM, AND CARRIES IT OFF-PREMISES, YOU MAY BE GUILTY OF A MISDEMEANOR, UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER, OR LOCKED THE FIREARM WITH A LOCKING DEVICE, TO KEEP IT FROM TEMPORARILY FUNCTIONING."

(4) "YOU MAY BE GUILTY OF A MISDEMEANOR, INCLUDING A SIGNIFICANT FINE OR IMPRISONMENT, IF YOU KEEP A FIREARM WHERE A MINOR IS LIKELY TO ACCESS IT OR IF A MINOR OBTAINS AND IMPROPERLY USES IT, OR CARRIES IT OFF OF THE PREMISES TO A SCHOOL OR SCHOOL-SPONSORED EVENT, UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER OR LOCKED THE FIREARM WITH A LOCKING DEVICE."

(5) "IF YOU NEGLIGENTLY STORE OR LEAVE A LOADED FIREARM WITHIN ANY PREMISES UNDER YOUR CUSTODY OR CONTROL, WHERE A PERSON UNDER 18 YEARS OF AGE IS LIKELY TO ACCESS IT, YOU MAY BE GUILTY OF A MISDEMEANOR, INCLUDING A SIGNIFICANT FINE, UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER, OR LOCKED THE FIREARM WITH A LOCKING DEVICE."

(6) "DISCHARGING FIREARMS IN POORLY VENTILATED AREAS, CLEANING FIREARMS, OR HANDLING AMMUNITION MAY RESULT IN EXPOSURE TO LEAD, A SUBSTANCE KNOWN TO CAUSE BIRTH DEFECTS, REPRODUCTIVE HARM, AND OTHER SERIOUS PHYSICAL INJURY. HAVE ADEQUATE VENTILATION AT ALL TIMES. WASH HANDS THOROUGHLY AFTER EXPOSURE."

(7) "FEDERAL REGULATIONS PROVIDE THAT IF YOU DO NOT TAKE PHYSICAL POSSESSION OF THE FIREARM THAT YOU ARE ACQUIRING OWNERSHIP OF WITHIN 30 DAYS AFTER YOU COMPLETE THE INITIAL BACKGROUND CHECK PAPERWORK, THEN YOU HAVE TO GO THROUGH THE BACKGROUND CHECK PROCESS

**Exhibit 6**
0124
**Provided by LRI History LLC**　　　　　**SB 61 (2019) Page 94 of 367**

A SECOND TIME IN ORDER TO TAKE PHYSICAL POSSESSION OF THAT FIREARM."

(8) "NO PERSON SHALL MAKE AN APPLICATION TO PURCHASE MORE THAN ONE PISTOL, REVOLVER, OR OTHER FIREARM CAPABLE OF BEING CONCEALED UPON THE PERSON WITHIN ANY 30-DAY PERIOD AND NO DELIVERY SHALL BE MADE TO ANY PERSON WHO HAS MADE AN APPLICATION TO PURCHASE MORE THAN ONE PISTOL, REVOLVER, OR OTHER FIREARM CAPABLE OF BEING CONCEALED UPON THE PERSON WITHIN ANY 30-DAY PERIOD."

(9) "IF A FIREARM YOU OWN OR POSSESS IS LOST OR STOLEN, YOU MUST REPORT THE LOSS OR THEFT TO A LOCAL LAW ENFORCEMENT AGENCY WHERE THE LOSS OR THEFT OCCURRED WITHIN FIVE DAYS OF THE TIME YOU KNEW OR REASONABLY SHOULD HAVE KNOWN THAT THE FIREARM HAD BEEN LOST OR STOLEN."

(b) This section shall remain in effect only until June 1, 2020, and as of that date is repealed.

SEC. 1.3. Section 26835 of the Penal Code is amended to read:

26835. (a) A licensee shall conspicuously post within the licensed premises the following warnings in block letters not less than one inch in height:

(1) "FIREARMS MUST BE HANDLED RESPONSIBLY AND SECURELY STORED TO PREVENT ACCESS BY CHILDREN AND OTHER UNAUTHORIZED USERS. CALIFORNIA HAS STRICT LAWS PERTAINING TO FIREARMS, AND YOU MAY BE FINED OR IMPRISONED IF YOU FAIL TO COMPLY WITH THEM. VISIT THE WEBSITE OF THE CALIFORNIA ATTORNEY GENERAL AT HTTPS://OAG.CA.GOV/FIREARMS FOR INFORMATION ON FIREARM LAWS APPLICABLE TO YOU AND HOW YOU CAN COMPLY."

(2) "IF YOU KEEP A FIREARM WITHIN ANY PREMISES UNDER YOUR CUSTODY OR CONTROL, AND A PERSON UNDER 18 YEARS OF AGE OBTAINS IT AND USES IT, RESULTING IN INJURY OR DEATH, OR CARRIES IT TO A PUBLIC PLACE, YOU MAY BE GUILTY OF A MISDEMEANOR OR A FELONY UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER OR LOCKED

Exhibit 6
0125
Provided by LRI History LLC

THE FIREARM WITH A LOCKING DEVICE, TO KEEP IT FROM TEMPORARILY FUNCTIONING."

(3) "CHILDREN MAY BE UNABLE TO DISTINGUISH FIREARMS FROM TOYS AND MAY OPERATE FIREARMS, CAUSING SEVERE INJURIES OR DEATH. IF YOU KEEP A FIREARM WITHIN ANY PREMISES UNDER YOUR CUSTODY OR CONTROL, AND A PERSON UNDER 18 YEARS OF AGE GAINS ACCESS TO THE FIREARM, AND CARRIES IT OFF-PREMISES, YOU MAY BE GUILTY OF A MISDEMEANOR, UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER, OR LOCKED THE FIREARM WITH A LOCKING DEVICE, TO KEEP IT FROM TEMPORARILY FUNCTIONING."

(4) "YOU MAY BE GUILTY OF A MISDEMEANOR, INCLUDING A SIGNIFICANT FINE OR IMPRISONMENT, IF YOU KEEP A FIREARM WHERE A MINOR IS LIKELY TO ACCESS IT OR IF A MINOR OBTAINS AND IMPROPERLY USES IT, OR CARRIES IT OFF OF THE PREMISES TO A SCHOOL OR SCHOOL-SPONSORED EVENT, UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER OR LOCKED THE FIREARM WITH A LOCKING DEVICE."

(5) "IF YOU NEGLIGENTLY STORE OR LEAVE A FIREARM WITHIN ANY PREMISES UNDER YOUR CUSTODY OR CONTROL, WHERE A PERSON UNDER 18 YEARS OF AGE IS LIKELY TO ACCESS IT, YOU MAY BE GUILTY OF A MISDEMEANOR, INCLUDING A SIGNIFICANT FINE, UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER, OR LOCKED THE FIREARM WITH A LOCKING DEVICE."

(6) "DISCHARGING FIREARMS IN POORLY VENTILATED AREAS, CLEANING FIREARMS, OR HANDLING AMMUNITION MAY RESULT IN EXPOSURE TO LEAD, A SUBSTANCE KNOWN TO CAUSE BIRTH DEFECTS, REPRODUCTIVE HARM, AND OTHER SERIOUS PHYSICAL INJURY. HAVE ADEQUATE VENTILATION AT ALL TIMES. WASH HANDS THOROUGHLY AFTER EXPOSURE."

(7) "FEDERAL REGULATIONS PROVIDE THAT IF YOU DO NOT TAKE PHYSICAL POSSESSION OF THE FIREARM THAT YOU ARE ACQUIRING OWNERSHIP OF WITHIN 30 DAYS AFTER YOU COMPLETE THE INITIAL

Exhibit 6
0126
Provided by LRI History LLC

BACKGROUND CHECK PAPERWORK, THEN YOU HAVE TO GO THROUGH THE BACKGROUND CHECK PROCESS A SECOND TIME IN ORDER TO TAKE PHYSICAL POSSESSION OF THAT FIREARM."

(8) "NO PERSON SHALL MAKE AN APPLICATION TO PURCHASE MORE THAN ONE PISTOL, REVOLVER, OR OTHER FIREARM CAPABLE OF BEING CONCEALED UPON THE PERSON WITHIN ANY 30-DAY PERIOD AND NO DELIVERY SHALL BE MADE TO ANY PERSON WHO HAS MADE AN APPLICATION TO PURCHASE MORE THAN ONE PISTOL, REVOLVER, OR OTHER FIREARM CAPABLE OF BEING CONCEALED UPON THE PERSON WITHIN ANY 30-DAY PERIOD."

(9) "IF A FIREARM YOU OWN OR POSSESS IS LOST OR STOLEN, YOU MUST REPORT THE LOSS OR THEFT TO A LOCAL LAW ENFORCEMENT AGENCY WHERE THE LOSS OR THEFT OCCURRED WITHIN FIVE DAYS OF THE TIME YOU KNEW OR REASONABLY SHOULD HAVE KNOWN THAT THE FIREARM HAD BEEN LOST OR STOLEN."

(b) This section shall remain in effect only until June 1, 2020, and as of that date is repealed.

SEC. 2. Section 26835 is added to the Penal Code, to read:

26835. (a) A licensee shall conspicuously post within the licensed premises the following warnings in block letters not less than one inch in height:

(1) "FIREARMS MUST BE HANDLED RESPONSIBLY AND SECURELY STORED TO PREVENT ACCESS BY CHILDREN AND OTHER UNAUTHORIZED USERS. CALIFORNIA HAS STRICT LAWS PERTAINING TO FIREARMS, AND YOU MAY BE FINED OR IMPRISONED IF YOU FAIL TO COMPLY WITH THEM. VISIT THE INTERNET WEBSITE OF THE CALIFORNIA ATTORNEY GENERAL AT HTTPS://OAG.CA.GOV/FIREARMS FOR INFORMATION ON FIREARM LAWS APPLICABLE TO YOU AND HOW YOU CAN COMPLY."

(2) "IF YOU KEEP A LOADED FIREARM WITHIN ANY PREMISES UNDER YOUR CUSTODY OR CONTROL, AND A PERSON UNDER 18 YEARS OF AGE OBTAINS IT AND USES IT, RESULTING IN INJURY OR DEATH, OR CARRIES IT TO A PUBLIC PLACE, YOU MAY BE GUILTY OF A

Exhibit 6
0127
Provided by LRI History LLC
SB 61 (2019) Page 97 of 367

MISDEMEANOR OR A FELONY UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER OR LOCKED THE FIREARM WITH A LOCKING DEVICE, TO KEEP IT FROM TEMPORARILY FUNCTIONING."

(3) "CHILDREN MAY BE UNABLE TO DISTINGUISH FIREARMS FROM TOYS AND MAY OPERATE FIREARMS, CAUSING SEVERE INJURIES OR DEATH. IF YOU KEEP A PISTOL, REVOLVER, OR OTHER FIREARM CAPABLE OF BEING CONCEALED UPON THE PERSON, WITHIN ANY PREMISES UNDER YOUR CUSTODY OR CONTROL, AND A PERSON UNDER 18 YEARS OF AGE GAINS ACCESS TO THE FIREARM, AND CARRIES IT OFF-PREMISES, YOU MAY BE GUILTY OF A MISDEMEANOR, UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER, OR LOCKED THE FIREARM WITH A LOCKING DEVICE, TO KEEP IT FROM TEMPORARILY FUNCTIONING."

(4) "YOU MAY BE GUILTY OF A MISDEMEANOR, INCLUDING A SIGNIFICANT FINE OR IMPRISONMENT, IF YOU KEEP A FIREARM WHERE A MINOR IS LIKELY TO ACCESS IT OR IF A MINOR OBTAINS AND IMPROPERLY USES IT, OR CARRIES IT OFF OF THE PREMISES TO A SCHOOL OR SCHOOL-SPONSORED EVENT, UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER OR LOCKED THE FIREARM WITH A LOCKING DEVICE."

(5) "IF YOU NEGLIGENTLY STORE OR LEAVE A LOADED FIREARM WITHIN ANY PREMISES UNDER YOUR CUSTODY OR CONTROL, WHERE A PERSON UNDER 18 YEARS OF AGE IS LIKELY TO ACCESS IT, YOU MAY BE GUILTY OF A MISDEMEANOR, INCLUDING A SIGNIFICANT FINE, UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER, OR LOCKED THE FIREARM WITH A LOCKING DEVICE."

(6) "DISCHARGING FIREARMS IN POORLY VENTILATED AREAS, CLEANING FIREARMS, OR HANDLING AMMUNITION MAY RESULT IN EXPOSURE TO LEAD, A SUBSTANCE KNOWN TO CAUSE BIRTH DEFECTS, REPRODUCTIVE HARM, AND OTHER SERIOUS PHYSICAL INJURY. HAVE ADEQUATE VENTILATION AT ALL TIMES. WASH HANDS THOROUGHLY AFTER EXPOSURE."

Exhibit 6
0128
Provided by LRI History LLC
SB 61 (2019) Page 98 of 367

(7) "FEDERAL REGULATIONS PROVIDE THAT IF YOU DO NOT TAKE PHYSICAL POSSESSION OF THE FIREARM THAT YOU ARE ACQUIRING OWNERSHIP OF WITHIN 30 DAYS AFTER YOU COMPLETE THE INITIAL BACKGROUND CHECK PAPERWORK, YOU HAVE TO GO THROUGH THE BACKGROUND CHECK PROCESS A SECOND TIME IN ORDER TO TAKE PHYSICAL POSSESSION OF THAT FIREARM."

(8) "NO PERSON SHALL MAKE AN APPLICATION TO PURCHASE MORE THAN ONE HANDGUN OR SEMIAUTOMATIC CENTERFIRE RIFLE WITHIN ANY 30-DAY PERIOD AND NO DELIVERY SHALL BE MADE TO ANY PERSON WHO HAS MADE AN APPLICATION TO PURCHASE MORE THAN ONE HANDGUN OR SEMIAUTOMATIC CENTERFIRE RIFLE WITHIN ANY 30-DAY PERIOD."

(9) "IF A FIREARM YOU OWN OR POSSESS IS LOST OR STOLEN, YOU MUST REPORT THE LOSS OR THEFT TO A LOCAL LAW ENFORCEMENT AGENCY WHERE THE LOSS OR THEFT OCCURRED WITHIN FIVE DAYS OF THE TIME YOU KNEW OR REASONABLY SHOULD HAVE KNOWN THAT THE FIREARM HAD BEEN LOST OR STOLEN."

(b)  This section shall become operative on July 1, 2021.

SEC. 2.1.  Section 26835 is added to the Penal Code, to read:

26835.  (a) A licensee shall conspicuously post within the licensed premises the following warnings in block letters not less than one inch in height:

(1) "FIREARMS MUST BE HANDLED RESPONSIBLY AND SECURELY STORED TO PREVENT ACCESS BY CHILDREN AND OTHER UNAUTHORIZED USERS. CALIFORNIA HAS STRICT LAWS PERTAINING TO FIREARMS, AND YOU MAY BE FINED OR IMPRISONED IF YOU FAIL TO COMPLY WITH THEM. VISIT THE INTERNET WEBSITE OF THE CALIFORNIA ATTORNEY GENERAL AT HTTPS://OAG.CA.GOV/FIREARMS FOR INFORMATION ON FIREARM LAWS APPLICABLE TO YOU AND HOW YOU CAN COMPLY."

(2) "IF YOU KEEP A FIREARM WITHIN ANY PREMISES UNDER YOUR CUSTODY OR CONTROL, AND A PERSON UNDER 18 YEARS OF AGE OBTAINS IT AND USES IT,

Exhibit 6
0129
Provided by LRI History LLC          SB 61 (2019)  Page 99 of 367

RESULTING IN INJURY OR DEATH, OR CARRIES IT TO A PUBLIC PLACE, YOU MAY BE GUILTY OF A MISDEMEANOR OR A FELONY UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER OR LOCKED THE FIREARM WITH A LOCKING DEVICE, TO KEEP IT FROM TEMPORARILY FUNCTIONING."

(3) "CHILDREN MAY BE UNABLE TO DISTINGUISH FIREARMS FROM TOYS AND MAY OPERATE FIREARMS, CAUSING SEVERE INJURIES OR DEATH. IF YOU KEEP A FIREARM WITHIN ANY PREMISES UNDER YOUR CUSTODY OR CONTROL, AND A PERSON UNDER 18 YEARS OF AGE GAINS ACCESS TO THE FIREARM, AND CARRIES IT OFF-PREMISES, YOU MAY BE GUILTY OF A MISDEMEANOR, UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER, OR LOCKED THE FIREARM WITH A LOCKING DEVICE, TO KEEP IT FROM TEMPORARILY FUNCTIONING."

(4) "YOU MAY BE GUILTY OF A MISDEMEANOR, INCLUDING A SIGNIFICANT FINE OR IMPRISONMENT, IF YOU KEEP A FIREARM WHERE A MINOR IS LIKELY TO ACCESS IT OR IF A MINOR OBTAINS AND IMPROPERLY USES IT, OR CARRIES IT OFF OF THE PREMISES TO A SCHOOL OR SCHOOL-SPONSORED EVENT, UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER OR LOCKED THE FIREARM WITH A LOCKING DEVICE."

(5) "IF YOU NEGLIGENTLY STORE OR LEAVE A FIREARM WITHIN ANY PREMISES UNDER YOUR CUSTODY OR CONTROL, WHERE A PERSON UNDER 18 YEARS OF AGE IS LIKELY TO ACCESS IT, YOU MAY BE GUILTY OF A MISDEMEANOR, INCLUDING A SIGNIFICANT FINE, UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER, OR LOCKED THE FIREARM WITH A LOCKING DEVICE."

(6) "DISCHARGING FIREARMS IN POORLY VENTILATED AREAS, CLEANING FIREARMS, OR HANDLING AMMUNITION MAY RESULT IN EXPOSURE TO LEAD, A SUBSTANCE KNOWN TO CAUSE BIRTH DEFECTS, REPRODUCTIVE HARM, AND OTHER SERIOUS PHYSICAL INJURY. HAVE ADEQUATE VENTILATION AT ALL TIMES. WASH HANDS THOROUGHLY AFTER EXPOSURE."

Exhibit 6
0130
Provided by LRI History LLC          SB 61 (2019) Page 100 of 367

(7) "FEDERAL REGULATIONS PROVIDE THAT IF YOU DO NOT TAKE PHYSICAL POSSESSION OF THE FIREARM THAT YOU ARE ACQUIRING OWNERSHIP OF WITHIN 30 DAYS AFTER YOU COMPLETE THE INITIAL BACKGROUND CHECK PAPERWORK, THEN YOU HAVE TO GO THROUGH THE BACKGROUND CHECK PROCESS A SECOND TIME IN ORDER TO TAKE PHYSICAL POSSESSION OF THAT FIREARM."

(8) "NO PERSON SHALL MAKE AN APPLICATION TO PURCHASE MORE THAN ONE HANDGUN OR SEMIAUTOMATIC CENTERFIRE RIFLE WITHIN ANY 30-DAY PERIOD AND NO DELIVERY SHALL BE MADE TO ANY PERSON WHO HAS MADE AN APPLICATION TO PURCHASE MORE THAN ONE HANDGUN OR SEMIAUTOMATIC CENTERFIRE RIFLE WITHIN ANY 30-DAY PERIOD."

(9) "IF A FIREARM YOU OWN OR POSSESS IS LOST OR STOLEN, YOU MUST REPORT THE LOSS OR THEFT TO A LOCAL LAW ENFORCEMENT AGENCY WHERE THE LOSS OR THEFT OCCURRED WITHIN FIVE DAYS OF THE TIME YOU KNEW OR REASONABLY SHOULD HAVE KNOWN THAT THE FIREARM HAD BEEN LOST OR STOLEN."

(b)  This section shall become operative on July 1, 2021.

SEC. 2.2.  Section 26835 is added to the Penal Code, to read:

26835.  (a) A licensee shall conspicuously post within the licensed premises the following warnings in block letters not less than one inch in height:

(1) "FIREARMS MUST BE HANDLED RESPONSIBLY AND SECURELY STORED TO PREVENT ACCESS BY CHILDREN AND OTHER UNAUTHORIZED USERS. CALIFORNIA HAS STRICT LAWS PERTAINING TO FIREARMS, AND YOU MAY BE FINED OR IMPRISONED IF YOU FAIL TO COMPLY WITH THEM. VISIT THE INTERNET WEBSITE OF THE CALIFORNIA ATTORNEY GENERAL AT HTTPS://OAG.CA.GOV/FIREARMS FOR INFORMATION ON FIREARM LAWS APPLICABLE TO YOU AND HOW YOU CAN COMPLY."

(2) "IF YOU KEEP A LOADED FIREARM WITHIN ANY PREMISES UNDER YOUR CUSTODY OR CONTROL, AND A PERSON UNDER 18 YEARS OF AGE OBTAINS IT AND

**Exhibit 6**
0131
**Provided by LRI History LLC**                    **SB 61 (2019)  Page 101 of 367**

USES IT, RESULTING IN INJURY OR DEATH, OR CARRIES IT TO A PUBLIC PLACE, YOU MAY BE GUILTY OF A MISDEMEANOR OR A FELONY UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER OR LOCKED THE FIREARM WITH A LOCKING DEVICE TO KEEP IT FROM TEMPORARILY FUNCTIONING."

(3) "CHILDREN MAY BE UNABLE TO DISTINGUISH FIREARMS FROM TOYS AND MAY OPERATE FIREARMS, CAUSING SEVERE INJURIES OR DEATH. IF YOU KEEP A PISTOL, REVOLVER, OR OTHER FIREARM CAPABLE OF BEING CONCEALED UPON THE PERSON, WITHIN ANY PREMISES UNDER YOUR CUSTODY OR CONTROL, AND A PERSON UNDER 18 YEARS OF AGE GAINS ACCESS TO THE FIREARM AND CARRIES IT OFF-PREMISES, YOU MAY BE GUILTY OF A MISDEMEANOR, UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER, OR LOCKED THE FIREARM WITH A LOCKING DEVICE TO KEEP IT FROM TEMPORARILY FUNCTIONING."

(4) "YOU MAY BE GUILTY OF A MISDEMEANOR, INCLUDING A SIGNIFICANT FINE OR IMPRISONMENT, IF YOU KEEP A FIREARM WHERE A MINOR IS LIKELY TO ACCESS IT OR IF A MINOR OBTAINS AND IMPROPERLY USES IT, OR CARRIES IT OFF OF THE PREMISES TO A SCHOOL OR SCHOOL-SPONSORED EVENT, UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER OR LOCKED THE FIREARM WITH A LOCKING DEVICE."

(5) "IF YOU NEGLIGENTLY STORE OR LEAVE A LOADED FIREARM WITHIN ANY PREMISES UNDER YOUR CUSTODY OR CONTROL WHERE A PERSON UNDER 18 YEARS OF AGE IS LIKELY TO ACCESS IT, YOU MAY BE GUILTY OF A MISDEMEANOR, INCLUDING A SIGNIFICANT FINE, UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER OR LOCKED THE FIREARM WITH A LOCKING DEVICE."

(6) "DISCHARGING FIREARMS IN POORLY VENTILATED AREAS, CLEANING FIREARMS, OR HANDLING AMMUNITION MAY RESULT IN EXPOSURE TO LEAD, A SUBSTANCE KNOWN TO CAUSE BIRTH DEFECTS, REPRODUCTIVE HARM, AND OTHER SERIOUS PHYSICAL

Exhibit 6
0132
Provided by LRI History LLC

INJURY. HAVE ADEQUATE VENTILATION AT ALL TIMES. WASH HANDS THOROUGHLY AFTER EXPOSURE."

(7) "FEDERAL REGULATIONS PROVIDE THAT IF YOU DO NOT TAKE PHYSICAL POSSESSION OF THE FIREARM THAT YOU ARE ACQUIRING OWNERSHIP OF WITHIN 30 DAYS AFTER YOU COMPLETE THE INITIAL BACKGROUND CHECK PAPERWORK, THEN YOU HAVE TO GO THROUGH THE BACKGROUND CHECK PROCESS A SECOND TIME IN ORDER TO TAKE PHYSICAL POSSESSION OF THAT FIREARM."

(8) "NO PERSON SHALL MAKE AN APPLICATION TO PURCHASE MORE THAN ONE PISTOL, REVOLVER, OR OTHER FIREARM CAPABLE OF BEING CONCEALED UPON THE PERSON WITHIN ANY 30-DAY PERIOD AND NO DELIVERY SHALL BE MADE TO ANY PERSON WHO HAS MADE AN APPLICATION TO PURCHASE MORE THAN ONE PISTOL, REVOLVER, OR OTHER FIREARM CAPABLE OF BEING CONCEALED UPON THE PERSON WITHIN ANY 30-DAY PERIOD."

(9) "IF A FIREARM YOU OWN OR POSSESS IS LOST OR STOLEN, YOU MUST REPORT THE LOSS OR THEFT TO A LOCAL LAW ENFORCEMENT AGENCY WHERE THE LOSS OR THEFT OCCURRED WITHIN FIVE DAYS OF THE TIME YOU KNEW OR REASONABLY SHOULD HAVE KNOWN THAT THE FIREARM HAD BEEN LOST OR STOLEN."

(b) In addition to the notice required by subdivision (a), a licensee shall post conspicuously within the licensed premises, in block letters not less than one inch in height, an additional notice, including, but not limited to, a notice provided by a suicide prevention program, containing the following statement:

"IF YOU OR SOMEONE YOU KNOW IS CONTEMPLATING SUICIDE, PLEASE CALL THE NATIONAL SUICIDE PREVENTION LIFELINE AT 1-800-273-TALK (8255)."

(c) This section shall become operative on June 1, 2020.

(d) This section shall remain in effect only until July 1, 2021, and as of that date is repealed.

SEC. 2.3. Section 26835 is added to the Penal Code, to read:

26835. (a) A licensee shall conspicuously post within the licensed premises the following warnings in block letters not less than one inch in height:

Exhibit 6
0133
Provided by LRI History LLC          SB 61 (2019)  Page 103 of 367

(1) "FIREARMS MUST BE HANDLED RESPONSIBLY AND SECURELY STORED TO PREVENT ACCESS BY CHILDREN AND OTHER UNAUTHORIZED USERS. CALIFORNIA HAS STRICT LAWS PERTAINING TO FIREARMS, AND YOU MAY BE FINED OR IMPRISONED IF YOU FAIL TO COMPLY WITH THEM. VISIT THE INTERNET WEBSITE OF THE CALIFORNIA ATTORNEY GENERAL AT HTTPS://OAG.CA.GOV/FIREARMS FOR INFORMATION ON FIREARM LAWS APPLICABLE TO YOU AND HOW YOU CAN COMPLY."

(2) "IF YOU KEEP A LOADED FIREARM WITHIN ANY PREMISES UNDER YOUR CUSTODY OR CONTROL, AND A PERSON UNDER 18 YEARS OF AGE OBTAINS IT AND USES IT, RESULTING IN INJURY OR DEATH, OR CARRIES IT TO A PUBLIC PLACE, YOU MAY BE GUILTY OF A MISDEMEANOR OR A FELONY UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER OR LOCKED THE FIREARM WITH A LOCKING DEVICE TO KEEP IT FROM TEMPORARILY FUNCTIONING."

(3) "CHILDREN MAY BE UNABLE TO DISTINGUISH FIREARMS FROM TOYS AND MAY OPERATE FIREARMS, CAUSING SEVERE INJURIES OR DEATH. IF YOU KEEP A PISTOL, REVOLVER, OR OTHER FIREARM CAPABLE OF BEING CONCEALED UPON THE PERSON, WITHIN ANY PREMISES UNDER YOUR CUSTODY OR CONTROL, AND A PERSON UNDER 18 YEARS OF AGE GAINS ACCESS TO THE FIREARM AND CARRIES IT OFF-PREMISES, YOU MAY BE GUILTY OF A MISDEMEANOR, UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER, OR LOCKED THE FIREARM WITH A LOCKING DEVICE TO KEEP IT FROM TEMPORARILY FUNCTIONING."

(4) "YOU MAY BE GUILTY OF A MISDEMEANOR, INCLUDING A SIGNIFICANT FINE OR IMPRISONMENT, IF YOU KEEP A FIREARM WHERE A MINOR IS LIKELY TO ACCESS IT OR IF A MINOR OBTAINS AND IMPROPERLY USES IT, OR CARRIES IT OFF OF THE PREMISES TO A SCHOOL OR SCHOOL-SPONSORED EVENT, UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER OR LOCKED THE FIREARM WITH A LOCKING DEVICE."

**Exhibit 6**
0134
**Provided by LRI History LLC**   **SB 61 (2019) Page 104 of 367**

(5) "IF YOU NEGLIGENTLY STORE OR LEAVE A LOADED FIREARM WITHIN ANY PREMISES UNDER YOUR CUSTODY OR CONTROL WHERE A PERSON UNDER 18 YEARS OF AGE IS LIKELY TO ACCESS IT, YOU MAY BE GUILTY OF A MISDEMEANOR, INCLUDING A SIGNIFICANT FINE, UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER OR LOCKED THE FIREARM WITH A LOCKING DEVICE."

(6) "DISCHARGING FIREARMS IN POORLY VENTILATED AREAS, CLEANING FIREARMS, OR HANDLING AMMUNITION MAY RESULT IN EXPOSURE TO LEAD, A SUBSTANCE KNOWN TO CAUSE BIRTH DEFECTS, REPRODUCTIVE HARM, AND OTHER SERIOUS PHYSICAL INJURY. HAVE ADEQUATE VENTILATION AT ALL TIMES. WASH HANDS THOROUGHLY AFTER EXPOSURE."

(7) "FEDERAL REGULATIONS PROVIDE THAT IF YOU DO NOT TAKE PHYSICAL POSSESSION OF THE FIREARM THAT YOU ARE ACQUIRING OWNERSHIP OF WITHIN 30 DAYS AFTER YOU COMPLETE THE INITIAL BACKGROUND CHECK PAPERWORK, THEN YOU HAVE TO GO THROUGH THE BACKGROUND CHECK PROCESS A SECOND TIME IN ORDER TO TAKE PHYSICAL POSSESSION OF THAT FIREARM."

(8) "NO PERSON SHALL MAKE AN APPLICATION TO PURCHASE MORE THAN ONE HANDGUN OR SEMIAUTOMATIC CENTERFIRE RIFLE WITHIN ANY 30-DAY PERIOD AND NO DELIVERY SHALL BE MADE TO ANY PERSON WHO HAS MADE AN APPLICATION TO PURCHASE MORE THAN ONE HANDGUN OR SEMIAUTOMATIC CENTERFIRE RIFLE WITHIN ANY 30-DAY PERIOD."

(9) "IF A FIREARM YOU OWN OR POSSESS IS LOST OR STOLEN, YOU MUST REPORT THE LOSS OR THEFT TO A LOCAL LAW ENFORCEMENT AGENCY WHERE THE LOSS OR THEFT OCCURRED WITHIN FIVE DAYS OF THE TIME YOU KNEW OR REASONABLY SHOULD HAVE KNOWN THAT THE FIREARM HAD BEEN LOST OR STOLEN."

(b) In addition to the notice required by subdivision (a), a licensee shall post conspicuously within the licensed premises, in block letters not less than one inch in height, an additional notice,

Exhibit 6
0135
Provided by LRI History LLC          SB 61 (2019)  Page 105 of 367

including, but not limited to, a notice provided by a suicide prevention program, containing the following statement:

"IF YOU OR SOMEONE YOU KNOW IS CONTEMPLATING SUICIDE, PLEASE CALL THE NATIONAL SUICIDE PREVENTION LIFELINE AT 1-800-273-TALK (8255)."

(c) This section shall become operative on July 1, 2021.

SEC. 2.4.  Section 26835 is added to the Penal Code, to read:

26835.  (a) A licensee shall conspicuously post within the licensed premises the following warnings in block letters not less than one inch in height:

(1) "FIREARMS MUST BE HANDLED RESPONSIBLY AND SECURELY STORED TO PREVENT ACCESS BY CHILDREN AND OTHER UNAUTHORIZED USERS. CALIFORNIA HAS STRICT LAWS PERTAINING TO FIREARMS, AND YOU MAY BE FINED OR IMPRISONED IF YOU FAIL TO COMPLY WITH THEM. VISIT THE INTERNET WEBSITE OF THE CALIFORNIA ATTORNEY GENERAL AT HTTPS://OAG.CA.GOV/FIREARMS FOR INFORMATION ON FIREARM LAWS APPLICABLE TO YOU AND HOW YOU CAN COMPLY."

(2) "IF YOU KEEP A FIREARM WITHIN ANY PREMISES UNDER YOUR CUSTODY OR CONTROL, AND A PERSON UNDER 18 YEARS OF AGE OBTAINS IT AND USES IT, RESULTING IN INJURY OR DEATH, OR CARRIES IT TO A PUBLIC PLACE, YOU MAY BE GUILTY OF A MISDEMEANOR OR A FELONY UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER OR LOCKED THE FIREARM WITH A LOCKING DEVICE, TO KEEP IT FROM TEMPORARILY FUNCTIONING."

(3) "CHILDREN MAY BE UNABLE TO DISTINGUISH FIREARMS FROM TOYS AND MAY OPERATE FIREARMS, CAUSING SEVERE INJURIES OR DEATH. IF YOU KEEP A FIREARM WITHIN ANY PREMISES UNDER YOUR CUSTODY OR CONTROL, AND A PERSON UNDER 18 YEARS OF AGE GAINS ACCESS TO THE FIREARM, AND CARRIES IT OFF-PREMISES, YOU MAY BE GUILTY OF A MISDEMEANOR, UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER, OR LOCKED THE FIREARM WITH A LOCKING DEVICE, TO KEEP IT FROM TEMPORARILY FUNCTIONING."

Exhibit 6
0136
Provided by LRI History LLC          SB 61 (2019)  Page 106 of 367

(4) "YOU MAY BE GUILTY OF A MISDEMEANOR, INCLUDING A SIGNIFICANT FINE OR IMPRISONMENT, IF YOU KEEP A FIREARM WHERE A MINOR IS LIKELY TO ACCESS IT OR IF A MINOR OBTAINS AND IMPROPERLY USES IT, OR CARRIES IT OFF OF THE PREMISES TO A SCHOOL OR SCHOOL-SPONSORED EVENT, UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER OR LOCKED THE FIREARM WITH A LOCKING DEVICE."

(5) "IF YOU NEGLIGENTLY STORE OR LEAVE A FIREARM WITHIN ANY PREMISES UNDER YOUR CUSTODY OR CONTROL, WHERE A PERSON UNDER 18 YEARS OF AGE IS LIKELY TO ACCESS IT, YOU MAY BE GUILTY OF A MISDEMEANOR, INCLUDING A SIGNIFICANT FINE, UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER, OR LOCKED THE FIREARM WITH A LOCKING DEVICE."

(6) "DISCHARGING FIREARMS IN POORLY VENTILATED AREAS, CLEANING FIREARMS, OR HANDLING AMMUNITION MAY RESULT IN EXPOSURE TO LEAD, A SUBSTANCE KNOWN TO CAUSE BIRTH DEFECTS, REPRODUCTIVE HARM, AND OTHER SERIOUS PHYSICAL INJURY. HAVE ADEQUATE VENTILATION AT ALL TIMES. WASH HANDS THOROUGHLY AFTER EXPOSURE."

(7) "FEDERAL REGULATIONS PROVIDE THAT IF YOU DO NOT TAKE PHYSICAL POSSESSION OF THE FIREARM THAT YOU ARE ACQUIRING OWNERSHIP OF WITHIN 30 DAYS AFTER YOU COMPLETE THE INITIAL BACKGROUND CHECK PAPERWORK, THEN YOU HAVE TO GO THROUGH THE BACKGROUND CHECK PROCESS A SECOND TIME IN ORDER TO TAKE PHYSICAL POSSESSION OF THAT FIREARM."

(8) "NO PERSON SHALL MAKE AN APPLICATION TO PURCHASE MORE THAN ONE PISTOL, REVOLVER, OR OTHER FIREARM CAPABLE OF BEING CONCEALED UPON THE PERSON WITHIN ANY 30-DAY PERIOD AND NO DELIVERY SHALL BE MADE TO ANY PERSON WHO HAS MADE AN APPLICATION TO PURCHASE MORE THAN ONE PISTOL, REVOLVER, OR OTHER FIREARM CAPABLE OF BEING CONCEALED UPON THE PERSON WITHIN ANY 30-DAY PERIOD."

Exhibit 6
0137
Provided by LRI History LLC          SB 61 (2019) Page 107 of 367

(9) "IF A FIREARM YOU OWN OR POSSESS IS LOST OR STOLEN, YOU MUST REPORT THE LOSS OR THEFT TO A LOCAL LAW ENFORCEMENT AGENCY WHERE THE LOSS OR THEFT OCCURRED WITHIN FIVE DAYS OF THE TIME YOU KNEW OR REASONABLY SHOULD HAVE KNOWN THAT THE FIREARM HAD BEEN LOST OR STOLEN."

(b) In addition to the notice required by subdivision (a), a licensee shall post conspicuously within the licensed premises, in block letters not less than one inch in height, an additional notice, including, but not limited to, a notice provided by a suicide prevention program, containing the following statement:

"IF YOU OR SOMEONE YOU KNOW IS CONTEMPLATING SUICIDE, PLEASE CALL THE NATIONAL SUICIDE PREVENTION LIFELINE AT 1-800-273-TALK (8255)."

(c) This section shall become operative on June 1, 2020.

(d) This section shall remain in effect only until July 1, 2021, and as of that date is repealed.

SEC. 2.5.  Section 26835 is added to the Penal Code, to read:

26835.  (a) A licensee shall conspicuously post within the licensed premises the following warnings in block letters not less than one inch in height:

(1) "FIREARMS MUST BE HANDLED RESPONSIBLY AND SECURELY STORED TO PREVENT ACCESS BY CHILDREN AND OTHER UNAUTHORIZED USERS. CALIFORNIA HAS STRICT LAWS PERTAINING TO FIREARMS, AND YOU MAY BE FINED OR IMPRISONED IF YOU FAIL TO COMPLY WITH THEM. VISIT THE INTERNET WEBSITE OF THE CALIFORNIA ATTORNEY GENERAL AT HTTPS://OAG.CA.GOV/FIREARMS FOR INFORMATION ON FIREARM LAWS APPLICABLE TO YOU AND HOW YOU CAN COMPLY."

(2) "IF YOU KEEP A FIREARM WITHIN ANY PREMISES UNDER YOUR CUSTODY OR CONTROL, AND A PERSON UNDER 18 YEARS OF AGE OBTAINS IT AND USES IT, RESULTING IN INJURY OR DEATH, OR CARRIES IT TO A PUBLIC PLACE, YOU MAY BE GUILTY OF A MISDEMEANOR OR A FELONY UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER OR LOCKED THE FIREARM WITH A LOCKING DEVICE TO KEEP IT FROM TEMPORARILY FUNCTIONING."

Exhibit 6
0138
Provided by LRI History LLC          SB 61 (2019)  Page 108 of 367

(3) "CHILDREN MAY BE UNABLE TO DISTINGUISH FIREARMS FROM TOYS AND MAY OPERATE FIREARMS, CAUSING SEVERE INJURIES OR DEATH. IF YOU KEEP A FIREARM WITHIN ANY PREMISES UNDER YOUR CUSTODY OR CONTROL, AND A PERSON UNDER 18 YEARS OF AGE GAINS ACCESS TO THE FIREARM AND CARRIES IT OFF-PREMISES, YOU MAY BE GUILTY OF A MISDEMEANOR, UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER, OR LOCKED THE FIREARM WITH A LOCKING DEVICE TO KEEP IT FROM TEMPORARILY FUNCTIONING."

(4) "YOU MAY BE GUILTY OF A MISDEMEANOR, INCLUDING A SIGNIFICANT FINE OR IMPRISONMENT, IF YOU KEEP A FIREARM WHERE A MINOR IS LIKELY TO ACCESS IT OR IF A MINOR OBTAINS AND IMPROPERLY USES IT, OR CARRIES IT OFF OF THE PREMISES TO A SCHOOL OR SCHOOL-SPONSORED EVENT, UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER OR LOCKED THE FIREARM WITH A LOCKING DEVICE."

(5) "IF YOU NEGLIGENTLY STORE OR LEAVE A FIREARM WITHIN ANY PREMISES UNDER YOUR CUSTODY OR CONTROL WHERE A PERSON UNDER 18 YEARS OF AGE IS LIKELY TO ACCESS IT, YOU MAY BE GUILTY OF A MISDEMEANOR, INCLUDING A SIGNIFICANT FINE, UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER OR LOCKED THE FIREARM WITH A LOCKING DEVICE."

(6) "DISCHARGING FIREARMS IN POORLY VENTILATED AREAS, CLEANING FIREARMS, OR HANDLING AMMUNITION MAY RESULT IN EXPOSURE TO LEAD, A SUBSTANCE KNOWN TO CAUSE BIRTH DEFECTS, REPRODUCTIVE HARM, AND OTHER SERIOUS PHYSICAL INJURY. HAVE ADEQUATE VENTILATION AT ALL TIMES. WASH HANDS THOROUGHLY AFTER EXPOSURE."

(7) "FEDERAL REGULATIONS PROVIDE THAT IF YOU DO NOT TAKE PHYSICAL POSSESSION OF THE FIREARM THAT YOU ARE ACQUIRING OWNERSHIP OF WITHIN 30 DAYS AFTER YOU COMPLETE THE INITIAL BACKGROUND CHECK PAPERWORK, THEN YOU HAVE TO GO THROUGH THE BACKGROUND CHECK PROCESS

**Exhibit 6**
**0139**
**Provided by LRI History LLC**     SB 61 (2019) Page 109 of 367

A SECOND TIME IN ORDER TO TAKE PHYSICAL POSSESSION OF THAT FIREARM."

(8) "NO PERSON SHALL MAKE AN APPLICATION TO PURCHASE MORE THAN ONE HANDGUN OR SEMIAUTOMATIC CENTERFIRE RIFLE WITHIN ANY 30-DAY PERIOD AND NO DELIVERY SHALL BE MADE TO ANY PERSON WHO HAS MADE AN APPLICATION TO PURCHASE MORE THAN ONE HANDGUN OR SEMIAUTOMATIC CENTERFIRE RIFLE WITHIN ANY 30-DAY PERIOD."

(9) "IF A FIREARM YOU OWN OR POSSESS IS LOST OR STOLEN, YOU MUST REPORT THE LOSS OR THEFT TO A LOCAL LAW ENFORCEMENT AGENCY WHERE THE LOSS OR THEFT OCCURRED WITHIN FIVE DAYS OF THE TIME YOU KNEW OR REASONABLY SHOULD HAVE KNOWN THAT THE FIREARM HAD BEEN LOST OR STOLEN."

(b) In addition to the notice required by subdivision (a), a licensee shall post conspicuously within the licensed premises, in block letters not less than one inch in height, an additional notice, including, but not limited to, a notice provided by a suicide prevention program, containing the following statement:

"IF YOU OR SOMEONE YOU KNOW IS CONTEMPLATING SUICIDE, PLEASE CALL THE NATIONAL SUICIDE PREVENTION LIFELINE AT 1-800-273-TALK (8255)."

(c) This section shall become operative on July 1, 2021.

SEC. 3. Section 27510 of the Penal Code is amended to read:

27510. (a) A person licensed under Sections 26700 to 26915, inclusive, shall not sell, supply, deliver, or give possession or control of a firearm to any person who is under 21 years of age.

(b) (1) Subdivision (a) does not apply to or affect the sale, supplying, delivery, or giving possession or control of a firearm that is not a handgun or a semiautomatic centerfire rifle to a person 18 years of age or older who possesses a valid, unexpired hunting license issued by the Department of Fish and Wildlife.

(2) Subdivision (a) does not apply to or affect the sale, supplying, delivery, or giving possession or control of a firearm that is not a handgun or a semiautomatic centerfire rifle to a person who is 18 years of age or older and provides proper identification of being an honorably discharged member of the United States Armed Forces, the National Guard, the Air National Guard, or the

**Exhibit 6**
**0140**
**Provided by LRI History LLC**                    **SB 61 (2019) Page 110 of 367**

active reserve components of the United States. For purposes of this subparagraph, proper identification includes an Armed Forces Identification Card or other written documentation certifying that the individual is an honorably discharged member

(3) Subdivision (a) does not apply to or affect the sale, supplying, delivery, or giving possession or control of a firearm that is not a handgun to any of the following persons who are 18 years of age or older:

(A) An active peace officer, as described in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2, who is authorized to carry a firearm in the course and scope of employment.

(B) An active federal officer or law enforcement agent who is authorized to carry a firearm in the course and scope of employment.

(C) A reserve peace officer, as defined in Section 832.6, who is authorized to carry a firearm in the course and scope of employment as a reserve peace officer.

(D) A person who provides proper identification of active membership in the United States Armed Forces, the National Guard, the Air National Guard, or active reserve components of the United States. For purposes of this subparagraph, proper identification includes an Armed Forces Identification Card or other written documentation certifying that the individual is an active member.

SEC. 4.   Section 27535 of the Penal Code is amended to read:

27535.   (a) No person shall make an application to purchase more than one handgun within any 30-day period.

(b) Subdivision (a) shall not apply to any of the following:

(1) Any law enforcement agency.

(2) Any agency duly authorized to perform law enforcement duties.

(3) Any state or local correctional facility.

(4) Any private security company licensed to do business in California.

(5) Any person who is properly identified as a full-time paid peace officer, as defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2, and who is authorized to, and does carry a firearm during the course and scope of employment as a peace officer.

**Exhibit 6**
**0141**
**Provided by LRI History LLC**                                    **SB 61 (2019)  Page 111 of 367**

(6) Any motion picture, television, or video production company or entertainment or theatrical company whose production by its nature involves the use of a firearm.

(7) Any person who may, pursuant to Article 2 (commencing with Section 27600), Article 3 (commencing with Section 27650), or Article 4 (commencing with Section 27700), claim an exemption from the waiting period set forth in Section 27540.

(8) Any transaction conducted through a licensed firearms dealer pursuant to Chapter 5 (commencing with Section 28050).

(9) Any person who is licensed as a collector pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto, and has a current certificate of eligibility issued by the Department of Justice pursuant to Article 1 (commencing with Section 26700) of Chapter 2.

(10) The exchange of a handgun where the dealer purchased that firearm from the person seeking the exchange within the 30-day period immediately preceding the date of exchange or replacement.

(11) The replacement of a handgun when the person's handgun was lost or stolen, and the person reported that firearm lost or stolen pursuant to Section 25250 prior to the completion of the application to purchase the replacement handgun.

(12) The return of any handgun to its owner.

(13) A community college that is certified by the Commission on Peace Officer Standards and Training to present the law enforcement academy basic course or other commission-certified law enforcement training.

(c) This section shall remain in effect only until July 1, 2021, and as of that date is repealed.

SEC. 5.   Section 27535 is added to the Penal Code, to read:

27535.   (a)  A person shall not make an application to purchase more than one handgun or semiautomatic centerfire rifle within any 30-day period. This subdivision does not authorize a person to make an application to purchase both a handgun and semiautomatic centerfire rifle within the same 30-day period.

(b)  Subdivision (a) does not apply to any of the following:

(1) Any law enforcement agency.

(2) Any agency duly authorized to perform law enforcement duties.

Exhibit 6
0142

(3)  Any state or local correctional facility.

(4)  Any private security company licensed to do business in California.

(5)  Any person who is properly identified as a full-time paid peace officer, as defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2, and who is authorized to, and does carry a firearm during the course and scope of employment as a peace officer.

(6)  Any motion picture, television, or video production company or entertainment or theatrical company whose production by its nature involves the use of a firearm.

(7)  Any person who may, pursuant to Article 2 (commencing with Section 27600), Article 3 (commencing with Section 27650), or Article 4 (commencing with Section 27700), claim an exemption from the waiting period set forth in Section 27540.

(8)  Any transaction conducted through a licensed firearms dealer pursuant to Chapter 5 (commencing with Section 28050).

(9)  Any person who is licensed as a collector pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto, and has a current certificate of eligibility issued by the Department of Justice pursuant to Article 1 (commencing with Section 26700) of Chapter 2.

(10)  The exchange of a handgun or semiautomatic centerfire rifle where the dealer purchased that firearm from the person seeking the exchange within the 30-day period immediately preceding the date of exchange or replacement.

(11)  The replacement of a handgun or semiautomatic centerfire rifle when the person's firearm was lost or stolen, and the person reported that firearm lost or stolen pursuant to Section 25250 prior to the completion of the application to purchase the replacement.

(12)  The return of any handgun or semiautomatic centerfire rifle to its owner.

(13)  A community college that is certified by the Commission on Peace Officer Standards and Training to present the law enforcement academy basic course or other commission-certified law enforcement training.

(c)  This section shall become operative on July 1, 2021.

SEC. 6.  Section 27540 of the Penal Code is amended to read:

Exhibit 6
0143
Provided by LRI History LLC

SB 61 (2019)  Page 113 of 367

27540.  A dealer, whether or not acting pursuant to Chapter 5 (commencing with Section 28050), shall not deliver a firearm to a person, as follows:

(a)  Within 10 days of the application to purchase, or, after notice by the department pursuant to Section 28220, within 10 days of the submission to the department of any correction to the application, or within 10 days of the submission to the department of any fee required pursuant to Section 28225, whichever is later.

(b)  Unless unloaded and securely wrapped or unloaded and in a locked container.

(c)  Unless the purchaser, transferee, or person being loaned the firearm presents clear evidence of the person's identity and age to the dealer.

(d)  Whenever the dealer is notified by the Department of Justice that the person is prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm.

(e)  A firearm, including a handgun, shall not be delivered unless the purchaser, transferee, or person being loaned the firearm presents a firearm safety certificate to the dealer, except that in the case of a handgun, an unexpired handgun safety certificate may be presented.

(f)  Until July 1, 2021, a handgun shall not be delivered whenever the dealer is notified by the Department of Justice that within the preceding 30-day period the purchaser has made another application to purchase a handgun and that the previous application to purchase did not involve any of the entities or circumstances specified in subdivision (b) of Section 27535.

(g)  Commencing July 1, 2021, a handgun or semiautomatic centerfire rifle shall not be delivered whenever the dealer is notified by the Department of Justice that within the preceding 30-day period, the purchaser has made another application to purchase either a handgun or semiautomatic centerfire rifle and that the previous application to purchase did not involve any of the entities or circumstances specified in subdivision (b) of Section 27535.

SEC. 7.  Section 27590 of the Penal Code is amended to read:

27590.  (a)  Except as provided in subdivision (b), (c), or (e), a violation of this article is a misdemeanor.

(b)  If any of the following circumstances apply, a violation of this article is punishable by imprisonment pursuant to subdivision (h) of Section 1170 for two, three, or four years:

**Exhibit 6**
**0144**
**Provided by LRI History LLC**                    **SB 61 (2019)  Page 114 of 367**

(1) If the violation is of subdivision (a) of Section 27500.

(2) If the defendant has a prior conviction of violating the provisions, other than Section 27535, Section 27560 involving a firearm that is not a handgun, or Section 27565 involving a firearm that is not a handgun, of this article or former Section 12100 of this code, as Section 12100 read at any time from when it was enacted by Section 3 of Chapter 1386 of the Statutes of 1988 to when it was repealed by Section 18 of Chapter 23 of the Statutes of 1994, or Section 8101 of the Welfare and Institutions Code.

(3) If the defendant has a prior conviction of violating any offense specified in Section 29905 or of a violation of Section 32625 or 33410, or of former Section 12560, as that section read at any time from when it was enacted by Section 4 of Chapter 931 of the Statutes of 1965 to when it was repealed by Section 14 of Chapter 9 of the Statutes of 1990, or of any provision listed in Section 16590.

(4) If the defendant is in a prohibited class described in Chapter 2 (commencing with Section 29800) or Chapter 3 (commencing with Section 29900) of Division 9 of this title, or Section 8100 or 8103 of the Welfare and Institutions Code.

(5) A violation of this article by a person who actively participates in a "criminal street gang" as defined in Section 186.22.

(6) A violation of Section 27510 involving the delivery of any firearm to a person who the dealer knows, or should know, is a minor.

(c) If any of the following circumstances apply, a violation of this article shall be punished by imprisonment in a county jail not exceeding one year or pursuant to subdivision (h) of Section 1170, or by a fine not to exceed one thousand dollars ($1,000), or by both that fine and imprisonment:

(1) A violation of Section 27515, 27520, or subdivision (b) of Section 27500.

(2) A violation of Section 27505 involving the sale, loan, or transfer of a handgun to a minor.

(3) A violation of Section 27510 involving the delivery of a handgun.

(4) A violation of subdivision (a), (c), (d), (e), or (f) of Section 27540 involving a handgun.

(5) A violation of Section 27545 involving a handgun.

(6) A violation of Section 27550.

**Exhibit 6**
**0145**

**Provided by LRI History LLC**          **SB 61 (2019)  Page 115 of 367**

(7)  A violation of Section 27585 involving a handgun.

(d)  If both of the following circumstances apply, an additional term of imprisonment pursuant to subdivision (h) of Section 1170 for one, two, or three years shall be imposed in addition and consecutive to the sentence prescribed:

(1)  A violation of Section 27510 or subdivision (b) of Section 27500.

(2)  The firearm transferred in violation of Section 27510 or subdivision (b) of Section 27500 is used in the subsequent commission of a felony for which a conviction is obtained and the prescribed sentence is imposed.

(e) (1)  A first violation of Section 27535 is an infraction punishable by a fine of fifty dollars ($50).

(2)  A second violation of Section 27535 is an infraction punishable by a fine of one hundred dollars ($100).

(3)  A third or subsequent violation of Section 27535 is a misdemeanor.

(4) (A)  Until July 1, 2021, for purposes of this subdivision, each application to purchase a handgun in violation of Section 27535 is a separate offense.

(B)  Commencing July 1, 2021, for purposes of this subdivision, each application to purchase a handgun or semiautomatic centerfire rifle in violation of Section 27535 is a separate offense.

SEC. 8.  The provisions of this act are severable. If any provision of this act or its application is held invalid, that invalidity shall not affect other provisions or applications that can be given effect without the invalid provision or application.

SEC. 9.  (a) Sections 1.1 and 2.1 of this bill incorporate amendments to Section 26835 of the Penal Code proposed by both this bill and Senate Bill 172. Those sections shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2020, (2) each bill amends Section 26835 of the Penal Code, (3) Assembly Bill 645 is not enacted or as enacted does not amend that section, and (4) this bill is enacted after Senate Bill 172, in which case Sections 1, 1.2, 1.3, 2, 2.2, 2.3, 2.4, and 2.5 of this bill shall not become operative.

(b)  Sections 1.2, 2.2, and 2.3 of this bill incorporate amendments to Section 26835 of the Penal Code proposed by both this bill and Assembly Bill 645. Those sections shall only become operative if (1) both bills are enacted and become effective on or before January

**Exhibit 6**
0146
**Provided by LRI History LLC**    **SB 61 (2019)  Page 116 of 367**

1, 2020, (2) each bill amends Section 26835 of the Penal Code, (3) Senate Bill 172 is not enacted or as enacted does not amend that section, and (4) this bill is enacted after Assembly Bill 645, in which case Sections 1, 1.1, 1.3, 2, 2.1, 2.4, and 2.5 of this bill shall not become operative.

(c) Sections 1.3, 2.4, and 2.5 of this bill incorporate amendments to Section 26835 of the Penal Code proposed by this bill, Assembly Bill 645, and Senate Bill 172. Those sections of this bill shall only become operative if (1) all three bills are enacted and become effective on or before January 1, 2020, (2) all three bills amend Section 26835 of the Penal Code, and (3) this bill is enacted after Assembly Bill 645 and Senate Bill 172, in which case Sections 1, 1.1, 1.2, 2, 2.1, 2.2 and 2.3 of this bill shall not become operative.

SEC. 10. No reimbursement is required by this act pursuant to Section 6 of Article XIII B of the California Constitution because the only costs that may be incurred by a local agency or school district will be incurred because this act creates a new crime or infraction, eliminates a crime or infraction, or changes the penalty for a crime or infraction, within the meaning of Section 17556 of the Government Code, or changes the definition of a crime within the meaning of Section 6 of Article XIII B of the California Constitution.

**Exhibit 6**
**0147**
**Provided by LRI History LLC** **SB 61 (2019) Page 117 of 367**

Approved _____, 2019

_____
*Governor*

**SB-61 Firearms: transfers.** (2019-2020)

| Date | Action |
|------|--------|
| 09/20/19 | Enrolled and presented to the Governor at 10 a.m. |
| 09/13/19 | Assembly amendments concurred in. (Ayes 27. Noes 11.) Ordered to engrossing and enrolling. |
| 09/13/19 | In Senate. Concurrence in Assembly amendments pending. |
| 09/13/19 | Read third time. Passed. Ordered to the Senate. |
| 09/06/19 | Ordered to third reading. |
| 09/06/19 | Read third time and amended. |
| 09/04/19 | Read second time. Ordered to third reading. |
| 09/03/19 | Read second time and amended. Ordered to second reading. |
| 08/30/19 | From committee: Do pass as amended. (Ayes 13. Noes 5.) (August 30). |
| 07/10/19 | July 10 set for first hearing. Placed on APPR. suspense file. |
| 06/26/19 | From committee: Do pass and re-refer to Com. on APPR. (Ayes 5. Noes 2.) (June 25). Re-referred to Com. on APPR. |
| 06/11/19 | From committee with author's amendments. Read second time and amended. Re-referred to Com. on PUB. S. |
| 06/03/19 | Referred to Com. on PUB. S. |
| 05/22/19 | In Assembly. Read first time. Held at Desk. |
| 05/22/19 | Read third time. Passed. (Ayes 27. Noes 10. Page 1220.) Ordered to the Assembly. |
| 05/20/19 | Read second time. Ordered to third reading. |
| 05/17/19 | Read second time and amended. Ordered to second reading. |
| 05/17/19 | From committee: Do pass as amended. (Ayes 4. Noes 2. Page 1089.) (May 16). |
| 05/10/19 | Set for hearing May 16. |
| 04/22/19 | April 22 hearing: Placed on APPR. suspense file. |
| 04/05/19 | Set for hearing April 22. |
| 04/02/19 | From committee: Do pass and re-refer to Com. on APPR. (Ayes 5. Noes 2. Page 525.) (April 2). Re-referred to Com. on APPR. |
| 03/06/19 | Set for hearing April 2. |
| 01/16/19 | Referred to Com. on PUB. S. |
| 01/07/19 | Read first time. |
| 01/04/19 | From printer. May be acted upon on or after February 3. |
| 01/03/19 | Introduced. To Com. on RLS. for assignment. To print. |

**Exhibit 6**
**0149**



# LRI History LLC

intent@lrihistory.com
www.lrihistory.com
(916) 442.7660

---

# Unitemized Correspondence/Materials By Source

LRI History LLC hereby certifies that the accompanying record/s is/are true and correct copies of the original/s obtained from one or more official, public sources in California unless another source is indicated, with the following exceptions : In some cases, pages may have been reduced in size to fit an 8 ½" x 11" sized paper. Or, for readability purposes, pages may have been enlarged or cleansed of black marks or spots. Lastly, for ease of reference, paging and relevant identification have been inserted.

**Exhibit 6**
**0150**
**Provided by LRI History LLC**              **SB 61 (2019)  Page 120 of 367**



## LRI History LLC

intent@lrihistory.com
www.lrihistory.com
(916) 442.7660

---

# Official Legislative Online Database Materials

LRI History LLC hereby certifies that the accompanying record/s is/are true and correct copies of the original/s obtained from one or more official, public sources in California unless another source is indicated, with the following exceptions : In some cases, pages may have been reduced in size to fit an 8 ½" x 11" sized paper. Or, for readability purposes, pages may have been enlarged or cleansed of black marks or spots. Lastly, for ease of reference, paging and relevant identification have been inserted.

**Exhibit 6**
**0151**
Provided by LRI History LLC                    SB 61 (2019)  Page 121 of 367

| | | | |
|---|---|---|---|
| **Bill No:** | SB 61 | **Hearing Date:** | April 2, 2019 |
| **Author:** | Portantino | | |
| **Version:** | January 3, 2019 | | |
| **Urgency:** | No | **Fiscal:** | Yes |
| **Consultant:** | GC | | |

### Subject:  *Firearms: Transfers*

## HISTORY

Source:        Author

Prior Legislation:     SB 1177 (Portantino),  2018, vetoed
                       AB 1674 (Santiago),  2015, vetoed


Support:       Bay Area Student Activists;  Brady California  United  Against  Gun Violence;
               Coalition  Against  Gun Violence;  Giffords  Law Center to Prevent Gun Violence;
               Los Angeles  County  Board of Supervisors;  Los Angeles  City Attorney

Opposition:    California  Rifle  and Pistol  Association;  California  Sportsman's Lobby;  National
               Shooting  Sports Foundation;  Outdoor Sportsmen's  Coalition  of California;  Safari
               Club International;  Safari  Club International  Foundation


## PURPOSE

***The purpose of this bill is to extend the prohibition on purchasing more than one handgun a
month to include all firearms.***

*Existing law* prohibits  a person from making  more than one application  to purchase  a handgun
within  any 30-day period. (Pen. Code § 27535.)

*Existing law* prohibits  a firearms  dealer from delivering  a handgun  to a person whenever the
dealer is notified  by the Department  of Justice that within  the preceding  30-day period the
purchaser  has made another application  to purchase  a handgun  that does not fall within  an
exception  to the 30-day prohibition.  A violation  of that delivery  prohibition  by the dealer is a
crime. (Pen. Code § 27540.)

*This bill* extends the prohibition  on purchasing  more than one handgun  a month to all firearms,
including  long guns.

*Existing law* exempts the following  from the one handgun  a month prohibition: (Pen. Code, §
27535, subd. (b).)

**Exhibit 6**
**0152**
**Provided by LRI History LLC**                    **SB 61 (2019)  Page 122 of 367**

- Any law enforcement agency.
- Any agency duly authorized to perform law enforcement duties.
- Any state or local correctional facility.
- Any private security company licensed to do business in California.
- Any person who is properly identified as a full-time paid peace officer and who is authorized to, and does carry a firearm during the course and scope of employment as a peace officer.
- Any motion picture, television, or video production company or entertainment or theatrical company whose production by its nature involves the use of a firearm.
- Any person who may make a valid claim an exemption from the waiting period set forth in Section 27540.
- Any transaction conducted through a licensed firearms dealer pursuant to Chapter 5 (commencing with Section 28050).
- Any person who is licensed as a collector and has a current certificate of eligibility issued by the Department of Justice.
- The exchange of a handgun where the dealer purchased that firearm from the person seeking the exchange within the 30-day period immediately preceding the date of exchange or replacement.
- The replacement of a handgun when the person's handgun was lost or stolen, and the person reported that firearm lost or stolen prior to the completion of the application to purchase to any local law enforcement agency of the city, county, or city and county in which the person resides.
- The return of any handgun to its owner.
- A community college that is certified by the Commission on Peace Officer Standards and Training to present the law enforcement academy basic course or other commission-certified law enforcement training.

*This bill* adds the following exceptions to the one gun a month prohibition:

- The purchase of a firearm, other than a handgun, by a person who possesses a valid, unexpired hunting license issued by the Department of Fish and Wildlife.
- The acquisition of a firearm, other than a handgun, at an auction or similar event conducted by a nonprofit public benefit or mutual benefit corporation to fund the activities of that corporation or local chapters of that corporation.

## COMMENTS

### 1. Need for This Bill

According to the author:

> In California, existing law prohibits applying to purchase more than one handgun within a 30-day period and prohibits a firearms dealer from delivering a handgun to a person who has submitted more than one purchase application within a 30-day period. Unfortunately, when this became law it failed to include long guns. This is a simple fix to existing law that creates a safer process for the purchasing and delivering of all types of firearms in California.

**Exhibit 6**
**0153**
**Provided by LRI History LLC**                                        **SB 61** (2019)  Page 123 of 367

## 2. One Gun a Month

According to the Senate Public Safety Analysis of Assembly Bill 202 (Knox, of 1999), which created the one-handgun-a-month law in California:

> The State of Virginia enacted a "one-handgun-a-month" law in 1993 (before the Federal Brady Bill, which required at least a five day waiting period plus a background check for states without such requirements). That state had weak restrictions on handgun sales and it has been stated that gun traffickers from New York City routinely traveled to Virginia to purchase quantities of weapons to take back for illegal sale in other states. Purchases of more than one handgun per 30-day period in Virginia is allowed upon completion of an "enhanced" background check when the purchase is for lawful business or personal use, for purposes of collectors, bulk sales and purchases from estates, to replace a lost or stolen weapon, and similar situations.
>
> Supporters of limits on purchases of handguns assume that the Virginia limits and the limits in this bill would only affect a very small proportion of legitimate handgun purchasers. A family of two adults could still purchase 24 handguns a year under the provisions of both this bill and the Virginia law.

Virginia repealed this law in 2012. But, according to the Law Center to Prevent Gun Violence:

> Virginia's one-gun-a-month law – which was in effect from 1993 to 2012 and prohibited the purchase of more than one handgun per person in any 30-day period – significantly reduced the number of crime guns traced to Virginia dealers. Virginia initially adopted its law after the state became recognized as a primary source of crime guns recovered in states in the northeastern U.S. After the law's adoption, the odds of tracing a gun originally acquired in the Southeast to a Virginia gun dealer (as opposed to a dealer in a different southeastern state) dropped by:
>
> - 71% for guns recovered in New York;
> - 72% for guns recovered in Massachusetts; and
> - 66% for guns recovered in New Jersey, New York, Connecticut, Rhode Island and Massachusetts combined.
>
> (http://smartgunlaws.org/multiple-purchases-sales-of-firearms-policy-summary/ [footnotes omitted].)

Other states that have limits on the number of firearms that can be sold in one month include:

- California: California law prohibits any person from purchasing more than one handgun within any 30-day period. In addition, a licensed firearms dealer may not deliver a handgun to any person following notification from the California Department of Justice that the purchaser has applied to acquire a handgun within the preceding 30-day period. Finally, firearms dealers must conspicuously post in their licensed premises a warning, in block letters at least one inch in height, notifying purchasers of these restrictions.

**Exhibit 6**
**0154**

- District of Columbia: A person may not register more than one handgun in the District during any 30-day period. Since every handgun must be registered, this amounts to a purchase and sale limitation of one handgun per 30-day period. . .

- Maryland: Maryland prohibits any person from purchasing more than one handgun or assault weapon within a 30-day period. Under limited circumstances, a person may be approved by the Secretary of the Maryland State Police to purchase multiple handguns or assault weapons in a 30-day period. Maryland also penalizes any dealer or other seller who knowingly participates in an illegal purchase of a handgun or assault weapon. . .

- New Jersey: New Jersey prohibits licensed firearms dealers from knowingly delivering more than one handgun to any person within any 30-day period. With limited exceptions, no person may purchase more than one handgun within any 30-day period. New Jersey requires a handgun purchaser to obtain a separate permit for each handgun purchased, and present the permit to the seller. The seller must keep a copy of each permit presented.

(http://smartgunlaws.org/multiple-purchases-sales-of-firearms-policy-summary/[footnotes omitted].)

### *Assembly Bill 1674 (Santiago), of 2015: Veto Message*

The Governor stated in his veto message of Senate Bill 1674, which would have prohibited any person from making an application to purchase more than one firearm within any 30-day period:

> This bill generally prohibits the purchase of more than one firearm within any 30-day period. It should be noted that California already bans the purchase of more than one handgun per month.

> While well-intentioned, I believe this bill would have the effect of burdening lawful citizens who wish to sell certain firearms that they no longer need.

> Given California's stringent laws restricting gun ownership, I do not believe this additional restriction is needed.

### *Senate Bill 1177 (Portantino), of 2018: Veto Message*

The Governor stated in his veto message of Senate Bill 1177, which would have prohibited any person from making an application to purchase more than one firearm within any 30-day period, with the same exemptions included in this bill:

> This bill prohibits any person from purchasing more than one long-gun per month.

> I vetoed a substantially similar bill in 2016, and my views have not changed.

**Exhibit 6**
**0155**
Provided by LRI History LLC                    **SB 61** (2019) **Page 125 of 367**

### 3. California Hunting Licenses

This bill creates an exemption from the prohibition on persons under the age of 21 purchasing or receiving a long gun if the person under the age of 21 has a valid, unexpired hunting license. In order to obtain a hunting license in California a person must:

- Complete the California Hunter Education Certification requirements
- Choose the correct type of hunting license.
- Purchase a license through the California Department of Fish and Wildlife website or a California approved agent.

The Official California Hunter Safety Course is an online course that costs $28.95. There is no minimum age for the course. The course requires a follow-up course that is a 4-hour review of the online course with a certified hunter education instructor. The course includes a student demonstration of safe firearm handling and a test. Following completion of the follow-up course the enrollee receives a Hunter Education Certificate.

### 4. Argument in Support

According to Brady California:

> In 1999, legislation (AB 202) was enacted that limits purchases of handguns from licensed firearms dealers in California to no more than one per person per 30-day period. The purpose of the bill was to curb the illegal flow of handguns by taking the profit out of selling guns from bulk purchases on the black market. SB 61 applies existing law under AB 202 to long guns, including rifles, shotguns, and lower receivers.
>
> Under SB 61, firearms (handguns *and* long guns) will not be delivered whenever the dealer is notified by the Department of Justice that within the preceding 30-day period, the purchaser had made another application to purchase a firearm. Private party transactions will continue to be exempt. Additionally, rifle and shotgun (but not lower receiver) purchasers with a valid hunting license issued by the Department of Fish and Wildlife and the acquisition of a rifle or shotgun at an auction or similar event conducted by a nonprofit will be exempt.
>
> It stands to reason that a person buying large quantities of guns at one time may be acting as a straw purchaser or gun trafficker. Moreover, firearms acquired this way are frequently used in crime. In fact, an ATF study of tracing data demonstrated that 22% of all handguns recovered in crime in 1999 were originally purchased as part of a multiple sale. A similar study found that 20% of all handguns recovered in crime in 2000 were originally purchased as part of a multiple sale. Additionally, a University of Pennsylvania report found that a quarter of all guns used in crime were purchased as part of a multiple-gun sale and that guns purchased in bulk were up to 64% more likely to be used for illegal purposes than guns purchased individually.
>
> Since 1999, Californians have typically purchased more long guns than handguns every year. Currently, these long guns include high powered featureless weapons

**Exhibit 6**
**0156**
**Provided by LRI History LLC**                          **SB 61 (2019) Page 126 of 367**

with exchangeable magazines that enable rapid reload and lower receivers, which can be assembled into illegal military-style weapons. Limiting multiple-gun sales within a short period of time for such weapons, which are more lethal than handguns, is clearly in the interest of public safety.

The Department of Justice began to retain records of long gun purchases on January 1, 2014. An analysis of the transaction data from the period January 2014 through June 2015 shows that 81.9% of long guns were sold as a single long gun purchase within a 30-day period. *Clearly, the vast majority of long gun purchasers will not be impacted by SB 61.* However, at the opposite end of the spectrum, an individual purchased 177 long guns in two transactions within a one month period (April 2014). Furthermore, sales to single individuals ranging from 5 to 54 long guns per month occurred on 1,787 occasions, totaling 12,090 guns. Department data also shows that when multiple long guns are transferred in a sale, it is more than twice as likely that lower receivers are included. The largest bulk sale of long guns in one month to an individual (177 long guns) was composed *entirely* of lower receivers, which can be built into illegal assault weapons and sold on the black market.

Brady California believes that handguns and long guns should generally be subject to the same laws. Preventing the flow of illegal guns is important to public safety regardless of whether the firearm is a handgun or a long gun. Limiting firearms sales to one gun per 30-day period is a recognized strategy to reduce gun trafficking and keep firearms out of dangerous hands. Brady California thanks you for introducing SB 61.

## 5. Argument in Opposition

According to California Rifle and Pistol Association:

SB 61 would significantly reduce long gun sales in California. This translates into a loss of manufacturing jobs at both the state and national levels, and a significant loss of revenue for California businesses. Additionally, this bill will significantly impact the millions of dollars of Federal Pitman Roberson tax money that would be earmarked to develop and enhance habitat critical for California's wildlife. The Department of Justice (DOJ), has estimated previous versions of this same bill's implementation alone will cost hundreds of thousands of dollars, and result in significant overtime hours for Department personal to perform the necessary analysis, development, testing, and implementation to various Department databases.

SB 61 will also effectively prohibit the creation of new businesses in California involving hands on instruction in the safe handling of firearms. Should this bill become law, certified firearm instructors would no longer be able acquire the necessary firearms without having to wait months, if not years, to conduct classes for groups such as the Boy Scouts of America, Hunter Education, Youth shooting sports, and other clubs or organizations that wish to participate in firearm safety classes.

**Exhibit 6**
**0157**
**Provided by LRI History LLC**                                   **SB 61 (2019) Page 127 of 367**

The author and proponents have argued in testimony there is no legitimate reason for anyone to need to purchase more than one firearm a month. There are, in fact, numerous legitimate recreational and Second Amendment protected reasons why an individual might want, and need, to transfer more than one firearm a month. For example, someone new to the sport of recreational competitive shooting, 'Three Gun' competitions, may very well need to purchase a pistol, shotgun, and rifle without having to wait 30 days between each purchase. This bill would require someone wanting to acquire all three types of firearms to undergo a process that would take at least 70 days assuming everything goes smoothly. The procedure for purchasing these firearms is already very time and travel intensive. Each transaction requiring a trip to the licensed dealer.

Currently individuals in California must go through the following steps to purchase a firearm; Obtain a firearm safety certificate; Go to a California licensed firearms dealer; Complete 4473 and (Dealer Record of Sales) DROS applications; Pass the required background check; Wait the required 10 days; Go back to dealer; Perform a safe handling demonstration; Pick up first firearm. Under SB 61 the individual would have to wait the required 30 days, then go back to dealer again; and repeat the process for each subsequent purchase. Both California and Federal law already address the author's concerns regarding the trafficking of firearms by narrowly limiting the number of firearms an individual can sell. Rather than having the desired effect of targeting criminals, this bill will impact only the law abiding, thereby further limiting available funding to DOJ.

SB 61, does allow for numerous exemptions to the restriction which do not apply to the general public, though well intended by the author will create a nightmare DOJ and law enforcement to implement and enforce. Additionally, the author has argued this bill is necessary because the vast majority of firearms recovered from APPS seizures are long guns. However, data from the Bureau of Alcohol, Tobacco, Firearms and Explosives, ATF, clearly shows the vast majority of firearms recovered by law enforcement are handguns, which are already subject to the 30-day restriction, illustrating the restrictions ineffectiveness at reducing crime.

The author and proponents have tried three previous versions of this bill in the last three years. All vetoed by Governor Brown; 2016: AB 1674, 2017: SB 497 and in 2018: SB 1177. In his 2018 veto statement the Governor stated: "I am returning SB 1177 without my signature. This bill prohibits any person from purchasing more than one long-gun per month. I vetoed a substantially similar bill in 2016, and my views have not changed", in his 2016 veto statement Governor Brown said in part; " while well-intended, I believe this bill would have the effect of burdening lawful citizens who wish to sell certain firearms that they no longer need. Given California's stringent laws restricting gun ownership, I do not believe this additional restriction is needed".

-- END –

**Exhibit 6**
**0158**

**SB 61 (Portantino) - Firearms: transfers**

| | |
|---|---|
| **Version:** January 3, 2019 | **Policy Vote:** PUB. S. 5 - 2 |
| **Urgency:** No | **Mandate:** Yes |
| **Hearing Date:** April 22, 2019 | **Consultant:** Shaun Naidu |

**Bill Summary:** SB 61 would prohibit the purchase of more than one long gun in a 30-day period, except as specified.

**Fiscal Impact:**

- <u>Fee revenue loss</u>: The Department of Justice estimates an overall annual revenue reduction of 10 percent in fee collection resulting from fewer firearm purchases, equating to an overall annual loss of $2.23 million. See comment below. (Various special funds)

- <u>Tax revenue loss</u>: Unknown, likely-significant loss in sales tax revenue resulting from the limitation on the number of long guns a person may purchase. (General Fund, local funds)

- <u>System update</u>: The Department of Justice (DOJ) anticipates that need of 1.0 limited-term Information Technology Specialist I in FY 2020-21 at a cost of $281,000, inclusive of attendant equipment and operating expenses. (Special fund*, General Fund)

\* Dealers Record of Sale Special Account (DROS)—structurally imbalanced

**Background:** Existing law prohibits any person from making an application to purchase more than one handgun within any 30-day period. The handgun purchase limitation, however, does not apply to the following:

- Any law enforcement agency;
- Any agency duly authorized to perform law enforcement duties;
- Any state or local correctional facility;
- Any private security company licensed to do business in California;
- Any person who is properly identified as a full-time paid peace officer, as defined, and who is authorized to, and does, carry a firearm during the course and scope of employment as a peace officer;
- Any motion picture, television, or video production company or entertainment or theatrical company whose production by its nature involves the use of a firearm;
- Any person who may claim an exemption from the waiting period set forth in Penal Code section 27540;
- Any private party transaction conducted through a licensed firearms dealer;
- Any person who is licensed as a collector and the regulations issued pursuant thereto and has a current certificate of eligibility issued by DOJ;
- The exchange of a handgun where the dealer purchased that firearm from the person seeking the exchange within the 30-day period immediately preceding the date of exchange or replacement;

- The replacement of a handgun when the person's handgun was lost or stolen, and the person reported that firearm lost or stolen prior to the completion of the application to purchase the replacement handgun;
- The return of any handgun to its owner; or
- A community college that is certified by the Commission on Peace Officer Standards and Training to present the law enforcement academy basic course or other commission-certified law enforcement training.

The punishment for making an application to purchase more than one handgun within a 30-day period without an exception is as follows:
- A first violation is an infraction punishable by a base fine of $50.
- A second violation is an infraction punishable by a base fine of $100.
- A third or subsequent violation is a misdemeanor punishable by imprisonment in the county jail for up to six months, a base fine of up to $1,000, or both the imprisonment and fine.

Each application to purchase a handgun during the prohibited period is deemed a separate offense.

**Proposed Law:** This bill would extend the limitation of making an application to purchase more than one handgun in a 30-day period, along with the exceptions to the limitation, to all types of firearms. This bill would expand the exception to the limitation relative to long guns to a person who possesses a valid, unexpired hunting license issued by the Department of Fish and Wildlife and the acquisition of a long gun at an auction or similar event conducted by a nonprofit public benefit or mutual benefit corporation to fund the activities of the corporation or its local chapter. For the purpose of these two exceptions, the barrel must be at least 16 inches in length.

**Related Legislation:** SB 1177 (Portantino, 2018) and AB 1674 (Santiago, 2016) similarly attempted to extend the limitation of purchasing one handgun within a 30-day period to the purchase of all types of firearms. The Governor vetoed both measures. In his message on AB 1674, the Governor stated that he believed that the bill "would have the effect of burdening lawful citizens who wish to sell certain firearms they no longer need[ ]" and that this additional restriction is not needed given the state's stringent laws restricting gun ownership. With respect to SB 1177, the Governor stated that his "views have not changed" since vetoing AB 1674.

**Staff Comments:** The Department of Justice estimates annual reductions of the specified amounts of fee collection for the following special funds resulting from SB 61: a $1.7 million decrease to DROS, a $441,000 decrease to the Firearms Safety and Enforcement Special Fund, and an $88,000 to the Firearm Safety Account is predicted to decrease by $88,000. In addition to experiencing the largest impact with respect to fee revenue loss, DROS also would be used to fund the limited-term position the department anticipates requiring to implement SB 61. The Dealers Record of Sale Special Account has experienced significant revenue decreases in recent years to the extent that it is structurally imbalanced. From FY 2017-18 to FY 2018-19 DROS revenues dropped by 22 percent; proposed revenue for FY 2019-20 is projected to remain consistent with 2018-19, however. The FY 2019-20 proposed budget anticipates a beginning balance of $6.159 million, revenues of $21.471 million,

**Exhibit 6**
**0160**

Provided by LRI History LLC SB 61 (2019) Page 130 of 367

expenditures of $24.88 million, and an ending reserve of $2.75 million. Given the operational deficit of DROS, the revenue loss and added expense resulting from SB 61 would create cost pressure on the General Fund to backfill any shortage.

**-- END --**

**Exhibit 6**
**0161**

**SB 61 (Portantino) - Firearms: transfers**

| | |
|---|---|
| **Version:** January 3, 2019 | **Policy Vote:** PUB. S. 5 - 2 |
| **Urgency:** No | **Mandate:** Yes |
| **Hearing Date:** May 16, 2019 | **Consultant:** Shaun Naidu |

## \*\*\*\*\*\*\*\*\*\*\* ANALYSIS ADDENDUM – SUSPENSE FILE \*\*\*\*\*\*\*\*\*\*\*
**The following information is revised to reflect amendments**
**adopted by the committee on May 16, 2019**

**Bill Summary:** SB 61 would prohibit the purchase of more than one long gun in a 30-day period, except as specified.

**Fiscal Impact:**

- <u>Fee revenue loss</u>: The Department of Justice estimates an overall annual revenue reduction of 10 percent in fee collection resulting from fewer firearm purchases, equating to an overall annual loss of $2.23 million. See comment below. (Various special funds)

- <u>Tax revenue loss</u>: Unknown, likely-significant loss in sales tax revenue resulting from the limitation on the number of long guns a person may purchase. (General Fund, local funds)

- <u>System update</u>: The Department of Justice (DOJ) anticipates that need of 1.0 limited-term Information Technology Specialist I in FY 2020-21 at a cost of $281,000, inclusive of attendant equipment and operating expenses. (Special fund\*, General Fund)

\* Dealers Record of Sale Special Account (DROS)—structurally imbalanced

**Author Amendments:** Prohibit the sale of a semiautomatic centerfire rifle to specified exempted persons under age 21 and delay the effective date of specified provisions.

### -- END --

**Exhibit 6**
**0162**
**Provided by LRI History LLC**     **SB 61 (2019) Page 132 of 367**

UNFINISHED BUSINESS

Bill No:     SB 61
Author:     Portantino (D), et al.
Amended:   9/6/19
Vote:        21

**SENATE PUBLIC SAFETY COMMITTEE: 5-2, 4/2/19**
AYES: Skinner, Bradford, Jackson, Mitchell, Wiener
NOES: Moorlach, Morrell

**SENATE APPROPRIATIONS COMMITTEE: 4-2, 5/16/19**
AYES: Portantino, Bradford, Hill, Wieckowski
NOES: Bates, Jones

**SENATE FLOOR: 27-10, 5/22/19**
AYES: Allen, Archuleta, Atkins, Beall, Bradford, Caballero, Dodd, Durazo,
   Galgiani, Glazer, Hertzberg, Hill, Hueso, Hurtado, Jackson, Leyva, McGuire,
   Mitchell, Monning, Pan, Portantino, Rubio, Skinner, Stern, Umberg,
   Wieckowski, Wiener
NOES: Bates, Borgeas, Chang, Grove, Jones, Moorlach, Morrell, Nielsen, Stone,
   Wilk
NO VOTE RECORDED: Roth

**ASSEMBLY FLOOR: 46-17, 9/13/19**
(ROLL CALL NOT AVAILABLE)

**SUBJECT:** Firearms: transfers

**SOURCE:** Author

**DIGEST:** This bill prohibits the sale of a semiautomatic centerfire rifle to any
person under 21 years of age, and prohibits a person from making an application to
purchase more than one semiautomatic centerfire rifle in any 30-day period, except
as specified.

**Exhibit 6**
**0163**
Provided by LRI History LLC                              SB 61 (2019) Page 133 of 367

*Assembly Amendments* (1) limit the purchase limitations to one gun a month for semiautomatic centerfire rifles, in addition to handguns which are limited under existing law; (2) remove the language defining frames or receivers as firearms under specified scenarios; and (3) add double-jointing language to prevent chaptering issues with SB 172 (Portantino) and AB 645 (Irwin).

## ANALYSIS:

Existing law:

1) Prohibits a person from making more than one application to purchase a handgun within any 30-day period. (Pen. Code § 27535.)

2) Prohibits a firearms dealer from delivering a handgun to a person whenever the dealer is notified by the Department of Justice that within the preceding 30-day period the purchaser has made another application to purchase a handgun that does not fall within an exception to the 30-day prohibition. A violation of that delivery prohibition by the dealer is a crime. (Pen. Code § 27540.)

3) Exempts the following from the one handgun a month prohibition: (Pen. Code, § 27535, subd. (b).)

   a) Any law enforcement agency.

   b) Any agency duly authorized to perform law enforcement duties.

   c) Any state or local correctional facility.

   d) Any private security company licensed to do business in California.

   e) Any person who is properly identified as a full-time paid peace officer and who is authorized to, and does carry a firearm during the course and scope of employment as a peace officer.

   f) Any motion picture, television, or video production company or entertainment or theatrical company whose production by its nature involves the use of a firearm.

   g) Any person who may make a valid claim an exemption from the waiting period set forth in Section 27540.

**Exhibit 6**
**0164**

**Provided by LRI History LLC**

**SB 61 (2019) Page 134 of 367**

h) Any transaction conducted through a licensed firearms dealer pursuant to Chapter 5 (commencing with Section 28050).

i) Any person who is licensed as a collector and has a current certificate of eligibility issued by the Department of Justice.

j) The exchange of a handgun where the dealer purchased that firearm from the person seeking the exchange within the 30-day period immediately preceding the date of exchange or replacement.

k) The replacement of a handgun when the person's handgun was lost or stolen, and the person reported that firearm lost or stolen prior to the completion of the application to purchase to any local law enforcement agency of the city, county, or city and county in which the person resides.

l) The return of any handgun to its owner.

m) A community college that is certified by the Commission on Peace Officer Standards and Training to present the law enforcement academy basic course or other commission-certified law enforcement training.

This bill:

1) Extends the prohibition on purchasing more than one handgun a month to also include semiautomatic centerfire rifles.

2) Exempts the following from the one gun a month prohibition: (Pen. Code, § 27535, subd. (b).)

a) Any law enforcement agency.

b) Any agency duly authorized to perform law enforcement duties.

c) Any state or local correctional facility.

d) Any private security company licensed to do business in California.

e) Any person who is properly identified as a full-time paid peace officer and who is authorized to, and does carry a firearm during the course and scope of employment as a peace officer.

f) Any motion picture, television, or video production company or entertainment or theatrical company whose production by its nature involves

**Exhibit 6**
**0165**
**Provided by LRI History LLC**

the use of a firearm.

g) Any person who may make a valid claim an exemption from the waiting period set forth in Section 27540.

h) Any transaction conducted through a licensed firearms dealer pursuant to Chapter 5 (commencing with Section 28050).

i) Any person who is licensed as a collector and has a current certificate of eligibility issued by the Department of Justice.

j) The exchange of a handgun or semiautomatic centerfire rifle where the dealer purchased that firearm from the person seeking the exchange within the 30-day period immediately preceding the date of exchange or replacement.

k) The replacement of a handgun or semiautomatic centerfire rifle when the person's handgun was lost or stolen, and the person reported that firearm lost or stolen prior to the completion of the application to purchase to any local law enforcement agency of the city, county, or city and county in which the person resides.

l) The return of any handgun or semiautomatic centerfire rifle to its owner.

m) A community college that is certified by the Commission on Peace Officer Standards and Training to present the law enforcement academy basic course or other commission-certified law enforcement training,

3) Specifies that specified licensees shall not sell, supply, deliver, or give possession or control of a semiautomatic centerfire rifle to any person who is under 21 years of age, with specified exemptions.

## Background

*One Gun a Month.* According to the Senate Public Safety Committee analysis of AB 202 (Knox, 1999), which created the one-handgun-a-month law in California:

> The State of Virginia enacted a "one-handgun-a-month" law in 1993 (before the Federal Brady Bill, which required at least a five day waiting period plus a background check for states without such requirements). That state had weak restrictions on handgun sales and it has been stated that gun traffickers from New York City routinely

traveled to Virginia to purchase quantities of weapons to take back for illegal sale in other states. Purchases of more than one handgun per 30-day period in Virginia is allowed upon completion of an "enhanced" background check when the purchase is for lawful business or personal use, for purposes of collectors, bulk sales and purchases from estates, to replace a lost or stolen weapon, and similar situations.

Supporters of limits on purchases of handguns assume that the Virginia limits and the limits in this bill would only affect a very small proportion of legitimate handgun purchasers. A family of two adults could still purchase 24 handguns a year under the provisions of both this bill and the Virginia law.

Virginia repealed this law in 2012. But, according to the Law Center to Prevent Gun Violence:

Virginia's one-gun-a-month law – which was in effect from 1993 to 2012 and prohibited the purchase of more than one handgun per person in any 30-day period – significantly reduced the number of crime guns traced to Virginia dealers. Virginia initially adopted its law after the state became recognized as a primary source of crime guns recovered in states in the northeastern U.S. After the law's adoption, the odds of tracing a gun originally acquired in the Southeast to a Virginia gun dealer (as opposed to a dealer in a different southeastern state) dropped by:

- 71% for guns recovered in New York;
- 72% for guns recovered in Massachusetts; and
- 66% for guns recovered in New Jersey, New York, Connecticut, Rhode Island and Massachusetts combined.

(http://smartgunlaws.org/multiple-purchases-sales-of-firearms-policy-summary/ [footnotes omitted].)

Other states that have limits on the number of firearms that can be sold in one month include:

- California: California law prohibits any person from purchasing more than one handgun within any 30-day period. In addition, a licensed firearms dealer may

**Exhibit 6**
**0167**
**Provided by LRI History LLC**                    **SB 61 (2019) Page 137 of 367**

not deliver a handgun to any person following notification from the California Department of Justice that the purchaser has applied to acquire a handgun within the preceding 30-day period. Finally, firearms dealers must conspicuously post in their licensed premises a warning, in block letters at least one inch in height, notifying purchasers of these restrictions.

- District of Columbia: A person may not register more than one handgun in the District during any 30-day period. Since every handgun must be registered, this amounts to a purchase and sale limitation of one handgun per 30-day period.

- Maryland: Maryland prohibits any person from purchasing more than one handgun or assault weapon within a 30-day period. Under limited circumstances, a person may be approved by the Secretary of the Maryland State Police to purchase multiple handguns or assault weapons in a 30-day period. Maryland also penalizes any dealer or other seller who knowingly participates in an illegal purchase of a handgun or assault weapon.

- New Jersey: New Jersey prohibits licensed firearms dealers from knowingly delivering more than one handgun to any person within any 30-day period. With limited exceptions, no person may purchase more than one handgun within any 30-day period. New Jersey requires a handgun purchaser to obtain a separate permit for each handgun purchased, and present the permit to the seller. The seller must keep a copy of each permit presented.

(http://smartgunlaws.org/multiple-purchases-sales-of-firearms-policy-summary/[footnotes omitted].)

*AB 1674 (Santiago, 2015): Veto Message.* The Governor stated in his veto message of Senate Bill 1674, which would have prohibited any person from making an application to purchase more than one firearm within any 30-day period:

This bill generally prohibits the purchase of more than one firearm within any 30-day period. It should be noted that California already bans the purchase of more than one handgun per month.

While well-intentioned, I believe this bill would have the effect of burdening lawful citizens who wish to sell certain firearms that they no longer need.

Exhibit 6
0168
Provided by LRI History LLC
SB 61 (2019) Page 138 of 367

Given California's stringent laws restricting gun ownership, I do not believe this additional restriction is needed.

*SB 1177 (Portantino, 2018): Veto Message.* The Governor stated in his veto message of Senate Bill 1177, which would have prohibited any person from making an application to purchase more than one firearm within any 30-day period, with the same exemptions included in this bill:

This bill prohibits any person from purchasing more than one long-gun per month.

I vetoed a substantially similar bill in 2016, and my views have not changed.

**FISCAL EFFECT:** Appropriation: No    Fiscal Com.: Yes    Local: Yes

According to the Assembly Appropriations Committee:

- DOJ estimates an overall annual revenue reduction of 10% in fee collection (Firearms Safety and Enforcement Fund/Dealer Record of Sale Special Account) resulting from fewer firearm purchases, equating to an overall loss of $2.23 million dollars annually.

- Sales tax revenue loss (GF) likely in the hundreds of thousands of dollars to low millions of dollars annually due to the limitation on the number of firearms that may be purchased in a 30-day period.

- One-time costs (GF/Dealer Record of Sale Account) of $281,000 to the DOJ for limited term information technology staff and equipment to update systems to track both handguns and long guns to ensure only one purchase within a 30-day period.

**SUPPORT:** (Verified  9/12/19)

Bay Area Student Activists
Brady California United Against Gun Violence
Coalition Against Gun Violence
Giffords Law Center to Prevent Gun Violence
Los Angeles City Attorney
Los Angeles County Board of Supervisors

**Exhibit 6**
**0169**
**Provided by LRI History LLC**                    **SB 61 (2019)  Page 139 of 367**

**OPPOSITION:** (Verified  9/12/19)

California Rifle and Pistol Association
California Sportsman's Lobby
Gun Owners of California
National Shooting Sports Foundation
Outdoor Sportsmen's Coalition of California
Safari Club International
Safari Club International Foundation

**ARGUMENTS IN SUPPORT:**  According to Brady California United Against Gun Violence:

> In 1999, legislation (AB 202) was enacted that limits purchases of handguns from licensed firearms dealers in California to no more than one per person per 30-day period. The purpose of the bill was to curb the illegal flow of handguns by taking the profit out of selling guns from bulk purchases on the black market. SB 61 applies existing law under AB 202 to long guns, including rifles, shotguns, and lower receivers.

> Under SB 61, firearms (handguns *and* long guns) will not be delivered whenever the dealer is notified by the Department of Justice that within the preceding 30-day period, the purchaser had made another application to purchase a firearm.  Private party transactions will continue to be exempt. Additionally, rifle and shotgun (but not lower receiver) purchasers with a valid hunting license issued by the Department of Fish and Wildlife and the acquisition of a rifle or shotgun at an auction or similar event conducted by a nonprofit will be exempt.

> It stands to reason that a person buying large quantities of guns at one time may be acting as a straw purchaser or gun trafficker. Moreover, firearms acquired this way are frequently used in crime. In fact, an ATF study of tracing data demonstrated that 22% of all handguns recovered in crime in 1999 were originally purchased as part of a multiple sale. A similar study found that 20% of all handguns recovered in crime in 2000 were originally purchased as part of a multiple sale. Additionally, a University of Pennsylvania report found that a quarter of all guns used in crime were purchased as part of a multiple-gun sale and that guns purchased in bulk were up to 64%

**Exhibit 6**
**0170**

more likely to be used for illegal purposes than guns purchased individually.

Since 1999, Californians have typically purchased more long guns than handguns every year. Currently, these long guns include high powered featureless weapons with exchangeable magazines that enable rapid reload and lower receivers, which can be assembled into illegal military-style weapons. Limiting multiple-gun sales within a short period of time for such weapons, which are more lethal than handguns, is clearly in the interest of public safety.

The Department of Justice began to retain records of long gun purchases on January 1, 2014. An analysis of the transaction data from the period January 2014 through June 2015 shows that 81.9% of long guns were sold as a single long gun purchase within a 30-day period. *Clearly, the vast majority of long gun purchasers will not be impacted by SB 61.* However, at the opposite end of the spectrum, an individual purchased 177 long guns in two transactions within a one month period (April 2014). Furthermore, sales to single individuals ranging from 5 to 54 long guns per month occurred on 1,787 occasions, totaling 12,090 guns. Department data also shows that when multiple long guns are transferred in a sale, it is more than twice as likely that lower receivers are included. The largest bulk sale of long guns in one month to an individual (177 long guns) was composed *entirely* of lower receivers, which can be built into illegal assault weapons and sold on the black market.

Brady California believes that handguns and long guns should generally be subject to the same laws. Preventing the flow of illegal guns is important to public safety regardless of whether the firearm is a handgun or a long gun. Limiting firearms sales to one gun per 30-day period is a recognized strategy to reduce gun trafficking and keep firearms out of dangerous hands. Brady California thanks you for introducing SB 61.

**ARGUMENTS IN OPPOSITION:** According to California Rifle and Pistol Association:

SB 61 would significantly reduce long gun sales in California. This translates into a loss of manufacturing jobs at both the state and national levels, and a significant loss of revenue for California

**Exhibit 6**
**0171**
Provided by LRI History LLC    SB 61 (2019) Page 141 of 367

businesses. Additionally, this bill will significantly impact the millions of dollars of Federal Pitman Roberson tax money that would be earmarked to develop and enhance habitat critical for California's wildlife. The Department of Justice (DOJ), has estimated previous versions of this same bill's implementation alone will cost hundreds of thousands of dollars, and result in significant overtime hours for Department personal to perform the necessary analysis, development, testing, and implementation to various Department databases.

SB 61 will also effectively prohibit the creation of new businesses in California involving hands on instruction in the safe handling of firearms. Should this bill become law, certified firearm instructors would no longer be able acquire the necessary firearms without having to wait months, if not years, to conduct classes for groups such as the Boy Scouts of America, Hunter Education, Youth shooting sports, and other clubs or organizations that wish to participate in firearm safety classes.

The author and proponents have argued in testimony there is no legitimate reason for anyone to need to purchase more than one firearm a month. There are, in fact, numerous legitimate recreational and Second Amendment protected reasons why an individual might want, and need, to transfer more than one firearm a month. For example, someone new to the sport of recreational competitive shooting, 'Three Gun' competitions, may very well need to purchase a pistol, shotgun, and rifle without having to wait 30 days between each purchase. This bill would require someone wanting to acquire all three types of firearms to undergo a process that would take at least 70 days assuming everything goes smoothly. The procedure for purchasing these firearms is already very time and travel intensive. Each transaction requiring a trip to the licensed dealer.

Currently individuals in California must go through the following steps to purchase a firearm; Obtain a firearm safety certificate; Go to a California licensed firearms dealer; Complete 4473 and (Dealer Record of Sales) DROS applications; Pass the required background check; Wait the required 10 days; Go back to dealer; Perform a safe handling demonstration; Pick up first firearm. Under SB 61 the individual would have to wait the required 30 days, then go back to dealer again; and repeat the process for each subsequent purchase.

**Exhibit 6**
**0172**

**Provided by LRI History LLC**

Both California and Federal law already address the author's concerns regarding the trafficking of firearms by narrowly limiting the number of firearms an individual can sell. Rather than having the desired effect of targeting criminals, this bill will impact only the law abiding, thereby further limiting available funding to DOJ.

SB 61, does allow for numerous exemptions to the restriction which do not apply to the general public, though well intended by the author will create a nightmare DOJ and law enforcement to implement and enforce. Additionally, the author has argued this bill is necessary because the vast majority of firearms recovered from APPS seizures are long guns. However, data from the Bureau of Alcohol, Tobacco, Firearms and Explosives, ATF, clearly shows the vast majority of firearms recovered by law enforcement are handguns, which are already subject to the 30-day restriction, illustrating the restrictions ineffectiveness at reducing crime.

The author and proponents have tried three previous versions of this bill in the last three years. All vetoed by Governor Brown; 2016: AB 1674, 2017: SB 497 and in 2018: SB 1177. In his 2018 veto statement the Governor stated: "I am returning SB 1177 without my signature. This bill prohibits any person from purchasing more than one long-gun per month. I vetoed a substantially similar bill in 2016, and my views have not changed", in his 2016 veto statement Governor Brown said in part; " while well-intended, I believe this bill would have the effect of burdening lawful citizens who wish to sell certain firearms that they no longer need. Given California's stringent laws restricting gun ownership, I do not believe this additional restriction is needed".

Prepared by:  Gabe Caswell / PUB. S. /
9/13/19 19:33:29

**** **END** ****

Exhibit 6
0173
Provided by LRI History LLC                SB 61 (2019)  Page 143 of 367

Date of Hearing: June 25, 2019
Chief Counsel: Gregory Pagan

ASSEMBLY COMMITTEE ON PUBLIC SAFETY
Reginald Byron Jones-Sawyer, Sr., Chair

SB 61 (Portantino) – As Amended June 11, 2019

**SUMMARY:** Prohibits the sale of a semiautomatic centerfire rifle to any person under 21 years of age, and prohibits a person from making an application to purchase more than one long gun in any 30-day period, except as specified. Specifically, **this bill**:

1) Prohibits a person from making an application to purchase more than one firearm of any type within any 30-day period and makes conforming changes to the existing prohibition against the purchase of more than one handgun in any 30-day period. (Pen. Code, § 27535, subd. (a).)

2) Adds the following entities to the existing exemption to the 30-day prohibition relating to sale of handguns:

   a) The purchase of a firearm other than a handgun by a person who possesses a valid, unexpired hunting license issued by the Department of Fish and Wildlife;

   b) The acquisition of a firearm, other than a handgun, at an auction or similar event conducted by a nonprofit public benefit, or mutual benefit corporation to fund the activities of that corporation or local chapter of that corporation; and,

   c) Clarifies that for the purpose of the above exemption, the frame or receiver of a firearm is a handgun, unless the application to purchase and delivered to the recipient is equipped with, is attached to, or is currently accompanied by, a barrel of 16 inches or greater in length.

3) Provides that effective January 1, 2021 a licensed firearms dealer shall not sell, supply, deliver, or give a semiautomatic centerfire rifle to any person under 21 years of age. This provision shall not apply to any of the following persons 18 years of age or older:

   a) An active peace officer, who is authorized to carry a firearm in the course and scope of his or her employment;

   b) An active federal officer, or law enforcement agent, who is authorized to carry a firearm in the course and scope of his or her employment;

   c) A reserve peace officer, who is authorized to carry a firearm in the course and scope of his or her employment;

   d) An active member of the United States Armed Forces, the National Guard, the Air national Guard, or the active reserve components of the United States, where the

**Exhibit 6**
**0174**
Provided by LRI History LLC                    SB 61 (2019) Page 144 of 367

individuals in these organizations are properly identified. Proper identification includes the Armed Forces Identification Card or other written documentation certifying that the individual is an active or honorably retired member; and,

e) A person who possesses a valid, unexpired hunting license issued by the Department of Fish and Wildlife and a certificate of eligibility issued by the Department of Justice (DOJ).

## EXISTING LAW:

1) Prohibits a licensed firearms dealer from selling, supplying, or giving possession or control of a firearm to any person under 21 years of age. (Pen. Code, § 27510, subd. (a).)

2) Provides that the above prohibition does not apply to or affect the sale, supplying, or giving possession or control of a firearm to any person 18 years of age or older who possesses a valid, unexpired hunting license issued by the Department of Fish and Wildlife. (Pen. Code, § 27510, subd. (b)(1).)

3) Exempts the sale of a firearm, that is not a handgun, to the following persons that are 18 years of age or older:

   a) An active peace officer, who is authorized to carry a firearm in the course and scope of his or her employment;

   b) An active federal officer, or law enforcement agent, who is authorized to carry a firearm in the course and scope of his or her employment;

   c) A reserve peace officer, who is authorized to carry a firearm in the course and scope of his or her employment; and,

   d) An active member of the United States Armed Forces, the National Guard, the Air national Guard, or the active reserve components of the United States, where the individuals in these organizations are properly identified. Proper identification includes the Armed Forces Identification Card or other written documentation certifying that the individual is an active or honorably retired member. (Pen. Code, §27510, subd. (b)(2).)

4) Prohibits any person from making an application to purchase more than one handgun within any 30-day period. (Pen. Code, § 27535, subd. (a).)

5) Exempts from the above 30-day prohibition any of the following:

   a) Any law enforcement agency;

   b) Any agency duly authorized to perform law enforcement duties;

   c) Any state or local correctional facility;

   d) Any private security company licensed to do business in California;

**Exhibit 6**
**0175**
Provided by LRI History LLC                              **SB 61 (2019)  Page 145 of 367**

e) Any person who is a peace officer, as specified, and is authorized to carry a firearm in the course and scope of employment;

f) Any motion picture, television, video production company or entertainment or theatrical company whose production by its nature involves a firearm;

g) Any authorized representative of a law enforcement agency, or a federally licensed firearms importer or manufacturer;

h) Any private party transaction conducted through a licensed firearms dealer;

i) Any person who is a licensed collector and has a current certificate of eligibility issued by the DOJ;

j) The exchange, replacement, or return of a handgun to a licensed dealer within the 30-day period; and,

k) A community college that is certified by the Commission on Peace Officer Standards and Training (POST) to present law enforcement academy basic course or other commission-certified training. (Pen. Code, § 27535, subd. (b).)

6) Provides that a person may request a certificate of eligibility form the DOJ, and requires the department to examine its records and records available to the department in the National Instant Criminal Background Check System (NICS) in order to determine if the applicant is prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm. (Pen. Code, § 26710, subds. (a) & (b).)

7) Requires DOJ to issue a certificate of eligibility to an applicant if the if the department's records indicate that the person is not a person who is prohibited by state or federal law from possessing a firearm, and requires the department regulations to administer the certificate of eligibility program and shall recover the full costs of administering the program by imposing fees assessed to applicants who apply for those certificates. (Pen. Code, § 26710, subds. (c) & (d).)

**FISCAL EFFECT**: Unknown

**COMMENTS**:

1) **Author's Statement:** According to the author, "More and more shootings are occurring with long guns so it is important that we treat the laws of both handguns and long guns the same. The law that passed last year requiring no one under the age of 21 to purchase a firearm has exemptions that we are strengthening and tightening when it comes to the purchase of semi-automatic center fire rifle by requiring the person to obtain a CEO with the DOJ as well."

2) **Governor's Vetoes:** AB 1174 (Santiago), of the 2015-2016 Legislative Session, and SB 1177 (Portantino), of the 2017-2018 Legislative Session, each prohibited any person from making more than one application to purchase a long gun within any 30 day period. Both AB 1174 and SB 1177 were vetoed by the Governor.

**Exhibit 6**
**0176**
Provided by LRI History LLC
**SB 61 (2019) Page 146 of 367**

In regard to AB 1174, the Governor stated in his veto message, "This bill generally prohibits the purchase of more than one firearm within any 30 day period. It should be noted that California already bans the purchase of more than one handgun per month. While well intentioned, I believe this bill would have the effect of burdening lawful citizens who wish to sell certain firearms they no longer need. Given California's restricting gun ownership, I do not believe this additional restriction is needed."

In regard to SB 1177, the Governor stated in his veto message, "This bill prohibits a person from purchasing more than one long-gun per month. I vetoed a substantially similar bill in 2016, and my views have not changed."

3) **Argument in Support:** According to the *Ventura County Board of Supervisors*, "As you know, Ventura County was the site of the November 2018 shooting at the Borderline bar, which tragically resulted in 12 deaths. This mass shooting has left our community shattered and in search of ways to prevent similar tragedies. We appreciate the Legislature's multi-- - pronged effort to advance legislation in 2019 that reduces the likelihood that persons who pose a threat to themselves or others are restricted from possessing firearms. As a general policy, the County of Ventura supports legislation that reduces the likelihood of accidental or intentional homicides and, in particular, mass homicides.

"We believe SB 61 would be part of the solution in reducing gun violence. It would make long guns generally subject to the same purchasing restrictions as handguns. Limitations imposed on the purchase of handguns were enacted 20 years ago (AB 202, 1999). That legislation was intended to reduce the illegal flow of handguns by eliminating the opportunity to sell guns from bulk purchases on the black market. SB 61 would apply the law enacted under AB 202 to long guns, as specified. It would, however, include several narrow exceptions."

4) **Argument in Opposition:** According to the California Rifle and Pistol Association "SB 61 would significantly reduce long gun sales in California. This translates into a loss of manufacturing jobs at both the state and national levels, and a significant loss of revenue for California businesses. Additionally, this bill will significantly impact the millions of dollars of Federal Pitman Roberson tax money that would be earmarked to develop and enhance habitat critical for California's wildlife. The Department of Justice (DOJ), has estimated previous versions of this same bill's implementation alone will cost hundreds of thousands of dollars, and result in significant overtime hours for Department personal to perform the necessary analysis, development, testing, and implementation to various Department databases.

"SB 61 will also effectively prohibit the creation of new businesses in California involving hands on instruction in the safe handling of firearms. Should this bill become law, certified firearm instructors would no longer be able acquire the necessary firearms without having to wait months, if not years, to conduct classes for groups such as the Boy Scouts of America, Hunter Education, Youth shooting sports, and other clubs or organizations that wish to participate in firearm safety classes.

"You and your proponents argued in testimony there is no legitimate reason for anyone to need to purchase more than one firearm a month. There are, in fact, numerous legitimate

**Exhibit 6**
**0177**
Provided by LRI History LLC
SB 61 (2019) Page 147 of 367

recreational and Second Amendment protected reasons why an individual might want, and need, to transfer more than one firearm a month. For example, someone new to the sport of recreational competitive shooting, 'Three Gun' competitions, may very well need to purchase a pistol, shotgun, and rifle without having to wait 30 days between each purchase. This bill would require someone wanting to acquire all three types of firearms to undergo a process that would take at least 70 days assuming everything goes smoothly. The procedure for purchasing these firearms is already very time and travel intensive. Each transaction requiring a trip to the licensed dealer.

"Currently individuals in California must go through the following steps to purchase a firearm; Obtain a firearm safety certificate; Go to a California licensed firearms dealer; Complete 4473 and (Dealer Record of Sales) DROS applications; Pass the required background check; Wait the required 10 days; Go back to dealer; Perform a safe handling demonstration; Pick up first firearm. Under SB 61 the individual would have to wait the required 30 days, then go back to dealer again; and repeat the process for each subsequent purchase."

"Both California and Federal law already address your concerns regarding the trafficking of firearms by narrowly limiting the number of firearms an individual can sell. Rather than having the desired effect of targeting criminals, this bill will impact only the law abiding, thereby further limiting available funding to DOJ."

5) **Prior Legislation:**

   a) SB 1100 (Portantino), Chapter 894, Statutes of 2018, increased the age for which a person can purchase a long-gun from a licensed dealer from 18-21 years of age, except as specified.

   b) SB 1177 (Portantino), of the 2017-2018 Legislative Session, prohibited any person from making more than one application to purchase more than one long one within any 30 day period. SB 1177 was vetoed by the Governor.

   c) AB 1674 (Santiago), of the 2015-2016 Legislative Session, prohibited any person from making more than one application to purchase more than one long gun within any 30 day period. SB 1674 was vetoed by the Governor.

**REGISTERED SUPPORT / OPPOSITION**:

**Support**

Bay Area Student Activists
Brady California United Against Gun Violence
California Police Chiefs Association
Coalition Against Gun Violence, A Santa Barbara County Coalition
Laguna Woods Democratic Club
Los Angeles City Attorney
Los Angeles County Board of Supervisors
Physicians for Social Responsibility - San Francisco Bay Area Chapter

**Exhibit 6**
**0178**
**Provided by LRI History LLC**
**SB 61 (2019) Page 148 of 367**

Ventura County Board of Supervisors
Women For: Orange County

**Oppose**

California Rifle and Pistol Association, Inc.
California Sportsman's Lobby, Inc.
Gun Owners of California, Inc.
National Rifle Association - Institute for Legislative Action
National Shooting Sports Foundation, Inc.
Outdoor Sportsmen's Coalition of California
Safari Club International - California Chapters

**Analysis Prepared by**: Gregory Pagan / PUB. S. / (916) 319-3744

**Exhibit 6**
**0179**
**Provided by LRI History LLC**                    **SB 61 (2019)  Page 149 of 367**

Date of Hearing: July 10, 2019

### ASSEMBLY COMMITTEE ON APPROPRIATIONS
Lorena Gonzalez, Chair
SB 61 (Portantino) – As Amended June 11, 2019

Policy Committee: Public Safety                        Vote:   5 - 2

Urgency: No          State Mandated Local Program: Yes          Reimbursable: Yes

**SUMMARY**:

This bill prohibits a person from making an application to purchase more than one firearm of any type within any 30-day period. This bill specifically prohibits a person from making an application to purchase more than one long gun in any 30-day period unless the person has a hunting license issued by the Department of Fish and Wildlife and a certificate of eligibility issued by the Department of Justice (DOJ). This bill also prohibits, beginning January 1, 2021, the sale of a semiautomatic centerfire rifle to any person under 21 years of age.

**FISCAL EFFECT**:

1) DOJ estimates an overall annual revenue reduction of 10% in fee collection (Firearms Safety and Enforcement Fund/Dealer Record of Sale Special Account) resulting from fewer firearm purchases, equating to an overall loss of $2.23 million dollars annually.

2) Sales tax revenue loss (GF) likely in the hundreds of thousands of dollars to low millions of dollars annually due to the limitation on the number of firearms that may be purchased in a 30-day period.

3) One-time costs (GF/Dealer Record of Sale Account) of $281,000 to the DOJ for limited term information technology staff and equipment to update systems to track both handguns and long guns to ensure only one purchase within a 30-day period.

**COMMENTS**:

1) **Purpose.** According to the author:

   More and more shootings are occurring with long guns so it is important that we treat the laws of both handguns and long guns the same. The law that passed last year requiring no one under the age of 21 to purchase a firearm has exemptions that we are strengthening and tightening when it comes to the purchase of semi-automatic center fire rifle by requiring the person to obtain a [certificate of eligibility] with the DOJ as well.

2) **Dealer Record of Sale (DROS) Special Account.** The DROS Special Account has experienced significant revenue decreases in recent years to the extent that it is structurally imbalanced. Penal Code section 30015, subdivision (a) codified the allocation of $24 million dollars from the DROS Special Account to address the APPS backlog in 2013 largely resulting in the structural imbalance. AB 74 (Committee on Budget), Chapter 23, Statutes of 2019, allocates approximately $22 million dollars to backfill the DROS Special Account.

**Exhibit 6**
**0180**
Provided by LRI History LLC                                          **SB 61 (2019) Page 150 of 367**

Additionally, existing law specifically limits how DOJ may use DROS funds, including costs associated with the Armed Prohibited Persons System (APPS), background checks, inspection for security and safe storage, regulating transfer for sale via the internet, certain public education campaigns, private patrol operator regulations and re-testing for not unsafe handguns. DOJ is not authorized to use DROS funds for general law enforcement purposes.

Over the past five years, there is increasing litigation over whether DOJ is improperly using DROS funds. Case law prohibits taxing a constitutional right unless it is necessary to meet the "expense incident to the administration of the act and to the maintenance of public order in the matter licensed." <u>Cox v. New Hampshire</u> (1941) 312 U.S. 569, 577. Further loss of revenue to the DROS Special Account due to the reduction in the number of firearms sold may result in increased fees and a greater need to use DROS funds for general law enforcement activities. This may result in more litigation and associated costs.

3) **Related Legislation.** AB 1669 (Bonta) creates the Dealers' Record of Sale Supplemental Subaccount within the DROS Special Account to offset the reasonable costs of firearms-related regulatory and enforcement activities related to the sale, purchase, manufacturing, lawful or unlawful possession, loan, or transfer of firearms. AB 1669 is pending hearing in the Senate Public Safety Committee.

4) **Prior Legislation.**

   a) SB 1100 (Portantino), Chapter 894, Statutes of 2018, increased the minimum age, from 18 years to 21 years, for which a person may purchase a long-gun from a licensed dealer, except as specified.

   b) SB 1177 (Portantino), of the 2017-2018 Legislative Session, prohibited any person from making more than one application to purchase more than one long gun within any 30-day period. SB 1177 was vetoed by the Governor.

   c) AB 1674 (Santiago), of the 2015-2016 Legislative Session, prohibited any person from making more than one application to purchase more than one long gun within any 30-day period. SB 1674 was vetoed by the Governor.

**Analysis Prepared by**: Kimberly Horiuchi / APPR. / (916) 319-2081

**Exhibit 6**
**0181**
**Provided by LRI History LLC**          **SB 61 (2019) Page 151 of 367**

SENATE THIRD READING
SB 61 (Portantino)
As Amended September 3, 2019
Majority vote

## SUMMARY:

Prohibits the sale of a semiautomatic centerfire rifle to any person under 21 years of age, and prohibits a person from making an application to purchase more than one semiautomatic centerfire rifle in any 30-day period, except as specified.

### Major Provisions

1) Prohibits a person from making an application to purchase more than one centerfire automatic rifle within any 30-day period and makes conforming changes to the existing prohibition against the purchase of more than one handgun in any 30-day period.

2) Adds the following entities to the existing exemption to the 30-day prohibition relating to sale of handguns:

   a) The purchase of a firearm other than a handgun by a person who possesses a valid, unexpired hunting license issued by the Department of Fish and Wildlife;

   b) The acquisition of a firearm, other than a handgun, at an auction or similar event conducted by a nonprofit public benefit, or mutual benefit corporation to fund the activities of that corporation or local chapter of that corporation; and,

   c) Clarifies that for the purpose of the above exemption, the frame or receiver of a firearm is a handgun, unless the application to purchase and delivered to the recipient is equipped with, is attached to, or is currently accompanied by, a barrel of 16 inches or greater in length.

3) Provides that a licensed firearms dealer shall not sell, supply, deliver, or give possession of a firearm to any person under 21 years of age. This provision shall not apply to or affect the sale of a firearm that is not a handgun or a semiautomatic centerfire rifle to a person 18 years of age or older that possesses a valid unexpired hunting license issued by the Department of Fish and Wildlife, or is an honorably discharged member of the United States military.

4) States that the provisions of this bill are severable.

## COMMENTS:

### According to the Author:

"More and more shootings are occurring with long guns so it is important that we treat the laws of both handguns and long guns the same. The law that passed last year requiring no one under the age of 21 to purchase a firearm has exemptions that we are strengthening and tightening when it comes to the purchase of semi-automatic center fire rifle by requiring the person to obtain a CEO with the DOJ as well."

**Exhibit 6**
**0182**

**Provided by LRI History LLC**    **SB 61 (2019) Page 152 of 367**

**Arguments in Support:**

According to the Ventura County Board of Supervisors, "As you know, Ventura County was the site of the November 2018 shooting at the Borderline bar, which tragically resulted in 12 deaths. This mass shooting has left our community shattered and in search of ways to prevent similar tragedies. We appreciate the Legislature's multi-¬- pronged effort to advance legislation in 2019 that reduces the likelihood that persons who pose a threat to themselves or others are restricted from possessing firearms. As a general policy, the County of Ventura supports legislation that reduces the likelihood of accidental or intentional homicides and, in particular, mass homicides.

"We believe SB 61 would be part of the solution in reducing gun violence. It would make long guns generally subject to the same purchasing restrictions as handguns. Limitations imposed on the purchase of handguns were enacted 20 years ago (AB 202, 1999). That legislation was intended to reduce the illegal flow of handguns by eliminating the opportunity to sell guns from bulk purchases on the black market. SB 61 would apply the law enacted under AB 202 to long guns, as specified. It would, however, include several narrow exceptions."

**Arguments in Opposition:**

According to the California Rifle and Pistol Association "SB 61 would significantly reduce long gun sales in California. This translates into a loss of manufacturing jobs at both the state and national levels, and a significant loss of revenue for California businesses. Additionally, this bill will significantly impact the millions of dollars of Federal Pitman Roberson tax money that would be earmarked to develop and enhance habitat critical for California's wildlife. The Department of Justice (DOJ), has estimated previous versions of this same bill's implementation alone will cost hundreds of thousands of dollars, and result in significant overtime hours for Department personal to perform the necessary analysis, development, testing, and implementation to various Department databases.

"SB 61 will also effectively prohibit the creation of new businesses in California involving hands on instruction in the safe handling of firearms. Should this bill become law, certified firearm instructors would no longer be able acquire the necessary firearms without having to wait months, if not years, to conduct classes for groups such as the Boy Scouts of America, Hunter Education, Youth shooting sports, and other clubs or organizations that wish to participate in firearm safety classes.

"You and your proponents argued in testimony there is no legitimate reason for anyone to need to purchase more than one firearm a month. There are, in fact, numerous legitimate recreational and Second Amendment protected reasons why an individual might want, and need, to transfer more than one firearm a month. For example, someone new to the sport of recreational competitive shooting, 'Three Gun' competitions, may very well need to purchase a pistol, shotgun, and rifle without having to wait 30 days between each purchase. This bill would require someone wanting to acquire all three types of firearms to undergo a process that would take at least 70 days assuming everything goes smoothly. The procedure for purchasing these firearms is already very time and travel intensive. Each transaction requiring a trip to the licensed dealer.

"Currently individuals in California must go through the following steps to purchase a firearm; Obtain a firearm safety certificate; Go to a California licensed firearms dealer; Complete 4473 and (Dealer Record of Sales) DROS applications; Pass the required background check; Wait the required 10 days; Go back to dealer; Perform a safe handling demonstration; Pick up first

**Exhibit 6**

**0183**

**Provided by LRI History LLC**

**SB 61 (2019) Page 153 of 367**

firearm. Under SB 61 the individual would have to wait the required 30 days, then go back to dealer again; and repeat the process for each subsequent purchase."

"Both California and Federal law already address your concerns regarding the trafficking of firearms by narrowly limiting the number of firearms an individual can sell. Rather than having the desired effect of targeting criminals, this bill will impact only the law abiding, thereby further limiting available funding to DOJ."

## FISCAL COMMENTS:

According to the Assembly Appropriations Committee:

1) DOJ estimates an overall annual revenue reduction of 10% in fee collection (Firearms Safety and Enforcement Fund/Dealer Record of Sale Special Account) resulting from fewer firearm purchases, equating to an overall loss of $2.23 million dollars annually.

2) Sales tax revenue loss (General Fund (GF)) likely in the hundreds of thousands of dollars annually due to the limitation on the number of centerfire semiautomatic rifles that may be purchased in a 30-day period.

3) One-time costs (GF/Dealer Record of Sale Account) of less than $100,000 to the DOJ for limited term information technology staff and equipment to update systems to track centerfire semiautomatic rifles to ensure only one purchase within a 30-day period.

## VOTES:

**SENATE FLOOR: 27-10-1**
**YES:** Allen, Archuleta, Atkins, Beall, Bradford, Caballero, Dodd, Durazo, Galgiani, Glazer, Hertzberg, Hill, Hueso, Hurtado, Jackson, Leyva, McGuire, Mitchell, Monning, Pan, Portantino, Rubio, Skinner, Stern, Umberg, Wieckowski, Wiener
**NO:** Bates, Borgeas, Chang, Grove, Jones, Moorlach, Morrell, Nielsen, Stone, Wilk
**ABS, ABST OR NV:** Roth

**ASM PUBLIC SAFETY: 5-2-1**
**YES:** Jones-Sawyer, Bauer-Kahan, Quirk, Santiago, Wicks
**NO:** Lackey, Mathis
**ABS, ABST OR NV:** Kamlager-Dove

**ASM APPROPRIATIONS: 13-5-0**
**YES:** Gonzalez, Bloom, Bonta, Calderon, Carrillo, Chau, Eggman, Gabriel, Eduardo Garcia, Maienschein, Petrie-Norris, Quirk, Robert Rivas
**NO:** Bigelow, Brough, Diep, Fong, Obernolte

## UPDATED:

VERSION: September 3, 2019

CONSULTANT: Gregory Pagan (Counsel)/ PUB. S. / (916) 319-3744          FN: 0001642

**Exhibit 6**
**0184**
**Provided by LRI History LLC**          **SB 61 (2019)  Page 154 of 367**

SENATE THIRD READING
SB 61 (Portantino)
As Amended September 6, 2019
Majority vote

## SUMMARY:

Prohibits the sale of a semiautomatic centerfire rifle to any person under 21 years of age, and prohibits a person from making an application to purchase more than one semiautomatic centerfire rifle in any 30-day period, except as specified.

### Major Provisions

1) Prohibits a person from making an application to purchase more than one centerfire automatic rifle within any 30-day period and makes conforming changes to the existing prohibition against the purchase of more than one handgun in any 30-day period.

2) Adds the following entities to the existing exemption to the 30-day prohibition relating to sale of handguns:

   a) The purchase of a firearm other than a handgun by a person who possesses a valid, unexpired hunting license issued by the Department of Fish and Wildlife;

   b) The acquisition of a firearm, other than a handgun, at an auction or similar event conducted by a nonprofit public benefit, or mutual benefit corporation to fund the activities of that corporation or local chapter of that corporation; and,

   c) Clarifies that for the purpose of the above exemption, the frame or receiver of a firearm is a handgun, unless the application to purchase and delivered to the recipient is equipped with, is attached to, or is currently accompanied by, a barrel of 16 inches or greater in length.

3) Provides that a licensed firearms dealer shall not sell, supply, deliver, or give possession of a firearm to any person under 21 years of age. This provision shall not apply to or affect the sale of a firearm that is not a handgun or a semiautomatic centerfire rifle to a person 18 years of age or older that possesses a valid unexpired hunting license issued by the Department of Fish and Wildlife, or is an honorably discharged member of the United States military.

4) States that the provisions of this bill are severable.

## COMMENTS:

### According to the Author:

"More and more shootings are occurring with long guns so it is important that we treat the laws of both handguns and long guns the same. The law that passed last year requiring no one under the age of 21 to purchase a firearm has exemptions that we are strengthening and tightening when it comes to the purchase of semi-automatic center fire rifle by requiring the person to obtain a CEO with the [Department of Justtice] as well."

**Exhibit 6**
**0185**

**Arguments in Support:**
According to the Ventura County Board of Supervisors, "As you know, Ventura County was the site of the November 2018 shooting at the Borderline bar, which tragically resulted in 12 deaths. This mass shooting has left our community shattered and in search of ways to prevent similar tragedies. We appreciate the Legislature's multi-¬- pronged effort to advance legislation in 2019 that reduces the likelihood that persons who pose a threat to themselves or others are restricted from possessing firearms. As a general policy, the County of Ventura supports legislation that reduces the likelihood of accidental or intentional homicides and, in particular, mass homicides.

"We believe SB 61 would be part of the solution in reducing gun violence. It would make long guns generally subject to the same purchasing restrictions as handguns. Limitations imposed on the purchase of handguns were enacted 20 years ago (AB 202, 1999). That legislation was intended to reduce the illegal flow of handguns by eliminating the opportunity to sell guns from bulk purchases on the black market. SB 61 would apply the law enacted under AB 202 to long guns, as specified. It would, however, include several narrow exceptions."

**Arguments in Opposition:**
According to the California Rifle and Pistol Association "SB 61 would significantly reduce long gun sales in California. This translates into a loss of manufacturing jobs at both the state and national levels, and a significant loss of revenue for California businesses. Additionally, this bill will significantly impact the millions of dollars of Federal Pitman Roberson tax money that would be earmarked to develop and enhance habitat critical for California's wildlife. The Department of Justice (DOJ), has estimated previous versions of this same bill's implementation alone will cost hundreds of thousands of dollars, and result in significant overtime hours for Department personal to perform the necessary analysis, development, testing, and implementation to various Department databases.

"SB 61 will also effectively prohibit the creation of new businesses in California involving hands on instruction in the safe handling of firearms. Should this bill become law, certified firearm instructors would no longer be able acquire the necessary firearms without having to wait months, if not years, to conduct classes for groups such as the Boy Scouts of America, Hunter Education, Youth shooting sports, and other clubs or organizations that wish to participate in firearm safety classes.

"You and your proponents argued in testimony there is no legitimate reason for anyone to need to purchase more than one firearm a month. There are, in fact, numerous legitimate recreational and Second Amendment protected reasons why an individual might want, and need, to transfer more than one firearm a month. For example, someone new to the sport of recreational competitive shooting, 'Three Gun' competitions, may very well need to purchase a pistol, shotgun, and rifle without having to wait 30 days between each purchase. This bill would require someone wanting to acquire all three types of firearms to undergo a process that would take at least 70 days assuming everything goes smoothly. The procedure for purchasing these firearms is already very time and travel intensive. Each transaction requiring a trip to the licensed dealer.

"Currently individuals in California must go through the following steps to purchase a firearm; Obtain a firearm safety certificate; Go to a California licensed firearms dealer; Complete 4473 and (Dealer Record of Sales) DROS applications; Pass the required background check; Wait the required 10 days; Go back to dealer; Perform a safe handling demonstration; Pick up first

**Exhibit 6**
**0186**
**Provided by LRI History LLC**          **SB 61 (2019) Page 156 of 367**

firearm. Under SB 61 the individual would have to wait the required 30 days, then go back to dealer again; and repeat the process for each subsequent purchase."

"Both California and Federal law already address your concerns regarding the trafficking of firearms by narrowly limiting the number of firearms an individual can sell. Rather than having the desired effect of targeting criminals, this bill will impact only the law abiding, thereby further limiting available funding to DOJ."

## FISCAL COMMENTS:

According to the Assembly Appropriations Committee:

1) DOJ estimates an overall annual revenue reduction of 10% in fee collection (Firearms Safety and Enforcement Fund/Dealer Record of Sale Special Account) resulting from fewer firearm purchases, equating to an overall loss of $2.23 million dollars annually.

2) Sales tax revenue loss (General Fund (GF)) likely in the hundreds of thousands of dollars annually due to the limitation on the number of centerfire semiautomatic rifles that may be purchased in a 30-day period.

3) One-time costs (GF/Dealer Record of Sale Account) of less than $100,000 to the DOJ for limited term information technology staff and equipment to update systems to track centerfire semiautomatic rifles to ensure only one purchase within a 30-day period.

## VOTES:

**SENATE FLOOR: 27-10-1**
**YES:** Allen, Archuleta, Atkins, Beall, Bradford, Caballero, Dodd, Durazo, Galgiani, Glazer, Hertzberg, Hill, Hueso, Hurtado, Jackson, Leyva, McGuire, Mitchell, Monning, Pan, Portantino, Rubio, Skinner, Stern, Umberg, Wieckowski, Wiener
**NO:** Bates, Borgeas, Chang, Grove, Jones, Moorlach, Morrell, Nielsen, Stone, Wilk
**ABS, ABST OR NV:** Roth

**ASM PUBLIC SAFETY: 5-2-1**
**YES:** Jones-Sawyer, Bauer-Kahan, Quirk, Santiago, Wicks
**NO:** Lackey, Mathis
**ABS, ABST OR NV:** Kamlager-Dove

**ASM APPROPRIATIONS: 13-5-0**
**YES:** Gonzalez, Bloom, Bonta, Calderon, Carrillo, Chau, Eggman, Gabriel, Eduardo Garcia, Maienschein, Petrie-Norris, Quirk, Robert Rivas
**NO:** Bigelow, Brough, Diep, Fong, Obernolte

## UPDATED:

VERSION: September 6, 2019

CONSULTANT: Gregory Pagan (Counsel) / PUB. S. / (916) 319-3744          FN: 0002053

**Exhibit 6**
**0187**

**Provided by LRI History LLC**

THIRD READING

| | |
|---|---|
| Bill No: | SB 61 |
| Author: | Portantino (D), et al. |
| Amended: | 5/17/19 |
| Vote: | 21 |

SENATE PUBLIC SAFETY COMMITTEE:  5-2, 4/2/19
AYES:  Skinner, Bradford, Jackson, Mitchell, Wiener
NOES:  Moorlach, Morrell

SENATE APPROPRIATIONS COMMITTEE: 4-2, 5/16/19
AYES:  Portantino, Bradford, Hill, Wieckowski
NOES:  Bates, Jones

**SUBJECT:**  Firearms:  transfers

**SOURCE:**   Author

**DIGEST:**   This bill is to extends the prohibition on purchasing more than one handgun a month to include all firearms.

**ANALYSIS:**

Existing law:

1) Prohibits a person from making more than one application to purchase a handgun within any 30-day period. (Pen. Code § 27535.)

2) Prohibits a firearms dealer from delivering a handgun to a person whenever the dealer is notified by the Department of Justice that within the preceding 30-day period the purchaser has made another application to purchase a handgun that does not fall within an exception to the 30-day prohibition. A violation of that delivery prohibition by the dealer is a crime. (Pen. Code § 27540.)

**Exhibit 6**

**0188**

**Provided by LRI History LLC**                          SB 61 (2019)  Page 158 of 367

3) Exempts the following from the one handgun a month prohibition: (Pen. Code, § 27535, subd. (b).)

   a) Any law enforcement agency.

   b) Any agency duly authorized to perform law enforcement duties.

   c) Any state or local correctional facility.

   d) Any private security company licensed to do business in California.

   e) Any person who is properly identified as a full-time paid peace officer and who is authorized to, and does carry a firearm during the course and scope of employment as a peace officer.

   f) Any motion picture, television, or video production company or entertainment or theatrical company whose production by its nature involves the use of a firearm.

   g) Any person who may make a valid claim an exemption from the waiting period set forth in Section 27540.

   h) Any transaction conducted through a licensed firearms dealer pursuant to Chapter 5 (commencing with Section 28050).

   i) Any person who is licensed as a collector and has a current certificate of eligibility issued by the Department of Justice.

   j) The exchange of a handgun where the dealer purchased that firearm from the person seeking the exchange within the 30-day period immediately preceding the date of exchange or replacement.

   k) The replacement of a handgun when the person's handgun was lost or stolen, and the person reported that firearm lost or stolen prior to the completion of the application to purchase to any local law enforcement agency of the city, county, or city and county in which the person resides.

   l) The return of any handgun to its owner.

   m) A community college that is certified by the Commission on Peace Officer Standards and Training to present the law enforcement academy basic course or other commission-certified law enforcement training.

Exhibit 6
0189
Provided by LRI History LLC                                    SB 61 (2019)  Page 159 of 367

This bill:

1) Extends the prohibition on purchasing more than one handgun a month to all firearms, including long guns.

2) Exempts the following from the one handgun a month prohibition: (Pen. Code, § 27535, subd. (b).)

   a) Any law enforcement agency.

   b) Any agency duly authorized to perform law enforcement duties.

   c) Any state or local correctional facility.

   d) Any private security company licensed to do business in California.

   e) Any person who is properly identified as a full-time paid peace officer and who is authorized to, and does carry a firearm during the course and scope of employment as a peace officer.

   f) Any motion picture, television, or video production company or entertainment or theatrical company whose production by its nature involves the use of a firearm.

   g) Any person who may make a valid claim an exemption from the waiting period set forth in Section 27540.

   h) Any transaction conducted through a licensed firearms dealer pursuant to Chapter 5 (commencing with Section 28050).

   i) Any person who is licensed as a collector and has a current certificate of eligibility issued by the Department of Justice.

   j) The exchange of a handgun where the dealer purchased that firearm from the person seeking the exchange within the 30-day period immediately preceding the date of exchange or replacement.

   k) The replacement of a handgun when the person's handgun was lost or stolen, and the person reported that firearm lost or stolen prior to the completion of the application to purchase to any local law enforcement agency of the city, county, or city and county in which the person resides.

**Exhibit 6**
**0190**
Provided by LRI History LLC                                    **SB 61 (2019)  Page 160 of 367**

l) The return of any handgun to its owner.

m) A community college that is certified by the Commission on Peace Officer Standards and Training to present the law enforcement academy basic course or other commission-certified law enforcement training,

3) Specifies that specified licensees shall not sell, supply, deliver, or give possession or control of a semiautomatic centerfire rifle to any person who is under 21 years of age, with specified exemptions.

## Background

*One Gun a Month.* According to the Senate Public Safety Analysis of Assembly Bill 202 (Knox, of 1999), which created the one-handgun-a-month law in California:

> The State of Virginia enacted a "one-handgun-a-month" law in 1993 (before the Federal Brady Bill, which required at least a five day waiting period plus a background check for states without such requirements). That state had weak restrictions on handgun sales and it has been stated that gun traffickers from New York City routinely traveled to Virginia to purchase quantities of weapons to take back for illegal sale in other states. Purchases of more than one handgun per 30-day period in Virginia is allowed upon completion of an "enhanced" background check when the purchase is for lawful business or personal use, for purposes of collectors, bulk sales and purchases from estates, to replace a lost or stolen weapon, and similar situations.

> Supporters of limits on purchases of handguns assume that the Virginia limits and the limits in this bill would only affect a very small proportion of legitimate handgun purchasers. A family of two adults could still purchase 24 handguns a year under the provisions of both this bill and the Virginia law.

Virginia repealed this law in 2012. But, according to the Law Center to Prevent Gun Violence:

> Virginia's one-gun-a-month law – which was in effect from 1993 to 2012 and prohibited the purchase of more than one handgun per person in any 30-day period – significantly reduced the number of

**Exhibit 6**
**0191**

crime guns traced to Virginia dealers. Virginia initially adopted its
law after the state became recognized as a primary source of crime
guns recovered in states in the northeastern U.S. After the law's
adoption, the odds of tracing a gun originally acquired in the
Southeast to a Virginia gun dealer (as opposed to a dealer in a
different southeastern state) dropped by:

- 71% for guns recovered in New York;
- 72% for guns recovered in Massachusetts; and
- 66% for guns recovered in New Jersey, New York, Connecticut, Rhode
  Island and Massachusetts combined.

(http://smartgunlaws.org/multiple-purchases-sales-of-firearms-policy-
summary/ [footnotes omitted].)

Other states that have limits on the number of firearms that can be sold in one
month include:

- California: California law prohibits any person from purchasing more than one
  handgun within any 30-day period. In addition, a licensed firearms dealer may
  not deliver a handgun to any person following notification from the California
  Department of Justice that the purchaser has applied to acquire a handgun
  within the preceding 30-day period. Finally, firearms dealers must
  conspicuously post in their licensed premises a warning, in block letters at least
  one inch in height, notifying purchasers of these restrictions.

- District of Columbia: A person may not register more than one handgun in the
  District during any 30-day period. Since every handgun must be registered, this
  amounts to a purchase and sale limitation of one handgun per 30-day period.

- Maryland: Maryland prohibits any person from purchasing more than one
  handgun or assault weapon within a 30-day period. Under limited
  circumstances, a person may be approved by the Secretary of the Maryland
  State Police to purchase multiple handguns or assault weapons in a 30-day
  period. Maryland also penalizes any dealer or other seller who knowingly
  participates in an illegal purchase of a handgun or assault weapon.

- New Jersey: New Jersey prohibits licensed firearms dealers from knowingly
  delivering more than one handgun to any person within any 30-day period.
  With limited exceptions, no person may purchase more than one handgun

**Exhibit 6**
**0192**
**Provided by LRI History LLC**                                    **SB 61 (2019) Page 162 of 367**

within any 30-day period. New Jersey requires a handgun purchaser to obtain a separate permit for each handgun purchased, and present the permit to the seller. The seller must keep a copy of each permit presented.

(http://smartgunlaws.org/multiple-purchases-sales-of-firearms-policy-summary/[footnotes omitted].)

*Assembly Bill 1674 (Santiago), of 2015: Veto Message.* The Governor stated in his veto message of Senate Bill 1674, which would have prohibited any person from making an application to purchase more than one firearm within any 30-day period:

> This bill generally prohibits the purchase of more than one firearm within any 30-day period. It should be noted that California already bans the purchase of more than one handgun per month.
>
> While well-intentioned, I believe this bill would have the effect of burdening lawful citizens who wish to sell certain firearms that they no longer need.
>
> Given California's stringent laws restricting gun ownership, I do not believe this additional restriction is needed.

*Senate Bill 1177 (Portantino), of 2018: Veto Message.* The Governor stated in his veto message of Senate Bill 1177, which would have prohibited any person from making an application to purchase more than one firearm within any 30-day period, with the same exemptions included in this bill:

> This bill prohibits any person from purchasing more than one long-gun per month.
>
> I vetoed a substantially similar bill in 2016, and my views have not changed.

*California Hunting Licenses.* This bill creates an exemption from the prohibition on persons under the age of 21 purchasing or receiving a long gun if the person under the age of 21 has a valid, unexpired hunting license. In order to obtain a hunting license in California a person must:

- Complete the California Hunter Education Certification requirements.
- Choose the correct type of hunting license.

**Exhibit 6**
**0193**

- Purchase a license through the California Department of Fish and Wildlife website or a California approved agent.

The Official California Hunter Safety Course is an online course that costs $28.95. There is no minimum age for the course. The course requires a follow-up course that is a 4-hour review of the online course with a certified hunter education instructor. The course includes a student demonstration of safe firearm handling and a test. Following completion of the follow-up course the enrollee receives a Hunter Education Certificate.

**FISCAL EFFECT:** Appropriation: No    Fiscal Com.:   Yes    Local:  Yes

According to the Senate Appropriations Committee:

*Fee revenue loss:*  The Department of Justice estimates an overall annual revenue reduction of 10 percent in fee collection resulting from fewer firearm purchases, equating to an overall annual loss of $2.23 million.   See comment below. (Various special funds)

*Tax revenue loss:*  Unknown, likely-significant loss in sales tax revenue resulting from the limitation on the number of long guns a person may purchase. (General Fund, local funds)

*System update:*  The Department of Justice anticipates that need of 1.0 limited-term Information Technology Specialist I in FY 2020-21 at a cost of $281,000, inclusive of attendant equipment and operating expenses. (Special fund*, General Fund)

* Dealers Record of Sale Special Account (DROS)—structurally imbalanced

**SUPPORT:** (Verified  5/16/19)

Bay Area Student Activists
Brady California United Against Gun Violence
Coalition Against Gun Violence
Giffords Law Center to Prevent Gun Violence
Los Angeles County Board of Supervisors
Los Angeles City Attorney

**OPPOSITION:** (Verified  5/16/19)

California Rifle and Pistol Association
California Sportsman's Lobby

**Exhibit 6**
**0194**

Gun Owners of California
National Shooting Sports Foundation
Outdoor Sportsmen's Coalition of California
Safari Club International
Safari Club International Foundation

**ARGUMENTS IN SUPPORT:** According to Brady California United Against Gun Violence:

In 1999, legislation (AB 202) was enacted that limits purchases of handguns from licensed firearms dealers in California to no more than one per person per 30-day period. The purpose of the bill was to curb the illegal flow of handguns by taking the profit out of selling guns from bulk purchases on the black market. SB 61 applies existing law under AB 202 to long guns, including rifles, shotguns, and lower receivers.

Under SB 61, firearms (handguns *and* long guns) will not be delivered whenever the dealer is notified by the Department of Justice that within the preceding 30-day period, the purchaser had made another application to purchase a firearm. Private party transactions will continue to be exempt. Additionally, rifle and shotgun (but not lower receiver) purchasers with a valid hunting license issued by the Department of Fish and Wildlife and the acquisition of a rifle or shotgun at an auction or similar event conducted by a nonprofit will be exempt.

It stands to reason that a person buying large quantities of guns at one time may be acting as a straw purchaser or gun trafficker. Moreover, firearms acquired this way are frequently used in crime. In fact, an ATF study of tracing data demonstrated that 22% of all handguns recovered in crime in 1999 were originally purchased as part of a multiple sale. A similar study found that 20% of all handguns recovered in crime in 2000 were originally purchased as part of a multiple sale. Additionally, a University of Pennsylvania report found that a quarter of all guns used in crime were purchased as part of a multiple-gun sale and that guns purchased in bulk were up to 64% more likely to be used for illegal purposes than guns purchased individually.

**Exhibit 6**
**0195**
**Provided by LRI History LLC**

Since 1999, Californians have typically purchased more long guns than handguns every year. Currently, these long guns include high powered featureless weapons with exchangeable magazines that enable rapid reload and lower receivers, which can be assembled into illegal military-style weapons. Limiting multiple-gun sales within a short period of time for such weapons, which are more lethal than handguns, is clearly in the interest of public safety.

The Department of Justice began to retain records of long gun purchases on January 1, 2014. An analysis of the transaction data from the period January 2014 through June 2015 shows that 81.9% of long guns were sold as a single long gun purchase within a 30-day period. *Clearly, the vast majority of long gun purchasers will not be impacted by SB 61.* However, at the opposite end of the spectrum, an individual purchased 177 long guns in two transactions within a one month period (April 2014). Furthermore, sales to single individuals ranging from 5 to 54 long guns per month occurred on 1,787 occasions, totaling 12,090 guns. Department data also shows that when multiple long guns are transferred in a sale, it is more than twice as likely that lower receivers are included. The largest bulk sale of long guns in one month to an individual (177 long guns) was composed *entirely* of lower receivers, which can be built into illegal assault weapons and sold on the black market.

Brady California believes that handguns and long guns should generally be subject to the same laws. Preventing the flow of illegal guns is important to public safety regardless of whether the firearm is a handgun or a long gun. Limiting firearms sales to one gun per 30-day period is a recognized strategy to reduce gun trafficking and keep firearms out of dangerous hands. Brady California thanks you for introducing SB 61.

**ARGUMENTS IN OPPOSITION:** According to California Rifle and Pistol Association:

SB 61 would significantly reduce long gun sales in California. This translates into a loss of manufacturing jobs at both the state and national levels, and a significant loss of revenue for California businesses. Additionally, this bill will significantly impact the millions of dollars of Federal Pitman Roberson tax money that would be earmarked to develop and enhance habitat critical for California's

**Exhibit 6**
**0196**
**Provided by LRI History LLC**

wildlife. The Department of Justice (DOJ), has estimated previous versions of this same bill's implementation alone will cost hundreds of thousands of dollars, and result in significant overtime hours for Department personal to perform the necessary analysis, development, testing, and implementation to various Department databases.

SB 61 will also effectively prohibit the creation of new businesses in California involving hands on instruction in the safe handling of firearms. Should this bill become law, certified firearm instructors would no longer be able acquire the necessary firearms without having to wait months, if not years, to conduct classes for groups such as the Boy Scouts of America, Hunter Education, Youth shooting sports, and other clubs or organizations that wish to participate in firearm safety classes.

The author and proponents have argued in testimony there is no legitimate reason for anyone to need to purchase more than one firearm a month. There are, in fact, numerous legitimate recreational and Second Amendment protected reasons why an individual might want, and need, to transfer more than one firearm a month. For example, someone new to the sport of recreational competitive shooting, 'Three Gun' competitions, may very well need to purchase a pistol, shotgun, and rifle without having to wait 30 days between each purchase. This bill would require someone wanting to acquire all three types of firearms to undergo a process that would take at least 70 days assuming everything goes smoothly. The procedure for purchasing these firearms is already very time and travel intensive. Each transaction requiring a trip to the licensed dealer.

Currently individuals in California must go through the following steps to purchase a firearm; Obtain a firearm safety certificate; Go to a California licensed firearms dealer; Complete 4473 and (Dealer Record of Sales) DROS applications; Pass the required background check; Wait the required 10 days; Go back to dealer; Perform a safe handling demonstration; Pick up first firearm. Under SB 61 the individual would have to wait the required 30 days, then go back to dealer again; and repeat the process for each subsequent purchase. Both California and Federal law already address the author's concerns regarding the trafficking of firearms by narrowly limiting the number of firearms an individual can sell. Rather than having the desired

Exhibit 6
0197
Provided by LRI History LLC

effect of targeting criminals, this bill will impact only the law abiding, thereby further limiting available funding to DOJ.

SB 61, does allow for numerous exemptions to the restriction which do not apply to the general public, though well intended by the author will create a nightmare DOJ and law enforcement to implement and enforce. Additionally, the author has argued this bill is necessary because the vast majority of firearms recovered from APPS seizures are long guns. However, data from the Bureau of Alcohol, Tobacco, Firearms and Explosives, ATF, clearly shows the vast majority of firearms recovered by law enforcement are handguns, which are already subject to the 30-day restriction, illustrating the restrictions ineffectiveness at reducing crime.

The author and proponents have tried three previous versions of this bill in the last three years. All vetoed by Governor Brown; 2016: AB 1674, 2017: SB 497 and in 2018: SB 1177. In his 2018 veto statement the Governor stated: "I am returning SB 1177 without my signature. This bill prohibits any person from purchasing more than one long-gun per month. I vetoed a substantially similar bill in 2016, and my views have not changed", in his 2016 veto statement Governor Brown said in part; " while well-intended, I believe this bill would have the effect of burdening lawful citizens who wish to sell certain firearms that they no longer need. Given California's stringent laws restricting gun ownership, I do not believe this additional restriction is needed".


Prepared by: Gabe Caswell / PUB. S. /
5/20/19 10:19:57

**** **END** ****

**Exhibit 6**
**0198**
**Provided by LRI History LLC**                    **SB 61 (2019) Page 168 of 367**



# LRI History LLC

intent@lrihistory.com
www.lrihistory.com
(916) 442.7660

# Senate Policy Committee Materials

LRI History LLC hereby certifies that the accompanying record/s is/are true and correct copies of the original/s obtained from one or more official, public sources in California unless another source is indicated, with the following exceptions : In some cases, pages may have been reduced in size to fit an 8 ½" x 11" sized paper. Or, for readability purposes, pages may have been enlarged or cleansed of black marks or spots. Lastly, for ease of reference, paging and relevant identification have been inserted.

**Exhibit 6**
**0199**

**Provided by LRI History LLC**                                    **SB 61 (2019)  Page 169 of 367**



SENATE COMMITTEE ON PUBLIC SAFETY
Nancy Skinner, Chairman
**BACKGROUND INFORMATION REQUEST**

*Please complete and return this form to the Senate Public Safety Committee. Please e-mail any other relevant material to one of our committee assistants Sarah Loftin or Zandra Chavez.*
***PLEASE NOTE THE FOLLOWING:***

- *The Committee will contact you to set your bill.*
- *The Committee WILL NOT automatically set any bill.*
- *Letters may not be reflected in the Committee analysis of your bill, if submitted to the Committee less than 7 days from the date your bill is set to be heard (the Tuesday preceding your hearing date).*
- *If you have more than 5 support/opposition letters, please print out hard copies and deliver to the committee.*
- *Your bill may not be set until this form is completed and returned to the Committee.*
- *This form is two pages. Please complete every question. Send a copy of this completed form and any attachments to the Committee's Minority Policy Consultant, Eric Csizmar (eric.csizmar@sen.ca.gov (651-1772)).*

**Measure:** SB-61

**Author:** Portantino

**Subject:** Firearms: transfers.

**Staff Contact Name, Phone Number and E-mail:** Tara McGee, 916-651-4025, Tara.McGee@sen.ca.gov

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

1. Which agency, organization, or individual requested the introduction of this bill?

   - Author Sponsored

2. Which agencies, organizations, or individuals (outside of the sponsor) have expressed support? Please attach copies of letters.

The Brady Campaign, California Chapter

**Exhibit 6**
**0200**

3.  Which agencies, organizations, or individuals have expressed opposition?  Please attach copies of letters.

None.


4.  If a similar bill has been introduced in this or any previous session, what was the number and year of its introduction?

SB 1177 (Portantino) -2017/2018

AB 1674 (Santiago)- 2015/2016


5.  What problem or deficiency under current law does the bill seek and remedy?  Please be as specific as possible, and include any legal or empirical information upon which the bill is based.  **NOTE: Some or all of this statement may be quoted verbatim in the Committee's analysis.**

In California, existing law prohibits applying to purchase more than one handgun within a 30-day period and prohibits a firearms dealer from delivering a handgun to a person who has submitted more than one purchase application within a 30-day period.  Unfortunately, when this became law it failed to include long guns. This is a simple fix to existing law that creates a safer process for the purchasing and delivering of all types of firearms in California.


6.  Are you planning any amendments to be offered before the Committee hearing?  If so, please describe the amendments.  <u>NOTE:</u> THE HEARING OF A BILL MAY BE DELAYED IF <u>1 SIGNED AND 10 UNSIGNED COPIES</u> OF THE AMENDMENTS IN LEGISLATIVE COUNSEL FORM ARE NOT PROVIDED TO THE COMMITTEE **IN A TIMELY MANNER.**

No.

**Exhibit 6**
**0201**

**Provided by LRI History LLC**                                         **SB 61 (2019)  Page 171 of 367**



**LEGISLATION & POLICY CHAIR**
Amanda Wilcox
*Nevada/Placer*
P.O. Box 892
Rough & Ready, CA 95975
(530) 432-2171
CABrady@live.com

**ORGANIZING MANAGER**
Shikha Hamilton
*San Mateo Co.*

**CALIFORNIA BRADY EXECUTIVE COMMITTEE**

**PRESIDENT**
Mattie Scott
*San Francisco Co.*

**PAST PRESIDENT**
Peggy McCrum
*Long Beach*

Griffin Dix
*Oakland/Alameda Co.*

Carol Landale
Kelli McCarthy
*San Diego County*

Loren Lieb
*San Fernando Valley*

Niki Smith
*Stockton*

Suzanne Verge
*Los Angeles*

Toni Shellen
*Tri-City/Alameda Co.*

March 18, 2019

The Honorable Anthony Portantino
California State Senate
State Capitol
Sacramento, CA 95814

**Support: SB 61 (Portantino)  –  Preventing Trafficking of Long Guns**

Dear Senator Portantino:

Brady California United Against Gun Violence is a grassroots organization working to reduce firearm crime, injury, and death.  There are Brady chapters throughout the state, many of whose members have lost a loved one to gunfire. A key policy objective for Brady California is to disrupt the flow of illegal guns into impacted communities.  SB 61 will help address this problem and Brady California stands in strong support.

In 1999, legislation (AB 202) was enacted that limits purchases of handguns from licensed firearms dealers in California to no more than one per person per 30-day period.  The purpose of the bill was to curb the illegal flow of handguns by taking the profit out of selling guns from bulk purchases on the black market.  SB 61 applies existing law under AB 202 to long guns, including rifles, shotguns, and lower receivers.

Under SB 61, firearms (handguns *and* long guns) will not be delivered whenever the dealer is notified by the Department of Justice that within the preceding 30-day period, the purchaser had made another application to purchase a firearm.  Private party transactions will continue to be exempt.  Additionally, rifle and shotgun (but not lower receiver) purchasers with a valid hunting license issued by the Department of Fish and Wildlife and the acquisition of a rifle or shotgun at an auction or similar event conducted by a nonprofit will be exempt.

It stands to reason that a person buying large quantities of guns at one time may be acting as a straw purchaser or gun trafficker.  Moreover, firearms acquired this way are frequently used in crime.  In fact, an ATF study of tracing data demonstrated that 22% of all handguns recovered in crime in 1999 were originally purchased as part of a multiple sale.[i]  A similar study found that 20% of all handguns recovered in crime in 2000 were originally purchased as part of a multiple sale.[ii]  Additionally, a University of Pennsylvania report found that a quarter of all guns used in crime were purchased as part of a multiple-gun sale and that guns purchased in bulk were up to 64% more likely to be used for illegal purposes than guns purchased individually.[iii]

**Exhibit 6**
**0202**

**Provided by LRI History LLC**                                    **SB 61 (2019)  Page 172 of 367**

Since 1999, Californians have typically purchased more long guns than handguns every year.[iv] Currently, these long guns include high powered featureless weapons with exchangeable magazines that enable rapid reload and lower receivers, which can be assembled into illegal military-style weapons. Limiting multiple-gun sales within a short period of time for such weapons, which are more lethal than handguns, is clearly in the interest of public safety.

The Department of Justice began to retain records of long gun purchases on January 1, 2014. An analysis of the transaction data from the period January 2014 through June 2015 shows that 81.9% of long guns were sold as a single long gun purchase within a 30-day period.[v] *Clearly, the vast majority of long gun purchasers will not be impacted by SB 61.* However, at the opposite end of the spectrum, an individual purchased 177 long guns in two transactions within a one month period (April 2014).[vi] Furthermore, sales to single individuals ranging from 5 to 54 long guns per month occurred on 1,787 occasions, totaling 12,090 guns.[vii] Department data also shows that when multiple long guns are transferred in a sale, it is more than twice as likely that lower receivers are included.[viii] The largest bulk sale of long guns in one month to an individual (177 long guns) was composed *entirely* of lower receivers,[ix] which can be built into illegal assault weapons and sold on the black market.

Brady California believes that handguns and long guns should generally be subject to the same laws. Preventing the flow of illegal guns is important to public safety regardless of whether the firearm is a handgun or a long gun. Limiting firearms sales to one gun per 30-day period is a recognized strategy to reduce gun trafficking and keep firearms out of dangerous hands. Brady California thanks you for introducing SB 61.

Sincerely,


Amanda Wilcox
Legislation and Policy Chair
Brady California United Against Gun Violence

Cc: Members of Senate Public Safety Committee

---

[i] Bureau of Alcohol, Tobacco and Firearms, U.S. Department of the Treasury, *Youth Crime Gun Interdiction Initiative, Crime Gun Trace Reports (1999) National Report* 40 (Nov. 2000).
[ii] Bureau of Alcohol, Tobacco and Firearms, U.S. Department of the Treasury, *Youth Crime Gun Interdiction Initiative, Crime Gun Trace Reports (2000) National Report* 50 (July 2002).
[iii] Koper, Christopher S.; Jerry Lee Center of Criminology, Univ. of Penn., *Crime Gun Risk Factors: Buyer, Seller, Firearm, and Transaction Characteristics Associated with Gun Trafficking and Criminal Gun Use -- A report to the National Institute of Justice, U.S. Department of Justice* (2007). https://www.ncjrs.gov/pdffiles1/nij/grants/221074. pdf.
[iv] California Department of Justice, "Dealer's Record of Sale (Calendar Year Statistics),"
http://oag.ca.gov/sites/all/files/agweb/pdfs/firearms/forms/dros_chart.pdf?.
[v] Data provided by the California Department of Justice, November 3, 2015.
[vi] Data provided by the California Department of Justice, November 3, 2015.
[vii] Data provided by the California Department of Justice, November 3, 2015.
[viii] Data provided by the California Department of Justice, March 7, 2016.
[ix] Data provided by the California Department of Justice, March 7, 2016.

**Exhibit 6**
**0203**

This page was left intentionally blank.

**Exhibit 6**
**0204**

**Provided by LRI History LLC**



**BAY
AREA
STUDENT
ACTIVISTS**

February 7, 2018

Senator Anthony Portantino
California State Senate
State Capitol, Room 3083
Sacramento, CA 95814

SUBJECT: SB 61 (Portantino) – Letter of Support

Dear Senator Portantino,

Bay Area Student Activists strongly supports bill SB 61: Firearms: transfers. This bill would
extend the current one-gun-every-thirty-days rule for handguns to all firearms (exempting
persons possessing a hunting license).

BAStA is an entirely student-led organization that aims to uplift the voices of students, especially
high school students, on issues that affect them, notably on gun control.

Currently, limitations are placed on the number of handguns a person can purchase in a month.
Current law (AB 202 of the 1999-2000 session) limits the purchase of handguns from a firearms
dealer to one every thirty days. Several exemptions may apply, including for those with hunting
licenses, and in transfers between private parties. However, no such restrictions apply to long
guns. This bill would eliminate the exemption for transfers between private parties and extend
the remaining limitation on the number of handgun purchases that can be made in one month to
*all firearms*.

We support this bill because firearms are all instruments designed to kill, regardless of whether
a firearm is a handgun or a long gun. Gun are all a danger to society when they fall into the
wrong hands, and it is appropriate to apply this common-sense regulation to all guns, not just
handguns. It is worth noting that the California Department of Justice has found that half of
firearms recovered from persons prohibited from possessing a firearm are long guns. There is
no reason for this restriction to apply only to handguns.

Furthermore, the exemption applying currently to the handgun purchase limitation for transfers
between private persons is an unnecessary exception to proper process. When the transfer of a
deadly weapon takes place, proper oversight should be exercised, notably through a firearms
dealer. This provides a surer process so that guns do not fall into the wrong hands than a
simple transfer between two individuals, and thus helps to protect from the misuse of guns.

While Bay Area Student Activists does not affirmatively support the continued exemption of
persons holding hunting licenses from common-sense gun control measures, we acknowledge

**Exhibit 6
0205**



the rigour of the process for procuring such a license, and are therefore committed to supporting the bill as it stands.

Ultimately, the relative danger of handguns as opposed to other guns is still debated, but we know that they are *all* guns, which means that they *all* have the capability of inflicting deadly harm on anything or anyone who their owner decides to point it at.

We therefore strongly support this bill, SB 61.

We thank you for your leadership on this issue.

Sincerely,

Calvin Quick
    [signed]

_____

Legislative Coordinator
Bay Area Student Activists (BAStA)
Email: calvin@quickstonian.com; BAStA Email: bayareastudentactivists@gmail.com
Phone: 1(415) 521-9126; Fax: 1(628) 256-3552

**Exhibit 6**
**0206**

**Provided by LRI History LLC**

**SB 61 (2019) Page 176 of 367**



# BRADY
## UNITED AGAINST GUN VIOLENCE
### CALIFORNIA

**LEGISLATION & POLICY CHAIR**
Amanda Wilcox
*Nevada/Placer*
P.O. Box 892
Rough & Ready, CA 95975
(530) 432-2171
CABrady@live.com

**ORGANIZING MANAGER**
Shikha Hamilton
*San Mateo Co.*

**CALIFORNIA BRADY EXECUTIVE COMMITTEE**

**PRESIDENT**
Mattie Scott
*San Francisco Co.*

**PAST PRESIDENT**
Peggy McCrum
*Long Beach*

Griffin Dix
*Oakland/Alameda Co.*

Carol Landale
Kelli McCarthy
*San Diego County*

Loren Lieb
*San Fernando Valley*

Niki Smith
*Stockton*

Suzanne Verge
*Los Angeles*

Toni Shellen
*Tri-City/Alameda Co.*

March 18, 2019

The Honorable Anthony Portantino
California State Senate
State Capitol
Sacramento, CA  95814

**Support: SB 61 (Portantino)   –  Preventing Trafficking of Long Guns**

Dear Senator Portantino:

Brady California United Against Gun Violence is a grassroots organization working to reduce firearm crime, injury, and death.  There are Brady chapters throughout the state, many of whose members have lost a loved one to gunfire. A key policy objective for Brady California is to disrupt the flow of illegal guns into impacted communities.  SB 61 will help address this problem and Brady California stands in strong support.

In 1999, legislation (AB 202) was enacted that limits purchases of handguns from licensed firearms dealers in California to no more than one per person per 30-day period.  The purpose of the bill was to curb the illegal flow of handguns by taking the profit out of selling guns from bulk purchases on the black market.  SB 61 applies existing law under AB 202 to long guns, including rifles, shotguns, and lower receivers.

Under SB 61, firearms (handguns *and* long guns) will not be delivered whenever the dealer is notified by the Department of Justice that within the preceding 30-day period, the purchaser had made another application to purchase a firearm.  Private party transactions will continue to be exempt.  Additionally, rifle and shotgun (but not lower receiver) purchasers with a valid hunting license issued by the Department of Fish and Wildlife and the acquisition of a rifle or shotgun at an auction or similar event conducted by a nonprofit will be exempt.

It stands to reason that a person buying large quantities of guns at one time may be acting as a straw purchaser or gun trafficker.  Moreover, firearms acquired this way are frequently used in crime.  In fact, an ATF study of tracing data demonstrated that 22% of all handguns recovered in crime in 1999 were originally purchased as part of a multiple sale.[i]  A similar study found that 20% of all handguns recovered in crime in 2000 were originally purchased as part of a multiple sale.[ii]  Additionally, a University of Pennsylvania report found that a quarter of all guns used in crime were purchased as part of a multiple-gun sale and that guns purchased in bulk were up to 64% more likely to be used for illegal purposes than guns purchased individually.[iii]

**Exhibit 6**
**0207**
Provided by LRI History LLC
SB 61 (2019)  Page 177 of 367

Since 1999, Californians have typically purchased more long guns than handguns every year.[iv] Currently, these long guns include high powered featureless weapons with exchangeable magazines that enable rapid reload and lower receivers, which can be assembled into illegal military-style weapons. Limiting multiple-gun sales within a short period of time for such weapons, which are more lethal than handguns, is clearly in the interest of public safety.

The Department of Justice began to retain records of long gun purchases on January 1, 2014. An analysis of the transaction data from the period January 2014 through June 2015 shows that 81.9% of long guns were sold as a single long gun purchase within a 30-day period.[v] *Clearly, the vast majority of long gun purchasers will not be impacted by SB 61.* However, at the opposite end of the spectrum, an individual purchased 177 long guns in two transactions within a one month period (April 2014).[vi] Furthermore, sales to single individuals ranging from 5 to 54 long guns per month occurred on 1,787 occasions, totaling 12,090 guns.[vii] Department data also shows that when multiple long guns are transferred in a sale, it is more than twice as likely that lower receivers are included.[viii] The largest bulk sale of long guns in one month to an individual (177 long guns) was composed *entirely* of lower receivers,[ix] which can be built into illegal assault weapons and sold on the black market.

Brady California believes that handguns and long guns should generally be subject to the same laws. Preventing the flow of illegal guns is important to public safety regardless of whether the firearm is a handgun or a long gun. Limiting firearms sales to one gun per 30-day period is a recognized strategy to reduce gun trafficking and keep firearms out of dangerous hands. Brady California thanks you for introducing SB 61.

Sincerely,


Amanda Wilcox
Legislation and Policy Chair
Brady California United Against Gun Violence

Cc: Members of Senate Public Safety Committee

---

[i] Bureau of Alcohol, Tobacco and Firearms, U.S. Department of the Treasury, *Youth Crime Gun Interdiction Initiative, Crime Gun Trace Reports (1999) National Report* 40 (Nov. 2000).
[ii] Bureau of Alcohol, Tobacco and Firearms, U.S. Department of the Treasury, *Youth Crime Gun Interdiction Initiative, Crime Gun Trace Reports (2000) National Report* 50 (July 2002).
[iii] Koper, Christopher S.; Jerry Lee Center of Criminology, Univ. of Penn., *Crime Gun Risk Factors: Buyer, Seller, Firearm, and Transaction Characteristics Associated with Gun Trafficking and Criminal Gun Use -- A report to the National Institute of Justice, U.S. Department of Justice* (2007). https://www.ncjrs.gov/pdffiles1/nij/grants/221074. pdf.
[iv] California Department of Justice, "Dealer's Record of Sale (Calendar Year Statistics),"
http://oag.ca.gov/sites/all/files/agweb/pdfs/firearms/forms/dros_chart.pdf?.
[v] Data provided by the California Department of Justice, November 3, 2015.
[vi] Data provided by the California Department of Justice, November 3, 2015.
[vii] Data provided by the California Department of Justice, November 3, 2015.
[viii] Data provided by the California Department of Justice, March 7, 2016.
[ix] Data provided by the California Department of Justice, March 7, 2016.

**Exhibit 6**
**0208**



# COALITION AGAINST GUN VIOLENCE
### A Santa Barbara County Coalition

✓

March 18, 2019

Senator Anthony Portantino                     **VIA FAX: (916) 651-4925**
California State Senate
State Capitol, Room 3086
Sacramento, CA 95814

**Re: SB 61 (Portantino) Preventing Gun Trafficking**

On behalf of the Coalition Against Gun Violence, a Santa Barbara County Coalition, I write in support of Senate Bill 61. This bill extends existing law that limits purchases of new handguns to no more than one gun per person per 30-day period to new long guns, including high-powered semiautomatic rifles. The bill will deter gun traffickers, who purchase firearms in bulk to sell for profit on the black market.

SB 61 will reduce the trafficking of illegal guns. This bill will reduce gun crime and save lives. For these reasons, the CAGV is in support of SB 61 and appreciates your introduction of this important measure. The Coalition Against Gun Violence urges you to sign SB 61 into law.

Sincerely,

*Toni Wellen*

Toni Wellen, Chair

_4/2 GC_



**GIFFORDS
LAW CENTER**
TO PREVENT GUN VIOLENCE

268 Bush Street #555, San Francisco, CA 94104   415-433-2062   GIFFORDSLAWCENTER.ORG

✓

March 26, 2019

The Honorable Nancy Skinner
Chair, Public Safety Committee
California State Senate
Sacramento, CA 95814

**Re: Support for SB 61 (Portantino) – Limiting Bulk Firearm Purchases**

Dear Senator Skinner,

On behalf of Giffords Law Center to Prevent Gun Violence, I urge you to support SB 61 (Portantino), legislation that would help curb the flow of firearms on the black market in California. Now led by former Congresswoman and shooting survivor Gabby Giffords, our organization has worked for 25 years to enact evidence-based policy reforms at the local, state, and national levels to save lives from gun violence.

In 1999, California enacted our state's one-handgun-per-month law, which generally prohibits a person from purchasing more than one new handgun from a licensed firearms dealer in any 30-day period. The law also prohibits a dealer from completing the sale of a handgun once the Department of Justice (DOJ) notifies the dealer that the person attempting to acquire the handgun has applied to purchase another handgun within the previous 30 days. In floor debates and bill analyses prepared prior to the one-handgun-per-month law's enactment, the Legislature noted that these "bulk purchase limits" would affect a very small percentage of purchasers, while effectively limiting the small number of buyers most likely to be involved in crimes and violence. This law helps to curb the flow of handguns on the illegal black market and prevents dangerous individuals from quickly amassing stockpiles of weapons.

However, current law does not apply these limitations to long guns sold by dealers. This loophole allows gun traffickers to easily purchase unlimited numbers of rifles and shotguns for illegal distribution to people who could not legally acquire them, including organized gangs and cartels, and allows individuals who intend to perpetrate violence themselves, like mass shooters, to quickly stockpile large numbers of firearms.

**SB 61 would start to close this dangerous loophole by generally extending California's existing one-handgun-per-month law to long gun purchases too.**

SB 61 would still provide targeted exceptions for licensed hunters acquiring new hunting rifles and shotguns. This bill would also still allow other individuals to lawfully purchase up to 12 new firearms per year from licensed dealers, to acquire additional firearms from unlicensed sellers (even though such transactions must be conducted through a licensed dealer), and to liquidate a collection of used firearms to a single purchaser. It would also still

**Exhibit 6
0210**

**Provided by LRI History LLC**

**SB 61 (2019)  Page 180 of 367**

allow people to loan or transfer their firearms to family members, acquaintances, and sport or hunting partners in a variety of circumstances, while placing reasonable limitations on dangerous individuals' ability to obtain mass quantities of guns for illegal purposes.

Laws limiting multiple firearm sales are important to public safety. Although bulk firearm purchases comprise a very small share of the overall market for firearms, they represent a significant source of guns sold to criminals. A 2007 University of Pennsylvania report to the National Institute of Justice found that guns purchased in a "multiple sale"—meaning guns purchased by a person who bought at least one other firearm within five business days—were up to 64% more likely to be used for illegal purposes than guns purchased individually.[i] An ATF report similarly found that purchases of multiple long guns are a "significant indicator" of gun trafficking.[ii] An ATF study of gun trafficking by one cartel in Mexico found that the cartel purchased 336 firearms in a 15-month period, including 251 long guns, and that all but one of those firearms was purchased in bulk sales from a U.S. gun dealer.[iii] Experts also identify "stockpiling weapons" as a significant warning sign of a mass shooter's violent intentions.[iv]

Additionally, a dangerous person's ability to quickly amass weapons is hazardous to public safety regardless of whether those weapons are sold by dealers or unlicensed sellers, and regardless of whether they are long guns or handguns. Treating all firearm sales equally is common sense and would further California's efforts in recent years to align the legal requirements governing handgun and long gun sales in the state. ATF has reported that long guns have become Mexican cartels' "weapons of choice,"[v] and the agency has had to implement special reporting requirements on California gun dealers to track certain multiple long gun sales because our state is such a significant source of these firearms for violent cartels over the border.[vi]

Within California, DOJ has reported that long guns comprise half the illegal firearms recovered by law enforcement from prohibited persons in this state.[vii] In addition, an examination of forensic data collected from the mass shootings that have occurred in the United States throughout the last 30 years showed that exactly half of the weapons used to perpetrate those tragedies were long guns.[viii] Curbing bulk purchases of all firearms would help keep more deadly weapons from falling into dangerous hands.

SB 61 (Portantino) will implement sensible and reasonable safeguards to curb the flow of firearms on the illegal black market and into the hands of those most likely to use these weapons in crimes and violence.

**For these reasons, we urge you to support SB 61 (Portantino).**

Sincerely,

Ari Freilich
California Legislative Affairs Director & Staff Attorney
Giffords Law Center to Prevent Gun Violence

**Exhibit 6**
0211

**Provided by LRI History LLC**          **SB 61 (2019) Page 181 of 367**

[i] Koper, Christopher S.; Jerry Lee Center of Criminology, Univ. of Penn., *Crime Gun Risk Factors: Buyer, Seller, Firearm, and Transaction Characteristics Associated with Gun Trafficking and Criminal Gun Use – A Report to the National Institute of Justice, U.S. Dept. of Justice* (2007), https://www.ncjrs.gov/pdffiles1/nij/grants/221074.pdf.

[ii] U.S. Gov. Accountability Office, *Firearms Trafficking: U.S. Efforts to Combat Arms Trafficking to Mexico Face Planning and Coordination Challenges* (2009): 28, http://www.gao.gov/new.items/d09709.pdf

[iii] U.S. Dept. of Justice, Office of the Inspector General, *Review of ATF's Project Gunrunner*, November 2010, 38-39, www.justice.gov/oig/reports/ATF/e1101.pdf.

[iv] Peter Langman, Ph.D., *School Shooters: The Warning Signs*, Jul. 29, 2014, https://schoolshooters.info/sites/default/files/school_shooters_warning_signs_1.1.pdf

[v] U.S. Dept. of Justice, Office of the Inspector General, *Review of ATF's Project Gunrunner*, November 2010, 36, www.justice.gov/oig/reports/ATF/e1101.pdf.

[vi] Letter from Charles Houser, Chief, Nat'l Tracing Ctr., to Fed. Firearms Licensees, Jul. 12, 2011, 1, http://www.scribd.com/doc/61159256/ATF-Multiple-Rifle-Sale-Reporting-Requirement-Letter. See also Agency Information Collection Activities; *Proposed Collection Comments Requested: Report of Multiple Sale or Other Disposition of Certain Rifles*, 76 Fed. Reg. 24,058, 24,058, Apr. 29, 2011; Bureau of Alcohol, Tobacco, Firearms & Explosives, *Q&As for the Report of Multiple Sale or Other Disposition of Certain Rifles*, http://www.atf.gov/files/firearms/industry/080911-qa-multiple-rifles.pdf.

[vii] Data provided by the Cal. Dept. of Justice, Mar. 4, 2010.

[viii] Mark Follman *et al.*, "US Mass Shootings, 1982-2015: Data from Mother Jones' Investigation," *Mother Jones Magazine*, Dec. 28, 2012.

**Exhibit 6**
**0212**

**Provided by LRI History LLC**



# COUNTY OF LOS ANGELES
## Sacramento Legislative Office
1100 K Street, Suite 400, Sacramento, California 95814
(916) 441-7888 • Fax (916) 445-1424
http://ceo.lacounty.gov

**SACHI A. HAMAI**
Chief Executive Officer

**BRIAN J. STIGER**
Chief Legislative Representative

Board of Supervisors
**HILDA L. SOLIS**
First District

**MARK RIDLEY-THOMAS**
Second District

**SHEILA KUEHL**
Third District

**JANICE HAHN**
Fourth District

**KATHRYN BARGER**
Fifth District

March 11, 2019

The Honorable Nancy Skinner, Chair
Senate Public Safety Committee
State Capitol, Room 5094
Sacramento, California 95814

> **RE:** **SB 61 (Portantino), As Introduced January 3, 2019 – SUPPORT**
> **Relating to Firearms: Transfers**
> **Set April 2, 2019, in the Senate Public Safety Committee**

Dear Senator Skinner:

The Los Angeles County Board of Supervisors supports SB 61 (Portantino).

Current law generally prohibits an individual from making more than one application to purchase a handgun within any 30-day period. Existing law prohibits a firearms dealer from delivering a handgun to a person whenever the dealer is notified by the State Department of Justice that within the preceding 30-day period, the purchaser has made another application to purchase a handgun. SB 61 would provide that an existing law which makes it unlawful for a person to purchase more than one handgun every 30 days is applicable to all types of firearms.

The County's Department of Public Health (DPH), and their Injury and Violence Prevention Program (IVPP) indicate that laws limiting the number of firearms a person can purchase within a certain timeframe can help to reduce the number of guns that enter the secondary market—weapons that are more likely to wind up at the scene of a crime. DPH-IVPP notes that commonsense regulation of gun purchases can help to reduce gun trafficking and, in turn, gun violence. Therefore, I urge the Committee's "AYE" vote on SB 61. Please contact me at (916) 441-7888 or dseitz@ceo.lacounty.gov if you have any questions.

Sincerely,

Donna Seitz
Assistant Chief Legislative Representative

c:    Senator Anthony Portantino
      Each Member and Consultant,
      Senate Public Safety Committee

*"To Enrich Lives Through Effective And Caring Service"*

**Exhibit 6**
0213



**MICHAEL N. FEUER**
CITY ATTORNEY

February 21, 2019

The Honorable Nancy Skinner
Chair, Senate Public Safety Committee
State Capitol, Room 2031
Sacramento, CA 95814

RE: SB 61 (Portantino) Firearms: transfers.
SUPPORT

Dear Chair Skinner,

I write to express my support for SB 61 (Portantino) and respectfully request your "AYE" vote when this bill is heard in your committee. This bill would expand the prohibition on individuals from purchasing more than one handgun in any 30-day period and apply it to all firearms.

As you know, AB 202 (Knox, Chapter 128, Statutes of 1999) prohibited an individual from purchasing more than one handgun in any 30-day period. AB 809, which I authored in 2011, requires long gun data to be entered into the Automated Firearms Database, an important law enforcement tool, in a manner similar to handguns.

California Department of Justice (DOJ) data has shown that nearly 82% of the long guns sold in the state were sold as single purchases to individuals within one 30-day period. Additional data from DOJ also show that when multiple long guns are bought in a single transaction, it is twice as likely that the sale included lower receivers. These lower receivers can then be built into illegal assault weapons and sold on the black market, allowing unscrupulous individuals to circumvent California's strict gun control laws. SB 61 (Portantino) will stem the flow of long guns into the black market while having no negative effect on the overwhelming majority of gun purchasers in the state.

I would also like to take this opportunity to thank the author, Senator Portantino, a longtime advocate of efforts to reduce gun violence. I am pleased to support SB 61 (Portantino). Thank you for your consideration.

Sincerely,

Michael N. Feuer
Los Angeles City Attorney

Cc: Members and Consultants, Senate Public Safety Committee
The Honorable Anthony Portantino, 25th Senate District

Provided by LRI History LLC



MAR **27** 2019

March 25, 2019

*la4*

Senator Anthony Portantino
State Capitol
Sacramento, California 95814



Dear Senator Portantino:

Gun Owners of California writing to respectfully oppose your SB 61, a reintroduction of last year's SB 1177 (Portantino), which seeks to prohibit the number of firearms an individual can purchase within a specified period of time.

Our concerns pertain to the intention to build upon the 1999 bill that restricted purchases of handguns to no more than one per person per month to include *all* firearms, including long guns. Gun Owners has consistently supported efforts to prevent the flow of illegal firearms, but there is no data suggesting someone who purchases two guns a month – or three guns for that matter – is a danger to society or engaging in illicit activity. In fact, even though long gun purchases in California have literally exploded to over a million per year, a 2015 report by the Department of Justice 2015 (Firearms Used in Crimes) reveals they are used minimally - roughly 12%. What's more, there is no "recognized strategy" that limiting firearm purchases reduces gun trafficking or keeps firearms out of "dangerous hands." There is simply no evidence that restricting the number of guns an individual can buy in a month will have any effect positive on crime.

Penalizing the lawful for the misdeeds of the unlawful will never have its anticipated resolution and reducing the pool of firearms available for lawful individuals to possess will do nothing to stem an increase in crime. The safety of Californians is at the very foundation of our mission, and regrettably, there is no indication that SB 61 will further protect the citizens of our state. It has been our consistent goal to work toward common sense solutions regarding the issue of crime and firearm ownership; this can be done, however, without sacrificing our Constitutional rights and the ability of the law abiding to protect their families. I would welcome the opportunity to discuss this with you at your convenience.

Respectfully,

Sam Paredes, Executive Director

cc:   Members, Senate Committee on Public Safety

**GUN OWNERS OF CALIFORNIA**
1831 Iron Point Road, Folsom CA 95630 – (916) 984-1400 (916) 984-1402 fax
www.GunOwnersCA.com
*A Political Committee Dedicated to Crime Control – Not Gun Control*

**Exhibit 6**
**0215**

The California
Sportsman's Lobby, Inc.

May 21, 2019

The Honorable Anthony Portantino
California State Senate
State Capitol Building
Sacramento, CA 95829

[redacted]
Location: Senate Floor

**[redacted]rtantino) Firearms: transfers (As Amended May 17, 2019)**

Dear Senator Portantino:

The California Sportsman's Lobby is a nonprofit organization of sportsman's clubs and individuals dedicated to preserving outdoor recreation in California. Our principal activities are to monitor legislation that might negatively impact hunting, fishing and other recreation, and to oppose unwise changes in the laws relating to these activities.

The California Sportsman's Lobby (CSL) promotes the conservation, enhancement, scientific management, and wise use of all our natural resources; CSL seeks an end of activities needlessly destructive to natural resources; CSL endeavors to educate and encourage the public generally, and the youth specifically, to an understanding of the advantages and importance of the conservation, enhancement, and wise use of all our natural resources; and CSL works to secure more and better outdoor opportunities for all citizens, regardless of race, creed, or color as essential to the physical and spiritual well being of all the people.

This is to notify you of the opposition of the California Sportsmen's Lobby (CSL) to SB 61.

It would unjustifiably limit the purchase of a rifle or shotgun by any lawful person to one per month.

Rather than limit such purchases by lawful individuals to one per month, experience with mass homicides and other crimes involving firearms has clearly shown that the focus should be on preventing criminals and individuals suffering from mental illness from acquiring firearms, not on those who are not a part of the problem.

Such persons will always be able to obtain firearms through unlawful sources without going through a licensed firearms dealer. The restrictions proposed in SB 61 would not prevent it.

While the purchase limit exemption in the bill is appreciated for licensed hunters, and for persons acquiring firearms at nonprofit fundraising events, it does not offset the opposed limitation on other lawful persons.

Firearms ownership by individuals is a constitutionally protected right of all adults.

Limiting all adults to a maximum of one rifle or shotgun purchase per month will not solve crime and mental health problems.

For the above reasons, the Outdoor Sportsmen's Coalition of California opposes SB 61.

Should you have any questions, please contact our legislative advocate, Kathryn Lynch, at (916) 443-0202 or lynch@lynchlobby.com.

Sincerely,

*Randall L Walker*

Randall Walker
President, California Sportsman's Lobby

cc: Office of Legislative Affairs, Governor's Office
    Mr. Gabe Caswell, Consultant, Senate Public Safety Committee
    Mr. Eric Csizmar, Consultant, Senate Republican Caucus
    Office of Senate Floor Analysis
    Senator Steven Glazer, Co-Author
    Senator Scott Wiener, Co-Author
    Ms. Kathryn Lynch, Legislative Advocate
    California Sportsman's Lobby

**Exhibit 6**
**0217**

**Provided by LRI History LLC**                                                           **SB 61 (2019) Page 187 of 367**



# NATIONAL SHOOTING SPORTS FOUNDATION, INC.

Headquarters: 11 Mile Hill Road, Newtown, CT 06470-2359

400 N. Capitol Street NW, Suite 475, Washington, D.C. 20001

203-426-1320 ext. 264    Cell 503-729-6325    mfindlay@nssf.org

**Michael Findlay**
Director,
Government Relations - State Affairs

May 21, 2019

The Honorable Anthony Portantino
California State Senate
State Capitol Building
Sacramento, CA 95829

~~Position: Oppose~~

Location: Senate Floor

~~SB 61~~ **(Portantino) Firearms: transfers (As Amended May 17, 2019)**

Dear Senator Portantino:

As the trade association for America's firearms, ammunition, hunting, and recreational shooting sports industry, the National Shooting Sports Foundation ("NSSF") seeks to promote, protect, and preserve hunting and the shooting sports. NSSF has a membership of more than 12,000 manufacturers, distributors, firearms retailers, shooting ranges, and sportsmen's organizations, including more than 1,300 in California alone. Our manufacturer members make the firearms used by law-abiding California sportsmen, the U.S. military and law enforcement agencies throughout the state.

This is to notify you of the opposition of the National Shooting Sports Foundation (NSSF) to SB 61, as introduced, that would limit the purchase of a rifle or shotgun by anyone to one per month.

Rather than limit purchases for all individuals to one such firearm per month, experience with mass homicides and other crimes involving firearms has clearly shown that the focus should instead be on preventing criminals and individuals suffering from mental illness from acquiring firearms, not on those who are not a part of the problem.

Persons who have an intent to commit such crimes, or other illegal acts involving the use of a firearm will always be able to obtain firearms through unlawful sources without going through a licensed firearms dealer.

The restrictions proposed in SB 61 will not prevent it.

With respect to mental health practitioners and others in positions of authority who should do so, it appears there are many who do not notify the Department of Justice (DOJ) or other appropriate agencies of individuals whom they have determined are likely to be a danger to themselves or others.

Sometimes, agencies and authorities who have been notified of such persons fail to act.

This is another area that needs more focus, instead of setting arbitrary, ineffective purchase limits for the acquisition of a rifle or shotgun. There is no evidence that such a purchase limit would have an impact on the criminal misuse of firearms.

Limiting the purchases of rifles or shotguns for an entire class of citizens as proposed in SB 61 would not solve crime problems and tragedies.

Firearms ownership by individuals is a constitutionally protected right.

NSSF supports practical solutions that will ensure that unauthorized individuals do not have access to any firearm of any kind at any time.

It has sponsored the FixNics® campaign to encourage states to submit all disqualifying criminal and mental health records to the FBI's National Criminal Instant Background Check System (NICS). Since its inception, the number of disqualifying records sent by states to the FBI has increased by 200 percent and is continuing to grow, making the federal NICS background check system increasingly more effective. This is where the emphasis should be.

Limiting all adults to a maximum of one rifle or one shotgun purchase per month will not solve crime and mental health problems.

For the above reasons, the National Shooting Sports Foundation opposes the enactment of SB 61.

Should you have any questions, please contact our legislative advocate, Kathryn Lynch, at (916) 443-0202 or lynch@lynchlobby.com.

Sincerely,

Michael Findlay
Director of Government Relations – State Affairs

cc: Office of Legislative Affairs, Governor's Office
    Mr. Gabe Caswell, Consultant, Senate Public Safety Committee
    Mr. Eric Csizmar, Consultant, Senate Republican Caucus
    Office of Senate Floor Analysis
    Senator Steven Glazer, Co-Author
    Senator Scott Wiener, Co-Author
    Ms. Kathryn Lynch, Legislative Advocate
    National Shooting Sports Foundation

**Exhibit 6**
**0219**

**Provided by LRI History LLC**



# Dedicated to Preserving Your Rights
# To Hunt and Fish
# In the State of California

May 21, 2019

The Honorable Anthony Portantino
California State Senate
State Capitol Building
Sacramento, CA 95829

Location: Senate Floor

Re: SB 61 (Portantino) **Firearms: transfers (As Amended May 17, 2019)**

Dear Senator Portantino:

The Outdoor Sportsmen's Coalition of California is a nonprofit organization of sportsman's clubs and individuals dedicated to preserving outdoor recreation in California.  Our principal activities are to monitor legislation that might negatively impact hunting, fishing and other recreation, and to oppose unwise changes in laws and regulations relating to these activities.

The Outdoor Sportsmen's Coalition of California (OSCC) promotes the conservation enhancement, scientific management, and wise use of all our natural resources; OSCC seeks to end activities needlessly destructive to natural resources; OSCC endeavors to educate and encourage the public generally, and the youth specifically, to an understanding of the advantages and importance of the conservation and enhancement of our natural resources.

OSCC works to enhance outdoor opportunities for all citizens.  With several thousand members located throughout California, we stay in contact with our membership via newsletters and the internet so they can be involved as they see fit.

This is to notify you of the opposition of the Outdoor Sportsmen's Coalition of California (OSCC) to SB 61, as introduced.

It would needlessly limit the purchase of a rifle or shotgun by anyone to one per month.

Rather than limit such purchases to one firearm per month, experience with mass homicides and other crimes involving firearms has clearly shown that the focus should be on preventing criminals and individuals suffering from mental illness from acquiring firearms, not on those who are not a part of the problem.

P.O. Box 848, Fresno, CA  93712

**Exhibit 6**
0220

**Provided by LRI History LLC**

Persons who have an intent to commit such crimes, or other illegal acts involving the use of a firearm, will always be able to obtain firearms through unlawful sources without going through a licensed firearms dealer.

The restrictions proposed in SB 61 will not prevent it.

While the purchase limit exemption in the bill is appreciated for licensed hunters, and persons acquiring firearms at nonprofit fundraising events, it does not offset the needless limitation on other lawful individuals.

Firearms ownership by individuals is a constitutionally protected right of all adults.

Limiting all adults to a maximum of one rifle or shotgun purchase per month, will not solve crime and mental health problems.

For the above reasons, the Outdoor Sportsmen's Coalition of California opposes SB 61.

Should you have any questions, please contact our legislative advocate, Kathryn Lynch, at (916) 443-0202 or lynch@lynchlobby.com.

Sincerely,

Randall R. Walker

Randall Walker, President
Outdoor Sportsmen's Coalition of California

cc:  Office of Legislative Affairs, Governor's Office
       Mr. Gabe Caswell, Consultant, Senate Public Safety Committee
       Mr. Eric Csizmar, Consultant, Senate Republican Caucus
       Office of Senate Floor Analysis
       Senator Steven Glazer, Co-Author
       Senator Scott Wiener, Co-Author
       Ms. Kathryn Lynch, Legislative Advocate
       Outdoor Sportsmen's Coalition of California

**Exhibit 6**
**0221**

**Provided by LRI History LLC**

 

# Safari Club International

A NON PROFIT ORGANIZATION ( DEDICATED TO CONSERVING WILDLIFE AND PRESERVING HUNTING



**SCI CA Coalition**

May 21, 2019

The Honorable Anthony Portantino
California State Senate
State Capitol Building
Sacramento, CA 95829



Location: Senate Floor

**SB 61 (Portantino) Firearms: transfers (As Amended May 17, 2019)**

Dear Senator Portantino:

Safari Club International and Safari Club International Foundation (SCI) is a worldwide Non-Profit organization with the mission to protect the freedom to hunt and to promote wildlife conservation. SCI recognizes hunting as a valuable management tool. SCI currently has over 45,000 members and approximately 4,000 members in California. SCI also has 30,000 California Affiliates, 950,000 U.S. Affiliates and over 7,000,000 International Affiliates. SCI spends millions annually for Wildlife Conservation, Research and Education.

This is to notify you of the opposition of the SCI CA Coalition (SCI) to SB 61, as introduced.

It would needlessly limit the purchase of a rifle or shotgun by anyone to one per month.

While the exemption in the bill from the one gun per month limit for licensed hunters, and firearms acquired at nonprofit fundraising events, is appreciated, it does not mitigate the inappropriate limitation on others, such as recreational and competitive shooters.

Rather than limit such purchases to one firearm per month, experience with mass homicides and other crimes involving firearms has clearly shown that the focus should be on preventing criminals and individuals suffering from mental illness from acquiring firearms, not on those who are not a part of the problem.

Persons who have an intent to commit such crimes, or other illegal acts involving the use of a firearm, will always be able to obtain firearms through unlawful sources without going through a licensed firearms dealer.

The restrictions proposed in SB 61 will not prevent it.

Firearms ownership by individuals is a constitutionally protected right of all adults.

Limiting all adults to a maximum of one rifle or shotgun purchase per month will not solve crime and mental health problems.

For the above reasons, SCI CA Coalition opposes the enactment of SB 61.

Should you have any questions, please contact our legislative advocate, Kathryn Lynch, at (916) 443-0202 or lynch@lynchlobby.com.

Sincerely,

Lisa C. McNamee
Co-Legislative Coordinator
SCI CA Coalition

Don Giottonini
Co-Legislative Coordinator
SCI CA Coalition

cc:  Office of Legislative Affairs, Governor's Office
     Mr. Gabe Caswell, Consultant, Senate Public Safety Committee
     Mr. Eric Csizmar, Consultant, Senate Republican Caucus
     Office of Senate Floor Analysis
     Senator Steven Glazer, Co-Author
     Senator Scott Wiener, Co-Author
     Ms. Kathryn Lynch, Legislative Advocate
     SCI CA Coalition

Exhibit 6
0223
Provided by LRI History LLC



# NATIONAL SHOOTING SPORTS FOUNDATION, INC.

Headquarters: 11 Mile Hill Road, Newtown, CT 06470-2359

400 N. Capitol Street NW, Suite 475, Washington, D.C. 20001

203-426-1320 ext. 264    Cell 503-729-6325    mfindlay@nssf.org

**Michael Findlay**
Director,
Government Relations - State Affairs

September 11, 2019

The Honorable Anthony Portantino
California State Senate                              ~~Position: Oppose~~
State Capitol Building
Sacramento, CA 95829                    Location: Senate Floor (Concurrence)

~~Re: SB 61 (Portantino)~~ Firearms: transfers (As Amended September 6, 2019)

Dear Senator Portantino:

As the trade association for America's firearms, ammunition, hunting, and recreational shooting sports industry, the ~~National Shooting Sports Foundation ("NSSF")~~ seeks to promote, protect, and preserve hunting and the shooting sports. NSSF has a membership of more than 12,000 manufacturers, distributors, firearms retailers, shooting ranges, and sportsmen's organizations, including more than 1,300 in California alone. Our manufacturer members make the firearms used by law-abiding California sportsmen, the U.S. military and law enforcement agencies throughout the state.

This is to notify you of the opposition of the National Shooting Sports Foundation (NSSF) to SB 61, as amended, that would limit the purchase of a semiautomatic centerfire rifle by anyone to one per month.

Rather than limit purchases for all individuals to one such firearm per month, experience with mass homicides and other crimes involving firearms has clearly shown that the focus should instead be on preventing criminals and individuals suffering from mental illness from acquiring firearms, not on those who are not a part of the problem.

Persons who have an intent to commit such crimes, or other illegal acts involving the use of a firearm will always be able to obtain firearms through unlawful sources without going through a licensed firearms dealer.

The restrictions proposed in SB 61 will not prevent it.

With respect to mental health practitioners and others in positions of authority who should do so, it appears there are many who do not notify the Department of Justice (DOJ) or other appropriate agencies of individuals whom they have determined are likely to be a danger to themselves or others.

**Provided by LRI History LLC**

Sometimes, agencies and authorities who have been notified of such persons fail to act.

This is another area that needs more focus, instead of setting arbitrary, ineffective purchase limits for the acquisition of a semiautomatic centerfire rifle. There is no evidence that such a purchase limit would have an impact on the criminal misuse of firearms.

Limiting the purchases of semiautomatic centerfire rifles for an entire class of citizens as proposed in SB 61 would not solve crime problems and tragedies.

Firearms ownership by individuals is a constitutionally protected right.

NSSF supports practical solutions that will ensure that unauthorized individuals do not have access to any firearm of any kind at any time.

It has sponsored the FixNics® campaign to encourage states to submit all disqualifying criminal and mental health records to the FBI's National Criminal Instant Background Check System (NICS). Since its inception, the number of disqualifying records sent by states to the FBI has increased by 200 percent and is continuing to grow, making the federal NICS background check system increasingly more effective. This is where the emphasis should be.

Limiting all adults to a maximum of one semiautomatic centerfire rifle purchase per month will not solve crime and mental health problems.

For the above reasons, the National Shooting Sports Foundation opposes the enactment of SB 61.

Should you have any questions, please contact our legislative advocate, Kathryn Lynch, at (916) 443-0202 or lynch@lynchlobby.com.

Sincerely,

Michael Findlay
Director of Government Relations – State Affairs

cc:  Office of Legislative Affairs, Governor's Office
     Mr. Gabe Caswell, Consultant, Senate Public Safety Committee
     Mr. Eric Csizmar, Consultant, Senate Republican Caucus
     Senator Steven Glazer, Co-Author
     Senator Scott Wiener, Co-Author
     Office of Senate Floor Analysis
     Ms. Kathryn Lynch, Legislative Advocate
     National Shooting Sports Foundation

**Exhibit 6**
**0225**
**Provided by LRI History LLC**



March 4th, 2019

Honorable Senator Nancy Skinner
Chair Senate Committee on Public Safety
State Capitol Room 2031
Sacramento, CA 95814

> **Re: Senate Bill 61 (Portantino) – Firearms: Transfers**
> ▮▮▮▮▮▮▮▮**ed**

Dear Senator Skinner,

On behalf of the C▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and its members, I write to express our strong opposition to Senate Bill 61 (SB 61). SB 61 would make it a crime to attempt to purchase more than one firearm of any type within a 30-day period.

SB 61 would significantly reduce long gun sales in California. This translates into a loss of manufacturing jobs at both the state and national levels, and a significant loss of revenue for California businesses. Additionally, this bill will significantly impact the of millions of dollars of Federal Pitman Roberson tax money that would be earmarked to develop and enhance habitat critical for California's wildlife. The Department of Justice (DOJ), has estimated previous versions of this same bill's implementation alone will cost hundreds of thousands of dollars, and result in significant overtime hours for Department personal to perform the necessary analysis, development, testing, and implementation to various Department databases.

SB 61 will also effectively prohibit the creation of new businesses in California involving hands on instruction in the safe handling of firearms. Should this bill become law, certified firearm instructors would no longer be able acquire the necessary firearms without having to wait months, if not years, to conduct classes for groups such as the Boy Scouts of America, Hunter Education, Youth shooting sports, and other clubs or organizations that wish to participate in firearm safety classes.

The author and proponents have argued in testimony there is no legitimate reason for anyone to need to purchase more than one firearm a month. There are, in fact, numerous legitimate recreational and Second Amendment protected reasons why an individual might want, and need, to transfer more than one firearm a month. For example, someone new to the sport of recreational competitive shooting, 'Three Gun' competitions, may very well need to purchase a pistol, shotgun, and rifle without having to wait 30 days between each purchase. This bill would require someone wanting to acquire all three types of firearms to undergo a process that would take at least 70 days assuming everything goes smoothly. The procedure for purchasing these firearms is already very time and travel intensive. Each transaction requiring a trip to the licensed dealer.

---

Provided by LRI History LLC



Currently individuals in California must go through the following steps to purchase a firearm; Obtain a firearm safety certificate; Go to a California licensed firearms dealer; Complete 4473 and (Dealer Record of Sales) DROS applications; Pass the required background check; Wait the required 10 days; Go back to dealer; Perform a safe handling demonstration; Pick up first firearm. Under SB 61 the individual would have to wait the required 30 days, then go back to dealer again; and repeat the process for each subsequent purchase. Both California and Federal law already address the author's concerns regarding the trafficking of firearms by narrowly limiting the number of firearms an individual can sell. Rather than having the desired effect of targeting criminals, this bill will impact only the law abiding, thereby further limiting available funding to DOJ.

SB 61, does allow for numerous exemptions to the restriction which do not apply to the general public, though well intended by the author will create a nightmare DOJ and law enforcement to implement and enforce. Additionally, the author has argued this bill is necessary because the vast majority of firearms recovered from APPS seizures are long guns. However, data from the Bureau of Alcohol, Tobacco, Firearms and Explosives, ATF, clearly shows the vast majority of firearms recovered by law enforcement are handguns, which are already subject to the 30-day restriction, illustrating the restrictions ineffectiveness at reducing crime.

The author and proponents have tried three previous versions of this bill in the last three years. All vetoed by Governor Brown; 2016: AB 1674, 2017: SB 497 and in 2018: SB 1177. In his 2018 veto statement the Governor stated: "I am returning SB 1177 without my signature. This bill prohibits any person from purchasing more than one long-gun per month. I vetoed a substantially similar bill in 2016, and my views have not changed", in his 2016 veto statement Governor Brown said in part; " while well-intended, I believe this bill would have the effect of burdening lawful citizens who wish to sell certain firearms that they no longer need. Given California's stringent laws restricting gun ownership, I do not believe this additional restriction is needed".

Senator Skinner nothing has changed, this is just a bad bill that will not curb crime and will only impact law abiding citizens. For the foregoing reasons, the California Rifle and Pistol Association strongly opposes SB 61 and urges your no vote in committee.

Respectfully Submitted,

Roy M. Griffith Jr.
Legislative Liaison
California Rifle and Pistol Association, Inc.
rgriffith@crpa.org

CC: Mr. Gabriel Caswell, Counsel Senate Public Safety, Gabriel.Caswell@sen.ca.gov
 Ms. Jennifer Kaku, Consultant Senate Public Safety, Jennifer.Kaku@sen.ca.gov

271 E. Imperial Highway, Suite 620, Fullerton, CA 92835
(714) 992-2772 • (800) 305-2772
Exhibit 6
www.CRPA.org
0227

Provided by LRI History LLC                    SB 61 (2019)  Page 197 of 367



**The California**
**Sportsman's Lobby, Inc.**

March 21, 2019

The Honorable Anthony Portantino
California State Senate                    Position: ███████
State Capitol Building
Sacramento, CA 95829                   Location: Senate Public Safety Committee

Re: ███████████ **Firearms: transfers (Introduced January 3, 2019)**

Dear Senator Portantino:

The ███████████████████ s a nonprofit organization of sportsman's clubs and individuals
dedicated to preserving outdoor recreation in California. Our principal activities are to monitor
legislation that might negatively impact hunting, fishing and other recreation, and to oppose
unwise changes in the laws relating to these activities.

The California Sportsman's Lobby (CSL) promotes the conservation, enhancement, scientific
management, and wise use of all our natural resources; CSL seeks an end of activities needlessly
destructive to natural resources; CSL endeavors to educate and encourage the public generally, and
the youth specifically, to an understanding of the advantages and importance of the conservation,
enhancement, and wise use of all our natural resources; and CSL works to secure more and better
outdoor opportunities for all citizens, regardless of race, creed, or color as essential to the physical
and spiritual well being of all the people.

This is to notify you of the opposition of the California Sportsmen's Lobby (CSL) to SB 61.

It would unjustifiably limit the purchase of a rifle or shotgun by any lawful person to one per month.

Rather than limit such purchases by lawful individuals to one per month, experience with mass
homicides and other crimes involving firearms has clearly shown that the focus should be on preventing
criminals and individuals suffering from mental illness from acquiring firearms, not on those who are
not a part of the problem.

Such persons will always be able to obtain firearms through unlawful sources without going through a
licensed firearms dealer. The restrictions proposed in SB 61 would not prevent it.

While the purchase limit exemption in the bill is appreciated for licensed hunters, and for persons
acquiring firearms at nonprofit fundraising events, it does not offset the opposed limitation on other
lawful persons.

Firearms ownership by individuals is a constitutionally protected right of all adults.

**Exhibit 6**
**0228**

Limiting all adults to a maximum of one rifle or shotgun purchase per month will not solve crime and mental health problems.

For the above reasons, the Outdoor Sportsmen's Coalition of California opposes SB 61.

Should you have any questions, please contact our legislative advocate, Kathryn Lynch, at (916) 443-0202 or lynch@lynchlobby.com.

Sincerely,

*Randall L. Walker*

Randall Walker
President, California Sportsman's Lobby

cc: Senator Steven Glazer, Co-Author
    Senator Scott Wiener, Co-Author
    Mr. Anthony Williams, Legislative Affairs Secretary, Governor's Office
    Mr. Gabe Caswell, Consultant, Senate Public Safety Committee
    Mr. Eric Csizmar, Consultant, Senate Republican Caucus
    Ms. Kathryn Lynch, Legislative Advocate
    California Sportsman's Lobby

**Exhibit 6**
**0229**
**Provided by LRI History LLC**          **SB 61 (2019) Page 199 of 367**



# NATIONAL SHOOTING SPORTS FOUNDATION, INC.

Headquarters: 11 Mile Hill Road, Newtown, CT 06470-2359
400 N. Capitol Street NW, Suite 475, Washington, D.C. 20001
203-426-1320 ext. 264    Cell 503-729-6325    mfindlay@nssf.org

**Michael Findlay**
Director,
Government Relations - State Affairs

March 21, 2019

The Honorable Anthony Portantino
California State Senate        Position: 
State Capitol Building
Sacramento, CA 95829    Location: Senate Public Safety Committee

**Re:** ▇▇▇▇▇▇▇▇▇▇ **Firearms: transfers (As Introduced January 3, 2019)**

Dear Senator Portantino:

As the trade association for America's firearms, ammunition, hunting, and recreational shooting sports industry, the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ("NSSF") seeks to promote, protect, and preserve hunting and the shooting sports. NSSF has a membership of more than 12,000 manufacturers, distributors, firearms retailers, shooting ranges, and sportsmen's organizations, including more than 1,300 in California alone. Our manufacturer members make the firearms used by law-abiding California sportsmen, the U.S. military and law enforcement agencies throughout the state.

This is to notify you of the opposition of the National Shooting Sports Foundation (NSSF) to SB 61, as introduced, that would limit the purchase of a rifle or shotgun by anyone to one per month.

Rather than limit purchases for all individuals to one such firearm per month, experience with mass homicides and other crimes involving firearms has clearly shown that the focus should instead be on preventing criminals and individuals suffering from mental illness from acquiring firearms, not on those who are not a part of the problem.

Persons who have an intent to commit such crimes, or other illegal acts involving the use of a firearm will always be able to obtain firearms through unlawful sources without going through a licensed firearms dealer.

The restrictions proposed in SB 61 will not prevent it.

With respect to mental health practitioners and others in positions of authority who should do so, it appears there are many who do not notify the Department of Justice (DOJ) or other appropriate agencies of individuals whom they have determined are likely to be a danger to themselves or others.

Provided by LRI History LLC    

Sometimes, agencies and authorities who have been notified of such persons fail to act.

This is another area that needs more focus, instead of setting arbitrary, ineffective purchase limits for the acquisition of a rifle or shotgun. There is no evidence that such a purchase limit would have an impact on the criminal misuse of firearms.

Limiting the purchases of rifles or shotguns for an entire class of citizens as proposed in SB 61 would not solve crime problems and tragedies.

Firearms ownership by individuals is a constitutionally protected right.

NSSF supports practical solutions that will ensure that unauthorized individuals do not have access to any firearm of any kind at any time.

It has sponsored the FixNics® campaign to encourage states to submit all disqualifying criminal and mental health records to the FBI's National Criminal Instant Background Check System (NICS). Since its inception, the number of disqualifying records sent by states to the FBI has increased by 200 percent and is continuing to grow, making the federal NICS background check system increasingly more effective. This is where the emphasis should be.

Limiting all adults to a maximum of one rifle or one shotgun purchase per month will not solve crime and mental health problems.

For the above reasons, the National Shooting Sports Foundation opposes the enactment of SB 61.

Should you have any questions, please contact our legislative advocate, Kathryn Lynch, at (916) 443-0202 or lynch@lynchlobby.com.

Sincerely,

Michael Findlay
Director of Government Relations – State Affairs

cc:   Senator Steven Glazer, Co-Author
      Senator Scott Wiener, Co-Author
      Mr. Anthony Williams, Legislative Affairs Secretary, Governor's Office
      Mr. Gabe Caswell, Consultant, Senate Public Safety Committee
      Mr. Eric Csizmar, Consultant, Senate Republican Caucus
      Ms. Kathryn Lynch, Legislative Advocate
      National Shooting Sports Foundation

Exhibit 6
0231

Provided by LRI History LLC



# Dedicated to Preserving Your Rights
# To Hunt and Fish
# In the State of California

March 21, 2019

The Honorable Anthony Portantino
California State Senate        Position: ▆▆▆▆
State Capitol Building
Sacramento, CA 95829        Location: Senate Public Safety Committee

**Re: ▆▆▆▆▆▆▆▆ Firearms: transfers (Introduced January 3, 2019)**

Dear Senator Portantino:

The ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ a nonprofit organization of sportsman's clubs and individuals dedicated to preserving outdoor recreation in California. Our principal activities are to monitor legislation that might negatively impact hunting, fishing and other recreation, and to oppose unwise changes in laws and regulations relating to these activities.

The Outdoor Sportsmen's Coalition of California (OSCC) promotes the conservation enhancement, scientific management, and wise use of all our natural resources; OSCC seeks to end activities needlessly destructive to natural resources; OSCC endeavors to educate and encourage the public generally, and the youth specifically, to an understanding of the advantages and importance of the conservation and enhancement of our natural resources.

OSCC works to enhance outdoor opportunities for all citizens. With several thousand members located throughout California, we stay in contact with our membership via newsletters and the internet so they can be involved as they see fit.

This is to notify you of the opposition of the Outdoor Sportsmen's Coalition of California (OSCC) to SB 61, as introduced.

It would needlessly limit the purchase of a rifle or shotgun by anyone to one per month.

Rather than limit such purchases to one firearm per month, experience with mass homicides and other crimes involving firearms has clearly shown that the focus should be on preventing criminals and individuals suffering from mental illness from acquiring firearms, not on those who are not a part of the problem.

P.O. Box 848, Fresno, CA 93712

**Exhibit 6**
**0232**

Persons who have an intent to commit such crimes, or other illegal acts involving the use of a firearm, will always be able to obtain firearms through unlawful sources without going through a licensed firearms dealer.

The restrictions proposed in SB 61 will not prevent it.

While the purchase limit exemption in the bill is appreciated for licensed hunters, and persons acquiring firearms at nonprofit fundraising events, it does not offset the needless limitation on other lawful individuals.

Firearms ownership by individuals is a constitutionally protected right of all adults.

Limiting all adults to a maximum of one rifle or shotgun purchase per month, will not solve crime and mental health problems.

For the above reasons, the Outdoor Sportsmen's Coalition of California opposes SB 61.

Should you have any questions, please contact our legislative advocate, Kathryn Lynch, at (916) 443-0202 or lynch@lynchlobby.com.

Sincerely,

*Randall S. Walker*

Randall Walker, President
Outdoor Sportsmen's Coalition of California

cc:    Senator Steven Glazer, Co-Author
       Senator Scott Wiener, Co-Author
       Mr. Anthony Williams, Legislative Affairs Secretary, Governor's Office
       Mr. Gabe Caswell, Consultant, Senate Public Safety Committee
       Mr. Eric Csizmar, Consultant, Senate Republican Caucus
       Ms. Kathryn Lynch, Legislative Advocate
       Outdoor Sportsmen's Coalition of California

Exhibit 6
0233

Provided by LRI History LLC            SB 61 (2019) Page 203 of 367

 

# Safari Club International

A NON-PROFIT ORGANIZATION • DEDICATED TO CONSERVING WILDLIFE AND PRESERVING HUNTING



**FIRST FOR HUNTERS**

**SCI CA Coalition**

March 21, 2019

The Honorable Anthony Portantino
California State Senate
State Capitol Building
Sacramento, CA 95829

Position ▮▮▮▮▮▮

Location: Senate Public Safety Committee

Re ▮▮▮▮▮▮▮▮▮▮ **Firearms: transfers (Introduced January 3, 2019)**

Dear Senator Portantino:

▮▮▮▮▮▮▮▮▮▮▮▮ and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (SCI) is a worldwide Non-Profit organization with the mission to protect the freedom to hunt and to promote wildlife conservation. SCI recognizes hunting as a valuable management tool. SCI currently has over 45,000 members and approximately 4,000 members in California. SCI also has 30,000 California Affiliates, 950,000 U.S. Affiliates and over 7,000,000 International Affiliates. SCI spends millions annually for Wildlife Conservation, Research and Education.

This is to notify you of the opposition of the SCI CA Coalition (SCI) to SB 61, as introduced.

It would needlessly limit the purchase of a rifle or shotgun by anyone to one per month.

While the exemption in the bill from the one gun per month limit for licensed hunters, and firearms acquired at nonprofit fundraising events, is appreciated, it does not mitigate the inappropriate limitation on others, such as recreational and competitive shooters.

Rather than limit such purchases to one firearm per month, experience with mass homicides and other crimes involving firearms has clearly shown that the focus should be on preventing criminals and individuals suffering from mental illness from acquiring firearms, not on those who are not a part of the problem.

Persons who have an intent to commit such crimes, or other illegal acts involving the use of a firearm, will always be able to obtain firearms through unlawful sources without going through a licensed firearms dealer.

The restrictions proposed in SB 61 will not prevent it.

Firearms ownership by individuals is a constitutionally protected right of all adults.

Limiting all adults to a maximum of one rifle or shotgun purchase per month will not solve crime and mental health problems.

**Exhibit 6**
**0234**

For the above reasons, SCI CA Coalition opposes the enactment of SB 61.

Should you have any questions, please contact our legislative advocate, Kathryn Lynch, at (916) 443-0202 or lynch@lynchlobby.com.

Sincerely,

Lisa C. McNamee
Co-Legislative Coordinator
SCI CA Coalition

Don Giottonini
Co-Legislative Coordinator
SCI CA Coalition

cc:  Senator Steven Glazer, Co-Author
     Senator Scott Wiener, Co-Author
     Mr. Anthony Williams, Legislative Affairs Secretary, Governor's Office
     Mr. Gabe Caswell, Consultant, Senate Public Safety Committee
     Mr. Eric Csizmar, Consultant, Senate Republican Caucus
     Ms. Kathryn Lynch, Legislative Advocate
     SCI CA Coalition

**Exhibit 6**
**0235**

**Provided by LRI History LLC**        **SB 61 (2019) Page 205 of 367**

# CONFLICT NOTIFICATION

March 26, 2019



OFFICE OF
LEGISLATIVE
COUNSEL

# SB 61

The above measure introduced by Senator Portantino and set for hearing in the

**Senate Committee on Public Safety**

appears to be in conflict with

**AB 645 - Irwin**
**SB 172 - Portantino**

Open the attachments included in this email for a complete list of Code Sections, Statutes Other Than Codes, Budget Items, and Constitution Sections in conflict.

---

A conflict exists when two or more bills and/or constitutional amendments amend, add, repeal, or amend and renumber the same section, article, chapter, division, title, or heading.

The enactment of these measures in their present form could give rise to a serious legal problem that may be avoided by appropriate amendments.

We urge you to consult with our Conflicts Unit at ConflictsUnit.Senate@lc.ca.gov or (916) 341-8230 at your earliest convenience.

LIS Link: For more information regarding bills in conflict, go to the Reports page in LIS and select the Canned Reports tab to research Bills that Amend Identical Code Sections and Bill Status.

**Exhibit 6**
**0236**
SB 61 (2019) Page 206 of 367

**Provided by LRI History LLC**

# List of Code Sections in Conflict

**Requested Measure: SB 0061**

| Code/Section | Measure ID/Ver | Current Lead Authors | Chapter Num | Amd Out* |
|---|---|---|---|---|
| PEN 26835 | AB 0645 98 | Assembly Member Irwin | | N |
| | SB 0061 99 | Senator Portantino | | N |
| | SB 0172 98 | Senator Portantino | | N |

*Y (Yes) or N (No) indicates whether section or item has been amended out of measure.

# CONFLICT NOTIFICATION

March 06, 2019



OFFICE OF
LEGISLATIVE
COUNSEL

# SB 61

---

The above measure introduced by Senator Portantino and set for hearing in the

**Senate Committee on Public Safety**

appears to be in conflict with

**AB 645 - Irwin**

Open the attachments included in this email for a complete list of Code Sections, Statutes Other Than Codes, Budget Items, and Constitution Sections in conflict.

---

A conflict exists when two or more bills and/or constitutional amendments amend, add, repeal, or amend and renumber the same section, article, chapter, division, title, or heading.

The enactment of these measures in their present form could give rise to a serious legal problem that may be avoided by appropriate amendments.

We urge you to consult with our Conflicts Unit at ConflictsUnit.Senate@lc.ca.gov or (916) 341-8230 at your earliest convenience.

LIS Link: For more information regarding bills in conflict, go to the Reports page in LIS and select the Canned Reports tab to research Bills that Amend Identical Code Sections and Bill Status.

**Exhibit 6**
0238

**Provided by LRI History LLC**

**SB 61 (2019)  Page 208 of 367**

# List of Code Sections in Conflict

Session: 2019-2020 Regular Session

**Requested Measure: SB 0061**

| Code/Section | Measure ID/Ver | Current Lead Authors | Chapter Num | Amd Out* |
|---|---|---|---|---|
| PEN 26835 | AB 0645 99 | Assembly Member Irwin | | N |
| | SB 0061 99 | Senator Portantino | | N |

*Y (Yes) or N (No) indicates whether section or item has been amended out of measure.

44452

AMENDMENTS TO SENATE BILL NO. 61

Amendment 1
In the heading, between lines 2 and 3, insert:

**(Coauthor: Senator Skinner)**

Amendment 2
In the title, in line 1, strike out "26835, 27535, 27540," and insert:

27510, 27540,

Amendment 3
In the title, in line 1, strike out "of" and insert:

of, and to amend, repeal, and add Sections 26835 and 27535 of,

Amendment 4
On page 2, strike out lines 1 to 33, inclusive, and strike out pages 3 and 4, on page 5, strike out lines 1 to 37, inclusive, and insert:

SECTION 1.  Section 26835 of the Penal Code is amended to read:
26835.  (a) A licensee shall post conspicuously within the licensed premises the following warnings in block letters not less than one inch in height:
(1) "FIREARMS MUST BE HANDLED RESPONSIBLY AND SECURELY STORED TO PREVENT ACCESS BY CHILDREN AND OTHER UNAUTHORIZED USERS. CALIFORNIA HAS STRICT LAWS PERTAINING TO FIREARMS, AND YOU MAY BE FINED OR IMPRISONED IF YOU FAIL TO COMPLY WITH THEM. VISIT THE WEB SITE OF THE CALIFORNIA ATTORNEY GENERAL AT HTTPS://OAG.CA.GOV/FIREARMS FOR INFORMATION ON FIREARM LAWS APPLICABLE TO YOU AND HOW YOU CAN COMPLY."
(2) "IF YOU KEEP A LOADED FIREARM WITHIN ANY PREMISES UNDER YOUR CUSTODY OR CONTROL, AND A PERSON UNDER 18 YEARS OF AGE OBTAINS IT AND USES IT, RESULTING IN INJURY OR DEATH, OR CARRIES IT TO A PUBLIC PLACE, YOU MAY BE GUILTY OF A MISDEMEANOR OR A FELONY UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER OR LOCKED THE FIREARM WITH A LOCKING DEVICE, TO KEEP IT FROM TEMPORARILY FUNCTIONING."
(3) "CHILDREN MAY BE UNABLE TO DISTINGUISH FIREARMS FROM TOYS AND MAY OPERATE FIREARMS, CAUSING SEVERE INJURIES OR DEATH. IF YOU KEEP A PISTOL, REVOLVER, OR OTHER FIREARM CAPABLE OF BEING CONCEALED UPON THE PERSON, WITHIN ANY PREMISES UNDER YOUR CUSTODY OR CONTROL, AND A PERSON UNDER 18 YEARS OF AGE



**Exhibit 6**
0240
**Provided by LRI History LLC**

GAINS ACCESS TO THE FIREARM, AND CARRIES IT OFF-PREMISES, YOU
MAY BE GUILTY OF A MISDEMEANOR, UNLESS YOU STORED THE FIREARM
IN A LOCKED CONTAINER, OR LOCKED THE FIREARM WITH A LOCKING
DEVICE, TO KEEP IT FROM TEMPORARILY FUNCTIONING."

(4) "YOU MAY BE GUILTY OF A MISDEMEANOR, INCLUDING A
SIGNIFICANT FINE OR IMPRISONMENT, IF YOU KEEP A FIREARM WHERE
A MINOR IS LIKELY TO ACCESS IT OR IF A MINOR OBTAINS AND
IMPROPERLY USES IT, OR CARRIES IT OFF OF THE PREMISES TO A SCHOOL
OR SCHOOL-SPONSORED EVENT, UNLESS YOU STORED THE FIREARM IN
A LOCKED CONTAINER OR LOCKED THE FIREARM WITH A LOCKING
DEVICE."

(5) "IF YOU NEGLIGENTLY STORE OR LEAVE A LOADED FIREARM
WITHIN ANY PREMISES UNDER YOUR CUSTODY OR CONTROL, WHERE
A PERSON UNDER 18 YEARS OF AGE IS LIKELY TO ACCESS IT, YOU MAY
BE GUILTY OF A MISDEMEANOR, INCLUDING A SIGNIFICANT FINE, UNLESS
YOU STORED THE FIREARM IN A LOCKED CONTAINER, OR LOCKED THE
FIREARM WITH A LOCKING DEVICE."

(6) "DISCHARGING FIREARMS IN POORLY VENTILATED AREAS,
CLEANING FIREARMS, OR HANDLING AMMUNITION MAY RESULT IN
EXPOSURE TO LEAD, A SUBSTANCE KNOWN TO CAUSE BIRTH DEFECTS,
REPRODUCTIVE HARM, AND OTHER SERIOUS PHYSICAL INJURY. HAVE
ADEQUATE VENTILATION AT ALL TIMES. WASH HANDS THOROUGHLY
AFTER EXPOSURE."

(7) "FEDERAL REGULATIONS PROVIDE THAT IF YOU DO NOT TAKE
PHYSICAL POSSESSION OF THE FIREARM THAT YOU ARE ACQUIRING
OWNERSHIP OF WITHIN 30 DAYS AFTER YOU COMPLETE THE INITIAL
BACKGROUND CHECK PAPERWORK, THEN YOU HAVE TO GO THROUGH
THE BACKGROUND CHECK PROCESS A SECOND TIME IN ORDER TO TAKE
PHYSICAL POSSESSION OF THAT FIREARM."

(8) "NO PERSON SHALL MAKE AN APPLICATION TO PURCHASE MORE
THAN ONE PISTOL, REVOLVER, OR OTHER FIREARM CAPABLE OF BEING
CONCEALED UPON THE PERSON WITHIN ANY 30-DAY PERIOD AND NO
DELIVERY SHALL BE MADE TO ANY PERSON WHO HAS MADE AN
APPLICATION TO PURCHASE MORE THAN ONE PISTOL, REVOLVER, OR
OTHER FIREARM CAPABLE OF BEING CONCEALED UPON THE PERSON
WITHIN ANY 30-DAY PERIOD."

(9) "IF A FIREARM YOU OWN OR POSSESS IS LOST OR STOLEN, YOU
MUST REPORT THE LOSS OR THEFT TO A LOCAL LAW ENFORCEMENT
AGENCY WHERE THE LOSS OR THEFT OCCURRED WITHIN FIVE DAYS OF
THE TIME YOU KNEW OR REASONABLY SHOULD HAVE KNOWN THAT
THE FIREARM HAD BEEN LOST OR STOLEN."

(b) This section shall become operative on January 1, 2019.

(b) This section shall remain in effect only until July 1, 2021, and as of that date
is repealed.

SEC. 2.  Section 26835 is added to the Penal Code, to read:

26835.  (a) A licensee shall conspicuously post within the licensed premises the
following warnings in block letters not less than one inch in height:

Exhibit 6
0241
**Provided by LRI History LLC**                                        **SB 61 (2019)  Page 211 of 367**

(1) "FIREARMS MUST BE HANDLED RESPONSIBLY AND SECURELY
STORED TO PREVENT ACCESS BY CHILDREN AND OTHER UNAUTHORIZED
USERS. CALIFORNIA HAS STRICT LAWS PERTAINING TO FIREARMS, AND
YOU MAY BE FINED OR IMPRISONED IF YOU FAIL TO COMPLY WITH
THEM. VISIT THE WEB SITE OF THE CALIFORNIA ATTORNEY GENERAL
AT HTTPS://OAG.CA.GOV/FIREARMS FOR INFORMATION ON FIREARM
LAWS APPLICABLE TO YOU AND HOW YOU CAN COMPLY."

(2) "IF YOU KEEP A LOADED FIREARM WITHIN ANY PREMISES UNDER
YOUR CUSTODY OR CONTROL, AND A PERSON UNDER 18 YEARS OF AGE
OBTAINS IT AND USES IT, RESULTING IN INJURY OR DEATH, OR CARRIES
IT TO A PUBLIC PLACE, YOU MAY BE GUILTY OF A MISDEMEANOR OR A
FELONY UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER
OR LOCKED THE FIREARM WITH A LOCKING DEVICE, TO KEEP IT FROM
TEMPORARILY FUNCTIONING."

(3) "CHILDREN MAY BE UNABLE TO DISTINGUISH FIREARMS FROM
TOYS AND MAY OPERATE FIREARMS, CAUSING SEVERE INJURIES OR
DEATH. IF YOU KEEP A PISTOL, REVOLVER, OR OTHER FIREARM CAPABLE
OF BEING CONCEALED UPON THE PERSON, WITHIN ANY PREMISES UNDER
YOUR CUSTODY OR CONTROL, AND A PERSON UNDER 18 YEARS OF AGE
GAINS ACCESS TO THE FIREARM, AND CARRIES IT OFF-PREMISES, YOU
MAY BE GUILTY OF A MISDEMEANOR, UNLESS YOU STORED THE FIREARM
IN A LOCKED CONTAINER, OR LOCKED THE FIREARM WITH A LOCKING
DEVICE, TO KEEP IT FROM TEMPORARILY FUNCTIONING."

(4) "YOU MAY BE GUILTY OF A MISDEMEANOR, INCLUDING A
SIGNIFICANT FINE OR IMPRISONMENT, IF YOU KEEP A FIREARM WHERE
A MINOR IS LIKELY TO ACCESS IT OR IF A MINOR OBTAINS AND
IMPROPERLY USES IT, OR CARRIES IT OFF OF THE PREMISES TO A SCHOOL
OR SCHOOL-SPONSORED EVENT, UNLESS YOU STORED THE FIREARM IN
A LOCKED CONTAINER OR LOCKED THE FIREARM WITH A LOCKING
DEVICE."

(5) "IF YOU NEGLIGENTLY STORE OR LEAVE A LOADED FIREARM
WITHIN ANY PREMISES UNDER YOUR CUSTODY OR CONTROL, WHERE
A PERSON UNDER 18 YEARS OF AGE IS LIKELY TO ACCESS IT, YOU MAY
BE GUILTY OF A MISDEMEANOR, INCLUDING A SIGNIFICANT FINE, UNLESS
YOU STORED THE FIREARM IN A LOCKED CONTAINER, OR LOCKED THE
FIREARM WITH A LOCKING DEVICE."

(6) "DISCHARGING FIREARMS IN POORLY VENTILATED AREAS,
CLEANING FIREARMS, OR HANDLING AMMUNITION MAY RESULT IN
EXPOSURE TO LEAD, A SUBSTANCE KNOWN TO CAUSE BIRTH DEFECTS,
REPRODUCTIVE HARM, AND OTHER SERIOUS PHYSICAL INJURY. HAVE
ADEQUATE VENTILATION AT ALL TIMES. WASH HANDS THOROUGHLY
AFTER EXPOSURE."

(7) "FEDERAL REGULATIONS PROVIDE THAT IF YOU DO NOT TAKE
PHYSICAL POSSESSION OF THE FIREARM THAT YOU ARE ACQUIRING
OWNERSHIP OF WITHIN 30 DAYS AFTER YOU COMPLETE THE INITIAL
BACKGROUND CHECK PAPERWORK, YOU HAVE TO GO THROUGH THE

**Exhibit 6**
**0242**

BACKGROUND CHECK PROCESS A SECOND TIME IN ORDER TO TAKE PHYSICAL POSSESSION OF THAT FIREARM."

(8) "NO PERSON SHALL MAKE AN APPLICATION TO PURCHASE MORE THAN ONE FIREARM WITHIN ANY 30-DAY PERIOD AND NO DELIVERY SHALL BE MADE TO ANY PERSON WHO HAS MADE AN APPLICATION TO PURCHASE MORE THAN ONE FIREARM WITHIN ANY 30-DAY PERIOD."

(9) "IF A FIREARM YOU OWN OR POSSESS IS LOST OR STOLEN, YOU MUST REPORT THE LOSS OR THEFT TO A LOCAL LAW ENFORCEMENT AGENCY WHERE THE LOSS OR THEFT OCCURRED WITHIN FIVE DAYS OF THE TIME YOU KNEW OR REASONABLY SHOULD HAVE KNOWN THAT THE FIREARM HAD BEEN LOST OR STOLEN."

(b) This section shall become operative on July 1, 2021.

SEC. 3.   Section 27510 of the Penal Code is amended to read:

27510.   (a) A person licensed under Sections 26700 to 26915, inclusive, shall not sell, supply, deliver, or give possession or control of a firearm to any person who is under 21 years of age.

(b) (1) Subdivision (a) does not apply to or affect the sale, supplying, delivery, or giving possession or control of a firearm that is not a handgun or a semiautomatic centerfire rifle to a person 18 years of age or older who possesses a valid, unexpired hunting license issued by the Department of Fish and Wildlife.

(2) Subdivision (a) does not apply to or affect the sale, supplying, delivery, or giving possession or control of a firearm that is not a handgun or a semiautomatic centerfire rifle to any of the following persons who are 18 years of age or older:

(A) An active peace officer, as described in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2, who is authorized to carry a firearm in the course and scope of his or her employment.

(B) An active federal officer or law enforcement agent who is authorized to carry a firearm in the course and scope of his or her employment.

(C) A reserve peace officer, as defined in Section 832.6, who is authorized to carry a firearm in the course and scope of his or her employment as a reserve peace officer.

(D) A person who provides proper identification of his or her active membership in the United States Armed Forces, the National Guard, the Air National Guard, or active reserve components of the United States. For purposes of this subparagraph, proper identification includes an Armed Forces Identification Card or other written documentation certifying that the individual is an active member.

(E) A person who provides proper identification that he or she is of being an honorably discharged member of the United States Armed Forces, the National Guard, the Air National Guard, or the active reserve components of the United States. For purposes of this subparagraph, proper identification includes an Armed Forces Identification Card or other written documentation certifying that the individual is an honorably discharged member.

(c) A person licensed under Sections 26700 to 26915, inclusive, shall not sell, supply, deliver, or give possession or control of a semiautomatic centerfire rifle to any person who is under 21 years of age.

Exhibit 6
0243

Provided by LRI History LLC                                SB 61 (2019) Page 213 of 367

(d) Subdivision (c) does not apply to or affect the sale, supplying, delivery, or giving possession or control of a semiautomatic centerfire rifle to any of the following persons who are 18 years of age or older:

(1) An active peace officer, as described in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2, who is authorized to carry a firearm in the course and scope of employment.

(2) An active federal officer or law enforcement agent who is authorized to carry a firearm in the course and scope of employment.

(3) A reserve peace officer, as defined in Section 832.6, who is authorized to carry a firearm in the course and scope of employment as a reserve peace officer.

(4) A person who provides proper identification of active membership in the United States Armed Forces, the National Guard, the Air National Guard, or active reserve components of the United States. For purposes of this paragraph, proper identification includes an Armed Forces Identification Card or other written documentation certifying that the individual is an active member.

SEC. 4.   Section 27535 of the Penal Code is amended to read:

27535.   (a) No person shall make an application to purchase more than one handgun within any 30-day period.

(b) Subdivision (a) shall not apply to any of the following:

(1) Any law enforcement agency.

(2) Any agency duly authorized to perform law enforcement duties.

(3) Any state or local correctional facility.

(4) Any private security company licensed to do business in California.

(5) Any person who is properly identified as a full-time paid peace officer, as defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2, and who is authorized to, and does carry a firearm during the course and scope of employment as a peace officer.

(6) Any motion picture, television, or video production company or entertainment or theatrical company whose production by its nature involves the use of a firearm.

(7) Any person who may, pursuant to Article 2 (commencing with Section 27600), Article 3 (commencing with Section 27650), or Article 4 (commencing with Section 27700), claim an exemption from the waiting period set forth in Section 27540.

(8) Any transaction conducted through a licensed firearms dealer pursuant to Chapter 5 (commencing with Section 28050).

(9) Any person who is licensed as a collector pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto, and has a current certificate of eligibility issued by the Department of Justice pursuant to Article 1 (commencing with Section 26700) of Chapter 2.

(10) The exchange of a handgun where the dealer purchased that firearm from the person seeking the exchange within the 30-day period immediately preceding the date of exchange or replacement.

(11) The replacement of a handgun when the person's handgun was lost or stolen, and the person reported that firearm lost or stolen pursuant to Section 25250 prior to the completion of the application to purchase the replacement handgun.

(12) The return of any handgun to its owner.

**Exhibit 6**
0244

**Provided by LRI History LLC**

(13) A community college that is certified by the Commission on Peace Officer Standards and Training to present the law enforcement academy basic course or other commission-certified law enforcement training.

(c) This section shall remain in effect only until July 1, 2021, and as of that date is repealed.

SEC. 5.  Section 27535 is added to the Penal Code, to read:

27535.  (a) A person shall not make an application to purchase more than one firearm within any 30-day period.

(b) Subdivision (a) does not apply to any of the following:

(1) Any law enforcement agency.

(2) Any agency duly authorized to perform law enforcement duties.

(3) Any state or local correctional facility.

(4) Any private security company licensed to do business in California.

(5) Any person who is properly identified as a full-time paid peace officer, as defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2, and who is authorized to, and does carry a firearm during the course and scope of employment as a peace officer.

(6) Any motion picture, television, or video production company or entertainment or theatrical company whose production by its nature involves the use of a firearm.

(7) Any person who may, pursuant to Article 2 (commencing with Section 27600), Article 3 (commencing with Section 27650), or Article 4 (commencing with Section 27700), claim an exemption from the waiting period set forth in Section 27540.

(8) Any transaction conducted through a licensed firearms dealer pursuant to Chapter 5 (commencing with Section 28050).

(9) Any person who is licensed as a collector pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto, and has a current certificate of eligibility issued by the Department of Justice pursuant to Article 1 (commencing with Section 26700) of Chapter 2.

(10) The exchange of a firearm where the dealer purchased that firearm from the person seeking the exchange within the 30-day period immediately preceding the date of exchange or replacement.

(11) The replacement of a firearm when the person's firearm was lost or stolen, and the person reported that firearm lost or stolen pursuant to Section 25250 prior to the completion of the application to purchase the replacement.

(12) The return of any firearm to its owner.

(13) A community college that is certified by the Commission on Peace Officer Standards and Training to present the law enforcement academy basic course or other commission-certified law enforcement training.

(14) The purchase of a firearm, other than a handgun, or a semiautomatic centerfire rifle by a person who possesses a valid, unexpired hunting license issued by the Department of Fish and Wildlife.

(15) The acquisition of a firearm, other than a handgun, or a semiautomatic centerfire rifle at an auction or similar event conducted by a nonprofit public benefit or mutual benefit corporation to fund the activities of that corporation or local chapters of that corporation.

(c) For the purposes of paragraphs (14) and (15) of subdivision (b), the frame or receiver of a firearm is a handgun unless the frame or receiver listed in the application

Exhibit 6
0245
Provided by LRI History LLC                    SB 61 (2019) Page 215 of 367

to purchase and delivered to the recipient is equipped with, is attached to, or is
concurrently accompanied by, a barrel of 16 inches or greater in length.
(d) This section shall become operative on July 1, 2021.

Amendment 5
On page 5, in line 38, strike out "SEC. 3." and insert:

SEC. 6.

Amendment 6
On page 6, in line 24, strike out "A firearm" and insert:

Until July 1, 2021, a handgun

Amendment 7
On page 6, in line 27, strike out "firearm" and insert:

handgun

Amendment 8
On page 6, between lines 29 and 30, insert:

(g) Commencing July 1, 2021, a firearm shall not be delivered whenever the
dealer is notified by the Department of Justice that within the preceding 30-day period
the purchaser has made another application to purchase a firearm and that the previous
application to purchase did not involve any of the entities or circumstances specified
in subdivision (b) of Section 27535.

Amendment 9
On page 6, in line 30, strike out "SEC. 4." and insert:

SEC. 7.

Amendment 10
On page 8, in line 13, strike out "For" and insert:

(A) Until July 1, 2021, for

Exhibit 6
0246

Provided by LRI History LLC

Amendment 11
On page 8, in line 14, strike out "firearm" and insert:

handgun

Amendment 12
On page 8, between lines 15 and 16, insert:

(B) Commencing July 1, 2021, for purposes of this subdivision, each application to purchase a firearm in violation of Section 27535 is a separate offense.

Amendment 13
On page 8, in line 16, strike out "SEC. 5." and insert:

SEC. 8.

- 0 -

**Exhibit 6**
**0247**
Provided by LRI History LLC                    SB 61 (2019) Page 217 of 367

Rub. S-

## AMENDMENTS TO SENATE BILL NO. 61

### Amendment 1
In the heading, between lines 2 and 3, insert:

**(Coauthor: Senator Skinner)**

### Amendment 2
In the title, in line 1, strike out "26835, 27535, 27540," and insert:

27510, 27540,

### Amendment 3
In the title, in line 1, strike out "of" and insert:

of, and to amend, repeal, and add Sections 26835 and 27535 of,

### Amendment 4
On page 2, strike out lines 1 to 33, inclusive, and strike out pages 3 and 4, on page 5, strike out lines 1 to 37, inclusive, and insert:

SECTION 1.  Section 26835 of the Penal Code is amended to read:
26835.  (a) A licensee shall post conspicuously within the licensed premises the following warnings in block letters not less than one inch in height:
(1) "FIREARMS MUST BE HANDLED RESPONSIBLY AND SECURELY STORED TO PREVENT ACCESS BY CHILDREN AND OTHER UNAUTHORIZED USERS. CALIFORNIA HAS STRICT LAWS PERTAINING TO FIREARMS, AND YOU MAY BE FINED OR IMPRISONED IF YOU FAIL TO COMPLY WITH THEM. VISIT THE WEB SITE OF THE CALIFORNIA ATTORNEY GENERAL AT HTTPS://OAG.CA.GOV/FIREARMS FOR INFORMATION ON FIREARM LAWS APPLICABLE TO YOU AND HOW YOU CAN COMPLY."
(2) "IF YOU KEEP A LOADED FIREARM WITHIN ANY PREMISES UNDER YOUR CUSTODY OR CONTROL, AND A PERSON UNDER 18 YEARS OF AGE OBTAINS IT AND USES IT, RESULTING IN INJURY OR DEATH, OR CARRIES IT TO A PUBLIC PLACE, YOU MAY BE GUILTY OF A MISDEMEANOR OR A FELONY UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER OR LOCKED THE FIREARM WITH A LOCKING DEVICE, TO KEEP IT FROM TEMPORARILY FUNCTIONING."
(3) "CHILDREN MAY BE UNABLE TO DISTINGUISH FIREARMS FROM TOYS AND MAY OPERATE FIREARMS, CAUSING SEVERE INJURIES OR DEATH. IF YOU KEEP A PISTOL, REVOLVER, OR OTHER FIREARM CAPABLE OF BEING CONCEALED UPON THE PERSON, WITHIN ANY PREMISES UNDER YOUR CUSTODY OR CONTROL, AND A PERSON UNDER 18 YEARS OF AGE



**Exhibit 6**
**0248**

GAINS ACCESS TO THE FIREARM, AND CARRIES IT OFF-PREMISES, YOU
MAY BE GUILTY OF A MISDEMEANOR, UNLESS YOU STORED THE FIREARM
IN A LOCKED CONTAINER, OR LOCKED THE FIREARM WITH A LOCKING
DEVICE, TO KEEP IT FROM TEMPORARILY FUNCTIONING."

(4) "YOU MAY BE GUILTY OF A MISDEMEANOR, INCLUDING A
SIGNIFICANT FINE OR IMPRISONMENT, IF YOU KEEP A FIREARM WHERE
A MINOR IS LIKELY TO ACCESS IT OR IF A MINOR OBTAINS AND
IMPROPERLY USES IT, OR CARRIES IT OFF OF THE PREMISES TO A SCHOOL
OR SCHOOL-SPONSORED EVENT, UNLESS YOU STORED THE FIREARM IN
A LOCKED CONTAINER OR LOCKED THE FIREARM WITH A LOCKING
DEVICE."

(5) "IF YOU NEGLIGENTLY STORE OR LEAVE A LOADED FIREARM
WITHIN ANY PREMISES UNDER YOUR CUSTODY OR CONTROL, WHERE
A PERSON UNDER 18 YEARS OF AGE IS LIKELY TO ACCESS IT, YOU MAY
BE GUILTY OF A MISDEMEANOR, INCLUDING A SIGNIFICANT FINE, UNLESS
YOU STORED THE FIREARM IN A LOCKED CONTAINER, OR LOCKED THE
FIREARM WITH A LOCKING DEVICE."

(6) "DISCHARGING FIREARMS IN POORLY VENTILATED AREAS,
CLEANING FIREARMS, OR HANDLING AMMUNITION MAY RESULT IN
EXPOSURE TO LEAD, A SUBSTANCE KNOWN TO CAUSE BIRTH DEFECTS,
REPRODUCTIVE HARM, AND OTHER SERIOUS PHYSICAL INJURY. HAVE
ADEQUATE VENTILATION AT ALL TIMES. WASH HANDS THOROUGHLY
AFTER EXPOSURE."

(7) "FEDERAL REGULATIONS PROVIDE THAT IF YOU DO NOT TAKE
PHYSICAL POSSESSION OF THE FIREARM THAT YOU ARE ACQUIRING
OWNERSHIP OF WITHIN 30 DAYS AFTER YOU COMPLETE THE INITIAL
BACKGROUND CHECK PAPERWORK, THEN YOU HAVE TO GO THROUGH
THE BACKGROUND CHECK PROCESS A SECOND TIME IN ORDER TO TAKE
PHYSICAL POSSESSION OF THAT FIREARM."

(8) "NO PERSON SHALL MAKE AN APPLICATION TO PURCHASE MORE
THAN ONE PISTOL, REVOLVER, OR OTHER FIREARM CAPABLE OF BEING
CONCEALED UPON THE PERSON WITHIN ANY 30-DAY PERIOD AND NO
DELIVERY SHALL BE MADE TO ANY PERSON WHO HAS MADE AN
APPLICATION TO PURCHASE MORE THAN ONE PISTOL, REVOLVER, OR
OTHER FIREARM CAPABLE OF BEING CONCEALED UPON THE PERSON
WITHIN ANY 30-DAY PERIOD."

(9) "IF A FIREARM YOU OWN OR POSSESS IS LOST OR STOLEN, YOU
MUST REPORT THE LOSS OR THEFT TO A LOCAL LAW ENFORCEMENT
AGENCY WHERE THE LOSS OR THEFT OCCURRED WITHIN FIVE DAYS OF
THE TIME YOU KNEW OR REASONABLY SHOULD HAVE KNOWN THAT
THE FIREARM HAD BEEN LOST OR STOLEN."

(b) This section shall become operative on January 1, 2019.

(b) This section shall remain in effect only until July 1, 2021, and as of that date
is repealed.

SEC. 2.   Section 26835 is added to the Penal Code, to read:

26835.   (a) A licensee shall conspicuously post within the licensed premises the
following warnings in block letters not less than one inch in height:

**Exhibit 6**
**0249**
Provided by LRI History LLC                                      **SB 61 (2019) Page 219 of 367**

(1) "FIREARMS MUST BE HANDLED RESPONSIBLY AND SECURELY STORED TO PREVENT ACCESS BY CHILDREN AND OTHER UNAUTHORIZED USERS. CALIFORNIA HAS STRICT LAWS PERTAINING TO FIREARMS, AND YOU MAY BE FINED OR IMPRISONED IF YOU FAIL TO COMPLY WITH THEM. VISIT THE WEB SITE OF THE CALIFORNIA ATTORNEY GENERAL AT HTTPS://OAG.CA.GOV/FIREARMS FOR INFORMATION ON FIREARM LAWS APPLICABLE TO YOU AND HOW YOU CAN COMPLY."

(2) "IF YOU KEEP A LOADED FIREARM WITHIN ANY PREMISES UNDER YOUR CUSTODY OR CONTROL, AND A PERSON UNDER 18 YEARS OF AGE OBTAINS IT AND USES IT, RESULTING IN INJURY OR DEATH, OR CARRIES IT TO A PUBLIC PLACE, YOU MAY BE GUILTY OF A MISDEMEANOR OR A FELONY UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER OR LOCKED THE FIREARM WITH A LOCKING DEVICE, TO KEEP IT FROM TEMPORARILY FUNCTIONING."

(3) "CHILDREN MAY BE UNABLE TO DISTINGUISH FIREARMS FROM TOYS AND MAY OPERATE FIREARMS, CAUSING SEVERE INJURIES OR DEATH. IF YOU KEEP A PISTOL, REVOLVER, OR OTHER FIREARM CAPABLE OF BEING CONCEALED UPON THE PERSON, WITHIN ANY PREMISES UNDER YOUR CUSTODY OR CONTROL, AND A PERSON UNDER 18 YEARS OF AGE GAINS ACCESS TO THE FIREARM, AND CARRIES IT OFF-PREMISES, YOU MAY BE GUILTY OF A MISDEMEANOR, UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER, OR LOCKED THE FIREARM WITH A LOCKING DEVICE, TO KEEP IT FROM TEMPORARILY FUNCTIONING."

(4) "YOU MAY BE GUILTY OF A MISDEMEANOR, INCLUDING A SIGNIFICANT FINE OR IMPRISONMENT, IF YOU KEEP A FIREARM WHERE A MINOR IS LIKELY TO ACCESS IT OR IF A MINOR OBTAINS AND IMPROPERLY USES IT, OR CARRIES IT OFF OF THE PREMISES TO A SCHOOL OR SCHOOL-SPONSORED EVENT, UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER OR LOCKED THE FIREARM WITH A LOCKING DEVICE."

(5) "IF YOU NEGLIGENTLY STORE OR LEAVE A LOADED FIREARM WITHIN ANY PREMISES UNDER YOUR CUSTODY OR CONTROL, WHERE A PERSON UNDER 18 YEARS OF AGE IS LIKELY TO ACCESS IT, YOU MAY BE GUILTY OF A MISDEMEANOR, INCLUDING A SIGNIFICANT FINE, UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER, OR LOCKED THE FIREARM WITH A LOCKING DEVICE."

(6) "DISCHARGING FIREARMS IN POORLY VENTILATED AREAS, CLEANING FIREARMS, OR HANDLING AMMUNITION MAY RESULT IN EXPOSURE TO LEAD, A SUBSTANCE KNOWN TO CAUSE BIRTH DEFECTS, REPRODUCTIVE HARM, AND OTHER SERIOUS PHYSICAL INJURY. HAVE ADEQUATE VENTILATION AT ALL TIMES. WASH HANDS THOROUGHLY AFTER EXPOSURE."

(7) "FEDERAL REGULATIONS PROVIDE THAT IF YOU DO NOT TAKE PHYSICAL POSSESSION OF THE FIREARM THAT YOU ARE ACQUIRING OWNERSHIP OF WITHIN 30 DAYS AFTER YOU COMPLETE THE INITIAL BACKGROUND CHECK PAPERWORK, YOU HAVE TO GO THROUGH THE

BACKGROUND CHECK PROCESS A SECOND TIME IN ORDER TO TAKE PHYSICAL POSSESSION OF THAT FIREARM."

(8) "NO PERSON SHALL MAKE AN APPLICATION TO PURCHASE MORE THAN ONE FIREARM WITHIN ANY 30-DAY PERIOD AND NO DELIVERY SHALL BE MADE TO ANY PERSON WHO HAS MADE AN APPLICATION TO PURCHASE MORE THAN ONE FIREARM WITHIN ANY 30-DAY PERIOD."

(9) "IF A FIREARM YOU OWN OR POSSESS IS LOST OR STOLEN, YOU MUST REPORT THE LOSS OR THEFT TO A LOCAL LAW ENFORCEMENT AGENCY WHERE THE LOSS OR THEFT OCCURRED WITHIN FIVE DAYS OF THE TIME YOU KNEW OR REASONABLY SHOULD HAVE KNOWN THAT THE FIREARM HAD BEEN LOST OR STOLEN."

(b) This section shall become operative on July 1, 2021.

SEC. 3.  Section 27510 of the Penal Code is amended to read:

27510.  (a) A person licensed under Sections 26700 to 26915, inclusive, shall not sell, supply, deliver, or give possession or control of a firearm to any person who is under 21 years of age.

(b) (1) Subdivision (a) does not apply to or affect the sale, supplying, delivery, or giving possession or control of a firearm that is not a handgun or a semiautomatic centerfire rifle to a person 18 years of age or older who possesses a valid, unexpired hunting license issued by the Department of Fish and Wildlife.

(2) Subdivision (a) does not apply to or affect the sale, supplying, delivery, or giving possession or control of a firearm that is not a handgun or a semiautomatic centerfire rifle to any of the following persons who are 18 years of age or older:

(A) An active peace officer, as described in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2, who is authorized to carry a firearm in the course and scope of his or her employment.

(B) An active federal officer or law enforcement agent who is authorized to carry a firearm in the course and scope of his or her employment.

(C) A reserve peace officer, as defined in Section 832.6, who is authorized to carry a firearm in the course and scope of his or her employment as a reserve peace officer.

(D) A person who provides proper identification of his or her active membership in the United States Armed Forces, the National Guard, the Air National Guard, or active reserve components of the United States. For purposes of this subparagraph, proper identification includes an Armed Forces Identification Card or other written documentation certifying that the individual is an active member.

(E) A person who provides proper identification that he or she is of being an honorably discharged member of the United States Armed Forces, the National Guard, the Air National Guard, or the active reserve components of the United States. For purposes of this subparagraph, proper identification includes an Armed Forces Identification Card or other written documentation certifying that the individual is an honorably discharged member.

(c) A person licensed under Sections 26700 to 26915, inclusive, shall not sell, supply, deliver, or give possession or control of a semiautomatic centerfire rifle to any person who is under 21 years of age.

**Exhibit 6**
0251
**Provided by LRI History LLC**          **SB 61 (2019) Page 221 of 367**

(d) Subdivision (c) does not apply to or affect the sale, supplying, delivery, or giving possession or control of a semiautomatic centerfire rifle to any of the following persons who are 18 years of age or older:

(1) An active peace officer, as described in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2, who is authorized to carry a firearm in the course and scope of employment.

(2) An active federal officer or law enforcement agent who is authorized to carry a firearm in the course and scope of employment.

(3) A reserve peace officer, as defined in Section 832.6, who is authorized to carry a firearm in the course and scope of employment as a reserve peace officer.

(4) A person who provides proper identification of active membership in the United States Armed Forces, the National Guard, the Air National Guard, or active reserve components of the United States. For purposes of this paragraph, proper identification includes an Armed Forces Identification Card or other written documentation certifying that the individual is an active member.

SEC. 4.   Section 27535 of the Penal Code is amended to read:

27535.   (a) No person shall make an application to purchase more than one handgun within any 30-day period.

(b) Subdivision (a) shall not apply to any of the following:

(1) Any law enforcement agency.

(2) Any agency duly authorized to perform law enforcement duties.

(3) Any state or local correctional facility.

(4) Any private security company licensed to do business in California.

(5) Any person who is properly identified as a full-time paid peace officer, as defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2, and who is authorized to, and does carry a firearm during the course and scope of employment as a peace officer.

(6) Any motion picture, television, or video production company or entertainment or theatrical company whose production by its nature involves the use of a firearm.

(7) Any person who may, pursuant to Article 2 (commencing with Section 27600), Article 3 (commencing with Section 27650), or Article 4 (commencing with Section 27700), claim an exemption from the waiting period set forth in Section 27540.

(8) Any transaction conducted through a licensed firearms dealer pursuant to Chapter 5 (commencing with Section 28050).

(9) Any person who is licensed as a collector pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto, and has a current certificate of eligibility issued by the Department of Justice pursuant to Article 1 (commencing with Section 26700) of Chapter 2.

(10) The exchange of a handgun where the dealer purchased that firearm from the person seeking the exchange within the 30-day period immediately preceding the date of exchange or replacement.

(11) The replacement of a handgun when the person's handgun was lost or stolen, and the person reported that firearm lost or stolen pursuant to Section 25250 prior to the completion of the application to purchase the replacement handgun.

(12) The return of any handgun to its owner.

**Exhibit 6**
**0252**

**Provided by LRI History LLC**                        **SB 61 (2019) Page 222 of 367**

(13) A community college that is certified by the Commission on Peace Officer Standards and Training to present the law enforcement academy basic course or other commission-certified law enforcement training.

(c) This section shall remain in effect only until July 1, 2021, and as of that date is repealed.

SEC. 5.  Section 27535 is added to the Penal Code, to read:

27535.  (a) A person shall not make an application to purchase more than one firearm within any 30-day period.

(b) Subdivision (a) does not apply to any of the following:

(1) Any law enforcement agency.

(2) Any agency duly authorized to perform law enforcement duties.

(3) Any state or local correctional facility.

(4) Any private security company licensed to do business in California.

(5) Any person who is properly identified as a full-time paid peace officer, as defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2, and who is authorized to, and does carry a firearm during the course and scope of employment as a peace officer.

(6) Any motion picture, television, or video production company or entertainment or theatrical company whose production by its nature involves the use of a firearm.

(7) Any person who may, pursuant to Article 2 (commencing with Section 27600), Article 3 (commencing with Section 27650), or Article 4 (commencing with Section 27700), claim an exemption from the waiting period set forth in Section 27540.

(8) Any transaction conducted through a licensed firearms dealer pursuant to Chapter 5 (commencing with Section 28050).

(9) Any person who is licensed as a collector pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto, and has a current certificate of eligibility issued by the Department of Justice pursuant to Article 1 (commencing with Section 26700) of Chapter 2.

(10) The exchange of a firearm where the dealer purchased that firearm from the person seeking the exchange within the 30-day period immediately preceding the date of exchange or replacement.

(11) The replacement of a firearm when the person's firearm was lost or stolen, and the person reported that firearm lost or stolen pursuant to Section 25250 prior to the completion of the application to purchase the replacement.

(12) The return of any firearm to its owner.

(13) A community college that is certified by the Commission on Peace Officer Standards and Training to present the law enforcement academy basic course or other commission-certified law enforcement training.

(14) The purchase of a firearm, other than a handgun, or a semiautomatic centerfire rifle by a person who possesses a valid, unexpired hunting license issued by the Department of Fish and Wildlife.

(15) The acquisition of a firearm, other than a handgun, or a semiautomatic centerfire rifle at an auction or similar event conducted by a nonprofit public benefit or mutual benefit corporation to fund the activities of that corporation or local chapters of that corporation.

(c) For the purposes of paragraphs (14) and (15) of subdivision (b), the frame or receiver of a firearm is a handgun unless the frame or receiver listed in the application

**Exhibit 6**
**0253**

**Provided by LRI History LLC**                     **SB 61 (2019)  Page 223 of 367**

to purchase and delivered to the recipient is equipped with, is attached to, or is concurrently accompanied by, a barrel of 16 inches or greater in length.

(d) This section shall become operative on July 1, 2021.

### Amendment 5
On page 5, in line 38, strike out "SEC. 3." and insert:

SEC. 6.

### Amendment 6
On page 6, in line 24, strike out "A firearm" and insert:

Until July 1, 2021, a handgun

### Amendment 7
On page 6, in line 27, strike out "firearm" and insert:

handgun

### Amendment 8
On page 6, between lines 29 and 30, insert:

(g) Commencing July 1, 2021, a firearm shall not be delivered whenever the dealer is notified by the Department of Justice that within the preceding 30-day period the purchaser has made another application to purchase a firearm and that the previous application to purchase did not involve any of the entities or circumstances specified in subdivision (b) of Section 27535.

### Amendment 9
On page 6, in line 30, strike out "SEC. 4." and insert:

SEC. 7.

### Amendment 10
On page 8, in line 13, strike out "For" and insert:

(A) Until July 1, 2021, for

**Exhibit 6**
0254

**Provided by LRI History LLC**

### Amendment 11
On page 8, in line 14, strike out "firearm" and insert:

handgun

### Amendment 12
On page 8, between lines 15 and 16, insert:

(B) Commencing July 1, 2021, for purposes of this subdivision, each application to purchase a firearm in violation of Section 27535 is a separate offense.

### Amendment 13
On page 8, in line 16, strike out "SEC. 5." and insert:

SEC. 8.

- 0 -

**Exhibit 6**
**0255**

**Provided by LRI History LLC**

**SB 61 (2019) Page 225 of 367**



# LRI History LLC

intent@lrihistory.com
www.lrihistory.com
(916) 442.7660

# Senate Fiscal Committee Materials

LRI History LLC hereby certifies that the accompanying record/s is/are true and correct copies of the original/s obtained from one or more official, public sources in California unless another source is indicated, with the following exceptions : In some cases, pages may have been reduced in size to fit an 8 ½" x 11" sized paper. Or, for readability purposes, pages may have been enlarged or cleansed of black marks or spots. Lastly, for ease of reference, paging and relevant identification have been inserted.

Exhibit 6
0256

Provided by LRI History LLC                                    SB 61 (2019)  Page 226 of 367

## SB 61 (Portantino) - Firearms:  transfers

**Version:** January 3, 2019          **Policy Vote:** PUB. S. 5 - 2
**Urgency:** No                        **Mandate:** Yes
**Hearing Date:** April 22, 2019       **Consultant:** Shaun Naidu

**Bill Summary:**  SB 61 would prohibit the purchase of more than one long gun in a 30-day period, except as specified.

**Fiscal Impact:**

- Fee revenue loss:  The Department of Justice estimates an overall annual revenue reduction of 10 percent in fee collection resulting from fewer firearm purchases, equating to an overall annual loss of $2.23 million.  See comment below.  (Various special funds)

- Tax revenue loss:  Unknown, likely-significant loss in sales tax revenue resulting from the limitation on the number of long guns a person may purchase.  (General Fund, local funds)

- System update:  The Department of Justice (DOJ) anticipates that need of 1.0 limited-term Information Technology Specialist I in FY 2020-21 at a cost of $281,000, inclusive of attendant equipment and operating expenses.  (Special fund*, General Fund)

\* Dealers Record of Sale Special Account (DROS)—structurally imbalanced

**Background:**  Existing law prohibits any person from making an application to purchase more than one handgun within any 30-day period.  The handgun purchase limitation, however, does not apply to the following:
- Any law enforcement agency;
- Any agency duly authorized to perform law enforcement duties;
- Any state or local correctional facility;
- Any private security company licensed to do business in California;
- Any person who is properly identified as a full-time paid peace officer, as defined, and who is authorized to, and does, carry a firearm during the course and scope of employment as a peace officer;
- Any motion picture, television, or video production company or entertainment or theatrical company whose production by its nature involves the use of a firearm;
- Any person who may claim an exemption from the waiting period set forth in Penal Code section 27540;
- Any private party transaction conducted through a licensed firearms dealer;
- Any person who is licensed as a collector and the regulations issued pursuant thereto and has a current certificate of eligibility issued by DOJ;
- The exchange of a handgun where the dealer purchased that firearm from the person seeking the exchange within the 30-day period immediately preceding the date of exchange or replacement;

**Exhibit 6**
**0257**

- The replacement of a handgun when the person's handgun was lost or stolen, and the person reported that firearm lost or stolen prior to the completion of the application to purchase the replacement handgun;
- The return of any handgun to its owner; or
- A community college that is certified by the Commission on Peace Officer Standards and Training to present the law enforcement academy basic course or other commission-certified law enforcement training.

The punishment for making an application to purchase more than one handgun within a 30-day period without an exception is as follows:
- A first violation is an infraction punishable by a base fine of $50.
- A second violation is an infraction punishable by a base fine of $100.
- A third or subsequent violation is a misdemeanor punishable by imprisonment in the county jail for up to six months, a base fine of up to $1,000, or both the imprisonment and fine.

Each application to purchase a handgun during the prohibited period is deemed a separate offense.

**Proposed Law:** This bill would extend the limitation of making an application to purchase more than one handgun in a 30-day period, along with the exceptions to the limitation, to all types of firearms. This bill would expand the exception to the limitation relative to long guns to a person who possesses a valid, unexpired hunting license issued by the Department of Fish and Wildlife and the acquisition of a long gun at an auction or similar event conducted by a nonprofit public benefit or mutual benefit corporation to fund the activities of the corporation or its local chapter. For the purpose of these two exceptions, the barrel must be at least 16 inches in length.

**Related Legislation:** SB 1177 (Portantino, 2018) and AB 1674 (Santiago, 2016) similarly attempted to extend the limitation of purchasing one handgun within a 30-day period to the purchase of all types of firearms. The Governor vetoed both measures. In his message on AB 1674, the Governor stated that he believed that the bill "would have the effect of burdening lawful citizens who wish to sell certain firearms they no longer need[ ]" and that this additional restriction is not needed given the state's stringent laws restricting gun ownership. With respect to SB 1177, the Governor stated that his "views have not changed" since vetoing AB 1674.

**Staff Comments:** The Department of Justice estimates annual reductions of the specified amounts of fee collection for the following special funds resulting from SB 61: a $1.7 million decrease to DROS, a $441,000 decrease to the Firearms Safety and Enforcement Special Fund, and an $88,000 to the Firearm Safety Account is predicted to decrease by $88,000. In addition to experiencing the largest impact with respect to fee revenue loss, DROS also would be used to fund the limited-term position the department anticipates requiring to implement SB 61. The Dealers Record of Sale Special Account has experienced significant revenue decreases in recent years to the extent that it is structurally imbalanced. From FY 2017-18 to FY 2018-19 DROS revenues dropped by 22 percent; proposed revenue for FY 2019-20 is projected to remain consistent with 2018-19, however. The FY 2019-20 proposed budget anticipates a beginning balance of $6.159 million, revenues of $21.471 million,

**Exhibit 6**
**0258**
Provided by LRI History LLC      SB 61 (2019) Page 228 of 367

expenditures of $24.88 million, and an ending reserve of $2.75 million.  Given the operational deficit of DROS, the revenue loss and added expense resulting from SB 61 would create cost pressure on the General Fund to backfill any shortage.

<div align="center">**-- END --**</div>

**Exhibit 6**
**0259**

**Provided by LRI History LLC**

**SB 61 (Portantino) - Firearms: transfers**

| | |
|---|---|
| **Version:** January 3, 2019 | **Policy Vote:** PUB. S. 5 - 2 |
| **Urgency:** No | **Mandate:** Yes |
| **Hearing Date:** May 16, 2019 | **Consultant:** Shaun Naidu |

## *********** ANALYSIS ADDENDUM – SUSPENSE FILE ***********
### The following information is revised to reflect amendments
### adopted by the committee on May 16, 2019

**Bill Summary:** SB 61 would prohibit the purchase of more than one long gun in a 30-day period, except as specified.

**Fiscal Impact:**

- Fee revenue loss: The Department of Justice estimates an overall annual revenue reduction of 10 percent in fee collection resulting from fewer firearm purchases, equating to an overall annual loss of $2.23 million. See comment below. (Various special funds)

- Tax revenue loss: Unknown, likely-significant loss in sales tax revenue resulting from the limitation on the number of long guns a person may purchase. (General Fund, local funds)

- System update: The Department of Justice (DOJ) anticipates that need of 1.0 limited-term Information Technology Specialist I in FY 2020-21 at a cost of $281,000, inclusive of attendant equipment and operating expenses. (Special fund*, General Fund)

* Dealers Record of Sale Special Account (DROS)—structurally imbalanced

**Author Amendments:** Prohibit the sale of a semiautomatic centerfire rifle to specified exempted persons under age 21 and delay the effective date of specified provisions.

-- END --

**Exhibit 6**
0260
**Provided by LRI History LLC**                              **SB 61 (2019) Page 230 of 367**

This page was left intentionally blank.

Exhibit 6
0261

Provided by LRI History LLC                                        SB 61 (2019)  Page 231 of 367

## SCHEDULE 10 AT 2019-20 GOVERNOR'S BUDGET
## SUMMARY OF FUND CONDITION STATEMENTS
### (Dollars in Thousands)

| Fund | Beginning Reserve 2017-18 | Revenues 2017-18 | Expenditures 2017-18 | Beginning Reserve 2018-19 | Revenues 2018-19 | Expenditures 2018-19 | Beginning Reserve 2019-20 | Revenues 2019-20 | Expenditures 2019-20 | Ending Reserve 2019-20 |
|---|---|---|---|---|---|---|---|---|---|---|
| 0449-Winter Recreation Fund | 510 | 275 | 423 | 362 | 250 | 381 | 231 | 250 | 366 | 115 |
| 0452-Elevator Safety Account | 28,219 | 19,931 | 24,075 | 24,075 | 22,066 | 29,773 | 16,368 | 25,066 | 28,821 | 12,613 |
| 0453-Pressure Vessel Account | 706 | 4,851 | 3,984 | 1,573 | 5,329 | 5,881 | 1,021 | 5,811 | 5,919 | 913 |
| 0456-Expedited Site Remediation Trust Fund | 1,617 | -1,291 | 320 | 6 | -- | -- | 6 | -- | -- | 6 |
| 0457-Tax Credit Allocation Fee Account | 36,344 | 6,524 | 2,660 | 40,208 | 6,540 | 3,511 | 43,237 | 41,554 | 4,037 | 80,754 |
| 0458-Site Operation and Maintenance Account, Hazardous Substances Account | 2 | 197 | 408 | -209 | 411 | 404 | -202 | 551 | 312 | 37 |
| 0459-Telephone Medical Advice Services Fund | 1,046 | -- | 10 | 1,036 | -- | -- | 1,036 | -- | -- | 1,036 |
| (shaded row — illegible) | | | | | | | | | | |
| 0461-Public Utilities Commission Transportation Reimbursement Account | 32,566 | 25,035 | 16,378 | 41,223 | 17,497 | 21,571 | 37,149 | 12,441 | 24,941 | 24,649 |
| 0462-Public Utilities Commission Utilities Reimbursement Account | 46,831 | 131,415 | 124,219 | 54,027 | 147,149 | 148,399 | 52,777 | 151,653 | 156,644 | 47,786 |
| 0464-California High-Cost Fund-A Administrative Committee Fund | 33,841 | 36,197 | 40,157 | 29,881 | 37,164 | 49,288 | 17,757 | 34,961 | 49,324 | 3,394 |
| 0465-Energy Resources Programs Account | 38,789 | 68,290 | 63,874 | 43,205 | 67,583 | 82,620 | 28,168 | 67,583 | 82,160 | 13,591 |
| 0467-State Notes Expense Account | 250 | -- | -- | 250 | -- | -- | 250 | -- | -- | 250 |
| 0470-California High-Cost Fund-B Administrative Committee Fund | 64,238 | -6,569 | 15,047 | 42,622 | 61,331 | 22,385 | 81,568 | 10,478 | 22,395 | 69,651 |
| 0471-Universal Lifeline Telephone Service Trust Administrative Committee Fund | 289,538 | 490,012 | 372,122 | 407,428 | 461,671 | 387,026 | 482,073 | 461,671 | 363,541 | 580,203 |
| 0475-Underground Storage Tank Fund | 106 | 1 | -- | 107 | -- | -- | 107 | -- | -- | 107 |
| 0478-Vectorborne Disease Account | 172 | 186 | 183 | 175 | 132 | 217 | 90 | 132 | 220 | 2 |
| 0479-Energy Technologies Research, Development and Demonstration Account | 2,916 | 24 | -- | 2,940 | 13 | -- | 2,953 | 13 | -- | 2,966 |
| 0481-Garment Manufacturers Special Account | -20 | 254 | -- | 234 | 380 | 500 | 114 | 386 | 500 | -- |
| 0483-Deaf and Disabled Telecommunications Program Administrative Committee Fund | 50,904 | 51,930 | 59,603 | 43,231 | 52,968 | 67,240 | 28,959 | 49,820 | 67,292 | 11,487 |
| 0485-Armory Discretionary Improvement Account | 651 | 22 | 20 | 653 | 40 | 158 | 535 | 40 | 160 | 415 |
| 0487-Financial Responsibility Penalty Account | 1,094 | 9 | -- | 1,103 | -- | -- | 1,103 | -- | -- | 1,103 |
| 0492-State Athletic Commission Neurological Examination Account | 579 | 17 | 55 | 541 | 22 | 56 | 507 | 22 | 59 | 470 |
| 0493-California Teleconnect Fund Administrative Committee Fund | 86,152 | 112,128 | 80,990 | 117,290 | 83,749 | 128,108 | 72,931 | 73,699 | 108,457 | 38,173 |



# LRI History LLC

intent@lrihistory.com
www.lrihistory.com
(916) 442.7660

# Office of
# Senate Floor
# Analyses
# Materials

LRI History LLC hereby certifies that the accompanying record/s is/are true and correct copies of
the original/s obtained from one or more official, public sources in California unless another source
is indicated, with the following exceptions :  In some cases,  pages may have been reduced in size to
fit an 8 ½"  x 11" sized  paper.  Or, for readability purposes, pages may have been enlarged
or cleansed of  black marks or spots. Lastly, for ease of reference, paging and relevant identification
have been inserted.

**Exhibit 6**
**0263**
**Provided by LRI History LLC**                                   **SB 61 (2019)  Page 233 of 367**

## UNFINISHED BUSINESS

Bill No:    SB 61
Author:     Portantino (D), et al.
Amended:    9/6/19
Vote:       21

**SENATE PUBLIC SAFETY COMMITTEE: 5-2, 4/2/19**
AYES: Skinner, Bradford, Jackson, Mitchell, Wiener
NOES: Moorlach, Morrell

**SENATE APPROPRIATIONS COMMITTEE: 4-2, 5/16/19**
AYES: Portantino, Bradford, Hill, Wieckowski
NOES: Bates, Jones

**SENATE FLOOR: 27-10, 5/22/19**
AYES: Allen, Archuleta, Atkins, Beall, Bradford, Caballero, Dodd, Durazo,
  Galgiani, Glazer, Hertzberg, Hill, Hueso, Hurtado, Jackson, Leyva, McGuire,
  Mitchell, Monning, Pan, Portantino, Rubio, Skinner, Stern, Umberg,
  Wieckowski, Wiener
NOES: Bates, Borgeas, Chang, Grove, Jones, Moorlach, Morrell, Nielsen, Stone,
  Wilk
NO VOTE RECORDED: Roth

**ASSEMBLY FLOOR: 46-17, 9/13/19**
**(ROLL CALL NOT AVAILABLE)**

**SUBJECT:** Firearms: transfers

**SOURCE:** Author

**DIGEST:** This bill prohibits the sale of a semiautomatic centerfire rifle to any
person under 21 years of age, and prohibits a person from making an application to
purchase more than one semiautomatic centerfire rifle in any 30-day period, except
as specified.

**Exhibit 6**
**0264**
**Provided by LRI History LLC**                        **SB 61 (2019)  Page 234 of 367**

*Assembly Amendments* (1) limit the purchase limitations to one gun a month for semiautomatic centerfire rifles, in addition to handguns which are limited under existing law; (2) remove the language defining frames or receivers as firearms under specified scenarios; and (3) add double-jointing language to prevent chaptering issues with SB 172 (Portantino) and AB 645 (Irwin).

## ANALYSIS:

Existing law:

1) Prohibits a person from making more than one application to purchase a handgun within any 30-day period. (Pen. Code § 27535.)

2) Prohibits a firearms dealer from delivering a handgun to a person whenever the dealer is notified by the Department of Justice that within the preceding 30-day period the purchaser has made another application to purchase a handgun that does not fall within an exception to the 30-day prohibition. A violation of that delivery prohibition by the dealer is a crime. (Pen. Code § 27540.)

3) Exempts the following from the one handgun a month prohibition: (Pen. Code, § 27535, subd. (b).)

   a) Any law enforcement agency.

   b) Any agency duly authorized to perform law enforcement duties.

   c) Any state or local correctional facility.

   d) Any private security company licensed to do business in California.

   e) Any person who is properly identified as a full-time paid peace officer and who is authorized to, and does carry a firearm during the course and scope of employment as a peace officer.

   f) Any motion picture, television, or video production company or entertainment or theatrical company whose production by its nature involves the use of a firearm.

   g) Any person who may make a valid claim an exemption from the waiting period set forth in Section 27540.

**Exhibit 6**
**0265**
**Provided by LRI History LLC**

h) Any transaction conducted through a licensed firearms dealer pursuant to Chapter 5 (commencing with Section 28050).

i) Any person who is licensed as a collector and has a current certificate of eligibility issued by the Department of Justice.

j) The exchange of a handgun where the dealer purchased that firearm from the person seeking the exchange within the 30-day period immediately preceding the date of exchange or replacement.

k) The replacement of a handgun when the person's handgun was lost or stolen, and the person reported that firearm lost or stolen prior to the completion of the application to purchase to any local law enforcement agency of the city, county, or city and county in which the person resides.

l) The return of any handgun to its owner.

m) A community college that is certified by the Commission on Peace Officer Standards and Training to present the law enforcement academy basic course or other commission-certified law enforcement training.

This bill:

1) Extends the prohibition on purchasing more than one handgun a month to also include semiautomatic centerfire rifles.

2) Exempts the following from the one gun a month prohibition: (Pen. Code, § 27535, subd. (b).)

a) Any law enforcement agency.

b) Any agency duly authorized to perform law enforcement duties.

c) Any state or local correctional facility.

d) Any private security company licensed to do business in California.

e) Any person who is properly identified as a full-time paid peace officer and who is authorized to, and does carry a firearm during the course and scope of employment as a peace officer.

f) Any motion picture, television, or video production company or entertainment or theatrical company whose production by its nature involves

**Exhibit 6**
**0266**

Provided by LRI History LLC
SB 61 (2019) Page 236 of 367

the use of a firearm.

g) Any person who may make a valid claim an exemption from the waiting period set forth in Section 27540.

h) Any transaction conducted through a licensed firearms dealer pursuant to Chapter 5 (commencing with Section 28050).

i) Any person who is licensed as a collector and has a current certificate of eligibility issued by the Department of Justice.

j) The exchange of a handgun or semiautomatic centerfire rifle where the dealer purchased that firearm from the person seeking the exchange within the 30-day period immediately preceding the date of exchange or replacement.

k) The replacement of a handgun or semiautomatic centerfire rifle when the person's handgun was lost or stolen, and the person reported that firearm lost or stolen prior to the completion of the application to purchase to any local law enforcement agency of the city, county, or city and county in which the person resides.

l) The return of any handgun or semiautomatic centerfire rifle to its owner.

m) A community college that is certified by the Commission on Peace Officer Standards and Training to present the law enforcement academy basic course or other commission-certified law enforcement training,

3) Specifies that specified licensees shall not sell, supply, deliver, or give possession or control of a semiautomatic centerfire rifle to any person who is under 21 years of age, with specified exemptions.

**Background**

*One Gun a Month.* According to the Senate Public Safety Committee analysis of AB 202 (Knox, 1999), which created the one-handgun-a-month law in California:

> The State of Virginia enacted a "one-handgun-a-month" law in 1993 (before the Federal Brady Bill, which required at least a five day waiting period plus a background check for states without such requirements). That state had weak restrictions on handgun sales and it has been stated that gun traffickers from New York City routinely

**Exhibit 6**
**0267**
Provided by LRI History LLC
SB 61 (2019) Page 237 of 367

traveled to Virginia to purchase quantities of weapons to take back for illegal sale in other states. Purchases of more than one handgun per 30-day period in Virginia is allowed upon completion of an "enhanced" background check when the purchase is for lawful business or personal use, for purposes of collectors, bulk sales and purchases from estates, to replace a lost or stolen weapon, and similar situations.

Supporters of limits on purchases of handguns assume that the Virginia limits and the limits in this bill would only affect a very small proportion of legitimate handgun purchasers. A family of two adults could still purchase 24 handguns a year under the provisions of both this bill and the Virginia law.

Virginia repealed this law in 2012. But, according to the Law Center to Prevent Gun Violence:

Virginia's one-gun-a-month law – which was in effect from 1993 to 2012 and prohibited the purchase of more than one handgun per person in any 30-day period – significantly reduced the number of crime guns traced to Virginia dealers. Virginia initially adopted its law after the state became recognized as a primary source of crime guns recovered in states in the northeastern U.S. After the law's adoption, the odds of tracing a gun originally acquired in the Southeast to a Virginia gun dealer (as opposed to a dealer in a different southeastern state) dropped by:

- 71% for guns recovered in New York;
- 72% for guns recovered in Massachusetts; and
- 66% for guns recovered in New Jersey, New York, Connecticut, Rhode Island and Massachusetts combined.

(http://smartgunlaws.org/multiple-purchases-sales-of-firearms-policy-summary/ [footnotes omitted].)

Other states that have limits on the number of firearms that can be sold in one month include:

- California: California law prohibits any person from purchasing more than one handgun within any 30-day period. In addition, a licensed firearms dealer may

**Exhibit 6**
**0268**
**Provided by LRI History LLC**     **SB 61 (2019) Page 238 of 367**

not deliver a handgun to any person following notification from the California Department of Justice that the purchaser has applied to acquire a handgun within the preceding 30-day period. Finally, firearms dealers must conspicuously post in their licensed premises a warning, in block letters at least one inch in height, notifying purchasers of these restrictions.

- District of Columbia: A person may not register more than one handgun in the District during any 30-day period. Since every handgun must be registered, this amounts to a purchase and sale limitation of one handgun per 30-day period.

- Maryland: Maryland prohibits any person from purchasing more than one handgun or assault weapon within a 30-day period. Under limited circumstances, a person may be approved by the Secretary of the Maryland State Police to purchase multiple handguns or assault weapons in a 30-day period. Maryland also penalizes any dealer or other seller who knowingly participates in an illegal purchase of a handgun or assault weapon.

- New Jersey: New Jersey prohibits licensed firearms dealers from knowingly delivering more than one handgun to any person within any 30-day period. With limited exceptions, no person may purchase more than one handgun within any 30-day period. New Jersey requires a handgun purchaser to obtain a separate permit for each handgun purchased, and present the permit to the seller. The seller must keep a copy of each permit presented.

(http://smartgunlaws.org/multiple-purchases-sales-of-firearms-policy-summary/[footnotes omitted].)

*AB 1674 (Santiago, 2015): Veto Message.* The Governor stated in his veto message of Senate Bill 1674, which would have prohibited any person from making an application to purchase more than one firearm within any 30-day period:

> This bill generally prohibits the purchase of more than one firearm within any 30-day period. It should be noted that California already bans the purchase of more than one handgun per month.

> While well-intentioned, I believe this bill would have the effect of burdening lawful citizens who wish to sell certain firearms that they no longer need.

**Exhibit 6**
**0269**
**Provided by LRI History LLC**                    **SB 61 (2019) Page 239 of 367**

Given California's stringent laws restricting gun ownership, I do not believe this additional restriction is needed.

*SB 1177 (Portantino, 2018): Veto Message.* The Governor stated in his veto message of Senate Bill 1177, which would have prohibited any person from making an application to purchase more than one firearm within any 30-day period, with the same exemptions included in this bill:

This bill prohibits any person from purchasing more than one long-gun per month.

I vetoed a substantially similar bill in 2016, and my views have not changed.

**FISCAL EFFECT:** Appropriation: No   Fiscal Com.:  Yes   Local: Yes

According to the Assembly Appropriations Committee:

- DOJ estimates an overall annual revenue reduction of 10% in fee collection (Firearms Safety and Enforcement Fund/Dealer Record of Sale Special Account) resulting from fewer firearm purchases, equating to an overall loss of $2.23 million dollars annually.

- Sales tax revenue loss (GF) likely in the hundreds of thousands of dollars to low millions of dollars annually due to the limitation on the number of firearms that may be purchased in a 30-day period.

- One-time costs (GF/Dealer Record of Sale Account) of $281,000 to the DOJ for limited term information technology staff and equipment to update systems to track both handguns and long guns to ensure only one purchase within a 30-day period.

**SUPPORT:** (Verified 9/12/19)

Bay Area Student Activists
Brady California United Against Gun Violence
Coalition Against Gun Violence
Giffords Law Center to Prevent Gun Violence
Los Angeles City Attorney
Los Angeles County Board of Supervisors

**Exhibit 6**
**0270**
**Provided by LRI History LLC**                    **SB 61 (2019) Page 240 of 367**

**OPPOSITION:** (Verified 9/12/19)

California Rifle and Pistol Association
California Sportsman's Lobby
Gun Owners of California
National Shooting Sports Foundation
Outdoor Sportsmen's Coalition of California
Safari Club International
Safari Club International Foundation

**ARGUMENTS IN SUPPORT:** According to Brady California United Against Gun Violence:

> In 1999, legislation (AB 202) was enacted that limits purchases of handguns from licensed firearms dealers in California to no more than one per person per 30-day period. The purpose of the bill was to curb the illegal flow of handguns by taking the profit out of selling guns from bulk purchases on the black market. SB 61 applies existing law under AB 202 to long guns, including rifles, shotguns, and lower receivers.

> Under SB 61, firearms (handguns *and* long guns) will not be delivered whenever the dealer is notified by the Department of Justice that within the preceding 30-day period, the purchaser had made another application to purchase a firearm. Private party transactions will continue to be exempt. Additionally, rifle and shotgun (but not lower receiver) purchasers with a valid hunting license issued by the Department of Fish and Wildlife and the acquisition of a rifle or shotgun at an auction or similar event conducted by a nonprofit will be exempt.

> It stands to reason that a person buying large quantities of guns at one time may be acting as a straw purchaser or gun trafficker. Moreover, firearms acquired this way are frequently used in crime. In fact, an ATF study of tracing data demonstrated that 22% of all handguns recovered in crime in 1999 were originally purchased as part of a multiple sale. A similar study found that 20% of all handguns recovered in crime in 2000 were originally purchased as part of a multiple sale. Additionally, a University of Pennsylvania report found that a quarter of all guns used in crime were purchased as part of a multiple-gun sale and that guns purchased in bulk were up to 64%

**Exhibit 6**
**0271**
Provided by LRI History LLC          **SB 61 (2019) Page 241 of 367**

more likely to be used for illegal purposes than guns purchased individually.

Since 1999, Californians have typically purchased more long guns than handguns every year. Currently, these long guns include high powered featureless weapons with exchangeable magazines that enable rapid reload and lower receivers, which can be assembled into illegal military-style weapons. Limiting multiple-gun sales within a short period of time for such weapons, which are more lethal than handguns, is clearly in the interest of public safety.

The Department of Justice began to retain records of long gun purchases on January 1, 2014. An analysis of the transaction data from the period January 2014 through June 2015 shows that 81.9% of long guns were sold as a single long gun purchase within a 30-day period. *Clearly, the vast majority of long gun purchasers will not be impacted by SB 61.* However, at the opposite end of the spectrum, an individual purchased 177 long guns in two transactions within a one month period (April 2014). Furthermore, sales to single individuals ranging from 5 to 54 long guns per month occurred on 1,787 occasions, totaling 12,090 guns. Department data also shows that when multiple long guns are transferred in a sale, it is more than twice as likely that lower receivers are included. The largest bulk sale of long guns in one month to an individual (177 long guns) was composed *entirely* of lower receivers, which can be built into illegal assault weapons and sold on the black market.

Brady California believes that handguns and long guns should generally be subject to the same laws. Preventing the flow of illegal guns is important to public safety regardless of whether the firearm is a handgun or a long gun. Limiting firearms sales to one gun per 30-day period is a recognized strategy to reduce gun trafficking and keep firearms out of dangerous hands. Brady California thanks you for introducing SB 61.

**ARGUMENTS IN OPPOSITION:** According to California Rifle and Pistol Association:

SB 61 would significantly reduce long gun sales in California. This translates into a loss of manufacturing jobs at both the state and national levels, and a significant loss of revenue for California

**Exhibit 6**
**0272**

**Provided by LRI History LLC**

businesses. Additionally, this bill will significantly impact the millions of dollars of Federal Pitman Roberson tax money that would be earmarked to develop and enhance habitat critical for California's wildlife. The Department of Justice (DOJ), has estimated previous versions of this same bill's implementation alone will cost hundreds of thousands of dollars, and result in significant overtime hours for Department personal to perform the necessary analysis, development, testing, and implementation to various Department databases.

SB 61 will also effectively prohibit the creation of new businesses in California involving hands on instruction in the safe handling of firearms. Should this bill become law, certified firearm instructors would no longer be able acquire the necessary firearms without having to wait months, if not years, to conduct classes for groups such as the Boy Scouts of America, Hunter Education, Youth shooting sports, and other clubs or organizations that wish to participate in firearm safety classes.

The author and proponents have argued in testimony there is no legitimate reason for anyone to need to purchase more than one firearm a month. There are, in fact, numerous legitimate recreational and Second Amendment protected reasons why an individual might want, and need, to transfer more than one firearm a month. For example, someone new to the sport of recreational competitive shooting, 'Three Gun' competitions, may very well need to purchase a pistol, shotgun, and rifle without having to wait 30 days between each purchase. This bill would require someone wanting to acquire all three types of firearms to undergo a process that would take at least 70 days assuming everything goes smoothly. The procedure for purchasing these firearms is already very time and travel intensive. Each transaction requiring a trip to the licensed dealer.

Currently individuals in California must go through the following steps to purchase a firearm; Obtain a firearm safety certificate; Go to a California licensed firearms dealer; Complete 4473 and (Dealer Record of Sales) DROS applications; Pass the required background check; Wait the required 10 days; Go back to dealer; Perform a safe handling demonstration; Pick up first firearm. Under SB 61 the individual would have to wait the required 30 days, then go back to dealer again; and repeat the process for each subsequent purchase.

**Exhibit 6**
**0273**
**Provided by LRI History LLC**　　　　　　　　　　**SB 61 (2019) Page 243 of 367**

Both California and Federal law already address the author's concerns regarding the trafficking of firearms by narrowly limiting the number of firearms an individual can sell. Rather than having the desired effect of targeting criminals, this bill will impact only the law abiding, thereby further limiting available funding to DOJ.

SB 61, does allow for numerous exemptions to the restriction which do not apply to the general public, though well intended by the author will create a nightmare DOJ and law enforcement to implement and enforce. Additionally, the author has argued this bill is necessary because the vast majority of firearms recovered from APPS seizures are long guns. However, data from the Bureau of Alcohol, Tobacco, Firearms and Explosives, ATF, clearly shows the vast majority of firearms recovered by law enforcement are handguns, which are already subject to the 30-day restriction, illustrating the restrictions ineffectiveness at reducing crime.

The author and proponents have tried three previous versions of this bill in the last three years. All vetoed by Governor Brown; 2016: AB 1674, 2017: SB 497 and in 2018: SB 1177. In his 2018 veto statement the Governor stated: "I am returning SB 1177 without my signature. This bill prohibits any person from purchasing more than one long-gun per month. I vetoed a substantially similar bill in 2016, and my views have not changed", in his 2016 veto statement Governor Brown said in part; " while well-intended, I believe this bill would have the effect of burdening lawful citizens who wish to sell certain firearms that they no longer need. Given California's stringent laws restricting gun ownership, I do not believe this additional restriction is needed".

Prepared by:  Gabe Caswell / PUB. S. /
9/13/19 15:51:52

**** **END** ****

Exhibit 6
0274
Provided by LRI History LLC

This page was left intentionally blank.

Exhibit 6
0275
Provided by LRI History LLC



# NATIONAL SHOOTING SPORTS FOUNDATION, INC.

Headquarters: 11 Mile Hill Road, Newtown, CT 06470-2359

400 N. Capitol Street NW, Suite 475, Washington, D.C. 20001

203-426-1320 ext. 264    Cell 503-729-6325    mfindlay@nssf.org

**Michael Findlay**
Director,
Government Relations - State Affairs

September 11, 2019

The Honorable Anthony Portantino
California State Senate                    Position: Oppose
State Capitol Building
Sacramento, CA 95829                    Location: Senate Floor (Concurrence)

**Re: SB 61 (Portantino) Firearms: transfers (As Amended September 6, 2019)**

Dear Senator Portantino:

As the trade association for America's firearms, ammunition, hunting, and recreational shooting sports industry, the National Shooting Sports Foundation ("NSSF") seeks to promote, protect, and preserve hunting and the shooting sports. NSSF has a membership of more than 12,000 manufacturers, distributors, firearms retailers, shooting ranges, and sportsmen's organizations, including more than 1,300 in California alone. Our manufacturer members make the firearms used by law-abiding California sportsmen, the U.S. military and law enforcement agencies throughout the state.

This is to notify you of the opposition of the National Shooting Sports Foundation (NSSF) to SB 61, as amended, that would limit the purchase of a semiautomatic centerfire rifle by anyone to one per month.

Rather than limit purchases for all individuals to one such firearm per month, experience with mass homicides and other crimes involving firearms has clearly shown that the focus should instead be on preventing criminals and individuals suffering from mental illness from acquiring firearms, not on those who are not a part of the problem.

Persons who have an intent to commit such crimes, or other illegal acts involving the use of a firearm will always be able to obtain firearms through unlawful sources without going through a licensed firearms dealer.

The restrictions proposed in SB 61 will not prevent it.

With respect to mental health practitioners and others in positions of authority who should do so, it appears there are many who do not notify the Department of Justice (DOJ) or other appropriate agencies of individuals whom they have determined are likely to be a danger to themselves or others.

Provided by LRI History LLC

Sometimes, agencies and authorities who have been notified of such persons fail to act.

This is another area that needs more focus, instead of setting arbitrary, ineffective purchase limits for the acquisition of a semiautomatic centerfire rifle. There is no evidence that such a purchase limit would have an impact on the criminal misuse of firearms.

Limiting the purchases of semiautomatic centerfire rifles for an entire class of citizens as proposed in SB 61 would not solve crime problems and tragedies.

Firearms ownership by individuals is a constitutionally protected right.

NSSF supports practical solutions that will ensure that unauthorized individuals do not have access to any firearm of any kind at any time.

It has sponsored the FixNics® campaign to encourage states to submit all disqualifying criminal and mental health records to the FBI's National Criminal Instant Background Check System (NICS). Since its inception, the number of disqualifying records sent by states to the FBI has increased by 200 percent and is continuing to grow, making the federal NICS background check system increasingly more effective. This is where the emphasis should be.

Limiting all adults to a maximum of one semiautomatic centerfire rifle purchase per month will not solve crime and mental health problems.

For the above reasons, the National Shooting Sports Foundation opposes the enactment of SB 61.

Should you have any questions, please contact our legislative advocate, Kathryn Lynch, at (916) 443-0202 or lynch@lynchlobby.com.

Sincerely,

Michael Findlay
Director of Government Relations – State Affairs

cc: Office of Legislative Affairs, Governor's Office
    Mr. Gabe Caswell, Consultant, Senate Public Safety Committee
    Mr. Eric Csizmar, Consultant, Senate Republican Caucus
    Senator Steven Glazer, Co-Author
    Senator Scott Wiener, Co-Author
    Office of Senate Floor Analysis
    Ms. Kathryn Lynch, Legislative Advocate
    National Shooting Sports Foundation

**Exhibit 6**
**0277**
**Provided by LRI History LLC**     **SB 61 (2019) Page 247 of 367**

## UNFINISHED BUSINESS

Bill No:   SB 61
Author:    Portantino (D), et al.
Amended:   9/6/19
Vote:      21

**SENATE PUBLIC SAFETY COMMITTEE:**  5-2, 4/2/19
AYES:  Skinner, Bradford, Jackson, Mitchell, Wiener
NOES:  Moorlach, Morrell

**SENATE APPROPRIATIONS COMMITTEE:**  4-2, 5/16/19
AYES:  Portantino, Bradford, Hill, Wieckowski
NOES:  Bates, Jones

**SENATE FLOOR:**  27-10, 5/22/19
AYES:  Allen, Archuleta, Atkins, Beall, Bradford, Caballero, Dodd, Durazo,
Galgiani, Glazer, Hertzberg, Hill, Hueso, Hurtado, Jackson, Leyva, McGuire,
Mitchell, Monning, Pan, Portantino, Rubio, Skinner, Stern, Umberg,
Wieckowski, Wiener
NOES:  Bates, Borgeas, Chang, Grove, Jones, Moorlach, Morrell, Nielsen, Stone,
Wilk
NO VOTE RECORDED:  Roth

**SUBJECT:**  Firearms: transfers

**SOURCE:**  Author

**DIGEST:**  Prohibits the sale of a semiautomatic centerfire rifle to any person
under 21 years of age, and prohibits a person from making an application to
purchase more than one semiautomatic centerfire rifle in any 30-day period, except
as specified.

*Assembly Amendments* do the following:

1) Limit the purchase limitations to one gun a month for semiautomatic centerfire
rifles, in addition to handguns which are limited under existing law.

**Exhibit 6**
**0278**

SB 61 (2019) Page 248 of 367

Provided by LRI History LLC

2) Removes the language defining frames or receivers as firearms under specified scenarios; and

3) Add double joining language to prevent chaptering issues with SB 172 (Portantino) and AB 645 (Irwin).

**ANALYSIS:**

Existing law:

1) Prohibits a person from making more than one application to purchase a handgun within any 30-day period. (Pen. Code § 27535.)

2) Prohibits a firearms dealer from delivering a handgun to a person whenever the dealer is notified by the Department of Justice that within the preceding 30-day period the purchaser has made another application to purchase a handgun that does not fall within an exception to the 30-day prohibition. A violation of that delivery prohibition by the dealer is a crime. (Pen. Code § 27540.)

3) Exempts the following from the one handgun a month prohibition: (Pen. Code, § 27535, subd. (b).)

   a) Any law enforcement agency.

   b) Any agency duly authorized to perform law enforcement duties.

   c) Any state or local correctional facility.

   d) Any private security company licensed to do business in California.

   e) Any person who is properly identified as a full-time paid peace officer and who is authorized to, and does carry a firearm during the course and scope of employment as a peace officer.

   f) Any motion picture, television, or video production company or entertainment or theatrical company whose production by its nature involves the use of a firearm.

   g) Any person who may make a valid claim an exemption from the waiting period set forth in Section 27540.

**Exhibit 6**
**0279**
**Provided by LRI History LLC**

h) Any transaction conducted through a licensed firearms dealer pursuant to Chapter 5 (commencing with Section 28050).

i) Any person who is licensed as a collector and has a current certificate of eligibility issued by the Department of Justice.

j) The exchange of a handgun where the dealer purchased that firearm from the person seeking the exchange within the 30-day period immediately preceding the date of exchange or replacement.

k) The replacement of a handgun when the person's handgun was lost or stolen, and the person reported that firearm lost or stolen prior to the completion of the application to purchase to any local law enforcement agency of the city, county, or city and county in which the person resides.

l) The return of any handgun to its owner.

m) A community college that is certified by the Commission on Peace Officer Standards and Training to present the law enforcement academy basic course or other commission-certified law enforcement training.

This bill:

1) Extends the prohibition on purchasing more than one handgun a month to also include semiautomatic centerfire rifles.

2) Exempts the following from the one gun a month prohibition: (Pen. Code, § 27535, subd. (b).)

a) Any law enforcement agency.

b) Any agency duly authorized to perform law enforcement duties.

c) Any state or local correctional facility.

d) Any private security company licensed to do business in California.

e) Any person who is properly identified as a full-time paid peace officer and who is authorized to, and does carry a firearm during the course and scope of employment as a peace officer.

f) Any motion picture, television, or video production company or entertainment or theatrical company whose production by its nature involves

**Exhibit 6**
**0280**
**Provided by LRI History LLC**

the use of a firearm.

g) Any person who may make a valid claim an exemption from the waiting period set forth in Section 27540.

h) Any transaction conducted through a licensed firearms dealer pursuant to Chapter 5 (commencing with Section 28050).

i) Any person who is licensed as a collector and has a current certificate of eligibility issued by the Department of Justice.

j) The exchange of a handgun or semiautomatic centerfire rifle where the dealer purchased that firearm from the person seeking the exchange within the 30-day period immediately preceding the date of exchange or replacement.

k) The replacement of a handgun or semiautomatic centerfire rifle when the person's handgun was lost or stolen, and the person reported that firearm lost or stolen prior to the completion of the application to purchase to any local law enforcement agency of the city, county, or city and county in which the person resides.

l) The return of any handgun or semiautomatic centerfire rifle to its owner.

m) A community college that is certified by the Commission on Peace Officer Standards and Training to present the law enforcement academy basic course or other commission-certified law enforcement training,

3) Specifies that specified licensees shall not sell, supply, deliver, or give possession or control of a semiautomatic centerfire rifle to any person who is under 21 years of age, with specified exemptions.

**Background**

*One Gun a Month.* According to the Senate Public Safety Analysis of ~~Assembly Bill~~ AB 202 (Knox, 1999), which created the one-handgun-a-month law in California:

> The State of Virginia enacted a "one-handgun-a-month" law in 1993 (before the Federal Brady Bill, which required at least a five day waiting period plus a background check for states without such requirements). That state had weak restrictions on handgun sales and

**Exhibit 6**
**0281**
Provided by LRI History LLC          SB 61 (2019) Page 251 of 367

it has been stated that gun traffickers from New York City routinely traveled to Virginia to purchase quantities of weapons to take back for illegal sale in other states. Purchases of more than one handgun per 30-day period in Virginia is allowed upon completion of an "enhanced" background check when the purchase is for lawful business or personal use, for purposes of collectors, bulk sales and purchases from estates, to replace a lost or stolen weapon, and similar situations.

Supporters of limits on purchases of handguns assume that the Virginia limits and the limits in this bill would only affect a very small proportion of legitimate handgun purchasers. A family of two adults could still purchase 24 handguns a year under the provisions of both this bill and the Virginia law.

Virginia repealed this law in 2012. But, according to the Law Center to Prevent Gun Violence:

Virginia's one-gun-a-month law – which was in effect from 1993 to 2012 and prohibited the purchase of more than one handgun per person in any 30-day period – significantly reduced the number of crime guns traced to Virginia dealers. Virginia initially adopted its law after the state became recognized as a primary source of crime guns recovered in states in the northeastern U.S. After the law's adoption, the odds of tracing a gun originally acquired in the Southeast to a Virginia gun dealer (as opposed to a dealer in a different southeastern state) dropped by:

- 71% for guns recovered in New York;
- 72% for guns recovered in Massachusetts; and
- 66% for guns recovered in New Jersey, New York, Connecticut, Rhode Island and Massachusetts combined.

(http://smartgunlaws.org/multiple-purchases-sales-of-firearms-policy-summary/ [footnotes omitted].)

Other states that have limits on the number of firearms that can be sold in one month include:

Exhibit 6
0282
Provided by LRI History LLC

- California: California law prohibits any person from purchasing more than one handgun within any 30-day period. In addition, a licensed firearms dealer may not deliver a handgun to any person following notification from the California Department of Justice that the purchaser has applied to acquire a handgun within the preceding 30-day period. Finally, firearms dealers must conspicuously post in their licensed premises a warning, in block letters at least one inch in height, notifying purchasers of these restrictions.

- District of Columbia: A person may not register more than one handgun in the District during any 30-day period. Since every handgun must be registered, this amounts to a purchase and sale limitation of one handgun per 30-day period.

- Maryland: Maryland prohibits any person from purchasing more than one handgun or assault weapon within a 30-day period. Under limited circumstances, a person may be approved by the Secretary of the Maryland State Police to purchase multiple handguns or assault weapons in a 30-day period. Maryland also penalizes any dealer or other seller who knowingly participates in an illegal purchase of a handgun or assault weapon.

- New Jersey: New Jersey prohibits licensed firearms dealers from knowingly delivering more than one handgun to any person within any 30-day period. With limited exceptions, no person may purchase more than one handgun within any 30-day period. New Jersey requires a handgun purchaser to obtain a separate permit for each handgun purchased, and present the permit to the seller. The seller must keep a copy of each permit presented.

(http://smartgunlaws.org/multiple-purchases-sales-of-firearms-policy-summary/[footnotes omitted].)

~~Assembly Bill~~ *AB* 1674 (Santiago, ~~of~~ *2015*): Veto Message. The Governor stated in his veto message of Senate Bill 1674, which would have prohibited any person from making an application to purchase more than one firearm within any 30-day period:

> This bill generally prohibits the purchase of more than one firearm within any 30-day period. It should be noted that California already bans the purchase of more than one handgun per month.

> While well-intentioned, I believe this bill would have the effect of burdening lawful citizens who wish to sell certain firearms that they no longer need.

Exhibit 6
0283
Provided by LRI History LLC

Given California's stringent laws restricting gun ownership, I do not believe this additional restriction is needed.

*Senate Bill 1177 (Portantino, 2018): Veto Message.* The Governor stated in his veto message of Senate Bill 1177, which would have prohibited any person from making an application to purchase more than one firearm within any 30-day period, with the same exemptions included in this bill:

This bill prohibits any person from purchasing more than one long-gun per month.

I vetoed a substantially similar bill in 2016, and my views have not changed.

**FISCAL EFFECT:**   Appropriation:   No   Fiscal Com.:   Yes   Local: Yes

According to the Assembly Appropriations Committee:

- DOJ estimates an overall annual revenue reduction of 10% in fee collection (Firearms Safety and Enforcement Fund/Dealer Record of Sale Special Account) resulting from fewer firearm purchases, equating to an overall loss of $2.23 million dollars annually.

- Sales tax revenue loss (GF) likely in the hundreds of thousands of dollars to low millions of dollars annually due to the limitation on the number of firearms that may be purchased in a 30-day period.

- One-time costs (GF/Dealer Record of Sale Account) of $281,000 to the DOJ for limited term information technology staff and equipment to update systems to track both handguns and long guns to ensure only one purchase within a 30-day period.

**SUPPORT:**   (Verified 9/12/19)

Bay Area Student Activists
Brady California United Against Gun Violence
Coalition Against Gun Violence
Giffords Law Center to Prevent Gun Violence
Los Angeles County Board of Supervisors
Los Angeles City Attorney

**Exhibit 6**
0284

Provided by LRI History LLC                                      SB 61 (2019) Page 254 of 367

**OPPOSITION:** (Verified 9/12/19)

California Rifle and Pistol Association
California Sportsman's Lobby
Gun Owners of California
National Shooting Sports Foundation
Outdoor Sportsmen's Coalition of California
Safari Club International
Safari Club International Foundation

**ARGUMENTS IN SUPPORT:** According to Brady California United Against Gun Violence:

> In 1999, legislation (AB 202) was enacted that limits purchases of handguns from licensed firearms dealers in California to no more than one per person per 30-day period. The purpose of the bill was to curb the illegal flow of handguns by taking the profit out of selling guns from bulk purchases on the black market. SB 61 applies existing law under AB 202 to long guns, including rifles, shotguns, and lower receivers.

> Under SB 61, firearms (handguns *and* long guns) will not be delivered whenever the dealer is notified by the Department of Justice that within the preceding 30-day period, the purchaser had made another application to purchase a firearm. Private party transactions will continue to be exempt. Additionally, rifle and shotgun (but not lower receiver) purchasers with a valid hunting license issued by the Department of Fish and Wildlife and the acquisition of a rifle or shotgun at an auction or similar event conducted by a nonprofit will be exempt.

> It stands to reason that a person buying large quantities of guns at one time may be acting as a straw purchaser or gun trafficker. Moreover, firearms acquired this way are frequently used in crime. In fact, an ATF study of tracing data demonstrated that 22% of all handguns recovered in crime in 1999 were originally purchased as part of a multiple sale. A similar study found that 20% of all handguns recovered in crime in 2000 were originally purchased as part of a multiple sale. Additionally, a University of Pennsylvania report found that a quarter of all guns used in crime were purchased as part of a multiple-gun sale and that guns purchased in bulk were up to 64%

**Exhibit 6**
**0285**

**Provided by LRI History LLC**

more likely to be used for illegal purposes than guns purchased individually.

Since 1999, Californians have typically purchased more long guns than handguns every year. Currently, these long guns include high powered featureless weapons with exchangeable magazines that enable rapid reload and lower receivers, which can be assembled into illegal military-style weapons. Limiting multiple-gun sales within a short period of time for such weapons, which are more lethal than handguns, is clearly in the interest of public safety.

The Department of Justice began to retain records of long gun purchases on January 1, 2014. An analysis of the transaction data from the period January 2014 through June 2015 shows that 81.9% of long guns were sold as a single long gun purchase within a 30-day period. *Clearly, the vast majority of long gun purchasers will not be impacted by SB 61.* However, at the opposite end of the spectrum, an individual purchased 177 long guns in two transactions within a one month period (April 2014). Furthermore, sales to single individuals ranging from 5 to 54 long guns per month occurred on 1,787 occasions, totaling 12,090 guns. Department data also shows that when multiple long guns are transferred in a sale, it is more than twice as likely that lower receivers are included. The largest bulk sale of long guns in one month to an individual (177 long guns) was composed *entirely* of lower receivers, which can be built into illegal assault weapons and sold on the black market.

Brady California believes that handguns and long guns should generally be subject to the same laws. Preventing the flow of illegal guns is important to public safety regardless of whether the firearm is a handgun or a long gun. Limiting firearms sales to one gun per 30-day period is a recognized strategy to reduce gun trafficking and keep firearms out of dangerous hands. Brady California thanks you for introducing SB 61.

**ARGUMENTS IN OPPOSITION:** According to California Rifle and Pistol Association:

SB 61 would significantly reduce long gun sales in California. This translates into a loss of manufacturing jobs at both the state and national levels, and a significant loss of revenue for California

**Exhibit 6**
**0286**

**Provided by LRI History LLC**

businesses. Additionally, this bill will significantly impact the millions of dollars of Federal Pitman Roberson tax money that would be earmarked to develop and enhance habitat critical for California's wildlife. The Department of Justice (DOJ), has estimated previous versions of this same bill's implementation alone will cost hundreds of thousands of dollars, and result in significant overtime hours for Department personal to perform the necessary analysis, development, testing, and implementation to various Department databases.

SB 61 will also effectively prohibit the creation of new businesses in California involving hands on instruction in the safe handling of firearms. Should this bill become law, certified firearm instructors would no longer be able acquire the necessary firearms without having to wait months, if not years, to conduct classes for groups such as the Boy Scouts of America, Hunter Education, Youth shooting sports, and other clubs or organizations that wish to participate in firearm safety classes.

The author and proponents have argued in testimony there is no legitimate reason for anyone to need to purchase more than one firearm a month. There are, in fact, numerous legitimate recreational and Second Amendment protected reasons why an individual might want, and need, to transfer more than one firearm a month. For example, someone new to the sport of recreational competitive shooting, 'Three Gun' competitions, may very well need to purchase a pistol, shotgun, and rifle without having to wait 30 days between each purchase. This bill would require someone wanting to acquire all three types of firearms to undergo a process that would take at least 70 days assuming everything goes smoothly. The procedure for purchasing these firearms is already very time and travel intensive. Each transaction requiring a trip to the licensed dealer.

Currently individuals in California must go through the following steps to purchase a firearm; Obtain a firearm safety certificate; Go to a California licensed firearms dealer; Complete 4473 and (Dealer Record of Sales) DROS applications; Pass the required background check; Wait the required 10 days; Go back to dealer; Perform a safe handling demonstration; Pick up first firearm. Under SB 61 the individual would have to wait the required 30 days, then go back to dealer again; and repeat the process for each subsequent purchase.

**Exhibit 6**
**0287**

**Provided by LRI History LLC**

Both California and Federal law already address the author's concerns regarding the trafficking of firearms by narrowly limiting the number of firearms an individual can sell. Rather than having the desired effect of targeting criminals, this bill will impact only the law abiding, thereby further limiting available funding to DOJ.

SB 61, does allow for numerous exemptions to the restriction which do not apply to the general public, though well intended by the author will create a nightmare DOJ and law enforcement to implement and enforce. Additionally, the author has argued this bill is necessary because the vast majority of firearms recovered from APPS seizures are long guns. However, data from the Bureau of Alcohol, Tobacco, Firearms and Explosives, ATF, clearly shows the vast majority of firearms recovered by law enforcement are handguns, which are already subject to the 30-day restriction, illustrating the restrictions ineffectiveness at reducing crime.

The author and proponents have tried three previous versions of this bill in the last three years. All vetoed by Governor Brown; 2016: AB 1674, 2017: SB 497 and in 2018: SB 1177. In his 2018 veto statement the Governor stated: "I am returning SB 1177 without my signature. This bill prohibits any person from purchasing more than one long-gun per month. I vetoed a substantially similar bill in 2016, and my views have not changed", in his 2016 veto statement Governor Brown said in part; " while well-intended, I believe this bill would have the effect of burdening lawful citizens who wish to sell certain firearms that they no longer need. Given California's stringent laws restricting gun ownership, I do not believe this additional restriction is needed".

Prepared by:  Gabe Caswell / PUB. S. /
9/12/2019 5:20:29

**** **END** ****

Exhibit 6
0288
**Provided by LRI History LLC**          SB 61 (2019) Page 258 of 367



The California
Sportsman's Lobby, Inc.

May 21, 2019

The Honorable Anthony Portantino
California State Senate                          Position: Oppose
State Capitol Building
Sacramento, CA 95829                         Location: Senate Floor

**Re: SB 61 (Portantino) Firearms: transfers (As Amended May 17, 2019)**

Dear Senator Portantino:

The California Sportsman's Lobby is a nonprofit organization of sportsman's clubs and individuals dedicated to preserving outdoor recreation in California. Our principal activities are to monitor legislation that might negatively impact hunting, fishing and other recreation, and to oppose unwise changes in the laws relating to these activities.

The California Sportsman's Lobby (CSL) promotes the conservation, enhancement, scientific management, and wise use of all our natural resources; CSL seeks an end of activities needlessly destructive to natural resources; CSL endeavors to educate and encourage the public generally, and the youth specifically, to an understanding of the advantages and importance of the conservation, enhancement, and wise use of all our natural resources; and CSL works to secure more and better outdoor opportunities for all citizens, regardless of race, creed, or color as essential to the physical and spiritual well being of all the people.

This is to notify you of the opposition of the California Sportsmen's Lobby (CSL) to SB 61.

It would unjustifiably limit the purchase of a rifle or shotgun by any lawful person to one per month.

Rather than limit such purchases by lawful individuals to one per month, experience with mass homicides and other crimes involving firearms has clearly shown that the focus should be on preventing criminals and individuals suffering from mental illness from acquiring firearms, not on those who are not a part of the problem.

Such persons will always be able to obtain firearms through unlawful sources without going through a licensed firearms dealer. The restrictions proposed in SB 61 would not prevent it.

While the purchase limit exemption in the bill is appreciated for licensed hunters, and for persons acquiring firearms at nonprofit fundraising events, it does not offset the opposed limitation on other lawful persons.

Firearms ownership by individuals is a constitutionally protected right of all adults.

**Exhibit 6**
0289

**Provided by LRI History LLC**                          **SB 61 (2019) Page 259 of 367**

Limiting all adults to a maximum of one rifle or shotgun purchase per month will not solve crime and mental health problems.

For the above reasons, the Outdoor Sportsmen's Coalition of California opposes SB 61.

Should you have any questions, please contact our legislative advocate, Kathryn Lynch, at (916) 443-0202 or lynch@lynchlobby.com.

Sincerely,

*Randall E. Walker*

Randall Walker
President, California Sportsman's Lobby

cc: Office of Legislative Affairs, Governor's Office
    Mr. Gabe Caswell, Consultant, Senate Public Safety Committee
    Mr. Eric Csizmar, Consultant, Senate Republican Caucus
    Office of Senate Floor Analysis
    Senator Steven Glazer, Co-Author
    Senator Scott Wiener, Co-Author
    Ms. Kathryn Lynch, Legislative Advocate
    California Sportsman's Lobby



# NATIONAL SHOOTING SPORTS FOUNDATION, INC.

Headquarters: 11 Mile Hill Road, Newtown, CT 06470-2359

400 N. Capitol Street NW, Suite 475, Washington, D.C. 20001

203-426-1320 ext. 264   Cell 503-729-6325   mfindlay@nssf.org

**Michael Findlay**
Director,
Government Relations - State Affairs

May 21, 2019

The Honorable Anthony Portantino
California State Senate                    Position: Oppose
State Capitol Building
Sacramento, CA 95829                   Location: Senate Floor

**Re: SB 61 (Portantino) Firearms: transfers (As Amended May 17, 2019)**

Dear Senator Portantino:

As the trade association for America's firearms, ammunition, hunting, and recreational shooting sports industry, the National Shooting Sports Foundation ("NSSF") seeks to promote, protect, and preserve hunting and the shooting sports. NSSF has a membership of more than 12,000 manufacturers, distributors, firearms retailers, shooting ranges, and sportsmen's organizations, including more than 1,300 in California alone. Our manufacturer members make the firearms used by law-abiding California sportsmen, the U.S. military and law enforcement agencies throughout the state.

This is to notify you of the opposition of the National Shooting Sports Foundation (NSSF) to SB 61, as introduced, that would limit the purchase of a rifle or shotgun by anyone to one per month.

Rather than limit purchases for all individuals to one such firearm per month, experience with mass homicides and other crimes involving firearms has clearly shown that the focus should instead be on preventing criminals and individuals suffering from mental illness from acquiring firearms, not on those who are not a part of the problem.

Persons who have an intent to commit such crimes, or other illegal acts involving the use of a firearm will always be able to obtain firearms through unlawful sources without going through a licensed firearms dealer.

The restrictions proposed in SB 61 will not prevent it.

With respect to mental health practitioners and others in positions of authority who should do so, it appears there are many who do not notify the Department of Justice (DOJ) or other appropriate agencies of individuals whom they have determined are likely to be a danger to themselves or others.

Provided by LRI History LLC

Sometimes, agencies and authorities who have been notified of such persons fail to act.

This is another area that needs more focus, instead of setting arbitrary, ineffective purchase limits for the acquisition of a rifle or shotgun. There is no evidence that such a purchase limit would have an impact on the criminal misuse of firearms.

Limiting the purchases of rifles or shotguns for an entire class of citizens as proposed in SB 61 would not solve crime problems and tragedies.

Firearms ownership by individuals is a constitutionally protected right.

NSSF supports practical solutions that will ensure that unauthorized individuals do not have access to any firearm of any kind at any time.

It has sponsored the FixNics® campaign to encourage states to submit all disqualifying criminal and mental health records to the FBI's National Criminal Instant Background Check System (NICS). Since its inception, the number of disqualifying records sent by states to the FBI has increased by 200 percent and is continuing to grow, making the federal NICS background check system increasingly more effective. This is where the emphasis should be.

Limiting all adults to a maximum of one rifle or one shotgun purchase per month will not solve crime and mental health problems.

For the above reasons, the National Shooting Sports Foundation opposes the enactment of SB 61.

Should you have any questions, please contact our legislative advocate, Kathryn Lynch, at (916) 443-0202 or lynch@lynchlobby.com.

Sincerely,

Michael Findlay
Director of Government Relations – State Affairs

cc: Office of Legislative Affairs, Governor's Office
    Mr. Gabe Caswell, Consultant, Senate Public Safety Committee
    Mr. Eric Csizmar, Consultant, Senate Republican Caucus
    Office of Senate Floor Analysis
    Senator Steven Glazer, Co-Author
    Senator Scott Wiener, Co-Author
    Ms. Kathryn Lynch, Legislative Advocate
    National Shooting Sports Foundation

**Exhibit 6**
**0292**
**Provided by LRI History LLC**　　　　　　　　　　　　**SB 61 (2019) Page 262 of 367**



# Dedicated to Preserving Your Rights
# To Hunt and Fish
# In the State of California

May 21, 2019

The Honorable Anthony Portantino
California State Senate
State Capitol Building
Sacramento, CA 95829

Position: Oppose

Location: Senate Floor

**Re: SB 61 (Portantino) Firearms: transfers (As Amended May 17, 2019)**

Dear Senator Portantino:

The Outdoor Sportsmen's Coalition of California is a nonprofit organization of sportsman's clubs and individuals dedicated to preserving outdoor recreation in California. Our principal activities are to monitor legislation that might negatively impact hunting, fishing and other recreation, and to oppose unwise changes in laws and regulations relating to these activities.

The Outdoor Sportsmen's Coalition of California (OSCC) promotes the conservation enhancement, scientific management, and wise use of all our natural resources; OSCC seeks to end activities needlessly destructive to natural resources; OSCC endeavors to educate and encourage the public generally, and the youth specifically, to an understanding of the advantages and importance of the conservation and enhancement of our natural resources.

OSCC works to enhance outdoor opportunities for all citizens. With several thousand members located throughout California, we stay in contact with our membership via newsletters and the internet so they can be involved as they see fit.

This is to notify you of the opposition of the Outdoor Sportsmen's Coalition of California (OSCC) to SB 61, as introduced.

It would needlessly limit the purchase of a rifle or shotgun by anyone to one per month.

Rather than limit such purchases to one firearm per month, experience with mass homicides and other crimes involving firearms has clearly shown that the focus should be on preventing criminals and individuals suffering from mental illness from acquiring firearms, not on those who are not a part of the problem.

P.O. Box 848, Fresno, CA 93712

**Exhibit 6**

**Provided by LRI History LLC**

0293

Persons who have an intent to commit such crimes, or other illegal acts involving the use of a firearm, will always be able to obtain firearms through unlawful sources without going through a licensed firearms dealer.

The restrictions proposed in SB 61 will not prevent it.

While the purchase limit exemption in the bill is appreciated for licensed hunters, and persons acquiring firearms at nonprofit fundraising events, it does not offset the needless limitation on other lawful individuals.

Firearms ownership by individuals is a constitutionally protected right of all adults.

Limiting all adults to a maximum of one rifle or shotgun purchase per month, will not solve crime and mental health problems.

For the above reasons, the Outdoor Sportsmen's Coalition of California opposes SB 61.

Should you have any questions, please contact our legislative advocate, Kathryn Lynch, at (916) 443-0202 or lynch@lynchlobby.com.

Sincerely,

Randall Walker, President
Outdoor Sportsmen's Coalition of California

cc: Office of Legislative Affairs, Governor's Office
    Mr. Gabe Caswell, Consultant, Senate Public Safety Committee
    Mr. Eric Csizmar, Consultant, Senate Republican Caucus
    Office of Senate Floor Analysis
    Senator Steven Glazer, Co-Author
    Senator Scott Wiener, Co-Author
    Ms. Kathryn Lynch, Legislative Advocate
    Outdoor Sportsmen's Coalition of California

**Exhibit 6**
**0294**

**Provided by LRI History LLC**



# Safari Club International
A NON-PROFIT ORGANIZATION ♦ DEDICATED TO CONSERVING WILDLIFE AND PRESERVING HUNTING





**SCI CA Coalition**

May 21, 2019

The Honorable Anthony Portantino
California State Senate                         Position: Oppose
State Capitol Building
Sacramento, CA 95829                         Location: Senate Floor

**Re: SB 61 (Portantino) Firearms: transfers (As Amended May 17, 2019)**

Dear Senator Portantino:

Safari Club International and Safari Club International Foundation (SCI) is a worldwide Non-Profit organization with the mission to protect the freedom to hunt and to promote wildlife conservation. SCI recognizes hunting as a valuable management tool. SCI currently has over 45,000 members and approximately 4,000 members in California. SCI also has 30,000 California Affiliates, 950,000 U.S. Affiliates and over 7,000,000 International Affiliates. SCI spends millions annually for Wildlife Conservation, Research and Education.

This is to notify you of the opposition of the SCI CA Coalition (SCI) to SB 61, as introduced.

It would needlessly limit the purchase of a rifle or shotgun by anyone to one per month.

While the exemption in the bill from the one gun per month limit for licensed hunters, and firearms acquired at nonprofit fundraising events, is appreciated, it does not mitigate the inappropriate limitation on others, such as recreational and competitive shooters.

Rather than limit such purchases to one firearm per month, experience with mass homicides and other crimes involving firearms has clearly shown that the focus should be on preventing criminals and individuals suffering from mental illness from acquiring firearms, not on those who are not a part of the problem.

Persons who have an intent to commit such crimes, or other illegal acts involving the use of a firearm, will always be able to obtain firearms through unlawful sources without going through a licensed firearms dealer.

The restrictions proposed in SB 61 will not prevent it.

Firearms ownership by individuals is a constitutionally protected right of all adults.

Limiting all adults to a maximum of one rifle or shotgun purchase per month will not solve crime and mental health problems.

**Exhibit 6**
**0295**

For the above reasons, SCI CA Coalition opposes the enactment of SB 61.

Should you have any questions, please contact our legislative advocate, Kathryn Lynch, at (916) 443-0202 or lynch@lynchlobby.com.

Sincerely,

Lisa C. McNamee
Co-Legislative Coordinator
SCI CA Coalition

Don Giottonini
Co-Legislative Coordinator
SCI CA Coalition

cc: Office of Legislative Affairs, Governor's Office
Mr. Gabe Caswell, Consultant, Senate Public Safety Committee
Mr. Eric Csizmar, Consultant, Senate Republican Caucus
Office of Senate Floor Analysis
Senator Steven Glazer, Co-Author
Senator Scott Wiener, Co-Author
Ms. Kathryn Lynch, Legislative Advocate
SCI CA Coalition

**Exhibit 6**
**0296**

**Provided by LRI History LLC**                    **SB 61 (2019) Page 266 of 367**

## THIRD READING

Bill No:    SB 61
Author:     Portantino (D), et al.
Amended:    5/17/19
Vote:       21

SENATE PUBLIC SAFETY COMMITTEE: 5-2, 4/2/19
AYES: Skinner, Bradford, Jackson, Mitchell, Wiener
NOES: Moorlach, Morrell

SENATE APPROPRIATIONS COMMITTEE: 4-2, 5/16/19
AYES: Portantino, Bradford, Hill, Wieckowski
NOES: Bates, Jones

**SUBJECT:** Firearms: transfers

**SOURCE:** Author

**DIGEST:** This bill is to extends the prohibition on purchasing more than one handgun a month to include all firearms.

**ANALYSIS:**

Existing law:

1) Prohibits a person from making more than one application to purchase a handgun within any 30-day period. (Pen. Code § 27535.)

2) Prohibits a firearms dealer from delivering a handgun to a person whenever the dealer is notified by the Department of Justice that within the preceding 30-day period the purchaser has made another application to purchase a handgun that does not fall within an exception to the 30-day prohibition. A violation of that delivery prohibition by the dealer is a crime. (Pen. Code § 27540.)

**Exhibit 6**
**0297**
Provided by LRI History LLC                    SB 61 (2019)  Page 267 of 367

3) Exempts the following from the one handgun a month prohibition: (Pen. Code, § 27535, subd. (b).)

   a) Any law enforcement agency.

   b) Any agency duly authorized to perform law enforcement duties.

   c) Any state or local correctional facility.

   d) Any private security company licensed to do business in California.

   e) Any person who is properly identified as a full-time paid peace officer and who is authorized to, and does carry a firearm during the course and scope of employment as a peace officer.

   f) Any motion picture, television, or video production company or entertainment or theatrical company whose production by its nature involves the use of a firearm.

   g) Any person who may make a valid claim an exemption from the waiting period set forth in Section 27540.

   h) Any transaction conducted through a licensed firearms dealer pursuant to Chapter 5 (commencing with Section 28050).

   i) Any person who is licensed as a collector and has a current certificate of eligibility issued by the Department of Justice.

   j) The exchange of a handgun where the dealer purchased that firearm from the person seeking the exchange within the 30-day period immediately preceding the date of exchange or replacement.

   k) The replacement of a handgun when the person's handgun was lost or stolen, and the person reported that firearm lost or stolen prior to the completion of the application to purchase to any local law enforcement agency of the city, county, or city and county in which the person resides.

   l) The return of any handgun to its owner.

   m) A community college that is certified by the Commission on Peace Officer Standards and Training to present the law enforcement academy basic course or other commission-certified law enforcement training.

**Exhibit 6**
**0298**

This bill:

1) Extends the prohibition on purchasing more than one handgun a month to all firearms, including long guns.

2) Exempts the following from the one handgun a month prohibition: (Pen. Code, § 27535, subd. (b).)

   a) Any law enforcement agency.

   b) Any agency duly authorized to perform law enforcement duties.

   c) Any state or local correctional facility.

   d) Any private security company licensed to do business in California.

   e) Any person who is properly identified as a full-time paid peace officer and who is authorized to, and does carry a firearm during the course and scope of employment as a peace officer.

   f) Any motion picture, television, or video production company or entertainment or theatrical company whose production by its nature involves the use of a firearm.

   g) Any person who may make a valid claim an exemption from the waiting period set forth in Section 27540.

   h) Any transaction conducted through a licensed firearms dealer pursuant to Chapter 5 (commencing with Section 28050).

   i) Any person who is licensed as a collector and has a current certificate of eligibility issued by the Department of Justice.

   j) The exchange of a handgun where the dealer purchased that firearm from the person seeking the exchange within the 30-day period immediately preceding the date of exchange or replacement.

   k) The replacement of a handgun when the person's handgun was lost or stolen, and the person reported that firearm lost or stolen prior to the completion of the application to purchase to any local law enforcement agency of the city, county, or city and county in which the person resides.

Exhibit 6
0299

Provided by LRI History LLC

l) The return of any handgun to its owner.

m) A community college that is certified by the Commission on Peace Officer Standards and Training to present the law enforcement academy basic course or other commission-certified law enforcement training,

3) Specifies that specified licensees shall not sell, supply, deliver, or give possession or control of a semiautomatic centerfire rifle to any person who is under 21 years of age, with specified exemptions.

**Background**

*One Gun a Month.* According to the Senate Public Safety Analysis of Assembly Bill 202 (Knox, of 1999), which created the one-handgun-a-month law in California:

> The State of Virginia enacted a "one-handgun-a-month" law in 1993 (before the Federal Brady Bill, which required at least a five day waiting period plus a background check for states without such requirements). That state had weak restrictions on handgun sales and it has been stated that gun traffickers from New York City routinely traveled to Virginia to purchase quantities of weapons to take back for illegal sale in other states. Purchases of more than one handgun per 30-day period in Virginia is allowed upon completion of an "enhanced" background check when the purchase is for lawful business or personal use, for purposes of collectors, bulk sales and purchases from estates, to replace a lost or stolen weapon, and similar situations.

> Supporters of limits on purchases of handguns assume that the Virginia limits and the limits in this bill would only affect a very small proportion of legitimate handgun purchasers. A family of two adults could still purchase 24 handguns a year under the provisions of both this bill and the Virginia law.

Virginia repealed this law in 2012. But, according to the Law Center to Prevent Gun Violence:

> Virginia's one-gun-a-month law – which was in effect from 1993 to 2012 and prohibited the purchase of more than one handgun per person in any 30-day period – significantly reduced the number of

**Exhibit 6**
**0300**
Provided by LRI History LLC · SB 61 (2019) Page 270 of 367

crime guns traced to Virginia dealers. Virginia initially adopted its law after the state became recognized as a primary source of crime guns recovered in states in the northeastern U.S. After the law's adoption, the odds of tracing a gun originally acquired in the Southeast to a Virginia gun dealer (as opposed to a dealer in a different southeastern state) dropped by:

- 71% for guns recovered in New York;
- 72% for guns recovered in Massachusetts; and
- 66% for guns recovered in New Jersey, New York, Connecticut, Rhode Island and Massachusetts combined.

(http://smartgunlaws.org/multiple-purchases-sales-of-firearms-policy-summary/ [footnotes omitted].)

Other states that have limits on the number of firearms that can be sold in one month include:

- California: California law prohibits any person from purchasing more than one handgun within any 30-day period. In addition, a licensed firearms dealer may not deliver a handgun to any person following notification from the California Department of Justice that the purchaser has applied to acquire a handgun within the preceding 30-day period. Finally, firearms dealers must conspicuously post in their licensed premises a warning, in block letters at least one inch in height, notifying purchasers of these restrictions.

- District of Columbia: A person may not register more than one handgun in the District during any 30-day period. Since every handgun must be registered, this amounts to a purchase and sale limitation of one handgun per 30-day period.

- Maryland: Maryland prohibits any person from purchasing more than one handgun or assault weapon within a 30-day period. Under limited circumstances, a person may be approved by the Secretary of the Maryland State Police to purchase multiple handguns or assault weapons in a 30-day period. Maryland also penalizes any dealer or other seller who knowingly participates in an illegal purchase of a handgun or assault weapon.

- New Jersey: New Jersey prohibits licensed firearms dealers from knowingly delivering more than one handgun to any person within any 30-day period. With limited exceptions, no person may purchase more than one handgun

**Exhibit 6**
**0301**
**Provided by LRI History LLC**                    **SB 61 (2019) Page 271 of 367**

within any 30-day period. New Jersey requires a handgun purchaser to obtain a separate permit for each handgun purchased, and present the permit to the seller. The seller must keep a copy of each permit presented.

(http://smartgunlaws.org/multiple-purchases-sales-of-firearms-policy-summary/[footnotes omitted].)

*Assembly Bill 1674 (Santiago), of 2015: Veto Message.* The Governor stated in his veto message of Senate Bill 1674, which would have prohibited any person from making an application to purchase more than one firearm within any 30-day period:

> This bill generally prohibits the purchase of more than one firearm within any 30-day period. It should be noted that California already bans the purchase of more than one handgun per month.
>
> While well-intentioned, I believe this bill would have the effect of burdening lawful citizens who wish to sell certain firearms that they no longer need.
>
> Given California's stringent laws restricting gun ownership, I do not believe this additional restriction is needed.

*Senate Bill 1177 (Portantino), of 2018: Veto Message.* The Governor stated in his veto message of Senate Bill 1177, which would have prohibited any person from making an application to purchase more than one firearm within any 30-day period, with the same exemptions included in this bill:

> This bill prohibits any person from purchasing more than one long-gun per month.
>
> I vetoed a substantially similar bill in 2016, and my views have not changed.

*California Hunting Licenses.* This bill creates an exemption from the prohibition on persons under the age of 21 purchasing or receiving a long gun if the person under the age of 21 has a valid, unexpired hunting license. In order to obtain a hunting license in California a person must:

- Complete the California Hunter Education Certification requirements,
- Choose the correct type of hunting license.

**Exhibit 6**
**0302**

**Provided by LRI History LLC**                    **SB 61 (2019) Page 272 of 367**

- Purchase a license through the California Department of Fish and Wildlife website or a California approved agent.

The Official California Hunter Safety Course is an online course that costs $28.95. There is no minimum age for the course. The course requires a follow-up course that is a 4-hour review of the online course with a certified hunter education instructor. The course includes a student demonstration of safe firearm handling and a test. Following completion of the follow-up course the enrollee receives a Hunter Education Certificate.

**FISCAL EFFECT:**  Appropriation:  No    Fiscal Com.:    Yes    Local:  Yes

According to the Senate Appropriations Committee:

*Fee revenue loss:*  The Department of Justice estimates an overall annual revenue reduction of 10 percent in fee collection resulting from fewer firearm purchases, equating to an overall annual loss of $2.23 million. See comment below. (Various special funds)

*Tax revenue loss:*  Unknown, likely-significant loss in sales tax revenue resulting from the limitation on the number of long guns a person may purchase. (General Fund, local funds)

*System update:*  The Department of Justice anticipates that need of 1.0 limited-term Information Technology Specialist I in FY 2020-21 at a cost of $281,000, inclusive of attendant equipment and operating expenses. (Special fund*, General Fund)

* Dealers Record of Sale Special Account (DROS)—structurally imbalanced

**SUPPORT:**  (Verified  5/16/19)

Bay Area Student Activists
Brady California United Against Gun Violence
Coalition Against Gun Violence
Giffords Law Center to Prevent Gun Violence
Los Angeles County Board of Supervisors
Los Angeles City Attorney

**OPPOSITION:**  (Verified  5/16/19)

California Rifle and Pistol Association
California Sportsman's Lobby

**Exhibit 6**
**0303**
**Provided by LRI History LLC**

Gun Owners of California
National Shooting Sports Foundation
Outdoor Sportsmen's Coalition of California
Safari Club International
Safari Club International Foundation

**ARGUMENTS IN SUPPORT:** According to Brady California United Against
Gun Violence:

> In 1999, legislation (AB 202) was enacted that limits purchases of
> handguns from licensed firearms dealers in California to no more than
> one per person per 30-day period. The purpose of the bill was to curb
> the illegal flow of handguns by taking the profit out of selling guns
> from bulk purchases on the black market. SB 61 applies existing law
> under AB 202 to long guns, including rifles, shotguns, and lower
> receivers.

> Under SB 61, firearms (handguns *and* long guns) will not be delivered
> whenever the dealer is notified by the Department of Justice that
> within the preceding 30-day period, the purchaser had made another
> application to purchase a firearm. Private party transactions will
> continue to be exempt. Additionally, rifle and shotgun (but not lower
> receiver) purchasers with a valid hunting license issued by the
> Department of Fish and Wildlife and the acquisition of a rifle or
> shotgun at an auction or similar event conducted by a nonprofit will
> be exempt.

> It stands to reason that a person buying large quantities of guns at one
> time may be acting as a straw purchaser or gun trafficker. Moreover,
> firearms acquired this way are frequently used in crime. In fact, an
> ATF study of tracing data demonstrated that 22% of all handguns
> recovered in crime in 1999 were originally purchased as part of a
> multiple sale. A similar study found that 20% of all handguns
> recovered in crime in 2000 were originally purchased as part of a
> multiple sale. Additionally, a University of Pennsylvania report found
> that a quarter of all guns used in crime were purchased as part of a
> multiple-gun sale and that guns purchased in bulk were up to 64%
> more likely to be used for illegal purposes than guns purchased
> individually.

**Exhibit 6**
**0304**

**Provided by LRI History LLC**

Since 1999, Californians have typically purchased more long guns than handguns every year. Currently, these long guns include high powered featureless weapons with exchangeable magazines that enable rapid reload and lower receivers, which can be assembled into illegal military-style weapons. Limiting multiple-gun sales within a short period of time for such weapons, which are more lethal than handguns, is clearly in the interest of public safety.

The Department of Justice began to retain records of long gun purchases on January 1, 2014. An analysis of the transaction data from the period January 2014 through June 2015 shows that 81.9% of long guns were sold as a single long gun purchase within a 30-day period. *Clearly, the vast majority of long gun purchasers will not be impacted by SB 61.* However, at the opposite end of the spectrum, an individual purchased 177 long guns in two transactions within a one month period (April 2014). Furthermore, sales to single individuals ranging from 5 to 54 long guns per month occurred on 1,787 occasions, totaling 12,090 guns. Department data also shows that when multiple long guns are transferred in a sale, it is more than twice as likely that lower receivers are included. The largest bulk sale of long guns in one month to an individual (177 long guns) was composed *entirely* of lower receivers, which can be built into illegal assault weapons and sold on the black market.

Brady California believes that handguns and long guns should generally be subject to the same laws. Preventing the flow of illegal guns is important to public safety regardless of whether the firearm is a handgun or a long gun. Limiting firearms sales to one gun per 30-day period is a recognized strategy to reduce gun trafficking and keep firearms out of dangerous hands. Brady California thanks you for introducing SB 61.

**ARGUMENTS IN OPPOSITION:** According to California Rifle and Pistol Association:

SB 61 would significantly reduce long gun sales in California. This translates into a loss of manufacturing jobs at both the state and national levels, and a significant loss of revenue for California businesses. Additionally, this bill will significantly impact the millions of dollars of Federal Pitman Roberson tax money that would be earmarked to develop and enhance habitat critical for California's

**Exhibit 6**
0305

Provided by LRI History LLC

SB 61 (2019) Page 275 of 367

wildlife. The Department of Justice (DOJ), has estimated previous versions of this same bill's implementation alone will cost hundreds of thousands of dollars, and result in significant overtime hours for Department personal to perform the necessary analysis, development, testing, and implementation to various Department databases.

SB 61 will also effectively prohibit the creation of new businesses in California involving hands on instruction in the safe handling of firearms. Should this bill become law, certified firearm instructors would no longer be able acquire the necessary firearms without having to wait months, if not years, to conduct classes for groups such as the Boy Scouts of America, Hunter Education, Youth shooting sports, and other clubs or organizations that wish to participate in firearm safety classes.

The author and proponents have argued in testimony there is no legitimate reason for anyone to need to purchase more than one firearm a month. There are, in fact, numerous legitimate recreational and Second Amendment protected reasons why an individual might want, and need, to transfer more than one firearm a month. For example, someone new to the sport of recreational competitive shooting, 'Three Gun' competitions, may very well need to purchase a pistol, shotgun, and rifle without having to wait 30 days between each purchase. This bill would require someone wanting to acquire all three types of firearms to undergo a process that would take at least 70 days assuming everything goes smoothly. The procedure for purchasing these firearms is already very time and travel intensive. Each transaction requiring a trip to the licensed dealer.

Currently individuals in California must go through the following steps to purchase a firearm; Obtain a firearm safety certificate; Go to a California licensed firearms dealer; Complete 4473 and (Dealer Record of Sales) DROS applications; Pass the required background check; Wait the required 10 days; Go back to dealer; Perform a safe handling demonstration; Pick up first firearm. Under SB 61 the individual would have to wait the required 30 days, then go back to dealer again; and repeat the process for each subsequent purchase. Both California and Federal law already address the author's concerns regarding the trafficking of firearms by narrowly limiting the number of firearms an individual can sell. Rather than having the desired

**Exhibit 6**
**0306**
**Provided by LRI History LLC**

effect of targeting criminals, this bill will impact only the law abiding, thereby further limiting available funding to DOJ.

SB 61, does allow for numerous exemptions to the restriction which do not apply to the general public, though well intended by the author will create a nightmare DOJ and law enforcement to implement and enforce. Additionally, the author has argued this bill is necessary because the vast majority of firearms recovered from APPS seizures are long guns. However, data from the Bureau of Alcohol, Tobacco, Firearms and Explosives, ATF, clearly shows the vast majority of firearms recovered by law enforcement are handguns, which are already subject to the 30-day restriction, illustrating the restrictions ineffectiveness at reducing crime.

The author and proponents have tried three previous versions of this bill in the last three years. All vetoed by Governor Brown; 2016: AB 1674, 2017: SB 497 and in 2018: SB 1177. In his 2018 veto statement the Governor stated: "I am returning SB 1177 without my signature. This bill prohibits any person from purchasing more than one long-gun per month. I vetoed a substantially similar bill in 2016, and my views have not changed", in his 2016 veto statement Governor Brown said in part; " while well-intended, I believe this bill would have the effect of burdening lawful citizens who wish to sell certain firearms that they no longer need. Given California's stringent laws restricting gun ownership, I do not believe this additional restriction is needed".


Prepared by:   Gabe Caswell / PUB. S. /
5/16/2019 3:9:44

**** **END** ****


**Exhibit 6**
**0307**
**Provided by LRI History LLC**            **SB 61 (2019)  Page 277 of 367**



---

### THIRD READING

Bill No:      SB 61
Author:       Portantino (D), et al.
Introduced:   1/3/19    5/17
Vote:         21

---

SENATE PUBLIC SAFETY COMMITTEE: 5-2, 4/2/19
AYES: Skinner, Bradford, Jackson, Mitchell, Wiener
NOES: Moorlach, Morrell

---

**SUBJECT:** Firearms: transfers

**SOURCE:** Author

---

**DIGEST:** This bill is to extends the prohibition on purchasing more than one handgun a month to include all firearms.

**ANALYSIS:**

Existing law:



1) Prohibits a person from making more than one application to purchase a handgun within any 30-day period. (Pen. Code § 27535.)

2) Prohibits a firearms dealer from delivering a handgun to a person whenever the dealer is notified by the Department of Justice that within the preceding 30-day period the purchaser has made another application to purchase a handgun that does not fall within an exception to the 30-day prohibition. A violation of that delivery prohibition by the dealer is a crime. (Pen. Code § 27540.)

3) Exempts the following from the one handgun a month prohibition: (Pen. Code, § 27535, subd. (b).)

   a) Any law enforcement agency.

**Exhibit 6**
0308
SB 61 (2019)  Page 278 of 367

**Provided by LRI History LLC**

b) Any agency duly authorized to perform law enforcement duties.

c) Any state or local correctional facility.

d) Any private security company licensed to do business in California.

e) Any person who is properly identified as a full-time paid peace officer and who is authorized to, and does carry a firearm during the course and scope of employment as a peace officer.

f) Any motion picture, television, or video production company or entertainment or theatrical company whose production by its nature involves the use of a firearm.

g) Any person who may make a valid claim an exemption from the waiting period set forth in Section 27540.

h) Any transaction conducted through a licensed firearms dealer pursuant to Chapter 5 (commencing with Section 28050).

i) Any person who is licensed as a collector and has a current certificate of eligibility issued by the Department of Justice.

j) The exchange of a handgun where the dealer purchased that firearm from the person seeking the exchange within the 30-day period immediately preceding the date of exchange or replacement.

k) The replacement of a handgun when the person's handgun was lost or stolen, and the person reported that firearm lost or stolen prior to the completion of the application to purchase to any local law enforcement agency of the city, county, or city and county in which the person resides.

l) The return of any handgun to its owner.

m) A community college that is certified by the Commission on Peace Officer Standards and Training to present the law enforcement academy basic course or other commission-certified law enforcement training.

This bill:

 1) Extends the prohibition on purchasing more than one handgun a month to all firearms, including long guns.

**Exhibit 6**
**0309**

Provided by LRI History LLC    SB 61 (2019) Page 279 of 367

2) Exempts the following from the one handgun a month prohibition: (Pen. Code, § 27535, subd. (b).)

    a) Any law enforcement agency.

    b) Any agency duly authorized to perform law enforcement duties.

    c) Any state or local correctional facility.

    d) Any private security company licensed to do business in California.

    e) Any person who is properly identified as a full-time paid peace officer and who is authorized to, and does carry a firearm during the course and scope of employment as a peace officer.

    f) Any motion picture, television, or video production company or entertainment or theatrical company whose production by its nature involves the use of a firearm.

    g) Any person who may make a valid claim an exemption from the waiting period set forth in Section 27540.

    h) Any transaction conducted through a licensed firearms dealer pursuant to Chapter 5 (commencing with Section 28050).

    i) Any person who is licensed as a collector and has a current certificate of eligibility issued by the Department of Justice.

    j) The exchange of a handgun where the dealer purchased that firearm from the person seeking the exchange within the 30-day period immediately preceding the date of exchange or replacement.

    k) The replacement of a handgun when the person's handgun was lost or stolen, and the person reported that firearm lost or stolen prior to the completion of the application to purchase to any local law enforcement agency of the city, county, or city and county in which the person resides.

    l) The return of any handgun to its owner.

    m) A community college that is certified by the Commission on Peace Officer Standards and Training to present the law enforcement academy basic

**Exhibit 6**
**0310**

**Provided by LRI History LLC**

course or other commission-certified law enforcement training,

3) Specifies that specified licensees shall not sell, supply, deliver, or give possession or control of a semiautomatic centerfire rifle to any person who is under 21 years of age, with specified exemptions.

## Background

*One Gun a Month*

According to the Senate Public Safety Analysis of Assembly Bill 202 (Knox, of 1999), which created the one-handgun-a-month law in California:

> The State of Virginia enacted a "one-handgun-a-month" law in 1993 (before the Federal Brady Bill, which required at least a five day waiting period plus a background check for states without such requirements). That state had weak restrictions on handgun sales and it has been stated that gun traffickers from New York City routinely traveled to Virginia to purchase quantities of weapons to take back for illegal sale in other states. Purchases of more than one handgun per 30-day period in Virginia is allowed upon completion of an "enhanced" background check when the purchase is for lawful business or personal use, for purposes of collectors, bulk sales and purchases from estates, to replace a lost or stolen weapon, and similar situations.

> Supporters of limits on purchases of handguns assume that the Virginia limits and the limits in this bill would only affect a very small proportion of legitimate handgun purchasers. A family of two adults could still purchase 24 handguns a year under the provisions of both this bill and the Virginia law.

Virginia repealed this law in 2012. But, according to the Law Center to Prevent Gun Violence:

> Virginia's one-gun-a-month law – which was in effect from 1993 to 2012 and prohibited the purchase of more than one handgun per person in any 30-day period – significantly reduced the number of crime guns traced to Virginia dealers. Virginia initially adopted its law after the state became recognized as a primary source of crime guns recovered in states in the northeastern U.S. After the law's

**Exhibit 6**
**0311**
**Provided by LRI History LLC**

adoption, the odds of tracing a gun originally acquired in the
Southeast to a Virginia gun dealer (as opposed to a dealer in a
different southeastern state) dropped by:

- 71% for guns recovered in New York;
- 72% for guns recovered in Massachusetts; and
- 66% for guns recovered in New Jersey, New York, Connecticut, Rhode
  Island and Massachusetts combined.

(http://smartgunlaws.org/multiple-purchases-sales-of-firearms-policy-
summary/ [footnotes omitted].)

Other states that have limits on the number of firearms that can be sold in one
month include:

- California: California law prohibits any person from purchasing more
  than one handgun within any 30-day period. In addition, a licensed
  firearms dealer may not deliver a handgun to any person following
  notification from the California Department of Justice that the purchaser
  has applied to acquire a handgun within the preceding 30-day period.
  Finally, firearms dealers must conspicuously post in their licensed
  premises a warning, in block letters at least one inch in height, notifying
  purchasers of these restrictions.

- District of Columbia: A person may not register more than one handgun
  in the District during any 30-day period. Since every handgun must be
  registered, this amounts to a purchase and sale limitation of one handgun
  per 30-day period. . .

- Maryland: Maryland prohibits any person from purchasing more than one
  handgun or assault weapon within a 30-day period. Under limited
  circumstances, a person may be approved by the Secretary of the
  Maryland State Police to purchase multiple handguns or assault weapons
  in a 30-day period. Maryland also penalizes any dealer or other seller
  who knowingly participates in an illegal purchase of a handgun or assault
  weapon. . .

- New Jersey: New Jersey prohibits licensed firearms dealers from
  knowingly delivering more than one handgun to any person within any
  30-day period. With limited exceptions, no person may purchase more

**Exhibit 6**
**0312**

**Provided by LRI History LLC**

than one handgun within any 30-day period. New Jersey requires a handgun purchaser to obtain a separate permit for each handgun purchased, and present the permit to the seller. The seller must keep a copy of each permit presented.

(http://smartgunlaws.org/multiple-purchases-sales-of-firearms-policy-summary/[footnotes omitted].)

*Assembly Bill 1674 (Santiago), of 2015: Veto Message*

The Governor stated in his veto message of Senate Bill 1674, which would have prohibited any person from making an application to purchase more than one firearm within any 30-day period:

> This bill generally prohibits the purchase of more than one firearm within any 30-day period. It should be noted that California already bans the purchase of more than one handgun per month.

> While well-intentioned, I believe this bill would have the effect of burdening lawful citizens who wish to sell certain firearms that they no longer need.

> Given California's stringent laws restricting gun ownership, I do not believe this additional restriction is needed.

*Senate Bill 1177 (Portantino), of 2018: Veto Message*

The Governor stated in his veto message of Senate Bill 1177, which would have prohibited any person from making an application to purchase more than one firearm within any 30-day period, with the same exemptions included in this bill:

> This bill prohibits any person from purchasing more than one long-gun per month.

> I vetoed a substantially similar bill in 2016, and my views have not changed.

*California Hunting Licenses*

This bill creates an exemption from the prohibition on persons under the age of 21 purchasing or receiving a long gun if the person under the age of 21 has a valid,

**Exhibit 6**
**0313**
**Provided by LRI History LLC**

unexpired hunting license. In order to obtain a hunting license in California a person must:

- Complete the California Hunter Education Certification requirements
- Choose the correct type of hunting license.
- Purchase a license through the California Department of Fish and Wildlife website or a California approved agent.

The Official California Hunter Safety Course is an online course that costs $28.95. There is no minimum age for the course. The course requires a follow-up course that is a 4-hour review of the online course with a certified hunter education instructor. The course includes a student demonstration of safe firearm handling and a test. Following completion of the follow-up course the enrollee receives a Hunter Education Certificate.

**FISCAL EFFECT:** Appropriation: No Fiscal Com.: Yes Local: Yes

Fee revenue loss: The Department of Justice estimates an overall annual revenue reduction of 10 percent in fee collection resulting from fewer firearm purchases, equating to an overall annual loss of $2.23 million. See comment below. (Various special funds)

Tax revenue loss: Unknown, likely-significant loss in sales tax revenue resulting from the limitation on the number of long guns a person may purchase. (General Fund, local funds)

System update: The Department of Justice (DOJ) anticipates that need of 1.0 limited-term Information Technology Specialist I in FY 2020-21 at a cost of $281,000, inclusive of attendant equipment and operating expenses. (Special fund*, General Fund)

* Dealers Record of Sale Special Account (DROS)—structurally imbalanced

**SUPPORT:** (Verified 5/16/19)

Bay Area Student Activists
Brady California United Against Gun Violence
Coalition Against Gun Violence
Giffords Law Center to Prevent Gun Violence
Los Angeles County Board of Supervisors
Los Angeles City Attorney

**Exhibit 6**
0314
Provided by LRI History LLC          SB 61 (2019) Page 284 of 367

**OPPOSITION:** (Verified 5/16/19)

California Rifle and Pistol Association
California Sportsman's Lobby
Gun Owners of California
National Shooting Sports Foundation
Outdoor Sportsmen's Coalition of California
Safari Club International
Safari Club International Foundation

**ARGUMENTS IN SUPPORT:**

According to Brady California: United Against G.V.

In 1999, legislation (AB 202) was enacted that limits purchases of handguns from licensed firearms dealers in California to no more than one per person per 30-day period. The purpose of the bill was to curb the illegal flow of handguns by taking the profit out of selling guns from bulk purchases on the black market. SB 61 applies existing law under AB 202 to long guns, including rifles, shotguns, and lower receivers.

Under SB 61, firearms (handguns *and* long guns) will not be delivered whenever the dealer is notified by the Department of Justice that within the preceding 30-day period, the purchaser had made another application to purchase a firearm. Private party transactions will continue to be exempt. Additionally, rifle and shotgun (but not lower receiver) purchasers with a valid hunting license issued by the Department of Fish and Wildlife and the acquisition of a rifle or shotgun at an auction or similar event conducted by a nonprofit will be exempt.

It stands to reason that a person buying large quantities of guns at one time may be acting as a straw purchaser or gun trafficker. Moreover, firearms acquired this way are frequently used in crime. In fact, an ATF study of tracing data demonstrated that 22% of all handguns recovered in crime in 1999 were originally purchased as part of a multiple sale. A similar study found that 20% of all handguns recovered in crime in 2000 were originally purchased as part of a multiple sale. Additionally, a University of Pennsylvania report found that a quarter of all guns used in crime were purchased as part of a

**Exhibit 6**
**0315**

multiple-gun sale and that guns purchased in bulk were up to 64% more likely to be used for illegal purposes than guns purchased individually.

Since 1999, Californians have typically purchased more long guns than handguns every year. Currently, these long guns include high powered featureless weapons with exchangeable magazines that enable rapid reload and lower receivers, which can be assembled into illegal military-style weapons. Limiting multiple-gun sales within a short period of time for such weapons, which are more lethal than handguns, is clearly in the interest of public safety.

The Department of Justice began to retain records of long gun purchases on January 1, 2014. An analysis of the transaction data from the period January 2014 through June 2015 shows that 81.9% of long guns were sold as a single long gun purchase within a 30-day period. *Clearly, the vast majority of long gun purchasers will not be impacted by SB 61.* However, at the opposite end of the spectrum, an individual purchased 177 long guns in two transactions within a one month period (April 2014). Furthermore, sales to single individuals ranging from 5 to 54 long guns per month occurred on 1,787 occasions, totaling 12,090 guns. Department data also shows that when multiple long guns are transferred in a sale, it is more than twice as likely that lower receivers are included. The largest bulk sale of long guns in one month to an individual (177 long guns) was composed *entirely* of lower receivers, which can be built into illegal assault weapons and sold on the black market.

Brady California believes that handguns and long guns should generally be subject to the same laws. Preventing the flow of illegal guns is important to public safety regardless of whether the firearm is a handgun or a long gun. Limiting firearms sales to one gun per 30-day period is a recognized strategy to reduce gun trafficking and keep firearms out of dangerous hands. Brady California thanks you for introducing SB 61.

**Exhibit 6**
**0316**

**Provided by LRI History LLC**　　　　　　　　　　　　**SB 61 (2019) Page 286 of 367**

## ARGUMENTS IN OPPOSITION:

According to California Rifle and Pistol Association:

SB 61 would significantly reduce long gun sales in California. This translates into a loss of manufacturing jobs at both the state and national levels, and a significant loss of revenue for California businesses. Additionally, this bill will significantly impact the millions of dollars of Federal Pitman Roberson tax money that would be earmarked to develop and enhance habitat critical for California's wildlife. The Department of Justice (DOJ), has estimated previous versions of this same bill's implementation alone will cost hundreds of thousands of dollars, and result in significant overtime hours for Department personal to perform the necessary analysis, development, testing, and implementation to various Department databases.

SB 61 will also effectively prohibit the creation of new businesses in California involving hands on instruction in the safe handling of firearms. Should this bill become law, certified firearm instructors would no longer be able acquire the necessary firearms without having to wait months, if not years, to conduct classes for groups such as the Boy Scouts of America, Hunter Education, Youth shooting sports, and other clubs or organizations that wish to participate in firearm safety classes.

The author and proponents have argued in testimony there is no legitimate reason for anyone to need to purchase more than one firearm a month. There are, in fact, numerous legitimate recreational and Second Amendment protected reasons why an individual might want, and need, to transfer more than one firearm a month. For example, someone new to the sport of recreational competitive shooting, 'Three Gun' competitions, may very well need to purchase a pistol, shotgun, and rifle without having to wait 30 days between each purchase. This bill would require someone wanting to acquire all three types of firearms to undergo a process that would take at least 70 days assuming everything goes smoothly. The procedure for purchasing these firearms is already very time and travel intensive. Each transaction requiring a trip to the licensed dealer.

Currently individuals in California must go through the following steps to purchase a firearm; Obtain a firearm safety certificate; Go to a

**Exhibit 6**
**0317**

**Provided by LRI History LLC**

California licensed firearms dealer; Complete 4473 and (Dealer Record of Sales) DROS applications; Pass the required background check; Wait the required 10 days; Go back to dealer; Perform a safe handling demonstration; Pick up first firearm. Under SB 61 the individual would have to wait the required 30 days, then go back to dealer again; and repeat the process for each subsequent purchase. Both California and Federal law already address the author's concerns regarding the trafficking of firearms by narrowly limiting the number of firearms an individual can sell. Rather than having the desired effect of targeting criminals, this bill will impact only the law abiding, thereby further limiting available funding to DOJ.

SB 61, does allow for numerous exemptions to the restriction which do not apply to the general public, though well intended by the author will create a nightmare DOJ and law enforcement to implement and enforce. Additionally, the author has argued this bill is necessary because the vast majority of firearms recovered from APPS seizures are long guns. However, data from the Bureau of Alcohol, Tobacco, Firearms and Explosives, ATF, clearly shows the vast majority of firearms recovered by law enforcement are handguns, which are already subject to the 30-day restriction, illustrating the restrictions ineffectiveness at reducing crime.

The author and proponents have tried three previous versions of this bill in the last three years. All vetoed by Governor Brown; 2016: AB 1674, 2017: SB 497 and in 2018: SB 1177. In his 2018 veto statement the Governor stated: "I am returning SB 1177 without my signature. This bill prohibits any person from purchasing more than one long-gun per month. I vetoed a substantially similar bill in 2016, and my views have not changed", in his 2016 veto statement Governor Brown said in part; " while well-intended, I believe this bill would have the effect of burdening lawful citizens who wish to sell certain firearms that they no longer need. Given California's stringent laws restricting gun ownership, I do not believe this additional restriction is needed".

Prepared by: Gabe Caswell / PUB. S. /
5/16/2019 3:9:44

**** **END** ****

Exhibit 6
0318

**Provided by LRI History LLC**                    **SB 61 (2019) Page 288 of 367**



# LRI History LLC

intent@lrihistory.com
www.lrihistory.com
(916) 442.7660

# Assembly Policy Committee Materials

LRI History LLC hereby certifies that the accompanying record/s is/are true and correct copies of
the original/s obtained from one or more official, public sources in California unless another source
is indicated, with the following exceptions : In some cases, pages may have been reduced in size to
fit an 8 ½" x 11" sized paper. Or, for readability purposes, pages may have been enlarged
or cleansed of black marks or spots. Lastly, for ease of reference, paging and relevant identification
have been inserted.

**Exhibit 6**
**0319**

**Provided by LRI History LLC**                                                              **SB 61 (2019)  Page 289 of 367**



ASSEMBLY COMMITTEE ON PUBLIC SAFETY
Reginald Byron Jones-Sawyer, Sr., Chairman
**BACKGROUND INFORMATION REQUEST**

Please complete and return 2 copies of this form and 2 copies of all supporting materials
(including, press releases, support/opposition letters, proposed amendments, etc) ASAP of
receipt of this form.

**A bill cannot be heard if a completed worksheet is not returned.**

In addition, please e-mail this background information request form electronically to:
Estefani Avila (estefani.avila @asm.ca.gov), Committee Secretary
and Gary Olson  (gary.olson@asm.ca.gov).
*All material sent electronically should be flagged individually*
*(i.e., support/opposition letters, proposed amendments, news articles)*

**Further we ask that you advise your advocates to submit position letters through the CA
Legislature portal.  Click here to access.**

**Measure:  SB 61**

**Author:  Portantino**

**Staff:  Tara McGee**

**Staff Contact Number:  916-651-4025**

**Please use Times New Roman Font and 12 point size for all responses.  Thank you.**

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**BILL ORIGIN:**

1)  Source:  What person, organization, or governmental entity requested introduction?  Please include
the name, address, and phone number of the contact person.

Author sponsored.

2)  Similar Legislation:  Has a similar bill been previously introduced?  Please identify the bill number,
author, appropriate legislative session, and disposition of the bill.

**SB 1177 (Portantino), 2018, vetoed**
**AB 1674 (Santiago), 2015, vetoed**
**SB 1100 (Portantino) – Chaptered in 2018**

**Exhibit 6**
**0320**
**Provided by LRI History LLC**          **SB 61 (2019)  Page 290 of 367**

**SB 746 (Portantino) – Chaptered in in 2018**

**BACKGROUND:**

1) What is the problem or deficiency in existing law which this bill will remedy?
Current law establishes the purchase of only being able to purchase a handgun in a 30 day period. SB 61 would extend this 30-day limit to purchase to all types of firearms. The bill will also make it so that any person under the age of 21 years of age without exemptions cannot purchase a semi-automatic centerfire rifle unless the obtain a COE with the Department of Justice and are active or retired military, have a hunting license or active law enforcement.

2) If there has been an interim committee report, study, news article, statistic or other evidence on the bill, please submit copies and/or links of these materials to the Committee.

No.

3) Are there any similar federal legislation or related bills or laws in other states? Please attach or provide any information and links, as appropriate.

4) Please include an author's statement as you wish it to appear on the committee analysis:

More and more shootings are occurring with long guns so it is important that we treat the laws of both handguns and long guns the same. The law that passed last year requiring no one under the age of 21 to purchase a firearm has exemptions that we are strengthening and tightening when it comes to the purchase of semi-automatic center fire rifle by creating the person to obtain a CEO with the Department of Justice as well.

**SUPPORT AND OPPOSITION**

All letters of support or opposition must be forwarded to the committee as soon as possible. Please note that these letters will NOT be returned.

**AMENDMENTS:**

Do you plan ANY amendments to this bill prior to hearing? If so, please submit a copy of the language submitted to Legislative Counsel or provide a brief summary of planned amendments to the committee as soon as possible.

As to the "one gun a month" provision, there are discussions as to creating a carve out for semiautomatic centerfire rifles for charity events where the recipient of the gun has a COE or is a licensed hunter with a hunter or the purchaser at a charity event has a hunting license. There are some featureless long standing semiautomatic centerfire rifles that are used in hunting and have been used in hunting for generations.

**Exhibit 6**
**0321**
**Provided by LRI History LLC**

Given how the one-gun-a-month law works now, licensed collectors with COE's are exempt from the law. [COE's are discussed in the next paragraphs].

As to the Age 18 to 21 provision on semiautomatic centerfire rifles, there is a discussion as to the delayed implementation of the tweaking of SB 1100 to 1/1/2021. The reason is that there is pending litigation in Washington State discussed above which challenges the dealer processing of semiautomatic rifles [rim-fire and centerfire] to persons under age 21. Because of that litigation, the 18 to 21 prohibition in SB 61 does not cover rim-fire rifles. However, the District Court has indicated that he will strike that legislation down because it does not have any hunting exemption. The judge at the same time has stated that he would sustain the legislation if it had some sort of enhanced licensing procedure.

It so happens that in California we have the Certificate of Eligibility which is a fingerprint based [live scan] background check which has been in effect for many years. The COE costs in excess of $71.00 and takes at least a month to issue. That would appear to meet the Court's concern. SB 61 in effect would as amended retain the SB 1100 exemptions for retired military and licensed hunters as to semiautomatic centerfire rifles if they also have a COE.

## COMMITTEE POLICY ON AUTHOR'S AMENDMENTS

**Author's amendments must be submitted to the Committee (in Legislative Counsel Form) by Wednesday, 5:00 p.m., prior to the scheduled committee hearing date.** AMENDMENTS (ORIGINAL, SIGNED BY MEMBER, PLUS **EIGHT** COPIES IN LEGISLATIVE COUNSEL FORM) MUST BE **HAND DELIVERED** TO THE COMMITTEE AT 1020 "N" STREET, ROOM 111. **DO NOT** SEND AMENDMENTS THROUGH INTER-AGENCY MAIL.

PLEASE RETURN THIS FORM TO: ASSEMBLY COMMITTEE ON PUBLIC SAFETY
Phone: 916-319-3744
Fax: 916-319-3745
e-mail to: estefani.avila@asm.ca.gov

**Exhibit 6**
0322

**Provided by LRI History LLC**          **SB 61 (2019) Page 292 of 367**

## PROBLEM

The bulk of gun trafficking and violence has been perpetuated by handguns. For that reason, California has long had enhanced procedures in place to address that by various measures, one of which is the general limitation on a gun dealer delivering more than 1 handgun to an individual during a 30 day period. The "one gun a month" or "bulk transfer" law has numerous exemptions. Since it went into effect in 2000 the data suggests it has reduced the incidence of gun trafficking while not burdening legitimate gun owners or persons who wish to acquire guns.

Recent data suggest that long guns are becoming a significant piece of California's gun trafficking problem. Over the past ten years, Californians have typically purchased more long guns than handguns, including 538,149 guns in 2013. Of the 26,682 crime guns entered into the California Department of Justice's (DOJ) Automated Firearms Systems (AFS) database in 2009, 11,500 were long guns. Furthermore, DOJ has found that half the illegal firearms recovered from prohibited persons are long guns.

## BACKGROUND

Over the past ten years, Californians have annually purchased more long guns than handguns. The Department of Justice began to retain records of long gun purchases on January 1, 2014. An analysis of the transaction data from the period January 2014 through June 2015 shows that 81.9% of long guns were sold as a single long gun purchase within a 30-day period. The vast majority of long gun purchasers will not be impacted by SB 61. An individual purchased 177 long guns in two transactions within a one month period (April 2014). Furthermore, sales to single individuals ranging from 5 to 54 long guns per month occurred on 1,787 occasions, totaling 12,090 guns.

DOJ data shows that when multiple long guns are transferred in a sale, it is more than twice as likely that lower receivers are included. The largest bulk sale of long guns in one month to an individual (177 long guns) was composed entirely of lower receivers, which can be built into illegal assault weapons and sold on the black market.

Preventing the flow of illegal guns is important to public safety regardless of whether the firearm is a handgun or long gun, or purchased new from a dealer or through a private party transaction. Limiting firearms sales to one gun per month is a recognized strategy to reduce gun trafficking and keep firearms out of dangerous hands.

## SUMMARY

In SB 61, firearms will not be delivered whenever the dealer is notified by the Department of Justice that within the preceding 30-day period the purchaser had made another application to purchase a firearm. In addition, because of the interaction of state and federal law, receivers or frames (the gun minus the barrel) are also applicable to the 30-day purchase period.

SB 61 would also prohibit the sale of a semiautomatic centerfirerifle to either of those exempted persons who are under 21 years of age.

## EXISTING LAW

In 1999, legislation (AB 202) was enacted that limits purchases of handguns from licensed firearms dealers in California to no more than one per person per month. AB 202 provided a number of exemptions, including private party transactions. The purpose of the bill was to curb the illegal flow of handguns by taking the profit out of selling guns from bulk purchases on the black market. SB 61 applies existing law under AB 202 to all firearms, including long guns (rifles, shotguns, and lower receivers), and removes the exemption for private party transfers.

## SUPPORT

Brady California United Against Gun Violence
Bay Area Student Activists (BAStA)
California Police Chiefs
City of Los Angeles
County of Los Angeles
Giffords Law Center
Physicians for Social Responsibility, SF Chapter
The Los Angeles County Board of Supervisors
Women for: Orange County

**Version:** 6/6/2019

Office of Senator Anthony J. Portantino
SB 61 – Fact Sheet
Contact: Tara McGee – (916) 651-4025 or Tara.McGee@sen.ca.gov

Exhibit 6
0323

Provided by LRI History LLC

Date of Hearing: June 25, 2019
Chief Counsel:   Gregory Pagan

ASSEMBLY COMMITTEE ON PUBLIC SAFETY
Reginald Byron Jones-Sawyer, Sr., Chair

SB 61 (Portantino) – As Amended June 11, 2019

**SUMMARY:** Prohibits the sale of a semiautomatic centerfire rifle to any person under 21 years of age, and prohibits a person from making an application to purchase more than one long gun in any 30-day period, except as specified.  Specifically, **this bill**:

1) Prohibits a person from making an application to purchase more than one firearm of any type within any 30-day period and makes conforming changes to the existing prohibition against the purchase of more than one handgun in any 30-day period.  (Pen. Code, § 27535, subd. (a).)

2) Adds the following entities to the existing exemption to the 30-day prohibition relating to sale of handguns:

   a) The purchase of a firearm other than a handgun by a person who possesses a valid, unexpired hunting license issued by the Department of Fish and Wildlife;

   b) The acquisition of a firearm, other than a handgun, at an auction or similar event conducted by a nonprofit public benefit, or mutual benefit corporation to fund the activities of that corporation or local chapter of that corporation; and,

   c) Clarifies that for the purpose of the above exemption, the frame or receiver of a firearm is a handgun, unless the application to purchase and delivered to the recipient is equipped with, is attached to, or is currently accompanied by, a barrel of 16 inches or greater in length.

3) Provides that effective January 1, 2021 a licensed firearms dealer shall not sell, supply, deliver, or give a semiautomatic centerfire rifle to any person under 21 years of age. This provision shall not apply to any of the following persons 18 years of age or older:

   a) An active peace officer, who is authorized to carry a firearm in the course and scope of his or her employment;

   b) An active federal officer, or law enforcement agent, who is authorized to carry a firearm in the course and scope of his or her employment;

   c) A reserve peace officer, who is authorized to carry a firearm in the course and scope of his or her employment;

   d) An active member of the United States Armed Forces, the National Guard, the Air national Guard, or the active reserve components of the United States, where the

**Exhibit 6**

Provided by LRI History LLC                                                     SB 61 (2019) Page 294 of 367

Insureasing

e) Any person who is a peace officer, as specified, and is authorized to carry a firearm in the course and scope of employment;

f) Any motion picture, television, video production company or entertainment or theatrical company whose production by its nature involves a firearm;

g) Any authorized representative of a law enforcement agency, or a federally licensed firearms importer or manufacturer;

h) Any private party transaction conducted through a licensed firearms dealer;

i) Any person who is a licensed collector and has a current certificate of eligibility issued by the DOJ;

j) The exchange, replacement, or return of a handgun to a licensed dealer within the 30-day period; and,

k) A community college that is certified by the Commission on Peace Officer Standards and Training (POST) to present law enforcement academy basic course or other commission-certified training. (Pen. Code, § 27535, subd. (b).)

6) Provides that a person may request a certificate of eligibility form the DOJ, and requires the department to examine its records and records available to the department in the National Instant Criminal Background Check System (NICS) in order to determine if the applicant is prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm. (Pen. Code, § 26710, subds. (a) & (b).)

7) Requires DOJ to issue a certificate of eligibility to an applicant if the if the department's records indicate that the person is not a person who is prohibited by state or federal law from possessing a firearm, and requires the department regulations to administer the certificate of eligibility program and shall recover the full costs of administering the program by imposing fees assessed to applicants who apply for those certificates. (Pen. Code, § 26710, subds. (c) & (d).)

**FISCAL EFFECT**: Unknown

**COMMENTS**:

1) **Author's Statement:** According to the author, "More and more shootings are occurring with long guns so it is important that we treat the laws of both handguns and long guns the same. The law that passed last year requiring no one under the age of 21 to purchase a firearm has exemptions that we are strengthening and tightening when it comes to the purchase of semi-automatic center fire rifle by requiring the person to obtain a CEO with the DOJ as well."

2) **Governor's Vetoes:** AB 1174 (Santiago), of the 2015-2016 Legislative Session, and SB 1177 (Portantino), of the 2017-2018 Legislative Session, each prohibited any person from making more than one application to purchase a long gun within any 30 day period. Both AB 1174 and SB 1177 were vetoed by the Governor.

**Exhibit 6**
**0326**

In regard to AB 1174, the Governor stated in his veto message, "This bill generally prohibits the purchase of more than one firearm within any 30 day period. It should be noted that California already bans the purchase of more than one handgun per month. While well intentioned, I believe this bill would have the effect of burdening lawful citizens who wish to sell certain firearms they no longer need. Given California's restricting gun ownership, I do not believe this additional restriction is needed."

In regard to SB 1177, the Governor stated in his veto message, "This bill prohibits a person from purchasing more than one long-gun per month. I vetoed a substantially similar bill in 2016, and my views have not changed."

3) **Argument in Support:** According to the *Ventura County Board of Supervisors*, "As you know, Ventura County was the site of the November 2018 shooting at the Borderline bar, which tragically resulted in 12 deaths. This mass shooting has left our community shattered and in search of ways to prevent similar tragedies. We appreciate the Legislature's multi-pronged effort to advance legislation in 2019 that reduces the likelihood that persons who pose a threat to themselves or others are restricted from possessing firearms. As a general policy, the County of Ventura supports legislation that reduces the likelihood of accidental or intentional homicides and, in particular, mass homicides.

"We believe SB 61 would be part of the solution in reducing gun violence. It would make long guns generally subject to the same purchasing restrictions as handguns. Limitations imposed on the purchase of handguns were enacted 20 years ago (AB 202, 1999). That legislation was intended to reduce the illegal flow of handguns by eliminating the opportunity to sell guns from bulk purchases on the black market. SB 61 would apply the law enacted under AB 202 to long guns, as specified. It would, however, include several narrow exceptions."

4) **Argument in Opposition:** According to the California Rifle and Pistol Association "SB 61 would significantly reduce long gun sales in California. This translates into a loss of manufacturing jobs at both the state and national levels, and a significant loss of revenue for California businesses. Additionally, this bill will significantly impact the millions of dollars of Federal Pitman Roberson tax money that would be earmarked to develop and enhance habitat critical for California's wildlife. The Department of Justice (DOJ), has estimated previous versions of this same bill's implementation alone will cost hundreds of thousands of dollars, and result in significant overtime hours for Department personal to perform the necessary analysis, development, testing, and implementation to various Department databases.

"SB 61 will also effectively prohibit the creation of new businesses in California involving hands on instruction in the safe handling of firearms. Should this bill become law, certified firearm instructors would no longer be able acquire the necessary firearms without having to wait months, if not years, to conduct classes for groups such as the Boy Scouts of America, Hunter Education, Youth shooting sports, and other clubs or organizations that wish to participate in firearm safety classes.

"You and your proponents argued in testimony there is no legitimate reason for anyone to need to purchase more than one firearm a month. There are, in fact, numerous legitimate

**Exhibit 6**
0327

Provided by LRI History LLC

recreational and Second Amendment protected reasons why an individual might want, and need, to transfer more than one firearm a month. For example, someone new to the sport of recreational competitive shooting, 'Three Gun' competitions, may very well need to purchase a pistol, shotgun, and rifle without having to wait 30 days between each purchase. This bill would require someone wanting to acquire all three types of firearms to undergo a process that would take at least 70 days assuming everything goes smoothly. The procedure for purchasing these firearms is already very time and travel intensive. Each transaction requiring a trip to the licensed dealer.

"Currently individuals in California must go through the following steps to purchase a firearm; Obtain a firearm safety certificate; Go to a California licensed firearms dealer; Complete 4473 and (Dealer Record of Sales) DROS applications; Pass the required background check; Wait the required 10 days; Go back to dealer; Perform a safe handling demonstration; Pick up first firearm. Under SB 61 the individual would have to wait the required 30 days, then go back to dealer again; and repeat the process for each subsequent purchase."

"Both California and Federal law already address your concerns regarding the trafficking of firearms by narrowly limiting the number of firearms an individual can sell. Rather than having the desired effect of targeting criminals, this bill will impact only the law abiding, thereby further limiting available funding to DOJ."

5) **Prior Legislation:**

   a) SB 1100 (Portantino), Chapter 894, Statutes of 2018, increased the age for which a person can purchase a long-gun from a licensed dealer from 18-21 years of age, except as specified.

   b) SB 1177 (Portantino), of the 2017-2018 Legislative Session, prohibited any person from making more than one application to purchase more than one long one within any 30 day period. SB 1177 was vetoed by the Governor.

   c) AB 1674 (Santiago), of the 2015-2016 Legislative Session, prohibited any person from making more than one application to purchase more than one long gun within any 30 day period. SB 1674 was vetoed by the Governor.

**REGISTERED SUPPORT / OPPOSITION:**

**Support**

Bay Area Student Activists
Brady California United Against Gun Violence
California Police Chiefs Association
Coalition Against Gun Violence, A Santa Barbara County Coalition
Laguna Woods Democratic Club
Los Angeles City Attorney
Los Angeles County Board of Supervisors
Physicians for Social Responsibility - San Francisco Bay Area Chapter

**Exhibit 6**
**0328**
Provided by LRI History LLC
**SB 61 (2019) Page 298 of 367**

Ventura County Board of Supervisors
Women For: Orange County

**Oppose**

California Rifle and Pistol Association, Inc.
California Sportsman's Lobby, Inc.
Gun Owners of California, Inc.
National Rifle Association - Institute for Legislative Action
National Shooting Sports Foundation, Inc.
Outdoor Sportsmen's Coalition of California
Safari Club International - California Chapters

**Analysis Prepared by**: Gregory Pagan / PUB. S. / (916) 319-3744

**Exhibit 6**
**0329**
**Provided by LRI History LLC**                    **SB 61 (2019)  Page 299 of 367**

when it comes to the purchase of semi-automatic center fire rifle by requiring the person to obtain a CEO with the DOJ as well."

**Arguments in Support:**
According to the Ventura County Board of Supervisors, "As you know, Ventura County was the site of the November 2018 shooting at the Borderline bar, which tragically resulted in 12 deaths. This mass shooting has left our community shattered and in search of ways to prevent similar tragedies. We appreciate the Legislature's multi-¬-pronged effort to advance legislation in 2019 that reduces the likelihood that persons who pose a threat to themselves or others are restricted from possessing firearms. As a general policy, the County of Ventura supports legislation that reduces the likelihood of accidental or intentional homicides and, in particular, mass homicides.

"We believe SB 61 would be part of the solution in reducing gun violence. It would make long guns generally subject to the same purchasing restrictions as handguns. Limitations imposed on the purchase of handguns were enacted 20 years ago (AB 202, 1999). That legislation was intended to reduce the illegal flow of handguns by eliminating the opportunity to sell guns from bulk purchases on the black market. SB 61 would apply the law enacted under AB 202 to long guns, as specified. It would, however, include several narrow exceptions."

**Arguments in Opposition:**
According to the California Rifle and Pistol Association "SB 61 would significantly reduce long gun sales in California. This translates into a loss of manufacturing jobs at both the state and national levels, and a significant loss of revenue for California businesses. Additionally, this bill will significantly impact the millions of dollars of Federal Pitman Roberson tax money that would be earmarked to develop and enhance habitat critical for California's wildlife. The Department of Justice (DOJ), has estimated previous versions of this same bill's implementation alone will cost hundreds of thousands of dollars, and result in significant overtime hours for Department personal to perform the necessary analysis, development, testing, and implementation to various Department databases.

"SB 61 will also effectively prohibit the creation of new businesses in California involving hands on instruction in the safe handling of firearms. Should this bill become law, certified firearm instructors would no longer be able acquire the necessary firearms without having to wait months, if not years, to conduct classes for groups such as the Boy Scouts of America, Hunter Education, Youth shooting sports, and other clubs or organizations that wish to participate in firearm safety classes.

"You and your proponents argued in testimony there is no legitimate reason for anyone to need to purchase more than one firearm a month. There are, in fact, numerous legitimate recreational and Second Amendment protected reasons why an individual might want, and need, to transfer more than one firearm a month. For example, someone new to the sport of recreational competitive shooting, 'Three Gun' competitions, may very well need to purchase a pistol, shotgun, and rifle without having to wait 30 days between each purchase. This bill would require someone wanting to acquire all three types of firearms to undergo a process that would take at least 70 days assuming everything goes smoothly. The procedure for purchasing these firearms is already very time and travel intensive. Each transaction requiring a trip to the licensed dealer.

"Currently individuals in California must go through the following steps to purchase a firearm; Obtain a firearm safety certificate; Go to a California licensed firearms dealer; Complete 4473

**Exhibit 6**
**0331**

and (Dealer Record of Sales) DROS applications; Pass the required background check; Wait the required 10 days; Go back to dealer; Perform a safe handling demonstration; Pick up first firearm. Under SB 61 the individual would have to wait the required 30 days, then go back to dealer again; and repeat the process for each subsequent purchase."

"Both California and Federal law already address your concerns regarding the trafficking of firearms by narrowly limiting the number of firearms an individual can sell. Rather than having the desired effect of targeting criminals, this bill will impact only the law abiding, thereby further limiting available funding to DOJ."

## FISCAL COMMENTS:

According to the Assembly Appropriations Committee

## VOTES:

**SENATE FLOOR: 27-10-1**
**YES:** Allen, Archuleta, Atkins, Beall, Bradford, Caballero, Dodd, Durazo, Galgiani, Glazer, Hertzberg, Hill, Hueso, Hurtado, Jackson, Leyva, McGuire, Mitchell, Monning, Pan, Portantino, Rubio, Skinner, Stern, Umberg, Wieckowski, Wiener
**NO:** Bates, Borgeas, Chang, Grove, Jones, Moorlach, Morrell, Nielsen, Stone, Wilk
**ABS, ABST OR NV:** Roth

**ASM PUBLIC SAFETY: 5-2-1**
**YES:** Jones-Sawyer, Bauer-Kahan, Quirk, Santiago, Wicks
**NO:** Lackey, Mathis
**ABS, ABST OR NV:** Kamlager-Dove

## UPDATED:

VERSION: June 11, 2019

CONSULTANT: Gregory Pagan / PUB. S. / (916) 319-3744                FN:

Revised – As Amended RN1919400

SENATE THIRD READING
SB 61 (Portantino)
As Amended September 3, 2019
Majority vote

## SUMMARY:

Prohibits the sale of a semiautomatic centerfire rifle to any person under 21 years of age, and prohibits a person from making an application to purchase more than one semiautomatic centerfire rifle in any 30-day period, except as specified.

**Major Provisions**
1) Prohibits a person from making an application to purchase more than one centerfire automatic rifle within any 30-day period and makes conforming changes to the existing prohibition against the purchase of more than one handgun in any 30-day period.

2) Adds the following entities to the existing exemption to the 30-day prohibition relating to sale of handguns:

a) The purchase of a firearm other than a handgun by a person who possesses a valid, unexpired hunting license issued by the Department of Fish and Wildlife;

b) The acquisition of a firearm, other than a handgun, at an auction or similar event conducted by a nonprofit public benefit, or mutual benefit corporation to fund the activities of that corporation or local chapter of that corporation; and,

c) Clarifies that for the purpose of the above exemption, the frame or receiver of a firearm is a handgun, unless the application to purchase and delivered to the recipient is equipped with, is attached to, or is currently accompanied by, a barrel of 16 inches or greater in length.

3) Provides that a licensed firearms dealer shall not sell, supply, deliver, or give possession of a firearm to any person under 21 years of age. This provision shall not apply to or affect the sale of a firearm that is not a handgun or a semiautomatic centerfire rifle to a person 18 years of age or older that possesses a valid unexpired hunting license issued by the Department of Fish and Wildlife, or is an honorably discharged member of the United States military.

4) States that the provisions of this bill are severable.

## COMMENTS:

**According to the Author:**
"More and more shootings are occurring with long guns so it is important that we treat the laws of both handguns and long guns the same. The law that passed last year requiring no one under the age of 21 to purchase a firearm has exemptions that we are strengthening and tightening when it comes to the purchase of semi-automatic center fire rifle by requiring the person to obtain a CEO with the DOJ as well."

**Exhibit 6**
**0333**

**Arguments in Support:**

According to the Ventura County Board of Supervisors, "As you know, Ventura County was the site of the November 2018 shooting at the Borderline bar, which tragically resulted in 12 deaths. This mass shooting has left our community shattered and in search of ways to prevent similar tragedies. We appreciate the Legislature's multi-¬-pronged effort to advance legislation in 2019 that reduces the likelihood that persons who pose a threat to themselves or others are restricted from possessing firearms. As a general policy, the County of Ventura supports legislation that reduces the likelihood of accidental or intentional homicides and, in particular, mass homicides.

"We believe SB 61 would be part of the solution in reducing gun violence. It would make long guns generally subject to the same purchasing restrictions as handguns. Limitations imposed on the purchase of handguns were enacted 20 years ago (AB 202, 1999). That legislation was intended to reduce the illegal flow of handguns by eliminating the opportunity to sell guns from bulk purchases on the black market. SB 61 would apply the law enacted under AB 202 to long guns, as specified. It would, however, include several narrow exceptions."

**Arguments in Opposition:**

According to the California Rifle and Pistol Association "SB 61 would significantly reduce long gun sales in California. This translates into a loss of manufacturing jobs at both the state and national levels, and a significant loss of revenue for California businesses. Additionally, this bill will significantly impact the millions of dollars of Federal Pitman Roberson tax money that would be earmarked to develop and enhance habitat critical for California's wildlife. The Department of Justice (DOJ), has estimated previous versions of this same bill's implementation alone will cost hundreds of thousands of dollars, and result in significant overtime hours for Department personal to perform the necessary analysis, development, testing, and implementation to various Department databases.

"SB 61 will also effectively prohibit the creation of new businesses in California involving hands on instruction in the safe handling of firearms. Should this bill become law, certified firearm instructors would no longer be able acquire the necessary firearms without having to wait months, if not years, to conduct classes for groups such as the Boy Scouts of America, Hunter Education, Youth shooting sports, and other clubs or organizations that wish to participate in firearm safety classes.

"You and your proponents argued in testimony there is no legitimate reason for anyone to need to purchase more than one firearm a month. There are, in fact, numerous legitimate recreational and Second Amendment protected reasons why an individual might want, and need, to transfer more than one firearm a month. For example, someone new to the sport of recreational competitive shooting, 'Three Gun' competitions, may very well need to purchase a pistol, shotgun, and rifle without having to wait 30 days between each purchase. This bill would require someone wanting to acquire all three types of firearms to undergo a process that would take at least 70 days assuming everything goes smoothly. The procedure for purchasing these firearms is already very time and travel intensive. Each transaction requiring a trip to the licensed dealer.

"Currently individuals in California must go through the following steps to purchase a firearm; Obtain a firearm safety certificate; Go to a California licensed firearms dealer; Complete 4473 and (Dealer Record of Sales) DROS applications; Pass the required background check; Wait the required 10 days; Go back to dealer; Perform a safe handling demonstration; Pick up first

**Exhibit 6**
**0334**

**Provided by LRI History LLC**

firearm. Under SB 61 the individual would have to wait the required 30 days, then go back to dealer again; and repeat the process for each subsequent purchase."

"Both California and Federal law already address your concerns regarding the trafficking of firearms by narrowly limiting the number of firearms an individual can sell. Rather than having the desired effect of targeting criminals, this bill will impact only the law abiding, thereby further limiting available funding to DOJ."

## FISCAL COMMENTS:

According to the Assembly Appropriations Committee:

1) DOJ estimates an overall annual revenue reduction of 10% in fee collection (Firearms Safety and Enforcement Fund/Dealer Record of Sale Special Account) resulting from fewer firearm purchases, equating to an overall loss of $2.23 million dollars annually.

2) Sales tax revenue loss (GF) likely in the hundreds of thousands of dollars annually due to the limitation on the number of centerfire semiautomatic rifles that may be purchased in a 30-day period.

3) One-time costs (GF/Dealer Record of Sale Account) of less than $100,000 to the DOJ for limited term information technology staff and equipment to update systems to track centerfire semiautomatic rifles to ensure only one purchase within a 30-day period.

## VOTES:

**SENATE FLOOR: 27-10-1**
**YES:** Allen, Archuleta, Atkins, Beall, Bradford, Caballero, Dodd, Durazo, Galgiani, Glazer, Hertzberg, Hill, Hueso, Hurtado, Jackson, Leyva, McGuire, Mitchell, Monning, Pan, Portantino, Rubio, Skinner, Stern, Umberg, Wieckowski, Wiener
**NO:** Bates, Borgeas, Chang, Grove, Jones, Moorlach, Morrell, Nielsen, Stone, Wilk
**ABS, ABST OR NV:** Roth

**ASM PUBLIC SAFETY: 5-2-1**
**YES:** Jones-Sawyer, Bauer-Kahan, Quirk, Santiago, Wicks
**NO:** Lackey, Mathis
**ABS, ABST OR NV:** Kamlager-Dove

**ASM APPROPRIATIONS: 13-5-0**
**YES:** Gonzalez, Bloom, Bonta, Calderon, Carrillo, Chau, Eggman, Gabriel, Eduardo Garcia, Maienschein, Petrie-Norris, Quirk, Robert Rivas
**NO:** Bigelow, Brough, Diep, Fong, Obernolte

## UPDATED:

VERSION: September 3, 2019

CONSULTANT: Gregory Pagan (Counsel) / PUB. S. / (916) 319-3744          FN:

**Exhibit 6**
0335

**Provided by LRI History LLC**

PROPOSED AMENDMENTS TO SB 61
Legislative Counsel No. **1919400**
Set # 1 (Portantino)

**The proposed amendments** double joint this bill with SB 172 (Portantino), and AB 645 (Irwin) to avoid chaptering issues.

CONSULTANT:  Gregory Pagan / PUB. S. / (916) 319-3744                          FN:

**Exhibit 6**
**0336**

**Provided by LRI History LLC**                          **SB 61 (2019)  Page 306 of 367**

This page was left intentionally blank.

Exhibit 6
0337

Provided by LRI History LLC

AMENDMENTS TO SENATE BILL NO. 61
AS AMENDED IN ASSEMBLY SEPTEMBER 3, 2019

Amendment 1
On page 4, between lines 36 and 37, insert:

SEC. 1.1.  Section 26835 of the Penal Code is amended to read:
26835.  (a) A licensee shall ~~post~~ conspicuously post within the licensed premises the following warnings in block letters not less than one inch in height:
(1) "FIREARMS MUST BE HANDLED RESPONSIBLY AND SECURELY STORED TO PREVENT ACCESS BY CHILDREN AND OTHER UNAUTHORIZED USERS. CALIFORNIA HAS STRICT LAWS PERTAINING TO FIREARMS, AND YOU MAY BE FINED OR IMPRISONED IF YOU FAIL TO COMPLY WITH THEM. VISIT THE ~~WEB SITE~~ WEBSITE OF THE CALIFORNIA ATTORNEY GENERAL AT HTTPS://OAG.CA.GOV/FIREARMS FOR INFORMATION ON FIREARM LAWS APPLICABLE TO YOU AND HOW YOU CAN COMPLY."
(2) "IF YOU KEEP A ~~LOADED~~ FIREARM WITHIN ANY PREMISES UNDER YOUR CUSTODY OR CONTROL, AND A PERSON UNDER 18 YEARS OF AGE OBTAINS IT AND USES IT, RESULTING IN INJURY OR DEATH, OR CARRIES IT TO A PUBLIC PLACE, YOU MAY BE GUILTY OF A MISDEMEANOR OR A FELONY UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER OR LOCKED THE FIREARM WITH A LOCKING DEVICE, TO KEEP IT FROM TEMPORARILY FUNCTIONING."
(3) "CHILDREN MAY BE UNABLE TO DISTINGUISH FIREARMS FROM TOYS AND MAY OPERATE FIREARMS, CAUSING SEVERE INJURIES OR DEATH. IF YOU KEEP A ~~PISTOL, REVOLVER, OR OTHER~~ FIREARM ~~CAPABLE OF BEING CONCEALED UPON THE PERSON,~~ WITHIN ANY PREMISES UNDER YOUR CUSTODY OR CONTROL, AND A PERSON UNDER 18 YEARS OF AGE GAINS ACCESS TO THE FIREARM, AND CARRIES IT OFF-PREMISES, YOU MAY BE GUILTY OF A MISDEMEANOR, UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER, OR LOCKED THE FIREARM WITH A LOCKING DEVICE, TO KEEP IT FROM TEMPORARILY FUNCTIONING."
(4) "YOU MAY BE GUILTY OF A MISDEMEANOR, INCLUDING A SIGNIFICANT FINE OR IMPRISONMENT, IF YOU KEEP A FIREARM WHERE A MINOR IS LIKELY TO ACCESS IT OR IF A MINOR OBTAINS AND IMPROPERLY USES IT, OR CARRIES IT OFF OF THE PREMISES TO A SCHOOL OR SCHOOL-SPONSORED EVENT, UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER OR LOCKED THE FIREARM WITH A LOCKING DEVICE."
(5) "IF YOU NEGLIGENTLY STORE OR LEAVE A ~~LOADED~~ FIREARM WITHIN ANY PREMISES UNDER YOUR CUSTODY OR CONTROL, WHERE A PERSON UNDER 18 YEARS OF AGE IS LIKELY TO ACCESS IT, YOU MAY BE GUILTY OF A MISDEMEANOR, INCLUDING A SIGNIFICANT FINE, UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER, OR LOCKED THE FIREARM WITH A LOCKING DEVICE."



**Exhibit 6**
0338
Provided by LRI History LLC                    SB 61 (2019) Page 308 of 367

(6) "DISCHARGING FIREARMS IN POORLY VENTILATED AREAS, CLEANING FIREARMS, OR HANDLING AMMUNITION MAY RESULT IN EXPOSURE TO LEAD, A SUBSTANCE KNOWN TO CAUSE BIRTH DEFECTS, REPRODUCTIVE HARM, AND OTHER SERIOUS PHYSICAL INJURY. HAVE ADEQUATE VENTILATION AT ALL TIMES. WASH HANDS THOROUGHLY AFTER EXPOSURE."

(7) "FEDERAL REGULATIONS PROVIDE THAT IF YOU DO NOT TAKE PHYSICAL POSSESSION OF THE FIREARM THAT YOU ARE ACQUIRING OWNERSHIP OF WITHIN 30 DAYS AFTER YOU COMPLETE THE INITIAL BACKGROUND CHECK PAPERWORK, THEN YOU HAVE TO GO THROUGH THE BACKGROUND CHECK PROCESS A SECOND TIME IN ORDER TO TAKE PHYSICAL POSSESSION OF THAT FIREARM."

(8) "NO PERSON SHALL MAKE AN APPLICATION TO PURCHASE MORE THAN ONE PISTOL, REVOLVER, OR OTHER FIREARM CAPABLE OF BEING CONCEALED UPON THE PERSON WITHIN ANY 30-DAY PERIOD AND NO DELIVERY SHALL BE MADE TO ANY PERSON WHO HAS MADE AN APPLICATION TO PURCHASE MORE THAN ONE PISTOL, REVOLVER, OR OTHER FIREARM CAPABLE OF BEING CONCEALED UPON THE PERSON WITHIN ANY 30-DAY PERIOD."

(9) "IF A FIREARM YOU OWN OR POSSESS IS LOST OR STOLEN, YOU MUST REPORT THE LOSS OR THEFT TO A LOCAL LAW ENFORCEMENT AGENCY WHERE THE LOSS OR THEFT OCCURRED WITHIN FIVE DAYS OF THE TIME YOU KNEW OR REASONABLY SHOULD HAVE KNOWN THAT THE FIREARM HAD BEEN LOST OR STOLEN."

(b) This section shall ~~become operative on January 1, 2019.~~ remain in effect only until July 1, 2021, and as of that date is repealed.

SEC. 1.2. Section 26835 of the Penal Code is amended to read:

26835. (a) A licensee shall post conspicuously within the licensed premises the following warnings in block letters not less than one inch in height:

(1) "FIREARMS MUST BE HANDLED RESPONSIBLY AND SECURELY STORED TO PREVENT ACCESS BY CHILDREN AND OTHER UNAUTHORIZED USERS. CALIFORNIA HAS STRICT LAWS PERTAINING TO FIREARMS, AND YOU MAY BE FINED OR IMPRISONED IF YOU FAIL TO COMPLY WITH THEM. VISIT THE WEB SITE OF THE CALIFORNIA ATTORNEY GENERAL AT HTTPS://OAG.CA.GOV/FIREARMS FOR INFORMATION ON FIREARM LAWS APPLICABLE TO YOU AND HOW YOU CAN COMPLY."

(2) "IF YOU KEEP A LOADED FIREARM WITHIN ANY PREMISES UNDER YOUR CUSTODY OR CONTROL, AND A PERSON UNDER 18 YEARS OF AGE OBTAINS IT AND USES IT, RESULTING IN INJURY OR DEATH, OR CARRIES IT TO A PUBLIC PLACE, YOU MAY BE GUILTY OF A MISDEMEANOR OR A FELONY UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER OR LOCKED THE FIREARM WITH A LOCKING DEVICE, TO KEEP IT FROM TEMPORARILY FUNCTIONING."

(3) "CHILDREN MAY BE UNABLE TO DISTINGUISH FIREARMS FROM TOYS AND MAY OPERATE FIREARMS, CAUSING SEVERE INJURIES OR DEATH. IF YOU KEEP A PISTOL, REVOLVER, OR OTHER FIREARM CAPABLE OF BEING CONCEALED UPON THE PERSON, WITHIN ANY PREMISES UNDER

**Exhibit 6**
**0339**

**Provided by LRI History LLC**

YOUR CUSTODY OR CONTROL, AND A PERSON UNDER 18 YEARS OF AGE
GAINS ACCESS TO THE FIREARM, AND CARRIES IT OFF-PREMISES, YOU
MAY BE GUILTY OF A MISDEMEANOR, UNLESS YOU STORED THE FIREARM
IN A LOCKED CONTAINER, OR LOCKED THE FIREARM WITH A LOCKING
DEVICE, TO KEEP IT FROM TEMPORARILY FUNCTIONING."

(4) "YOU MAY BE GUILTY OF A MISDEMEANOR, INCLUDING A
SIGNIFICANT FINE OR IMPRISONMENT, IF YOU KEEP A FIREARM WHERE
A MINOR IS LIKELY TO ACCESS IT OR IF A MINOR OBTAINS AND
IMPROPERLY USES IT, OR CARRIES IT OFF OF THE PREMISES TO A SCHOOL
OR SCHOOL-SPONSORED EVENT, UNLESS YOU STORED THE FIREARM IN
A LOCKED CONTAINER OR LOCKED THE FIREARM WITH A LOCKING
DEVICE."

(5) "IF YOU NEGLIGENTLY STORE OR LEAVE A LOADED FIREARM
WITHIN ANY PREMISES UNDER YOUR CUSTODY OR CONTROL, WHERE
A PERSON UNDER 18 YEARS OF AGE IS LIKELY TO ACCESS IT, YOU MAY
BE GUILTY OF A MISDEMEANOR, INCLUDING A SIGNIFICANT FINE, UNLESS
YOU STORED THE FIREARM IN A LOCKED CONTAINER, OR LOCKED THE
FIREARM WITH A LOCKING DEVICE."

(6) "DISCHARGING FIREARMS IN POORLY VENTILATED AREAS,
CLEANING FIREARMS, OR HANDLING AMMUNITION MAY RESULT IN
EXPOSURE TO LEAD, A SUBSTANCE KNOWN TO CAUSE BIRTH DEFECTS,
REPRODUCTIVE HARM, AND OTHER SERIOUS PHYSICAL INJURY. HAVE
ADEQUATE VENTILATION AT ALL TIMES. WASH HANDS THOROUGHLY
AFTER EXPOSURE."

(7) "FEDERAL REGULATIONS PROVIDE THAT IF YOU DO NOT TAKE
PHYSICAL POSSESSION OF THE FIREARM THAT YOU ARE ACQUIRING
OWNERSHIP OF WITHIN 30 DAYS AFTER YOU COMPLETE THE INITIAL
BACKGROUND CHECK PAPERWORK, THEN YOU HAVE TO GO THROUGH
THE BACKGROUND CHECK PROCESS A SECOND TIME IN ORDER TO TAKE
PHYSICAL POSSESSION OF THAT FIREARM."

(8) "NO PERSON SHALL MAKE AN APPLICATION TO PURCHASE MORE
THAN ONE PISTOL, REVOLVER, OR OTHER FIREARM CAPABLE OF BEING
CONCEALED UPON THE PERSON WITHIN ANY 30-DAY PERIOD AND NO
DELIVERY SHALL BE MADE TO ANY PERSON WHO HAS MADE AN
APPLICATION TO PURCHASE MORE THAN ONE PISTOL, REVOLVER, OR
OTHER FIREARM CAPABLE OF BEING CONCEALED UPON THE PERSON
WITHIN ANY 30-DAY PERIOD."

(9) "IF A FIREARM YOU OWN OR POSSESS IS LOST OR STOLEN, YOU
MUST REPORT THE LOSS OR THEFT TO A LOCAL LAW ENFORCEMENT
AGENCY WHERE THE LOSS OR THEFT OCCURRED WITHIN FIVE DAYS OF
THE TIME YOU KNEW OR REASONABLY SHOULD HAVE KNOWN THAT
THE FIREARM HAD BEEN LOST OR STOLEN."

(b) This section shall become operative on January 1, 2019. remain in effect
only until June 1, 2020, and as of that date is repealed.

SEC. 1.3.  Section 26835 of the Penal Code is amended to read:

26835.  (a) A licensee shall post conspicuously post within the licensed premises
the following warnings in block letters not less than one inch in height:

Exhibit 6
0340
Provided by LRI History LLC                    SB 61 (2019)  Page 310 of 367

(1) "FIREARMS MUST BE HANDLED RESPONSIBLY AND SECURELY STORED TO PREVENT ACCESS BY CHILDREN AND OTHER UNAUTHORIZED USERS. CALIFORNIA HAS STRICT LAWS PERTAINING TO FIREARMS, AND YOU MAY BE FINED OR IMPRISONED IF YOU FAIL TO COMPLY WITH THEM. VISIT THE ~~WEB SITE~~ WEBSITE OF THE CALIFORNIA ATTORNEY GENERAL AT HTTPS://OAG.CA.GOV/FIREARMS FOR INFORMATION ON FIREARM LAWS APPLICABLE TO YOU AND HOW YOU CAN COMPLY."

(2) "IF YOU KEEP A ~~LOADED~~ FIREARM WITHIN ANY PREMISES UNDER YOUR CUSTODY OR CONTROL, AND A PERSON UNDER 18 YEARS OF AGE OBTAINS IT AND USES IT, RESULTING IN INJURY OR DEATH, OR CARRIES IT TO A PUBLIC PLACE, YOU MAY BE GUILTY OF A MISDEMEANOR OR A FELONY UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER OR LOCKED THE FIREARM WITH A LOCKING DEVICE, TO KEEP IT FROM TEMPORARILY FUNCTIONING."

(3) "CHILDREN MAY BE UNABLE TO DISTINGUISH FIREARMS FROM TOYS AND MAY OPERATE FIREARMS, CAUSING SEVERE INJURIES OR DEATH. IF YOU KEEP A ~~PISTOL, REVOLVER, OR OTHER~~ FIREARM ~~CAPABLE OF BEING CONCEALED UPON THE PERSON,~~ WITHIN ANY PREMISES UNDER YOUR CUSTODY OR CONTROL, AND A PERSON UNDER 18 YEARS OF AGE GAINS ACCESS TO THE FIREARM, AND CARRIES IT OFF-PREMISES, YOU MAY BE GUILTY OF A MISDEMEANOR, UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER, OR LOCKED THE FIREARM WITH A LOCKING DEVICE, TO KEEP IT FROM TEMPORARILY FUNCTIONING."

(4) "YOU MAY BE GUILTY OF A MISDEMEANOR, INCLUDING A SIGNIFICANT FINE OR IMPRISONMENT, IF YOU KEEP A FIREARM WHERE A MINOR IS LIKELY TO ACCESS IT OR IF A MINOR OBTAINS AND IMPROPERLY USES IT, OR CARRIES IT OFF OF THE PREMISES TO A SCHOOL OR SCHOOL-SPONSORED EVENT, UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER OR LOCKED THE FIREARM WITH A LOCKING DEVICE."

(5) "IF YOU NEGLIGENTLY STORE OR LEAVE A ~~LOADED~~ FIREARM WITHIN ANY PREMISES UNDER YOUR CUSTODY OR CONTROL, WHERE A PERSON UNDER 18 YEARS OF AGE IS LIKELY TO ACCESS IT, YOU MAY BE GUILTY OF A MISDEMEANOR, INCLUDING A SIGNIFICANT FINE, UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER, OR LOCKED THE FIREARM WITH A LOCKING DEVICE."

(6) "DISCHARGING FIREARMS IN POORLY VENTILATED AREAS, CLEANING FIREARMS, OR HANDLING AMMUNITION MAY RESULT IN EXPOSURE TO LEAD, A SUBSTANCE KNOWN TO CAUSE BIRTH DEFECTS, REPRODUCTIVE HARM, AND OTHER SERIOUS PHYSICAL INJURY. HAVE ADEQUATE VENTILATION AT ALL TIMES. WASH HANDS THOROUGHLY AFTER EXPOSURE."

(7) "FEDERAL REGULATIONS PROVIDE THAT IF YOU DO NOT TAKE PHYSICAL POSSESSION OF THE FIREARM THAT YOU ARE ACQUIRING OWNERSHIP OF WITHIN 30 DAYS AFTER YOU COMPLETE THE INITIAL BACKGROUND CHECK PAPERWORK, THEN YOU HAVE TO GO THROUGH

**Exhibit 6**
**0341**

**Provided by LRI History LLC**                                    **SB 61 (2019) Page 311 of 367**

THE BACKGROUND CHECK PROCESS A SECOND TIME IN ORDER TO TAKE PHYSICAL POSSESSION OF THAT FIREARM."

(8) "NO PERSON SHALL MAKE AN APPLICATION TO PURCHASE MORE THAN ONE PISTOL, REVOLVER, OR OTHER FIREARM CAPABLE OF BEING CONCEALED UPON THE PERSON WITHIN ANY 30-DAY PERIOD AND NO DELIVERY SHALL BE MADE TO ANY PERSON WHO HAS MADE AN APPLICATION TO PURCHASE MORE THAN ONE PISTOL, REVOLVER, OR OTHER FIREARM CAPABLE OF BEING CONCEALED UPON THE PERSON WITHIN ANY 30-DAY PERIOD."

(9) "IF A FIREARM YOU OWN OR POSSESS IS LOST OR STOLEN, YOU MUST REPORT THE LOSS OR THEFT TO A LOCAL LAW ENFORCEMENT AGENCY WHERE THE LOSS OR THEFT OCCURRED WITHIN FIVE DAYS OF THE TIME YOU KNEW OR REASONABLY SHOULD HAVE KNOWN THAT THE FIREARM HAD BEEN LOST OR STOLEN."

(b) This section shall become operative on January 1, 2019.remain in effect only until June 1, 2020, and as of that date is repealed.


Amendment 2
On page 6, between lines 38 and 39, insert:

SEC. 2.1.  Section 26835 is added to the Penal Code, to read:

26835.  (a) A licensee shall conspicuously post within the licensed premises the following warnings in block letters not less than one inch in height:

(1) "FIREARMS MUST BE HANDLED RESPONSIBLY AND SECURELY STORED TO PREVENT ACCESS BY CHILDREN AND OTHER UNAUTHORIZED USERS. CALIFORNIA HAS STRICT LAWS PERTAINING TO FIREARMS, AND YOU MAY BE FINED OR IMPRISONED IF YOU FAIL TO COMPLY WITH THEM. VISIT THE INTERNET WEBSITE OF THE CALIFORNIA ATTORNEY GENERAL AT HTTPS://OAG.CA.GOV/FIREARMS FOR INFORMATION ON FIREARM LAWS APPLICABLE TO YOU AND HOW YOU CAN COMPLY."

(2) "IF YOU KEEP A FIREARM WITHIN ANY PREMISES UNDER YOUR CUSTODY OR CONTROL, AND A PERSON UNDER 18 YEARS OF AGE OBTAINS IT AND USES IT, RESULTING IN INJURY OR DEATH, OR CARRIES IT TO A PUBLIC PLACE, YOU MAY BE GUILTY OF A MISDEMEANOR OR A FELONY UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER OR LOCKED THE FIREARM WITH A LOCKING DEVICE, TO KEEP IT FROM TEMPORARILY FUNCTIONING."

(3) "CHILDREN MAY BE UNABLE TO DISTINGUISH FIREARMS FROM TOYS AND MAY OPERATE FIREARMS, CAUSING SEVERE INJURIES OR DEATH. IF YOU KEEP A FIREARM WITHIN ANY PREMISES UNDER YOUR CUSTODY OR CONTROL, AND A PERSON UNDER 18 YEARS OF AGE GAINS ACCESS TO THE FIREARM, AND CARRIES IT OFF-PREMISES, YOU MAY BE GUILTY OF A MISDEMEANOR, UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER, OR LOCKED THE FIREARM WITH A LOCKING DEVICE, TO KEEP IT FROM TEMPORARILY FUNCTIONING."

**Exhibit 6**
**0342**
**Provided by LRI History LLC**

(4) "YOU MAY BE GUILTY OF A MISDEMEANOR, INCLUDING A SIGNIFICANT FINE OR IMPRISONMENT, IF YOU KEEP A FIREARM WHERE A MINOR IS LIKELY TO ACCESS IT OR IF A MINOR OBTAINS AND IMPROPERLY USES IT, OR CARRIES IT OFF OF THE PREMISES TO A SCHOOL OR SCHOOL-SPONSORED EVENT, UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER OR LOCKED THE FIREARM WITH A LOCKING DEVICE."

(5) "IF YOU NEGLIGENTLY STORE OR LEAVE A FIREARM WITHIN ANY PREMISES UNDER YOUR CUSTODY OR CONTROL, WHERE A PERSON UNDER 18 YEARS OF AGE IS LIKELY TO ACCESS IT, YOU MAY BE GUILTY OF A MISDEMEANOR, INCLUDING A SIGNIFICANT FINE, UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER, OR LOCKED THE FIREARM WITH A LOCKING DEVICE."

(6) "DISCHARGING FIREARMS IN POORLY VENTILATED AREAS, CLEANING FIREARMS, OR HANDLING AMMUNITION MAY RESULT IN EXPOSURE TO LEAD, A SUBSTANCE KNOWN TO CAUSE BIRTH DEFECTS, REPRODUCTIVE HARM, AND OTHER SERIOUS PHYSICAL INJURY. HAVE ADEQUATE VENTILATION AT ALL TIMES. WASH HANDS THOROUGHLY AFTER EXPOSURE."

(7) "FEDERAL REGULATIONS PROVIDE THAT IF YOU DO NOT TAKE PHYSICAL POSSESSION OF THE FIREARM THAT YOU ARE ACQUIRING OWNERSHIP OF WITHIN 30 DAYS AFTER YOU COMPLETE THE INITIAL BACKGROUND CHECK PAPERWORK, THEN YOU HAVE TO GO THROUGH THE BACKGROUND CHECK PROCESS A SECOND TIME IN ORDER TO TAKE PHYSICAL POSSESSION OF THAT FIREARM."

(8) "NO PERSON SHALL MAKE AN APPLICATION TO PURCHASE MORE THAN ONE HANDGUN OR SEMIAUTOMATIC CENTERFIRE RIFLE WITHIN ANY 30-DAY PERIOD AND NO DELIVERY SHALL BE MADE TO ANY PERSON WHO HAS MADE AN APPLICATION TO PURCHASE MORE THAN ONE HANDGUN OR SEMIAUTOMATIC CENTERFIRE RIFLE WITHIN ANY 30-DAY PERIOD."

(9) "IF A FIREARM YOU OWN OR POSSESS IS LOST OR STOLEN, YOU MUST REPORT THE LOSS OR THEFT TO A LOCAL LAW ENFORCEMENT AGENCY WHERE THE LOSS OR THEFT OCCURRED WITHIN FIVE DAYS OF THE TIME YOU KNEW OR REASONABLY SHOULD HAVE KNOWN THAT THE FIREARM HAD BEEN LOST OR STOLEN."

(b) This section shall become operative on July 1, 2021.

SEC. 2.2.  Section 26835 is added to the Penal Code, to read:

26835.  (a) A licensee shall conspicuously post within the licensed premises the following warnings in block letters not less than one inch in height:

(1) "FIREARMS MUST BE HANDLED RESPONSIBLY AND SECURELY STORED TO PREVENT ACCESS BY CHILDREN AND OTHER UNAUTHORIZED USERS. CALIFORNIA HAS STRICT LAWS PERTAINING TO FIREARMS, AND YOU MAY BE FINED OR IMPRISONED IF YOU FAIL TO COMPLY WITH THEM. VISIT THE INTERNET WEBSITE OF THE CALIFORNIA ATTORNEY GENERAL AT HTTPS://OAG.CA.GOV/FIREARMS FOR INFORMATION ON FIREARM LAWS APPLICABLE TO YOU AND HOW YOU CAN COMPLY."

**Exhibit 6**
0343

Provided by LRI History LLC    **SB 61 (2019) Page 313 of 367**

(2) "IF YOU KEEP A LOADED FIREARM WITHIN ANY PREMISES UNDER YOUR CUSTODY OR CONTROL, AND A PERSON UNDER 18 YEARS OF AGE OBTAINS IT AND USES IT, RESULTING IN INJURY OR DEATH, OR CARRIES IT TO A PUBLIC PLACE, YOU MAY BE GUILTY OF A MISDEMEANOR OR A FELONY UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER OR LOCKED THE FIREARM WITH A LOCKING DEVICE TO KEEP IT FROM TEMPORARILY FUNCTIONING."

(3) "CHILDREN MAY BE UNABLE TO DISTINGUISH FIREARMS FROM TOYS AND MAY OPERATE FIREARMS, CAUSING SEVERE INJURIES OR DEATH. IF YOU KEEP A PISTOL, REVOLVER, OR OTHER FIREARM CAPABLE OF BEING CONCEALED UPON THE PERSON, WITHIN ANY PREMISES UNDER YOUR CUSTODY OR CONTROL, AND A PERSON UNDER 18 YEARS OF AGE GAINS ACCESS TO THE FIREARM AND CARRIES IT OFF-PREMISES, YOU MAY BE GUILTY OF A MISDEMEANOR, UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER, OR LOCKED THE FIREARM WITH A LOCKING DEVICE TO KEEP IT FROM TEMPORARILY FUNCTIONING."

(4) "YOU MAY BE GUILTY OF A MISDEMEANOR, INCLUDING A SIGNIFICANT FINE OR IMPRISONMENT, IF YOU KEEP A FIREARM WHERE A MINOR IS LIKELY TO ACCESS IT OR IF A MINOR OBTAINS AND IMPROPERLY USES IT, OR CARRIES IT OFF OF THE PREMISES TO A SCHOOL OR SCHOOL-SPONSORED EVENT, UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER OR LOCKED THE FIREARM WITH A LOCKING DEVICE."

(5) "IF YOU NEGLIGENTLY STORE OR LEAVE A LOADED FIREARM WITHIN ANY PREMISES UNDER YOUR CUSTODY OR CONTROL WHERE A PERSON UNDER 18 YEARS OF AGE IS LIKELY TO ACCESS IT, YOU MAY BE GUILTY OF A MISDEMEANOR, INCLUDING A SIGNIFICANT FINE, UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER OR LOCKED THE FIREARM WITH A LOCKING DEVICE."

(6) "DISCHARGING FIREARMS IN POORLY VENTILATED AREAS, CLEANING FIREARMS, OR HANDLING AMMUNITION MAY RESULT IN EXPOSURE TO LEAD, A SUBSTANCE KNOWN TO CAUSE BIRTH DEFECTS, REPRODUCTIVE HARM, AND OTHER SERIOUS PHYSICAL INJURY. HAVE ADEQUATE VENTILATION AT ALL TIMES. WASH HANDS THOROUGHLY AFTER EXPOSURE."

(7) "FEDERAL REGULATIONS PROVIDE THAT IF YOU DO NOT TAKE PHYSICAL POSSESSION OF THE FIREARM THAT YOU ARE ACQUIRING OWNERSHIP OF WITHIN 30 DAYS AFTER YOU COMPLETE THE INITIAL BACKGROUND CHECK PAPERWORK, THEN YOU HAVE TO GO THROUGH THE BACKGROUND CHECK PROCESS A SECOND TIME IN ORDER TO TAKE PHYSICAL POSSESSION OF THAT FIREARM."

(8) "NO PERSON SHALL MAKE AN APPLICATION TO PURCHASE MORE THAN ONE PISTOL, REVOLVER, OR OTHER FIREARM CAPABLE OF BEING CONCEALED UPON THE PERSON WITHIN ANY 30-DAY PERIOD AND NO DELIVERY SHALL BE MADE TO ANY PERSON WHO HAS MADE AN APPLICATION TO PURCHASE MORE THAN ONE PISTOL, REVOLVER, OR

**Exhibit 6**
0344

**Provided by LRI History LLC**         **SB 61 (2019) Page 314 of 367**

OTHER FIREARM CAPABLE OF BEING CONCEALED UPON THE PERSON WITHIN ANY 30-DAY PERIOD."

(9) "IF A FIREARM YOU OWN OR POSSESS IS LOST OR STOLEN, YOU MUST REPORT THE LOSS OR THEFT TO A LOCAL LAW ENFORCEMENT AGENCY WHERE THE LOSS OR THEFT OCCURRED WITHIN FIVE DAYS OF THE TIME YOU KNEW OR REASONABLY SHOULD HAVE KNOWN THAT THE FIREARM HAD BEEN LOST OR STOLEN."

(b) In addition to the notice required by subdivision (a), a licensee shall post conspicuously within the licensed premises, in block letters not less than one inch in height, an additional notice, including, but not limited to, a notice provided by a suicide prevention program, containing the following statement:

"IF YOU OR SOMEONE YOU KNOW IS CONTEMPLATING SUICIDE, PLEASE CALL THE NATIONAL SUICIDE PREVENTION LIFELINE AT 1-800-273-TALK (8255)."

(c) This section shall become operative on June 1, 2020.

(d) This section shall remain in effect only until July 1, 2021, and as of that date is repealed.

SEC. 2.3.  Section 26835 is added to the Penal Code, to read:

26835.  (a) A licensee shall conspicuously post within the licensed premises the following warnings in block letters not less than one inch in height:

(1) "FIREARMS MUST BE HANDLED RESPONSIBLY AND SECURELY STORED TO PREVENT ACCESS BY CHILDREN AND OTHER UNAUTHORIZED USERS. CALIFORNIA HAS STRICT LAWS PERTAINING TO FIREARMS, AND YOU MAY BE FINED OR IMPRISONED IF YOU FAIL TO COMPLY WITH THEM. VISIT THE INTERNET WEBSITE OF THE CALIFORNIA ATTORNEY GENERAL AT HTTPS://OAG.CA.GOV/FIREARMS FOR INFORMATION ON FIREARM LAWS APPLICABLE TO YOU AND HOW YOU CAN COMPLY."

(2) "IF YOU KEEP A LOADED FIREARM WITHIN ANY PREMISES UNDER YOUR CUSTODY OR CONTROL, AND A PERSON UNDER 18 YEARS OF AGE OBTAINS IT AND USES IT, RESULTING IN INJURY OR DEATH, OR CARRIES IT TO A PUBLIC PLACE, YOU MAY BE GUILTY OF A MISDEMEANOR OR A FELONY UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER OR LOCKED THE FIREARM WITH A LOCKING DEVICE TO KEEP IT FROM TEMPORARILY FUNCTIONING."

(3) "CHILDREN MAY BE UNABLE TO DISTINGUISH FIREARMS FROM TOYS AND MAY OPERATE FIREARMS, CAUSING SEVERE INJURIES OR DEATH. IF YOU KEEP A PISTOL, REVOLVER, OR OTHER FIREARM CAPABLE OF BEING CONCEALED UPON THE PERSON, WITHIN ANY PREMISES UNDER YOUR CUSTODY OR CONTROL, AND A PERSON UNDER 18 YEARS OF AGE GAINS ACCESS TO THE FIREARM AND CARRIES IT OFF-PREMISES, YOU MAY BE GUILTY OF A MISDEMEANOR, UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER, OR LOCKED THE FIREARM WITH A LOCKING DEVICE TO KEEP IT FROM TEMPORARILY FUNCTIONING."

(4) "YOU MAY BE GUILTY OF A MISDEMEANOR, INCLUDING A SIGNIFICANT FINE OR IMPRISONMENT, IF YOU KEEP A FIREARM WHERE A MINOR IS LIKELY TO ACCESS IT OR IF A MINOR OBTAINS AND IMPROPERLY USES IT, OR CARRIES IT OFF OF THE PREMISES TO A SCHOOL

**Exhibit 6**
0345

OR SCHOOL-SPONSORED EVENT, UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER OR LOCKED THE FIREARM WITH A LOCKING DEVICE."

(5) "IF YOU NEGLIGENTLY STORE OR LEAVE A LOADED FIREARM WITHIN ANY PREMISES UNDER YOUR CUSTODY OR CONTROL WHERE A PERSON UNDER 18 YEARS OF AGE IS LIKELY TO ACCESS IT, YOU MAY BE GUILTY OF A MISDEMEANOR, INCLUDING A SIGNIFICANT FINE, UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER OR LOCKED THE FIREARM WITH A LOCKING DEVICE."

(6) "DISCHARGING FIREARMS IN POORLY VENTILATED AREAS, CLEANING FIREARMS, OR HANDLING AMMUNITION MAY RESULT IN EXPOSURE TO LEAD, A SUBSTANCE KNOWN TO CAUSE BIRTH DEFECTS, REPRODUCTIVE HARM, AND OTHER SERIOUS PHYSICAL INJURY. HAVE ADEQUATE VENTILATION AT ALL TIMES. WASH HANDS THOROUGHLY AFTER EXPOSURE."

(7) "FEDERAL REGULATIONS PROVIDE THAT IF YOU DO NOT TAKE PHYSICAL POSSESSION OF THE FIREARM THAT YOU ARE ACQUIRING OWNERSHIP OF WITHIN 30 DAYS AFTER YOU COMPLETE THE INITIAL BACKGROUND CHECK PAPERWORK, THEN YOU HAVE TO GO THROUGH THE BACKGROUND CHECK PROCESS A SECOND TIME IN ORDER TO TAKE PHYSICAL POSSESSION OF THAT FIREARM."

(8) "NO PERSON SHALL MAKE AN APPLICATION TO PURCHASE MORE THAN ONE HANDGUN OR SEMIAUTOMATIC CENTERFIRE RIFLE WITHIN ANY 30-DAY PERIOD AND NO DELIVERY SHALL BE MADE TO ANY PERSON WHO HAS MADE AN APPLICATION TO PURCHASE MORE THAN ONE HANDGUN OR SEMIAUTOMATIC CENTERFIRE RIFLE WITHIN ANY 30-DAY PERIOD."

(9) "IF A FIREARM YOU OWN OR POSSESS IS LOST OR STOLEN, YOU MUST REPORT THE LOSS OR THEFT TO A LOCAL LAW ENFORCEMENT AGENCY WHERE THE LOSS OR THEFT OCCURRED WITHIN FIVE DAYS OF THE TIME YOU KNEW OR REASONABLY SHOULD HAVE KNOWN THAT THE FIREARM HAD BEEN LOST OR STOLEN."

(b) In addition to the notice required by subdivision (a), a licensee shall post conspicuously within the licensed premises, in block letters not less than one inch in height, an additional notice, including, but not limited to, a notice provided by a suicide prevention program, containing the following statement:

"IF YOU OR SOMEONE YOU KNOW IS CONTEMPLATING SUICIDE, PLEASE CALL THE NATIONAL SUICIDE PREVENTION LIFELINE AT 1-800-273-TALK (8255)."

(c) This section shall become operative on July 1, 2021.

SEC. 2.4.  Section 26835 is added to the Penal Code, to read:

26835.  (a) A licensee shall conspicuously post within the licensed premises the following warnings in block letters not less than one inch in height:

(1) "FIREARMS MUST BE HANDLED RESPONSIBLY AND SECURELY STORED TO PREVENT ACCESS BY CHILDREN AND OTHER UNAUTHORIZED USERS. CALIFORNIA HAS STRICT LAWS PERTAINING TO FIREARMS, AND YOU MAY BE FINED OR IMPRISONED IF YOU FAIL TO COMPLY WITH

**Exhibit 6**

THEM. VISIT THE INTERNET WEBSITE OF THE CALIFORNIA ATTORNEY
GENERAL AT HTTPS://OAG.CA.GOV/FIREARMS FOR INFORMATION ON
FIREARM LAWS APPLICABLE TO YOU AND HOW YOU CAN COMPLY."

(2) "IF YOU KEEP A FIREARM WITHIN ANY PREMISES UNDER YOUR
CUSTODY OR CONTROL, AND A PERSON UNDER 18 YEARS OF AGE
OBTAINS IT AND USES IT, RESULTING IN INJURY OR DEATH, OR CARRIES
IT TO A PUBLIC PLACE, YOU MAY BE GUILTY OF A MISDEMEANOR OR A
FELONY UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER
OR LOCKED THE FIREARM WITH A LOCKING DEVICE, TO KEEP IT FROM
TEMPORARILY FUNCTIONING."

(3) "CHILDREN MAY BE UNABLE TO DISTINGUISH FIREARMS FROM
TOYS AND MAY OPERATE FIREARMS, CAUSING SEVERE INJURIES OR
DEATH. IF YOU KEEP A FIREARM WITHIN ANY PREMISES UNDER YOUR
CUSTODY OR CONTROL, AND A PERSON UNDER 18 YEARS OF AGE GAINS
ACCESS TO THE FIREARM, AND CARRIES IT OFF-PREMISES, YOU MAY BE
GUILTY OF A MISDEMEANOR, UNLESS YOU STORED THE FIREARM IN A
LOCKED CONTAINER, OR LOCKED THE FIREARM WITH A LOCKING
DEVICE, TO KEEP IT FROM TEMPORARILY FUNCTIONING."

(4) "YOU MAY BE GUILTY OF A MISDEMEANOR, INCLUDING A
SIGNIFICANT FINE OR IMPRISONMENT, IF YOU KEEP A FIREARM WHERE
A MINOR IS LIKELY TO ACCESS IT OR IF A MINOR OBTAINS AND
IMPROPERLY USES IT, OR CARRIES IT OFF OF THE PREMISES TO A SCHOOL
OR SCHOOL-SPONSORED EVENT, UNLESS YOU STORED THE FIREARM IN
A LOCKED CONTAINER OR LOCKED THE FIREARM WITH A LOCKING
DEVICE."

(5) "IF YOU NEGLIGENTLY STORE OR LEAVE A FIREARM WITHIN
ANY PREMISES UNDER YOUR CUSTODY OR CONTROL, WHERE A PERSON
UNDER 18 YEARS OF AGE IS LIKELY TO ACCESS IT, YOU MAY BE GUILTY
OF A MISDEMEANOR, INCLUDING A SIGNIFICANT FINE, UNLESS YOU
STORED THE FIREARM IN A LOCKED CONTAINER, OR LOCKED THE
FIREARM WITH A LOCKING DEVICE."

(6) "DISCHARGING FIREARMS IN POORLY VENTILATED AREAS,
CLEANING FIREARMS, OR HANDLING AMMUNITION MAY RESULT IN
EXPOSURE TO LEAD, A SUBSTANCE KNOWN TO CAUSE BIRTH DEFECTS,
REPRODUCTIVE HARM, AND OTHER SERIOUS PHYSICAL INJURY. HAVE
ADEQUATE VENTILATION AT ALL TIMES. WASH HANDS THOROUGHLY
AFTER EXPOSURE."

(7) "FEDERAL REGULATIONS PROVIDE THAT IF YOU DO NOT TAKE
PHYSICAL POSSESSION OF THE FIREARM THAT YOU ARE ACQUIRING
OWNERSHIP OF WITHIN 30 DAYS AFTER YOU COMPLETE THE INITIAL
BACKGROUND CHECK PAPERWORK, THEN YOU HAVE TO GO THROUGH
THE BACKGROUND CHECK PROCESS A SECOND TIME IN ORDER TO TAKE
PHYSICAL POSSESSION OF THAT FIREARM."

(8) "NO PERSON SHALL MAKE AN APPLICATION TO PURCHASE MORE
THAN ONE PISTOL, REVOLVER, OR OTHER FIREARM CAPABLE OF BEING
CONCEALED UPON THE PERSON WITHIN ANY 30-DAY PERIOD AND NO
DELIVERY SHALL BE MADE TO ANY PERSON WHO HAS MADE AN

**Exhibit 6**
0347

**Provided by LRI History LLC**

APPLICATION TO PURCHASE MORE THAN ONE PISTOL, REVOLVER, OR OTHER FIREARM CAPABLE OF BEING CONCEALED UPON THE PERSON WITHIN ANY 30-DAY PERIOD."

(9) "IF A FIREARM YOU OWN OR POSSESS IS LOST OR STOLEN, YOU MUST REPORT THE LOSS OR THEFT TO A LOCAL LAW ENFORCEMENT AGENCY WHERE THE LOSS OR THEFT OCCURRED WITHIN FIVE DAYS OF THE TIME YOU KNEW OR REASONABLY SHOULD HAVE KNOWN THAT THE FIREARM HAD BEEN LOST OR STOLEN."

(b) In addition to the notice required by subdivision (a), a licensee shall post conspicuously within the licensed premises, in block letters not less than one inch in height, an additional notice, including, but not limited to, a notice provided by a suicide prevention program, containing the following statement:

"IF YOU OR SOMEONE YOU KNOW IS CONTEMPLATING SUICIDE, PLEASE CALL THE NATIONAL SUICIDE PREVENTION LIFELINE AT 1-800-273-TALK (8255)."

(c) This section shall become operative on June 1, 2020.

(d) This section shall remain in effect only until July 1, 2021, and as of that date is repealed.

SEC. 2.5. Section 26835 is added to the Penal Code, to read:

26835. (a) A licensee shall conspicuously post within the licensed premises the following warnings in block letters not less than one inch in height:

(1) "FIREARMS MUST BE HANDLED RESPONSIBLY AND SECURELY STORED TO PREVENT ACCESS BY CHILDREN AND OTHER UNAUTHORIZED USERS. CALIFORNIA HAS STRICT LAWS PERTAINING TO FIREARMS, AND YOU MAY BE FINED OR IMPRISONED IF YOU FAIL TO COMPLY WITH THEM. VISIT THE INTERNET WEBSITE OF THE CALIFORNIA ATTORNEY GENERAL AT HTTPS://OAG.CA.GOV/FIREARMS FOR INFORMATION ON FIREARM LAWS APPLICABLE TO YOU AND HOW YOU CAN COMPLY."

(2) "IF YOU KEEP A FIREARM WITHIN ANY PREMISES UNDER YOUR CUSTODY OR CONTROL, AND A PERSON UNDER 18 YEARS OF AGE OBTAINS IT AND USES IT, RESULTING IN INJURY OR DEATH, OR CARRIES IT TO A PUBLIC PLACE, YOU MAY BE GUILTY OF A MISDEMEANOR OR A FELONY UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER OR LOCKED THE FIREARM WITH A LOCKING DEVICE TO KEEP IT FROM TEMPORARILY FUNCTIONING."

(3) "CHILDREN MAY BE UNABLE TO DISTINGUISH FIREARMS FROM TOYS AND MAY OPERATE FIREARMS, CAUSING SEVERE INJURIES OR DEATH. IF YOU KEEP A FIREARM WITHIN ANY PREMISES UNDER YOUR CUSTODY OR CONTROL, AND A PERSON UNDER 18 YEARS OF AGE GAINS ACCESS TO THE FIREARM AND CARRIES IT OFF-PREMISES, YOU MAY BE GUILTY OF A MISDEMEANOR, UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER, OR LOCKED THE FIREARM WITH A LOCKING DEVICE TO KEEP IT FROM TEMPORARILY FUNCTIONING."

(4) "YOU MAY BE GUILTY OF A MISDEMEANOR, INCLUDING A SIGNIFICANT FINE OR IMPRISONMENT, IF YOU KEEP A FIREARM WHERE A MINOR IS LIKELY TO ACCESS IT OR IF A MINOR OBTAINS AND IMPROPERLY USES IT, OR CARRIES IT OFF OF THE PREMISES TO A SCHOOL

**Exhibit 6**
0348
**Provided by LRI History LLC**

OR SCHOOL-SPONSORED EVENT, UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER OR LOCKED THE FIREARM WITH A LOCKING DEVICE."

(5) "IF YOU NEGLIGENTLY STORE OR LEAVE A FIREARM WITHIN ANY PREMISES UNDER YOUR CUSTODY OR CONTROL WHERE A PERSON UNDER 18 YEARS OF AGE IS LIKELY TO ACCESS IT, YOU MAY BE GUILTY OF A MISDEMEANOR, INCLUDING A SIGNIFICANT FINE, UNLESS YOU STORED THE FIREARM IN A LOCKED CONTAINER OR LOCKED THE FIREARM WITH A LOCKING DEVICE."

(6) "DISCHARGING FIREARMS IN POORLY VENTILATED AREAS, CLEANING FIREARMS, OR HANDLING AMMUNITION MAY RESULT IN EXPOSURE TO LEAD, A SUBSTANCE KNOWN TO CAUSE BIRTH DEFECTS, REPRODUCTIVE HARM, AND OTHER SERIOUS PHYSICAL INJURY. HAVE ADEQUATE VENTILATION AT ALL TIMES. WASH HANDS THOROUGHLY AFTER EXPOSURE."

(7) "FEDERAL REGULATIONS PROVIDE THAT IF YOU DO NOT TAKE PHYSICAL POSSESSION OF THE FIREARM THAT YOU ARE ACQUIRING OWNERSHIP OF WITHIN 30 DAYS AFTER YOU COMPLETE THE INITIAL BACKGROUND CHECK PAPERWORK, THEN YOU HAVE TO GO THROUGH THE BACKGROUND CHECK PROCESS A SECOND TIME IN ORDER TO TAKE PHYSICAL POSSESSION OF THAT FIREARM."

(8) "NO PERSON SHALL MAKE AN APPLICATION TO PURCHASE MORE THAN ONE HANDGUN OR SEMIAUTOMATIC CENTERFIRE RIFLE WITHIN ANY 30-DAY PERIOD AND NO DELIVERY SHALL BE MADE TO ANY PERSON WHO HAS MADE AN APPLICATION TO PURCHASE MORE THAN ONE HANDGUN OR SEMIAUTOMATIC CENTERFIRE RIFLE WITHIN ANY 30-DAY PERIOD."

(9) "IF A FIREARM YOU OWN OR POSSESS IS LOST OR STOLEN, YOU MUST REPORT THE LOSS OR THEFT TO A LOCAL LAW ENFORCEMENT AGENCY WHERE THE LOSS OR THEFT OCCURRED WITHIN FIVE DAYS OF THE TIME YOU KNEW OR REASONABLY SHOULD HAVE KNOWN THAT THE FIREARM HAD BEEN LOST OR STOLEN."

(b) In addition to the notice required by subdivision (a), a licensee shall post conspicuously within the licensed premises, in block letters not less than one inch in height, an additional notice, including, but not limited to, a notice provided by a suicide prevention program, containing the following statement:

"IF YOU OR SOMEONE YOU KNOW IS CONTEMPLATING SUICIDE, PLEASE CALL THE NATIONAL SUICIDE PREVENTION LIFELINE AT 1-800-273-TALK (8255)."

(c) This section shall become operative on July 1, 2021.


Amendment 3
On page 10, strike out line 31, in line 32, strike out "This" and insert:

(c) This

**Exhibit 6**
0349
**Provided by LRI History LLC**                    **SB 61 (2019) Page 319 of 367**

Amendment 4
On page 15, between lines 37 and 38, insert:

SEC. 9.   (a) Sections 1.1 and 2.1 of this bill incorporate amendments to Section 26835 of the Penal Code proposed by both this bill and Senate Bill 172. Those sections shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2020, (2) each bill amends Section 26835 of the Penal Code, (3) Assembly Bill 645 is not enacted or as enacted does not amend that section, and (4) this bill is enacted after Senate Bill 172, in which case Sections 1, 1.2, 1.3, 2, 2.2, 2.3, 2.4, and 2.5 of this bill shall not become operative.

(b) Sections 1.2, 2.2, and 2.3 of this bill incorporate amendments to Section 26835 of the Penal Code proposed by both this bill and Assembly Bill 645. Those sections shall only become operative if (1) both bills are enacted and become effective on or before January 1, 2020, (2) each bill amends Section 26835 of the Penal Code, (3) Senate Bill 172 is not enacted or as enacted does not amend that section, and (4) this bill is enacted after Assembly Bill 645, in which case Sections 1, 1.1, 1.3, 2, 2.1, 2.4, and 2.5 of this bill shall not become operative.

(c) Sections 1.3, 2.4, and 2.5 of this bill incorporate amendments to Section 26835 of the Penal Code proposed by this bill, Assembly Bill 645, and Senate Bill 172. Those sections of this bill shall only become operative if (1) all three bills are enacted and become effective on or before January 1, 2020, (2) all three bills amend Section 26835 of the Penal Code, and (3) this bill is enacted after Assembly Bill 645 and Senate Bill 172, in which case Sections 1, 1.1, 1.2, 2, 2.1, 2.2 and 2.3 of this bill shall not become operative.

Amendment 5
On page 15, in line 39, strike out "SEC. 9." and insert:

SEC. 10.

- 0 -



**The California Sportsman's Lobby, Inc.**

September 4, 2019

The Honorable Anthony Portantino
California State Senate                    Position: Opposition Withdrawn
State Capitol Building
Sacramento, CA 95814                    Location: Assembly Floor

**Re: SB 61 (Portantino) Firearms: transfers (As Amended September 3, 2019)**

Dear Senator Portantino:

The California Sportsman's Lobby is a nonprofit organization of sportsman's clubs and individuals dedicated to preserving outdoor recreation in California. Our principal activities are to monitor legislation that might negatively impact hunting, fishing and other recreation, and to oppose unwise changes in the laws relating to these activities.

The California Sportsman's Lobby (CSL) promotes the conservation, enhancement, scientific management, and wise use of all our natural resources; CSL seeks an end of activities needlessly destructive to natural resources; CSL endeavors to educate and encourage the public generally, and the youth specifically, to an understanding of the advantages and importance of the conservation, enhancement, and wise use of all our natural resources; and CSL works to secure more and better outdoor opportunities for all citizens, regardless of race, creed, or color as essential to the physical and spiritual well being of all the people.

This is to notify you that CSL is withdrawing its opposition to SB 61 as amended on September 3, 2019.

Should you have any questions, please contact our legislative advocate, Kathryn Lynch, at (916) 443-0202 or lynch@lynchlobby.com.

Sincerely,

Randall Walker
President, California Sportsman's Lobby

cc: Mr. Gregory Pagan, Consultant, Assembly Public Safety Committee
Mr. Gary Olson, Consultant, Assembly Republican Caucus
Speaker's Office of Research and Floor Analysis
Ms. Kathryn Lynch, Legislative Advocate
California Sportsman's Lobby

**Exhibit 6**
**0351**



# Dedicated to Preserving Your Rights
# To Hunt and Fish
# In the State of California

September 4, 2019

The Honorable Anthony Portantino
California State Senate                          Position: Opposition  Withdrawn
State Capitol Building
Sacramento, CA 95814                          Location: Assembly Floor

**Re: SB 61 (Portantino) Firearms: transfers (As Amended September 3, 2019)**

Dear Senator Portantino:

The Outdoor Sportsmen's Coalition of California is a nonprofit organization of sportsman's clubs and individuals dedicated to preserving outdoor recreation in California.  Our principal activities are to monitor legislation that might negatively impact hunting, fishing and other recreation, and to oppose unwise changes in laws and regulations relating to these activities.

The Outdoor Sportsmen's Coalition of California (OSCC) promotes the conservation enhancement, scientific management, and wise use of all our natural resources; OSCC seeks to end activities needlessly destructive to natural resources; OSCC endeavors to educate and encourage the public generally, and the youth specifically, to an understanding of the advantages and importance of the conservation and enhancement of our natural resources.

OSCC works to enhance outdoor opportunities for all citizens.  With several thousand members located throughout California, we stay in contact with our membership via newsletters and the internet so they can be involved as they see fit.

This is to notify you that OSCC is withdrawing its opposition to SB 61 as amended on September 3, 2019.

Should you have any questions, please contact our legislative advocate, Kathryn Lynch, at (916) 443-0202 or lynch@lynchlobby.com.

Sincerely,

*Randall P. Walker*

Randall Walker, President
Outdoor Sportsmen's Coalition of California

cc:  Mr. Gregory Pagan, Consultant, Assembly Public Safety Committee
     Mr. Gary Olson, Consultant, Assembly Republican Caucus
     Speaker's Office of Research and Floor Analysis
     Ms. Kathryn Lynch, Legislative Advocate
     Outdoor Sportsmen's Coalition of California

P.O. Box 848,  Fresno, CA  93712

**Exhibit 6**
**0352**

**Provided by LRI History LLC**

 

# Safari Club International

A NON-PROFIT ORGANIZATION ♦ DEDICATED TO CONSERVING WILDLIFE AND PRESERVING HUNTING



**SCI CA Coalition**

September 4, 2019

The Honorable Anthony Portantino
California State Senate                          Position: Opposition Withdrawn
State Capitol Building
Sacramento, CA 95814                             Location: Assembly Floor

**Re: SB 61 (Portantino) Firearms: transfers (As Amended September 3, 2019)**

Dear Senator Portantino:

Safari Club International and Safari Club International Foundation (SCI) is a worldwide Non-Profit organization with the mission to protect the freedom to hunt and to promote wildlife conservation. SCI recognizes hunting as a valuable management tool. SCI currently has over 45,000 members and approximately 4,000 members in California. SCI also has 30,000 California Affiliates, 950,000 U.S. Affiliates and over 7,000,000 International Affiliates. SCI spends millions annually for Wildlife Conservation, Research and Education.

This is to notify you that SCI is withdrawing its opposition to SB 61 as amended on September 3, 2019.

Should you have any questions, please contact our legislative advocate, Kathryn Lynch, at (916) 443-0202 or lynch@lynchlobby.com.

Sincerely,

Lisa C. McNamee                              Don Giottonini
Co-Legislative Coordinator                   Co-Legislative Coordinator
SCI CA Coalition                             SCI CA Coalition

cc: Mr. Gregory Pagan, Consultant, Assembly Public Safety Committee
    Mr. Gary Olson, Consultant, Assembly Republican Caucus
    Speaker's Office of Research and Floor Analysis
    Ms. Kathryn Lynch, Legislative Advocate
    SCI CA Coalition

**Exhibit 6**
**0353**
Provided by LRI History LLC                          SB 61 (2019) Page 323 of 367



**Lynch & Associates**
**1127 11ᵗʰ Street, Suite 610**
**Sacramento, CA 95814**
**Telephone: (916) 443-0202**
**Fax: (916) 443-7353**
**Cell: (916) 838-6600**
**Email: lynch@lynchlobby.com**

Kathryn A. Lynch
Legislative Advocate

September 4, 2019

The Honorable Anthony Portantino
California State Senate                      Position: Opposition Withdrawn
State Capitol Building
Sacramento, CA 95814                         Location: Assembly Floor

**Re: SB 61 (Portantino) Firearms: transfers**

Dear Senator Portantino:

This is to notify you that the California Sportsman's Lobby, Outdoor Sportsmen's
Coalition of California, and Safari Club International–CA Chapters are withdrawing their
opposition to SB 61 as amended on September 3, 2019.

Should you have any questions, please contact me, their legislative advocate, at (916)
443-0202 or lynch@lynchlobby.com.

Sincerely,

Kathryn Lynch
Legislative Advocate

cc:  Mr. Gregory Pagan, Consultant, Assembly Public Safety Committee
     Mr. Gary Olson, Consultant, Assembly Republican Caucus
     Speaker's Office of Research and Floor Analysis
     Ms. Kathryn Lynch, Legislative Advocate

**Exhibit 6**
**0354**



268 Bush Street #555, San Francisco, CA 94104   415-433-2062   GIFFORDSLAWCENTER.ORG

VIA EMAIL

February 18, 2019

The Honorable Reginald Jones-Sawyer, Jr.
Chair, Public Safety Committee
California State Assembly
Sacramento, CA 95814

**Re:    Support for AB 61 (Ting) – Gun Violence Restraining Orders**

Dear Chairman Jones-Sawyer,

On behalf of the Giffords Law Center to Prevent Gun Violence, I urge you to **support AB 61 (Ting)**. Now led by former Congresswoman Gabby Giffords and Captain Mark Kelly, our organization has worked for 25 years to enact evidence-based policy reforms at the local, state, and national levels to save lives from gun violence.

In 2014, California became the first state in the nation to enact a Gun Violence Restraining Order law (often known in other states as an Extreme Risk Protection Order or ERPO). Since January 1, 2016, this groundbreaking law has provided Californians with an important tool to reduce the risk of mass shootings, suicides, and gun violence in our state.

This law provides legal standing to law enforcement and a person's family or household members to present sworn evidence to a court that a person is an extreme risk to themselves or others with a firearm. If the judge concludes that the respondent poses a significant danger to self or others, the court may issue a Gun Violence Restraining Order (GVRO) to temporarily suspend the respondent's access to guns and ammunition. This order prevents that person from passing a background check to obtain weapons and may also authorize law enforcement to remove weapons in the respondent's possession.

1

**Exhibit 6**
**0355**
**Provided by LRI History LLC**



This law addresses the fact—tragically demonstrated in countless shooting tragedies—that individuals who have not been involuntarily committed to a psychiatric hospital and who are not otherwise prohibited from owning guns may still pose known and significant threats to public safety.

Under existing law, however, the GVRO process remains unavailable to other community members who may have unique personal knowledge of a person's mental state or dangerousness.

**AB 61 would help close this gap by allowing school personnel and co-workers to also petition a court for issuance of a GVRO where they have personal knowledge regarding a person's dangerousness.** In many cases, these individuals will have more regular contact with a troubled student or co-worker than that person's family members or law enforcement. School personnel and co-workers may also be better suited to bring GVRO petitions in some circumstances than family members who are in denial or estranged from an unstable individual or who may fear the repercussions of filing a petition to disarm a loved one.

A brutally familiar drumbeat of school, workplace, and public shootings have demonstrated the importance of opening courtroom doors to school officials and co-workers to file GVRO petitions. The gunman who perpetrated the February 14, 2018 school shooting in Parkland, Florida, for instance, had been prohibited by school officials from carrying a backpack on school grounds for fear that he might be concealing weapons. But under California law, those same educators and school administrators would not have had legal standing to petition a court with sworn evidence of his dangerousness with firearms.

Prior to the June 12, 2016 shooting at a gay night club in Orlando, Florida, the gunman's co-workers had also repeatedly reported that he was "dangerous," "unstable," and "unhinged," and that he had made credible threats of violence and of committing a mass shooting.[i] One former co-worker told reporters, "When news broke of the shooting . . . I absolutely knew he was the shooter." By contrast, the gunman's father said his family was "not aware of any action he [was] taking" and "in shock like the whole country;"[ii] though the gunman's wife believed her husband

2

**Exhibit 6**
0356

**Provided by LRI History LLC**

**SB 61 (2019) Page 326 of 367**



was planning to attack a gay nightclub, she made no attempt to notify law enforcement.[iii]

In such cases, where family members are unable or unwilling to help disarm a dangerous person, other well-situated individuals should be able to proactively and directly intervene. But existing California law provides no legal standing for co-workers and others with unique personal insight about a potential gunman's dangerousness to petition a court to hear relevant information and issue a GVRO. **AB 61 would simply empower more community members to "see something and say something" by filing a sworn petition to a judge when they observe serious and imminent threats to public safety.**

**To be clear, AB 61 would *not* alter the strict legal standard under which courts must evaluate whether to issue a GVRO; all of the due process protections afforded by existing GVRO statutes would still apply.** *Ex parte* GVROs may only be issued in emergency cases if the judge finds that there is a substantial likelihood that the respondent poses a significant danger to self or others in the near future by having access to a firearm *and* that a GVRO is necessary under the circumstances to prevent such harm.[iv] GVROs issued after notice and a hearing have to meet an even higher burden of proof to demonstrate "clear and convincing evidence" of the respondent's dangerousness and the GVRO's necessity.[v] **Existing law also guards against potential abuse of the GVRO process by imposing significant criminal penalties on individuals who file a knowingly false or harassing petition, including felony perjury charges.** And AB 61 makes clear that it would *not* legally obligate any person to file a petition.

Finally, we wish to point out that co-workers and school administrators are already authorized to seek *ex parte*, firearm-prohibiting protective orders against a dangerous student or colleague who has specifically threatened them as individuals.[vi] AB 61 would, importantly, authorize these same individuals to speak for others' safety too when they have personal knowledge that a person is a clear danger to themselves or intends to commit violence against others.

**We believe this legislation would improve public safety and help more**

3

**Exhibit 6**
0357

**Provided by LRI History LLC**                                    **SB 61 (2019)  Page 327 of 367**


GIFFORDS
LAW CENTER
TO PREVENT GUN VIOLENCE

community members take proactive steps to thwart mass shootings and other tragedies.

For these reasons, we urge you to support AB 61 (Ting)

Sincerely,

Ari Freilich
California Legislative Affairs Director & Staff Attorney
Giffords Law Center to Prevent Gun Violence

---

[i] The New Yorker, "The Security Firm That Employed the Orlando Shooter Protects American Nuclear Facilities" (Jun. 27, 2016), at http://www.newyorker.com/news/news-desk/the-security-firm-that-employed-the-orlando-shooter-protects-american-nuclear-facilities.
Los Angeles Times, "Orlando Terror Attack updates" (Jun. 16, 2016), at http://www.latimes.com/nation/la-na-orlando-nightclub-shooting-live-former-coworker-i-complained-multiple-1465777922-htmlstory.html; Business Insider, "He 'became obsessed': Former coworker describes the Orlando shooter's 'scary' behavior" (Jun. 14, 2016), at http://www.businessinsider.com/orlando-shooters-former-coworker-describes-his-scary-behavior-2016-6.
[ii] Haaretz, "Father of Orlando Shooter 'In Shock,' Says His Son Was Angry After Seeing Two Men Kissing" (Jun. 12, 2016), at http://www.haaretz.com/world-news/americas/1.724548.
[iii] NBC News, "Orlando Gunman's Wife Gave No Warning to Cops Before Attack" (Jun. 15, 2016), at http://www.nbcnews.com/storyline/orlando-nightclub-massacre/omar-mateen-s-wife-tried-talk-him-out-attack-n592051.
[iv] Cal. Pen. Code § 18150(b).
[v] Cal. Pen. Code § 18175 (b).
[vi] See, e.g., Cal Code Civ. Proc. §§ 527.6, 527.8, 527.85, and 527.9.

4

**Friends Committee on
Legislation of California**

1225 8th Street, Suite 220
Sacramento, CA 95814-4809

August 8th, 2019

Assembly Member Lorena Gonzalez
Chair, Assembly Appropriations Committee
State Capitol – Room 2114
Sacramento, CA 95814

Re: Senate Bill 61 (Portantino) – SUPPORT

Dear Chairwoman Gonzalez,

The Friends Committee on Legislation of California (FCLCA), a Quaker-based lobby that advocates for state laws that are just, compassionate and respectful of the inherent worth of every person, is pleased to support SB 61. This important bill will limit purchases of long guns from licensed firearm dealers to one gun per person per 30-day period.

We are shocked and saddened by recent events in El Paso, Dayton and Gilroy, and we are further dismayed by the U.S. Senate's unwillingness to consider common sense reforms to reduce gun violence in their wake. While much of the public discourse has focused on the problems of mental illness and white nationalism and extremism, we think it's important to understand that other industrialized nations also grapple with these issues but have much lower rates of gun violence. The primary difference that cuts across all of these variables is that in the U.S. guns are so readily available. Though federal legislation is sorely needed, the good news is that our state's tough gun laws have reduced gun violence here in California.

In 1999 the Legislature wisely passed legislation to limit hand gun purchases to one per month in (AB 202, Knox), and we should apply the same logic to long gun sales. More and more crimes are being committed with long guns, and there is ample evidence that an individual who purchases large numbers of firearms at one time may be selling them in the underground economy. A University of Pennsylvania report found that one-fourth of all guns used in the commission of crimes were purchased in multiple gun sales and that guns purchased in bulk were much more likely to be used illegally than guns that were purchased individually. Moreover, many of these bulk purchases are for long guns with lower receivers, which can be converted into military-style weapons. These types of weapons have no legitimate use in civil society. SB 61 prohibits the sale of semiautomatic rifles to persons under age 21, with certain exceptions.

(continued)

Tel. (916) 443-3734  |  Fax.(916) 448-6109  |  Email. fcladmin@fclca.org  |  Web. www.fclca.org

Exhibit 6
0359

Provided by LRI History LLC

Reducing the proliferation of firearms and the frequency of gun violence is an effective strategy for improving public safety, and FCLCA urges the Appropriations Committee to move SB 61 to the full Assembly.

Sincerely yours,

JIM LINDBURG
Legislative Director

C. Senator Anthony Portantino

**Exhibit 6**
**0360**

Provided by LRI History LLC

SB 61 (2019) Page 330 of 367



June 12, 2019

Senator Anthony Portantino
State Capitol
Sacramento, California 95814

RE: | SB 61 - OPPOSE

Dear Senator Portantino:

Gun Owners of California is writing to respectfully oppose your SB 61, a reintroduction of last year's SB 1177 (Portantino), which seeks to prohibit the number of firearms an individual can purchase within a specified period of time.

Our concerns pertain to the intention to build upon the 1999 bill that restricted purchases of handguns to no more than one per person per month to include *all* firearms, including long guns. Gun Owners has consistently supported efforts to prevent the flow of illegal firearms, but there is no data suggesting someone who purchases two guns a month – or three guns for that matter – is a danger to society or engaging in illicit activity. In fact, even though long gun purchases in California have literally exploded to over a million per year, a 2015 report by the Department of Justice 2015 (Firearms Used in Crimes) reveals they are used minimally - roughly 12%. What's more, there is no "recognized strategy" that limiting firearm purchases reduces gun trafficking or keeps firearms out of "dangerous hands." There is simply no evidence that restricting the number of guns an individual can buy in a month will have any effect positive on crime.

Penalizing the lawful for the misdeeds of the unlawful will never have its anticipated resolution and reducing the pool of firearms available for lawful individuals to possess will do nothing to stem an increase in crime. The safety of Californians is at the very foundation of our mission, and regrettably, there is no indication that SB 61 will further protect the citizens of our state. It has been our consistent goal to work toward common sense solutions regarding the issue of crime and firearm ownership; this can be done, however, without sacrificing our Constitutional rights and the ability of the law abiding to protect their families. I would welcome the opportunity to discuss this with you at your convenience.

Respectfully,

Sam Paredes, Executive Director

cc: Members, Assembly Committee on Public Safety

**GUN OWNERS OF CALIFORNIA**
1831 Iron Point Road, Folsom CA 95630 – (916) 984-1400 (916) 984-1402 fax
www.GunOwnersCA.com
*A Political Committee Dedicated to Crime Control – Not Gun Control*

**Exhibit 6**
**0361**
**Provided by LRI History LLC**          SB 61 (2019) Page 331 of 367





**Physicians for Social Responsibility**
**San Francisco Bay Area Chapter**

548 Market Street, #90725, San Francisco, CA 94104-5401
phone: 415-562-6726
email: action@sfbaypsr.org
**www.sfbaypsr.org**
Facebook: https://www.facebook.com/SFPSR

April 12, 2019

**PRESIDENT**
Robert M. Gould, MD

**VICE-PRESIDENT**
Jeffrey Ritterman, MD

**SECRETARY/**
**TREASURER**
Sarah Janssen, MD, PhD, MPH

**MEMBERS-AT-LARGE**
Ronald G. Bieselin, MD

Michael D.
Geschwind, MD, PhD

Rohini J. Haar, MD, MPH

Frank H. Lucido, MD

Tom Newman, MD, MPH

Senator Anthony Portantino
California State Capitol, Rm. 3086
Sacramento, CA 95814

Re: SB 61 (Portantino) Support

Dear Senator Portantino,

San Francisco Bay Area Physicians for Social Responsibility (SF Bay Area PSR) is writing to express strong support for SB 61 (Portantino) which would extend the prohibition on purchasing more than one handgun per month to include all firearms.

SF Bay Area PSR is a non-profit education and advocacy organization with approximately 2,500 members. Our organization combines the power of community activism with the knowledge and credibility of physicians and other health professionals to promote public policies that support human health.

Almost 3,000 Californians die every year by gun violence aimed at others or through suicide. It's estimated that as many as twice that number suffer non-fatal injuries by firearms.[i] Members of San Francisco Bay Area PSR and PSR nationwide work in hospital emergency rooms and treat all too many of the victims of senseless and gross acts of violence.

We agree with Brady California United Against Violence that handguns and long guns should generally be subject to the same laws. Preventing the flow of illegal guns is important to public safety regardless of whether the firearm is a handgun or a long gun. We believe that limiting the number of purchases per month of all guns would help stem the tide of gun violence.

**Exhibit 6**
**0362**
**Provided by LRI History LLC**          **SB 61 (2019) Page 332 of 367**

Thank you for authoring this important bill to make California safer.

Sincerely,

*Robert M. Gould, MD*

Robert M. Gould, M.D.
President, San Francisco Bay Area Physicians for Social Responsibility

---

[i] CDC reports that, nationwide, twice as many people suffer non-fatal injuries as die from gun violence. Centers for Disease Control, National Vital Statistics Report, Vol. 61, Number 4, *Deaths: Final Data for 2010*, May 8, 2013. vitalhttp://www.cdc.gov/nchs/data/nvsr/nvsr61/nvsr61_04.pdf

**Exhibit 6**
**0363**

**Provided by LRI History LLC**

**SB 61 (2019)  Page 333 of 367**


March 26, 2019

The Honorable Nancy Skinner
Chair, Public Safety Committee
California State Senate
Sacramento, CA 95814

**Re: Support for SB 61 (Portantino) – Limiting Bulk Firearm Purchases**

Dear Senator Skinner,

On behalf of Giffords Law Center to Prevent Gun Violence, I urge you to support SB 61 (Portantino), legislation that would help curb the flow of firearms on the black market in California. Now led by former Congresswoman and shooting survivor Gabby Giffords, our organization has worked for 25 years to enact evidence-based policy reforms at the local, state, and national levels to save lives from gun violence.

In 1999, California enacted our state's one-handgun-per-month law, which generally prohibits a person from purchasing more than one new handgun from a licensed firearms dealer in any 30-day period. The law also prohibits a dealer from completing the sale of a handgun once the Department of Justice (DOJ) notifies the dealer that the person attempting to acquire the handgun has applied to purchase another handgun within the previous 30 days. In floor debates and bill analyses prepared prior to the one-handgun-per-month law's enactment, the Legislature noted that these "bulk purchase limits" would affect a very small percentage of purchasers, while effectively limiting the small number of buyers most likely to be involved in crimes and violence. This law helps to curb the flow of handguns on the illegal black market and prevents dangerous individuals from quickly amassing stockpiles of weapons.

However, current law does not apply these limitations to long guns sold by dealers. This loophole allows gun traffickers to easily purchase unlimited numbers of rifles and shotguns for illegal distribution to people who could not legally acquire them, including organized gangs and cartels, and allows individuals who intend to perpetrate violence themselves, like mass shooters, to quickly stockpile large numbers of firearms.

**SB 61 would start to close this dangerous loophole by generally extending California's existing one-handgun-per-month law to long gun purchases too.**

SB 61 would still provide targeted exceptions for licensed hunters acquiring new hunting rifles and shotguns. This bill would also still allow other individuals to lawfully purchase up to 12 new firearms per year from licensed dealers, to acquire additional firearms from unlicensed sellers (even though such transactions must be conducted through a licensed dealer), and to liquidate a collection of used firearms to a single purchaser. It would also still

Exhibit 6

allow people to loan or transfer their firearms to family members, acquaintances, and sport or hunting partners in a variety of circumstances, while placing reasonable limitations on dangerous individuals' ability to obtain mass quantities of guns for illegal purposes.

Laws limiting multiple firearm sales are important to public safety. Although bulk firearm purchases comprise a very small share of the overall market for firearms, they represent a significant source of guns sold to criminals. A 2007 University of Pennsylvania report to the National Institute of Justice found that guns purchased in a "multiple sale"—meaning guns purchased by a person who bought at least one other firearm within five business days— were up to 64% more likely to be used for illegal purposes than guns purchased individually.[i] An ATF report similarly found that purchases of multiple long guns are a "significant indicator" of gun trafficking.[ii] An ATF study of gun trafficking by one cartel in Mexico found that the cartel purchased 336 firearms in a 15-month period, including 251 long guns, and that all but one of those firearms was purchased in bulk sales from a U.S. gun dealer.[iii] Experts also identify "stockpiling weapons" as a significant warning sign of a mass shooter's violent intentions.[iv]

Additionally, a dangerous person's ability to quickly amass weapons is hazardous to public safety regardless of whether those weapons are sold by dealers or unlicensed sellers, and regardless of whether they are long guns or handguns. Treating all firearm sales equally is common sense and would further California's efforts in recent years to align the legal requirements governing handgun and long gun sales in the state. ATF has reported that long guns have become Mexican cartels' "weapons of choice,"[v] and the agency has had to implement special reporting requirements on California gun dealers to track certain multiple long gun sales because our state is such a significant source of these firearms for violent cartels over the border.[vi]

Within California, DOJ has reported that long guns comprise half the illegal firearms recovered by law enforcement from prohibited persons in this state.[vii] In addition, an examination of forensic data collected from the mass shootings that have occurred in the United States throughout the last 30 years showed that exactly half of the weapons used to perpetrate those tragedies were long guns.[viii] Curbing bulk purchases of all firearms would help keep more deadly weapons from falling into dangerous hands.

SB 61 (Portantino) will implement sensible and reasonable safeguards to curb the flow of firearms on the illegal black market and into the hands of those most likely to use these weapons in crimes and violence.

**For these reasons, we urge you to support SB 61 (Portantino).**

Sincerely,

Ari Freilich
California Legislative Affairs Director & Staff Attorney
Giffords Law Center to Prevent Gun Violence

Exhibit 6
Provided by LRI History LLC
0365
SB 61 (2019) Page 335 of 367

[i] Koper, Christopher S.; Jerry Lee Center of Criminology, Univ. of Penn., *Crime Gun Risk Factors: Buyer, Seller, Firearm, and Transaction Characteristics Associated with Gun Trafficking and Criminal Gun Use -- A Report to the National Institute of Justice, U.S. Dept. of Justice* (2007), https://www.ncjrs.gov/pdffiles1/nij/grants/221074.pdf.

[ii] U.S. Gov. Accountability Office, *Firearms Trafficking: U.S. Efforts to Combat Arms Trafficking to Mexico Face Planning and Coordination Challenges* (2009): 28, http://www.gao.gov/new.items/d09709.pdf

[iii] U.S. Dept. of Justice, Office of the Inspector General, *Review of ATF's Project Gunrunner*, November 2010, 38-39, www.justice.gov/oig/reports/ATF/e1101.pdf.

[iv] Peter Langman, Ph.D., *School Shooters: The Warning Signs*, Jul. 29, 2014, https://schoolshooters.info/sites/default/files/school_shooters_warning_signs_1.1.pdf

[v] U.S. Dept. of Justice, Office of the Inspector General, *Review of ATF's Project Gunrunner*, November 2010, 36, www.justice.gov/oig/reports/ATF/e1101.pdf.

[vi] Letter from Charles Houser, Chief, Nat'l Tracing Ctr., to Fed. Firearms Licensees, Jul. 12, 2011, 1, http://www.scribd.com/doc/61159256/ATF-Multiple-Rifle-Sale-Reporting-Requirement-Letter. See also Agency Information Collection Activities; *Proposed Collection Comments Requested: Report of Multiple Sale or Other Disposition of Certain Rifles*, 76 Fed. Reg. 24,058, 24,058, Apr. 29, 2011; Bureau of Alcohol, Tobacco, Firearms & Explosives, *Q&As for the Report of Multiple Sale or Other Disposition of Certain Rifles*, http://www.atf.gov/files/firearms/industry/080911-qa-multiple-rifles.pdf.

[vii] Data provided by the Cal. Dept. of Justice, Mar. 4, 2010.

[viii] Mark Follman *et al.*, "US Mass Shootings, 1982-2015: Data from Mother Jones' Investigation," *Mother Jones Magazine*, Dec. 28, 2012.

Exhibit 6



HURST+BROOKS+ESPINOSA

May 3, 2019

The Honorable Anthony Portantino, Chair
Senate Appropriations Committee
State Capitol, Room 3086
Sacramento, CA 95814

RE:   SB 61 (Portantino) – Firearms: transfers (As introduced 1/3/2019)
      On Suspense File – Senate Appropriations Committee
      County of Ventura: SUPPORT

Dear Senator Portantino:

On behalf of the Ventura County Board of Supervisors, I write in support of SB 61, your measure that
would prohibit the purchase of more than one long gun during a 30-day period, except as specified. This
measure is currently on the Senate Appropriations Suspense File.

As you know, Ventura County was the site of the November 2018 shooting at the Borderline bar, which
tragically resulted in 12 deaths. This mass shooting has left our community shattered and in search of
ways to prevent similar tragedies. We appreciate the Legislature's multi-pronged effort to advance
legislation in 2019 that reduces the likelihood that persons who pose a threat to themselves or others
are restricted from possessing firearms. As a general policy, the County of Ventura supports legislation
that reduces the likelihood of accidental or intentional homicides and, in particular, mass homicides.

We believe SB 61 would be part of the solution in reducing gun violence. It would make long guns
generally subject to the same purchasing restrictions as handguns. Limitations imposed on the purchase
of handguns were enacted 20 years ago (AB 202, 1999). That legislation was intended to reduce the
illegal flow of handguns by eliminating the opportunity to sell guns from bulk purchases on the black
market. SB 61 would apply the law enacted under AB 202 to long guns, as specified. It would, however,
include several narrow exceptions.

1127 Eleventh St., Ste. 805
Sacramento, CA 95814
916.245.3445

hbeadvocacy.com

Exhibit 6
0367

Provided by LRI History LLC

The County of Ventura is pleased to support SB 61 and thank you for your leadership in advancing this legislation. Should you have any questions about the County's position, please do not hesitate to contact me at ehe@hbeadvocacy.com or 916-272-0012. Thank you.

Sincerely,

Elizabeth Espinosa
Legislative Representative

cc:     Members and Consultants, Senate Appropriations Committee
        Ventura County Legislative Delegation

Exhibit 6
0368

Provided by LRI History LLC



*Be Safe. Shoot Straight. Fight Back!*

CALIFORNIA RIFLE & PISTOL ASSOCIATION

March 4th, 2019

Honorable Senator Anthony J. Portantino
State Capitol Room 2206
Sacramento, CA 95814

**Re: Senate Bill 1177 (Portantino) – Firearms: Transfers**

**Position: Opposed**

Dear Senator Portantino,

On behalf of the California Rifle and Pistol Association (CRPA), and its members, I write to express our strong opposition to Senate Bill 61 (SB 61). SB 61 would make it a crime to attempt to purchase more than one firearm of any type within a 30-day period.

SB 61 would significantly reduce long gun sales in California. This translates into a loss of manufacturing jobs at both the state and national levels, and a significant loss of revenue for California businesses. Additionally, this bill will significantly impact the of millions of dollars of Federal Pitman Roberson tax money that would be earmarked to develop and enhance habitat critical for California's wildlife. The Department of Justice (DOJ), has estimated previous versions of this same bill's implementation alone will cost hundreds of thousands of dollars, and result in significant overtime hours for Department personal to perform the necessary analysis, development, testing, and implementation to various Department databases.

SB 61 will also effectively prohibit the creation of new businesses in California involving hands on instruction in the safe handling of firearms. Should this bill become law, certified firearm instructors would no longer be able acquire the necessary firearms without having to wait months, if not years, to conduct classes for groups such as the Boy Scouts of America, Hunter Education, Youth shooting sports, and other clubs or organizations that wish to participate in firearm safety classes.

You and your proponents argued in testimony there is no legitimate reason for anyone to need to purchase more than one firearm a month. There are, in fact, numerous legitimate recreational and Second Amendment protected reasons why an individual might want, and need, to transfer more than one firearm a month. For example, someone new to the sport of recreational competitive shooting, 'Three Gun' competitions, may very well need to purchase a pistol, shotgun, and rifle without having to wait 30 days between each purchase. This bill would require someone wanting to acquire all three types of firearms to undergo a process that would take at least 70 days assuming everything goes smoothly. The procedure for purchasing these firearms is already very time and travel intensive. Each transaction requiring a trip to the licensed dealer.

Provided by LRI History LLC



*Be Safe. Shoot Straight. Fight Back!*

**CALIFORNIA RIFLE & PISTOL ASSOCIATION**

Currently individuals in California must go through the following steps to purchase a firearm; Obtain a firearm safety certificate; Go to a California licensed firearms dealer; Complete 4473 and (Dealer Record of Sales) DROS applications; Pass the required background check; Wait the required 10 days; Go back to dealer; Perform a safe handling demonstration; Pick up first firearm. Under SB 61 the individual would have to wait the required 30 days, then go back to dealer again; and repeat the process for each subsequent purchase.

Both California and Federal law already address your concerns regarding the trafficking of firearms by narrowly limiting the number of firearms an individual can sell. Rather than having the desired effect of targeting criminals, this bill will impact only the law abiding, thereby further limiting available funding to DOJ.

SB 61, allows for numerous exemptions to the restriction which do not apply to the general public, though well intended by the author will create a nightmare DOJ and law enforcement to implement and enforce. Additionally, both you and your proponents have argued this bill is necessary because the vast majority of firearms recovered from APPS seizures are long guns. However, data from the Bureau of Alcohol, Tobacco, Firearms and Explosives, ATF, clearly shows the vast majority of firearms recovered by law enforcement are handguns, which are already subject to the 30-day restriction, illustrating the restrictions ineffectiveness at reducing crime.

Respectfully, as a reminder you and your proponents have tried three previous versions of this bill in the last three years. All vetoed by Governor Brown; 2016: AB 1674, 2017: SB 497 and in 2018: SB 1177. In his 2018 veto statement the Governor stated: "I am returning SB 1177 without my signature. This bill prohibits any person from purchasing more than one long-gun per month. I vetoed a substantially similar bill in 2016, and my views have not changed", in his 2016 veto statement Governor Brown said in part; " while well-intended, I believe this bill would have the effect of burdening lawful citizens who wish to sell certain firearms that they no longer need. Given California's stringent laws restricting gun ownership, I do not believe this additional restriction is needed". Senator, I do commend you on your perseverance; but, nothing has changed this is just a bad bill that will not curb crime and will only impact law abiding citizens. For the foregoing reasons, the California Rifle and Pistol Association strongly opposes SB 61.

Respectfully Submitted,

Roy M. Griffith Jr.
Legislative Liaison
California Rifle and Pistol Association, Inc.
rgriffith@crpa.org

CC: Tara.McGee@sen.ca.gov ; Legislative Aide

---



**BRADY**
UNITED AGAINST GUN VIOLENCE
CALIFORNIA

LEGISLATION & POLICY
CHAIR
Amanda Wilcox
*Nevada/Placer*
P.O. Box 892
Rough & Ready, CA 95975
(530) 432-2171
CABrady@live.com

ORGANIZING MANAGER
Shikha Hamilton
*San Mateo Co.*

CALIFORNIA BRADY
EXECUTIVE COMMITTEE

PRESIDENT
Mattie Scott
*San Francisco Co.*

PAST PRESIDENT
Peggy McCrum
*Long Beach*

Griffin Dix
*Oakland/Alameda Co.*

Carol Landale
Kelli McCarthy
*San Diego County*

Loren Lieb
*San Fernando Valley*

Niki Smith
*Stockton*

Suzanne Verge
*Los Angeles*

Toni Shellen
*Tri-City/Alameda Co.*

March 18, 2019

The Honorable Anthony Portantino
California State Senate
State Capitol
Sacramento, CA 95814

**Support: SB 61 (Portantino) – Preventing Trafficking of Long Guns**

Dear Senator Portantino:

Brady California United Against Gun Violence is a grassroots organization working to reduce firearm crime, injury, and death. There are Brady chapters throughout the state, many of whose members have lost a loved one to gunfire. A key policy objective for Brady California is to disrupt the flow of illegal guns into impacted communities. SB 61 will help address this problem and Brady California stands in strong support.

In 1999, legislation (AB 202) was enacted that limits purchases of handguns from licensed firearms dealers in California to no more than one per person per 30-day period. The purpose of the bill was to curb the illegal flow of handguns by taking the profit out of selling guns from bulk purchases on the black market. SB 61 applies existing law under AB 202 to long guns, including rifles, shotguns, and lower receivers.

Under SB 61, firearms (handguns *and* long guns) will not be delivered whenever the dealer is notified by the Department of Justice that within the preceding 30-day period, the purchaser had made another application to purchase a firearm. Private party transactions will continue to be exempt. Additionally, rifle and shotgun (but not lower receiver) purchasers with a valid hunting license issued by the Department of Fish and Wildlife and the acquisition of a rifle or shotgun at an auction or similar event conducted by a nonprofit will be exempt.

It stands to reason that a person buying large quantities of guns at one time may be acting as a straw purchaser or gun trafficker. Moreover, firearms acquired this way are frequently used in crime. In fact, an ATF study of tracing data demonstrated that 22% of all handguns recovered in crime in 1999 were originally purchased as part of a multiple sale.[i] A similar study found that 20% of all handguns recovered in crime in 2000 were originally purchased as part of a multiple sale.[ii] Additionally, a University of Pennsylvania report found that a quarter of all guns used in crime were purchased as part of a multiple-gun sale and that guns purchased in bulk were up to 64% more likely to be used for illegal purposes than guns purchased individually.[iii]

**Exhibit 6**
**0371**

**Provided by LRI History LLC**          **SB 61 (2019) Page 341 of 367**

Since 1999, Californians have typically purchased more long guns than handguns every year.[iv] Currently, these long guns include high powered featureless weapons with exchangeable magazines that enable rapid reload and lower receivers, which can be assembled into illegal military-style weapons. Limiting multiple-gun sales within a short period of time for such weapons, which are more lethal than handguns, is clearly in the interest of public safety.

The Department of Justice began to retain records of long gun purchases on January 1, 2014. An analysis of the transaction data from the period January 2014 through June 2015 shows that 81.9% of long guns were sold as a single long gun purchase within a 30-day period.[v] *Clearly, the vast majority of long gun purchasers will not be impacted by SB 61.* However, at the opposite end of the spectrum, an individual purchased 177 long guns in two transactions within a one month period (April 2014).[vi] Furthermore, sales to single individuals ranging from 5 to 54 long guns per month occurred on 1,787 occasions, totaling 12,090 guns.[vii] Department data also shows that when multiple long guns are transferred in a sale, it is more than twice as likely that lower receivers are included.[viii] The largest bulk sale of long guns in one month to an individual (177 long guns) was composed *entirely* of lower receivers,[ix] which can be built into illegal assault weapons and sold on the black market.

Brady California believes that handguns and long guns should generally be subject to the same laws. Preventing the flow of illegal guns is important to public safety regardless of whether the firearm is a handgun or a long gun. Limiting firearms sales to one gun per 30-day period is a recognized strategy to reduce gun trafficking and keep firearms out of dangerous hands. Brady California thanks you for introducing SB 61.

Sincerely,

*Amanda Wilcox*

Amanda Wilcox
Legislation and Policy Chair
Brady California United Against Gun Violence

Cc: Members of Senate Public Safety Committee

---

[i] Bureau of Alcohol, Tobacco and Firearms, U.S. Department of the Treasury, *Youth Crime Gun Interdiction Initiative, Crime Gun Trace Reports (1999) National Report* 40 (Nov. 2000).
[ii] Bureau of Alcohol, Tobacco and Firearms, U.S. Department of the Treasury, *Youth Crime Gun Interdiction Initiative, Crime Gun Trace Reports (2000) National Report* 50 (July 2002).
[iii] Koper, Christopher S.; Jerry Lee Center of Criminology, Univ. of Penn., *Crime Gun Risk Factors: Buyer, Seller, Firearm, and Transaction Characteristics Associated with Gun Trafficking and Criminal Gun Use -- A report to the National Institute of Justice, U.S. Department of Justice* (2007). https://www.ncjrs.gov/pdffiles1/nij/grants/221074. pdf.
[iv] California Department of Justice, "Dealer's Record of Sale (Calendar Year Statistics)," http://oag.ca.gov/sites/all/files/agweb/pdfs/firearms/forms/dros_chart.pdf?.
[v] Data provided by the California Department of Justice, November 3, 2015.
[vi] Data provided by the California Department of Justice, November 3, 2015.
[vii] Data provided by the California Department of Justice, November 3, 2015.
[viii] Data provided by the California Department of Justice, March 7, 2016.
[ix] Data provided by the California Department of Justice, March 7, 2016.

**Exhibit 6**
**0372**
**Provided by LRI History LLC**                          **SB 61 (2019) Page 342 of 367**



# LAGUNA WOODS DEMOCRATIC CLUB

*Post Office Box 2254, Laguna Hills, California 92654-2254*

April 13, 2019

The Honorable Anthony Portantino
California State Senate
State Capitol, Room 3086
Sacramento, CA 95814

**Re: SB 61 Preventing Gun Trafficking - SUPPORT**

Dear Senator Portantino

The Directors and 300 Members of Laguna Woods Democratic Club, a large and active chartered Orange County club, offer their support for SB 61.

We understand that although the bulk purchase of handguns has been limited since 2000, the purchase of rifles and shotguns (long guns) has not. These long guns include high-powered rifles with exchangeable magazines and lower receivers, which can be assembled into illegal assault weapons and trafficked...a truly terrifying scenario.

Preventing the flow of illegal guns is important to public safety regardless of whether the firearm is a handgun or long gun. Limiting new firearm sales to one gun per month, with appropriate exceptions, is a recognized strategy to reduce gun trafficking and keep firearms out of dangerous hands.

We are proud to live in a state which has tough gun safety laws. Sometimes it does seem that we are always closing loopholes, but even those are important steps for the safety of our residents.

Thank you for addressing this important issue. We support SB 61 and hope it will become law.

Kind regards,

*Linda Nearing*

Linda Nearing
President

*lagunawoodsdemocrats.org*          *lwdemoclub@yahoo.com*          *We're on Facebook*

**Exhibit 6**
**0373**



**Physicians for Social Responsibility**
**San Francisco Bay Area Chapter**

548 Market Street, #90725, San Francisco, CA 94104-5401
phone: 415-562-6726
email: action@sfbaypsr.org
**www.sfbaypsr.org**
Facebook: https://www.facebook.com/SFPSR

April 12, 2019

**PRESIDENT**
Robert M. Gould, MD

**VICE-PRESIDENT**
Jeffrey Ritterman, MD

**SECRETARY/**
**TREASURER**
Sarah Janssen, MD, PhD, MPH

**MEMBERS-AT-LARGE**
Ronald G. Bieselin, MD

Michael D.
Geschwind, MD, PhD

Rohini J. Haar, MD, MPH

Frank H. Lucido, MD

Tom Newman, MD, MPH

Senator Anthony Portantino
California State Capitol, Rm. 3086
Sacramento, CA 95814

Re: SB 61 (Portantino) Support

Dear Senator Portantino,

San Francisco Bay Area Physicians for Social Responsibility (SF Bay Area PSR) is writing to express strong support for SB 61 (Portantino) which would extend the prohibition on purchasing more than one handgun per month to include all firearms.

SF Bay Area PSR is a non-profit education and advocacy organization with approximately 2,500 members. Our organization combines the power of community activism with the knowledge and credibility of physicians and other health professionals to promote public policies that support human health.

Almost 3,000 Californians die every year by gun violence aimed at others or through suicide. It's estimated that as many as twice that number suffer non-fatal injuries by firearms.[i] Members of San Francisco Bay Area PSR and PSR nationwide work in hospital emergency rooms and treat all too many of the victims of senseless and gross acts of violence.

We agree with Brady California United Against Violence that handguns and long guns should generally be subject to the same laws. Preventing the flow of illegal guns is important to public safety regardless of whether the firearm is a handgun or a long gun. We believe that limiting the number of purchases per month of all guns would help stem the tide of gun violence.

**Exhibit 6**
**0374**

**Provided by LRI History LLC**          **SB 61 (2019) Page 344 of 367**

Thank you for authoring this important bill to make California safer.

Sincerely,

*Robert M. Gould, MD*

Robert M. Gould, M.D.
President, San Francisco Bay Area Physicians for Social Responsibility

i

 CDC reports that, nationwide, twice as many people suffer non-fatal injuries as die from gun violence. Centers for Disease Control, National Vital Statistics Report, Vol. 61, Number 4, *Deaths: Final Data for 2010*, May 8, 2013.

**Exhibit 6**
**0375**
**Provided by LRI History LLC**                                                    **SB 61 (2019)  Page 345 of 367**



# Women For: Orange County

*Working for a Better World*

*a grassroots advocacy organization founded in 1984*

P.O. Box 5402, Irvine, California 92616, 714.590.7804

www.womenfororangecounty.org/womenforoc@aol.com

April 24, 2019

The Honorable Anthony Portantino
California State Senate
State Capitol
Sacramento, CA 95814

Re: SB 61          Position: Support

Dear Senator Portantino:

I am writing on behalf of **Women For: Orange County. Women For: OC** is dedicated to the attainment of peace, justice, and human and civil rights, and for that reason we are opposed to the proliferation of illegal guns in our society.

We strongly support Senate Bill 61, which would limit purchases of new long guns to one per person per 30-day period. This bill will reduce the trafficking of illegal guns.

Therefore, **Women For: Orange County** is pleased to support SB 61. Thank you for your authorship of this important bill, which will keep our communities safer from gun violence.

Sincerely,
Judy Curry
President
Women For: Orange County

Advancing human and civil rights • Promoting peace and justice • Improving public education
Securing health care for all • Protecting the environment

**Exhibit 6**

**0376**



# California POLICE CHIEFS Association Inc.

P.O. Box 255745 Sacramento, California 95865-5745 Telephone (916) 481-8000 FAX (916) 481-8008
E-mail: lmcgill@californiapolicechiefs.org • Website: californiapolicechiefs.org

**EXECUTIVE BOARD**
President
RONALD A. LAWRENCE
Citrus Heights
1st Vice President
ERIC R. NUÑEZ
Los Alamitos
2nd Vice President
ROB HANDY
Huntington Beach
3rd Vice President
JEN TEJADA
Emeryville
Immediate Past President
DAVID L. SWING
Morgan Hill
Director at Large
ADAM McGILL
Novato

**DIRECTORS**
Region 1
BILL DOBBERSTEIN, Fortuna
Region 2
MICHAEL O'BRIEN, Chico
Region 3
ADAM McGILL, Novato
Region 4
TOD SOCKMAN, Galt
Region 5
ALEX GAMMELGARD, Grass Valley
Region 6
DAVE SPILLER, Pleasanton
Region 7
SCOTT HELLER, Oakdale
Region 8
MAX BOSEL, Mountain View
Region 9
ABDUL Pridgen, Seaside
Region 10
JOE GARZA, Reedley
Region 11
MARIO KRSTIC, Farmersville
Region 12
DEANNA CANTRELL, San Luis Obispo
REGION 13
JIM SMITH, Monterey Park
Region 14
CORY SIANEZ, Buena Park
Region 15
KAREN COMSTOCK, Chino
Region 16
FRANK McCOY, Oceanside
DERRICK ABELL
Manhattan Beach
ALLWYN BROWN
Richmond
TOM CHAPLIN
Walnut Creek
DAN DeSMIDT
Belmont
CRAIG CARTER
Escondido
MARK YOKOYAMA
Alhambra, Retired
LUIS TORRES, Captain
San Leandro
Associate Member
RICK ARMENDARIZ, Assistant Chief
Modesto
Associate Member
JULIA ENGEN, Deputy Chief
Irvine
LESLIE MCGILL, CAE
Executive Director
Ex-Officio

April 16, 2019

Honorable Anthony Portantino
California State Senate
California State Capitol
Sacramento, CA 95814

**Senate Bill 61 (Support)**

Dear Senator Portantino,

The California Police Chiefs Association is proud to **support** SB 61, which would extend the prohibition on purchasing more than one handgun a month to all firearms, including long guns.

This bill eliminates the possibility of long guns being purchased in bulk and reduces the risk of gun violence in the state. According to the University of Pennsylvania, "a quarter of all guns used in crimes were purchased as part of a multiple-gun sale…guns purchased in bulk were up to 64% more likely to be used for illegal purposes…" SB 61 does not infringe on Californian's right to purchase a firearm, but instead reduces the risk of gun trafficking within the state.

For these reasons, we are proud to support this measure. For additional questions, please contact our Legislative Advocate, Jonathan Feldman, at jfeldman@lawpolicy.com.

Thank you,

Ronald A. Lawrence
President

Jonathan Feldman
Legislative Advocate

**Exhibit 6**
0377

Provided by LRI History LLC



February 7, 2018

Senator Anthony Portantino
California State Senate
State Capitol, Room 3083
Sacramento, CA 95814

SUBJECT: SB 61 (Portantino) – Letter of Support

Dear Senator Portantino,

Bay Area Student Activists strongly supports bill SB 61: Firearms: transfers. This bill would extend the current one-gun-every-thirty-days rule for handguns to all firearms (exempting persons possessing a hunting license).

BAStA is an entirely student-led organization that aims to uplift the voices of students, especially high school students, on issues that affect them, notably on gun control.

Currently, limitations are placed on the number of handguns a person can purchase in a month. Current law (AB 202 of the 1999-2000 session) limits the purchase of handguns from a firearms dealer to one every thirty days. Several exemptions may apply, including for those with hunting licenses, and in transfers between private parties. However, no such restrictions apply to long guns. This bill would eliminate the exemption for transfers between private parties and extend the remaining limitation on the number of handgun purchases that can be made in one month to *all firearms*.

We support this bill because firearms are all instruments designed to kill, regardless of whether a firearm is a handgun or a long gun. Gun are all a danger to society when they fall into the wrong hands, and it is appropriate to apply this common-sense regulation to all guns, not just handguns. It is worth noting that the California Department of Justice has found that half of firearms recovered from persons prohibited from possessing a firearm are long guns. There is no reason for this restriction to apply only to handguns.

Furthermore, the exemption applying currently to the handgun purchase limitation for transfers between private persons is an unnecessary exception to proper process. When the transfer of a deadly weapon takes place, proper oversight should be exercised, notably through a firearms dealer. This provides a surer process so that guns do not fall into the wrong hands than a simple transfer between two individuals, and thus helps to protect from the misuse of guns.

While Bay Area Student Activists does not affirmatively support the continued exemption of persons holding hunting licenses from common-sense gun control measures, we acknowledge

**Exhibit 6**
**0378**

**Provided by LRI History LLC**                                    **SB 61 (2019) Page 348 of 367**



BAY
AREA
STUDENT
ACTIVISTS

the rigour of the process for procuring such a license, and are therefore committed to supporting the bill as it stands.

Ultimately, the relative danger of handguns as opposed to other guns is still debated, but we know that they are *all* guns, which means that they *all* have the capability of inflicting deadly harm on anything or anyone who their owner decides to point it at.

We therefore strongly support this bill, SB 61.

We thank you for your leadership on this issue.

Sincerely,

Calvin Quick
[signed]

Legislative Coordinator
Bay Area Student Activists (BAStA)
Email: calvin@quickstonian.com; BAStA Email: bayareastudentactivists@gmail.com
Phone: 1(415) 521-9126; Fax: 1(628) 256-3552



# COALITION AGAINST GUN VIOLENCE
### A Santa Barbara County Coalition

March 18, 2019

Senator Anthony Portantino                           VIA FAX: (916) 651-4925
California State Senate
State Capitol, Room 3086
Sacramento, CA 95814

### Re: SB 61 (Portantino) Preventing Gun Trafficking

On behalf of the Coalition Against Gun Violence, a Santa Barbara County Coalition, I write in support of Senate Bill 61. This bill extends existing law that limits purchases of new handguns to no more than one gun per person per 30-day period to new long guns, including high-powered semiautomatic rifles. The bill will deter gun traffickers, who purchase firearms in bulk to sell for profit on the black market.

SB 61 will reduce the trafficking of illegal guns. This bill will reduce gun crime and save lives. For these reasons, the CAGV is in support of SB 61 and appreciates your introduction of this important measure. The Coalition Against Gun Violence urges you to sign SB 61 into law.

Sincerely,

Toni Wellen

Toni Wellen, Chair

PO Box 699, Summerland, CA 93067 • cagvsb@gmail.com • 805-564-6803 • sbcoalition.org •

**Exhibit 6**
**0380**

Provided by LRI History LLC                                      SB 61 (2019) Page 350 of 367



# COUNTY OF LOS ANGELES
## Sacramento Legislative Office
1100 K Street, Suite 400, Sacramento, California 95814
(916) 441-7888 • Fax (916) 445-1424
http://ceo.lacounty.gov

**Board of Supervisors**
HILDA L. SOLIS
First District

MARK RIDLEY-THOMAS
Second District

SHEILA KUEHL
Third District

JANICE HAHN
Fourth District

KATHRYN BARGER
Fifth District

SACHI A. HAMAI
Chief Executive Officer

March 11, 2019

BRIAN J. STIGER
Chief Legislative Representative

The Honorable Nancy Skinner, Chair
Senate Public Safety Committee
State Capitol, Room 5094
Sacramento, California 95814

**RE:** **SB 61 (Portantino), As Introduced January 3, 2019 – SUPPORT**
**Relating to Firearms: Transfers**
**Set April 2, 2019, in the Senate Public Safety Committee**

Dear Senator Skinner:

The Los Angeles County Board of Supervisors supports SB 61 (Portantino).

Current law generally prohibits an individual from making more than one application to purchase a handgun within any 30-day period. Existing law prohibits a firearms dealer from delivering a handgun to a person whenever the dealer is notified by the State Department of Justice that within the preceding 30-day period, the purchaser has made another application to purchase a handgun. SB 61 would provide that an existing law which makes it unlawful for a person to purchase more than one handgun every 30 days is applicable to all types of firearms.

The County's Department of Public Health (DPH), and their Injury and Violence Prevention Program (IVPP) indicate that laws limiting the number of firearms a person can purchase within a certain timeframe can help to reduce the number of guns that enter the secondary market—weapons that are more likely to wind up at the scene of a crime. DPH-IVPP notes that commonsense regulation of gun purchases can help to reduce gun trafficking and, in turn, gun violence. Therefore, I urge the Committee's **"AYE"** vote on SB 61. Please contact me at (916) 441-7888 or dseitz@ceo.lacounty.gov if you have any questions.

Sincerely,

Donna Seitz
Assistant Chief Legislative Representative

c:     Senator Anthony Portantino
      Each Member and Consultant,
      Senate Public Safety Committee

*"To Enrich Lives Through Effective And Caring Service"*

**Exhibit 6**
**0381**



## MICHAEL N. FEUER
CITY ATTORNEY

February 21, 2019

The Honorable Nancy Skinner
Chair, Senate Public Safety Committee
State Capitol, Room 2031
Sacramento, CA 95814

      **RE:**    **SB 61 (Portantino) Firearms: transfers.**
              **SUPPORT**

Dear Chair Skinner,

I write to express my support for SB 61 (Portantino) and respectfully request your "AYE" vote when this bill is heard in your committee. This bill would expand the prohibition on individuals from purchasing more than one handgun in any 30-day period and apply it to all firearms.

As you know, AB 202 (Knox, Chapter 128, Statutes of 1999) prohibited an individual from purchasing more than one handgun in any 30-day period. AB 809, which I authored in 2011, requires long gun data to be entered into the Automated Firearms Database, an important law enforcement tool, in a manner similar to handguns.

California Department of Justice (DOJ) data has shown that nearly 82% of the long guns sold in the state were sold as single purchases to individuals within one 30-day period. Additional data from DOJ also show that when multiple long guns are bought in a single transaction, it is twice as likely that the sale included lower receivers. These lower receivers can then be built into illegal assault weapons and sold on the black market, allowing unscrupulous individuals to circumvent California's strict gun control laws. SB 61 (Portantino) will stem the flow of long guns into the black market while having no negative effect on the overwhelming majority of gun purchasers in the state.

I would also to take this opportunity to thank the author, Senator Portantino, a longtime advocate of efforts to reduce gun violence. I am pleased to support SB 61 (Portantino). Thank you for your consideration.

Sincerely,

Michael N. Feuer
Los Angeles City Attorney

Cc:    Members and Consultants, Senate Public Safety Committee
        The Honorable Anthony Portantino, 25th Senate District

City Hall East 200 N. Main Street Room 800 Los Angeles, CA 90012  (213) 978-8100 Fax (213) 978-8312

**Exhibit 6**
**0382**



# NATIONAL SHOOTING SPORTS FOUNDATION, INC.

Headquarters: 11 Mile Hill Road, Newtown, CT 06470-2359

400 N. Capitol Street NW, Suite 475, Washington, D.C. 20001

203-426-1320 ext. 264    Cell 503-729-6325    mfindlay@nssf.org

**Michael Findlay**
Director,
Government Relations - State Affairs

March 21, 2019

The Honorable Anthony Portantino
California State Senate                     Position: Oppose
State Capitol Building
Sacramento, CA 95829                   Location: Senate Public Safety Committee

**Re: SB 61 (Portantino) Firearms: transfers (As Introduced January 3, 2019)**

Dear Senator Portantino:

As the trade association for America's firearms, ammunition, hunting, and recreational shooting sports industry, the National Shooting Sports Foundation ("NSSF") seeks to promote, protect, and preserve hunting and the shooting sports. NSSF has a membership of more than 12,000 manufacturers, distributors, firearms retailers, shooting ranges, and sportsmen's organizations, including more than 1,300 in California alone. Our manufacturer members make the firearms used by law-abiding California sportsmen, the U.S. military and law enforcement agencies throughout the state.

This is to notify you of the opposition of the National Shooting Sports Foundation (NSSF) to SB 61, as introduced, that would limit the purchase of a rifle or shotgun by anyone to one per month.

Rather than limit purchases for all individuals to one such firearm per month, experience with mass homicides and other crimes involving firearms has clearly shown that the focus should instead be on preventing criminals and individuals suffering from mental illness from acquiring firearms, not on those who are not a part of the problem.

Persons who have an intent to commit such crimes, or other illegal acts involving the use of a firearm will always be able to obtain firearms through unlawful sources without going through a licensed firearms dealer.

The restrictions proposed in SB 61 will not prevent it.

With respect to mental health practitioners and others in positions of authority who should do so, it appears there are many who do not notify the Department of Justice (DOJ) or other appropriate agencies of individuals whom they have determined are likely to be a danger to themselves or others.

Sometimes, agencies and authorities who have been notified of such persons fail to act.

This is another area that needs more focus, instead of setting arbitrary, ineffective purchase limits for the acquisition of a rifle or shotgun. There is no evidence that such a purchase limit would have an impact on the criminal misuse of firearms.

Limiting the purchases of rifles or shotguns for an entire class of citizens as proposed in SB 61 would not solve crime problems and tragedies.

Firearms ownership by individuals is a constitutionally protected right.

NSSF supports practical solutions that will ensure that unauthorized individuals do not have access to any firearm of any kind at any time.

It has sponsored the FixNics® campaign to encourage states to submit all disqualifying criminal and mental health records to the FBI's National Criminal Instant Background Check System (NICS). Since its inception, the number of disqualifying records sent by states to the FBI has increased by 200 percent and is continuing to grow, making the federal NICS background check system increasingly more effective. This is where the emphasis should be.

Limiting all adults to a maximum of one rifle or one shotgun purchase per month will not solve crime and mental health problems.

For the above reasons, the National Shooting Sports Foundation opposes the enactment of SB 61.

Should you have any questions, please contact our legislative advocate, Kathryn Lynch, at (916) 443-0202 or lynch@lynchlobby.com.

Sincerely,

Michael Findlay
Director of Government Relations – State Affairs

cc:   Senator Steven Glazer, Co-Author
      Senator Scott Wiener, Co-Author
      Mr. Anthony Williams, Legislative Affairs Secretary, Governor's Office
      Mr. Gabe Caswell, Consultant, Senate Public Safety Committee
      Mr. Eric Csizmar, Consultant, Senate Republican Caucus
      Ms. Kathryn Lynch, Legislative Advocate
      National Shooting Sports Foundation

**Exhibit 6**
**0384**
**Provided by LRI History LLC**                                        **SB 61 (2019) Page 354 of 367**



**The California
Sportsman's Lobby, Inc.**

March 21, 2019

The Honorable Anthony Portantino
California State Senate
State Capitol Building
Sacramento, CA 95829

Position: Oppose

Location: Senate Public Safety Committee

**Re: SB 61 (Portantino) Firearms: transfers (Introduced January 3, 2019)**

Dear Senator Portantino:

The California Sportsman's Lobby is a nonprofit organization of sportsman's clubs and individuals dedicated to preserving outdoor recreation in California. Our principal activities are to monitor legislation that might negatively impact hunting, fishing and other recreation, and to oppose unwise changes in the laws relating to these activities.

The California Sportsman's Lobby (CSL) promotes the conservation, enhancement, scientific management, and wise use of all our natural resources; CSL seeks an end of activities needlessly destructive to natural resources; CSL endeavors to educate and encourage the public generally, and the youth specifically, to an understanding of the advantages and importance of the conservation, enhancement, and wise use of all our natural resources; and CSL works to secure more and better outdoor opportunities for all citizens, regardless of race, creed, or color as essential to the physical and spiritual well being of all the people.

This is to notify you of the opposition of the California Sportsmen's Lobby (CSL) to SB 61.

It would unjustifiably limit the purchase of a rifle or shotgun by any lawful person to one per month.

Rather than limit such purchases by lawful individuals to one per month, experience with mass homicides and other crimes involving firearms has clearly shown that the focus should be on preventing criminals and individuals suffering from mental illness from acquiring firearms, not on those who are not a part of the problem.

Such persons will always be able to obtain firearms through unlawful sources without going through a licensed firearms dealer. The restrictions proposed in SB 61 would not prevent it.

While the purchase limit exemption in the bill is appreciated for licensed hunters, and for persons acquiring firearms at nonprofit fundraising events, it does not offset the opposed limitation on other lawful persons.

Firearms ownership by individuals is a constitutionally protected right of all adults.

**Exhibit 6
0385**

Limiting all adults to a maximum of one rifle or shotgun purchase per month will not solve crime and mental health problems.

For the above reasons, the Outdoor Sportsmen's Coalition of California opposes SB 61.

Should you have any questions, please contact our legislative advocate, Kathryn Lynch, at (916) 443-0202 or lynch@lynchlobby.com.

Sincerely,

Randall Walker
President, California Sportsman's Lobby

cc: Senator Steven Glazer, Co-Author
    Senator Scott Wiener, Co-Author
    Mr. Anthony Williams, Legislative Affairs Secretary, Governor's Office
    Mr. Gabe Caswell, Consultant, Senate Public Safety Committee
    Mr. Eric Csizmar, Consultant, Senate Republican Caucus
    Ms. Kathryn Lynch, Legislative Advocate
    California Sportsman's Lobby

**Exhibit 6**
**0386**

**Provided by LRI History LLC**



# Dedicated to Preserving Your Rights
# To Hunt and Fish
# In the State of California

March 21, 2019

The Honorable Anthony Portantino
California State Senate                          Position: Oppose
State Capitol Building
Sacramento, CA 95829                      Location: Senate Public Safety Committee

**Re: SB 61 (Portantino) Firearms: transfers (Introduced January 3, 2019)**

Dear Senator Portantino:

The Outdoor Sportsmen's Coalition of California is a nonprofit organization of sportsman's clubs and individuals dedicated to preserving outdoor recreation in California.  Our principal activities are to monitor legislation that might negatively impact hunting, fishing and other recreation, and to oppose unwise changes in laws and regulations relating to these activities.

The Outdoor Sportsmen's Coalition of California (OSCC) promotes the conservation enhancement, scientific management, and wise use of all our natural resources; OSCC seeks to end activities needlessly destructive to natural resources; OSCC endeavors to educate and encourage the public generally, and the youth specifically, to an understanding of the advantages and importance of the conservation and enhancement of our natural resources.

OSCC works to enhance outdoor opportunities for all citizens.  With several thousand members located throughout California, we stay in contact with our membership via newsletters and the internet so they can be involved as they see fit.

This is to notify you of the opposition of the Outdoor Sportsmen's Coalition of California (OSCC) to SB 61, as introduced.

It would needlessly limit the purchase of a rifle or shotgun by anyone to one per month.

Rather than limit such purchases to one firearm per month, experience with mass homicides and other crimes involving firearms has clearly shown that the focus should be on preventing criminals and individuals suffering from mental illness from acquiring firearms, not on those who are not a part of the problem.

P.O. Box 848, Fresno, CA  93712

**Exhibit 6**
**0387**

Persons who have an intent to commit such crimes, or other illegal acts involving the use of a firearm, will always be able to obtain firearms through unlawful sources without going through a licensed firearms dealer.

The restrictions proposed in SB 61 will not prevent it.

While the purchase limit exemption in the bill is appreciated for licensed hunters, and persons acquiring firearms at nonprofit fundraising events, it does not offset the needless limitation on other lawful individuals.

Firearms ownership by individuals is a constitutionally protected right of all adults.

Limiting all adults to a maximum of one rifle or shotgun purchase per month, will not solve crime and mental health problems.

For the above reasons, the Outdoor Sportsmen's Coalition of California opposes SB 61.

Should you have any questions, please contact our legislative advocate, Kathryn Lynch, at (916) 443-0202 or lynch@lynchlobby.com.

Sincerely,

Randall S. Walker

Randall Walker, President
Outdoor Sportsmen's Coalition of California

cc:  Senator Steven Glazer, Co-Author
     Senator Scott Wiener, Co-Author
     Mr. Anthony Williams, Legislative Affairs Secretary, Governor's Office
     Mr. Gabe Caswell, Consultant, Senate Public Safety Committee
     Mr. Eric Csizmar, Consultant, Senate Republican Caucus
     Ms. Kathryn Lynch, Legislative Advocate
     Outdoor Sportsmen's Coalition of California

**Exhibit 6**
**0388**




# Safari Club International
A NON-PROFIT ORGANIZATION ♦ DEDICATED TO CONSERVING WILDLIFE AND PRESERVING HUNTING



## SCI CA Coalition

March 21, 2019

The Honorable Anthony Portantino
California State Senate                    Position: Oppose
State Capitol Building
Sacramento, CA 95829                       Location: Senate Public Safety Committee

**Re: SB 61 (Portantino) Firearms: transfers (Introduced January 3, 2019)**

Dear Senator Portantino:

Safari Club International and Safari Club International Foundation (SCI) is a worldwide Non-Profit organization with the mission to protect the freedom to hunt and to promote wildlife conservation. SCI recognizes hunting as a valuable management tool. SCI currently has over 45,000 members and approximately 4,000 members in California. SCI also has 30,000 California Affiliates, 950,000 U.S. Affiliates and over 7,000,000 International Affiliates. SCI spends millions annually for Wildlife Conservation, Research and Education.

This is to notify you of the opposition of the SCI CA Coalition (SCI) to SB 61, as introduced.

It would needlessly limit the purchase of a rifle or shotgun by anyone to one per month.

While the exemption in the bill from the one gun per month limit for licensed hunters, and firearms acquired at nonprofit fundraising events, is appreciated, it does not mitigate the inappropriate limitation on others, such as recreational and competitive shooters.

Rather than limit such purchases to one firearm per month, experience with mass homicides and other crimes involving firearms has clearly shown that the focus should be on preventing criminals and individuals suffering from mental illness from acquiring firearms, not on those who are not a part of the problem.

Persons who have an intent to commit such crimes, or other illegal acts involving the use of a firearm, will always be able to obtain firearms through unlawful sources without going through a licensed firearms dealer.

The restrictions proposed in SB 61 will not prevent it.

Firearms ownership by individuals is a constitutionally protected right of all adults.

Limiting all adults to a maximum of one rifle or shotgun purchase per month will not solve crime and mental health problems.

**Exhibit 6**
**0389**

For the above reasons, SCI CA Coalition opposes the enactment of SB 61.

Should you have any questions, please contact our legislative advocate, Kathryn Lynch, at (916) 443-0202 or lynch@lynchlobby.com.

Sincerely,

Lisa C. McNamee
Co-Legislative Coordinator
SCI CA Coalition

Don Giottonini
Co-Legislative Coordinator
SCI CA Coalition

cc:  Senator Steven Glazer, Co-Author
     Senator Scott Wiener, Co-Author
     Mr. Anthony Williams, Legislative Affairs Secretary, Governor's Office
     Mr. Gabe Caswell, Consultant, Senate Public Safety Committee
     Mr. Eric Csizmar, Consultant, Senate Republican Caucus
     Ms. Kathryn Lynch, Legislative Advocate
     SCI CA Coalition

**Exhibit 6**
**0390**

**Provided by LRI History LLC**  **SB 61 (2019)  Page 360 of 367**



NATIONAL RIFLE ASSOCIATION OF AMERICA
INSTITUTE FOR LEGISLATIVE ACTION
555 CAPITOL MALL, STE 625
SACRAMENTO, CA 95814

STATE & LOCAL AFFAIRS DIVISION
DANIEL REID, WESTERN REGIONAL DIRECTOR

April 18, 2019

The Honorable Philip Ting
P.O. Box 942849, Rm 6026
Sacramento, California 94249-0019

**RE: Assembly Bill 61:** Gun violence restraining orders

**Position: OPPOSE**

Dear Assembly Member Ting:

On behalf of the National Rifle Association (NRA) and its hundreds of thousands of members in California, I write to express our opposition to Assembly Bill 61 as amended.

AB 61 would amend the "Gun Violence Restraining Order" procedures that were created by AB 1014 (2014). NRA is opposed the current GVRO procedures because they provide a mechanism for an individual to lose the right to keep and bear arms without due process of law. AB 61 would compound these problems by significantly expanding the classes of individuals who could seek a GVRO.

Under current law, only "immediate family members" and law enforcement officers can use the GVRO laws to petition to have an individual stripped of their firearm rights. AB 61 would additionally authorize employers, coworkers and employees of a secondary or postsecondary schools that the person has attended in the last six months to petition for a GVRO. By substantially increasing the numbers of people who can petition for a GVRO, this bill could open the GVRO system to abuse. A disgruntled coworker, an unhappy employer, or a controlling professor could petition to deny a person their right to bear arms if AB 61 were to become law. And, because the GVRO system already allows for *ex parte* procedures, the individual whose rights would be restricted would not have an opportunity to contest any allegations until up to 21 days after the issuance of the original order. Even if the court finds in favor of the person whose rights were restricted, it may take that individual several months to have their firearms returned.

**Exhibit 6**
0391

**Provided by LRI History LLC**

The NRA is open to discussing options to address the situations that are contemplated under this bill, however we are committed that all persons should be afforded due process prior to the removal or suspension of their constitutional rights.

For the foregoing reasons, we oppose AB 61.

Sincerely,

Daniel Reid
Western Regional Director

2

**Exhibit 6**
**0392**

The NRA is open to discussing options to address the situations that are contemplated under this bill, however we are committed that all persons should be afforded due process prior to the removal or suspension of their constitutional rights.

For the foregoing reasons, we oppose AB 61.

Sincerely,

Daniel Reid
Western Regional Director

2

**Exhibit 6**
**0392**

**Provided by LRI History LLC**          **SB 61 (2019)  Page 362 of 367**

# CONFLICT NOTIFICATION

June 11, 2019



OFFICE OF
LEGISLATIVE
COUNSEL

# SB 61

The above measure introduced by Senator Portantino and set for hearing in the

### Assembly Committee on Public Safety

appears to be in conflict with

### AB 645 - Irwin
### SB 172 - Portantino

Open the attachments included in this email for a complete list of Code Sections, Statutes Other Than Codes, Budget Items, and Constitution Sections in conflict.

---

A conflict exists when two or more bills and/or constitutional amendments amend, add, repeal, or amend and renumber the same section, article, chapter, division, title, or heading.

The enactment of these measures in their present form could give rise to a serious legal problem that may be avoided by appropriate amendments.

We urge you to consult with our Conflicts Unit at ConflictsUnit.Senate@lc.ca.gov or (916) 341-8230 at your earliest convenience.

LIS Link: For more information regarding bills in conflict, go to the Reports page in LIS and select the Canned Reports tab to research Bills that Amend Identical Code Sections and Bill Status.

**Exhibit 6**
**0393**

**Provided by LRI History LLC**                                          **SB 61 (2019) Page 363 of 367**

# Assembly Committee Rollcalls

## Public Safety

Date of Hearing: June 25, 2019

| BILL NO. | SB 23 | SB 35 | SB 42 | SB 61 |
|---|---|---|---|---|
| ACTION VOTED ON | Do pass as amended and re-refer to Cmte on Appr. | Do pass and re-refer to Cmte on Appr. | Do pass as amended and re-refer to Cmte on Appr. | Do pass and re-refer to Cmte on Appr. |
| | Aye : No | Aye : No | Aye : No | Aye : No |
| Jones-Sawyer, Chair | X : | X : | X : | X : |
| Lackey, V. Chair | X : | X : | X : | : X |
| Bauer-Kahan | X : | X : | X : | X : |
| Diep (*Mathis) | X : | X : | Not Voting | : X |
| Kamlager-Dove | Not Voting | X : | X : | Not Voting |
| Quirk | X : | X : | X : | X : |
| Santiago | X : | X : | X : | X : |
| Wicks | Not Voting | X : | X : | X : |
| | Ayes : 6 Noes : 0 | Ayes : 8 Noes : 0 | Ayes : 7 Noes : 0 | Ayes : 5 Noes : 2 |

(Note: *Indicates temporary appointment. See Assembly Daily Journal.)

RECEIVED: _____

_Reginald Byron Jones-Sawyer Sr._ , CHAIR

**Exhibit 6**
**0394**

PAGE 1

SB 61 (2019) Page 364 of 367

Provided by LRI History LLC



## LRI History LLC

intent@lrihistory.com
www.lrihistory.com
(916) 442.7660

# Assembly Fiscal Committee Materials

LRI History LLC hereby certifies that the accompanying record/s is/are true and correct copies of the original/s obtained from one or more official, public sources in California unless another source is indicated, with the following exceptions : In some cases, pages may have been reduced in size to fit an 8 ½" x 11" sized paper. Or, for readability purposes, pages may have been enlarged or cleansed of black marks or spots. Lastly, for ease of reference, paging and relevant identification have been inserted.

Exhibit 6
0395

Provided by LRI History LLC                    SB 61 (2019)  Page 365 of 367

Date of Hearing: July 10, 2019

ASSEMBLY COMMITTEE ON APPROPRIATIONS
Lorena Gonzalez, Chair
SB 61 (Portantino) – As Amended June 11, 2019

Policy Committee:  Public Safety                    Vote:   5 - 2

Urgency:  No      State Mandated Local Program:  Yes      Reimbursable:  Yes

**SUMMARY**:

This bill prohibits a person from making an application to purchase more than one firearm of any type within any 30-day period. This bill specifically prohibits a person from making an application to purchase more than one long gun in any 30-day period unless the person has a hunting license issued by the Department of Fish and Wildlife and a certificate of eligibility issued by the Department of Justice (DOJ). This bill also prohibits, beginning January 1, 2021, the sale of a semiautomatic centerfire rifle to any person under 21 years of age.

**FISCAL EFFECT**:

1) DOJ estimates an overall annual revenue reduction of 10% in fee collection (Firearms Safety and Enforcement Fund/Dealer Record of Sale Special Account) resulting from fewer firearm purchases, equating to an overall loss of $2.23 million dollars annually.

2) Sales tax revenue loss (GF) likely in the hundreds of thousands of dollars to low millions of dollars annually due to the limitation on the number of firearms that may be purchased in a 30-day period.

3) One-time costs (GF/Dealer Record of Sale Account) of $281,000 to the DOJ for limited term information technology staff and equipment to update systems to track both handguns and long guns to ensure only one purchase within a 30-day period.

**COMMENTS**:

1) **Purpose.** According to the author:

> More and more shootings are occurring with long guns so it is important that we treat the laws of both handguns and long guns the same.  The law that passed last year requiring no one under the age of 21 to purchase a firearm has exemptions that we are strengthening and tightening when it comes to the purchase of semi-automatic center fire rifle by requiring the person to obtain a [certificate of eligibility] with the DOJ as well.

2) **Dealer Record of Sale (DROS) Special Account.** The DROS Special Account has experienced significant revenue decreases in recent years to the extent that it is structurally imbalanced. Penal Code section 30015, subdivision (a) codified the allocation of $24 million dollars from the DROS Special Account to address the APPS backlog in 2013 largely resulting in the structural imbalance. AB 74 (Committee on Budget), Chapter 23, Statutes of 2019, allocates approximately $22 million dollars to backfill the DROS Special Account.

**Exhibit 6**
**0396**

Additionally, existing law specifically limits how DOJ may use DROS funds, including costs associated with the Armed Prohibited Persons System (APPS), background checks, inspection for security and safe storage, regulating transfer for sale via the internet, certain public education campaigns, private patrol operator regulations and re-testing for not unsafe handguns. DOJ is not authorized to use DROS funds for general law enforcement purposes.

Over the past five years, there is increasing litigation over whether DOJ is improperly using DROS funds. Case law prohibits taxing a constitutional right unless it is necessary to meet the "expense incident to the administration of the act and to the maintenance of public order in the matter licensed." <u>Cox v. New Hampshire</u> (1941) 312 U.S. 569, 577. Further loss of revenue to the DROS Special Account due to the reduction in the number of firearms sold may result in increased fees and a greater need to use DROS funds for general law enforcement activities. This may result in more litigation and associated costs.

3) **Related Legislation.** AB 1669 (Bonta) creates the Dealers' Record of Sale Supplemental Subaccount within the DROS Special Account to offset the reasonable costs of firearms-related regulatory and enforcement activities related to the sale, purchase, manufacturing, lawful or unlawful possession, loan, or transfer of firearms. AB 1669 is pending hearing in the Senate Public Safety Committee.

4) **Prior Legislation.**

   a) SB 1100 (Portantino), Chapter 894, Statutes of 2018, increased the minimum age, from 18 years to 21 years, for which a person may purchase a long-gun from a licensed dealer, except as specified.

   b) SB 1177 (Portantino), of the 2017-2018 Legislative Session, prohibited any person from making more than one application to purchase more than one long gun within any 30-day period. SB 1177 was vetoed by the Governor.

   c) AB 1674 (Santiago), of the 2015-2016 Legislative Session, prohibited any person from making more than one application to purchase more than one long gun within any 30-day period. SB 1674 was vetoed by the Governor.

**Analysis Prepared by**: Kimberly Horiuchi / APPR. / (916) 319-2081

**Exhibit 6**
**0397**
**Provided by LRI History LLC**
**SB 61 (2019) Page 367 of 367**



Exhibit 6
0398



LRI History LLC

intent@lrihistory.com
www.lrihistory.com
(916) 442.7660

*The Core*
*Legislative History of*

Pending California
Senate Bill 61 – Portantino
(2019-2020)

Supplement

**Exhibit 6**
**0399**

© 2019 LRI, All Rights Reserved

No part of this report may be reproduced or transmitted in any form or by any means without the express written consent of LRI History LLC.  Reproduction of any part of this report beyond permitted by the United States Copyright Act without the express written consent of the copyright owner is unlawful.

Exhibit 6
0400



# LRI History LLC

intent@lrihistory.com
www.lrihistory.com
(916) 442.7660

---

*Authentication of the Records and Table of Contents*

Core Legislative History Research Report Regarding:
Pending California SB 61 – Portantino (2019-2020)
Supplement

I, Lisa Hampton, declare that this report includes:

- *Historical documents relating to the above legislation.* These documents were obtained by the staff of LRI History LLC, or under their direction, and are true and correct copies of the originals obtained from the designated official, public sources in California unless another source is indicated, with the following exceptions: In some cases, pages may have been reduced in size to fit an 8 ½" x 11" sized paper. Or, for readability purposes, pages may have been enlarged or cleansed of black marks or spots. Lastly, paging and relevant identification have been inserted.

  Since 1983 LRI has specialized in the historical research surrounding the adoption, amendment and/or repeal of California statutes, regulations and constitutional provisions pursuant to California Code of Civil Procedure § 1859 which states in pertinent part: "In the construction of a statute the intention of the Legislature ... is to be pursued, if possible ...." Our research and expert witness services have assisted the courts in understanding and applying the underlying purpose of enactments in countless cases, such as *Redlands Community Hospital v. New England Mutual Life Insurance Co,* 23 Cal. App.4th 899 at 906 (1994). LRI also provides similar research for other states and at the federal level. (Formerly Legislative Research Institute, Legislative Research, Incorporated, and Legislative Research & Intent LLC).

- *A table of contents itemizing the documents.* This table of contents cites the sources of the documents.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct and that I could and would so testify in a court of law if called to be a witness.

Executed October 15, 2019.

Lisa Hampton, President

**Exhibit 6**
**0401**

# Table of Contents

*PRIMARY SOURCE RECORDS (UNPUBLISHED HARDCOPY):  At least one official California source is cited for the primary source records provided in this report. Multiple copies may have been obtained from various sources (primarily State Capitol, the state library system and/or legislative offices), but the clearest/most legible version was selected for this report.*

*UNITEMIZED MATERIALS BY SOURCE*

**Author's File**........................................................................................................................1

    Bill analysis........................................................................................................................2

    Unitemized materials ........................................................................................................7

    (Source: State Capitol)

**Exhibit 6**
**0402**



# LRI History LLC

intent@lrihistory.com
www.lrihistory.com
(916) 442.7660

---

# Author's File
# Materials

LRI History LLC hereby certifies that the accompanying record/s is/are true and correct copies of
the original/s obtained from one or more official, public sources in California unless another source
is indicated, with the following exceptions :  In some cases,  pages may have been reduced in size to
fit an 8 ½"  x 11" sized  paper.  Or, for readability purposes, pages may have been enlarged
or cleansed of  black marks or spots. Lastly, for ease of reference, paging and relevant identification
have been inserted.

Exhibit 6
0403
Provided by LRI History LLC
2019-SB61  Supp  Page 1 of 34



SENATE COMMITTEE ON PUBLIC SAFETY
Nancy Skinner, Chairman

## BACKGROUND INFORMATION REQUEST

*Please complete and return this form to the Senate Public Safety Committee. Please e-mail any*
*other relevant material to one of our committee assistants Sarah Loftin or Zandra Chavez.*
***PLEASE NOTE THE FOLLOWING:***

- *The Committee will contact you to set your bill.*
- *The Committee WILL NOT automatically set any bill.*
- *Letters may not be reflected in the Committee analysis of your bill, if submitted to the*
  *Committee less than 7 days from the date your bill is set to be heard (the Tuesday*
  *preceding your hearing date).*
- *If you have more than 5 support/opposition letters, please print out hard copies and*
  *deliver to the committee.*
- *Your bill may not be set until this form is completed and returned to the Committee.*
- *This form is two pages. Please complete every question. Send a copy of this completed*
  *form and any attachments to the Committee's Minority Policy Consultant, Eric Csizmar*
  *(eric.csizmar@sen.ca.gov (651-1772)).*

**Measure:** SB-61

**Author:** Portantino

**Subject:** Firearms: transfers.

**Staff Contact Name, Phone Number and E-mail: Tara McGee, 916-651-4025,**
**Tara.McGee@sen.ca.gov**

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

1. Which agency, organization, or individual requested the introduction of this bill?

   - Author Sponsored

2. Which agencies, organizations, or individuals (outside of the sponsor) have expressed support?
   Please attach copies of letters.

The Brady Campaign, California Chapter

**Exhibit 6**
**0404**

**Provided by LRI History LLC**                    **2019-SB61  Supp  Page 2 of 34**

3. Which agencies, organizations, or individuals have expressed opposition? Please attach copies of letters.

None.

4. If a similar bill has been introduced in this or any previous session, what was the number and year of its introduction?

SB 1177 (Portantino) -2017/2018

AB 1674 (Santiago)- 2015/2016

5. What problem or deficiency under current law does the bill seek and remedy? Please be as specific as possible, and include any legal or empirical information upon which the bill is based. **NOTE: Some or all of this statement may be quoted verbatim in the Committee's analysis.**

In California, existing law prohibits applying to purchase more than one handgun within a 30-day period and prohibits a firearms dealer from delivering a handgun to a person who has submitted more than one purchase application within a 30-day period. Unfortunately, when this became law it failed to include long guns. This is a simple fix to existing law that creates a safer process for the purchasing and delivering of all types of firearms in California.

6. Are you planning any amendments to be offered before the Committee hearing? If so, please describe the amendments. <u>NOTE:</u> THE HEARING OF A BILL MAY BE DELAYED IF <u>1 SIGNED AND 10 UNSIGNED COPIES</u> OF THE AMENDMENTS IN LEGISLATIVE COUNSEL FORM ARE NOT PROVIDED TO THE COMMITTEE **IN A TIMELY MANNER.**

No.

**Exhibit 6**
**0405**
**Provided by LRI History LLC**                                    **2019-SB61  Supp  Page 3 of 34**

### PROBLEM

The bulk of gun trafficking and violence has been perpetuated by handguns. For that reason, California has long had enhanced procedures in place to address that by various measures, one of which is the general limitation on a gun dealer delivering more than 1 handgun to an individual during a 30 day period. The "one gun a month" or "bulk transfer" law has numerous exemptions. Since it went into effect in 2000 the data suggests it has reduced the incidence of gun trafficking while not burdening legitimate gun owners or persons who wish to acquire guns.

Recent data suggest that long guns are becoming a significant piece of California's gun trafficking problem. Over the past ten years, Californians have typically purchased more long guns than handguns, including 538,149 guns in 2013. Of the 26,682 crime guns entered into the California Department of Justice's (DOJ) Automated Firearms Systems (AFS) database in 2009, 11,500 were long guns. Furthermore, DOJ has found that half the illegal firearms recovered from prohibited persons are long guns.

While it is currently illegal for someone under the age of 21 to purchase a firearm in California, there are exemptions to allow a firearm for active military, law enforcement and for hunting. The issue is that semi- automatic centerfire rifles are a more common choice of firearm when committing a mass shooting and is rarely used for Hunting. It is prevalent that we eliminate someone under the age of 21 years from obtaining this type of firearm.

### BACKGROUND

Over the past ten years, Californians have annually purchased more long guns than handguns. The Department of Justice began to retain records of long gun purchases on January 1, 2014. An analysis of the transaction data from the period January 2014 through June 2015 shows that 81.9% of long guns were sold as a single long gun purchase within a 30-day period. The vast majority of long gun purchasers will not be impacted by SB 61. An individual purchased 177 long guns in two transactions within a one month period (April 2014). Furthermore, sales to single individuals ranging from 5 to 54 long guns per month occurred on 1,787 occasions, totaling 12,090 guns.

DOJ data shows that when multiple long guns are transferred in a sale, it is more than twice as likely that lower receivers are included. The largest bulk sale of long guns in one month to an individual (177 long guns) was composed entirely of lower receivers, which can be built into illegal assault weapons and sold on the black market.

Preventing the flow of illegal guns is important to public safety regardless of whether the firearm is a handgun or long gun, or purchased new from a dealer or through a private party transaction. Limiting firearms sales to one gun per month is a recognized strategy to reduce gun trafficking and keep firearms out of dangerous hands.

With the recent shooting in San Diego, CA by a 19 year old with news outlets reporting he obtained the firearm legally, but has not come out of how he obtained it legally. It is important we insure there are no loopholes within the system which is why the existing hunting license and honorably retired military exemption be tightened up as to semiautomatic centerfire rifle.

### SUMMARY

In SB 61, firearms will not be delivered whenever the dealer is notified by the Department of Justice that within the preceding 30-day period the purchaser had made another application to purchase a Semi-automatic center fire rifle or handgun.

SB 61 would also prohibit the sale of a semiautomatic centerfire rifle to those under 21 years of age unless you are active military or law enforcement.

### EXISTING LAW

In 1999, legislation (AB 202) was enacted that limits purchases of handguns from licensed firearms dealers in California to no more than one per person per month. AB 202 provided a number of exemptions, including private party transactions. The purpose of the bill was to curb the illegal flow of handguns by taking the profit out of selling guns from bulk purchases on the black market. SB 61 applies existing law under AB 202 to all firearms, including long

Office of Senator Anthony J. Portantino
SB 61 – Fact Sheet
Contact: Tara McGee – (916) 651-4025 or Tara.McGee@sen.ca.gov

**Exhibit 6**
**0406**

**Provided by LRI History LLC**

guns (rifles and shotguns) [The private party exemption remains – constitutionally required].

As to long guns, SB 61 exempts licensed hunters and charity auctions from one gun a month as to long guns. However, the hunting exemption and auction exemption do not apply to semiautomatic centerfire rifles. While some of these rifles are used in hunting, manty are not.

To address this SB 61 requires a combination of two factors to exist for someone to claim an exemption from one gun a month as to semiautomatic centerfire rifles:

Acquisition by a licensed hunter at a charity auction.

Acquisition at a charity event by the holder of California DOJ Certificate of Eligibility ("COE") [Live scan based Cal-DOJ issued license].

Acquisition by a licensed hunter with a COE.

Honorably retired military with COE.

In addition, the current statute does not cover lower receivers which are considered the gun. SB 61 changes current law that lower receivers will be treated as handguns for "one gun a month" unless the gun come with a legal rifle or shotgun barrel.

## SUPPORT

Brady California United Against Gun Violence
Bay Area Student Activists (BAStA)
California Police Chiefs
City of Los Angeles
County of Los Angeles
Giffords Law Center
Physicians for Social Responsibility, SF Chapter
The Los Angeles County Board of Supervisors
Women for: Orange County

**Version:** 10/11/2019

Office of Senator Anthony J. Portantino
SB 61 – Fact Sheet
Contact: Tara McGee – (916) 651-4025 or Tara.McGee@sen.ca.gov

**Exhibit 6**
0407
Provided by LRI History LLC                    2019-SB61  Supp  Page 5 of 34

This page was left intentionally blank.

Exhibit 6
0408

Provided by LRI History LLC

2019-SB61 Supp Page 6 of 34



NATIONAL RIFLE ASSOCIATION OF AMERICA
INSTITUTE FOR LEGISLATIVE ACTION
555 CAPITOL MALL, STE 625
SACRAMENTO, CA 95814


STATE & LOCAL AFFAIRS DIVISION
DANIEL REID, WESTERN REGIONAL DIRECTOR

April 18, 2019

The Honorable Philip Ting
P.O. Box 942849, Rm 6026
Sacramento, California 94249-0019

**RE: Assembly Bill 61:** Gun violence restraining orders

**Position: OPPOSE**

Dear Assembly Member Ting:

On behalf of the National Rifle Association (NRA) and its hundreds of thousands of members in California, I write to express our opposition to Assembly Bill 61 as amended.

AB 61 would amend the "Gun Violence Restraining Order" procedures that were created by AB 1014 (2014). NRA is opposed the current GVRO procedures because they provide a mechanism for an individual to lose the right to keep and bear arms without due process of law. AB 61 would compound these problems by significantly expanding the classes of individuals who could seek a GVRO.

Under current law, only "immediate family members" and law enforcement officers can use the GVRO laws to petition to have an individual stripped of their firearm rights. AB 61 would additionally authorize employers, coworkers and employees of a secondary or postsecondary schools that the person has attended in the last six months to petition for a GVRO. By substantially increasing the numbers of people who can petition for a GVRO, this bill could open the GVRO system to abuse. A disgruntled coworker, an unhappy employer, or a controlling professor could petition to deny a person their right to bear arms if AB 61 were to become law. And, because the GVRO system already allows for *ex parte* procedures, the individual whose rights would be restricted would not have an opportunity to contest any allegations until up to 21 days after the issuance of the original order. Even if the court finds in favor of the person whose rights were restricted, it may take that individual several months to have their firearms returned.

**Exhibit 6**
**0409**

**Provided by LRI History LLC**

The NRA is open to discussing options to address the situations that are contemplated under this bill, however we are committed that all persons should be afforded due process prior to the removal or suspension of their constitutional rights.

For the foregoing reasons, we oppose AB 61.

Sincerely,

Daniel Reid
Western Regional Director

2

**Exhibit 6**
**0410**

**Provided by LRI History LLC**                    **2019-SB61  Supp  Page 8 of 34**



NATIONAL RIFLE ASSOCIATION OF AMERICA
INSTITUTE FOR LEGISLATIVE ACTION
555 CAPITOL MALL, STE 625
SACRAMENTO, CA 95814
(916) 446-2455

STATE & LOCAL AFFAIRS DIVISION
DANIEL REID, WESTERN REGIONAL DIRECTOR

April 1, 2019

The Honorable Anthony Portantino
State Capitol, Room 3086
Sacramento, California 95814

**RE: Senate Bill 61** (Portantino) – Firearms: transfers
**Position: Oppose**

Dear Senator Portantino:

On behalf of the National Rifle Association and its hundreds of thousands of members in California, I write to express our strong opposition to Senate Bill 61.

California has stringent laws when it comes to the purchase, possession, and transfer of all firearms. In order for a person to purchase any firearm in California, they must possess a firearm safety certificate, pass a criminal background check and wait 10 days prior to receipt. Additionally, current California law strictly regulates the sale/transfer of all firearms and generally requires the involvement of a licensed dealer, absent very narrow and limited circumstances. Unless the transfers are infrequent and without regularity, individuals engaging in the transfer of long guns must have a highly regulated license to sell firearms from the California Department of Justice. (Cal. Pen. Code sections 16730, 26520).

This bill aims to restrict the rights of law-abiding citizens by limiting the number of firearms they can purchase during a 30-day period. No rationale or objective data is presented in support of SB 61. It is a 'do something' knee-jerk reaction designed to inconvenience those seeking to lawfully exercise their constitutional right to purchase a rifle or shotgun while doing nothing to address the criminal misuse of firearms.

For the foregoing reasons, the National Rifle Association opposes SB 61.

Sincerely,

Daniel Reid
Western Regional Director

**Exhibit 6**
**0411**



March 4th, 2019

Honorable Senator Anthony J. Portantino
State Capitol Room 2206
Sacramento, CA 95814

**Re: Senate Bill 1177 (Portantino) – Firearms: Transfers**

**Position: Opposed**

Dear Senator Portantino,

On behalf of the California Rifle and Pistol Association (CRPA), and its members, I write to express our strong opposition to Senate Bill 61 (SB 61). SB 61 would make it a crime to attempt to purchase more than one firearm of any type within a 30-day period.

SB 61 would significantly reduce long gun sales in California. This translates into a loss of manufacturing jobs at both the state and national levels, and a significant loss of revenue for California businesses. Additionally, this bill will significantly impact the of millions of dollars of Federal Pitman Roberson tax money that would be earmarked to develop and enhance habitat critical for California's wildlife. The Department of Justice (DOJ), has estimated previous versions of this same bill's implementation alone will cost hundreds of thousands of dollars, and result in significant overtime hours for Department personal to perform the necessary analysis, development, testing, and implementation to various Department databases.

SB 61 will also effectively prohibit the creation of new businesses in California involving hands on instruction in the safe handling of firearms. Should this bill become law, certified firearm instructors would no longer be able acquire the necessary firearms without having to wait months, if not years, to conduct classes for groups such as the Boy Scouts of America, Hunter Education, Youth shooting sports, and other clubs or organizations that wish to participate in firearm safety classes.

You and your proponents argued in testimony there is no legitimate reason for anyone to need to purchase more than one firearm a month. There are, in fact, numerous legitimate recreational and Second Amendment protected reasons why an individual might want, and need, to transfer more than one firearm a month. For example, someone new to the sport of recreational competitive shooting, 'Three Gun' competitions, may very well need to purchase a pistol, shotgun, and rifle without having to wait 30 days between each purchase. This bill would require someone wanting to acquire all three types of firearms to undergo a process that would take at least 70 days assuming everything goes smoothly. The procedure for purchasing these firearms is already very time and travel intensive. Each transaction requiring a trip to the licensed dealer.

---

**Provided by LRI History LLC**



*Be Safe. Shoot Straight. Fight Back!*

**CALIFORNIA RIFLE & PISTOL ASSOCIATION**

Currently individuals in California must go through the following steps to purchase a firearm; Obtain a firearm safety certificate; Go to a California licensed firearms dealer; Complete 4473 and (Dealer Record of Sales) DROS applications; Pass the required background check; Wait the required 10 days; Go back to dealer; Perform a safe handling demonstration; Pick up first firearm. Under SB 61 the individual would have to wait the required 30 days, then go back to dealer again; and repeat the process for each subsequent purchase.

Both California and Federal law already address your concerns regarding the trafficking of firearms by narrowly limiting the number of firearms an individual can sell. Rather than having the desired effect of targeting criminals, this bill will impact only the law abiding, thereby further limiting available funding to DOJ.

SB 61, allows for numerous exemptions to the restriction which do not apply to the general public, though well intended by the author will create a nightmare DOJ and law enforcement to implement and enforce. Additionally, both you and your proponents have argued this bill is necessary because the vast majority of firearms recovered from APPS seizures are long guns. However, data from the Bureau of Alcohol, Tobacco, Firearms and Explosives, ATF, clearly shows the vast majority of firearms recovered by law enforcement are handguns, which are already subject to the 30-day restriction, illustrating the restrictions ineffectiveness at reducing crime.

Respectfully, as a reminder you and your proponents have tried three previous versions of this bill in the last three years. All vetoed by Governor Brown; 2016: AB 1674, 2017: SB 497 and in 2018: SB 1177. In his 2018 veto statement the Governor stated: "I am returning SB 1177 without my signature. This bill prohibits any person from purchasing more than one long-gun per month. I vetoed a substantially similar bill in 2016, and my views have not changed", in his 2016 veto statement Governor Brown said in part; " while well-intended, I believe this bill would have the effect of burdening lawful citizens who wish to sell certain firearms that they no longer need. Given California's stringent laws restricting gun ownership, I do not believe this additional restriction is needed". Senator, I do commend you on your perseverance; but, nothing has changed this is just a bad bill that will not curb crime and will only impact law abiding citizens. For the foregoing reasons, the California Rifle and Pistol Association strongly opposes SB 61.

Respectfully Submitted,

Roy M. Griffith Jr.
Legislative Liaison
California Rifle and Pistol Association, Inc.
rgriffith@crpa.org

CC: Tara.McGee@sen.ca.gov ; Legislative Aide



**Exhibit 6**

**0413**

**Provided by LRI History LLC**



268 Bush Street #555, San Francisco, CA 94104  415-433-2062  GIFFORDSLAWCENTER.ORG

March 26, 2019

The Honorable Nancy Skinner
Chair, Public Safety Committee
California State Senate
Sacramento, CA 95814

**Re: Support for SB 61 (Portantino) – Limiting Bulk Firearm Purchases**

Dear Senator Skinner,

On behalf of Giffords Law Center to Prevent Gun Violence, I urge you to support SB 61 (Portantino), legislation that would help curb the flow of firearms on the black market in California. Now led by former Congresswoman and shooting survivor Gabby Giffords, our organization has worked for 25 years to enact evidence-based policy reforms at the local, state, and national levels to save lives from gun violence.

In 1999, California enacted our state's one-handgun-per-month law, which generally prohibits a person from purchasing more than one new handgun from a licensed firearms dealer in any 30-day period. The law also prohibits a dealer from completing the sale of a handgun once the Department of Justice (DOJ) notifies the dealer that the person attempting to acquire the handgun has applied to purchase another handgun within the previous 30 days. In floor debates and bill analyses prepared prior to the one-handgun-per-month law's enactment, the Legislature noted that these "bulk purchase limits" would affect a very small percentage of purchasers, while effectively limiting the small number of buyers most likely to be involved in crimes and violence. This law helps to curb the flow of handguns on the illegal black market and prevents dangerous individuals from quickly amassing stockpiles of weapons.

However, current law does not apply these limitations to long guns sold by dealers. This loophole allows gun traffickers to easily purchase unlimited numbers of rifles and shotguns for illegal distribution to people who could not legally acquire them, including organized gangs and cartels, and allows individuals who intend to perpetrate violence themselves, like mass shooters, to quickly stockpile large numbers of firearms.

**SB 61 would start to close this dangerous loophole by generally extending California's existing one-handgun-per-month law to long gun purchases too.**

SB 61 would still provide targeted exceptions for licensed hunters acquiring new hunting rifles and shotguns. This bill would also still allow other individuals to lawfully purchase up to 12 new firearms per year from licensed dealers, to acquire additional firearms from unlicensed sellers (even though such transactions must be conducted through a licensed dealer), and to liquidate a collection of used firearms to a single purchaser. It would also still

Exhibit 6

allow people to loan or transfer their firearms to family members, acquaintances, and sport or hunting partners in a variety of circumstances, while placing reasonable limitations on dangerous individuals' ability to obtain mass quantities of guns for illegal purposes.

Laws limiting multiple firearm sales are important to public safety. Although bulk firearm purchases comprise a very small share of the overall market for firearms, they represent a significant source of guns sold to criminals. A 2007 University of Pennsylvania report to the National Institute of Justice found that guns purchased in a "multiple sale"—meaning guns purchased by a person who bought at least one other firearm within five business days— were up to 64% more likely to be used for illegal purposes than guns purchased individually.[i] An ATF report similarly found that purchases of multiple long guns are a "significant indicator" of gun trafficking.[ii] An ATF study of gun trafficking by one cartel in Mexico found that the cartel purchased 336 firearms in a 15-month period, including 251 long guns, and that all but one of those firearms was purchased in bulk sales from a U.S. gun dealer.[iii] Experts also identify "stockpiling weapons" as a significant warning sign of a mass shooter's violent intentions.[iv]

Additionally, a dangerous person's ability to quickly amass weapons is hazardous to public safety regardless of whether those weapons are sold by dealers or unlicensed sellers, and regardless of whether they are long guns or handguns. Treating all firearm sales equally is common sense and would further California's efforts in recent years to align the legal requirements governing handgun and long gun sales in the state. ATF has reported that long guns have become Mexican cartels' "weapons of choice,"[v] and the agency has had to implement special reporting requirements on California gun dealers to track certain multiple long gun sales because our state is such a significant source of these firearms for violent cartels over the border.[vi]

Within California, DOJ has reported that long guns comprise half the illegal firearms recovered by law enforcement from prohibited persons in this state.[vii] In addition, an examination of forensic data collected from the mass shootings that have occurred in the United States throughout the last 30 years showed that exactly half of the weapons used to perpetrate those tragedies were long guns.[viii] Curbing bulk purchases of all firearms would help keep more deadly weapons from falling into dangerous hands.

SB 61 (Portantino) will implement sensible and reasonable safeguards to curb the flow of firearms on the illegal black market and into the hands of those most likely to use these weapons in crimes and violence.

**For these reasons, we urge you to support SB 61 (Portantino).**

Sincerely,

Ari Freilich
California Legislative Affairs Director & Staff Attorney
Giffords Law Center to Prevent Gun Violence

**Exhibit 6**
0413
Provided by LRI History LLC

[i] Koper, Christopher S.; Jerry Lee Center of Criminology, Univ. of Penn., *Crime Gun Risk Factors: Buyer, Seller, Firearm, and Transaction Characteristics Associated with Gun Trafficking and Criminal Gun Use -- A Report to the National Institute of Justice, U.S. Dept. of Justice* (2007), https://www.ncjrs.gov/pdffiles1/nij/grants/221074.pdf.

[ii] U.S. Gov. Accountability Office, *Firearms Trafficking: U.S. Efforts to Combat Arms Trafficking to Mexico Face Planning and Coordination Challenges* (2009): 28, http://www.gao.gov/new.items/d09709.pdf

[iii] U.S. Dept. of Justice, Office of the Inspector General, *Review of ATF's Project Gunrunner*, November 2010, 38-39, www.justice.gov/oig/reports/ATF/e1101.pdf.

[iv] Peter Langman, Ph.D., *School Shooters: The Warning Signs*, Jul. 29, 2014, https://schoolshooters.info/sites/default/files/school_shooters_warning_signs_1.1.pdf

[v] U.S. Dept. of Justice, Office of the Inspector General, *Review of ATF's Project Gunrunner*, November 2010, 36, www.justice.gov/oig/reports/ATF/e1101.pdf.

[vi] Letter from Charles Houser, Chief, Nat'l Tracing Ctr., to Fed. Firearms Licensees, Jul. 12, 2011, 1, http://www.scribd.com/doc/61159256/ATF-Multiple-Rifle-Sale-Reporting-Requirement-Letter. See also Agency Information Collection Activities; *Proposed Collection Comments Requested: Report of Multiple Sale or Other Disposition of Certain Rifles*, 76 Fed. Reg. 24,058, 24,058, Apr. 29, 2011; Bureau of Alcohol, Tobacco, Firearms & Explosives, Q&*As for the Report of Multiple Sale or Other Disposition of Certain Rifles*, http://www.atf.gov/files/firearms/industry/080911-qa-multiple-rifles.pdf.

[vii] Data provided by the Cal. Dept. of Justice, Mar. 4, 2010.

[viii] Mark Follman *et al.*, "US Mass Shootings, 1982-2015: Data from Mother Jones' Investigation," *Mother Jones Magazine*, Dec. 28, 2012.



# COALITION AGAINST GUN VIOLENCE
## A Santa Barbara County Coalition

March 18, 2019

Senator Anthony Portantino                    VIA FAX: (916) 651-4925
California State Senate
State Capitol, Room 3086
Sacramento, CA 95814

## Re: SB 61 (Portantino) Preventing Gun Trafficking

On behalf of the Coalition Against Gun Violence, a Santa Barbara County Coalition, I write in support of
Senate Bill 61. This bill extends existing law that limits purchases of new handguns to no more than one
gun per person per 30-day period to new long guns, including high-powered semiautomatic rifles. The bill
will deter gun traffickers, who purchase firearms in bulk to sell for profit on the black market.

SB 61 will reduce the trafficking of illegal guns. This bill will reduce gun crime and save lives. For these
reasons, the CAGV is in support of SB 61 and appreciates your introduction of this important measure. The
Coalition Against Gun Violence urges you to sign SB 61 into law.

Sincerely,

*Toni Wellen*

Toni Wellen, Chair

PO Box 699, Summerland, CA 93067 • cagvsb@gmail.com • 805-564-6803 • sbcoalition.org •

**Exhibit 6**
**0417**

Provided by LRI History LLC

# FAX COVER SHEET

| | |
|---|---|
| TO | Anthony Portantino |
| COMPANY | |
| FAX NUMBER | 19166514925 |
| FROM | Kathy Lynch |
| DATE | 2019-03-22 20:15:44 GMT |
| RE | SB 61 |

## COVER MESSAGE

We are sending this communication through the MetroFax system to assure and verify delivery of our communication and to provide us with a record of the date and time of that delivery.

We will be pleased to meet with you to discuss the content of this communication. Kathy Lynch can be reached by e-mail at lynch@lynchlobby.com, by telephone at 916-443-0202, by cell at 916-838-6600, and by FAX at 916-443-7353.

We thank you for this opportunity to communicate our position on this bill.

Limiting all adults to a maximum of one rifle or shotgun purchase per month will not solve crime and mental health problems.

For the above reasons, the Outdoor Sportsmen's Coalition of California opposes SB 61.

Should you have any questions, please contact our legislative advocate, Kathryn Lynch, at (916) 443-0202 or lynch@lynchlobby.com.

Sincerely,

*Randall L. Walker*

Randall Walker
President, California Sportsman's Lobby

cc: Senator Steven Glazer, Co-Author
    Senator Scott Wiener, Co-Author
    Mr. Anthony Williams, Legislative Affairs Secretary, Governor's Office
    Mr. Gabe Caswell, Consultant, Senate Public Safety Committee
    Mr. Eric Csizmar, Consultant, Senate Republican Caucus
    Ms. Kathryn Lynch, Legislative Advocate
    California Sportsman's Lobby



# NATIONAL SHOOTING SPORTS FOUNDATION, INC.

Headquarters: 11 Mile Hill Road, Newtown, CT 06470-2359
400 N. Capitol Street NW, Suite 475, Washington, D.C. 20001
203-426-1320 ext. 264    Cell 503-729-6325    mfindlay@nssf.org

**Michael Findlay**
Director,
Government Relations - State Affairs

March 21, 2019

The Honorable Anthony Portantino
California State Senate                        Position: Oppose
State Capitol Building
Sacramento, CA 95829                     Location: Senate Public Safety Committee

**Re: SB 61 (Portantino) Firearms: transfers (As Introduced January 3, 2019)**

Dear Senator Portantino:

As the trade association for America's firearms, ammunition, hunting, and recreational shooting sports industry, the National Shooting Sports Foundation ("NSSF") seeks to promote, protect, and preserve hunting and the shooting sports. NSSF has a membership of more than 12,000 manufacturers, distributors, firearms retailers, shooting ranges, and sportsmen's organizations, including more than 1,300 in California alone. Our manufacturer members make the firearms used by law-abiding California sportsmen, the U.S. military and law enforcement agencies throughout the state.

This is to notify you of the opposition of the National Shooting Sports Foundation (NSSF) to SB 61, as introduced, that would limit the purchase of a rifle or shotgun by anyone to one per month.

Rather than limit purchases for all individuals to one such firearm per month, experience with mass homicides and other crimes involving firearms has clearly shown that the focus should instead be on preventing criminals and individuals suffering from mental illness from acquiring firearms, not on those who are not a part of the problem.

Persons who have an intent to commit such crimes, or other illegal acts involving the use of a firearm will always be able to obtain firearms through unlawful sources without going through a licensed firearms dealer.

The restrictions proposed in SB 61 will not prevent it.

With respect to mental health practitioners and others in positions of authority who should do so, it appears there are many who do not notify the Department of Justice (DOJ) or other appropriate agencies of individuals whom they have determined are likely to be a danger to themselves or others.

Sometimes, agencies and authorities who have been notified of such persons fail to act.

This is another area that needs more focus, instead of setting arbitrary, ineffective purchase limits for the acquisition of a rifle or shotgun. There is no evidence that such a purchase limit would have an impact on the criminal misuse of firearms.

Limiting the purchases of rifles or shotguns for an entire class of citizens as proposed in SB 61 would not solve crime problems and tragedies.

Firearms ownership by individuals is a constitutionally protected right.

NSSF supports practical solutions that will ensure that unauthorized individuals do not have access to any firearm of any kind at any time.

It has sponsored the FixNics® campaign to encourage states to submit all disqualifying criminal and mental health records to the FBI's National Criminal Instant Background Check System (NICS). Since its inception, the number of disqualifying records sent by states to the FBI has increased by 200 percent and is continuing to grow, making the federal NICS background check system increasingly more effective. This is where the emphasis should be.

Limiting all adults to a maximum of one rifle or one shotgun purchase per month will not solve crime and mental health problems.

For the above reasons, the National Shooting Sports Foundation opposes the enactment of SB 61.

Should you have any questions, please contact our legislative advocate, Kathryn Lynch, at (916) 443-0202 or lynch@lynchlobby.com.

Sincerely,

Michael Findlay
Director of Government Relations – State Affairs

cc:  Senator Steven Glazer, Co-Author
     Senator Scott Wiener, Co-Author
     Mr. Anthony Williams, Legislative Affairs Secretary, Governor's Office
     Mr. Gabe Caswell, Consultant, Senate Public Safety Committee
     Mr. Eric Csizmar, Consultant, Senate Republican Caucus
     Ms. Kathryn Lynch, Legislative Advocate
     National Shooting Sports Foundation

**Exhibit 6**
**0422**

**Provided by LRI History LLC**



# Dedicated to Preserving Your Rights
# To Hunt and Fish
# In the State of California

March 21, 2019

The Honorable Anthony Portantino            
California State Senate                  Position: Oppose
State Capitol Building
Sacramento, CA 95829             Location: Senate Public Safety Committee

**Re: SB 61 (Portantino) Firearms: transfers (Introduced January 3, 2019)**

Dear Senator Portantino:

The Outdoor Sportsmen's Coalition of California is a nonprofit organization of sportsman's clubs and individuals dedicated to preserving outdoor recreation in California. Our principal activities are to monitor legislation that might negatively impact hunting, fishing and other recreation, and to oppose unwise changes in laws and regulations relating to these activities.

The Outdoor Sportsmen's Coalition of California (OSCC) promotes the conservation enhancement, scientific management, and wise use of all our natural resources; OSCC seeks to end activities needlessly destructive to natural resources; OSCC endeavors to educate and encourage the public generally, and the youth specifically, to an understanding of the advantages and importance of the conservation and enhancement of our natural resources.

OSCC works to enhance outdoor opportunities for all citizens. With several thousand members located throughout California, we stay in contact with our membership via newsletters and the internet so they can be involved as they see fit.

This is to notify you of the opposition of the Outdoor Sportsmen's Coalition of California (OSCC) to SB 61, as introduced.

It would needlessly limit the purchase of a rifle or shotgun by anyone to one per month.

Rather than limit such purchases to one firearm per month, experience with mass homicides and other crimes involving firearms has clearly shown that the focus should be on preventing criminals and individuals suffering from mental illness from acquiring firearms, not on those who are not a part of the problem.

P.O. Box 848, Fresno, CA 93712

**Exhibit 6**
**0423**

Persons who have an intent to commit such crimes, or other illegal acts involving the use of a firearm, will always be able to obtain firearms through unlawful sources without going through a licensed firearms dealer.

The restrictions proposed in SB 61 will not prevent it.

While the purchase limit exemption in the bill is appreciated for licensed hunters, and persons acquiring firearms at nonprofit fundraising events, it does not offset the needless limitation on other lawful individuals.

Firearms ownership by individuals is a constitutionally protected right of all adults.

Limiting all adults to a maximum of one rifle or shotgun purchase per month, will not solve crime and mental health problems.

For the above reasons, the Outdoor Sportsmen's Coalition of California opposes SB 61.

Should you have any questions, please contact our legislative advocate, Kathryn Lynch, at (916) 443-0202 or lynch@lynchlobby.com.

Sincerely,

Randall Walker, President
Outdoor Sportsmen's Coalition of California

cc:   Senator Steven Glazer, Co-Author
      Senator Scott Wiener, Co-Author
      Mr. Anthony Williams, Legislative Affairs Secretary, Governor's Office
      Mr. Gabe Caswell, Consultant, Senate Public Safety Committee
      Mr. Eric Csizmar, Consultant, Senate Republican Caucus
      Ms. Kathryn Lynch, Legislative Advocate
      Outdoor Sportsmen's Coalition of California

**Exhibit 6**
**0424**

**Provided by LRI History LLC**



# Safari Club International

A NON-PROFIT ORGANIZATION ♦ DEDICATED TO CONSERVING WILDLIFE AND PRESERVING HUNTING



**FIRST FOR HUNTERS**



**SCI CA Coalition**

March 21, 2019

The Honorable Anthony Portantino
California State Senate
State Capitol Building
Sacramento, CA 95829

Position: Oppose

Location: Senate Public Safety Committee

**Re: SB 61 (Portantino) Firearms: transfers (Introduced January 3, 2019)**

Dear Senator Portantino:

Safari Club International and Safari Club International Foundation (SCI) is a worldwide Non-Profit organization with the mission to protect the freedom to hunt and to promote wildlife conservation. SCI recognizes hunting as a valuable management tool. SCI currently has over 45,000 members and approximately 4,000 members in California. SCI also has 30,000 California Affiliates, 950,000 U.S. Affiliates and over 7,000,000 International Affiliates. SCI spends millions annually for Wildlife Conservation, Research and Education.

This is to notify you of the opposition of the SCI CA Coalition (SCI) to SB 61, as introduced.

It would needlessly limit the purchase of a rifle or shotgun by anyone to one per month.

While the exemption in the bill from the one gun per month limit for licensed hunters, and firearms acquired at nonprofit fundraising events, is appreciated, it does not mitigate the inappropriate limitation on others, such as recreational and competitive shooters.

Rather than limit such purchases to one firearm per month, experience with mass homicides and other crimes involving firearms has clearly shown that the focus should be on preventing criminals and individuals suffering from mental illness from acquiring firearms, not on those who are not a part of the problem.

Persons who have an intent to commit such crimes, or other illegal acts involving the use of a firearm, will always be able to obtain firearms through unlawful sources without going through a licensed firearms dealer.

The restrictions proposed in SB 61 will not prevent it.

Firearms ownership by individuals is a constitutionally protected right of all adults.

Limiting all adults to a maximum of one rifle or shotgun purchase per month will not solve crime and mental health problems.

**Exhibit 6**
**0425**

For the above reasons, SCI CA Coalition opposes the enactment of SB 61.

Should you have any questions, please contact our legislative advocate, Kathryn Lynch, at (916) 443-0202 or lynch@lynchlobby.com.

Sincerely,

Lisa C. McNamee
Co-Legislative Coordinator
SCI CA Coalition

Don Giottonini
Co-Legislative Coordinator
SCI CA Coalition

cc:  Senator Steven Glazer, Co-Author
     Senator Scott Wiener, Co-Author
     Mr. Anthony Williams, Legislative Affairs Secretary, Governor's Office
     Mr. Gabe Caswell, Consultant, Senate Public Safety Committee
     Mr. Eric Csizmar, Consultant, Senate Republican Caucus
     Ms. Kathryn Lynch, Legislative Advocate
     SCI CA Coalition



# COUNTY OF LOS ANGELES
## Sacramento Legislative Office
1100 K Street, Suite 400, Sacramento, California 95814
(916) 441-7888 • Fax (916) 445-1424
http://ceo.lacounty.gov

**Board of Supervisors**
HILDA L. SOLIS
First District

MARK RIDLEY-THOMAS
Second District

SHEILA KUEHL
Third District

JANICE HAHN
Fourth District

KATHRYN BARGER
Fifth District

SACHI A. HAMAI
Chief Executive Officer

BRIAN J. STIGER
Chief Legislative Representative

March 11, 2019

The Honorable Nancy Skinner, Chair
Senate Public Safety Committee
State Capitol, Room 5094
Sacramento, California 95814

RE: **SB 61 (Portantino), As Introduced January 3, 2019 – SUPPORT**
**Relating to Firearms: Transfers**
**Set April 2, 2019, in the Senate Public Safety Committee**

Dear Senator Skinner:

The Los Angeles County Board of Supervisors supports SB 61 (Portantino).

Current law generally prohibits an individual from making more than one application to purchase a handgun within any 30-day period. Existing law prohibits a firearms dealer from delivering a handgun to a person whenever the dealer is notified by the State Department of Justice that within the preceding 30-day period, the purchaser has made another application to purchase a handgun. SB 61 would provide that an existing law which makes it unlawful for a person to purchase more than one handgun every 30 days is applicable to all types of firearms.

The County's Department of Public Health (DPH), and their Injury and Violence Prevention Program (IVPP) indicate that laws limiting the number of firearms a person can purchase within a certain timeframe can help to reduce the number of guns that enter the secondary market— weapons that are more likely to wind up at the scene of a crime. DPH-IVPP notes that commonsense regulation of gun purchases can help to reduce gun trafficking and, in turn, gun violence. Therefore, I urge the Committee's **"AYE"** vote on SB 61. Please contact me at (916) 441-7888 or dseitz@ceo.lacounty.gov if you have any questions.

Sincerely,

Donna Seitz
Assistant Chief Legislative Representative

c: Senator Anthony Portantino
Each Member and Consultant,
Senate Public Safety Committee

*"To Enrich Lives Through Effective And Caring Service"*

**Exhibit 6**
**0427**



# *California* POLICE CHIEFS *Association Inc.*

P.O. Box 255745 Sacramento, California 95865-5745 Telephone (916) 481-8000 FAX (916) 481-8008
E-mail: lmcgill@californiapolicechiefs.org • Website: californiapolicechiefs.org

**EXECUTIVE BOARD**
President
RONALD A. LAWRENCE
Citrus Heights
1st Vice President
ERIC R. NUÑEZ
Los Alamitos
2nd Vice President
ROB HANDY
Huntington Beach
3rd Vice President
JEN TEJADA
Emeryville
Immediate Past President
DAVID L. SWING
Morgan Hill
Director at Large
ADAM McGILL
Novato

**DIRECTORS**
Region 1
BILL DOBBERSTEIN, Fortuna
Region 2
MICHAEL O'BRIEN, Chico
Region 3
ADAM McGILL, Novato
Region 4
TOD SOCKMAN, Galt
Region 5
ALEX GAMMELGARD, Grass Valley
Region 6
DAVE SPILLER, Pleasanton
Region 7
SCOTT HELLER, Oakdale
Region 8
MAX BOSEL, Mountain View
Region 9
ABDUL Pridgen, Seaside
Region 10
JOE GARZA, Reedley
Region 11
MARIO KRSTIC, Farmersville
Region 12
DEANNA CANTRELL, San Luis Obispo
REGION 13
JIM SMITH, Monterey Park
Region 14
CORY SIANEZ, Buena Park
Region 15
KAREN COMSTOCK, Chino
Region 16
FRANK McCOY, Oceanside
DERRICK ABELL
Manhattan Beach
ALLWYN BROWN
Richmond
TOM CHAPLIN
Walnut Creek
DAN DeSMIDT
Belmont
CRAIG CARTER
Escondido
MARK YOKOYAMA
Alhambra, Retired
LUIS TORRES, Captain
San Leandro
Associate Member
RICK ARMENDARIZ, Assistant Chief
Modesto
Associate Member
JULIA ENGEN, Deputy Chief
Irvine
LESLIE MCGILL, CAE
Executive Director
Ex-Officio

April 16, 2019

Honorable Anthony Portantino
California State Senate
California State Capitol
Sacramento, CA 95814

**Senate Bill 61 (Support)**

Dear Senator Portantino,

The California Police Chiefs Association is proud to **support** SB 61, which would extend the prohibition on purchasing more than one handgun a month to all firearms, including long guns.

This bill eliminates the possibility of long guns being purchased in bulk and reduces the risk of gun violence in the state. According to the University of Pennsylvania, "a quarter of all guns used in crimes were purchased as part of a multiple-gun sale…guns purchased in bulk were up to 64% more likely to be used for illegal purposes…" SB 61 does not infringe on Californian's right to purchase a firearm, but instead reduces the risk of gun trafficking within the state.

For these reasons, we are proud to support this measure. For additional questions, please contact our Legislative Advocate, Jonathan Feldman, at jfeldman@lawpolicy.com.

Thank you,

Ronald A. Lawrence
President

Jonathan Feldman
Legislative Advocate

**Exhibit 6**
**0428**



## BRADY
### UNITED AGAINST GUN VIOLENCE
#### CALIFORNIA

**LEGISLATION & POLICY
CHAIR**
Amanda Wilcox
*Nevada/Placer*
P.O. Box 892
Rough & Ready, CA 95975
(530) 432-2171
CABrady@live.com

**ORGANIZING MANAGER**
Shikha Hamilton
*San Mateo Co.*

**CALIFORNIA BRADY
EXECUTIVE COMMITTEE**

**PRESIDENT**
Mattie Scott
*San Francisco Co.*

**PAST PRESIDENT**
Peggy McCrum
*Long Beach*

Griffin Dix
*Oakland/Alameda Co.*

Carol Landale
Kelli McCarthy
*San Diego County*

Loren Lieb
*San Fernando Valley*

Niki Smith
*Stockton*

Suzanne Verge
*Los Angeles*

Toni Shellen
*Tri-City/Alameda Co.*

March 18, 2019

The Honorable Anthony Portantino
California State Senate
State Capitol
Sacramento, CA 95814

**Support: SB 61 (Portantino) – Preventing Trafficking of Long Guns**

Dear Senator Portantino:

Brady California United Against Gun Violence is a grassroots organization working to reduce firearm crime, injury, and death. There are Brady chapters throughout the state, many of whose members have lost a loved one to gunfire. A key policy objective for Brady California is to disrupt the flow of illegal guns into impacted communities. SB 61 will help address this problem and Brady California stands in strong support.

In 1999, legislation (AB 202) was enacted that limits purchases of handguns from licensed firearms dealers in California to no more than one per person per 30-day period. The purpose of the bill was to curb the illegal flow of handguns by taking the profit out of selling guns from bulk purchases on the black market. SB 61 applies existing law under AB 202 to long guns, including rifles, shotguns, and lower receivers.

Under SB 61, firearms (handguns *and* long guns) will not be delivered whenever the dealer is notified by the Department of Justice that within the preceding 30-day period, the purchaser had made another application to purchase a firearm. Private party transactions will continue to be exempt. Additionally, rifle and shotgun (but not lower receiver) purchasers with a valid hunting license issued by the Department of Fish and Wildlife and the acquisition of a rifle or shotgun at an auction or similar event conducted by a nonprofit will be exempt.

It stands to reason that a person buying large quantities of guns at one time may be acting as a straw purchaser or gun trafficker. Moreover, firearms acquired this way are frequently used in crime. In fact, an ATF study of tracing data demonstrated that 22% of all handguns recovered in crime in 1999 were originally purchased as part of a multiple sale.[i] A similar study found that 20% of all handguns recovered in crime in 2000 were originally purchased as part of a multiple sale.[ii] Additionally, a University of Pennsylvania report found that a quarter of all guns used in crime were purchased as part of a multiple-gun sale and that guns purchased in bulk were up to 64% more likely to be used for illegal purposes than guns purchased individually.[iii]

**Exhibit 6**
**0429**

**Provided by LRI History LLC**

Since 1999, Californians have typically purchased more long guns than handguns every year.[iv] Currently, these long guns include high powered featureless weapons with exchangeable magazines that enable rapid reload and lower receivers, which can be assembled into illegal military-style weapons. Limiting multiple-gun sales within a short period of time for such weapons, which are more lethal than handguns, is clearly in the interest of public safety.

The Department of Justice began to retain records of long gun purchases on January 1, 2014. An analysis of the transaction data from the period January 2014 through June 2015 shows that 81.9% of long guns were sold as a single long gun purchase within a 30-day period.[v] *Clearly, the vast majority of long gun purchasers will not be impacted by SB 61.* However, at the opposite end of the spectrum, an individual purchased 177 long guns in two transactions within a one month period (April 2014).[vi] Furthermore, sales to single individuals ranging from 5 to 54 long guns per month occurred on 1,787 occasions, totaling 12,090 guns.[vii] Department data also shows that when multiple long guns are transferred in a sale, it is more than twice as likely that lower receivers are included.[viii] The largest bulk sale of long guns in one month to an individual (177 long guns) was composed *entirely* of lower receivers,[ix] which can be built into illegal assault weapons and sold on the black market.

Brady California believes that handguns and long guns should generally be subject to the same laws. Preventing the flow of illegal guns is important to public safety regardless of whether the firearm is a handgun or a long gun. Limiting firearms sales to one gun per 30-day period is a recognized strategy to reduce gun trafficking and keep firearms out of dangerous hands. Brady California thanks you for introducing SB 61.

Sincerely,

*Amanda Wilcox*

Amanda Wilcox
Legislation and Policy Chair
Brady California United Against Gun Violence

Cc: Members of Senate Public Safety Committee

---

[i] Bureau of Alcohol, Tobacco and Firearms, U.S. Department of the Treasury, *Youth Crime Gun Interdiction Initiative, Crime Gun Trace Reports (1999) National Report* 40 (Nov. 2000).
[ii] Bureau of Alcohol, Tobacco and Firearms, U.S. Department of the Treasury, *Youth Crime Gun Interdiction Initiative, Crime Gun Trace Reports (2000) National Report* 50 (July 2002).
[iii] Koper, Christopher S.; Jerry Lee Center of Criminology, Univ. of Penn., *Crime Gun Risk Factors: Buyer, Seller, Firearm, and Transaction Characteristics Associated with Gun Trafficking and Criminal Gun Use -- A report to the National Institute of Justice, U.S. Department of Justice* (2007). https://www.ncjrs.gov/pdffiles1/nij/grants/221074. pdf.
[iv] California Department of Justice, "Dealer's Record of Sale (Calendar Year Statistics),"
http://oag.ca.gov/sites/all/files/agweb/pdfs/firearms/forms/dros_chart.pdf?.
[v] Data provided by the California Department of Justice, November 3, 2015.
[vi] Data provided by the California Department of Justice, November 3, 2015.
[vii] Data provided by the California Department of Justice, November 3, 2015.
[viii] Data provided by the California Department of Justice, March 7, 2016.
[ix] Data provided by the California Department of Justice, March 7, 2016.

**Exhibit 6**
**0430**
**Provided by LRI History LLC**



February 7, 2018

Senator Anthony Portantino
California State Senate
State Capitol, Room 3083
Sacramento, CA 95814

SUBJECT: SB 61 (Portantino) – Letter of Support

Dear Senator Portantino,

Bay Area Student Activists strongly supports bill SB 61: Firearms: transfers. This bill would extend the current one-gun-every-thirty-days rule for handguns to all firearms (exempting persons possessing a hunting license).

BAStA is an entirely student-led organization that aims to uplift the voices of students, especially high school students, on issues that affect them, notably on gun control.

Currently, limitations are placed on the number of handguns a person can purchase in a month. Current law (AB 202 of the 1999-2000 session) limits the purchase of handguns from a firearms dealer to one every thirty days. Several exemptions may apply, including for those with hunting licenses, and in transfers between private parties. However, no such restrictions apply to long guns. This bill would eliminate the exemption for transfers between private parties and extend the remaining limitation on the number of handgun purchases that can be made in one month to *all firearms*.

We support this bill because firearms are all instruments designed to kill, regardless of whether a firearm is a handgun or a long gun. Gun are all a danger to society when they fall into the wrong hands, and it is appropriate to apply this common-sense regulation to all guns, not just handguns. It is worth noting that the California Department of Justice has found that half of firearms recovered from persons prohibited from possessing a firearm are long guns. There is no reason for this restriction to apply only to handguns.

Furthermore, the exemption applying currently to the handgun purchase limitation for transfers between private persons is an unnecessary exception to proper process. When the transfer of a deadly weapon takes place, proper oversight should be exercised, notably through a firearms dealer. This provides a surer process so that guns do not fall into the wrong hands than a simple transfer between two individuals, and thus helps to protect from the misuse of guns.

While Bay Area Student Activists does not affirmatively support the continued exemption of persons holding hunting licenses from common-sense gun control measures, we acknowledge

**Exhibit 6**
**0431**

**Provided by LRI History LLC**



the rigour of the process for procuring such a license, and are therefore committed to supporting the bill as it stands.

Ultimately, the relative danger of handguns as opposed to other guns is still debated, but we know that they are *all* guns, which means that they *all* have the capability of inflicting deadly harm on anything or anyone who their owner decides to point it at.

We therefore strongly support this bill, SB 61.

We thank you for your leadership on this issue.

Sincerely,

Calvin Quick
[signed]

_____

Legislative Coordinator
Bay Area Student Activists (BAStA)
Email: calvin@quickstonian.com; BAStA Email: bayareastudentactivists@gmail.com
Phone: 1(415) 521-9126; Fax: 1(628) 256-3552



HURST+BROOKS+ESPINOSA

May 3, 2019


The Honorable Anthony Portantino, Chair
Senate Appropriations Committee
State Capitol, Room 3086
Sacramento, CA 95814

RE:   SB 61 (Portantino) – Firearms: transfers (As introduced 1/3/2019)
      On Suspense File – Senate Appropriations Committee
      County of Ventura: SUPPORT

Dear Senator Portantino:

On behalf of the Ventura County Board of Supervisors, I write in support of SB 61, your measure that
would prohibit the purchase of more than one long gun during a 30-day period, except as specified. This
measure is currently on the Senate Appropriations Suspense File.

As you know, Ventura County was the site of the November 2018 shooting at the Borderline bar, which
tragically resulted in 12 deaths. This mass shooting has left our community shattered and in search of
ways to prevent similar tragedies. We appreciate the Legislature's multi-pronged effort to advance
legislation in 2019 that reduces the likelihood that persons who pose a threat to themselves or others
are restricted from possessing firearms. As a general policy, the County of Ventura supports legislation
that reduces the likelihood of accidental or intentional homicides and, in particular, mass homicides.

We believe SB 61 would be part of the solution in reducing gun violence. It would make long guns
generally subject to the same purchasing restrictions as handguns. Limitations imposed on the purchase
of handguns were enacted 20 years ago (AB 202, 1999). That legislation was intended to reduce the
illegal flow of handguns by eliminating the opportunity to sell guns from bulk purchases on the black
market. SB 61 would apply the law enacted under AB 202 to long guns, as specified. It would, however,
include several narrow exceptions.

1127 Eleventh St., Ste. 805
Sacramento, CA 95814
916.245.3445

hbeadvocacy.com

The County of Ventura is pleased to support SB 61 and thank you for your leadership in advancing this legislation. Should you have any questions about the County's position, please do not hesitate to contact me at ehe@hbeadvocacy.com or 916-272-0012. Thank you.

Sincerely,

Elizabeth Espinosa
Legislative Representative

cc:     Members and Consultants, Senate Appropriations Committee
        Ventura County Legislative Delegation

916,446,4318SHAW YODER ANTWIH                                              13:04:37  02-22-2019        1/1



## MICHAEL N. FEUER
CITY ATTORNEY

February 21, 2019

The Honorable Nancy Skinner
Chair, Senate Public Safety Committee
State Capitol, Room 2031
Sacramento, CA 95814

RE: **SB 61 (Portantino) Firearms: transfers.**
    **SUPPORT**

Dear Chair Skinner,

I write to express my support for SB 61 (Portantino) and respectfully request your "AYE" vote when this bill is heard in your committee. This bill would expand the prohibition on individuals from purchasing more than one handgun in any 30-day period and apply it to all firearms.

As you know, AB 202 (Knox, Chapter 128, Statutes of 1999) prohibited an individual from purchasing more than one handgun in any 30-day period. AB 809, which I authored in 2011, requires long gun data to be entered into the Automated Firearms Database, an important law enforcement tool, in a manner similar to handguns.

California Department of Justice (DOJ) data has shown that nearly 82% of the long guns sold in the state were sold as single purchases to individuals within one 30-day period. Additional data from DOJ also show that when multiple long guns are bought in a single transaction, it is twice as likely that the sale included lower receivers. These lower receivers can then be built into illegal assault weapons and sold on the black market, allowing unscrupulous individuals to circumvent California's strict gun control laws. SB 61 (Portantino) will stem the flow of long guns into the black market while having no negative effect on the overwhelming majority of gun purchasers in the state.

I would also to take this opportunity to thank the author, Senator Portantino, a longtime advocate of efforts to reduce gun violence. I am pleased to support SB 61 (Portantino). Thank you for your consideration.

Sincerely,

Michael N. Feuer
Los Angeles City Attorney

Cc:   Members and Consultants, Senate Public Safety Committee
      The Honorable Anthony Portantino, 25th Senate District

City Hall East 200 N. Main Street Room 800 Los Angeles, CA 90012  (213) 978-8100 Fax (213) 978-8312

**Exhibit 6**
**0435**

**Provided by LRI History LLC**                                    **2019-SB61 Supp  Page 33 of 34**



# Women For: Orange County

*Working for a Better World*

*a grassroots advocacy organization founded in 1984*

P.O. Box 5402, Irvine, California 92616, 714.590.7804

www.womenfororangecounty.org/womenforoc@aol.com

April 24, 2019

The Honorable Anthony Portantino
California State Senate
State Capitol
Sacramento, CA 95814

Re: SB 61          Position: Support

Dear Senator Portantino:

I am writing on behalf of **Women For: Orange County**. **Women For: OC** is dedicated to the attainment of peace, justice, and human and civil rights, and for that reason we are opposed to the proliferation of illegal guns in our society.

We strongly support Senate Bill 61, which would limit purchases of new long guns to one per person per 30-day period. This bill will reduce the trafficking of illegal guns.

Therefore, **Women For: Orange County** is pleased to support SB 61. Thank you for your authorship of this important bill, which will keep our communities safer from gun violence.

Sincerely,
Judy Curry
President
Women For: Orange County

Advancing human and civil rights • Promoting peace and justice • Improving public education
Securing health care for all • Protecting the environment



**Exhibit 6**
**0437**