Darren A. LaVerne* (NY 4353298)
Karen S. Kennedy* (NY 2429371)
Jessica K. Weigel* (NY 5338975)
Dayna M. Chikamoto* (NY 5487400)
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9190

Lisa Kobialka (SBN 191404)
Kramer Levin Naftalis & Frankel LLP
990 Marsh Road
Menlo Park, CA 94025
(650) 752-1711

William J. Taylor, Jr.* (NY 3958956)
Everytown Law
450 Lexington Avenue
P.O. Box. 4184
New York, NY 10017
(646) 324-8215

*Motion for *Pro Hac Vice* admission pending

*Attorneys for Amicus Curiae*
*Everytown for Gun Safety Support Fund*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

MATTHEW JONES; THOMAS FURRH; KYLE YAMAMOTO; PWGG, L.P. (d.b.a. POWAY WEAPONS AND GEAR and PWG RANGE); NORTH COUNTY SHOOTING CENTER, INC.; BEEBE FAMILY ARMS AND MUNITIONS LLC (d.b.a. BFAM and BEEBE FAMILY ARMS AND MUNITIONS); FIREARMS POLICY COALITION, INC.; FIREARMS POLICY FOUNDATION; and SECOND AMENDMENT FOUNDATION,

   Plaintiffs,

  v.

XAVIER BECERRA, in his official capacity as Attorney General of the State of California; BRENT E. ORICK, in his official capacity as Acting Director of the Department of Justice Bureau of Firearms; and DOES 1-20,

   Defendants.

Case No. 3:19-CV-01226-L-AHG

Hon. M. James Lorenz and
Magistrate Judge Allison H. Goddard

**BRIEF OF AMICUS CURIAE EVERYTOWN FOR GUN SAFETY SUPPORT FUND IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Special briefing schedule ordered.

No hearing set for this motion pursuant to Dkt. 23.

## CORPORATE DISCLOSURE STATEMENT

Everytown for Gun Safety Support Fund has no parent corporations. It has no stock and hence no publicly held company owns 10% or more of its stock.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. ii

STATEMENT OF INTEREST ............................................................................ 1

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................. 1

ARGUMENT ............................................................................................... 4

I.  RESTRICTIONS ON THE TRANSFER OF FIREARMS TO PERSONS
    UNDER 21 COMPORT WITH HISTORICAL UNDERSTANDINGS OF
    THE SECOND AMENDMENT—AND THUS REGULATE CONDUCT
    OUTSIDE ITS SCOPE ............................................................................... 4

    A.  The relevant time period for purposes of the historical analysis begins
        in 1868 when the Fourteenth Amendment was ratified. .............................. 6

    B.  For most of the history of the United States, including when the
        Second and Fourteenth Amendments were ratified, persons under 21
        were considered minors. ...................................................................... 9

    C.  Restrictions on the sale or transfer of firearms to minors have existed
        for more than 150 years. ...................................................................... 10

    D.  Plaintiffs' historical analysis based on militia laws is flawed and
        irrelevant to the constitutional analysis of California's age-based
        restriction. ...................................................................................... 13

    E.  Courts have acknowledged the longstanding history of age-based
        restrictions on the transfer of firearms and have upheld such
        restrictions. ...................................................................................... 16

II. EVEN IF CALIFORNIA PENAL LAW SECTION 27510 IS HELD TO
    BURDEN CONDUCT WITHIN THE SCOPE OF THE SECOND
    AMENDMENT, THIS COURT SHOULD UPHOLD IT APPLYING
    INTERMEDIATE SCRUTINY ...................................................................... 20

CONCLUSION ............................................................................................. 23

i

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*District of Columbia v. Heller*,
554 U.S. 570 (2008)...............................................................*passim*

*Duncan v. Becerra*,
No. 19-55376 (9th Cir.) ................................................................ 1

*Ezell v. City of Chi.*,
651 F.3d 684 (7th Cir. 2011) ......................................................... 7

*Friedman v. City of Highland Park*,
784 F.3d 406 (7th Cir. 2015........................................................... 8

*Fyock v. City of Sunnyvale*,
779 F.3d 991 (9th Cir. 2015) ................................................. 5, 8, 21

*Gould v. Morgan*,
907 F.3d 659 (1st Cir. 2018), *petition for cert. docketed*, No. 18-1272
(filed Apr. 4, 2019) ...................................................................... 7

*Jackson v. City and Cty. Of S.F.*,
746 F.3d 953 (9th Cir. 2014) ....................................................... 21

*Hirschfeld v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*,
No. 3:18-cv-00103, 2019 WL 4923955 (W.D. Va. Oct. 4, 2019), *appeal
docketed*, No. 19-2250 (4th Cir. Nov. 7, 2019) ............................. 4, 6, 18

*Horsley v. Trame*,
808 F.3d 1126 (7th Cir. 2015) ............................................. 9, 10, 19

*Lindenau v. Alexander*,
663 F.2d 68 (10th Cir. 1981) ....................................................... 16

*Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, &
Explosives*,
700 F.3d 185 (5th Cir. 2012) ..................................................*passim*

*Nat'l Rifle Ass'n of Am., Inc. v. McCraw*,
719 F.3d 338 (5th Cir. 2013) ....................................................... 19

ii

*Peruta v. Cty. of San Diego*,
    824 F.3d 919 (9th Cir. 2016) ................................................................. 6, 7

*Powell v. Tompkins*,
    926 F. Supp. 2d 367 (D. Mass. 2013), *aff'd on other grounds*, 783 F.3d
    332 (1st Cir. 2015) ............................................................................. 19

*Powers v. Ohio*,
    499 U.S. 400 (1991) ........................................................................... 16

*Presser v. Illinois*,
    116 U.S. 252 (1886) ........................................................................... 16

*Rhode v. Becerra*,
    No. 3:18-cv-00802-BEN-JLB (S.D. Cal.) ............................................... 1

*Silvester v. Harris*,
    843 F.3d 816 (9th Cir. 2016) ............................................................. 5, 21

*Silvester v. Harris*,
    No. 14-17840 (9th Cir.) ........................................................................ 1

*United States v. Chovan*,
    735 F.3d 1127 (9th Cir. 2013) ............................................................... 5

*United States v. Greeno*,
    679 F.3d 510 (6th Cir. 2012) ................................................................. 7

*United States v. Rene E.*,
    583 F.3d 8 (1st Cir. 2009) ................................................................. 6, 18

*United States v. Skoien*,
    614 F.3d 638 (7th Cir. 2010) ................................................................. 5

*United States v. Torres*,
    911 F.3d 1253 (9th Cir. 2019) ............................................................... 5

*Worman v. Healey*,
    922 F.3d 26 (1st Cir. 2018), *petition for cert. docketed*, No. 19-404
    (filed Sept. 25, 2019) ........................................................................... 8

*Young v. Hawaii*,
    922 F.3d 26 (1st Cir. 2018), *petition for cert. docketed*, No. 19-404
    (filed Sept. 25, 2019) ........................................................................... 8

**State Cases**

*Biffer v. City of Chi.*,
   116 N.E. 182 (Ill. 1917) ................................................................... 12

*Coleman v. State*,
   32 Ala. 581 (1858) ......................................................................... 11

*In re Jordan G.*,
   33 N.E.3d 162 (Ill. 2015) ............................................................... 20

*Parman v. Lemmon*,
   244 P. 227 (Kan. 1925) .................................................................. 12

*People v. Aguilar*,
   2 N.E.3d 321 (Ill. 2013) .............................................................. 6, 20

*People v. Mosley*,
   33 N.E.3d 137 (Ill. 2015) ............................................................... 20

*State v. Allen*,
   94 Ind. 441 (1884) ......................................................................... 11

*State v. Callicutt*,
   69 Tenn. 714 (1878) ....................................................................... 11

*State v. Quail*,
   92 A. 859 (Del. Gen. Sess. 1914) .................................................... 12

*State in Interest of J.M.*,
   144 So. 3d 853 (La. 2014) .............................................................. 19

*Walker v. Walker*,
   17 Ala. 396 (1850) ......................................................................... 11

*Whitt v. Whitt*,
   490 S.W.2d 159 (Tenn. 1973) ......................................................... 11

**Federal Statutes**

18 U.S.C. § 922 .............................................................. 4, 16, 17, 18

**State Statutes**

Cal. Penal Law § 27875 ................................................................ 2

Cal. Penal Law § 27510 ........................................................ *passim*

**Constitutional Provisions**

Second Amendment .............................................................. *passim*

Fourteenth Amendment ........................................................ 6, 7, 9, 14

N.C. Const. of 1868, art. XII, § 1 ................................................ 15

**Other Authorities**

2 *Annals of Cong., The Debates and Proceedings in the Cong. Of the U.S.*
(1834) ............................................................................ 15

3 *William Waller Hening, The Statutes At Large; Being A Collection Of All
The Laws Of Virginia* (1823) ................................................ 14

4 *William Waller Hening, The Statutes At Large; Being A Collection Of All
The Laws Of Virginia* (1820) ................................................ 14

6 *William Waller Hening, The Statutes At Large; Being A Collection Of All
The Laws Of Virginia* (1819) ................................................ 14

9 *William Waller Hening, The Statutes At Large; Being A Collection Of All
The Laws Of Virginia* (1821) ................................................ 14

11 *William Waller Hening, The Statutes At Large; Being A Collection Of
All The Laws Of Virginia* (1823) ........................................... 14

Bill Analysis for S.B. 1100, S. Comm. On Pub. Safety (Apr. 17, 2018) ...... 22

Bill Analysis for S.B. 1100, Assemb. Comm. On Pub. Safety (June 19,
2018) ............................................................................ 22

Blackstone, 1 *Commentaries On the Laws of England* 451 (1st ed. 1765) ...... 9

*Black's Law Dictionary* (1st ed. 1891) ...................................... 9

James Kent, 2 *Commentaries on American Law* 191 (1827), Lecture XXXI
Of Infants ................................................................... 9, 10

v

Larry D. Barnett, *The Roots of Law*, 15 Am. U. J. Gender, Soc. Pol'y & L. 613 (2007) .................................................................................................... 10

Op. of Kentucky Att'y Gen. OAG 94-14 (Mar. 3, 1994) ................................. 12

T.E. James, *The Age of* Majority, 4 Am. J. Legal Hist. 22 (1960) ................... 9

Thomas M. Cooley, *A Treatise on Constitutional Limitations* (5th ed. 1883) ........................................................................................................ 12

Vivian E. Hamilton, *Adulthood in Law and Culture*, 91 Tul. L. Rev. 55 (2016) .......................................................................................................... 9

vi

# STATEMENT OF INTEREST

*Amicus curiae* Everytown for Gun Safety Support Fund ("Everytown") is the education, research, and litigation arm of Everytown for Gun Safety, the nation's largest gun violence prevention organization, with nearly six million supporters in all fifty states, fighting for public safety measures that respect the Second Amendment and help save lives. Everytown for Gun Safety was founded in 2014 as the combined effort of Mayors Against Illegal Guns, a national, bipartisan coalition of mayors combating illegal guns and gun trafficking, and Moms Demand Action for Gun Sense in America, an organization formed after the murder of twenty children and six adults at an elementary school in Newtown, Connecticut by a 20-year-old person using a semiautomatic centerfire rifle.

Everytown's mission includes defending common-sense gun laws by filing *amicus* briefs that provide historical context and doctrinal analysis that might otherwise be overlooked. Everytown has filed such briefs in numerous Second Amendment cases, including in cases, like this one, involving challenges to restrictions on the purchase and sale of firearms. *See, e.g.*, *Duncan v. Becerra*, No. 19-55376 (9th Cir.); *Silvester v. Harris*, No. 14-17840 (9th Cir.); *Rhode v. Becerra*, No. 3:18-cv-00802-BEN-JLB (S.D. Cal.). It seeks to do the same here.

# INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs bring a Second Amendment challenge to California Penal Law section 27510, which prohibits persons licensed to sell firearms from selling or transferring

firearms to persons under 21 years of age, subject to a number of exceptions. Cal. Penal Code § 27510. The statute allows the sale and transfer of firearms other than handguns and semiautomatic centerfire rifles to a person 18 years of age or older who possesses a valid, unexpired hunting license (with prerequisite training) or who is (i) an active or reserve peace officer or federal officer or law enforcement agent who is authorized to carry a firearm in the course and scope of his or her employment; (ii) an active member of the United States Armed Forces, the National Guard, the Air National Guard, or active reserve components of the United States; or (iii) an honorably discharged member of the United States Armed Forces, the National Guard, the Air National Guard, or the active reserve components of the United States. *Id.* at § 27510(b)(1)-(3). The exceptions for law enforcement and active and reserve members of the Armed Forces also apply to the sale or transfer of semiautomatic centerfire rifles. *Id.*

Notably, the challenged statute does not restrict *possession* of firearms. Nor does the challenged statute prohibit the *acquisition* of firearms by persons aged 18 to 20 years old. Persons aged 18 to 20 may legally acquire firearms in ways not restricted by California law, including by receiving firearms as gifts from their parents or other immediate family members. *See* Cal. Penal Code § 27875(a); Defs.' Br. in Opp'n to Pls.' Mot. For Prelim. Inj. ("Defs. Opp'n") at 3-4, Dkt. 25. Accordingly, contrary to Plaintiffs' assertion, the challenged statute does not prohibit "the sale, supply, delivery, possession, or control of *any* firearm to *any* person under 21 years of age" and it does not apply to "all private party firearm transfers to persons 18 to 20 years of age." Pls.' Br. in Supp.

2

of Mot. For Prelim. Inj. ("Pls. Br.") at 1, Dkt. 21-1.

After the Supreme Court's decision in *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Ninth Circuit and other courts adopted a two-step framework for evaluating Second Amendment challenges to laws like the statute at issue here. Under the first step, courts look to the historical record to determine whether the conduct restricted by the statute traditionally has been protected by the Second Amendment. As set forth below, for more than 150 years, courts and legal scholars have considered laws restricting the ability of persons under 21 (the age of majority under the common law) to purchase firearms to be consistent with the Second Amendment. Indeed, the Supreme Court acknowledged in *Heller* that the Second Amendment right "was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose[,]" and that longstanding forms of firearms regulation including "laws imposing conditions and qualifications on the commercial sale of arms" are "presumptively lawful." *Id.* at 626-27 & n.26. Accordingly, California Penal Law § 27510 does not infringe upon a right protected by the Second Amendment.

Moreover, even if the law did burden conduct within the scope of the Second Amendment, § 27510 would be constitutional under the second step of the relevant analysis. That step applies a "means-end" test which, in this Circuit and with regard to the conduct restricted by this statute, asks whether the statute survives intermediate scrutiny—that is, whether there is a reasonable fit between the challenged regulation and a substantial government interest. Given the importance of the goal of the statute—

3

protecting public safety and reducing gun violence—and the targeted nature of the regulation, § 27510 survives intermediate scrutiny.

For these reasons, courts, including the Fifth Circuit, have upheld age-based restrictions on firearms transfers against Second Amendment challenges. *See, e.g.*, *Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185 (5th Cir. 2012) ("*BATFE*") (upholding federal criminal statutes making it unlawful for federal firearms licensees to sell handguns and handgun ammunition to persons under 21 years of age, 18 U.S.C. § 922(b)(1) and (c)(1), and federal regulations implementing those statutes); *Hirschfeld v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, No. 3:18-cv-00103, 2019 WL 4923955 (W.D. Va. Oct. 4, 2019) (same), *appeal docketed*, No. 19-2250 (4th Cir. Nov. 7, 2019). We respectfully submit that this Court should do the same. Plaintiffs' motion for a preliminary injunction should be denied because Plaintiffs are not likely to succeed on the merits of their claim.[1]

## **ARGUMENT**

**I.** **RESTRICTIONS ON THE TRANSFER OF FIREARMS TO PERSONS UNDER 21 COMPORT WITH HISTORICAL UNDERSTANDINGS OF THE SECOND AMENDMENT—AND THUS REGULATE CONDUCT OUTSIDE ITS SCOPE**

The Supreme Court held in *Heller* that the Second Amendment protects an individual right to bear arms. Its opinion emphasized, however, that this right "is not

---

[1] For the reasons set forth in the State's opposition, Plaintiffs have also failed to demonstrate the other preliminary injunction factors. *See* Defs. Opp'n at 26-30.

EVERYTOWN'S AMICUS CURIAE BRIEF IN SUPPORT          CASE NO. 19-CV-01226-L-AHG
OF DEFS. OPP. TO MOT. FOR PRELIM. INJUNCTION

unlimited," and that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms." 554 U.S. at 626. Those longstanding prohibitions include "laws imposing conditions and qualifications on the commercial sale of arms," which are "presumptively lawful regulatory measures." *Id.* at 626-27 & n. 26. These "exclusions need not mirror limits that were on the books in 1791." *United States v. Skoien*, 614 F.3d 638, 641 (7th Cir. 2010) (en banc); *see Fyock v. City of Sunnyvale*, 779 F.3d 991, 997 (9th Cir. 2015).

As noted, the Ninth Circuit applies a two-step framework to assess whether a law violates the Second Amendment. The first step asks "whether the challenged law burdens conduct protected by the Second Amendment." *United States v. Chovan*, 735 F.3d 1127, 1136 (9th Cir. 2013). Courts examine "whether there is persuasive historical evidence showing that the regulation does not impinge on the Second Amendment right as it was historically understood." *Silvester v. Harris*, 843 F.3d 816, 821 (9th Cir. 2016). Laws restricting conduct that was historically understood to fall outside of the Second Amendment's scope may be upheld at this first step, without proceeding to the step-two scrutiny analysis. *Id.* at 829-30.

That is precisely the situation here. Restrictions on the sale or transfer of firearms to persons under the age of 21 are a "longstanding" form of firearms regulation that "historically has fallen outside the scope of the Second Amendment," *United States v. Torres*, 911 F.3d 1253, 1258 (9th Cir. 2019). As the State demonstrates in its opposition, *see* Defs. Opp'n at 7-9, Plaintiffs' motion for a preliminary injunction thus fails at step

5

one of the constitutional analysis, and the Court need not reach the second step of its inquiry. *See Peruta v. Cty. of San Diego*, 824 F.3d 919, 942 (9th Cir. 2016) (en banc) (holding, based on historical analysis alone, that law prohibiting persons from carrying loaded or unloaded concealed weapons, subject to a license-based exception, did not violate the Second Amendment); *United States v. Rene E.*, 583 F.3d 8, 12, 16 (1st Cir. 2009) (holding, based on historical analysis alone, that law regulating possession of handguns by juveniles did not violate the Second Amendment); *People v. Aguilar*, 2 N.E.3d 321, 329 (Ill. 2013) (historical evidence set forth in other decisions supports "the obvious and undeniable conclusion that the possession of handguns by minors is conduct that falls outside the scope of the second amendment's protection"); *cf. BATFE*, 700 F.3d at 204 ("Although we are inclined to uphold the challenged federal laws at step one of our analytical framework, in an abundance of caution, we proceed to step two."); *Hirschfeld*, 2019 WL 4923955, at *7 (following the Fifth Circuit's decision to proceed to step two despite holding that "based on the reasoning in *BATFE*, the historical record of legislation, court decisions, and scholarship summarized above, the Challenged Laws do not implicate Second Amendment rights").

A. **The relevant time period for purposes of the historical analysis begins in 1868 when the Fourteenth Amendment was ratified.**

As an initial matter, Plaintiffs wrongly urge the Court to focus on the historical record during the Founding Era and to discount nineteenth-century history. *See* Pls. Br. at 3-4, 11-14; Hardy Decl. in Supp. of Pls. Mot. For Prelim. Inj. ("Hardy Decl.") ¶¶ 8,

EVERYTOWN'S AMICUS CURIAE BRIEF IN SUPPORT                CASE NO. 19-CV-01226-L-AHG
OF DEFS. OPP. TO MOT. FOR PRELIM. INJUNCTION

36, Dkt. 21-11. Because Plaintiffs are challenging a state law under the Second and Fourteenth Amendments, the most relevant time period for purposes of historical analysis is 1868, when the Fourteenth Amendment was ratified and made the Second Amendment fully applicable to the States. *See Gould v. Morgan*, 907 F.3d 659, 669 (1st Cir. 2018) ("Because the challenge here is directed at a state law, the pertinent point in time would be 1868 (when the Fourteenth Amendment was ratified)."), *petition for cert. docketed*, No. 18-1272 (filed Apr. 4, 2019); *United States v. Greeno*, 679 F.3d 510, 518 (6th Cir. 2012) (noting that the proper inquiry is whether the challenged statute "regulates activity falling outside the scope of the Second Amendment right as it was understood at the relevant historical moment—1791 [Bill of Rights ratification] or 1868 [Fourteenth Amendment ratification]" (internal quotation marks and citation omitted) (alterations in original)); *Ezell v. City of Chi.*, 651 F.3d 684, 702 (7th Cir. 2011) ("[I]f the claim concerns a state or local law, the 'scope' question asks how the right was publicly understood when the Fourteenth Amendment was proposed and ratified.") (citing *McDonald v. City of Chi.*, 561 U.S. 742, 770-85 (2010) and *Heller*, 554 U.S. at 625-28); *cf. Peruta*, 824 F.3d at 933 (evaluating historical materials bearing on the adoption of both the Second and Fourteenth Amendment in considering Second Amendment challenge to county's interpretation of the statutory good cause requirement under California law).

The Court's historical inquiry should not end in 1868, however. *Heller* instructs that "examination of a variety of legal and other sources to determine the *public understanding* of a legal text in the period *after* its enactment or ratification" is also "a

7

critical tool of constitutional interpretation."[2]  *Heller*, 554 U.S. at 605 (second emphasis

added); *see also, e.g.*, *Friedman v. City of Highland Park,* 784 F.3d 406, 408 (7th Cir.

2015) (noting that "*Heller* deemed a ban on private possession of machine guns to be

obviously valid" despite the fact that "states didn't begin to regulate private use of

machine guns until 1927," and that "regulating machine guns at the federal level" did not

begin until 1934); *BATFE*, 700 F.3d at 196 ("*Heller* demonstrates that a regulation can

be deemed 'longstanding' even if it cannot boast a precise founding-era analogue.").

Indeed, the Ninth Circuit has looked to regulations as recent as the early twentieth

century, commenting that "these early twentieth century regulations might nevertheless

demonstrate a history of longstanding regulation if their historical prevalence and

significance is properly developed in the record." *Fyock*, 779 F.3d at 997 (9th Cir. 2015)

(declining to preliminarily enjoin city ordinance banning possession of large-capacity

magazines).[3]

---

[2] Plaintiffs attempt to rely on *Heller* to argue that post-Civil War sources "'do not provide as much insight into [the Second Amendment's] original meaning as earlier sources.'" Hardy Decl. ¶ 8 (quoting *Heller*, 554 U.S. at 614).  The historical inquiry in *Heller* was different, however, because the plaintiffs in that case were challenging a District of Columbia regulation under the Second Amendment.  *Heller* did not involve a challenge to a state law and a claim advanced under the Second and Fourteenth Amendments (the latter having been ratified after the Civil War), as is the case here.  *See Worman v. Healey*, 922 F.3d 26, 34 n.4 (1st Cir. 2018) (noting this distinction between *Heller* and a Second Amendment challenge to a state law), *petition for cert. docketed*, No. 19-404 (filed Sept. 25, 2019).

[3] A panel of the Ninth Circuit recognized the relevance of post-Civil War history in *Young v. Hawaii* but ascribed lesser importance to this later history even though the case involved a challenge to a state law.  *See* 896 F.3d 1044, 1059 (9th Cir. 2018), *reh'g en banc granted*, 915 F.3d 681 (9th Cir. 2019).  The *Young* panel decision, however, is no longer precedent in this Court, as the Ninth Circuit recently granted en banc review of the case.  *See* 915 F.3d at 682.

As explained below, the historical record, beginning at least as early as 1868 (and, in fact, even earlier) and extending into the modern era, supports restrictions on the sale and transfer of firearms for 18-to-20-year-old minors.

**B.** **For most of the history of the United States, including when the Second and Fourteenth Amendments were ratified, persons under 21 were considered minors.**

Plaintiffs allege that "[o]nce an individual turns 18 years old in this country, he or she is considered a legal adult free to exercise fundamental constitutional rights pursuant to the United States Constitution." 2d Am. Compl. ¶ 28, Dkt. 20. For most of our history, however, including up to and through 1868, when the Fourteenth Amendment was ratified, persons under the age of 21 were considered minors.

At common law, the age of majority was 21, and the term "minor" or "infant" applied to persons under 21. *See BATFE*, 700 F. 3d at 201; *Horsley v. Trame*, 808 F.3d 1126, 1130 (7th Cir. 2015) ("During the founding era, persons under 21 were considered minors or 'infants.'").[4]

---

[4] *See also* Kobialka Decl., Ex. 1, Blackstone, 1 *Commentaries On the Laws of England* 451 (1st ed. 1765) ("So that full age in male or female is twenty one years, . . . who till that time is an infant, and so styled in law."); Kobialka Decl., Ex. 2, Infant, *Black's Law Dictionary* (1st ed. 1891) (defining "infant" as "[a] person within age, not of age, or not of full age; a person under the age of twenty-one years; a minor"; Kobialka Decl., Ex. 3, Vivian E. Hamilton, *Adulthood in Law and Culture*, 91 Tul. L. Rev. 55, 64 (2016) ("The immediate historical origins of the U.S. age of majority lie in the English common law tradition. The American colonies, then the United States, adopted age twenty-one as the near universal age of majority. The U.S. age of majority remained unchanged from the country's founding well into the twentieth century."); Kobialka Decl., Ex. 4, T.E. James, *The Age of Majority*, 4 Am. J. Legal Hist. 22, 30 (1960) ("In the eyes of the common law, all persons were esteemed infants until they attained [21 years of age]"); *id.* at 26 (noting that at the time of the Magna Carta, the age of majority was 21 years); Kobialka Decl., Ex. 5, James Kent, 2 *Commentaries on American Law* 191 (1827), Lecture XXXI Of Infants ("T[he] necessity of guardians results from the inability of infants to take care of themselves; and this inability continues, in contemplation of law, until the infant has

9

Indeed, until 1969, the age of majority for unmarried men was 21 in every state. Kobialka Decl., Ex. 6, Larry D. Barnett, *The Roots of Law*, 15 Am. U. J. Gender, Soc. Pol'y & L. 613, 681-86 (2007); *BATFE*, 700 F.3d at 201 ("[I]t was not until the 1970s that States enacted legislation to lower the age of majority to 18."); *Horsley*, 808 F.3d at 1130 ("The age of majority was 21 until the 1970s."). Thus, historically, laws restricting the rights of minors applied to persons under the age of 21.

## C. Restrictions on the sale or transfer of firearms to minors have existed for more than 150 years.

Statutes restricting the purchase and transfer of firearms by those under the age of 21 are "longstanding," *Heller*, 554 U.S. at 626, and have existed for over 150 years. Indeed, numerous nineteenth century state laws restricted the purchase of firearms by, and transfer of firearms to, minors including laws for the states of Alabama, Delaware, Georgia, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maryland, Mississippi, Missouri, Nevada, North Carolina, Tennessee, Texas, West Virginia, Wisconsin, Wyoming, and the District of Columbia. *See, e.g.*, Kobialka Decl., Ex. 7, Chart compiling the earliest known nineteenth century state laws restricting the purchase of firearms by, and transfer of firearms to, minors; *see also BATFE* 700 F.3d at 202. Moreover, laws analogous to the Second Amendment existed in twelve of the states and the District of Columbia at the time those laws restricting the ability of minors to purchase or use particular firearms were enacted. *See* Kobialka Decl., Ex. 8, Chart compiling

attained the age of twenty-one years.").

nineteenth century state analogues to the Second Amendment.

These laws were considered by the courts and leading scholars of the era to be constitutional. For example, in 1878, the Supreme Court of Tennessee rejected a challenge to a law prohibiting the sale of pistols to minors, defined as those under age 21, holding that "we regard the acts to prevent the sale, gift, or loan of a pistol or other like dangerous weapon to a minor, not only constitutional as tending to prevent crime but wise and salutary in all its provisions."[5] *State v. Callicutt*, 69 Tenn. 714, 716-17 (1878). The court rejected the defendant's argument that "every citizen who is subject to military duty has the right 'to keep and bear arms,' and that this right necessarily implies the right to buy or otherwise acquire, and the right in others to give, sell, or loan to him." *Id.* at 716. The court explained that the challenged laws were "passed with a view to 'prevent crime'" and do not "affect" or "abridge" the constitutional right of the "'citizens of the State to keep and bear arms for their common defense.'" *Id.* Similarly, in 1858, the Supreme Court of Alabama upheld a conviction for violating a state law that made it a misdemeanor to "sell, or give, or lend" a pistol "to any male minor."[6] *Coleman v. State*, 32 Ala. 581, 582 (1858); *see also, e.g.*, *State v. Allen*, 94 Ind. 441, 443 (1884) (reversing dismissal of indictment where defendant was charged with "'unlawfully barter[ing] and trad[ing] to . . . a minor under the age of twenty-one years, a certain deadly and dangerous

---

[5] *See Whitt v. Whitt*, 490 S.W.2d 159, 160 (Tenn. 1973) (noting that Chapter 162 of the Public Acts of 1971 reduced the age of majority from 21 to 18 years of age).

[6] At that time, the age of majority in Alabama was 21. *See Walker v. Walker*, 17 Ala. 396, 399-400 (1850).

11

weyon, to wit: a pistol, commonly called a revolver, . . . .'").

Thomas Cooley, the "most famous" nineteenth century constitutional law scholar who wrote "a massively popular" constitutional law treatise, *Heller*, 554 U.S. at 616, acknowledged that "the State may prohibit the sale of arms to minors." Kobialka Decl., Ex. 9, Thomas M. Cooley, *A Treatise on Constitutional Limitations* 740 n.4 (5th ed. 1883). Cooley recognized the validity of age restrictions and concurrently noted that the "federal and State constitutions therefore provide that the right of the people to bear arms shall not be infringed." *Id.* at 429. He did not see a conflict between these principles.

Early twentieth-century court decisions also recognize the constitutionality of age-based firearms regulations. *See Parman v. Lemmon*, 244 P. 227, 229 (Kan. 1925) (rejecting constitutional challenge to a law that prohibited the sale or possession of "dangerous weapons," including pistols and revolvers, to minors); *Biffer v. City of Chi.*, 116 N.E. 182, 185 (Ill. 1917) (upholding city ordinance that denied minors permits to carry concealed weapons); *cf. State v. Quail*, 92 A. 859, 859 (Del. Gen. Sess. 1914) (denying defendant's request to dismiss indictment based on statute criminalizing "knowingly sell[ing] a deadly weapon to a minor other than an ordinary pocket knife").[7]

---

[7] *See* Kobialka Decl., Ex. 10, Op. of Kentucky Att'y Gen. OAG 94-14 (Mar. 3, 1994) (concluding that bill restricting possession of handguns by minors is constitutional under the federal and state constitutions and explaining, in relevant part, that "[g]iven the Commonwealth's history of restricting the access of minors to deadly weapons, it is not unreasonable to conclude that the Kentucky constitutional provision recognizing a right to bear arms has no application to minors").

EVERYTOWN'S AMICUS CURIAE BRIEF IN SUPPORT          CASE NO. 19-CV-01226-L-AHG
OF DEFS. OPP. TO MOT. FOR PRELIM. INJUNCTION

**D.    Plaintiffs' historical analysis based on militia laws is flawed and irrelevant to the constitutional analysis of California's age-based restriction.**

In their historical analysis, Plaintiffs place great weight on early militia laws, specifically those in existence around the time the Second Amendment was ratified in 1791. In particular, Plaintiffs contend that Second Amendment rights vest at the age of 18 because, under Colonial and Founding Era state militia laws and the Militia Act of 1792, 18-to-20-year-olds were ordered to enroll in the militia and militia duty necessarily implies the right to purchase, acquire, use, and possess firearms (the "Militia Argument"). *See* Pls. Br. at 11-14; Hardy Decl. ¶¶ 18, 26. Even aside from Plaintiffs' focus on the wrong time period for their historical analysis (*see* Section I(A), *supra*), however, Plaintiffs' Militia Argument fails on multiple grounds.

Most significantly, Plaintiffs' Militia Argument is undercut by the Supreme Court's decision in *Heller*, in which the Court decoupled the right to bear arms from the duty to serve in the militia.[8] *See Heller*, 554 U.S. at 589-94; *cf. BATFE*, 700 F.3d at 204 n.17 (noting that *Heller* held that "the right to arms is not co-extensive with the duty to serve in the militia"). On this ground alone, Plaintiffs' Militia Argument fails.

Plaintiffs' Militia Argument is also premised on an inaccurate claim that 18-to-20-

---

[8] Plaintiffs' argument that historical support for beginning militia enrollment at age 18, and the belief that 18 to 20 years of age was the best age at which to make soldiers, "provide[s] additional evidence that the right to arms encompassed 18-year-olds" (*see* Pls. Br. at 12-13) also fails on account of *Heller*. Moreover, neither opinions about the appropriate or best age for creating soldiers (*see* Pls. Br. at 12-13), nor the existence of Founding Era attitudes suggesting that minors may commonly have had familiarity with guns, swords, or other arms (*see* Hardy Decl. ¶¶ 28-31), demonstrate that minors had a right to purchase, acquire, use, or possess firearms.

year-olds were necessarily members of the militia.  *See* Pls. Br. at 11-12.  In reality, before and during the time when the Second Amendment was ratified, there was no consistent understanding that 18 was the age for militia enrollment.  Rather, the minimum age for mandatory militia enrollment fluctuated over time in the colonies.  For instance, in 1705, Virginia mandated militia duty at the age of 16.  Kobialka Decl., Ex. 11, An act for settling the Militia, ch. XXIV, 3 *William Waller Hening, The Statutes At Large; Being A Collection Of All The Laws Of Virginia* ("*Hening*") 335, 335-36 (1823).  In 1723, it raised the age to 21.  Kobialka Decl., Ex. 12, An Act for the settling and better Regulation of the Militia, ch. II, § II, 4 *Hening* 118, 118 (1820).  In 1755, it lowered the age to 18.  Kobialka Decl., Ex. 13, An Act for the better regulating and training the Militia, ch. II, §§ II-III, 6 *Hening* 530, 530-31 (1819)).  At the beginning of the Revolutionary War, Virginia lowered the minimum age to 16 (Kobialka Decl., Ex. 14, An ordinance for raising and embodying a sufficient force, for the defence and protection of this colony, ch. I, 9 *Hening* 9, 16-17 (1821)), only to raise it back to 18 after the war (Kobialka Decl., Ex. 15, An act for amending the several laws for regulating and disciplining the militia, and guarding against invasions and insurrections, ch. XXVIII, § II, 11 *Hening* 476, 476-77 (1823)).  At certain points during the relevant historical time period of 1868, and throughout the nineteenth century, several states mandated militia enrollment at 21, rather than 18, years of age.  *See, e.g.*, Kobialka Decl., Ex. 16, Chart compiling examples of state laws mandating militia enrollment at age 21.  For example, in 1868, the same year the Fourteenth Amendment was ratified, North Carolina enacted a law setting the

minimum age for militia enrollment at 21. *See* Kobialka Decl., Ex. 17, N.C. Const. of 1868, art. XII, § 1 (1873).

In addition, historical sources undermine the notion that 18-to-20-year-olds in the militia were required to supply their own firearms, and hence must have had a right to purchase them. In the debate regarding the Militia Act, Representative Jeremiah Wadsworth of Connecticut noted that "as to minors, their parents or guardians would prefer furnishing them with arms themselves." Kobialka Decl., Ex. 18, 2 *Annals of Cong., The Debates and Proceedings in the Cong. Of the U.S.* 1856 (1834). Several states even *required* the parents of militia members who were minors to provide firearms to their children. *See, e.g.*, Kobialka Decl., Ex. 19, Chart compiling examples of state laws requiring parents to furnish or provide arms to minors in the militia. Moreover, a requirement that militia members arm themselves was neither absolute nor universal; some militia laws required states to equip certain militia members with public arms (*i.e.*, arms that were the property of the state or town). *See, e.g.*, Kobialka Decl., Ex. 20, Chart compiling examples of state laws providing for distribution of public arms to militia members. Thus, even laws that did mandate militia enrollment by minors did not necessarily require that those minors arm themselves. Consequently, such laws do not imply that minors had a right to arm themselves, much less to acquire firearms from a dealer.

Moreover, Plaintiffs fail to recognize that the duty to carry arms when compelled does not create a reciprocal civilian right to use military weaponry. As a general

15

principle, a government mandate to engage in certain conduct does not create an individual right to do so.  *See, e.g.*, *Powers v. Ohio*, 499 U.S. 400, 409 (1991) (noting that, while citizens have a duty to serve on a jury, "[a]n individual juror does not have a right to sit on any particular petit jury"); *Lindenau v. Alexander*, 663 F.2d 68, 72 (10th Cir. 1981) (noting that, while there is a duty to serve in the military if drafted,"[i]t is well established that there is no right to enlist in this country's armed services").  The Supreme Court made that clear in the militia context almost 150 years ago.  *See Presser v. Illinois*, 116 U.S. 252, 263 (1886) (holding that participation in a non-government-organized militia "cannot be claimed as a right independent of law").  And it reaffirmed that principle in *Heller*, explaining that "weapons of war," not typically possessed by law-abiding citizens for lawful purposes, fall outside of the Second Amendment's scope—even though federal and state governments may mandate their use in the military or militia.  554 U.S. at 627-28.

### E. Courts have acknowledged the longstanding history of age-based restrictions on the transfer of firearms and have upheld such restrictions.

Nearly eight years ago, in *BATFE*, the Fifth Circuit upheld 18 U.S.C. §§ 922(b)(1) and (c)(1) and attendant regulations, which prohibit federally licensed firearms dealers from selling handguns or handgun ammunition to persons under the age of 21.  Following the two-step approach, the court first focused on the history of firearm age restrictions, starting with the era in which the Second Amendment was ratified.  The Fifth Circuit observed that during that era, "an expectation of sensible gun safety regulation was

16

woven into the tapestry of the guarantee," and that the gun regulations of the era "targeted particular groups for public safety reasons." 700 F.3d at 200. Noting that a person under the age of 21 was generally considered a "minor" or "infant" at the time, the Fifth Circuit concluded that "[i]f a representative citizen of the founding era conceived of a 'minor' as an individual who was unworthy of the Second Amendment guarantee, and conceived of 18-to-20-year-olds as 'minors,' then it stands to reason that the citizen would have supported restricting an 18-to-20-year-old's right to keep and bear arms." *Id.* at 202. The Fifth Circuit also took into account the history of restricting the ability of minors to purchase firearms, starting in the nineteenth century. The Court observed that "by the end of the 19th century, nineteen states and the District of Columbia had enacted laws expressly restricting the ability of persons under 21 to purchase or use particular firearms, or restricting the ability of 'minors' to purchase or use particular firearms while the state age of majority was set at age 21." *Id.* at 202. The court cited decisions by the Supreme Courts of Delaware, Indiana, and Kentucky, which recognized the validity of these laws more than a century ago. *Id.* The Fifth Circuit concluded that the restrictions found in 18 U.S.C. §§ 922(b)(1) and (c)(1) on "the ability of 18-to-20-year-olds to purchase handguns from [federally licensed firearms dealers]" were "consistent with a longstanding, historical tradition, which suggests that the conduct at issue falls outside the Second Amendment's protection." *Id.* at 203. Thus, the Fifth Circuit found it was "inclined to uphold the challenged federal laws at step one of our analytical framework." *Id.* at 204. The court, however, "in an abundance of caution," proceeded to step two and

held that the challenged laws "pass constitutional muster even if they implicate the Second Amendment guarantee." *Id.*

The same statute, 18 U.S.C. §§ 922(b)(1) and (c)(1), and attendant regulations, were recently upheld again against a Second Amendment challenge by the U.S. District Court for the Western District of Virginia. *Hirschfeld*, 2019 WL 4923955, at *1. In addressing the history of age-based firearms regulations, the court noted that "[o]ver the course of the nineteenth and early twentieth century, many states enacted restrictions on gun ownership and use by certain categories of people for public safety reasons— including those under a certain age" and "[b]y the 1920s, roughly half of the states had set 21 as the minimum age for the use and possession certain firearms." *Id.* at 3. The court went on to note that courts upheld these types of laws and "legal scholars of the time accepted that the State may prohibit the sale of arms to minors." *Id.* at *3-4 (internal quotation marks and citations omitted). Relying on this "historical record of legislation, court decisions, and scholarship" as well as the reasoning in *BATFE*, the court held that challenged laws do not implicate Second Amendment rights.[9] *Id.* at *7.

Other courts have upheld similar regulations affecting the ability of young people to obtain firearms. In *United States v. Rene E.*, 583 F.3d 8, 16 (1st Cir. 2009), the First Circuit upheld a federal ban on juvenile possession of firearms after "evaluat[ing]

---

[9] As in *BATFE*, in an abundance of caution, the court went on to the second step of analysis and determined that the challenged law survived intermediate scrutiny. *Id.* at *7.

EVERYTOWN'S AMICUS CURIAE BRIEF IN SUPPORT          CASE NO. 19-CV-01226-L-AHG
OF DEFS. OPP. TO MOT. FOR PRELIM. INJUNCTION

evidence that the founding generation would have regarded such laws as consistent with the right to keep and bear arms." In *Horsley v. Trame*, 808 F.3d 1126, 1134 (7th Cir. 2015), the Seventh Circuit upheld a state law restricting the ability of persons under the age of 21 from acquiring a firearm license without parental consent. And, in *Powell v. Tompkins*, 926 F. Supp. 2d 367, 387 (D. Mass. 2013), *aff'd on other grounds*, 783 F.3d 332 (1st Cir. 2015), the U.S. District Court for the District of Massachusetts held that Massachusetts's "proscription against grants of licenses to carry firearms to adults under the age of twenty-one comports with the Second Amendment and imposes no burden on the rights of eighteen- to twenty-year-olds to keep and bear arms." The court explained that "classification-based limitations on access to firearms for the purpose of ensuring public safety were commonplace in the early republic" and "[b]y the turn of the twentieth century, nearly twenty states had laws restricting the ability of persons under the age of twenty-one to access firearms, and over the course of the next twenty or so years, this number steadily grew." *Id.*[10]

State courts, including the Supreme Courts of Louisiana and Illinois, have also upheld age-based restrictions on firearms possession, including for persons under the age of 21. *See State in Interest of J.M.*, 144 So. 3d 853, 862 (La. 2014) (holding that the "prohibition on the juvenile possession of a handgun is the type of long-standing

---

[10] *See also Nat'l Rifle Ass'n of Am., Inc. v. McCraw*, 719 F.3d 338, 347 (5th Cir. 2013) (upholding state law requirement that applicants for concealed-carry permits be at least 21; noting that "the conduct burdened by the Texas scheme likely 'falls outside the Second Amendment's protection'").

limitation" that survives constitutional scrutiny, given that "[a]s early as in 1890, the Louisiana legislature made it a misdemeanor offense 'for any person to sell, or lease or give through himself or any other person, any pistol, dirk, bowie-knife or any other dangerous weapon, which may be carried concealed to any person under the age of twenty-one years'"); *Aguilar*, 2 N.E.3d at 329 ("Although many colonies permitted or even required minors to own and possess firearms for purposes of militia service, nothing like a right for minors to own and possess firearms has existed at any time in this nation's history."); *People v. Mosley*, 33 N.E.3d 137, 155 (Ill. 2015) (holding that possession of handguns by minors is conduct that falls outside the scope of the Second Amendment); *In re Jordan G.*, 33 N.E.3d 162, 168 (Ill. 2015) (holding that age-based restrictions on the right to keep and bear arms are historically rooted and apply "equally to those persons under 21 years of age").

In sum, state and federal courts across the country have reached a consensus that the historical record supports the longstanding nature of age-based firearms restrictions, making such restrictions permissible under the Second Amendment.

## II. EVEN IF CALIFORNIA PENAL LAW SECTION 27510 IS HELD TO BURDEN CONDUCT WITHIN THE SCOPE OF THE SECOND AMENDMENT, THIS COURT SHOULD UPHOLD IT APPLYING INTERMEDIATE SCRUTINY

Even if this Court finds that the conduct regulated by Section 27510 is within the scope of the Second Amendment, as the State thoroughly demonstrates in its opposition, *see* Defs.' Opp'n at 9-26, this Court should apply intermediate scrutiny to the law and

uphold it.

There is "near unanimity in the post-*Heller* case law that when considering regulations that fall within the scope of the Second Amendment, intermediate scrutiny is appropriate." *Silvester*, 843 F.3d at 823. In fact, the Ninth Circuit has never applied the strict scrutiny standard when adjudicating a Second Amendment challenge, even where the firearms regulation at issue restricted possession within the home. *See, e.g.*, *Fyock*, 779 F.3d at 999 (applying intermediate scrutiny to law that "restricts the ability of law-abiding citizens to possess large-capacity magazines within their homes for the purpose of self-defense"); *Jackson v. City and Cty. of S.F.*, 746 F.3d 953, 964 (9th Cir. 2014) (applying intermediate scrutiny to ordinance regulating handgun storage within the home and affirming denial of motion for preliminary injunction by plaintiffs challenging ordinance).

The challenged law does not infringe on the core of the Second Amendment right identified in *Heller*. It does not prohibit persons under 21 from possessing firearms in their home, or from acquiring any type of firearm from an immediate family member for defense in the home. Plaintiffs contend that strict scrutiny should apply but concede that "the Ninth Circuit has previously applied an intermediate scrutiny two-step analysis in other Second Amendment challenges." *See* Pls. Br. at 17. Plaintiffs go on to analyze the law only under intermediate scrutiny and provide no analysis as to strict scrutiny. *Id.* at 17-18. In light of the undeveloped nature of Plaintiffs' argument, the fact that the Ninth Circuit has never applied strict scrutiny when analyzing a Second Amendment claim, and

the fact the challenged law does not restrict possession or use within the home, the Court should reject Plaintiffs' invitation to apply strict scrutiny.  *See* Defs.' Opp'n at 9-11.

Section 27510 withstands intermediate scrutiny.  The government's stated objective—to promote public safety and curb gun violence—is undisputedly important. *See* Kobialka Decl., Ex. 21, Bill Analysis for S.B. 1100 at 2-3, Assemb. Comm. On Pub. Safety (June 19, 2018) (statement of author).  As is further set forth in Defendants' brief, restricting the ability of persons under 21 to acquire firearms is also reasonably tailored to the problem identified by the proponents of the legislation, specifically that young adults commit a disproportionate percentage of gun-related and other violent offenses. *See* Kobialka Decl., Ex. 22, Bill Analysis for S.B. 1100 at 6-7, S. Comm. on Pub. Safety (Apr. 17, 2018); Defs. Opp'n at 11-26.

# CONCLUSION

For the foregoing reasons, and those set forth by the State, the Court should deny Plaintiffs' motion for a preliminary injunction.

Respectfully submitted,

Dated: January 3, 2020

By:  *s/ Lisa Kobialka*
Lisa Kobialka (State Bar. No. 191404)
KRAMER LEVIN NAFTALIS
 & FRANKEL LLP
990 Marsh Road
Menlo Park, CA  94025
Telephone: (650) 752-1700
Facsimile: (650) 752-1800
lkobialka@kramerlevin.com

Darren A. LaVerne*
Karen S. Kennedy*
Jessica K. Weigel*
Dayna M. Chikamoto*
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9190

William J. Taylor, Jr.*
Everytown Law
450 Lexington Avenue
P.O. Box 4184
New York, NY 10017
(646) 324-8215

*Motion for *Pro Hac Vice* admission pending

*Attorneys for Everytown for Gun Safety Support Fund*