1  John W. Dillon (Bar No. 296788)
   Gatzke Dillon & Ballance LLP
2  2762 Gateway Road
3  Carlsbad, California 92009
   Telephone: (760) 431-9501
4  Facsimile: (760) 431-9512
5  E-mail:  jdillon@gdandb.com

6  Attorney for Plaintiffs
7

8              **UNITED STATES DISTRICT COURT**
9             **SOUTHERN DISTRICT OF CALIFORNIA**
10

11 MATTHEW JONES; THOMAS FURRH;          Case No.: 3:19-cv-01226-L-AHG
12 KYLE YAMAMOTO; PWGG, L.P. (d.b.a.
   POWAY WEAPONS AND GEAR and            Hon. M. James Lorenz and
13 PWG RANGE); NORTH COUNTY              Magistrate Judge Allison H. Goddard
14 SHOOTING CENTER, INC.; BEEBE
   FAMILY ARMS AND MUNITIONS LLC         **PLAINTIFFS' REPLY BRIEF**
15 (d.b.a. BFAM and BEEBE FAMILY
16 ARMS AND MUNITIONS); FIREARMS
   POLICY COALITION, INC.; FIREARMS      Complaint Filed: July 1, 2019
17 POLICY FOUNDATION; CALIFORNIA         Second Amended Complaint Filed:
18 GUN RIGHTS FOUNDATION; and            November 8, 2019
   SECOND AMENDMENT
19 FOUNDATION,
                                         No oral argument should be heard unless
20                        Plaintiffs,    ordered by the Court
21 v.
22 XAVIER BECERRA, in his official
23 capacity as Attorney General of the
   State of California, et al.,
24                        Defendants
25
26
27
28

1

# TOPICAL INDEX

2

I.    THE CHALLENGED LAW IS AN AGE-BASED GUN BAN ...................... 1

3

4

II.   THE STATE'S EXEMPTIONS ARE ILLUSORY ......................................... 1

5

III.  OVERWHELMING HISTORICAL EVIDENCE SUPPORTS
      YOUNG ADULTS' SECOND AMENDMENT RIGHTS .............................. 4

6

7

IV.   THE STATE FAILS TO ESTABLISH A
      SUBSTANTIAL INTERST ................................................................................ 6

8

9

V.    THE STATE FAILS TO ESTABLISH A
      REASONABLE FIT .......................................................................................... 6

10

11

      A.    Section 27510 Will Have No Effect on Reducing
            Gun Crime Committed by Young Adults .............................. 6

12

13

      B.    Section 27510 Will Have No Effect on
            Reducing Mass Shootings ........................................................ 8

14

15

      C.    Lethality is Not the Test ........................................................... 9

      D.    Other Preliminary Injunction Factors ................................... 9

16

VI.   CONCLUSION ........................................................................................ 10

17

18

19

20

21

22

23

24

25

26

27

28

i

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Cases**

**Page**

*Ashcroft v. ACLU*
542 U.S. 656 (2004) ................................................................. 10

*District of Columbia v. Heller*
(2008) 554 U.S. 570 ................................................................... 1

*Doe v. Harris*
772 F.3d 563 (9th Cir. 2014) .................................................. 10

*Duncan v. Becerra*
265 F. Supp. 3d 1106 (S.D. Cal. 2017) ............................... 9, 10

*Duncan v. Becerra*
366 F.Supp.3d 1131 ............................................................ 6, 8, 9

*Dymo Indus., Inc. v. Tapeprinter, Inc.*
326 F.2d 141 (9th Cir. 1964) .................................................... 7

*Hirschfeld v. BATFE*
Civil Action No. 3:18CV00103 2019 U.S. Dist. LEXIS 173077
(W.D. Va. Oct. 4, 2019) ............................................................ 5

*Kev, Inc. v. Kitsap County*
793 F. 2d 1053 (1986) ............................................................... 9

*Lydo Enterps., Inc. v. City of Las Vegas*
745 F.2d 1211 (9th Cir. 1984) ................................................ 10

*Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol,
Tobacco, Firearms & Explosives*
700 F.3d 185 ............................................................................. 1

*NRA of Am., Inc. v. McGraw*
719 F.3d 338 ............................................................................. 5

*Peruta v. County of San Diego*
824 F.3d 919 (9th Cir. 2016) ................................................ 5, 6

*Planned Parenthood Arizona, Inc. v. Humble*
753 F. 3d 905 (2014) ................................................................. 9

ii

1

# TABLE OF AUTHORITIES

2

**Cases**

3

**Page**

4

*Powell v. Tompkins*
926 F. Supp. 2d 367 ................................................................................. 6

5

*Rupp v. Becerra*
6
401 F. Supp. 3d 978 (C.D. Cal. 2019) ...................................................... 9

7

*Young v. Hawaii*
8
896 F.3d 1044 (9th Cir. 2018) .................................................................. 6

9

**Statutes**
**Cal. Penal Code**
10

§ 16960(g) ................................................................................................. 3
11

12
§ 26545 ...................................................................................................... 3

13
§ 27510 ...............................................................................................*passim*

14
§ 27510(b)(1) ............................................................................................ 2

15

§ 27510(b)(2) ............................................................................................ 2
16

17
§ 27510(b)(3)(A) ....................................................................................... 1

18
§ 27510(b)(3)(B) ....................................................................................... 2
19

20
§ 27510(b)(3)(C) ....................................................................................... 2

21
§ 27585 ...................................................................................................... 3

22
§ 27910 ...................................................................................................... 3

23

**Other Authorities**
24

25
Federal Militia Act of 1792 ....................................................................... 4

26
SB 61 .................................................................................................. 2, 10

27

28

## I.      THE CHALLENGED LAW IS AN AGE-BASED GUN BAN

Plaintiffs have shown that Penal Code § 27510 (Section 27510) is not a "modest restriction," as asserted by the State (Opp. 3), but an age-based firearm ban. The challenged law constitutes a ban on any firearm purchased or possessed by ordinary, law-abiding adults over the age 18 and under the age of 21 (Young Adults). The ban prohibits federally licensed firearms dealers and private parties from transferring firearms to Young Adults in California. The Plaintiffs are thus precluded from exercising their Second Amendment rights to keep and bear arms for self-defense and other lawful purposes — as recognized in *District of Columbia v. Heller* (2008) 554 U.S. 570, 595-596, 627 because of the challenged law and the State's policies and practices in enforcing that law.

Using the highest level of generality, the State uses a broad brush to strip law-abiding Young Adults of their Second Amendment rights by categorizing them as "disproportionally disposed to violence," "impulsive," and "reckless." Opp. 2. Even worse, the State, by citing *Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 700 F.3d 185, 200-203 (*NRA I*), categorizes law-abiding Young Adults as equivalent to felons, the mentally ill, and other "targeted groups" (Opp. 7-8) — but even these groups are still afforded due process and a trial before their enumerated constitutional rights are stripped from them. A preliminary injunction is warranted while this Court considers the constitutionality of the State's under-21 firearm ban.

## II.      THE STATE'S EXEMPTIONS ARE ILLUSORY

The State relies heavily on the challenged law's so-called exemptions, with strong emphasis on the "unexpired hunting license" exemption to say the law is a "modest restriction." Opp. 1, 2-4. Not so. The Combs declaration demonstrates that the "law enforcement" exemption (Section 27510(b)(3)(A)) does not allow law-abiding Young Adults to exercise their fundamental, individual right to keep and bear any firearm because the applicants for those jobs must be at least 20 years old *before they are even eligible to apply* for the position. Combs Dec. ¶¶20-24, **Exs. 7-11**. The

1

"active federal" law enforcement exemption (Section 27510(b)(3)(B)) is even less applicable because federal "agent" applicants must be at least 23 years. *Id.* ¶¶25, Ex. 12. The "active" military exemption (Section 27510(b)(3)(C)) is likewise illusory — it requires a binding, lengthy military service contract, physical training, relocation, and the potential to fight in wars — and, die — for our country. *Id.* ¶¶26-30, **Exs. 13-14**. All such requirements (and more) must be satisfied before a Young Adult can access any firearm in California. *Id.* ¶30.

Honorably discharged members **were** able to purchase firearms, but the individual still needed to meet all the above requirements and be honorably discharged — by then, he or she would almost certainly be over 21 years old, rendering the exemption an illusion. *Id.* ¶31. Further, the exemption is inapplicable to ordinary, law-abiding Young Adults. *Ibid.* Now, with the signing of SB 61, however, the State has further tightened the noose around those Young Adults honorably discharged because they can no longer access common semiautomatic centerfire rifles. (Section 27510(b)(2); Combs Dec. ¶¶32, 38, 40.) The amended law has gutted even the exemption.

The only other enumerated exemption in Section 27510 — the one emphasized by the State due to the obvious illusory nature of *all the other* exemptions for Young Adults — is the Section 27510(b)(1) "valid, unexpired hunter's license" exemption. However, the Section 27510(b)(1) "hunter's license" exemption — after meeting all licensing requirements, paying the fees, and passing all the tests — is *useless and inapplicable* to ordinary, law-abiding Young Adults who wish to purchase a firearm for self-defense in the home or for other lawful purposes. *See* Combs Dec. ¶¶17, 41 and fn. 2, 42; Bogan Dec. ¶¶10-32, **Exs. 2-4**. Moreover, even if Young Adults obtain a hunting license (each receiving the "training" the State alleges is necessary to safely purchase firearms), they are *still prohibited* from purchasing all common semiautomatic rifles. Combs Dec. ¶¶31-42, **Exs. 6, 15-18**. Importantly, Young Adults should *not* have to "feign" an interest in, pay for, and take hunting safety,

conservation and other courses and tests in order to exercise their Second Amendment rights. Combs Dec. ¶42; Bogan Dec. ¶¶21-23, **Ex. 2**.

Other so-called "ample" options for Young Adults are likewise illusory. "Loaning" firearms do not allow Young Adults to exercise their right to "keep and bear" firearms under the Second Amendment for self-defense in the home and for other lawful purposes. Any argument to the contrary is nonsense. The loans allow for limited possession (up to 3 days) between private individuals. Opp. 4. Licensed dealers who own ranges (like Plaintiffs PWG and NCSC) still cannot "loan" firearms to Young Adults for the purposes of shooting, as Cal. Penal Code sections 27910 and 26545 apply to loans between individuals at a licensed target facility; they do not authorize the facility to loan. *See* Opp. 4; Cal. Penal Code §§ 27910, 26545; and Phillips Dec. ¶¶3-8; Prince Dec. ¶¶2-10; and *see* Beebe Dec. ¶¶2-7.

The family member transfer is highly dependent on the individual and family circumstances. Such transfers allow only parents or grandparents to transfer firearms, not siblings, uncles, or aunts. Further, this type of limited transfer requires a number of assumptions: (a) the Young Adult has living parents/grandparents; (b) the parents/grandparents are in contact with the Young Adult; (c) the parents/grandparents are not prohibited from owning or possessing firearms; (d) the parents/grandparents possess a firearm to gift; and (e) the parents/grandparents desire to gift their firearms. As such, this is an *extraordinarily* narrow provision trumped up by the State to desperately assert Section 27510 is only a "modest restriction."

The spousal provision (Opp. 4) is similarly constrained. It requires the Young Adult to be married or get married. The spouse also must be over 21 or already be in possession of a firearm. Cal. Penal Code §§ 27585, 16960(g). The required "transmutation" of property between spouses is unknown to most ordinary, law-abiding Young Adults, likely also requiring consultation with an attorney in order to complete it properly. In short, the enumerated exemptions in Section 27510 and those ginned up by the State (Opp. 1) amount to a ruse and blur the under-21

firearm ban enacted by the Legislature and enforced by the State against ordinary, law-abiding Young Adults. Combs Dec. ¶¶16, 20, 24, 40-42.

## III.   OVERWHELMING HISTORICAL EVIDENCE SUPPORTS YOUNG ADULTS' SECOND AMENDMENT RIGHTS

According to the State, its scheme is immune from Second Amendment scrutiny because it is one of those "laws imposing conditions or qualifications on the commercial sale of arms" that the Supreme Court described as "presumptively lawful." Opp. 5-6. Two reasons render this claim meritless.

**First**, Plaintiffs have shown that Section 27510 goes well beyond *commercial* sales of arms — it affects *private* transfers of firearms, and constitutes a ban on the purchase, acquisition, transfer, possession, and control of any firearm to ordinary, law-abiding Young Adults.

**Second**, the State fails to object or provide contrary evidence regarding Plaintiffs' overwhelming historical analysis of age-based firearms restrictions on Young Adults. *See* Hardy Dec. ¶¶ 6-77, and exhibits. This historical analysis proves that Young Adults possess the same protection under the Second Amendment as adults 21 and over and that age-based restrictions are not "longstanding prohibitions" or "presumptively lawful regulatory measures" under *Heller*.

Mirroring the historical analysis used in *Heller*, Dr. Hardy provides extensive evidence showing that during the Colonial and Founding Era, "there were no age-based restrictions on the acquisition, purchase, or possession of firearms." Hardy Dec. ¶¶9-15. Further, the firearms safety regulations in place during that time "were far from anything remotely similar to a categorical firearm ban based solely on age." *Id*. ¶15. In 1791 — "the critical year for determining the [Second] amendment's historical meaning" — the minimum age for militia service in every state was eighteen. *Id*. ¶16. In fact, the Federal Militia Act of 1792 required 18-year-olds to own and possess firearms, and "'over 250 Colonial and state militia statues through 1799 mandated that persons,'" usually 16 or 18 (and older) serve in the militia using their own arms." *Id*. ¶¶23, 26. Founding Era attitudes supported the fact that Young

Adults had full Second Amendment rights. Hardy Dec. ¶¶28-31. Moreover, other laws outside of militia service, such as the "hue and cry," "watch and ward," and "*posse comitatus*" prove that Young Adults were not only expected but required to use their own arms to help enforce the law. *Id.* at ¶¶ 32-34.

Just as in the Colonial period and the Founding era, from 1800 to at least 1850, Dr. Hardy confirms that there were no age-based firearms regulations. *Id.* ¶¶35-38. After exhaustive research, Dr. Hardy rendered his "conclusions" (Hardy Dec. ¶¶66-77), and the State does not question or rebut any of this evidence.

Indeed, the State's only response is to cling primarily to *NRA I* that relies on *highly generalized* laws "targeting select groups' ability to access" firearms, which the State then characterizes "presumptively lawful regulatory measures" under *Heller*. Opp. 5, 7-8. *NRA I* was thoroughly distinguished in Plaintiffs' opening brief (Dkt. No. 21-1[Mem. 15-17]) and will not be repeated. Plaintiffs add, however, that the Fifth Circuit in *NRA I* wholly ignored the numerous Colonial and Founding Era militia statutes establishing 18 as the age of militia service and made reference to two militia statutes claiming the minimum age was 21 as a basis of upholding the more limited federal ban. But the facts are otherwise regarding those two statutes. Hardy Dec. ¶¶16-18, 19-22. This Court need not rely on a factually incorrect record.[1] More broadly, NRA I and other cases cited by the State have been soundly criticized in scholarly articles cited by Dr. Hardy. *See* Hardy Dec. **Ex. 16** at 355-377 (*NRA I*); 372-373 (*McGraw*); 374-376 (*Horsley*); and **Ex. 17** at 470-473 (*NRA I*).

Further, *NRA of Am., Inc. v. McGraw*, 719 F.3d 338, is inapposite. *McGraw* addresses the separate constitutional question of Young Adults *carrying firearms in public.* The question of purchasing, acquiring, and possessing firearms is *distinct* from the constitutional question of *carrying* firearms in public. *Peruta v. County of*

---

[1] *Hirschfeld v. BATFE,* Civil Action No. 3:18CV00103, 2019 U.S. Dist. LEXIS 173077, at *8 (W.D. Va. Oct. 4, 2019) (*Hirschfeld*) is merely a reapplication of *NRA I, as* it is a challenge to the federal prohibition on *FFLs* selling *handguns* to Young Adults. *Hirschfeld* also makes clear the regulation in question *only restricts commercial sales*. *Hirschfeld* at 15-16.

5

*San Diego,* 824 F.3d 919, 924 (9th Cir. 2016); *see* also *Young v. Hawaii,* 896 F.3d 1044, 1048 (9th Cir. 2018). As such, *McGraw* provides no precedent.[2]  In short, the case law relied on by the State is irrelevant and suffers from factual and evidentiary flaws. *See* Hardy Dec. ¶¶43-47, **Ex.16** (Greenlee 2018), and **Ex. 17** (Greenlee 2019).

## IV.   THE STATE FAILS TO ESTABLISH A SUBSTANTIAL INTEREST

The State claims its purported interests are "promoting public safety" and "limiting incidents of gun violence." Opp. p. 12. At this level of generality, the State would always have a substantial interest in any law it enforces. *See Duncan v. Becerra*, 366 F.Supp.3d 1131, 1160-1167 (cautioning against relying on "shoddy data or reasoning" under intermediate scrutiny inquiry). According to the State, Section 27510 aims to limit mass shootings committed by Young Adults. The State's evidence shows that mass shootings are rare and "number of mass shootings has ebbed and flowed in California since the late 1990s, neither increasing nor decreasing dramatically." Opp. 22, Rosenberg Dec. **Ex 12**, p. 189.[3] Thus, the State could not reasonably have a substantial interest in limiting an almost non-existent issue. Further, the State wrongly asserts that Plaintiffs did not "contest" the legitimacy of the State's interests.  Opp. 13. To the contrary, Plaintiffs' opening brief and evidence (Dkt. No. 21-1[Mem. 18-24]; Marvell Dec. ¶¶1-19; Lott Dec. ¶¶1-22.) demonstrate that no facts support the State's highly generalized interests. The *point* is the State failed to respond or rebut any of that evidence. *Duncan*, 366 F.Supp.3d at 1161 ("hard facts and reasonable inferences" are needed] from the State.)

## V.   THE STATE FAILS TO ESTABLISH A REASONABLE FIT

### A.   Section 27510 Will have No Effect on Reducing Gun Crime Committed by Young Adults

Section 27510 will have no effect on reducing mass shootings or gun crime in

---

[2] *Powell v. Tompkins*, 926 F. Supp. 2d 367, is a criminal habeas corpus appeal based on a conviction for *carrying a firearm without a license.* Like *McGraw*, *Powell* is of no weight.

[3] In the Mother Jones Data, 114 mass shootings are identified. *Only 10 shootings in 37 years* involved Young Adult perpetrators resulting in 86 deaths. Opp. 23.

general. Marvell Dec. ℙ5 ("There is no evidence that gun laws banning the purchase or possession of firearms based on age restrictions have the intended effect of reducing gun homicides and suicides; I have found no discernable crime-reduction impact."). Plaintiffs' evidence regarding the effectiveness of age-based firearms bans is entirely unopposed other than three inaccurate claims by the State that omit key facts. **First**, as stated by expert declarant Thomas Marvell, the *2015* Gius study found that "state minimum age laws do not have a significant impact on gun suicides or unintentional deaths for those under 20 years old." Marvell Dec. ℙ 11. Additionally, the significant impact found for the 1994 federal minimum age law was "a spurious finding due to a statistical mistake." *Id*. Marvell explained this mistake in detail and the State has offered no rebuttal. **Second**, with regard to the Webster study, Marvell determined the findings to be highly unlikely, and referenced that "[t]he study itself identifies several reasons to doubt the validity of the finding…" and most importantly, the fact that the authors attempted to address autocorrelation through the "cluster" method, which causes the significance levels to drastically increase with such a small number of law changes." *Id*. at ℙ 14, **Ex. 7**. **Third**, the single Rand Corporation study, which found *insufficient* evidence of age-based laws effect on reducing crime, does not amount to the "uncertainty" of conflicting evidence cited *Dymo Indus., Inc. v. Tapeprinter, Inc.,* 326 F.2d 141, 142 (9th Cir. 1964). See also Marvell Dec. ¶¶18-19 and **Ex. 11**.

The State's "social science" evidence is lacking as it consists of generalized statements regarding adolescents ages 10-24 and provides no distinction in development between the various ages. *See also* Plaintiffs' Objections, filed concurrently herewith. Further, the State's evidence is conflicting and makes clear "*most adolescents* are actually not miserable, and negotiate this potentially difficult period with relative ease and without lasting problems (Steinberg, 2008)." Rosenberg Dec. **Ex. 4**, p. 125; *see also* p. 126, 129-131 (emphasis added).[4] Finally, the State's

---

[4] The State's other social science evidence is similarly flawed. Plaintiffs' Objections.

social science evidence proves too much, stating that development continues until age 24 and even into the 30s. Rosenberg Dec. **Ex. 3-5**. Not even the State argues the ban in Section 27510 should, therefore, extend next year to persons 18-to-39 years of age.

Plaintiffs do not demand that the State's approach to "curtailing violence ha[s] already proved effective, or to guarantee that it would prove effective…." Opp. 18. Instead, Plaintiffs demand that the State provide *evidence* beyond pure speculation or conjecture, which has not occurred. The simple fact that the federal prohibition on handguns has been in effect since 1968 without any evidence of a decrease in handgun crime by Young Adults proves that the "experiment" has failed. Marvell's declaration confirms this fact. Marvell Dec. ¶¶6-17. See also *Duncan*, 366 F.Supp.3d at 1169 (S.D. Cal. 2019) (commenting on failed experiments).

### B.   Section 27510 will have No Effect on Reducing Mass Shootings

The Legislature's intent was to reduce mass school shootings *committed by Young Adults,* as Section 27510 only prohibits Young Adults from accessing firearms.[5] **First**, t*he State provided no evidence regarding the prevalence of mass shootings committed by Young Adults*. **Second**, requiring an individual to obtain a hunting license does not and will not prevent an individual intent on committing mass murder.[6] **Third**, the State's evidence regarding how guns used in mass shootings were procured lacks foundation and is factually wrong. *See* Plaintiffs' Objections. In fact, no credible evidence supports the proposition that raising the age to purchase or acquire a firearm will make any difference in curtailing mass school shootings. Marvell Dec ¶¶ 5-8; Lott Dec. ¶¶ 6-19, **Ex. 1-7**. This is because (a) shooters buy guns from sources other than licensed dealers (Lott Dec. ¶¶ 7-8, **Ex. 2**); (b) criminals are still going to obtain guns (Lott Dec. ¶ 9, **Ex. 3**); (c) age is not a significant factor in mass public shootings (Lott Dec. ¶ 10, **Ex. 4** [average shooter age is approximately

---

[5] The Legislature's aim can only be limited to *all mass shootings committed by Young Adults*, not all mass shootings.

[6] The irony of the hunting license exemption is that this education makes individuals better and more knowledgeable hunters — not a desired trait of a mass murderer.

33 years-old]; Dillon Dec. ¶ 9, **Ex. 7** [average age of school attackers is 15]); and (d) contrary to the State, mass school shootings are *not* generally committed by people "under 21." (Lott Dec. ¶ 16). The average age of school attackers is 15. Dillon Dec. ¶ 9, **Ex. 7**., at 116.

### C.     Lethality is Not the Test

The State argues Section 27510's further prohibition on semiautomatic centerfire rifles on those Young Adults who acquire a valid hunting license or who are honorably retired is justified by the "lethality" of such firearms. Opp. 24-25. Lethality is not the test. *See Duncan*, 366 F.Supp.3d at 1145-1146.

"[T]he relative dangerousness of a weapon is irrelevant when the weapon belongs to a class of arms commonly used for lawful purposes." *Id.* Unquestionably, semiautomatic rifles are a class of arms commonly used for lawful purposes. The State's attempt to categorize *all semiautomatic centerfire rifles* as equivalent to "assault weapons" is contradictory to its own claims in other Second Amendment cases in which the State distinguishes "standard" semiautomatic rifles from "assault weapons." *Rupp v. Becerra*, 401 F. Supp. 3d 978 (C.D. Cal. 2019).

### D.     Other Preliminary Injunction Factors

The State's assertion that Section 27510 results in a "temporary" "inconvenience" is absurd. Prohibiting Plaintiffs' fundamental rights for years, preventing Young Adults from acquiring firearms for self-defense is unquestionably an irreparable harm. *Kev, Inc. v. Kitsap County*, 793 F. 2d 1053, 1060 (1986) (striking down a county's 5-day waiting period for nude-dancing licenses because it "unreasonably prevent[ed] a dancer from exercising first amendment rights while an application [was] pending); *Planned Parenthood Arizona, Inc. v. Humble*, 753 F. 3d 905, 917 (2014) (invalidating law partly because it "delayed" women seeking an abortion). Further, the State cites no Second Amendment case in which the court chose to treat the right differently from the First Amendment for purposes of finding irreparable harm; on the contrary, cases have found such irreparable harm. *Duncan v. Becerra,* 265 F. Supp. 3d 1106 (S.D. Cal. 2017). The State's prohibition on Young

9

Adults could be deadly to them and/or their families. *Duncan*, 265 F.Supp.3d at 1135. With SB 61, Plaintiffs' harm worsened. Plaintiffs' extensive motion was timely filed. Nevertheless, "delay" is merely "a factor to be considered." *Lydo Enterps., Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984). In fact, the Ninth Circuit stated it "would loath to withhold relief solely on that ground." *Id.* at 1214 (noting a five-year delay weakened an irreparable harm claim but it was not dispositive).

The State's claimed "irreparable injury whenever an enactment of its people or their representatives is enjoined" cannot overcome the severe harm that the State's unconstitutional ban imposes on Young Adults. If a law violates the constitutional rights of the people, this Court can and should properly enjoin it. *Ashcroft v. ACLU*, 542 U.S. 656, 664-65 (2004); *Doe v. Harris*, 772 F.3d 563, 583 (9th Cir. 2014). Plaintiffs have shown that age restrictions have no effect on limiting gun violence, homicides, suicides, or mass shootings. There is no public safety interest concern.

## VI.    CONCLUSION

For all the foregoing reasons, Plaintiffs request that this Court grant the requested preliminary injunction.


January 24, 2020                              Respectfully submitted,

                                             Gatzke, Dillon & Ballance LLP

                                             By:   */s/ John W. Dillon*
                                                   John Dillon