John W. Dillon (Bar No. 296788)
Dillon Law Group APC
2647 Gateway Road
Suite 105, No. 255
Carlsbad, California 92009
Telephone: (760) 642-7150
Facsimile: (760) 642-7151
E-mail:  jdillon@dillonlawgp.com

Attorney for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW JONES, *et al.,*<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>ROB BONTA, in his official capacity as Attorney General of the State of California, *et al.,*<br>　　　　　Defendants. | Case No.: 3:19-cv-01226-L-AHG<br><br>Hon. M. James Lorenz and Magistrate Judge Allison H. Goddard<br><br>**PLAINTIFFS' BRIEF RE:** *NEW YORK STATE RIFLE & PISTOL ASS'N V. BRUEN*<br><br>Action Filed: July 1, 2019<br><br>First Amended Complaint Filed: July 30, 2019<br><br>First Amended Complaint and Summons Served:  August 1, 2019 |

1

# TOPICAL INDEX

I.     INTRODUCTION AND SUMMARY OF ARGUMENT ......................1

II.    RELEVANT PROCEDURAL HISTORY .................................3

III.   THE *BRUEN* DECISION AND THE FRAMEWORK TO BE
       APPLIED IN ALL SECOND AMENDMENT CASES..........................4

IV.    TEXT AND HISTORY CONFIRM THE SECOND AMENDMENT
       PROTECTS YOUNG ADULTS' RIGHTS TO KEEP AND
       BEAR ARMS........................................................6

V.     CALIFORNIA'S AGE-BAN ON SEMIAUTOMATIC RIFLES
       AND LONG GUNS VIOLATE THE SECOND AMENDMENT
       UNDER *HELLER* AND *BRUEN*............................................10

VI.    THERE IS NO HISTORICAL PEDIGREE TO BAN YOUNG
       ADULTS FROM PURCHASING AND ACQUIRING
       SEMIAUTOMATIC RIFLES AND LONG GUNS ..............................11

VII.   THE LONG GUN REGULATIONS CANNOT BE JUSTIFIED
       BECAUSE NO HISTORICAL PRECEDENT EXISTS TO
       VARYING QUALIFICATIONS FOR POSSESSION BY
       DIFFERENT PEOPLE BASED ON THEIR AGE ...............................12

VIII.  THE PRIOR JUSTIFICATION FOR THE STATE'S SO-CALLED
       HUNTING LICENSE "TRAINING REQUIREMENT" HAS BEEN
       EXPLICITLY REJECTED....................................................14

IX.    CONCLUSION.............................................................17

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

<u>Cases</u>

3

*Agostini v. Felton*, 521 U.S. 203(1997) ............................................................8

*Andrews et al., v. McCraw,* No. 4:2021-cv-01245
Doc. 74, p. 6, (N.D. Tex. 2022) ...........................................................................2

*District of Columbia v. Heller,* 554 U.S. 570 (2008).............................. *Passim*

*Folajtar v. Attorney General of the United States*
2020 WL 6879007, at *14 (3d Cir. Nov. 24, 2020)........................................13

*Heller*, 554 U.S. at 581 ........................................................................... *Passim*

*Heller v. District of Colombia,* 670 F.3d 1277 ..................................................9

*Hirschfeld v. BATFE*, 5 F.4th 407 (4th Cir. 2021)............................................6

*Jones v. Becerra*, 498 F. Supp. 3d at 1325 .........................................2, 10, 16

*Jones v. Bonta*, 34 F.4th 704 (9th Cir. 2022).......................................... *Passim*

*Jones v. Bonta*, __ F.4th __, 2022 WL 4090307..................................... *Passim*

*Kanter v. Barr*, 919 F.3d 437 (7th Cir. 2019) ..................................................13

*Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50, n.10 (1961) ........................5

*McDonald v. City of Chicago*, 561 U.S. 742 (2010)...........................4, 5, 7, 13

*Myers v. United States*, 272 U.S. 52, 175, 47 S. Ct. 21, 71
L. Ed. 160 (1926) ................................................................................................7

*NRA II*, 714 F.3d at 339 .....................................................................................7

*NRA of Am. v. Bureau of Alcohol*, 700 F.3d 185 .............................................13

*New Jersey v. T.L.O.*, 469 U.S. 325 (1985) .......................................................6

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*
597 U.S. _____, 142 S.Ct. 2111 (2022)..................................................... *Passim*

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503 (1969)................6

*Young v. Hawaii*, 992 F.3d 765 (9th Cir. 2021)................................................4

<u>California Penal Code</u>

Section 27510............................................................3, 10, 11, 12, 13, 14 15, 17

ii

Constitution

First Amendment ................................................................................................6

Second Amendment ................................................................................. *Passim*

Fourth Amendment ............................................................................................6

Article I, § 2 .....................................................................................................2

Article I, § 3 ......................................................................................................2

Article II, § 1 .....................................................................................................2

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs' Matthew Jones, et al. ("Plaintiffs") submit this brief addressing *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. ___, 142 S.Ct. 2111 (2022) ("*Bruen*") pursuant to this Court's September 14, 2022, Order (ECF 92). The *Bruen* decision affirmed the constitutional framework established by *District of Columbia v. Heller,* 554 U.S. 570 (2008) in deciding Second Amendment claims. Here, California bans 18- to 20-year-old adults from purchasing all semiautomatic centerfire rifles and long guns. The State's action constitutes a ban on commonly owned, bearable arms. Under the proper framework established by *Heller* and affirmed by *Bruen*, California's ban on 18-to-20-year-olds purchasing firearms is unconstitutional.

In *Bruen*, the Court reasserted principles it already applied in *Heller* — a contention advanced by Plaintiffs in this case. There can now be no dispute over the proper framework to be applied in evaluating Second Amendment claims; and this Court's prior reliance on the now abrogated two-step means-ends scrutiny test does not apply in the Second Amendment context and cannot support a denial of Plaintiffs' motion for preliminary injunction in this case. Under the proper approach, the Court must first determine whether "the Second Amendment's plain text covers an individual's conduct" restricted by a challenged law or regulation. *Bruen*, 142 S. Ct. at 2129–30. If the answer is yes, the Second Amendment presumptively protects that conduct, and the burden then falls on the government to "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation*." Id*. at 2130. If the government cannot meet its burden, the restriction is unconstitutional — full stop. No "means-end test such as strict or intermediate scrutiny" and no "interest-balancing inquiry" can be invoked. *Id*. at 2129.

This case involves restrictions on acquiring firearms — semiautomatic rifles and long guns — by an entire class of people — 18-to-20-year-olds. Under the analysis prescribed by *Bruen*, both of these aspects of the challenged laws violate Plaintiffs' Second Amendment rights. *Jones v. Bonta*, 34 F.4th 704, 716 (9th Cir.

2022), vacated and remanded on reh'g for further proceedings consistent with *Bruen*, __ F.4th __, 2022 WL 4090307 (Mem), Ninth Cir., (September 7, 2022).

**First**, the *Bruen* framework confirms that the Second Amendment's plain text covers not only the sub-category of 18- to 20-year-old adults at issue, but also *the activity at issue* — acquisition and possession of bearable arms. To start, the Second Amendment does not contain any sort of age restriction. "This absence is notable — when the Framers meant to impose age restrictions, they did so expressly. *Andrews et al., v. McCraw,* No. 4:2021-cv-01245, Doc. 74, p. 6, (N.D. Tex. 2022) (citing U.S. Const. art. I, § 2 (age 25 for the House of Representatives); *id.*, art. § 3 (age 30 for the Senate); *id.*, art. II, § 1 (age 35 for the President)). *A*ccordingly, *Heller* made clear that the Second Amendment right presumptively "belongs to all Americans." *Heller*, 554 U.S. at 581. Reiterating what was said in *Heller*, *Bruen* held "the Second Amendment extends, prima facie, to *all* instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Id*. at 2132 (emphasis added).

**Second**, the historical inquiry dictated by *Heller* and affirmed in *Bruen* establishes that the Second Amendment protects 18- to 20-year-old Adults' right to keep and bear arms. Plaintiffs submitted substantial, indeed, overwhelming evidence, supporting this fact in their prior preliminary injunction motion. Moreover, the prior Panel opinion affirmed Plaintiffs' arguments — "[w]e agree with Plaintiffs: the historical record shows that the Second Amendment protects young adults' right to keep and bear arms." *Jones*, 34 F.4th at 720.

**Third**, *Bruen* confirms that *Heller* already conducted the relevant historical analysis for determining whether a particular arm falls within the Second Amendment's protection and therefore cannot be banned. To ban a firearm consistent with this Nation's history of firearm regulation, the government must demonstrate that the banned arm is *both* "dangerous and unusual." *Id*. at 2143. It follows that firearms that are in "common use today" cannot be banned. *Id.* Both this Court and the prior Panel opinion have already found that semiautomatic centerfire rifles and long guns

2

are *not* both dangerous and unusual. See *Jones v. Becerra*, 498 F. Supp. 3d at 1325; *Jones v. Bonta*, 34 F.4th at 716. Thus, California's ban unequivocally applies to common firearms that are *not* both dangerous and unusual.

**Fourth**, this Court's prior finding that the long gun prohibition was a permissible "training requirement" or "lawful condition or qualification on the commercial sale of arms" must now also be rejected under the *Bruen* framework. This Court, as well as the prior Panel opinion, upheld the long gun prohibition by applying the now abrogated two-step means-end scrutiny test. Under the *Bruen* framework, Defendants cannot show any founding era historical "training requirement" regulations that *preempt* the purchase and/or acquisition of firearms by any law-abiding citizen, let alone 18- to 20-year-old adults.

The above four principles must be applied to decide this case. Once it is determined that California bans arms in common use, the law is necessarily unconstitutional — period. In light of Plaintiffs' overwhelming evidence, this Court should rule in favor of Plaintiffs, consistent with *Heller* and *Bruen*, and find that California's ban on 18-to-20-year-old adults purchasing firearms is unconstitutional.

## II. RELEVANT PROCEDURAL HISTORY

Plaintiffs filed this action on July 1, 2019, challenging Defendants' enforcement of California Penal Code section 27510 banning adults ages 18-to-20-years-old from purchasing or acquiring semiautomatic rifles and long guns in the state of California. Plaintiffs filed their operative Second Amended Complaint (ECF 20) on November 8, 2019. On November 12, 2019, Plaintiffs filed their motion for preliminary injunction (ECF 21). On November 3, 2020, this Court issued its decision denying Plaintiffs' preliminary injunction (ECF 66) and Plaintiffs timely appealed on November 6, 2020 (ECF 67). In May 2022, the Ninth Circuit subsequently reversed in part and affirmed in part this Court's decision. *Jones v. Bonta*, 34 F.4th at 710. The United States Supreme Court issued its decision in *Bruen* on June 23, 2022. Defendants petitioned for panel rehearing and rehearing *en banc* in light of the Supreme Court's decision.

The Ninth Circuit granted Defendants' petition for rehearing, vacated the Panel opinion and remanded to this Court on September 7, 2022. *Jones v. Bonta*, __ F.4th __, 2022 WL 4090307. On September 14, 2022, this Court issued an Order (ECF 92) directing the parties to submit supplemental briefs addressing the Supreme Court's decision in *Bruen*.

## III. THE *BRUEN* DECISION AND THE FRAMEWORK TO BE APPLIED IN ALL SECOND AMENDMENT CASES

On June 23, 2022, the Supreme Court decided *Bruen*, invalidating a New York statute restricting the carrying of firearms in public. In *Bruen*, the Court applied the "test that [it] set forth in *Heller*," and rejected "the two-step test that Courts of Appeals have developed to assess Second Amendment claims," holding "*Heller* and *McDonald* do not support applying means-end scrutiny in the Second Amendment context." *Bruen*, 142 S.Ct. at 2118. In the Ninth Circuit, that former test had required a district court to first ask "if the challenged law affects conduct that is protected by the Second Amendment," basing that determination on a "historical understanding of the scope of the right." If the challenged restriction burdened conduct protected by the Second Amendment, the district court then moved to the second step of the analysis to determine "the appropriate level of scrutiny." *Young v. Hawaii*, 992 F.3d 765, 783–84 (9th Cir. 2021), *cert. granted, judgment vacated*, No. 20-1639, 2022 WL 2347578 (U.S. June 30, 2022). The Supreme Court rejected this mode of analysis.

From Plaintiffs' complaint through trial, Plaintiffs have contended that the "interest-balancing tests" were inappropriate. See, *e.g.*, Plaintiffs' Motion for Prelim. Injunction (ECF 21-1), pp. 4-6, 11-17. The Supreme Court has now abrogated the "interest-balancing" tests previously applied in this and other circuits, holding:

> In keeping with *Heller*, we hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm

regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls *outside* the Second Amendment's 'unqualified command.' 142 S.Ct. at 2126 (citing *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50, n.10 (1961)).

"*Heller* and *McDonald* do not support applying means-end scrutiny in the Second Amendment context. Instead, the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen*, 142 S.Ct. at 2127. The majority opinion in *Bruen* followed *Heller* to its logical conclusion that it did not support means-end scrutiny. *Id*. The Supreme Court explained: "*Heller*'s methodology centered on constitutional text and history. Whether it came to defining the character of the right (individual or militia dependent), suggesting the outer limits of the right, or assessing the constitutionality of a particular regulation, *Heller* relied on text and history. It did not invoke any means-end test such as strict or intermediate scrutiny." *Bruen*, 142 S.Ct. at 2128-29.

The Supreme Court reiterated: "[T]he standard for applying the Second Amendment is … [w]hen the Second Amendment's plain text covers an individual's conduct, *the Constitution presumptively protects that conduct*. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "'unqualified command.'" *Id.* at 2129–30 (emphasis added).

As shown below, (i) the historical record shows that the Second Amendment protects the right of 18-to-20-year-old adults to keep and bear arms, which necessarily includes the right to purchase them; (ii) California's ban on semiautomatic rifles and long guns unquestionably prohibits commonly owned arms that are *not* both dangerous and unusual; (iii) California's firearms prohibitions on young adults have no historical pedigree; and (iv) the State's long gun prohibition is not a lawful

5

condition or qualification on the commercial sale of arms. As such, this Court should enter judgment in favor of Plaintiffs.

## IV.   TEXT AND HISTORY CONFIRM THE SECOND AMENDMENT PROTECTS YOUNG ADULTS' RIGHTS TO KEEP AND BEAR ARMS

Because the Second Amendment's plain text encompasses "the people" as a whole, the Amendment presumptively extends to 18-to-20-year-olds and the burden falls to the government to demonstrate historically justified restrictions of the right on people in that age group. By the Second Amendment's plain text, these protections extend to "the people" as a whole, U.S. CONST. amend. II, and not "an unspecified subset." *Heller*, 554 U.S. at 580; *see also Jones*, 34 F.4th at 714.

The other two enumerated rights of "the people," the First and Fourth Amendment rights, apply to all Americans regardless of age. *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 511 (1969); *New Jersey v. T.L.O.*, 469 U.S. 325, 334 (1985). At the very least, the right must apply to anyone 18-years-old or older. Every constitutional right, enumerated or not, applies at least to that group of citizens. *See Hirschfeld v. BATFE*, 5 F.4th 407, 422–23 (4th Cir. 2021), *vacated as moot* 14 F.4th 322, 328 (4th Cir. 2021). Though vacated, the Panel opinion acknowledged the importance of this threshold point, stating, at the outset of its opinion:

> America would not exist without the heroism of the young adults who fought and died in our revolutionary army. Today we reaffirm that our Constitution still protects the right that enabled their sacrifice: the right of young adults to keep and bear arms. *Jones v. Bonta*, 34 F.4th at 710.

Second, the Second Amendment's prefatory clause, which states "[a] well regulated Militia, being necessary to the security of a free State . . ." "announces the purpose for which the right was codified: to prevent elimination of the militia." *Heller*, 554 U.S. 595, 599. The "militia" here referenced was not a legally constituted military force but the "pool" of "all able-bodied men" from which such a force could be drawn. *Id.* at 582. As *Heller* explained, Congress drew from this pool "in the first

6

Militia act which specified that each and every free able-bodied white male citizen . . . who is or shall be of the age of eighteen years" should be enrolled. *Id.* (quoting Act of May 8, 1972).

The text of the Amendment therefore demonstrates 18-year-olds *must* be part of "the people" it protects. Moreover, far from showing an exception for 18-to-20-year-old adults, history *proves* 18- to 20-year-old adults have a right to keep and bear arms. When analyzing the historical basis for exceptions to the Second Amendment, this court must give priority to the historical record from the period around its ratification.

> In our historical analysis, the Framers' understanding of the Second Amendment at and around the time of ratification has special significance. Laws from that time are particularly important because they are "contemporaneous legislative exposition[s] of the Constitution" that took place "when the founders of our government and framers of our Constitution were actively participating in public affairs." *Myers v. United States*, 272 U.S. 52, 175, 47 S. Ct. 21, 71 L. Ed. 160 (1926). If they were also "acquiesced in for a long term of years," these legislative expositions "fix[] the construction" that we must give to the Constitution's parameters. *Id.* Because the militias originated in the states, *see Heller*, 554 U.S. at 596, we also consider colonial and state laws. Since the Second Amendment was incorporated against the states through the Fourteenth Amendment, our historical analysis also must consider how the right to keep and bear arms was understood in 1868, when that amendment was ratified. *See McDonald*, 561 U.S. 742, 770-78, 130 S. Ct. 3020, 177 L. Ed. 2d 894 (analyzing Reconstruction-era history). *Jones v. Bonta*, 34 F.4th at 714-15.

Additionally, "19th-century sources may be relevant to the extent they illuminate the Second Amendment's original meaning, but they cannot be used to construe the Second Amendment in a way that is inconsistent with that meaning." *NRA II*, 714 F.3d at 339 n.5 (Jones, J., dissenting from denial of rehearing en banc). *Jones*, 34 F.4th 704, 722 (9th Cir. 2022). The Second Amendment has one meaning, whether it is applied directly against the federal government or indirectly through the Fourteenth Amendment against the states. *McDonald v. City of Chicago*, 561 U.S. 742, 765 (2010). And the Supreme Court has consistently analyzed the Bill

7

of Rights amendments (including the Second Amendment) by focusing on the understanding of the amendment at the time it was ratified. *Bruen*, 142 S. Ct. at 2137.

In this case, the Court must follow the Supreme Court's existing practice. *Agostini v. Felton*, 521 U.S. 203, 237 (1997). Beginning even before 1791, the history of 18-to-20-year-olds keeping and bearing arms uniformly shows that they have full Second Amendment rights. "The tradition of young adults keeping and bearing arms is deep-rooted in English law and custom" and American colonists brought that tradition across the Atlantic." *Jones*, 34 F.4th at 717. "At the time of the founding, all states required young adults to serve in the militia, and all states required young adults to acquire and possess their own firearms" and that "just after the founding, Congress established a federal militia, which included young adults, and required them to acquire and possess their own weapons." *Id*. "Both at the founding and later, different states had different ages of majority, and the age of majority also varied depending on the conduct at issue" and "turning to the Reconstruction era, some states passed laws that regulated minors' access to firearms, but most of them only regulated handguns and only a few banned all sales of firearms to minors." *Id*.

"The historical record shows that the Second Amendment protects young adults' right to keep and bear arms" (*id*. at 720) and because "that right includes the right to purchase arms, both California laws [banning semiautomatic rifles and long guns] burden conduct within the scope of the Second Amendment." *Id*. at 723 (see also page 723, the "California laws burden the Second Amendment rights and the district court erred in concluding otherwise").

In applying the proper standard "which demands a test rooted in the Second Amendment's text, as informed by [relevant] history," there is no doubt California's ban on Young Adults from purchasing semiautomatic rifles lacks any historical pedigree and is unconstitutional. The Panel's opinion confirmed that conclusion. *Id*. at 717-723. And the decision in *Bruen* supports the Panels opinion. Plaintiffs ask that the

8

Court reaffirm the Panel's findings in that regard and apply the same standard to California's long gun prohibition.

In summary, under the standard set by *Heller*, and affirmed by *Bruen*, this Court's analysis is to begin "with a 'textual analysis' focused on the 'normal and ordinary' meaning of the Second Amendment's language [citation omitted]." *Bruen*, 142 S.Ct. at 2127. From there, the Court must assess "whether our initial conclusion was 'confirmed by the historical background of the Second Amendment.'" *Id*. As detailed above, the historical inquiry conducted by the Panel shows that firearm bans based on age have no relevant historical record.

Additionally, the prior Panel opinion was correct in holding that the "longstanding prohibitions" referred to in *Heller* were "prohibitions on the possession of firearms by felons and the mentally ill [citation omitted]" and "not prohibitions on a broader set of groups." *Jones*, 34 F.4th at 723. Law abiding "young adults are neither felons nor mentally ill," so the semiautomatic rifle law "does not fall within the Supreme Court's enumerated categories." *Id*.

Under the government's prohibition, the only 18-to-20-year-olds who can buy semiautomatic rifles are some law enforcement officers and active-duty military service members. The Panel correctly determined that "[f]or most young adults, that is no exception at all." *Jones*, 34 F.4th at 724. "In effect, this isn't an exception that young adults can avail themselves of by joining the police force or military — it is a blanket ban for everyone except police officers and servicemembers." *Id.* at 724-725.

The Supreme Court's methodology in *Bruen* closely tracks then-Judge Kavanaugh's dissent in the D.C. Circuit reasoning that a rifle ban violated the Second Amendment. See *Heller v. District of Colombia,* 670 F.3d 1277, 1290-91 (Kavanaugh, J., dissenting). As then-Judge Kavanaugh correctly concluded, "semi-automatic rifles have not traditionally been banned and are in common use today, and are thus protected under *Heller*." *Id*. at 1287.

1    Plaintiffs reserved their right to argue for a categorical *per se* invalidation in

2    subsequent proceedings, and therefore, this Court is asked to invalidate California's

3    ban under the *Bruen* framework. See Appellants' Opening Brief, at p. 17, fn. 3.

4    Here, the Second Amendment's text, as informed by relevant history, uniformly

5    shows that the Second Amendment protects the right of 18-to-20-year-olds to acquire

6    firearms for lawful purposes such as self-defense. And California's "blanket ban" on

7    individuals in that age group purchasing semiautomatic rifles cannot survive the

8    standard set forth in *Heller* and affirmed in *Bruen.*

9  **V.    CALIFORNIA'S AGE-BAN ON SEMIAUTOMATIC RIFLES AND LONG GUNS VIOLATE THE SECOND AMENDMENT UNDER *HELLER* AND *BRUEN***

10   Once it is established that 18-to-20-year-olds have Second Amendment rights

11   on a part with other adults, the remaining analysis is straightforward. The only

12   relevant question under *Bruen* is whether the firearms banned by Penal Code section

13   27510 are "arms" within the meaning of the Second Amendment and are not both

14   "dangerous and unusual," since they are commonly used by law abiding citizens for

15   lawful purposes such as hunting, target practice, and self-defense. Unquestionably,

16   semiautomatic rifles and long guns are commonly owned, bearable arms, fully

17   protected under the Second Amendment. Under *Heller* and *Bruen*, the State's ban is

18   categorically unconstitutional. The analysis ends here.

19   Both this Court and the Prior Panel Opinion already found that semiautomatic

20   centerfire rifles *and* long guns are *not* both dangerous and unusual. See *Jones v.*

21   *Becerra*, 498 F. Supp. 3d at 1325; *Jones v. Bonta*, 34 F.4th 704, 716 (9th Cir. 2022).

22   The prior Panel opinion correctly clarified that while the Second Amendment "does

23   not protect the right to carry "dangerous and unusual weapons [citation omitted]" that

24   "doesn't mean that weapons can be banned just because they're dangerous." *Jones*, 34

25   F.4th at 716. The Panel explained that "'dangerous and unusual weapons' is a

26   historical term of art: *Heller* contrasted those arms with weapons 'in common use at

27   the time [citation omitted].'" *Id.*

28

Accordingly, the Panel concluded that, "'the relative dangerousness of a weapon is *irrelevant* when the weapon belongs to a class of arms commonly used for lawful purposes [citation omitted].'" *Id.* (emphasis added). This Court merely needs to adopt its prior finding— subsequently affirmed by the Panel opinion— that "[l]ong guns and semiautomatic rifles "are not dangerous and unusual weapons." *Id.* California prohibits the purchase and acquisition of commonly owned, bearable arms that are not both dangerous and unusual. Thus, Penal Code Section 27510 is unconstitutional.

## VI.   THERE IS NO HISTORICAL PEDIGREE TO BAN YOUNG ADULTS FROM PURCHASING AND ACQUIRING SEMIAUTOMATIC RIFLES AND LONG GUNS

While this Court and the prior Panel's opinion characterized California's ban on Young Adults purchasing and acquiring long guns as a "condition or qualification" on the commercial sale of arms,' the Ninth Circuit panel also explicitly found that:

> Here, our historical analysis leads us to conclude that Young Adults have a Second Amendment right to keep and bear arms. Because that right includes the right to purchase arms, *both California laws* burden conduct within the scope of the Second Amendment. *The long gun law is a "condition[] . . . on the commercial sale of arms," Heller*, 554 U.S. at 627[], *but it still burdens Second Amendment rights*. *Jones*, 34 F.4th at 723 (emphasis added).

Under *Bruen*, the government bears the burden of demonstrating that the prohibition on Young Adults purchasing long guns is consistent with the Nation's historical tradition of firearm regulation. To do so, it must point to laws that are relevantly similar, in that they "impose[d] a comparable burden on the right of armed self-defense" and "that burden [was] comparably justified." *Bruen*, 142 S. Ct. at 2133.

The Ninth Circuit's prior historical inquiry confirms that the historical record is devoid of age-based firearm acquisition *prohibitions or restrictions* on 18- to 20-year-old adults during the Precolonial and the Founding-era. Additionally, the vast majority late 19th and 20th Century regulations never prohibited or restricted Young Adults

11

from purchasing long guns, and those are of less value anyway. See *Jones*, 34 F.4th at 722.

The government's reliance on a small group of state laws from the late 19th and 20th centuries that regulated firearms to minors offers little, if any, support justifying the State's long gun prohibition. The prior Panel opinion properly noted that "'19th-century sources may be relevant to the extent they illuminate the Second Amendments' original meaning, but they cannot be used to construe the Second Amendment in a way that is inconsistent with that meaning.'" *Jones*, 34 F.4th at 722. As discussed above, that remains the law after *Bruen*.

Moreover, the Panel found that Appellees' Reconstruction era laws themselves "are not convincing." *Id*. Aside from the "deeply offensive nature of many of them," the Panel found that after ruling out inapplicable state laws during the Reconstruction era "we are left with only five complete bans on sales of firearms to minors." *Id*. Of these five laws, three were passed in states without a Second Amendment analog in their state constitution. Thus, only two states — Kentucky and Michigan — banned the sale of firearm to minors. *Id*. Thus, the Panel already properly concluded that "these two laws — both passed over a decade after the ratification of the Fourteenth Amendment — cannot contravene the Second Amendment's original public meaning." *Id.* Because of the late date of these restrictions, they necessarily "do not provide as much insight into its original meaning as earlier sources." See *Heller*, 554 U.S. at 614. After all, "Constitutional rights are enshrined with the scope they were understood to have when the people adopted them"— not the scope they came to bear five decades later. *Id.* at 634–35. Thus, the Reconstruction era laws "do not provide sufficient historical evidence" that California's long gun prohibition is consistent with the Nation's historical tradition of firearm regulation.

The historical record shows that Defendants cannot justify Section 27510's ban on firearms based solely on the age of law abiding adults.

12

## VII. THE LONG GUN REGULATIONS CANNOT BE JUSTIFIED BECAUSE NO HISTORICAL PRECEDENT EXISTS TO VARYING QUALIFICATIONS FOR POSSESSION BY DIFFERENT PEOPLE BASED ON THEIR AGE

The government attempts to justify their unconstitutional bans by relying on early racist anti-black and slave laws as "analogous regulations" permitting disarming certain groups of people based on their age. Besides the alarming stance the government takes in support of such abhorrent laws that have no place in our constitutional republic, these laws are not sufficient analogous regulations justifying the California's ban because they (i) targeted different groups of people; and (ii) they were justified by wholly inappropriate motives.

First, the Founding-era laws "disarming certain groups" for "public safety reasons" — such as "law-abiding slaves, free blacks, and Loyalists" — obviously come up short. *NRA of Am. v. Bureau of Alcohol*, 700 F.3d 185, 200. Racist laws targeting enslaved and free African Americans hardly constitute the type of historical evidence we should look to in determining the Second Amendment's scope. *See McDonald v. City of Chicago*, 561 U.S. 742, 771–78 (2010) (discussing the Fourteenth Amendment's repudiation of racist gun-control restrictions).

And laws disarming loyalists who maintained allegiance to a hostile foreign power that at the time *was literally invading the American homeland* hardly provide support for draconian restrictions on law-abiding 18-to-20-year-olds. *Folajtar v. Attorney General of the United States*, 2020 WL 6879007, at *14 (3d Cir. Nov. 24, 2020) (Bibas, J., dissenting). Anti-loyalist laws only confiscated weapons owned by loyalists on an *individual basis* after a showing that they "refused to swear an oath of allegiance to the state or to the nation" during wartime. 8-ER-1460–61. Penal Code section 27510, on the other hand, strips all Young Adults of their Second Amendment right without any individual showing that the person in question is insufficiently trained or a threat to public safety. As such, these laws cannot be said to provide historically analogous regulation. If anything, Defendants' reliance on such laws show

that California's categorically considers all law-abiding 18- to 20-year-old adults little more than treasonous English loyalists without any individualized justification.

Nor do more-recent laws restricting "felons" or "the mentally imbalanced" from accessing firearms fill the gap. *NRA*, 700 F.3d at 201. These laws may arguably be supported by the Founding-era understanding "that the legislature may disarm those who have demonstrated a proclivity for violence or whose possession of guns would otherwise threaten the public safety." *Kanter v. Barr*, 919 F.3d 437, 454 (7th Cir. 2019) (Barrett, J., dissenting). However, the notion that *all 18-to-20-year-old adults* fall into that category — *solely by virtue of their age* — is entirely unsupportable. Felons and the mentally ill are prohibited from possessing firearms only after they *individually have* been adjudicated — through procedures complying with due process — as belonging in that relevant group. As the panel opinion correctly found, "longstanding prohibitions" referred to in *Heller* were "prohibitions on the possession of firearms by felons and the mentally ill," *id.* at 626, not prohibitions on a broader set of groups. Young adults are neither felons nor mentally ill." *Jones*, 34 F.4th at 723. Thus, Section 27510's ban does not fall within the Supreme Court's enumerated categories. *Jones*, 34 F.4th at 723.

California law affords no such individualized determination to its 18-to-20-year-olds before stripping their Second Amendment rights. *Id.* at 465 ("The government could quickly swallow the [Second Amendment] right if it had broad power to designate any group as dangerous and thereby disqualify its members from having a gun."). Again, Defendants cannot meet their burden.

## VIII.   THE PRIOR JUSTIFICATION FOR THE STATE'S SO-CALLED HUNTING LICENSE "TRAINING REQUIREMENT" HAS BEEN EXPLICITLY REJECTED

As a result of the above analysis, the so-called hunting license "training requirement" must also be declared unconstitutional. Both this Court's prior ruling and the Panel opinion justified the so-called "training requirement" of the hunting license exception to the long gun prohibition by applying intermediate scrutiny under

14

step two of the rejected "interest-balancing" test. "We agree with the district court that sensible firearm control includes things like "proper training and maintenance of firearms." *Jones*, 34 F.4th at 727-728.

However, the Supreme Court's decision in *Bruen* explicitly rejected this "interest-balancing" approach. Thus, the prior justification for upholding the State's ban on long guns must be rejected. Under the proper standard, California's ban on long guns is categorically unconstitutional as there is no historically analogous regulations that would justify the State's ban on long guns.

Defendants, this Court, and the Panel opinion have all described the California's long gun ban as a "training requirement" for firearm purchases. Applying the *Bruen* standard, the government bears the burden of showing historical regulations that impose analogous training requirements *as a prerequisite* to exercise an individual's Second Amendment right. The government cannot point to a single founding era regulation that required an individual *of any age* to obtain training *before* they were permitted to purchase a firearm and exercise their right to keep and bear arms.

Neither can the state point to historical regulations imposing varying qualifications for different groups in order to exercise Second Amendment Rights. Any reliance on other "training" or "safety" regulations the state imposes as a condition to the commercial sale of firearms under separate regulations not at issue in this case—such as the Firearms Safety Certificate requirement—do not offer any justification for the State's long gun ban as they are imposed on all purchasers uniformly. Section 27510 is not a uniformly applied regulation, and thus, has no historical pedigree.

Further, while the State may be able to reference a handful of gun powder storage laws and laws regulating the discharge of firearms in public and categorized them as firearms "safety laws," these provide no support for the State's ban here. To start, these laws all *necessarily require* the individual to already possess a firearm.

15

These are not safety regulations imposed as a prerequisite to purchasing a firearm. Moreover, unlike the uniformly applied "safety regulations," California's ban subjects law-abiding 18- to 20-year-old adults to different restrictions than the rest of the population. As shown above, this is not supported by any historically analogous regulation.

Additionally, any reliance on militia regulations requiring militia members "to meet regularly for weapons inspection and registration" and comply "with accountability and maintenance regulations" offers no support for the State's long gun ban. First, the Panel opinion specifically addressed this argument and rejected it:

> "To begin, the district court's main premise has already been rejected. "[T]he Second Amendment conferred an individual right to keep and bear arms." *Heller*, 554 U.S. at 595. The right is *not* conditioned on militia service. *Id.* at 599-600. Indeed, that was the position of the dissenters in *Heller*, and the Court rejected it. *Id.* The district court's position here is a variation on that same, already-rejected argument. Rather than argue that *all* citizens' right to bear arms is conditioned *entirely* on militia service, as the dissenters did in *Heller*, the district court held that *some* citizens' right to bear arms is conditioned on *some aspects* of militia service. *Jones*, 498 F. Supp. 3d at 1327.
> *Jones*, 34 F.4th at 721.

Second, inspection and maintenance requirements are entirely distinct from so-called "training requirements." These inspection requirements were to ensure that the firearms brought by individuals were functional and nothing more. There was no required training to obtain the firearm.

Third, any individual militia member that may have been subject to these kinds of maintenance and inspection requirements was *necessarily already in possession of the firearm that was to be inspected and properly maintained*. The inspections were conducted on arms that were brought by individuals as a part of their militia service. Thus, these regulations offer no support for a precondition to acquiring long guns. California's ban on the other hand, prevents the purchase and acquisition of long guns

16

unless a law abiding 18- to 20-year-old adult obtains a hunting license, regardless of whether they have any interest or desire to ever go hunting.

Finally, as the long gun prohibition is a ban on bearable arms in common use, it is categorically unconstitutional under *Heller* and *Bruen*. As such, the law should be found unconstitutional. However, even if this Court were to still consider the long gun ban as a "condition or qualification on the commercial sale of firearms," under the *Bruen* framework, the government bears the burden of showing historically analogous regulations of training requirements imposed as a prerequisite to exercising the fundamental right to keep and bear arms. There are no such regulations. As such, the State's long gun prohibition is unconstitutional.

## IX. CONCLUSION

The Supreme Court's decision in *Bruen* affirms Plaintiffs' claims that California's Penal Code Section 27510 is categorically unconstitutional in its entirety. The historical record proves the Second Amendment unequivocally protects 18- to 20-year-old adults' right to keep and bear arms. 18- to 20-year-olds adults are a subset of "the people" as described in the text of the Second Amendment; the arms that California attempts to ban are commonly owned bearable "arms" within the meaning of the text of the Second Amendment and are not both dangerous and unusual.

Further, there are no historically analogous regulations that justify the State's ban on 18- to 20-year-old adults purchasing either semiautomatic centerfire rifles or long guns. Considering the overwhelming evidence in support of the Plaintiffs' claims, this Court should rule in favor of Plaintiffs and find that California's ban on 18- to 20-year-old adults from purchasing firearms is unconstitutional.

In light of the above, Plaintiffs request that this Court issue a decision in favor of Plaintiffs finding that California Penal Code section 27510 is unconstitutional and grant Plaintiffs' request for preliminary injunction. Plaintiffs also request that this court find that (i) Plaintiffs are likely to succeed on the merits; (ii) that Plaintiffs will suffer irreparable harm in the absence of preliminary relief, (see *Jones*, 34 F.4th at

732); and (iii) because Plaintiffs are challenging government action that affects the exercise of constitutional rights, the public interest tips sharply in favor of enjoining the law. See *Jones*, 34 F.4th at 715.

October 21, 2022                                    Respectfully submitted,

                                                   */s/ John W. Dillon*
                                                   John W. Dillon
                                                   Attorney for Plaintiffs