John W. Dillon (Bar No. 296788)
Dillon Law Group APC
2647 Gateway Road
Suite 105, No. 255
Carlsbad, California 92009
Telephone: (760) 642-7150
Facsimile: (760) 642-7151
E-mail:  jdillon@dillonlawgp.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW JONES, *et al.*,<br><br>                    Plaintiffs,<br><br>v.<br><br>ROB BONTA, in his official capacity as Attorney General of the State of California, *et al.*,[1]<br><br>Defendants. | Case No.: 3:19-cv-01226-L-AHG<br><br>Hon. M. James Lorenz and Magistrate Judge Allison H. Goddard<br><br>**PLAINTIFFS' MEMEORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; OR ALTERNATIVELY, MOTION FOR SUMMARY JUDGMENT**<br><br>Action Filed: July 1, 2019<br><br>First Amended Complaint Filed: July 30, 2019<br><br>Second Amended Complaint Filed: Nov. 8, 2019<br><br>No oral argument will be heard pursuant to local rules unless ordered by the Court |

---

[1]  Rob Bonta is automatically substituted for his predecessor, Xavier Becerra, as California Attorney General, and Allison Mendoza is automatically substituted for her predecessors, former Directors Louis Lopez and Martin Horan, and former Acting Directors Brent E. Orick and Blake Graham. Fed. R. Civ. P. 25(d).

# TOPICAL INDEX

Page(s)

I.      INTRODUCTION ....................................................................................1

II.     RELEVANT PROCEDURAL HISTORY ............................................2

III.    LEGAL STANDARDS GOVERNING ALTERNATIVE MOTIONS..............3

IV.     CALIFORNIA'S FIREARMS REGULATIONS.................................4

V.      PERTINENT FACTUAL BACKGROUND .......................................7

VI.     THE SECOND AMENDMENT FRAMEWORK SUPPORTS THE GRANT OF THIS MOTION...........................................................................8

        A. The *Bruen* Framework .......................................................8

        B.  Application to California's Categorical Prohibitions....................9

            1.  The Second Amendment Text Covers 18-to-20-Year-Olds. ..........10

            2.  The Firearms at Issue are "Arms" Under the Second Amendment's Plain Text ................................................14

        C.  This Nation's Historical Tradition of Gun Regulation...............15

            1.  No Historical Laws Justify Restricting the Rights of 18-to-20-Year-Olds ...............................................................15

            2.  There Is No Justification for Banning the Firearms at Issue..........18

        D.  The Prior Justification For the State's So-Called Hunting License "Training Requirement" Has Already Been Rejected............................19

VII.    THE PRELIMINARY INJUNCTION STANDARDS ARE MET .................21

        A.  The Irreparable Harm Factor is Established. .............................21

        B.  The Likelihood of Success Factor is Satisfied. ..........................22

        C.  The Balance of Equities and Public Interest Favor Plaintiffs. ....................23

VIII.   CONCLUSION.....................................................................................25

i

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

*Am. Trucking Ass'ns v. City of Los Angeles*
  559 F.3d 1046 (9th Cir. 2009) ...................................................................22

4

*Bauer v. Becerra*
  858 F.3d 1216 (9th Cir. 2017) ......................................................................6

5

6

*Celotex Corp. v. Catrett*
  477 U.S. 317 (1986)......................................................................................4

7

8

*District of Columbia v. Heller*
  554 U.S. 570 (2008)............................................................................ *Passim*

9

*Doe v. Kelly*
  878 F.3d 710 (9th Cir. 2017) .....................................................................22

10

*Drakes Bay Oyster Co. v. Jewell*
  747 F.3d 1073 (9th Cir. 2014) .....................................................................3

11

12

*Duncan v. Becerra*
  265 F. Supp. 3d 1106 (S.D. Cal. 2017).....................................................22

13

14

*Elrod v. Burns*
  427 U.S. 347 (1976)....................................................................................21

15

16

*Firearms Policy Coalition, Inc. v. McCraw*
  F.Supp.3d __, 2022 WL 3656990 (N.D. Tex. 2022) ............................12, 13

17

18

*Gamble v. United States*
  139 S.Ct. 1976 (2019)................................................................................16

19

*Heller v. District of Columbia*
  670 F.3d 1244 (D.C. Cir. 2011) ................................................................18

20

*Hill v. Colorado*
  530 U.S. 703 (2000)......................................................................................6

21

22

*Jackson v. City and County of San Francisco*
  746 F.3d. 967 (9th Cir. 2014) ......................................................................6

23

24

*Jones v. Becerra*
  498 F. Supp. 3d 1325 (2020) .....................................................................19

25

26

27

28

1

2

# TABLE OF AUTHORITIES

**Page(s)**

3

*Jones v. Bonta*
4
    34 F.4th 704 (9th Cir. 2022) ..................................................................... *Passim*

5

*Konigsberg v. State Bar of California*
    366 U.S. 36 (1961) ................................................................................................ 9

6

*Luis v. United States*
7
    136 S. Ct. 1083 (2016) .......................................................................................... 6

8

*McDonald v. City of Chicago*
    561 U.S. 742 (2010) ....................................................................................... 9, 17
9

*Melendres v. Arpaio*
10
    695 F.3d 990 (9th Cir. 2012) ....................................................................... 21, 23

11

*Moore v. Madigan*
12
    702 F.3d 933 (7th Cir. 2012) .............................................................................. 19

13

*New Jersey v. T.L.O.*
    469 U.S. 325 (1985) ...................................................................................... 11, 12

14

*New York State Rifle & Pistol Association Inc. v. Bruen*
15
    142 S. Ct. 2111 (2022) ................................................................................ *Passim*

16

*Nken v. Holder*
    556 U.S. 418 (2009) ............................................................................................ 23
17

*Perpich v. Dep't of Def.*
18
    496 U.S. 334 (1990) ............................................................................................ 13

19

*Rodriguez v. Robbins*
20
    715 F.3d 1127 (9th Cir. 2013) ............................................................................ 23

21

*Roman Cath. Diocese of Brooklyn v. Cuomo*
    141 S. Ct. 63 (2020) ............................................................................................ 22

22

*Shannon v. United States*
23
    512 U.S. 573 (1994) ............................................................................................ 10

24

*Slidewaters LLC v. Washington State Department of Labor & Industries*
    4 F.4th 747 (9th Cir. 2021) ................................................................................... 3

25

*State Oil Co. v. Khan*
26
    522 U.S. 3 (1997) ................................................................................................ 17

27

28

iii

# TABLE OF AUTHORITIES

**Page(s)**

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.*
393 U.S. 503 (1969)................................................................11

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*
809 F.2d 626 (9th Cir. 1987) ...............................................4

*United States v. Jimenez-Shilon*
34 F.4th 1042 (11th Cir. 2022) ...........................................10

*United States v. Miller*
307 U.S. 174 (1939)................................................................13

*United States v. Verdugo-Urquidez*
494 U.S. 259 (1990)................................................................11

*Virginia v. Moore*
553 U.S. 164 (2008)................................................................16

*W. Va. State Bd. of Educ. v. Barnette*
319 U.S. 624 (1943)................................................................11

*Winter v. National Resources Defendant Council, Inc.*
555 U.S. 7 (2008)................................................................3, 23

*Youth Justice Coal. v. City of Los Angeles*
2017 WL 396141 4 (C.D. Cal. 2017)................................25

**FEDERAL STATUTES**

Penal Code

§ 27505................................................................4

§ 27510................................................................*Passim*

§ 27510(b)(1)-(3)................................................................5

§ 27540(e) ................................................................5

§ 29610................................................................4

§ 31615................................................................5

18 U.S.C.

§ 922(b)(1) ................................................................4, 5

# TABLE OF AUTHORITIES

**Page(s)**

Federal Rules of Civil Procedure

    § 56................................................................................................................3

    § 56(a) ...........................................................................................................4

    § 65(a)(2) ...................................................................................................2, 3

Federal Practice and Procedure

    § 2948.1......................................................................................................22

**OTHER AUTHORITIES**

California Senate Bill

    SB-61 ...........................................................................................................5

    SB-1100 .......................................................................................................5

U.S. Constitution

    Amend. I .....................................................................................................11

    Amend. II .............................................................................................. *Passim*

    Amend. IV.................................................................................11, 12, 16

    Amend. XIV.........................................................................8, 15, 16, 17

    Art. I § 2 .....................................................................................................10

    Art. I § 3 .....................................................................................................10

    Art. II § 1 ...................................................................................................10

Noah Webster, *American Dictionary of the English Language*
    600 (1st. ed. 1828).....................................................................................10

2 Samuel Johnson, *A Dictionary of the English Language*
    305 (6th Ed. 1785).....................................................................................10

Thomas M. Cooley, *The General Principles of Constitutional Law in the United States of America*
    271 (1880) ..................................................................................................12

v

## I.    INTRODUCTION

This Second Amendment rights case is brought to protect the "right of *the people*" to keep and bear arms for self-defense and all other lawful purposes. In spite of this preexisting, individual constitutional right that "shall not be infringed," the State of California prohibits law-abiding 18-to-20-year-old adults from purchasing or possessing firearms in common use throughout the United States by exhaustively regulating the sales and transfers of such firearms to 18-to-20-year-olds. Simply stated, Californians over the age of 21 can purchase and possess firearms under a highly regulated, multi-faceted statutory scheme; but law-abiding 18-to-20-year-olds are prohibited from purchasing or possessing such firearms. This ban violates the Second Amendment.

Under the Supreme Court's decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S.Ct. 2111 (2022), Plaintiffs' Second Amendment claim centers on two fundamental points. First, the "conduct" the Plaintiffs wish to engage in — the purchase and possession of firearms for self-defense and all other lawful purposes — is covered by the Second Amendment's plain text, so the Constitution "presumptively protects" that conduct. *Bruen*, 142 S.Ct. at 2126. And second, the State bears the burden to justify its age-based regulation by "demonstrat[ing] that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id*. This showing cannot be made, however, as there is no historical tradition of restricting sales or transfers of firearms to 18-to-20-year-olds while allowing such sales/transfers to those that are 21-years old. If, as here, the State cannot meet its burden, the challenged statutory scheme is unconstitutional — full stop.  And *Bruen* abrogated all lower court cases applying any "means-end test such as strict or intermediate scrutiny." *Id*. at 2129. Accordingly, the State cannot posit that its age-based prohibition promotes an important interest because no "interest-balancing inquiry" can be invoked under *Bruen*. *Id*.  Because the State cannot justify its statutory scheme

under the *Bruen* legal framework, the State's age-based prohibition violates the Second Amendment and must be enjoined.

This motion is brought alternatively as a motion for preliminary injunction (with a request to advance the trial on the merits to the time of the motion hearing under Federal Rules of Civil Procedure 65(a)(2)) or a motion for summary judgment. Either motion is appropriate, as the questions presented turn on legal issues that *Bruen* itself dictates must be resolved in Plaintiffs' favor.

## II.    RELEVANT PROCEDURAL HISTORY

California has restricted the sale of most firearms to anyone under 21. This Court declined to issue a preliminary injunction ECF 21 (Motion), ECF 66 (Order). Plaintiffs filed a timely appeal to the Ninth Circuit. ECF 68. On May 11, 2022, the Ninth Circuit affirmed in part, and reversed in part, this Court's order denying Plaintiffs' preliminary injunction. *Jones v. Bonta*, Case No. 20-56174 (9th Cir. 2022). In July 2022, the State petitioned for panel rehearing and a rehearing *en banc*. On September 7, 2022, the Ninth Circuit granted the request for panel rehearing, vacated the Panel's May 11, 2022, opinion, vacated this Court's order denying preliminary injunction, and remanded the case for further proceedings consistent with the Supreme Court's decision in *Bruen*. ECF 91.

Based on the Ninth Circuit's September 7, 2022, ruling, Plaintiffs' preliminary injunction motion (ECF 21) remained pending. On September 14, 2022, this Court ordered the parties to file supplemental briefing discussing the impact of *Bruen* on Plaintiffs' motion. ECF 92. Plaintiffs and the State filed supplemental briefing. See ECF 95 (Plaintiffs), ECF 96 (State), ECF 99 (Plaintiffs' opposition). Thereafter, this Court issued an order finding that *Bruen* "represents a change in the legal framework this Court applied when deciding Plaintiffs' preliminary injunction motion," and therefore, the Court denied Plaintiffs' motion for preliminary injunction as moot (ECF 100); and allowed Plaintiffs to refile its motion no later than January 16, 2023,

with the State's opposition due no later than March 16, 2023, and any reply due no later than April 17, 2023. Though this combined motion does not require discovery to resolve the undisputed legal questions presented, the State concedes the parties have engaged in fact and expert discovery, including the exchange of expert reports (ECF 83, 96) and this Court already directed that any additional discovery be addressed and scheduled "consistent" with the above-set briefing schedule (ECF 100).

## III.   LEGAL STANDARDS GOVERNING ALTERNATIVE MOTIONS

Plaintiffs move in the alternative for a preliminary injunction with an expedited trial on the merits or for summary judgment. "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Where, as here, the government is a party, the balance of equities factor and the public interest factor merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).

If treated as a motion for preliminary injunction, Plaintiffs ask that the Court advance the trial on the merits and consolidate it with the preliminary injunction hearing. Fed. R. Civ. P. 65(a)(2). An expedited merits hearing is appropriate because Plaintiffs' challenge raises only issues of law; and discovery and additional factual development are unnecessary particularly, as here, where further discovery was allowed consistent with this Court's December 14, 2022 Order (ECF 100). *See Slidewaters LLC v. Wash. State Dep't of Lab. & Indus.*, 4 F.4th 747, 760 (9th Cir. 2021).

Alternatively, Plaintiffs are entitled to summary judgment under Federal Rule of Civil Procedure 56. Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue of material fact and that it is

3

entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Where the party moving for summary judgment does not bear the burden of proof at trial, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325.

## IV.   CALIFORNIA'S FIREARMS REGULATIONS

As pointed out by the Panel, *Jones v. Bonta*, 34 F.4th 704 (9th Cir. 2022), vacated and remanded on reh'g for further proceedings consistent with *Bruen*, California "regulates the acquisition, possession, and ownership of firearms with a multifaceted scheme." *Id*. at 710. The scheme is pervasive and confusing. And the Panel has already determined that the challenged scheme is a "blanket ban" on the ability of 18-to-20-year-olds to acquire centerfire semiautomatic rifles except for law enforcement officers and active-duty military service members, which is no exception at all. See *Jones*, 34 F.4th at 724-725 (requiring young adults to "become police officers or join the military ... is no exception at all"). As to long guns, the challenged scheme is a near-total-ban on the ability of 18-to-20-year-olds to acquire long guns unless they purchase a state hunting license, which itself is a condition found nowhere in the text of the Second Amendment, nor its relevant historical tradition; and, it cannot be justified by the State's oblique references as a "training" or "safety" condition.

At the outset, California continues to strictly regulate the purchase and possession of handguns by 18-to-20-year-olds. See Penal Code §§ 27505, 27510, 29610. Federal law, 18 U.S.C. § 922(b)(1), also already strictly limits the right of 18-

4

to-20-year-olds to purchase a handgun — the "quintessential self-defense weapon" which is "the most popular weapon ... for self-defense in the home." *Heller*, 554 U.S. at 629. Second, except for some intrafamily transfers and loans, the State's scheme already requires that *all firearm transfers,* not just to 18-to-20-year-old adults*,* occur at a licensed firearms dealer. Penal Code §§ 31615, 27540(e). Relatedly, intrafamily transfers and loans are "severely restrictive."  See *Jones v. Bonta*, 34 F.4th at 710, n.2. Third, the purchaser, including 18-to-20-year-olds, must have a valid firearm safety certificate (FSC). Penal Code §§ 31615, 27540(e).

And, in 2018, California signed into law Senate Bill 1100 (SB-1100), effective January 1, 2019, amending Penal Code section 27510 to increase the State's minimum age for firearm purchases and possession from 18 years of age to 21. Prior to enactment of SB 1100 (Penal Code section 27510), existing California law prohibited the sale or transfer of a *handgun*, except as exempted, to any person under the age of 21. However, then-existing California law allowed a person at least 18 years of age to buy or transfer a firearm that is not a handgun (*e.g.*, shotguns, rifles, and other long guns).

While this case was pending, California *again* amended Penal Code section 27510 through Senate Bill 61 (SB-61).  As amended, Section 27510 prohibits 18-to-21-year-olds from acquiring all firearms, except for "long guns" if the purchaser first obtains a valid state hunting license. See Penal Code § 27510(b)(1)-(3). *However, even if the purchaser obtains a valid state hunting license, they are still prohibited from purchasing a centerfire semiautomatic rifle*.[2] Thus, California's restrictions, including Section 27510's age ban, apply to virtually all firearm purchases, acquisitions, or transfers within the State. It is a "blanket ban" on handguns and

---

[2] Note that *all rifles* (both centerfire and rimfire rifles) fall under the broader category of "long guns."

*PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; OR ALTERNATIVELY, MOTION FOR SUMMARY JUDGMENT*
*(3:19-CV-01226-L-AHG)*

centerfire rifles; and it is a near-total-ban on long guns (and other rifles) unless the person has a state hunting license. See *Jones*, 34 F.4th at 710-711, 724-725.

Now, the State may assert that Section 27510 contains only "modest restrictions" and that it addresses "commerce" in firearms and not their possession. But this assertion was rejected in the Panel opinion. Before addressing the historical record, the Panel noted that "California regulates young adults' commerce in firearms, not their possession" (*Jones v. Bonta*, 34 F.4th at 715); at the same time, the Panel readily acknowledged that "[c]ommerce in firearms is a necessary prerequisite to keeping and possessing arms for self-defense," *Id*. at 715-716. The Panel went further:

> We have assumed without deciding that the "right to possess a firearm includes the right to purchase one." *Bauer v. Becerra*, 858 F.3d 1216, 1222 (9th Cir. 2017). And we have already applied a similar concept to other facets of the Second Amendment. For example, "[t]he Second Amendment protects 'arms,' 'weapons,' and 'firearms'; it does not explicitly protect ammunition." *Jackson*, 746 F.3d at 967. Still, because "without bullets, the right to bear arms would be meaningless," we held that "the right to possess firearms for protection implies a corresponding right" to obtain the bullets necessary to use them. Id. (citing *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011)).

> *Similarly, without the right to obtain arms, the right to keep and bear arms would be meaningless*. Cf. *Jackson*, 746 F.3d at 967 (right to obtain bullets). "There comes a point . . . at which the regulation of action intimately and unavoidably connected with [a right] is a regulation of [the right] itself." *Luis v. United States*, 136 S. Ct. 1083, 1097 (Thomas, J., concurring in the judgment) (quoting *Hill v. Colorado*, 530 U.S. 703, 745 (2000) (Scalia, J., dissenting)) [Footnote omitted.] *For this reason, the right to keep and bear arms includes the right to purchase them. And thus laws that burden the ability to purchase arms burden Second Amendment rights*. *Id*. at 715-716 (emphasis added).

## V.    PERTINENT FACTUAL BACKGROUND

At the time Plaintiffs filed their first preliminary injunction, the individually named Plaintiffs were legal adults between the ages of 18 to 20 years old not otherwise prohibited from acquiring and possessing firearms. ECF 21-2 (Jones Dec. ¶ 2-8); ECF 21-3 (Furrh Dec. ¶ 2-11); ECF 21-4 (Yamamoto Dec. ¶ 2-10); ECF 21-7 (Williams Dec. ¶ 2-11). Each Plaintiff attempted to purchase a firearm in California, and each was denied their Second Amendment rights based solely on their age. *Id*. As legal adults over 18 years old, each Plaintiff can vote, enter into contracts, get married, enter the military voluntarily, be selected for and inducted for service into the military — all without restriction on the basis of their age. ECF 21-11 Hardy Dec. ¶ 25, Ex. 17, at 478-480. In addition, individual members of the organizational Plaintiffs (*e.g.*, Jose Chavez and Andrew Morris)[3] are currently being denied their right to keep and bear arms through California's age-based ban. (See Chavez and Morris Declarations, filed concurrently herewith.)

Plaintiffs Poway Weapons and Gear (PWG), Beebe Family Arms and Munitions (Beebe Arms), and North County Shooting Center (NCSC) were forced to stop all sales and firearm transfers to young adults. ECF 21-5 (Phillips Dec. ¶ 2-8); ECF 21-20 (Beebe Dec. ¶ 2-7); ECF 21-6 (Prince Dec. ¶ 2-10). Plaintiffs PWG and NCSC are also licensed shooting ranges. Each entity has been forced to deny young adults the ability to rent, use, and train for proficiency and safety with firearms at their ranges. ECF (Phillips Dec. ¶ 3-8); ECF 21-6 (Prince Dec. ¶ 2-10). Even if a young adult is accompanied by an individual over 21, PWG, NCSC, and other gun

---

[3] Currently pending is Plaintiffs' motion for leave to amend Plaintiffs' complaint, or alternatively, to add new individual plaintiffs via permissive joinder (ECF 101). The same individuals seeking to be added as individual plaintiffs are current members of the already named organizational Plaintiffs. As such, the allegations made in Plaintiffs' motion by Mr. Chavez and Mr. Morris are already encompassed within the current operative Second Amended Complaint.

7

ranges cannot rent or provide firearms to them for fear of violating Penal Code section 27510. *Id.* Further, PWG and NCSC have been forced to prevent young adults from attending and taking part in firearms and hunter education courses, as each course calls for attendees to handle, use, and control firearms. ECF 21-5 (Phillips Dec. ¶ 3-8); ECF 21-6 (Prince Dec. ¶ 2-10).

Plaintiffs Firearms Policy Coalition (FPC), Firearms Policy Foundation (FPF), California Gun Rights Foundation (CGF), and Second Amendment Foundation (SAF) also represent adult members, ages 18 to 20, including Jose Chavez and Andrew Morris, who have been denied their Second Amendment rights and that would otherwise purchase and acquire firearms but for Penal Code section 27510. ECF 21-8 (Combs Dec. ¶ 2-10); ECF 21-10 (Gottlieb Dec. ¶ 2-5). Penal Code section 27510 unconstitutionally prohibits these lawful adults from purchasing firearms based solely on their age. To deprive them the right to acquire and possess a firearm for self-defense and other lawful purposes unquestionably violates their Second Amendment rights.

## VI. THE SECOND AMENDMENT FRAMEWORK SUPPORTS THE GRANT OF THIS MOTION

This Court made the finding that "*Bruen* represents a change in the legal framework this Court applied when deciding Plaintiffs' preliminary injunction motion." ECF 100. The Second Amendment legal framework under *Heller* and *Bruen* supports the grant of this motion.

### A.    The *Bruen* Framework

"A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II. The Second (and the Fourteenth) Amendment "protect[s] an individual's right to carry a handgun for self-defense outside the home." *N.Y. State Rifle & Pistol*

*Ass'n, Inc. v. Bruen*, 142 S. Ct. at 2122; *see also District of Columbia v. Heller*, 554 U.S. 570 (2008); *McDonald v. Chicago*, 561 U.S.742 (2010).

In *Bruen*, the Supreme Court reiterated the legal framework for applying the Second Amendment. In doing so, the Supreme Court rejected the two-step means-end scrutiny adopted by the Ninth Circuit and other courts of appeal, calling it "inconsistent with *Heller*'s historical approach." *Bruen*, 142 S. Ct. at 2129. Pursuant to *Bruen*, rather than a two-step means-end scrutiny, courts must "assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." *Id.* at 2132. Stated another way, courts must first interpret the Second Amendment's text, as informed by history. When the plain text of the Second Amendment covers an individual's conduct, the Constitution presumptively protects that conduct. *Id.* at 2129–30. The burden is then placed on the State to "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id.* at 2116, 2130 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50, n.10 (1961)). If the State cannot meet its burden, the law or regulation is unconstitutional — full stop.  No interest-balancing or scrutiny analysis can or should be conducted. *Id.* at 2127, 2129-2130.

**B.     Application to California's Categorical Prohibitions**

With this framework clarified, the question is whether California can prohibit the acquisition of firearms, specifically, centerfire rifles and long guns, from an entire class of people — law-abiding 18-to-20-year-olds — based solely on their age. Under *Bruen*, both of these aspects of the challenged law violate Plaintiffs' Second Amendment right. *See Jones v. Bonta*, 34 F.4th at 716.

/ / /

9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 1.    The Second Amendment Text Covers 18-to-20-Year-Olds.

This Court must start with the Second Amendment text. *See, e.g.*, *Shannon v. United States*, 512 U.S. 573, 580 (1994) (Thomas, J.) ("[W]e turn first, as always, to the text[.]"). If the plain text covers the individual's conduct, the Constitution presumptively protects that conduct.

Here, Plaintiffs are law-abiding 18-to-20-year-olds, licensed dealers/ranges desiring to sell or transfer firearms to 18-to-20-year-olds, and Second Amendment rights organizations with 18-to-20-year-old members who want to acquire firearms for self-defense and all other lawful purposes. However, the State has enacted the challenged law to prohibit firearm sales or transfers to 18-to-20-year-olds. The relevant question, therefore, is whether law-abiding 18-to-20-year-olds are encompassed under the text of the Second Amendment; and the answer is yes — unquestionably, they are part of "the people" referenced in the Second Amendment.

At the outset, the text of the Second Amendment does not include any age restriction. This absence is notable — when the Framers meant to impose age restrictions, they did so expressly. *See, e.g.*, U.S. CONST. art. I, § 2 (age 25 for the House of Representatives); *id.* art. I, § 3 (age 30 for the Senate); *id.* art. II, § 1 (age 35 for the President). Instead, the Second Amendment refers only to "the people," which various Founding-Era dictionaries define as a reference to those who make up the "national community." *See United States v. Jimenez-Shilon*, 34 F.4th 1042, 1044–1045 (11th Cir. 2022) (quoting Noah Webster, *American Dictionary of the English Language* 600 (1st ed. 1828) ("The body of persons who compose a community, town, city, or nation.")); *see also* 2 Samuel Johnson, *A Dictionary of the English Language* 305 (6th Ed. 1785) ("A nation; those who compose a community.")).

Consistent with the above, *Heller* said "the people" is a term of art that refers to "all members of the political community, not an unspecified subset." 554 U.S. at

580. *Heller*'s interpretation found support in an earlier decision, *United States v. Verdugo-Urquidez*, which considered the Fourth Amendment's reference to "the people." 494 U.S. 259 (1990). In that case, the Supreme Court interpreted the phrase to encompass those "persons who are part of a national community" or those who have "sufficient connection with this country to be considered part of that community." *Id.* at 265. Indeed, the Court in *Heller* made clear that the "Second Amendment right is exercised individually and belongs to all Americans." *Id.* 554 U.S. at 581.

Following suit, the Supreme Court in *Bruen* stated it was undisputed that "ordinary, law-abiding, adult citizens [] are part of 'the people' whom the Second Amendment protects." *Id.*, 142 S. Ct. at 2134. "The Second Amendment . . . 'surely elevates above all other interests the right of law-abiding, responsible citizens to use arms' for self-defense." *Id.* at 2131 (quoting *Heller*, 554 U.S. at 635). As such, binding Supreme Court authority has answered whether the text of the Second Amendment encompasses 18-to-20-year-old adults — it does.

Additionally, the other two enumerated rights of "the people" — the First and Fourth Amendment rights — apply to all Americans regardless of age. *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 511 (1969); *New Jersey v. T.L.O.*, 469 U.S. 325, 334 (1985). Specifically, the First Amendment has been interpreted to apply to all persons, even those under the age of 18. *E.g.*, *Tinker*, 393 U.S. at 506 (free speech); *see also W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943) (free exercise). While the First Amendment is limited in some contexts (such as the forum or content), age is not a basis for denying the enumerated right. *Tinker*, 393 U.S. at 506 ("First Amendment rights, applied in light of the special characteristics of the school environment, are available to teachers and students. It can hardly be argued that either students or teachers *shed* their constitutional rights to freedom of speech or expression *at the schoolhouse gate*." (Emphasis added).

11

And the Fourth Amendment likewise protects individuals regardless of age. *See New Jersey v. T.L.O.*, 469 U.S. at 334. Under the Fourth Amendment, the expectation of privacy is not affected based on the age of the person being searched. Instead, the *context* of a search is the distinguishing factor. *Id.* Accordingly, both the First and Fourth Amendment support the interpretation "of the people" without regard to age. This Court cannot engraft an age restriction onto the Second Amendment where none exists.

Moreover, interpreting "the people" to include 18-to-20-year-olds is also consistent with the rest of the text of the Second Amendment. As explained in *Heller*, the Second Amendment contains two clauses. The prefatory clause, which states "[a] well regulated Militia, being necessary to the security of a free State . . . ," "announces the purpose for which the right was codified: to prevent elimination of the militia." *Heller*, 554 U.S. at 599. And there is the operative clause — "the right of the people to keep and bear Arms, shall not be infringed." *Id.* at 579. And "[l]ogic demands that there be a link between the stated purpose and the command." *Id.* at 577. Here, interpreting "the people" is logically linked to the prefatory clause (and its purpose).

Specifically, given the Second Amendment's stated purpose, logic demands that if an individual was, or is, a member of the "militia," the Second Amendment's protections extend *at least* to those who constitute the militia. Stated differently, although the Second Amendment is not limited to only those in the militia, *at the very least,* it must protect the pool of individuals from whom the militia would be drawn. *See* THOMAS M. COOLEY, THE GENERAL PRINCIPLES OF CONSTITUTIONAL LAW IN THE UNITED STATES OF AMERICA 271 (1880). It would be illogical to enumerate a constitutional right to keep and bear arms to maintain an armed militia if that right did not protect those individuals from whom a militia would be drawn. *See Firearms Policy Coalition, Inc. v. McCraw*, __

12

F.Supp.3d __, 2022 WL 3656990 (N.D. Tex. 2022) (Case No. 4:21-cv-1245-P) (examining the text and history of the Second Amendment post-*Bruen* and holding unconstitutional a prohibition on 18-to-21-year-olds from carrying a handgun outside the home for self-defense).

Further, in *United States v. Miller*, 307 U.S. 174, 179 (1939), the Supreme Court explained that "the Militia comprised all males physically capable of acting in concert for the common defense." And in *Heller*, the Supreme Court affirmed this definition, stating it "comports with founding-era sources." *Heller*, 554 U.S. at 595-599. Thus, at the Founding, the "militia" was generally understood to be comprised of "all able-bodied men," which included 18-to-20-year-olds. *Id.* at 596.

The historical record also supports this understanding. The First Congress enacted legislation "command[ing] that every able-bodied male citizen between the ages of 18 and 45 be enrolled in the militia and equip himself with appropriate weaponry." *Jones v. Bonta*, 34 F.4th at 719 (quoting *Perpich v. Dep't of Def.*, 496 U.S. 334, 341 (1990).) Additionally, the 1792 Act required militia members to arm themselves rather than rely on the government to provide arms. *See Miller*, 307 U.S. at 179 (recognizing that the militia presupposed firearm possession because "when called for service[,] these men were expected to appear bearing arms supplied by themselves and of the kind in common use at the time").

Finally, though vacated, the Panel opinion acknowledged the importance of this point, stating:

> America would not exist without the heroism of the young adults who fought and died in our revolutionary army. Today we reaffirm that our Constitution still protects the right that enabled their sacrifice: the right of young adults to keep and bear arms. *Jones v. Bonta*, 34 F.4th at 710.

The Panel opinion went further to bolster its interpretation of the Second Amendment text and history. Beginning even before 1791, the history of 18-to-20-year-olds keeping and bearing arms uniformly shows that they were part of the

13

"militia" referred to in the Amendment's text. "The tradition of young adults keeping and bearing arms is deep-rooted in English law and custom" and American colonists brought that tradition across the Atlantic." *Jones*, 34 F.4th at 717.

"At the time of the founding, all states required young adults to serve in the militia, and all states required young adults to acquire and possess their own firearms" and that "just after the founding, Congress established a federal militia, which included young adults, and required them to acquire and possess their own weapons." *Id*. "The historical record shows that the Second Amendment protects young adults' right to keep and bear arms" (*id*. at 720) *and* because "that right includes the right to purchase arms, both California laws [banning semiautomatic rifles and long guns] burden conduct within the scope of the Second Amendment." *Id*. at 723 (see also page 723, the "California laws burden the Second Amendment rights and the district court erred in concluding otherwise"). Said succinctly, "the Second Amendment protects the right of young adults to keep and bear arms, *which includes the right to purchase them*." *Id*. at 710.

### 2.    The Firearms at Issue are "Arms" Under the Second Amendment's Plain Text

Once it is established that 18-to-20-year-olds have Second Amendment rights on par with other adults, the next relevant question under *Bruen* is whether the firearms banned by Penal Code section 27510 are "arms" within the text of the Second Amendment and are not both "dangerous and unusual," since they are commonly used by law abiding citizens for lawful purposes such as hunting, target practice, and self-defense. Unquestionably, both centerfire semiautomatic rifles and long guns are commonly owned, bearable arms, fully protected under the text of the Second Amendment; and therefore, under *Bruen*, the State's ban is unconstitutional.

The Second Amendment extends to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding. The Supreme Court in *Heller* acknowledged this threshold point. In *Bruen* Supreme Court clarified

14

that although "its meaning is fixed according to the understandings of those who ratified it, the Constitution can, and must, apply to circumstances beyond those the Founders specifically anticipated [citation omitted]," and "[w]e have already recognized in *Heller* at least one way in which the Second Amendment's historically fixed meaning applies to new circumstances: its reference to 'arms' does not apply 'only [to] those arms in existence in the 18th century ... the Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Bruen*, 142 S.Ct. at 2132.

### C.   This Nation's Historical Tradition of Gun Regulation

#### 1.   No Historical Laws Justify Restricting the Rights of 18-to-20-Year-Olds

*Bruen* is clear: To prevail under a "historical tradition" analysis, the State has the burden to justify its regulation by offering appropriate historical analogues from the relevant time period, *i.e.*, the founding era. "Much like we use history to determine which modern "arms" are protected by the Second Amendment, so too does history guide our consideration of modern regulations that were unimaginable at the founding." 142 S.Ct. at 2132. In *Bruen*, the Court found that the respondents in that case had offered historical evidence in their attempt to justify their prohibitions on the carrying of firearms in public. Specifically, they offered four categories of historical sources: "(1) medieval to early modern England; (2) the American Colonies and the early Republic; (3) antebellum America; (4) Reconstruction; and (5) the late-19th and early-20th centuries." 142 S.Ct. at 2135-36. However, the Court noted that "not all history is created equal. 'Constitutional rights are enshrined with the scope they were understood to have *when the people adopted them*.' […] The Second Amendment was adopted in 1791; the Fourteenth in 1868." *Id.*, at 2136 (citing *Heller*, 554 U.S. at 634-35 (emphasis original). Thus, the Court cautioned against "giving post enactment history more weight than it can rightly bear." 142 S.Ct. at

15

*PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; OR ALTERNATIVELY, MOTION FOR SUMMARY JUDGMENT*
*(3:19-CV-01226-L-AHG)*

2136. And "to the extent later history contradicts what the text says, the text controls." *Bruen*, 142 S.Ct. at 2137 (citation omitted).

Further, in examining the relevant history that was offered, the Court in *Bruen* noted that "[a]s we recognized in *Heller* itself, because post-Civil War discussions of the right to keep and bear arms 'took place 75 years after the ratification of the Second Amendment, they do not provide as much insight into its original meaning as earlier sources.'" 142 S.Ct at 2137 (citing *Heller*, 554 U.S. at 614).

*Bruen* noted an "ongoing scholarly debate on whether courts should primarily rely on the prevailing understanding of an individual right when the Fourteenth Amendment was ratified in 1868 when defining its scope (as well as the scope of the right against the Federal Government)." 142 S.Ct. at 2138. At the same time, the Court found that it had "generally assumed that the scope of the protection applicable to the Federal Government and States is pegged to the public understanding of the right when the Bill of Rights was adopted in 1791." *Id.,* at 2137 (citations omitted). Perhaps the Court was signaling that parties in future cases should address the issue for the Court, but it was certainly not overruling cases in which it had, dispositively, "look[ed] to the statutes and common law of the founding era to determine the norms that the [Bill of Rights] was meant to preserve." *See, e.g.*, *Virginia v. Moore*, 553 U.S. 164, 168 (2008) (Fourth Amendment). And while the Court in *Heller* itself had reviewed materials published *after* adoption of the Bill of Rights, it did so to shed light on the public understanding in 1791 of the right codified by the Second Amendment, and only after surveying what it regarded as a wealth of authority for its reading—including the text of the Second Amendment and state constitutions. "The 19th-century treatises were treated as mere confirmation of what the Court had already been established." 142 S.Ct. at 2137 (citing *Gamble*, 139 S.Ct. at 1976).

Therefore, under binding Supreme Court precedent, 1791 must be the controlling time for the constitutional meaning of Bill of Rights provisions

16

incorporated against the States by the Fourteenth Amendment because, as in *Heller*, the Court has looked to 1791 when construing the Bill of Rights against the federal government and, as in *McDonald*, the Court has established that incorporated Bill of Rights provisions mean the same thing when applied to the States as when applied to the federal government. *See McDonald v. City of Chicago*, 561 U.S. 742, 765 (2010). *Bruen* did not disturb these precedents, and they are therefore binding on lower courts.  *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997).

This dispute aside, *Bruen* made clear that 20th-century historical evidence was not to be considered. *Id.*, at 2154, n.28 ("We will not address any of the 20th-century historical evidence brought to bear by respondents or their *amici*. As with their late-19th-century evidence, the 20th-century evidence presented by respondents and their *amici* does not provide insight into the meaning of the Second Amendment when it contradicts earlier evidence.").

Moreover, the Panel found that the State's reference to Reconstruction era laws were "not convincing." *Id*. Aside from the "deeply offensive nature of many of them," the Panel found that after ruling out inapplicable state laws during the Reconstruction era "we are left with only five complete bans on sales of firearms to minors." *Id*. Of these five laws, three were passed in states without a Second Amendment analog in their state constitution. So, only two states — Kentucky and Michigan — banned the sale of firearms to minors, and "these two laws — both passed over a decade after the ratification of the Fourteenth Amendment — cannot contravene the Second Amendment's original public meaning." *Id*. Because of the late date of these restrictions, they necessarily "do not provide as much insight into its original meaning as earlier sources." *Heller*, 554 U.S. at 614.

In sum, under *Bruen,* some evidence *cannot* be appropriate historical analogues, such as 20th-century restrictions, laws that are rooted in racism, laws that have been overturned (such as total handgun bans), and laws that are *inconsistent*

17

with the original meaning of the constitutional text. *Bruen,* 142 S.Ct at 2137 ("post-ratification adoption or acceptance of laws that are inconsistent with the original meaning of the constitutional text obviously cannot overcome or alter that text.") (citing *Heller v. District of Columbia* (*Heller II*), 670 F.3d 1244, 1274 n.6 (D.C. Cir. 2011) (Kavanaugh, J., dissenting)). These sources of evidence must be disregarded.

The Panel opinion's inquiry confirms that the historical record is *devoid* of age-based firearm acquisition prohibitions or restrictions on 18-to-20-year-olds during the precolonial and the founding era. See *Jones*, 34 F.4th at 717-719. Additionally, there was no such historical precedent for declaring "unsafe" and prohibiting the commercial sale of firearms that are widely available and in common use for self-defense and all other lawful purposes among law-abiding 18-to-20-year-olds. Moreover, there is no such historical precedent for imposing "licensing," "training," or "safety" conditions and prohibiting the commercial sale of firearms to 18-to-20-year-olds. Plainly stated, the historical record shows that the State cannot justify the Penal Code section 27510's ban on firearms based solely on age or the firearms that are in common use and are not both dangerous and unusual.

## 2.  There Is No Justification for Banning the Firearms at Issue

Given that the Second Amendment's plain text presumptively covers all bearable arms, and since the arms the State has banned are in common use, the State cannot justify its ban under the Second Amendment's text and this Nation's history as interpreted in *Heller* and *Bruen*. *See Bruen*, 142 S.Ct. at 2143 (discounting relevance of colonial laws because "even if these colonial laws prohibited the carrying of handguns because they were considered 'dangerous and unusual weapons' in the 1690s, they provide no justification for laws restricting the public carry of weapons that are unquestionably in common use today").

*Heller* and *Bruen* have decided the underlying historical principle: only dangerous and unusual arms can be banned. This Court need only apply that

historical principle to the facts in this case, just as done in *Heller* and *Bruen*. There is no need for any further historical analysis. Any attempt by the State to engage in such analysis would be asking "to repudiate the [Supreme] Court's historical analysis," which this Court "can't do." *Moore v. Madigan*, 702 F.3d 933, 935 (7th Cir. 2012). In any event, even if the question of what types of arms may be banned were an open one, the State has not, and cannot, historically support the ban at issue here.

Application of the "dangerous and unusual" standard is straightforward, since this Court and the prior Panel opinion already found that both centerfire semiautomatic rifles and long guns are not both dangerous and unusual weapons. See *Jones v. Becerra*, 498 F. Supp. 3d at 1325; *Jones v. Bonta*, 34 F.4th at 716. This Court held that "[b]oth long-guns and semiautomatic centerfire rifles are commonly used by law abiding citizens for lawful purposes such as hunting, target practice, and self-defense," and thus, they are not "dangerous and unusual weapons" under *Heller*, 554 U.S. at 627. In addition, the Panel opinion analyzed this precise issue and "agreed" with this Court: "long guns and semiautomatic rifles are not dangerous and unusual weapons." *Jones*, 34 F.4th at 716. This Court merely needs to adopt its prior finding — subsequently affirmed by the Panel opinion — that "long guns and semiautomatic rifles are not dangerous and unusual weapons." *Id*.

### D.   The Prior Justification For the State's So-Called Hunting License "Training  Requirement" Has Already Been Rejected

Based on the above analysis, the so-called hunting license "training requirement" also must be declared unconstitutional. Both this Court's prior ruling and the Panel opinion justified the so-called "training requirement" of the hunting license exception to the long gun prohibition by applying intermediate scrutiny under the rejected "interest-balancing" test. See *Jones*, 34 F.4th at 727-728. However, the Supreme Court in *Bruen* explicitly rejected this "interest-balancing" approach:

1
2
3
4
5
6
7

Federal courts tasked with making difficult empirical judgments regarding firearm regulations under the banner of "intermediate scrutiny" often defer to the determinations of legislatures. While judicial deference to legislative interest balancing is understandable — and, elsewhere, appropriate — it is not deference that the Constitution demands here. *The Second Amendment "is the very product of an interest balancing by the people," and it "surely elevates above all other interests the right of law-abiding, responsible citizens to use arms" for self-defense.  Bruen*, 142 S. Ct. at 2118, emphasis added (citing Heller, 554 U.S. at 635).

8
9
10
11

Thus, the prior justification for upholding the State's ban on long guns must be rejected. Under the proper legal framework under *Bruen*, California's ban on long guns is categorically unconstitutional because there are no historically analogous laws or regulations that justify the State's ban on long guns.

12
13
14
15
16
17
18
19

The State, this Court, and the Panel opinion have all described California's long gun ban as a "training requirement" for firearm purchases. Applying the *Bruen* standard, the State bears the burden of showing laws and regulations imposing historically analogous training requirements *as a prerequisite* to the exercise an individual's Second Amendment right. The State cannot point to a single Founding era law or regulation that required an individual of any age to obtain training or licensing *before* they were permitted to purchase a firearm and exercise their right to keep and bear arms.

20
21
22
23
24
25
26
27

Further, while the State has referenced a handful of gun powder storage laws and other laws regulating the discharge of firearms in public and has categorized them as firearm "safety laws," they provide no support for the State's ban. First and foremost, those laws all necessarily require the individual to possess a firearm in the first instance. They were not safety laws or regulations imposed as a *prerequisite* to purchasing a firearm. Moreover, unlike the uniformly applied "safety regulations," California's ban subjects law-abiding 18-to-20-year-olds to different restrictions than the rest of the population. As shown above, this is not supported by any historically

28

20

analogous law or regulation. Nor can the State justify its age-ban by referencing certain militia "inspection" and "maintenance" requirements as this argument was rejected by *Heller* and the prior Panel opinion. See *Heller*, 554 U.S. at 595, 599-600 ("Second Amendment conferred an individual right to keep and bear arms" and that right "is not conditioned on militia service," nor in this case, militia training, maintenance, or safety conditions); and see *Jones*, 34 F.4th at 721.

Under the *Bruen* framework, the State bears the burden of showing historically analogous laws and regulations imposing training requirements as a prerequisite to exercising the fundamental right to keep and bear arms. There are no such laws or regulations. As such, the State's long gun prohibition is also unconstitutional.

## VII.   THE PRELIMINARY INJUNCTION STANDARDS ARE MET

### A.   The Irreparable Harm Factor is Established.

The Panel opinion already rejected the State's three arguments for why Plaintiffs would not be irreparably injured by the deprivation of their constitutional rights. See *Jones*, 34 F.4th at 732-733. Specifically, the firearm exceptions do not avoid irreparable harm because the law deprives 18-to-20-year-olds their Second Amendment right. *Id*. at 732. Further, the use of a firearm at shooting ranges under certain extremely limited circumstances does not alleviate the ban on allowing young adults to exercise their core Second Amendment right of self-defense. *Id*. Finally, that Plaintiffs can still access firearms when the eventually turn 21 does not avoid the irreparable harm. *Id*. at 732-733.[4]

The harm has been demonstrated and it is irreparable. As the Ninth Circuit has emphasized, "the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Because "constitutional

---

[4]  In any case, Plaintiffs have shown that active members of the organizational Plaintiffs are currently prohibited from acquiring firearms due to the State's age-based ban.  See Declarations of Jose Chavez and Jason Wieringa.

violations cannot be adequately remedied through damages [such violations] therefore generally constitute irreparable harm." *Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1059 (9th Cir. 2009) (citation omitted); *see also Duncan v. Becerra*, 265 F. Supp. 3d 1106, 1135 (S.D. Cal. 2017) ("Loss of . . . the enjoyment of Second Amendment rights constitutes irreparable injury.").

Further, the "loss of [constitutional] freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020) (per curiam); see also 11A Charles Alan Wright, et al., Federal Practice & Procedure § 2948.1 (3d ed. 2013) ("When an alleged deprivation of a constitutional right is involved, . . . most courts hold that no further showing of irreparable injury is necessary.").

Unquestionably, the State's age-based firearms ban (i) prohibits a subset "of the people" (18-to-20-year-olds), (ii) bans protected conduct (purchasing/acquiring firearms), and (iii) blanketly prohibits arms in common use and not both dangerous and unusual (long guns and centerfire semiautomatic rifles). As such, this group (18-to-20-year-olds) and the bearable arms (long guns and centerfire semiautomatic rifles) enjoy the Second Amendment's full protection. Conversely, the State sustains no harm. As point out in *Jones*, "the government suffers no harm from an injunction that merely ends unconstitutional practices," 34 F.4th at 733, citing *Doe v. Kelly*, 878 F.3d 710, 718 (9th Cir. 2017).

**B.     The Likelihood of Success Factor is Satisfied.**

Plaintiffs have shown an overwhelming likelihood of success on the merits under the *Heller/Bruen* legal framework. Under the Second Amendment's text, both the conduct and the arms in question are protected. As such, the State bears the burden to justify its blanket prohibition by showing relevant historical analogues from the founding era. The State has not provided, and cannot provide, any such

22

analogous laws or regulations that justify prohibiting the Second Amendment rights of 18-to-20-year-olds based solely on their age and the firearms at issue.

Additionally, the Panel opinion already noted "Plaintiffs' overwhelming likelihood of success on the merits." *Jones*, 34 F.4th at 733. As such, the State must overcome the Panel opinion's undisputed facts and historical evidence; otherwise, this factor (likelihood of success) has been established. And because the proper application of the *Heller/Bruen* legal framework overwhelmingly supports Plaintiff's likelihood of success on the merits, this Court is to apply that legal framework and reassess the remaining *Winter* factors consistent with the *Bruen* decision — a task made simpler under the guidance provided in *Jones*, 34 F.4th at 732-733.

**C.     The Balance of Equities and Public Interest Favor Plaintiffs.**

Both the balance of the equities and the public interest — which merge here, *Nken v. Holder*, 556 U.S. 418, 435 (2009) — strongly support the relief requested. "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (citation omitted). Those factors tip overwhelmingly in Plaintiffs' favor because the State has no legitimate interest — and no public interest is served — in enforcing laws, such as Penal Code section 27510, that strip a broad subset of 'the people" of their constitutional rights due to the criminal acts of an infinitesimal group. The preliminary injunction will protect Californians, ages 18 to 20 years old, from harm, and the State "cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required to avoid constitutional concerns." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013).

Here, the State already attempted to tip the balance of equities and public interest in its favor on appeal, alleging that the "potential harm of enjoining a duly-enacted law designed to protect public safety *outweighs* [18-to-20-year-olds'] inability to secure the firearm of their choice without proper training." See Appellees'

Answer Brief, ECF 24. This claim was rejected. See *Jones*, 34 F.4th at 730-731 and (Lee, concurring opinion at 747-748). Specifically, the opinion noted that the State justified Penal Code section 27510 by citing statistics showing that 18-20-year-olds constitute less than 5% of the population but represent more than 15% of homicide and manslaughter arrests and asserting that section 27510 enforcement is necessary for its "public safety" goal. See *Jones*, 34 F.4th at 730-731, and (Lee, concurring opinion at 747). And the concurring opinion went further, scolding the State for assuming a legal position with "no logical stopping point" and one that "would ultimately erode fundamental rights enumerated in our Constitution" based on "anecdotal evidence" and "questionable statistics." *Id*. (Lee concurring opinion at 747-748).

The concurring opinion noted that "we cannot jettison our constitutional rights, even if the goal behind a law is laudable," (Lee, concurring opinion at 747), and illustrated its point by citing the majority opinion, stating that "only 0.25% of young adults commit violent crimes. So California limits the rights of 99.75% of young adults based on the bad acts of an incredibly small sliver of the young adult population." *Id*. at 748. "If California can deny the Second Amendment right to young adults based on their group's disproportionate involvement in violent crimes, then the government can deny that right — as well as other rights ─ to other groups," a prospect that the concurring opinion made clear was wrong. *Id*. at 748-750.

Further, as stated above, "[t]he Second Amendment "is the very product of an interest balancing by the people," and it "surely elevates above all other interests the right of law-abiding, responsible citizens to use arms" for self-defense. *Bruen*, 142 S.Ct. at 2131 (citing *Heller*, 554 U.S. at 635). The Court in *Bruen* emphasized that "[i]t is this balance — struck by the traditions of the American people — that demands our unqualified deference." *Bruen*, 142 S.Ct. at 2131. Simply put, the State cannot legitimately claim the interests tips sharply in its favor when it strips the rights

24

of the 18-to-20-year-olds based solely on the "bad acts of an incredibly small sliver of the young adult population." *Jones*, 34 F.4th at 748 Lee, concurring opinion).[5]

## VIII.  CONCLUSION

In light of the above, Plaintiffs request that this Court issue an order finding that Penal Code section 27510 is unconstitutional and enjoining its enforcement.

January 16, 2023                                     Respectfully submitted,

                                                                DILLON LAW GROUP APC

                                                                Attorneys for Plaintiffs

                                                                By:   */s/ John W. Dillon*

                                                                        John W. Dillon

---

[5] For the same reasons, and especially because this case seeks to vindicate Plaintiffs' constitutional rights and would not subject the government to any monetary losses, the Court should waive the bond requirement when it issues an injunction. *Youth Justice Coal. v. City of Los Angeles*, LA CV 16-07932, 2017 WL 396141, at *4 (C.D. Cal. 2017) (collecting cases).

25