1  John W. Dillon (Bar No. 296788)
   Dillon Law Group APC
2  2647 Gateway Road
3  Suite 105, No. 255
   Carlsbad, California 92009
4  Telephone: (760) 642-7150
5  Facsimile: (760) 642-7151
   E-mail: jdillon@dillonlawgp.com
6
7  Attorneys for Plaintiffs

8                    UNITED STATES DISTRICT COURT
9                   SOUTHERN DISTRICT OF CALIFORNIA

10  JOSE CHAVEZ, *et al.*,              ) Case No.: 3:19-cv-01226-L-AHG
11                                      )
             Plaintiffs,                )
12                                      ) Hon. M. James Lorenz and Magistrate Judge
    v.                                  ) Allison H. Goddard
13                                      )
    ROB BONTA, in his official          )
14  capacity as Attorney General of the ) **PLAINTIFFS' REPLY IN SUPPORT OF**
    State of California, *et al.*,[1]   ) **NOTICE OF MOTION AND MOTION FOR**
15                                      ) **PRELIMINARY INJUNCTION; OR**
16  Defendants.                         ) **ALTERNATIVELY, MOTION FOR**
                                        ) **SUMMARY JUDGMENT**
17                                      )
                                        ) Action Filed: July 1, 2019
18                                      )
                                        ) First Amended Complaint Filed:
19                                      ) July 30, 2019
20                                      )
                                        ) Second Amended Complaint Filed: Nov. 8,
21                                      ) 2019
22                                      )
                                        ) No oral argument will be heard pursuant to
23                                      ) local rules unless ordered by the Court
24
25
   ─────────────────────
26  [1] Rob Bonta is automatically substituted for his predecessor, Xavier Becerra, as California
   Attorney General, and Allison Mendoza is automatically substituted for her predecessors,
27  former Directors Louis Lopez and Martin Horan, and former Acting Directors Brent E.
28  Orick and Blake Graham. Fed. R. Civ. P. 25(d).

*PLAINTIFFS' REPLY IN SUPPORT OF NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION;*
*OR ALTERNATIVELY, MOTION FOR SUMMARY JUDGMENT*
*(3:19-CV-01226-L-AHG)*

# TOPICAL INDEX

Page(s)

I. INTRODUCTION ...................................................................................................1

II. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS ......................2

   A. The Age-Based Ban Prohibits Legal Adults From Keeping and Bearing Arms.........................................................................2

   B. Generalized Licensing Requirements Do Not Justify the State's Ban ..........3

   C. The State's Ban on Semiautomatic Rifles Cannot Be Justified.....................5

   D. The State's Three Mid-Century Laws Provide No Justification For its Age-Based Ban ....................................................................................6

   E. University Rules Are Not Analogous Regulations ........................................7

   F. Late 19th Century Regulations That are Inconsistent with the Second Amendment Text Cannot Overcome or Alter that Text ..................8

   G. Militia Requirements Support the Right to Keep and Bear Arms .................9

III. THE IRREPARABLE HARM FACTOR HAS BEEN ESTABLISHED..........................................................................................................10

IV. THE BALANCE OF EQUITIES AND PUBLIC INTEREST FAVOR PLAINTIFFS..........................................................................................10

V. CONCLUSION......................................................................................................10

i

*PLAINTIFFS' REPLY IN SUPPORT OF NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION;*
*OR ALTERNATIVELY, MOTION FOR SUMMARY JUDGMENT*
*(3:19-CV-01226-L-AHG)*

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*District of Columbia v. Heller,* 554 U.S. 570 (2008) .......................................... Passim

*Doe v. Kelly*, 878 F.3d 710 (9th Cir. 2017) .............................................................. 10

*Hill v. Colorado*, 530 U.S. 703, 120 S. Ct. 2480
    147 L. Ed. 2d 597 (2000) ...................................................................................... 2

*Hirschfeld v. BATFE,* 5 F.4th 407 (2021) ............................................................. 6, 9

*Jackson*, 746 F.3d at 967 ............................................................................................ 2

*Jones v. Bonta*
    34 F.4th 704 (9th Cir. 2022) ................................................................ 2, 7, 9, 10

*Luis v. United States*, 578 U.S. 5,
    136 S. Ct. 1083, 194 L. Ed. 2d 256 ..................................................................... 2

*Morse v. Frederick*, 551 U.S. 393, 413 n.3 (2007) ..................................................... 7

*Nat'l Rifle Ass'n of Am., Inc. v. BATFE*,
    714 F.3d 334 (5th Cir. 2013) ............................................................................. 10

*National Rifle Association v. Bondi,*
    2023 U.S. App. LEXIS 5672 .................................................................. 5, 6, 8, 9

*New York State Rifle & Pistol Association Inc. v. Bruen,*
    142 S.Ct. 2111 (2022) ................................................................................. Passim

*United States v. Sprague,* 282 U.S. 716 (1931) ........................................................... 6

*Worth v. Harrington*, 2023 U.S. Dist. LEXIS 56638, at *13-22 ............................ 6-10

**Rules**

Fed. R. Civ. P. 25(d). ................................................................................... Caption page

**Penal Code**

Penal Code Section 27510 .................................................................................... 2, 5

**U.S. Constitution**

Fourteenth Amendment ........................................................................................ 5, 6

Second Amendment ......................................................................................... Passim

ii

*PLAINTIFFS' REPLY IN SUPPORT OF NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION;*
*OR ALTERNATIVELY, MOTION FOR SUMMARY JUDGMENT*
*(3:19-CV-01226-L-AHG)*

## I. INTRODUCTION

The Defendants have submitted voluminous declarations, plus attachments, from seven purported experts in a futile attempt to explain away the lack of any constitutionally relevant history showing a tradition of regulations that justify the State of California's firearms restrictions that prohibit the purchase of firearms in California by peaceable people aged 18 to 20 years old ("Young Adults"). But their best efforts fail. Indeed, the Defendants have fallen far short of meeting their burden under *New York State Rifle & Pistol Ass'n, Inc. v. Bruen,* 142 S.Ct. 2111 (2022).

**First**, much of the State's declarations either discuss irrelevant history (*e.g.*, the declarations of Robert Spitzer, Prof. Saul Cornell, Randolph Roth, and Brennan Rivas, respectively) or present interest-balancing policy arguments rejected in *Bruen, id.* at 2129 – 2130, (*e.g.*, the declarations of Professor John J. Donahue, Louis Klarevas, and Lucy P. Allen, respectively). These declarations are immaterial and/or inappropriate under *Bruen* and should be disregarded.

**Second**, the State concedes that Young Adults are part of the "people" protected by the Second Amendment and that the "acquisition restrictions" imposed through Federal Firearms Licenses (FFLs) implicate the "right to keep and bear arms." *See* Defendants' Opposition (Opp.) at 8-9. Accordingly, because Young Adults are part of "the people" identified in the plain text of the Second Amendment, and the arms that the State has banned them from acquiring are likewise protected under the text, the State bears the burden of justifying its ban. But it has not done so—nor could it. Under *Bruen*, the analysis ends here. *Id*. at 2130. But even if not, the State has failed to show *any* tradition of historical laws from any constitutionally relevant period that justify the State's ban. Indeed, according to the State's own survey, "*Defendant's Survey of Relevant Statutes Concerning Age Restrictions (Founding Era – 1930s)*" (Age Survey), the first age-based restriction on the

1

acquisition of any kind firearm was not enacted until 1856. *See* Opp. Ex. 1 at 1-64: 26, 27. As such, the State's ban fails constitutional scrutiny and must be enjoined.

## II. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS

### A. The Age-Based Ban Prohibits Legal Adults From Keeping and Bearing Arms

The State wrongly asserts that Penal Code section 27510 does not prohibit any person from keeping or bearing arms. Opp. at 4-5, 9. Under California's regulatory scheme—in which nearly all firearm transfers (both commercial and private) are required to be processed through FFLs—Defendants' enforcement of a statute mandating that FFLs "shall not sell, supply, deliver, or give possession or control of a firearm to any person who is under 21 years of age" necessarily cuts off the primary mode of lawful firearm acquisition in the state and imposes a severe prohibition on firearm acquisition by otherwise eligible Young Adults.

And "[c]ommerce in firearms is a necessary prerequisite to keeping and possessing arms for self-defense." *Jones v. Bonta*, 34 F.4th 704, 715 (9th Cir. 2022). The prior Panel decision, as well as several other courts, have made this explicit:

> [W]ithout the right to obtain arms, the right to keep and bear arms would be meaningless. *Cf. Jackson*, 746 F.3d at 967 (right to obtain bullets). "There comes a point . . . at which the regulation of action intimately and unavoidably connected with [a right] is a regulation of [the right] itself." *Luis v. United States*, 578 U.S. 5, 136 S.Ct. 1083, 1097, 194 L.Ed.2d 256 (Thomas, J., concurring in the judgment) (quoting *Hill v. Colorado*, 530 U.S. 703, 745, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000) (Scalia, J., dissenting)). For this reason, the right to keep and bear arms includes the right to purchase them.

*Jones v. Bonta*, 34 F.4th at 716.

Thus, the State's laws clearly infringe the right of Young Adults to keep and bear arms under the Second Amendment's plaint text.

2

## B. Generalized Licensing Requirements Do Not Justify the State's Ban

The State further asserts that its "licensing regime" of prohibiting legal adults from purchasing firearms is legitimate because "[l]icensing regimes based on objective and definite criterion remain valid under *Bruen*." Opp. at 9. The State is flat wrong here. In *Bruen*, the Supreme Court said that nothing in its "analysis should be interpreted to suggest the unconstitutionality of the 43 States' shall-issue licensing regimes, under which a general desire for self-defense is sufficient to obtain a permit." 142 S. Ct. at 2138 n.9 (2022) (cleaned up). But the Court went on to warn that "because any permitting scheme can be put toward abusive ends, we do not rule out constitutional challenges to shall-issue regimes where, for example, lengthy wait times in processing license applications or exorbitant fees deny ordinary citizens their right to public carry." *Id*. In other words, even objective licensing regimes can be unconstitutional. But in every case, however, the State's attempt to analogize from its ban on firearm purchases by legal adults to an objective licensing scheme fails. First, the State is not enforcing a licensing scheme with respect to firearm purchasers. Rather, it is completely prohibiting Young Adults from purchasing firearms through FFLs under the statutes and Defendants' regulations an enforcement practices. But even if California's Young Adult ban were construed as a licensing regime, as previously noted, the State failed to support its law because there was no tradition of licensing requirements in the constitutionally relevant periods.

Tilting from one windmill to another, the State also attempts to justify its ban by shifting from vague references to "licensing schemes" to analogizing its firearms ban to a broad "historical tradition of regulation" of the "commercial sale of products." Opp. at 10. While some states like Massachusetts may have enacted regulations that controlled the way products "from boards and shingles to beef and pork" were manufactured and sold, these regulations do not justify the prohibition on the purchase and acquisition of firearms by legal adults. Similarly, the State calls to

3

an 1868 Alabama law that required licenses to trade in goods, including "dealers in firearms." Opp. at 11. But that law post-dates the Civil War and does not confirm any prior history of regulation, so it is not constitutionally relevant and cannot serve as evidence to justify the State's ban. Moreover, the law is not analogous to the State's age-based ban here. The State further refers to broad regulations of commercial goods in the early 1800s. The Defendants' problem is that such broad-based regulations have nothing to do with arms, nor are Plaintiffs in this case challenging federal or state requirements that gun dealers obtain licenses to manufacture and sell firearms. Indeed, the State's reliance on such regulations ignores the Court's directive in *Bruen* to consider the "how and why the regulations burden a law-abiding citizen's right to armed self-defense." *Bruen*, 142 S.Ct. at 2133.

Pivoting from one baseless ground to another, the State relies on a small number of regulations requiring certain storage of gunpowder. Opp. at 11-12. Again, the State's reliance on such regulations ignores the "how and the why" in determining relevantly similar regulations under *Bruen*, 142 S.Ct. at 2133. The purpose of these early gunpowder regulations—requiring specific storage requirements (how)—was fire prevention where fire-response resources were limited, and structures were nearly entirely flammable (why). They were not restrictions on who could buy gunpowder, they were not age-based restrictions gunpowder purchasers, and they were not restrictions imposing training requirements before acquiring gunpowder. Thus, such regulations, few as they were, are not relevant. Even applying the most generalized review of these product regulations (which Plaintiffs contend would be inconsistent with *Bruen*), the State's ban cannot be justified.

Leaping forward in history, the State then offers "seventeen state constitutions adopted during the Reconstruction era that employed 'expansive language' providing that the right to keep and bear arm was subject to state regulation." Opp. at 12, citing Cornell Decl., at ¶¶ 11, 41, 109, and Ex. C (collecting constitutional provisions).

4

PLAINTIFFS' REPLY IN SUPPORT OF NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION;
OR ALTERNATIVELY, MOTION FOR SUMMARY JUDGMENT
(3:19-CV-01226-L-AHG)

Again, the Reconstruction Era is not constitutionally relevant, and the state constitutions in question were enacted during a time in which many states interpreted the Second Amendment to apply only to the Militia. Neither *Heller* nor *Bruen* had trouble disposing of this errant interpretation. *Bruen*, 142 S.Ct. at 3127-2138; *Heller*, 554 U.S. at 614. Even so, the first age-based restrictions cited by the State traces to 1859 (Opp. at 13)—far too late to be of any utility unless to confirm a prior tradition of regulation in a relevant period, which it does not. Notably absent from the State's brief are any regulations that prohibited the commercial sale of firearms based on age. Thus, again, the State completely fails to meet its burden here.

### C. The State's Ban on Semiautomatic Rifles Cannot Be Justified

The State's categorical prohibition on semiautomatic centerfire rifles is also unconstitutional. As with the age-based purchase ban, the State cannot show any relevant historical pedigree justifying its prohibition on the acquisition of arms in common use for lawful purposes by peaceable adults.

The State asserts that Penal Code section 27510 is part of long-established tradition of states regulating the possession and use of firearms by Young Adults. *See* Opp. at 15 (citing Decls. of Cornell, Roth, Spitzer, and Rivas). The State also relies on a wrongly decided Eleventh Circuit opinion holding that "the states have never been without power to regulate 18-to-20-year-olds' access to firearms." *Nat'l Rifle Ass'n v. Bondi*, 61 F.4th 1317, 1332 (11th Cir. 2023). In the simplest terms, the State attempts to justify it ban by claiming that "for most of U.S. history, including when the Second and Fourteenth Amendments were ratified, persons younger than 21 were minor or 'infants.'" Opp. at 15. Under the State's interpretation, because those under 21 had not reached the age of majority at the time of the Founding, this same age group today can be stripped of their Second Amendment rights, despite having reached the age of majority at 18 in California.

5

PLAINTIFFS' REPLY IN SUPPORT OF NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION;
OR ALTERNATIVELY, MOTION FOR SUMMARY JUDGMENT
(3:19-CV-01226-L-AHG)

The State is incorrect. As other courts have observed, "the age of majority — even at the Founding — lacks meaning without reference to a particular right." *Hirschfeld v. BATFE*, 5 F.4th 407, 435 (2021), see also *Worth v. Harrington*, 2023 U.S. Dist. LEXIS 56638, at *13-22. Although the full age of majority was often 21, "that only mattered for specific activities;" for others—such as taking an oath (12), selling land (21), receiving capital punishment (14), serving as an executor or executrix (17), being married (for a woman, 12), choosing a guardian (for a woman, 14)—the age of majority varied widely. *Id*. Essentially, 18-year-olds were considered minors for some purposes during the Founding era, and adults for others. And they were *specifically* understood to have the full right to keep and bear arms, as reflected in the Founding Era militia statutes. Moreover, the State offers no authority to support the proposition that the very people who adopted the Second Amendment would have used the phrase "the people" in the "normal and ordinary" sense as a limitation based on the general common law age of majority. *See Heller*, 554 U.S. at 576 ("In interpreting [the Second Amendment's] text, we are guided by the principle that 'the Constitution was written to be understood by the voters; its words and phrases were used in their normal and ordinary as distinguished from their technical meaning.'" (quoting *United States v. Sprague,* 282 U.S. 716, 731 (1931)) (cleaned up).

### D. The State's Three Mid-Century Laws Provide No Justification for its Age-Based Ban

Lacking any Founding Era laws to justify its ban, the State provides three state laws starting in 1856, before the Fourteenth Amendment's ratification—Alabama (1856), Tennessee (1858), and Kentucky (1859)—that prohibited the sale of pistols or handguns to minors, which, according to the State, "burdened 18-20 year-olds' rights to armed self-defense." Opp. at 16-17. Defendants, and the court in *Bondi*, are wrong.

6

PLAINTIFFS' REPLY IN SUPPORT OF NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION;
OR ALTERNATIVELY, MOTION FOR SUMMARY JUDGMENT
(3:19-CV-01226-L-AHG)

First, three state regulations limiting *legal minors* more than half a century *after* the Second Amendment's ratification do not establish a historical tradition of regulation under *Bruen,* 142 S.Ct. at 2137–2138. Second, the State's assertion that these three laws went *further* than California's ban boarders on the absurd. Under these three historical provisions, there was no prohibition on the sale, transfer, possession, or carrying of long guns and rifles. In fact, the Tennessee statutes explicitly exempted "a gun for hunting or weapon for defence in traveling." Opp. at 16. And none of these laws prohibited *legal adults* from purchasing any kind of firearm. They provide no justification for the State's ban. See *Jones*, 34 F.4th at 719–720.

### E. University Rules Are Not Analogous Regulations

The State further argues its reference to the three state statutes (Alabama, Tennessee, and Kentucky) limiting minors from acquiring handguns is consistent with "Founding and Reconstruction era laws prohibiting students from possessing firearms on university campuses." Opp. at 17 (citing Cornell Decl. ¶ 59-64). First, the State conflates university policies with general laws. This false understanding was debunked in *Worth*, 2023 U.S. Dist. LEXIS 56638, at *33-34. University rules of conduct for students attending school on their campuses are a far cry from statewide statutes and regulations enforcing a ban on the acquisition of common, protected arms. Indeed, the university rules applied to students. They were not regulations of members of the general public but rather exercises of *in loco parentis* authority that schools were understood to have over their students. *See Morse v. Frederick*, 551 U.S. 393, 413 n.3 (2007). They have no relevance here. Third, the timing and scope of these rules—students at three colleges in an era when higher education was attended by few—is insufficient to suggest an original public understanding that restrictions on the purchase and possession of protected arms by Young Adults is

7

consistent with the Second Amendment. *Worth*, 2023 U.S. Dist. LEXIS 56638, at *33-34.

### F. Late 19th Century Regulations That Are Inconsistent with the Second Amendment Text Cannot Overcome or Alter that Text

Nearly all of the state statutes cited by the State to justify its prohibition were enacted after the Civil War, during the Reconstruction era. Specifically, according to the State, "at least nineteen states and the District of Columbia banned the sale and even the giving or loaning of handguns and other deadly weapons to 18-to-20-year-olds by the close of the nineteenth century." Opp. at 20. These 19 regulations were enacted between 1875 and 1899. The State leans heavily on the misguided panel decision in *Bondi*, which relied on Reconstruction Era restrictions on selling firearms to minors to uphold an age-based restriction on firearms sales in Florida. 61 F.4th 1317. However, only a few weeks after publishing its decision, the *Bondi* decision had already come under scrutiny in a more recent decision enjoining age restrictions on the public carry of firearms by Young Adults. *See Worth*, 2023 U.S. Dist. LEXIS 56638, at *25-30. Specifically, in enjoining the State of Minnesota's regulatory scheme prohibiting Young Adults from obtaining permits to carry firearms in public, the Court held:

> [I]n this Court's view, *Bondi* declined to follow rather clear signs that the Supreme Court favors 1791 as the date for determining the historical snapshot of 'the people' whose understanding of the Second Amendment matters. See *Bruen*, 142 S. Ct. at 2137 ("And we have generally assumed that the scope of the protection applicable to the Federal Government and States is pegged to the public understanding of the right when the Bill of Rights was adopted in 1791."). *Bondi* does not mention the *Bruen* Court's warning to "guard against giving post enactment history more weight than it can rightly bear." *Bruen*, 142 S. Ct. at 2136.

*See Worth*, 2023 U.S. Dist. LEXIS 56638, at *29.

Finally, **Exhibit A** to the Dillon Decl., filed concurrently, is Plaintiffs' Survey Responses, which provide a point-by-point response to the State's so-called

8

*PLAINTIFFS' REPLY IN SUPPORT OF NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION;*
*OR ALTERNATIVELY, MOTION FOR SUMMARY JUDGMENT*
*(3:19-CV-01226-L-AHG)*

analogous regulations provided in the State's Age Survey. As shown, the State fails to provide sufficient constitutionally relevant history to justify its age-based ban.

### G. Militia Requirements Support the Right to Keep and Bear Arms

The State and its experts provide much discussion of why, in their view, militia laws cited by Plaintiffs are not evidence that Young Adults had Second Amendment rights. Opp. at 21. Specifically, quoting the court in *Bondi*, "[t]he fact that federal law obliged 18-to-20-year-olds to join the militia does not mean that 18-to-20-year-olds had an absolute right to buy arms." *Id*. citing *Bondi*, 2023 WL 2484818, at *12.

But the State's assertion, and the court in *Bondi*, rely on a flawed understanding of Plaintiffs' reliance on the early militia statutes. Plaintiffs (and the *Jones* panel opinion) agree that participation in the militia did not *establish or create* the right to keep and bear arms for anyone. See *Jones*, 34 F.4th at 717-719; *see also Worth*, 2023 U.S. Dist. LEXIS 56638, at *16-20. As explained in *Heller*, the Second Amendment "codified a preexisting right." 554 U.S. at 592. *Heller* further explained that the "well-regulated militia" mentioned in the Second Amendment's text was a reference to an entity "already in existence." *Id*., at 596. Plaintiffs contend that the militia laws, and their significance during this period, provide strong support that the *preexisting* right to keep and bear arms *included in its scope those who were in the already existing militia*.

Given that "the federally organized militia may consist of a subset of" the "militia" referenced in the Second Amendment, but nevertheless must draw from that larger body, the unanimous inclusion of Young Adults in organized militias at or shortly after the enactment of the Second Amendment establishes that they *must have been within the militia referenced by the Second Amendment*. See *Hirschfeld*, 5 F.4th 407, 429–30 ("Because the individual right is broader than the Second Amendment's civic purpose, those required to serve in the militia and bring arms would most assuredly have been among 'the people' who possessed the right."). As a result, "any

9

argument that 18-to-20-year-olds were not considered, at the time of the Founding, to have full rights regarding firearms" is "inconceivable." *Nat'l Rifle Ass'n of Am., Inc. v. BATFE*, 714 F.3d 334, 342 (5th Cir. 2013) (Jones, J., dissent) ("*NRA II*").

### III. THE IRREPARABLE HARM FACTOR HAS BEEN ESTABLISHED

The *Jones* Panel opinion already rejected the State's three arguments for why Plaintiffs would *not* be irreparably injured by the deprivation of their constitutional rights. *See Jones*, 34 F.4th at 732-733. Moreover, Plaintiffs have shown that active members of the organizational Plaintiffs are currently prohibited from acquiring firearms due to the State's age-based ban. *See* Declarations of Jose Chavez and Jason Wieringa. Individual Plaintiffs Andrew Morris and Jose Chavez, as well as similar Young Adult members of the Organizational Plaintiffs, are presently denied their fundamental right to keep and bear arms, and none of the State's illusory exceptions provide appropriate relief. **Exhibit B** and **C**, attached to the Dillon Decl. filed concurrently, are true and correct copies of the Declarations of Andrew Morris and Jose Chavez. The harm to Plaintiffs has been demonstrated and is irreparable. Conversely, the State sustains no harm from an injunction preventing enforcement of an unconstitutional regulatory scheme. *See Jones*, 34 F.4th at 733 (citing *Doe v. Kelly*, 878 F.3d 710, 718 (9th Cir. 2017)).

### IV. THE BALANCE OF EQUITIES AND PUBLIC INTEREST FAVOR PLAINTIFFS

"The Second Amendment 'is the very product of an interest balancing by the people,' and it 'surely elevates above all other interests the right of law-abiding, responsible citizens to use arms' for self-defense." *Bruen*, 142 S.Ct. at 2131 (citing *Heller*, 554 U.S. at 635). See also *Worth,* 2023 U.S. Dist. LEXIS 56638, at *43-44.

### V. CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that this Court issue an order declaring that California's ban on the purchase of common arms by Young Adults is unconstitutional and further enjoining its enforcement.

10

PLAINTIFFS' REPLY IN SUPPORT OF NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION;
OR ALTERNATIVELY, MOTION FOR SUMMARY JUDGMENT
(3:19-CV-01226-L-AHG)

April 17, 2023

Respectfully submitted,

DILLON LAW GROUP APC

Attorneys for Plaintiffs

By: _____

John W. Dillon