John W. Dillon (Bar No. 296788)
Dillon Law Group APC
2647 Gateway Road
Suite 105, No. 255
Carlsbad, California 92009
Telephone: (760) 642-7150
Facsimile: (760) 642-7151
E-mail:  jdillon@dillonlawgp.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

JOSE CHAVEZ, *et al.*,

         Plaintiffs,

v.

ROB BONTA, in his official capacity as Attorney General of the State of California, *et al.*,[1]

Defendants.

) Case No.: 3:19-cv-01226-L-AHG
)
)
) Hon. M. James Lorenz and Magistrate Judge Allison H. Goddard
)
)
)
) **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**
)
)
) Action Filed: July 1, 2019
) Date: May 13, 2024
) Time: 10:30 a.m.
) Place: Courtroom 5B (Fifth Floor)
)
) Third Amended Complaint Filed March 22, 2023
)

No oral argument will be heard pursuant to local rules unless ordered by the Court

---

[1] Rob Bonta is automatically substituted for his predecessor, Xavier Becerra, as California Attorney General, and Allison Mendoza is automatically substituted for her predecessors, former Directors Louis Lopez and Martin Horan, and former Acting Directors Brent E. Orick and Blake Graham. Fed.R. Civ.P. 25(d).

# TOPICAL INDEX

**Page(s)**

I.    INTRODUCTION ........................................................................... 1

II.   RELEVANT PROCEDURAL HISTORY ......................................... 2

III.  LEGAL STANDARDS ................................................................... 3

IV.   CALIFORNIA'S FIREARMS REGULATIONS................................ 4

V.    PERTINENT FACTUAL BACKGROUND ...................................... 7

VI.   THE SECOND AMENDMENT FRAMEWORK IN *BRUEN* SUPPORTS
      THE GRANT OF THIS MOTION .................................................. 8

      A.   Application to California's Categorical Prohibitions.................. 9

           1.   18-to-20-year old Adults Are Protected by the Plain
                Text of the Second Amendment. ...................................... 9

           2.   The Firearms at Issue are "Arms" Under the Second
                Amendment's Plain Text .................................................. 12

      B.   Defendants Cannot Meet Their Burden to Show Section 27510 is
           Consistent with our Nation's Historical Tradition of Firearm
           Regulation ........................................................................... 13

           1.   "The Stated Objective" Behind Section 27510 and Defense
                Experts Psychology Opinions are Irrelevant. ................... 15

           2.   Age of Majority Argument is Unpersuasive..................... 16

           3.   Arguments Focusing on Laws and Regulations Enacting So-
                Called Age-Based Bans or Restrictions Are Too Few and Far
                Between. .......................................................................... 17

           4.   College Policies Should be Rejected as Inapposite ......... 20

           5.   Plaintiffs' Milita Contentions are Controlling ................ 22

      C.   There is No Historical Tradition of Imposing Training
           Requirements as a Prerequisite For Firearms Sales ................ 23

VII.  CONCLUSION............................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baird v. Bonta*, 81 F.4th 1036 (9th Cir. 2023) ........................................................... 1, 9

*Bauer v. Becerra*
    858 F.3d 1216 (9th Cir. 2017) ..................................................................................4

*Brown v. Bureau of Alcohol, Tobacco, Firearms and Explosives*,
    2023 WL 8361745 (N.D. West Virginia Dec. 1, 2023).............................. 12, 18

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986).................................................................................................4

*District of Columbia v. Heller*,
    554 U.S. 570 (2008).................................................................................... *Passim*

*Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011) .................................................5

*Firearms Policy Coalition, Inc. v. McCraw*
    623 F.Supp.3d 740, (N.D. Tex. 2022) ................................................................. 12

*Fraser v. Bureau of Alcohol, Tobacco, Firearms and Explosives*,
    672 F. Supp. 3d 118, 2023 WL 3355339 (E.D. Virginia 2023) ...................... 18

*Furman v. Georgia*, 408 U.S. 238 (1972) ................................................................... 14

*Gamble v. United States*,
    139 S.Ct. 1976 (2019)........................................................................................... 15

*District of Columbia v. Heller*,
    554 U.S. 570 (2008).................................................................................... *Passim*

*Heller v. District of Columbia*,
    670 F.3d 1244 (D.C. Cir. 2011)…………………………………………………18

*Jackson v. City and County of San Francisco*,
    746 F.3d. 967 (9th Cir. 2014) .................................................................................4

*Jones v. Becerra*,
    498 F. Supp. 3d 1325 (2020) ..................................................................................2

*Jones v. Bonta*,
    34 F.4th 704 (9th Cir. 2022) .................................................................... *Passim*

*Konigsberg v. State Bar of California*,

ii

366 U.S. 36 (1961)...................................................................................9

*Marsh v. Chambers*, 463 U.S. 783 (1983) ...................................................14

**TABLE OF AUTHORITIES**

**Page(s)**

*McDonald v. City of Chicago*,
    561 U.S. 742 (2010)...........................................................................8

*New Jersey v. T.L.O.*
    469 U.S. 325 (1985)..........................................................................11

*New York State Rifle & Pistol Association Inc. v. Bruen*,
    142 S. Ct. 2111 (2022)............................................................... *Passim*

*Russell Fouts v. Bonta*, 2024 WL 751001 (Feb. 23, 2024)......................9, 16

*Shannon v. United States*,
    512 U.S. 573 (1994)............................................................................9

*State Oil Co. v. Khan*,
    522 U.S. 3 (1997)............................................................................14

*Teixeira v. County of Alameda*, 873 F.3d 670 (9th Cir. 2017)....................4

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.*,
    393 U.S. 503 (1969)..........................................................................11

*T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*,
    809 F.2d 626 (9th Cir. 1987) .............................................................4

*United States v. Jimenez-Shilon*,
    34 F.4th 1042 (11th Cir. 2022) ........................................................10

*United States v. Verdugo-Urquidez*,
    494 U.S. 259 (1990)..........................................................................10

*Virginia v. Moore*,
    553 U.S. 164 (2008)..........................................................................14

*W. Va. State Bd. of Educ. v. Barnette*,
    319 U.S. 624 (1943)..........................................................................11

iii

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL STATUTES**

**Penal Code**

§ 16720 ......................................................................................................... 6
§ 27505 ......................................................................................................... 4
§ 27510 .................................................................................................. *Passim*
§ 27510(b)(1) ............................................................................................... 7
§ 27515 ......................................................................................................... 6
§ 27590(b)-(d) ............................................................................................. 4
§ 27875 ......................................................................................................... 6
§ 27880 ......................................................................................................... 6
§ 27881 ......................................................................................................... 6
§ 27885 ......................................................................................................... 6
§ 27950 ......................................................................................................... 6

**Federal Rules of Civil Procedure**

§ 56 ............................................................................................................... 3
§ 56(a) ......................................................................................................... 4

Bill of Rights .................................................................................... 14, 15

**U.S. Constitution**

Amend. I ..................................................................................................... 11
Amend. II ............................................................................................. *Passim*
Amend. IV ................................................................................... 10, 11, 17
Amend. XIV ............................................................... 8, 11, 13, 14, 16
Art. I § 2 ................................................................................................... 10
Art. I § 3 ................................................................................................... 10
Art. II § 1 ................................................................................................. 10

**Other Authorities**

Noah Webster, *American Dictionary of the English Language*
   600 (1st ed. 1828) ............................................................................. 10

2 Samuel Johnson, *A Dictionary of the English Language*
   305 (6th ed. 1785) ............................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

Thomas M. Cooley, *The General Principles of Constitutional Law in the United States of America*
271 (1880)...............................................................................................11, 12

William Blackstone, *Commentaries*
463--64, 465 (1765) ...............................................................................17

HENDRIK BOORAEM, YOUNG HICKORY: THE MAKING OF ANDREW JACKSON
195, 199 (2001)..................................................................................18

Saul Cornell & Nathan DeDino, *A Well Regulated Right: The Early America Origins of Gun Control*
73 Fordham L.Rev. 487, 509–11 (2004) .........................................................22

v

# I.     INTRODUCTION

This Second Amendment case is brought to protect the "right of *the people*" to keep and bear arms for self-defense and all other lawful purposes. In spite of this preexisting, individual constitutional right that "shall not be infringed," the State of California prohibits law-abiding, legal adults ages 18-to-20-years-old from purchasing, acquiring, or gaining control of—and thus possessing—firearms in common use throughout the United States by exhaustively regulating their sale and transfer to all law-abiding 18-to-20-year-olds. See Appendix in Support of Plaintiffs' Motion for Summary Judgment, Pl.0009. Simply stated, California adults 21 and older can purchase and possess firearms under a highly regulated, multi-faceted statutory scheme; but law-abiding 18-to-20-year-olds are prohibited. This almost total ban violates the Second Amendment.

Under *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), Plaintiffs' claim centers on two fundamental points. First, the "conduct" the Plaintiffs wish to engage in—the purchase and possession of firearms for self-defense and all other lawful purposes—is covered by the Second Amendment's plain text, so the Constitution "presumptively protects" that conduct. *Bruen*, 142 S. Ct. at 2126. And second, Defendants bear the heavy burden to justify their age-based prohibition by "demonstrate[ing] that the regulation is consistent with this Nation's historical tradition *of firearm regulation*." *Id*., (emphasis added); *Baird v. Bonta*, 81 F.4th 1036, 1046-1047 (9th Cir. 2023). This showing cannot be made, as there is no historical tradition of prohibiting sales or transfers of firearms to 18-to-20-year-old adults based solely on their age, while allowing such sales/transfers to other legal adults 21 and older. If, as here, Defendants cannot meet their burden, the challenged statutory scheme is unconstitutional — full stop. *Bruen* also abrogated all lower court cases applying any "means-end test such as strict or intermediate scrutiny." *Id*. at 2129. Accordingly, neither Defendants, nor the Court can posit that Section 27510's age-

based prohibition promotes an important public safety interest because no "interest-balancing inquiry" can be invoked under *Bruen*. *Id*.

It is undisputed that Section 27510 prohibits *legal adults* from *purchasing* firearms both through any commercial sale or private sale between two non-licensed California residents in the same manner as any other law-abiding legal adult over 21 in California would be permitted to do. There is also not a single restriction before, during, or after the Founding era, and continuing through into the 20th Century, that prohibited the ability of an *adult* from purchasing a firearm based on their age. See Pl.0032-39, Pl.0049-84, Pl.0086-100. Because Defendants cannot justify their statutory scheme under the *Bruen* legal framework, the age-based prohibition violates the Second Amendment and must be declared unconstitutional and permanently enjoined.

## II.     RELEVANT PROCEDURAL HISTORY

California restricts the sale and possession of almost any kind of firearm to 18-to-20-year-old adults. This Court declined to issue Plaintiffs' first motion for preliminary injunction. *See* ECF 21 (Motion), ECF 66 (Order); see also *Jones v. Becerra*, 498 F. Supp. 3d 1317 (S.D. Cal. 2020). Plaintiffs timely appealed.  ECF 68. On May 11, 2022, the Ninth Circuit affirmed in part, and reversed in part, this Court's denial of Plaintiffs' initial preliminary injunction. *Jones v. Bonta*, 34 F.4th 704, 733, (9th Cir. 2022), *vacated on reh'g*.

On September 7, 2022, the Ninth Circuit granted the request for panel rehearing, vacated the Panel's May 11, 2022 Opinion, vacated this Court's order denying preliminary injunction, and remanded the case for further proceedings consistent with the Supreme Court's decision in *Bruen*. ECF 91, *Jones v. Bonta*, 47 F.4th 1124 (9th Cir. 2022).

Based on the Ninth Circuit's ruling, Plaintiffs' preliminary injunction motion (ECF 21) remained pending. On September 14, 2022, this Court ordered the parties to

file supplemental briefing discussing the impact of *Bruen* on Plaintiffs' motion. ECF 92. Plaintiffs and Defendants filed supplemental briefing. See ECF 95 (Plaintiffs), ECF 96 (State), ECF 99 (Plaintiffs' opposition). Thereafter, this Court denied Plaintiffs' motion for preliminary injunction as moot (ECF 100); and allowed Plaintiffs to refile its motion.

In January 2023, Plaintiffs filed their second motion for preliminary injunction; or alternatively, for summary judgment. ECF 103. In February 2023, Plaintiffs also filed a motion for leave to amend the complaint to add age-appropriate parties (Plaintiffs Jose Chavez and Andrew Morris), and to dismiss the three Plaintiffs who turned 21 during the pendency of this action (Matthew Jones, *et al*.) (ECF 108); and the Court granted the motion (ECF 113). On March 22, 2023, Plaintiffs filed their operative third amended complaint. ECF 114. In March through May 2023, the parties filed opposition, a reply, and supplemental authorities in response to Plaintiffs' second motion. See ECF 111, 112, 118, 119, 120. On December 8, 2023, this Court denied Plaintiffs' second motion (ECF 127), but allowed for the refiling of a motion for summary judgment. *Jones v. Bonta*, 2023 WL 8530834 (S.D. Cal. Dec. 8, 2023) *3, n. 4. Plaintiffs have filed this present motion.

## III.   LEGAL STANDARDS

Plaintiffs are entitled to summary judgment under Federal Rule of Civil Procedure 56. Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Where the party moving for summary judgment does not bear the burden of proof at trial, "the burden on the moving

3

*PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT*
*(3:19-CV-01226-L-AHG)*

party may be discharged by 'showing' … that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325.

## IV.   CALIFORNIA'S FIREARMS REGULATIONS

California regulates the acquisition, possession, and ownership of firearms with a pervasive and confusing multifaceted scheme with severe consequences. *See* Penal Code § 27590(b)-(d) (violations of Penal Code § 27510, which is at issue in this case, impose lengthy punishments of imprisonment, fines, or both). California also regulates 18-to-20-year-old adults' commerce in firearms; and specifically, after first banning only the sale of handguns (Penal Code § 27505), California now prohibits the sale to those adults of almost every kind of firearm. *See* Penal Code § 27510 ("Section 27510").

The Ninth Circuit also has already held that, "Commerce in firearms is a necessary prerequisite to keeping and possessing arms for self-defense." *Teixeira v. County of Alameda*, 873 F.3d 670, 682 (9th Cir. 2017). The Ninth Circuit has also assumed without deciding definitively that the "right to possess a firearm includes the right to purchase one." *Bauer v. Becerra*, 858 F.3d 1216, 1222 (9th Cir. 2017). For example, in *Jackson v. City & County of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014), the Ninth Circuit stated while the Second Amendment protects arms, weapons, and firearms, it does not explicitly refer to ammunition, but "without bullets, the right to bear arms would be meaningless," and that "the right to possess firearms for protection implies a corresponding right" to obtain the bullets necessary to use firearms. *Id*. (citing *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011)).

Accordingly, the right to keep and bear arms includes the right to purchase them, activating the people's Second Amendment rights; and 18-to-20-year-old adults are among the "people" under the Second Amendment. U.S. Const. amend. II. And importantly, *Bruen*'s initial inquiry focuses on the "plain text" of the Second Amendment to determine if Plaintiffs' conduct is presumptively protected; and in this

4

*PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT*
*(3:19-CV-01226-L-AHG)*

case, "[t]he government **agrees** … that '18-20-year-olds are part of the 'people' protected by the Second Amendment and that the acquisition restrictions imposed through [federally licensed firearms holders] implicate the right to 'keep and bear arms,'" satisfying the first inquiry of the *Bruen* standard. *See Jones v. Bonta*, 2023 WL 8530834 at *5.

Focusing on the challenged law, Section 27510, imposes an outright ban on the ability of 18-to-20-year-old adults to acquire centerfire semiautomatic rifles, and the only exceptions require those adults to become government employees by joining law enforcement or the military. Pl.9. These are no exceptions at all. Instead, the exceptions represent a blanket ban for all of these adults except police officers and military service members. *Id.*[2]

As to the statutory prohibition on 18-to-20-year-old adults to purchase or possess long guns, the challenged scheme is a near-total-ban on the ability of these adults to acquire long guns unless they purchase and obtain a valid, unexpired state hunting license, which itself is a condition found nowhere in the text of the Second Amendment, nor in any closely analogous historical law regulating arms. *See* Pl.9, Pl.32-39, Pl.49-84, Pl.86-100. The law also cannot be justified by oblique references as a "training," "safety," or "supervisory" condition. Importantly, Defendants have not shown any law or regulation "consistent with this Nation's historical tradition of firearms regulation" requiring legal adults to secure "training" or undergo "safety" programs before acquiring, purchasing, or using a firearm. Pl.32-39; Pl.49-84; Pl.86-100. Defendants' heavy burden in this case cannot be met.

Moreover, while there are exceptions that allow for 18-to-20-year-old adults to

---

[2] Many adults (18-20) don't qualify for the "active peace officer" exception because numerous cities and counties require police officers to be 21. *See, e.g.*, *General Information and Qualifications*, San Francisco Police Dept., https://www.sanfranciscopolice.org/your-sfpd/careers/sworn-job-openings/general-information-and-qualifications (last visited March 10, 2024).

acquire the prohibited firearms through inter-familial transfers, loans, and supervised temporary possession at licensed ranges, Defendants have not presented any evidence that a single individual in California has been successful in obtaining a firearm under these obscure methods. In addition, these adults remain severely restricted in acquiring firearms through family transfers as gifts from parents and grandparents are allowed but strawman purchases are not. See Penal Code §§ 27875, 16720 (family transfers) and 27515 (strawman purchases). And allowing family transfers but not purchase makes these adults' Second Amendment rights *conditional* on the rights of others; and such limited transfers are unavailable for 18-to-20-year-old adults whose parents or grandparents have passed away, do not have a gun to transfer, or are unable or unwilling to participate in a transfer. Further, as to loans and temporary possession, these so-called "exceptions" do not convey *ownership* of any firearm, the exceptions are temporary, they are severely limited by required loan provisions and the loaner, and they do not allow for adults to lawfully *purchase, own*, and *possess* any firearm. *See* Penal Code §§ 27880, 27885, 27881, and 27950.

Additionally, even if an 18-to-20-year-old purchases and obtains a valid, unexpired hunting license, *they are still prohibited from purchasing a centerfire semiautomatic rifle*.[3] Thus, California's restrictions, including Section 27510's age-based ban, apply to virtually all firearm purchases, acquisitions, or transfers of ownership within the State. In its entirety, Section 27510 is an almost total ban on handguns and centerfire rifles; and it is a near-total-ban on long guns (and other rifles) unless the person has a valid, unexpired state hunting license requiring some to feign interest in hunting. *Id*. at § 27510(b)(1).

---

[3] All rifles (both centerfire and rimfire) fall under the broader category of "long guns."

## V.     PERTINENT FACTUAL BACKGROUND

At the time Plaintiffs filed their first preliminary injunction motion, the individually named Plaintiffs were 18-to-20-year-old adults not otherwise prohibited from acquiring and possessing firearms. ECF 21-2, 21-3, 21-4, and 21-7. Each Plaintiff attempted to purchase a firearm in California, and each was denied their Second Amendment rights based solely on their age. *Id*. As adults, each Plaintiff can vote, enter into contracts, get married, enter the military voluntarily, be selected for and inducted for service into the military—all without restriction on the basis of their age. The same is true for current plaintiffs Jose Chavez and Andrew Morris. ECF 103-2, 103-3.

Plaintiffs Poway Weapons and Gear (PWG) and North County Shooting Center (NCSC) were also forced to stop all sales and firearm transfers to 18-to-20-year-old adults. ECF 21-5, 21-6. Plaintiffs PWG and NCSC are licensed shooting ranges. Each entity has been forced to also deny these adults the ability to rent, use, and train for proficiency and safety with firearms at their ranges. ECF 21-5, 21-6. Even if an 18-to-20-year-old is accompanied by an individual over 21, PWG, NCSC, and other gun ranges cannot rent or provide firearms to them for fear of violating Penal Code section 27510. *Id*. Further, PWG and NCSC have been forced to prevent 18-to-20-year-olds from attending and taking part in firearms and hunter education courses, because each course calls for attendees to handle, use, and control firearms. ECF 21-5, 21-6.

Plaintiffs Firearms Policy Coalition (FPC), FPC Action Foundation (FPCAF), California Gun Rights Foundation (CGF), and Second Amendment Foundation (SAF) represent their members, including Jose Chavez, Andrew Morris, Oleksandra Reva, and Destiny Garcia, who have been denied their Second Amendment rights and they would otherwise purchase and acquire firearms but for Section 27510. See ECF 21-8, 21-10, 103-2, 103-3, Pl.11-19. Section 27510 unconstitutionally prohibits these adults from purchasing firearms based solely on their age.

7

*PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT*
*(3:19-CV-01226-L-AHG)*

## VI.   THE SECOND AMENDMENT FRAMEWORK IN *BRUEN* SUPPORTS THE GRANT OF THIS MOTION

"A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II. The Second (and the Fourteenth) Amendments "protect an individual's right to carry a handgun for self-defense outside the home." *Bruen*, 142 S. Ct. at 2122; *Heller*, 554 U.S. 570; *McDonald v. City of Chicago*, 561 U.S. 742, 780 (2010). This right is applicable to the States through the Fourteenth Amendment. *McDonald*, at 750.

In *Bruen*, the Supreme Court reiterated the legal framework for applying the Second Amendment. The Court rejected the two-step means-end scrutiny adopted by the Ninth Circuit and other courts of appeal, calling it "inconsistent with *Heller*'s historical approach." *Bruen*, 142 S. Ct. at 2129. Rather than a two-step means-end scrutiny, courts must "assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." *Id.* at 2132. Stated another way, courts must first look to the Second Amendment's plain text, as informed by history. When the plain text of the Second Amendment covers an individual's conduct, the Constitution presumptively protects that conduct. *Id.* at 2129–30. The burden is then placed on the State to "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of *firearm regulation*. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id.* At 2116, 2130 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50, n.10 (1961)) (emphasis added). If the government cannot meet its burden, the law is unconstitutional — full stop. No interest-balancing or scrutiny analysis can be conducted. *Id.* at 2127, 2129–30.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### A.    Application to California's Categorical Prohibitions

With this framework clarified, the question is whether California can prohibit the acquisition of firearms, specifically, centerfire rifles and long guns, from an entire class of people—law-abiding 18-to-20-year-old adults—based solely on their age. Under *Bruen*, the challenged law violates Plaintiffs' Second Amendment rights.

### 1.    18-to-20-year-old Adults Are Protected by the Plain Text of the Second Amendment.

This Court must start with the Second Amendment text. *See, e.g.*, *Shannon v. United States*, 512 U.S. 573, 580 (1994) (Thomas, J.) ("[W]e turn first, as always, to the text[.]"). If the plain text covers the individual's conduct, the Constitution presumptively protects that conduct. *Bruen*, 142 S. Ct. at 2127; *Baird*, 81 F.4th at 1043; and *Russell Fouts v. Bonta*, 2024 WL 751001 at *2–5 (Feb. 23, 2024).

Here, Plaintiffs are law-abiding adults, licensed dealers/ranges desiring to sell or transfer firearms to 18-to-20-year-old adults, and Second Amendment rights organizations with members in the affected age range who want to purchase and acquire ownership of firearms for self-defense and other lawful purposes. However, the State has enacted the challenged law to prohibit firearm sales or transfers to 18-to-20-year-old adults. The relevant question is whether these adults are encompassed under the plain text of the Second Amendment; the answer is yes—unquestionably, they are part of "the people" referenced in the Second Amendment, and here, ***Defendants agree***. *Jones v. Bonta*, 2023 WL 8530834 at *5.

Moreover, this Court has already held "18-20-year-olds are part of the 'people' protected by the Second Amendment and that the acquisition restrictions imposed through FFLs implicate the right to 'keep and bear arms.'" *Id*. 2023 WL 8530834, at *5. Specifically, the plain text of the Second Amendment indisputably encompasses the "people," including adults (18-20), and thus, they are protected under the Second Amendment. *Id*.

9

*PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT
(3:19-CV-01226-L-AHG)*

The plain text of the Second Amendment also does not include any age restriction. This absence is notable—when the Framers meant to impose age restrictions, they did so expressly. *See, e.g.*, U.S. CONST. art. I, § 2 (age 25 for the House of Representatives); *id.* art. I, § 3 (age 30 for the Senate); *id.* art. II, § 1 (age 35 for the President). Instead, the Second Amendment refers only to "the people," which various Founding-era dictionaries define as a reference to those who make up the "national community." *See United States v. Jimenez-Shilon*, 34 F.4th 1042, 1044–45 (11th Cir. 2022) (quoting Noah Webster, *American Dictionary of the English Language* 600 (1st ed. 1828) ("The body of persons who compose a community, town, city, or nation.")); *see also* 2 Samuel Johnson, *A Dictionary of the English Language* 305 (6th ed. 1785) ("A nation; those who compose a community.")).

Consistent with the above, *Heller* said "the people" is a term of art that refers to "all members of the political community, not an unspecified subset." 554 U.S. at 580. *Heller*'s interpretation found support in an earlier decision, *United States v. Verdugo-Urquidez*, which considered the Fourth Amendment's reference to "the people." 494 U.S. 259 (1990). In that case, the Supreme Court interpreted the phrase to encompass those "persons who are part of a national community" or those who have "sufficient connection with this country to be considered part of that community." *Id.* at 265. Indeed, the Supreme Court in *Heller* made clear that the "Second Amendment right is exercised individually and belongs to *all* Americans." *Id.* 554 U.S. at 581 (emphasis added).

Following suit, the Supreme Court in *Bruen* stated that "ordinary, law-abiding, adult citizens [] are part of 'the people' whom the Second Amendment protects." *Id.*, 142 S. Ct. at 2134. "The Second Amendment…'surely elevates above all other interests the right of law-abiding, responsible citizens to use arms' for self-defense." *Id.* at 2131 (quoting *Heller*, 554 U.S. at 635). As such, binding Supreme Court

10

authority has already answered whether the text of the Second Amendment encompasses young adults — it does.

Additionally, the *two other* enumerated rights of "the people"—the First and Fourth Amendment rights—apply to all Americans regardless of age. *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 511 (1969); *New Jersey v. T.L.O.*, 469 U.S. 325, 334 (1985). Specifically, the First Amendment has been interpreted to apply to all persons, even those under the age of 18. *See, e.g.*, *Tinker*, 393 U.S. at 506 (free speech); *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943) (free exercise). While the First Amendment is limited in some contexts (such as the forum or content), age is not a basis for denying the enumerated right. *Tinker*, 393 U.S. at 506 And the Fourth Amendment likewise protects individuals regardless of age. *See New Jersey v. T.L.O.*, 469 U.S. at 334. Under the Fourth Amendment, the expectation of privacy is not affected based on the age of the person being searched. Instead, the *context* of a search is the distinguishing factor. *Id.* Accordingly, both the First and Fourth Amendment support the interpretation "of the people" without regard to age. This Court cannot engraft an age restriction onto the Second Amendment where none exists.

Further, if an individual was a member of the "militia," the Second Amendment's protections explicitly extended to those individuals. Stated differently, although the Second Amendment is not limited to only those in the militia, *at the very least,* it must protect the pool of individuals from whom the militia would be drawn. This was the understanding of the scope of the Second Amendment right during the Founding era and this understanding persisted well beyond that time. In fact, during the 18th Century following the ratification of the Fourteenth Amendment, Thomas Cooley wrote in his 1880 treatise, when interpreting the Second Amendment's text:

> "It might be supposed from the phraseology of this provision that the right to keep and bear arms was only guaranteed to the militia; but this would be an interpretation not warranted by the intent. . . . The meaning

of the provision undoubtedly is, that the people, from whom the militia must be taken, shall have the right to keep and bear arms; *and they need no permission or regulation of law for the purpose.*"

*See* Thomas M. Cooley, *The General Principles of Constitutional Law in the United States of America* at 271 (1880) (emphasis added).

*Heller* also found that, "*[a]ll* other post-Civil War 19th Century *sources we have found concurred with Cooley.*" *Id.* 554 U.S. at 618 (emphasis added). Accordingly, the text of the Second Amendment cannot be interpreted to exclude law-abiding 18-to-20-year-old adults. It would be illogical to enumerate a constitutional right to keep and bear arms and to maintain an armed militia if that right did not protect those individuals from whom a militia would be drawn. *See Firearms Policy Coalition, Inc. v. McCraw*, 623 F.Supp.3d 740 (N.D. Tex. 2022) (examining the text and history of the Second Amendment post-*Bruen* and holding unconstitutional a prohibition on 18-to-21-year-olds from carrying a handgun outside the home for self-defense); *see also Brown v. Bureau of Alcohol, Tobacco, Firearms and Explosives*, 2023 WL 8361745 (N.D. West Virginia Dec. 1, 2023), appeal pending (invalidating federal handgun and ammunition ban on Second Amendment grounds as applied to 18-to-20-year-old adults).

Thus, the burden now shifts to Defendants to justify their prohibition. Because California law eliminates that right through its broad prohibitions on the ability of 18-to-20-year-old adults to purchase and possess semiautomatic centerfire rifles and long guns, the California statute is unconstitutional—full stop.

### 2.    The Firearms at Issue are "Arms" Under the Second Amendment's Plain Text.

There is also no dispute that the firearms prohibited by California law are considered "arms" under the plain text of the Second Amendment and are *not* both "dangerous and unusual," since they are commonly used in great numbers by law abiding citizens for lawful purposes such as hunting, target practice, and self-defense. Indeed, this Court has already held that "[b]oth long-guns and semi-automatic

12

centerfire rifles are commonly used by law abiding citizens for lawful purposes …" and thus they are not both "dangerous and unusual weapons" under *Heller,* 554 U.S. at 627. *See Jones v. Bonta*, 498 F. Supp. 3d 1317, 1324–25 (S.D. Cal. 2020), vacated and remanded on other grounds by *Jones v. Bonta*, 9th Cir., Sept. 7, 2022.

### B. Defendants Cannot Meet Their Burden to Show Section 27510 is Consistent with our Nation's Historical Tradition of Firearm Regulation

Plaintiffs have met their burden under the first prong of *Bruen and Bruen* is clear: To prevail under a "historical tradition" analysis, the State has the heavy burden to justify its regulation by offering appropriate historical analogues from the relevant time period, *i.e.*, the Founding era (1791). See Pl.1247-57.

In *Bruen*, the Court considered historical evidence supplied by respondents in their attempt to justify their prohibitions on the carrying of firearms in public. Although the Court looked at evidence from a wide range of historical periods: "(1) medieval to early modern England; (2) the American Colonies and the early Republic; (3) antebellum America; (4) Reconstruction; and (5) the late-19th and early-20th centuries," 142 S. Ct. at 2135-36, it noted that "not all history is created equal. 'Constitutional rights are enshrined with the scope they were understood to have *when the people adopted them*.' […] The Second Amendment was adopted in 1791; the Fourteenth in 1868." *Id.*, at 2136 (citing *Heller*, 554 U.S. at 634–35 (emphasis original). The Court cautioned against "giving post enactment history more weight than it can rightly bear." 142 S. Ct. at 2136. *"To the extent later history contradicts what the text says, the text controls.*" *Id*. at 2137 (citation omitted).

Further, in examining the relevant history that was offered, the *Bruen* Court stated, "[a]s we recognized in *Heller* itself, because post-Civil War discussions of the right to keep and bear arms 'took place 75 years after the ratification of the Second Amendment, they do not provide as much insight into its original meaning as earlier sources.'" 142 S. Ct. at 2137 (citing *Heller*, 554 U.S. at 614). Further, this Court

13

*PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT*
*(3:19-CV-01226-L-AHG)*

previously relied on regulations when the Fourteenth Amendment was ratified in 1868 when defining the Second Amendment's scope (ECF 127), but that reliance goes against the guidance of the Supreme Court in *Heller* and *Bruen*. "[W]e have generally assumed that the scope of the protection applicable to the Federal Government and States is pegged to the public understanding of the right when the Bill of Rights was adopted in 1791." *Bruen*, 142 S. Ct. at 2137–38; *see also Marsh v. Chambers*, 463 U.S. 783, 787-88 (1983); *Furman v. Georgia*, 408 U.S. 238, 319–20 (1972) (tracing history of the Founder's understanding of cruel and unusual punishment from English law through the adoption of the Eighth Amendment); and *Virginia v. Moore*, 553 U.S. 164, 168 (2008) (discussing that the Court looks "to the statutes and common law of the founding era to determine the norms that the Fourth Amendment" protects).

And while the Court in *Bruen* reviewed materials published *after* adoption of the Bill of Rights, it did so to shed light on the public understanding in 1791 of the right codified by the Second Amendment, and only after surveying what it regarded as a wealth of authority for its reading—including the text of the Second Amendment and state constitutions. "The 19th-century treatises were treated as *mere confirmation* of what the Court had already been established." 142 S. Ct. at 2137 (citing *Gamble*, 139 S.Ct. at 1976) (emphasis added).

Therefore, under binding Supreme Court precedent, 1791 must be the controlling time for the constitutional meaning of Bill of Rights provisions incorporated against the States by the Fourteenth Amendment because, as in *Heller*, the Court has looked to 1791 when construing the Bill of Rights against the federal government. While *Bruen* acknowledged a *scholarly debate* on this subject, *Bruen* did not disturb these precedents, and they are therefore binding on lower courts. *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997). "[T]oday's decision should not be understood to endorse freewheeling reliance on historical practice from the mid-to-late 19th

14

Century to establish the original meaning of the Bill of Rights." *Bruen*, 142 S. Ct. at 2163 (Barrett, J., concurring). See App., Pl.1246-57. In sum, under *Bruen,* some evidence *cannot* be appropriate historical analogues, such as (i) 20th-century restrictions, (ii) laws that are rooted in racism, (ii) laws that have been overturned (such as total handgun bans), and (iii) laws *inconsistent* with the original meaning of the constitutional text. *Bruen,* 142 S. Ct at 2137. These sources of evidence must be disregarded.

> ### 1.   "The Stated Objective" Behind Section 27510 and Defense Experts Psychology Opinions are Irrelevant.

This Court, at the insistence of defense experts (Donohue and Dr. Steinberg), ruled at the preliminary injunction stage that 18-to-20-year-old adults are "not fully mature and are prone to impulsive decision making" and that Section 27510's "public safety" "purpose" and "exceptions" ensure that these adults receive "proper training" and "supervision" before being "entrusted" with a firearm. *See Jones v. Bonta*, 2023 WL 8530834 at *6–7.

**First**, the argument is irrelevant because it represents a means-end scrutiny analysis under the guise of historical analogue reasoning, which has been *repudiated* under *Bruen*, 142 S. Ct. at 2126–31. "Again, the Second Amendment is the 'product of an interest balancing *by the people*,' not the evolving product of federal judges. *Heller*, 554 U.S. at 635 (emphasis added). Analogical reasoning requires judges to apply faithfully the balance struck by the founding generation to modern circumstances, … [i]t is not an invitation to revise that balance through means-end scrutiny." *Id*. 142 S. Ct. at 2133 n.7.

**Second**, Defendants do not cite any law or regulation in the relevant time frame (1791), nor in the time after (1868), that prohibited the acquisition, purchase, and possession of a firearm unless the 18-to-20-year-old adult received "training" or "supervision." See Pl.32-39, Pl.49-84, Pl.86-100. These conditions are instead

engrafted into the Second Amendment in conflict with its text and historical interpretation. Pl. 731-770; Pl. 771-871.

**Third,** firearms and general societal public safety interests existed when the Second Amendment was ratified—it is not an interest divorced from the Second Amendment, and the "balancing" that Defendants and this Court undertook at the preliminary injunction stage conflicts with the Second Amendment because the right to keep and bear arms itself is "like the First [Amendment], … the *very product* of an interest balancing by the people." *Heller*, 554 U.S. at 635 (original emphasis).

Thus, when the societal interest existed in early America, as here, analogous reasoning is neither necessary nor required. "Only straightforward historical prohibitions on" purchasing and possessing a firearm by a legal-age young adult are relevant. *See Russell Fouts v. Bonta*, 2024 WL 751001, at *4 (finding that "nuanced analogical reasoning is not applied" as to the use of a billy club when the "societal ill" is the same "in early America"). In this case, Defendants have failed to meet its burden to show any historical law or regulation prohibiting 18-to-20-year-old adults from purchasing or possessing a firearm, and highly generalized arguments do not cut the muster. *See also* Pl.32-39, Pl.49-84, Pl.86-100.

### 2.    Age of Majority Argument is Unpersuasive.

At the urging of Defendants, this Court found that "legal sources" from the period between 1791 (Second Amendment enactment) and 1868 (Fourteenth Amendment enactment) support the notion that the rights of the people, including 18-to-20-year-old adults, were "commonly constrained" under the laws as "infants" or "minors," citing defense experts Donohue and Cornell who in turn rely on a Connecticut legal reference, a legal treatise, and a law dictionary. *See Jones v. Bonta*, 2023 WL 8530834 at *6–7. The argument is unpersuasive.

**First**, the three legal sources say nothing about the scope of the Second Amendment's protections, and thus, are immaterial.

16

*PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NOTICE OF MOTION AND*
*MOTION FOR SUMMARY JUDGMENT*
*(3:19-CV-01226-L-AHG)*

**Second**, that the age of majority during much of the country's history was 21 years old, and not 18, is of no consequence because "'the age of majority—even at the Founding—lacks meaning without reference to a particular right,' because, '[f]or example, a man could take an oath at age 12, be capitally punished in a criminal case at age 14, and serve as an executor at age 17." William Blackstone, *Commentaries*, 463–64, 465 (1765). As Blackstone's *Commentaries* make clear, the relevant age of majority depended on the capacity or activity; and age of majority says nothing about the scope of the Second Amendment's protections.

**Third**, constitutional rights are not generally tied to an age of majority. The First and Fourth Amendments, for example, applied to minors at the Founding as they do today. See Section **B.1** above.

**Fourth**, if Defendants' argument that individual under 21 were considered minors under the law during this period, the entirety of the historical justification for their prohibition would rest on laws that restricted the rights of *legal minors*. However, Plaintiffs are *legal adults* and Penal Code section 27510 restricts the rights of adults ages 18-to-20-years-old. Thus, the burden imposed by Defendants' prohibition is significantly distinct from any historical burden placed on legal minors. Accordingly, the age of majority argument should be flatly rejected.

### 3. Arguments Focusing on Laws and Regulations Enacting So-Called Age-Based Bans or Restrictions Are Too Few and Far Between.

No evidence exists of any age-based laws prohibiting the purchase, acquisition, sale, or transfer of any firearm from before, at the Founding, or during the Early Republic. Pl.32-39, Pl.49-84, Pl.86-100. The Court in *Brown v.*, 2023 WL 8361745 stated:

> Finally, the lack of analogous evidence of Founding-era regulations demonstrates that the statutes and regulations at issue are inconsistent with the Second Amendment. Since time immemorial, teenagers have been, well, teenagers. The "general societal problem" of teenage

17

impetuousness and rashness far proceeded the Founding. *Bruen*, 142 S. Ct. at 2131. Yet, that fact notwithstanding, the Government has not demonstrated that the Founders dealt with this problem in a "distinctly similar" way to the statutes and regulations at issue. *Id*. The lack of analogous regulations permits a finding that the Founders considered age-based regulations on the purchase of firearms to circumscribe the right to keep and bear arms confirmed by the Second Amendment.

*Id*. (citing *Fraser v. Bureau of Alcohol, Tobacco, Firearms and Explosives*, 672 F. Supp. 3d 118, 2023 WL 3355339, at *21 (E.D. Virginia 2023)).

Indeed, just a few years before the ratification of the Second Amendment, in the winter of 1787–88, future president Andrew Jackson, at the time a 20-year-old attorney preparing to move to what would become Tennessee, purchased for himself "a rifle and a good pair of pistols" to arm himself for his journey. HENDRIK BOORAEM, YOUNG HICKORY: THE MAKING OF ANDREW JACKSON 195, 199 (2001), https://bit.ly/48uq2l3.; See also Pl.883; Pl.1032; Pl.1145 (founding era attitudes).

Said differently, while some gun regulations existed at the Founding, there were no laws or regulations restricting minors' or 18-to-20-year-old adults' ability to acquire, purchase, or possess weapons until 1856—and that 1856 Alabama law did not restrict the sale of any kind of long gun or rifle. *See* Pl.32, Pl.49, Pl.86. Moreover, there were no restrictions on *legal adults* based solely on their age until the 20th Century (passed the relevant time frame). And, in any case, Reconstruction era law references are insufficient to contradict the plain text and lack of any regulation during the Founding era. *Bruen*, 142 S. Ct. at 2137; citing *Heller*, 670 F.3d at 1274, n-6 (Kavanaugh, J. dissenting).

According to the Spitzer chart (ECF 111-3), 51 states, including the District of Columbia, depict "state laws restricting weapons to minors." In that list, seven states have no restrictions of any kind regarding minors. Pl.32-39, Pl.49-84. An additional six states only enacted restrictions on minors *after* 1900, which is well beyond the relevant time frame. *Id.*; *Heller*, 554 U.S. at 614. Reviewing the laws enacted during

18

the 1800s, 19 of the states listed only restricted minors *under the age of 18*—most of these only restricting minors *under the age of 16*. *Id.*

Of the 19 remaining states listed in the Spitzer chart, *only three states*—Kentucky, South Carolina, and Tennessee—enacted restrictions on individuals under 21 years old *before* 1870.[4] Pl.32-39, Pl.49-84.

Upon inspection, these "state laws" do not support Defendants' burden to provide analogous, legitimate historical justification. The referenced 1817 South Carolina law is not a state law, but rather a local town ordinance (Columbia, South Carolina). Pl.37, Pl.74-75.  Further, it is not a restriction on the purchase, sale, transfer, or possession of firearms by minors. *Id.* Instead, it is a restriction on firing guns in the town of Columbia, which applied *to all persons*. *Id.* More succinctly, in 1817, neither the State of South Carolina, nor the town had any law or restriction on anyone 18-to-20-years-old from purchasing, acquiring, or transferring firearms. *Id.*

The referenced 1859 Kentucky law also falls far short of a law or restriction on the sale or transfer to minors of firearms. The statute explicitly requires that the weapons be carried *concealed* in order to be in violation of the provision. Pl.34, Pl.61, Pl.91. Under the statute, 18-to-20-year-old adults would be free to acquire, purchase, transfer, possess, and be sold any of the listed weapons as long as they are not carried concealed. *Id.*

Moreover, every version of the Tennessee law referenced by Prof. Spitzer and previously cited by this Court, explicitly permitted the sale, loan, and giving to a minor "a gun for hunting or weapon for defense in traveling." Pl.37-38, Pl.75-77, Pl.96-97. As such, these laws are not analogous regulations to Defendants' current ban, even under the most generalized standard. And no testing, training, or licensing

---

[4] States, such as Alabama, Connecticut, New York, enacted restrictions on minors under 21 in 1856, 1835, and 1859 respectively; however, these restrictions were subsequently changed to lower the age limit (under 18 years old) in 1866, 1881, and 1885, respectively.

was required under these statutes. *Id.*

This Court also referenced an 1803 New York City ordinance as justification for the State's ban. ECF 127, p. 14. Specifically, the 1803 New York City ordinance was not a restriction on the sale, purchase, transfer, or possession of firearms based on age, but rather a restriction on discharging firearms within City or town limits *applicable to all persons*. Pl.36, Pl.67-70, Pl.93-94. There was no age-based firearm restriction regarding the sale, purchase, transfer, or possession of a firearm. *Id.* Moreover, the record shows that South Carolina did not enact any kind of age-based restriction until 1923. Pl.37, Pl.74-75, Pl.96. And New York State did not enact any kind of age-based restriction on firearms until 1884—and this restriction limited sales to those *under 18* and still allowed for the sale, purchase, and transfer of all long guns. Pl.68, Pl.94.

In reviewing the Spitzer chart/exhibit, the various states that enacted some kind of restriction on the sale, purchase, or transfer of firearms to legal minors under 21, only Delaware in 1881 *may have* prohibited long guns. Pl.51-52, Pl.88. All other restrictions limited only handguns/pistols. Pl.32-39, Pl.49-84, Pl.86-100. As noted by *Heller* and *Bruen*, the remaining laws enacted after 1870, necessarily "do not provide as much insight into its original meaning as earlier sources." *Heller*, 554 U.S. at 614.

### 4.      College Policies Should be Rejected as Inapposite.

This Court and Defendants' experts Cornell and Spitzer also referenced university regulations regarding student ownership and possession of firearms during and after the Founding era to "confirm that the public understanding of the Second Amendment accepted age limitations. *Jones v. Bonta*, 2023 WL 8530834 at *9. Specifically, this Court referenced a 1655 Harvard College campus policy; a University of Georgia policy derived from the Minutes of the Senate Academicus 1799-1842; an 1824 University of Virginia rule; and an 1838 University of North Carolina rule, which imposed various restrictions on students with regard to firearms.

*Id*. Again, Defendants' experts referenced these college policies "to demonstrate the general understanding during the historically relevant era that firearm regulation of 18-20-year-olds was well-established on numerous fronts and consistent with municipal and state regulation in the first half of the nineteenth century." *Id*., at *10.

However, this entire line of argument and this Court's summary of it, is fundamentally flawed. **First**, these college/university policies were imposed on *all students*—regardless of age. Pl.42-46. None of the referenced college policies restrict any group based on age. **Second**, these college policies did not reflect municipal and state regulations of the time. For example, in 1655, Massachusetts had no age-based restrictions on minors or legal adults with regard to firearms. Pl.35. Nor were there any on the municipal level. Pl.35, Pl.49-84, Pl.86-100. Thus, Harvard's school policy is not supported by any state or municipal age-based firearms law or regulation.

The same is true for the University of Georgia. From 1799 until 1876, there were no age-based restrictions or restrictions on minors *or* legal adults with regard to firearms. Pl.33. Further, in 1824, Virginia had no age-based restrictions or restrictions on 18-to-20-year-old adults from obtaining firearms. Pl.38. In fact, Virginia *never* enacted any age-based restriction with regard to firearms throughout the entirety of the 1800s. *Id*. The 1838 University of North Carolina rule is also not supported by any age firearms state law or regulation, nor any municipality within the state until 1893 (after the relevant, secondary time frame). Pl.36. These facts were presented by Defendants' experts and thus they are undisputed. Pl.32-39, Pl.49-84, Pl.86-100.

Additionally, even if these undisputed facts were ignored, the fact is that during the 1800s, only an incredibly small minority of people attended any kind of college or university. As such, college policies did not have any effect on the greater population that did not attend college. For example, in 1864, the graduating class of Harvard consisted of 99 graduates. During the colonial period, "about 1% of white males aged

21

18-21 attended college and students frequently left college after their first or second year. Pl.312, Pl.189; Pl.240. In 1711, of 35 students, Yale conferred nine bachelor's degrees. *Id*. In 1826, Yale's graduating class numbered 101; the largest previous class (82) graduated in 1814. Pl.114. By 1880, Yale enrollment only reached 1,000 individuals. Pl.106. By 1870, the percentage of 18-to-21-year-olds attending college rose to 1.7%. Pl.189. Said differently, approximately 99% of 18-to-20-year-old adults in the United States were never subject to these school policies up through the 1870s. While these colleges may have imposed strict rules on an immensely small number of students during and after the Founding era, in no way did these school rules reflect either the state or municipal laws or regulations in the nearly entire nineteenth century. Simply, the historical record is *devoid* of age-based firearm acquisition prohibitions or restrictions on 18-to-20-year-olds during the precolonial and the Founding era. App. Pl.0032-39; Pl.0049-84; Pl.0086-0100.

### 5.   Plaintiffs' Militia Contentions are Controlling.

At the preliminary injunction stage, this Court, at the invitation of Defendants, misperceived Plaintiffs' reliance on the extensive set of militia laws, at the time of founding and just thereafter, that required young adults to acquire and possess their own firearms for militia duty. Pl.22-31; Pl.440-717Plaintiffs did not make that exhaustive showing to prove "a *general* right to independently commercially acquire firearms for individual use *for any purpose*." *Jones v. Bonta*, 2023 WL 8530834 at *10.

Plaintiffs, instead, contend that 18-to-20-year-olds at the Founding necessarily acquired firearms, and the voluminous militia law references represent evidence that they had a preexisting right to keep and bear arms consistent with the Second Amendment. And while militia regulations included "inspection" and "accounting" requirements (Saul Cornell & Nathan DeDino, *A Well Regulated Right: The Early America Origins of Gun Control*, 73 Fordham L.Rev. 487, 509–11 (2004)),

inspections and accounting provisions and are **not** the same or like "training" or "supervision" requirements. And even the "inspection" requirement was in the context of "regimental parades" each year. *Id*. at 509.

In summary, Plaintiffs cited the state militia laws and the Federal Militia Act to show, at the Founding and shortly thereafter, all states required 18-to-20-year-old adults to acquire and possess their own firearms to serve in the militia. Pl.2212-29, Pl.778-83, and Pl.439-716. Eighteen-to-twenty-year-olds complied by bringing their own firearms and ammunition to militia service because their right to keep and bear arms was presumed at that time under the Second Amendment. Pl.780-83.

## C.     There is No Historical Tradition of Imposing Training Requirements as a Prerequisite For Firearms Sales

Applying the *Bruen* analysis, there is no question that Defendants' ban on 18-to-20-year-old adults purchasing or acquiring firearms unless they first obtain a hunting license is unsupported by the historical record. While the United States has a long tradition of *generally* regulating the commercial sale of products to advance certain societal goals, this highly generalized fact is patently insufficient to establish Defendants' burden to show relevant laws or regulations justifying a total-near-ban on firearms acquisition by young adults. The Supreme Court mandated that "the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen*, 142 S. Ct. at 2127. Removing any doubt, the Supreme Court further declared "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the *Nation's historical tradition of firearm regulation*.'" *Id*. at 2129–30.

Thus, Defendants must affirmatively prove a historical tradition of *firearms regulations* that is sufficiently analogous to what they deem is a "training requirement" imposed on adults based on age as a prerequisite to their ability to

23

purchase, acquire, transfer, or be sold a firearm. References to generalized regulations on commercial goods are not laws or regulations on such firearms to a defined group.

Specifically, there were no restrictions on the ability to purchase firearms that imposed any training requirement before any individual was able to purchase or acquire a firearm before, during, or after the Founding era. In fact, the entire record before this Court is devoid of a single historical law that imposed a training requirement before any individual— let alone any age group—could exercise their Second Amendment rights through the entire 1800s. Pl.32-39, Pl.49-84, Pl.86-100.

Further, while Defendants have referenced a handful of gun powder storage laws and other laws regulating the discharge of firearms in public, and have categorized them as firearm "safety laws," they provide no support for the almost total ban. Pl.425-428. **First**, those laws all necessarily require the individual *to possess a firearm in the first instance*. They were not safety laws or regulations imposed as a *prerequisite* to purchasing a firearm. **Second**, these regulations applied to all groups equally. There were no age-based restrictions or distinctions. Unlike uniformly applied "safety regulations," Defendants' ban subjects law-abiding adults (18-20) to different restrictions than the rest of the population. This is not supported by any historically analogous law. Nor can Defendants justify its age-ban by referencing militia "inspection" and "maintenance" requirements as this argument was rejected by *Heller. See Heller*, 554 U.S. at 595, 599–600 ("Second Amendment conferred an individual right to keep and bear arms" and that right "is not conditioned on militia service," nor in this case, militia training, maintenance, or safety conditions).

In denying Plaintiffs' second motion, this Court also referenced *Heller's* discussion of "laws imposing conditions and qualifications on the commercial sale of arms." Jones v. Bonta, 2023 WL8530834, at *10. While *Heller* briefly mentioned this generalized term, it did not define or outline the scope of what conditions and

qualifications on the commercial sale of arms it was referencing. Even if this Court were to presume that all "conditions and qualifications on the commercial sale of arm" were constitutional, under the standard set forth in *Bruen*, once it is clear the conduct in question is covered by the plain text of the Second Amendment, the burden shifts and "the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen*, 142 S. Ct. at 2127. As such, Defendants must still justify their regulations through a historical tradition of relevantly analogous firearms regulations. For example, while *Heller* stated that "concealed weapons prohibitions have been upheld under the Amendment or state analogues," the Court in *Bruen* still required the government to affirmatively prove its good cause requirement before issuing concealed carry permits. The same standard must be applied here.

While Defendants have identified a handful of general regulations surrounding gunpowder storage and transportation, and other even more generalized regulations that have been imposed on other goods and products, these references are distinct from an age-based firearm restriction that mandates a "training" requirement *before* a law-abiding adult is able to exercise the most basic form of their Second Amendment rights through the purchase of a firearm.

## VII. CONCLUSION

Based on the foregoing, Plaintiffs request that this Court order Penal Code section 27510 unconstitutional and permanently enjoin its enforcement.

March 15, 2023                    Respectfully submitted,

                                 DILLON LAW GROUP APC

                                 Attorneys for Plaintiffs

                                 By:   */s/ John W. Dillon*
                                       John W. Dillon