John W. Dillon (SBN 296788)
**DILLON LAW GROUP APC**
2647 Gateway Road
Suite 105, No. 255
Carlsbad, California 92009
Phone: (760) 642-7150
Fax: (760) 642-7151
E-mail: jdillon@dillonlawgp.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE CHAVEZ, et al., | Case No. 3:19-cv-01226-L-AHG |
| Plaintiffs, | **PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY** |
| vs. | |
| ROB BONTA, in his official capacity as Attorney General of California, et al., | |
| Defendants. | |

1

2       Plaintiffs Jose Chavez, *et al*. ("Plaintiffs") hereby submit the following additional

3 legal authority in support of (1) their claims for relief, (2) their pending motion for

4 summary judgment, and (3) their opposition to Defendants' summary judgment motion:

5 *United States v. Duarte*, 2024 WL 2068016 (9th Cir. May 9, 2024), attached hereto as

6 **Exhibit A**.

7       In this decision, the Ninth Circuit vacated Steven Duarte's conviction for

8 violating 18 U.S.C. § 922(g)(1), which makes it a crime for any person to possess a

9 firearm if he has been convicted of an offense punishable by imprisonment for a term

10 exceeding one year. The panel held that section 922(g)(1) violates the Second

11 Amendment under *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022).

12       Applying *Bruen's* two-step, text-and-history framework, the panel concluded (1)

13 Duarte's weapon, a handgun, is an "arm" within the meaning of the Second

14 Amendment's text, that Duarte's "proposed course of conduct—carrying [a] handgun[]

15 publicly for self-defense"—fell within the Second Amendment's plain language, and

16 that Duarte is part of "the people" whom the Second Amendment protects because he

17 is an American citizen; and (2) the government failed to prove that section 922(g)(1)'s

18 categorical prohibition, as applied to Duarte, "is consistent with this Nation's historical

19 tradition of firearm regulation." *Id*. 2024 WL 2068016 at *4.

20       According to the Ninth Circuit, *Bruen* replaced the tiers-of-scrutiny framework

21 with one grounded exclusively in text and history. *Id*. at *4, quoting *Maryland Shall

22 Issue, Inc. v. Moore*, 86 F.4th 1038, 1041 (4th Cir. 2023), rehearing *en banc* granted,

23 86 F.4th 1038 (4th Cir.2024).

24       The Ninth Circuit also made clear that the "threshold inquiry" is "whether 'the

25 Second Amendment's plain text covers' the person challenging the law, the 'arm'

26 involved, and the person's 'proposed course of conduct.'" *Id*. 2024 WL 2068016 at *4,

27 citing *Bruen*, 597 U.S. at 17. "If the Second Amendment's 'bare text' covers the person,

28 his arm, and his conduct, 'the government must [then] demonstrate that the [challenged]

regulation is consistent with this Nation's historical tradition of firearm regulation.'" *Id*. at *4.

The Ninth Circuit applied the textual analysis required by *Bruen* and held "we easily conclude that Duarte's weapon, a handgun, is an 'arm' within the meaning of the Second Amendment's text and that Duarte's 'proposed course of conduct—carrying [a] handgun[] publicly for self-defense'— falls within the Second Amendment's plain language, two points the Government never disputes." *Id*. at *2, citing *Bruen*, 597 U.S. at 32. The Ninth Circuit also stated it was "mindful" that "'[t]he Constitution was written to be understood by the voters,' [so] *we begin with the '"normal and ordinary' meaning of the Second Amendment's language*." *Id*. at *10, quoting *Heller*, 554 U.S. at 557 (quoting *United States v. Sprague*, 282 U.S. 716, 731 (1931)). The Ninth Circuit further considered "the same pre- and post-ratification sources" that *Heller* looked to "because when it comes 'to determin[ing] the *public understanding* of a legal text in the period after its enactment or ratification,' the historical record serves as 'a critical tool of constitutional interpretation.'" *Id*. quoting *Bruen*, 597 U.S. at 20 (emphasis in original).

Analyzing the plain text's meaning of "the people," the Ninth Circuit stated that "*Bruen* and *Heller*… both recognized the 'strong presumption' that the text of the Second Amendment confers an individual right to keep and bear arms that belongs to 'all Americans,' not an 'unspecified subset.' *Id*. at *2, quoting *Bruen*, 597 U.S. at 70 (which, in turn, quoted *Heller*, 554 U.S. at 581. The Ninth Circuit further clarified, "Our own analysis of the Second Amendment's publicly understood meaning also confirms that the right to keep and bear arms was every citizen's fundamental right. Because Duarte is an American citizen, he is "part of 'the people' whom the Second Amendment protects." *Id*. at *2, quoting *Bruen*, 597 U.S. at 32.

The Ninth Circuit further found that "*Heller* defined 'the people' in the **broadest of terms**: the phrase 'unambiguously refer[red]' to 'all Americans,' not 'an unspecified subset.' *Id*. at *5 quoting *Heller*, 554 U.S. at 581 (emphasis added). *Bruen* also

1  "expressly reaffirmed that broad definition, quoting *Heller's* language directly and

2  holding that "'[t]he Second Amendment guaranteed to 'all Americans' the right to bear

3  commonly used arms in public[].'" *Id*. at * 9, quoting *Bruen*, 597 U.S. at 70 (which, in

4  turn, quoted *Heller*, 554 U.S. at 581.

5  According to the Ninth Circuit, "[o]ur own analysis of the Second Amendment's

6  text and history, also confirms that 'the people' in the Second Amendment included, at

7  a minimum, all American citizens"—without qualification. *Id*. at * 9.

8  Indeed, the Ninth Circuit provides an in-depth discussion of the meaning of the

9  term, "the people" in the Second Amendment (*Id*. at * 9-13), and concludes, "We are

10 confident that, 'by founding-era consensus,' the 'right of the people' to keep and bear

11 arms was publicly understood as the fundamental right of every citizen." *Id*. at * 12,

12 quoting *United States v. Huitron-Guizar*, 678 F.3d 1164, 1168 (10th Cir. 2012).

13 The Ninth Circuit further made clear that the *Heller* Court's reference to

14 examples of "presumptively lawful" "longstanding" laws restricting the Second

15 Amendment right ***cannot be assumed*** post-*Bruen*. Specifically, the Ninth Circuit held:

16 "'Simply repeat[ing] *Heller's* language' about the 'presumptive[]
   lawful[ness]' of felon firearm bans will no longer do after *Bruen*. [Citation
17 omitted.] *Bruen* expressly 'require[s] courts to assess whether § 922(g)(1),
   … like 'any regulation infringing on Second Amendment rights[,] is
18 consistent with this nation's historical tradition of firearm regulation,'
   [Citation omitted.] It would pay lip service to this mandate if we continued
19 to defer (as *Vongxay* did) to *Heller's* footnote, not least because the
   historical pedigree of felon firearm bans was never an issue the *Heller*
20 Court purported to resolve. While referring to such laws and others as
21 'longstanding,' the Court 'fail[ed] to cite any colonial analogues' [citation
   omitted] and clarified that it was 'not providing [an] extensive historical
22 justification' for felon firearm bans because *Heller* was its 'first in-depth
23 examination of the Second Amendment,' not an attempt 'to clarify the
   entire field.' [Citation omitted.] '[T]here w[ould] be time enough to
24 expound upon the historical justifications for [these and other] exceptions,'
25 *Heller* promised, 'if and when th[ey] . . . come before us.' *Id*.; *see also*
   *Vongxay*, 594 F.3d at 1117 n.4 (acknowledging *Heller* "anticipated the
26 need for such historical analy[sis]"). The Court has yet to explore this
27 Country's history of banning felons from possessing firearms. Until then,

28

we can no longer 'assum[e],' by way of *Heller's* footnoted caveat, the 'propriety of [every] felon firearm ban' that comes before us. See *United States v. Phillips*, 827 F.3d 1171, 1175 (9th Cir. 2016). 'Nothing allows us to sidestep *Bruen* in th[is] way.' [Citations omitted.]"

*Id.* at * 17-18.

The Ninth Circuit concluded this discussion, stating, "nothing in the majority opinion implies that we can jettison *Bruen's* test for one "presumptively lawful" category of firearm regulations but not others (*e.g.*, sensitive place regulations). *Id.* at * 20; (*citing Rodriguez*, 728 F.3d at 979).

Additionally, the Ninth Circuit provided guidance on what historical laws are properly analogous under the *Bruen* standard. The Court made clear that "[w]hile the Government does not have to find a historical 'dead ringer' to § 922(g)(1), a law that 'remotely resembles' a felon firearm ban is not enough." *Id.* 2024 WL 2068016 at * 13. Instead, the Ninth Circuit clarified that it was "looking for something in between these two endpoints. On that score, *Bruen* offers some additional guidance. If the law at issue is a "distinctly modern firearm regulation[]" because it addresses a societal problem "unimaginable at the founding," the Government's historical analogues need only be "relevantly similar" to the challenged law. *Id.* at * 13; *see also Perez-Garcia*, 96 F.4th at 1182; *Alaniz*, 69 F.4th at 1129–30. However, the Ninth Circuit found that the statute at issue took aim at "gun violence" and that "problem … has persisted [in this country] since the 18th century.' *Id.* 2024 WL 2068016 at *14, quoting *Bruen*, 597 U.S. at 26, 27. And that section 922(g)(1) "'confront[s] that problem' with 'a flat ban on the possession of []guns' by the formerly incarcerated, which no one here disputes is something 'that the Founders themselves could have adopted.' *Id.* 2024 WL 2068016 at *14.

Thus, the Ninth Circuit stated that while "'[t]he Founding generation had no laws limiting gun possession by . . . people convicted of crimes' [citation omitted]—while not fatal to the Government's case—means that 'the lack of a . . . historical regulation' that is 'distinctly similar' to § 922(g)(1) is strong if not conclusive 'evidence' that the law 'is inconsistent with the Second Amendment'" [Citations omitted]. *Id.* at *14.

1   Each of the above points in *Duarte* address issues squarely presented in the

2   pending cross-motions for summary judgment, including, among other issues: (i)

3   whether legal adults are among "the people" under the plain text of the Second

4   Amendment; (ii) whether Plaintiffs' proposed course of conduct falls within the plain

5   text; (iii) whether *Bruen's* historical analysis must be applied to "presumptively lawful"

6   firearms regulations mentioned in *Heller*; and (iv) whether or not a nuanced approach

7   is warranted in the historical analysis under the *Bruen* standard.

8

9    May 16, 2024                            **DILLON LAW GROUP APC**

10

11                                          */s/ John W. Dillon*
                                            John W. Dillon

12

13                                          Attorney for Plaintiffs

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28