1  ROB BONTA
   Attorney General of California
2  ANYA BINSACCA
   Supervising Deputy Attorney General
3  JENNIFER E. ROSENBERG
   STEPHANIE ALBRECHT
4  CAROLYN DOWNS
   Deputy Attorneys General
5  TODD GRABARSKY
   Deputy Attorney General
6  State Bar No. 286999
    300 South Spring Street, Suite 1702
7   Los Angeles, CA  90013-1230
    Telephone:  (213) 269-6044
8   Fax:  (916) 731-2124
    E-mail:  Todd.Grabarsky@doj.ca.gov
9  *Attorneys for Defendants Rob Bonta, in his
   official capacity as Attorney General of the
10 State of California, and Allison Mendoza, in
   her official capacity as Director of the
11 Department of Justice Bureau of Firearms*

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **JOSE CHAVEZ; et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**ROB BONTA, in his official capacity as Attorney General of the State of California; et al.,**<br><br>Defendants. | 3:19-cv-01226-L-AHG<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Judge:    The Honorable M. James Lorenz<br>Action Filed:    July 1, 2019<br><br>***NO ORAL ARGUMENT PURSUANT TO LOCAL RULE UNLESS ORDERED BY THE COURT*** |

## INTRODUCTION

In defending California Penal Code section 27510's limited restriction on the sale of long guns to 18-20-year-olds, Defendants have produced more than 500 historical laws and regulations; a survey of historical judicial opinions; eight comprehensive reports from leading historians and social scientists; statistics and records concerning firearm transfers and violent crimes among that age group; and other relevant historical and cultural sources. Plaintiffs—having hardly presented any historical evidence of their own—fail to meaningfully dispute this evidentiary record, which shows that section 27510 comports with the Second Amendment. Because the challenged law does not regulate people or conduct covered by the Second Amendment's plain text as originally understood, and falls squarely within the Nation's historical tradition of regulating firearms among those under age 21, the Court should grant summary judgment in Defendants' favor.

## ARGUMENT

### I. SECTION 27510 REGULATES INDIVIDUALS AND CONDUCT OUTSIDE THE SCOPE OF THE SECOND AMENDMENT'S PLAIN TEXT

#### A. 18-20-Year-Olds Are Not Part of the "People" Protected by the Second Amendment

Summary judgment should be awarded to Defendants at the first step of the analysis prescribed by *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), because the sale of firearms to 18-20-year-olds is conduct that falls outside the Second Amendment's plain text. In contending otherwise, Plaintiffs make a hyper-literal argument that the Second Amendment applies to *all* those who are literally "people"—an argument untethered from any historical, sociological, or political context. Pls.' Opp'n to Defs.' MSJ 3-4 (ECF No. 139). Yet *Bruen* demands examination of the Amendment's text in its historical context and permits laws that "regulate[] activity falling outside the scope of the right *as originally understood*." 597 U.S. at 18 (emphasis added) (quotation marks omitted).

As Defendants' experts explain, in 1791 and 1868—when the Second and

1

Fourteenth Amendments were respectively ratified—Americans would have commonly regarded 18-20-year-olds as lacking full capacity to make judgments, and therefore possessing no independent legal capacity or rights separate from their parents or guardians. *See* Defs.' Mem. ISO MSJ 8-10 (ECF No. 132-1); Defs.' Opp'n to Pls.' MSJ 4-6 (ECF No. 140). Restrictions on this age group pertained to fundamental civic and political areas such as voting, marriage, property ownership, petitioning the government, and jury service. *Id.* Indeed, under-21-year-olds were considered "legally disabled" under the law, akin to the mentally infirm. Cornell Rpt. ¶¶ 42-48;[1] Brewer Rpt. ¶¶ 12-19; *see also District of Columbia v. Heller*, 554 U.S. 570, 626-27 (2008) (recognizing the constitutionality of prohibitions on firearm possession by the mentally ill); Cauffman Rpt. ¶¶ 10, 20-29, 39 (unrebutted testimony that those under 21 demonstrate neurobiological immaturity that interferes with safe firearm usage); Donohue Rpt. ¶¶ 13-44 (unrebutted testimony that 18-20-year-olds are responsible for a disproportionate share of violent crime including mass shootings).

Plaintiffs dispute none of this. Instead, they assert the unsupported contention that the Second Amendment's plain text applies to all who are *currently* considered legal "people," impermissibly relying on the Ninth Circuit's vacated decision in this matter. Pls.' Opp'n 3 (citing *Jones v. Bonta*, 34 F.4th 704, 714, *vacated on reh'g*, 47 F.4th 1124 (9th Cir. 2022)).[2] They also imply that 18-20-year-olds are included in the Second Amendment because at present they can vote. Pls.' Opp'n 5-6. But 18-20-year-olds were not understood to have possessed a constitutional right to vote until the Twenty-Sixth Amendment was ratified in 1971. Defs.' MSJ Mem. 10. Plaintiffs' arguments are thus inconsistent with the historical record.

The recent holding in *United States v. Duarte*, __ F.4th __, 2024 WL 2068016

---

[1] Defendants' expert reports are attached to the Declaration of Jennifer E. Rosenberg (ECF No. 134) in support of their Motion for Summary Judgment.
[2] The Court should reject and strike Plaintiffs' repeated impermissible citations to this vacated opinion. Pls.' Opp'n 3, 8, 9, 14-16, 20, 21.

2

Defs.' Reply ISO Motion for Summary Judgment (3:19-cv-01226-L-AHG)

(9th Cir. May 9, 2024), *pet'n for reh'g en banc filed*, No. 22-50048 (9th Cir. May 14, 2024) (Dkt. 72), that the Second Amendment's text includes individuals with previous non-violent felony convictions as among "the people" does not control here. Although that case held that, "by founding-era consensus," the right to keep and bear arms was "publicly understood as the fundamental right of every citizen," *id.* at *12, it did *not* consider whether there was a "founding-era consensus" that the notion of "citizenship" encompassed all individuals no matter their age (including babies, children, and other minors). As explained, under-21-year-olds have not historically been understood to fall within the "citizenship" or "political community"—and thus, under *Duarte*'s standard, among "the people"—with the complete assortment of rights and abilities conferred by that status.

### B. In the Alternative, Section 27510 Falls Outside the Second Amendment's Text Because It Is a Commercial Regulation on the Sale of Arms

Even if the Second Amendment's plain text covers 18-20-year-olds, Defendants should still prevail at step one of the *Bruen* analysis for a separate and independent reason: section 27510 is a regulation on the commercial sale of arms, and it does not ban or meaningfully constrain anyone's ability to acquire or possess them. Regulations "imposing conditions and qualifications on the commercial sale of arms" are "presumptively lawful," and generally fall outside the scope of the Amendment's text. *Heller*, 554 U.S. at 626-27 & n.26.[3] In this context, "keep" and "bear" mean to "have" and "carry," *id.* at 583-84, which are "not synonymous with 'sell or transfer,'" *United States v. Tilotta*, 2022 WL 3924282, at *5 (S.D. Cal. Aug. 30, 2022).

It is undisputable that section 27510 does *not* prohibit possession or

---

[3] Although *Duarte* suggests that *Heller*'s list of "presumptively lawful" measures may no longer be valid, 2024 WL 2068016, at *7-8; *but see id.* at *25-26 (Smith, J., dissenting) ("Nothing in . . . *Bruen* reflects a retreat from the Court's earlier statement in *Heller* that [certain regulations] are 'presumptively lawful.'"), the only item pertinent to the holding was the "prohibition on the possession of firearms by felons." That item is not at issue here, and in any event, similar issues are currently under consideration in *United States v. Rahimi*, U.S.S.C. No. 22-915.

3

Defs.' Reply ISO Motion for Summary Judgment (3:19-cv-01226-L-AHG)

acquisition of firearms, including semiautomatic centerfire rifles, among 18-20-year-olds. Individuals of those ages may receive such weapons as gifts, bequests, transfers, loans, or other means without going through a licensed dealer. Defs.' MSJ Mem. 4-5 (citing relevant statutes); Order Deny'g Mot. for PI 10-11 (ECF No. 127). The law allows 18-20-year-olds to purchase long guns from dealers if they procure a hunting license after taking a hunter education and safety course, *id.* at 11-13 (describing licensure process)—an objective licensing requirement that mirrors the licensing regimes sanctioned in *Bruen*, 597 U.S. at 38 n.9. Thus, the statutory scheme merely regulates the commercial sale of arms by restricting sales of certain types of weapons to 18-20-year-olds who have not obtained a hunting license while permitting sales to those who have.

Plaintiffs mischaracterize section 27510 and the related statutory scheme as a "total-ban on sales to legal adults" akin to a "one-million-dollar tax" on firearm sales. Pls.' Opp'n 9. But this claim is unsupported by any evidence demonstrating that section 27510 will cause 18-20-year-olds to be "meaningfully constrained" in their ability to acquire or possess arms. *Teixeira v. County of Alameda*, 873 F.3d 670, 678-80 (9th Cir. 2017) (en banc); *see also Gazzola v. Hochul*, 88 F.4th 186, 195-99 (2d Cir. 2023) (relying on *Teixeira*'s "meaningfully constrained" standard at *Bruen*'s first step), *pet'n for cert. filed*, No. 23-995 (U.S. Mar. 7, 2024); *Richards v. Newsom*, 2024 WL 1600659, at *9 (C.D. Cal. Mar. 1, 2024) (same). As explained, section 27510's various exceptions provide a multitude of channels for 18-20-year-olds to purchase, acquire, possess, or use firearms, including semiautomatic centerfire rifles and other long guns. And Plaintiffs have not produced evidence showing that even a single 18-20-year-old has been unable to acquire a firearm for lawful purposes because of section 27510's restrictions. Defendants, by contrast, have produced uncontested records evincing thousands of recent sales and transfers to 18-20-year-olds, including by firearm dealers. Defs.' MSJ Opp'n 2-3. Even two of Plaintiffs themselves admit they have accessed firearms through exemptions, and

4

Defs.' Reply ISO Motion for Summary Judgment (3:19-cv-01226-L-AHG)

that they could obtain a hunting license to purchase from a dealer but simply have chosen not to do so. *Id.*; Defs.' MSJ Mem. 13.  And while Plaintiffs criticize the hunting license exemption for 18-20-year-olds as a "different standard as to all other lawful adults," Pls.' Opp'n 11, they nonetheless fail to demonstrate that this objective and inexpensive requirement "meaningfully constrain[s]" individuals of those ages from acquiring and possessing firearms. *Teixeira*, 873 F.3d at 678-80; *see also McRorey v. Garland*, 99 F.4th 831, 838-39 (5th Cir. 2024).

### C. Defendants Have Not Waived Any *Bruen* Step One Arguments

Plaintiffs contend that the aforementioned *Bruen* step one arguments are "barred" because Defendants previously made "judicial admissions" that "the Second Amendment covers legal adults (ages 18-20)." Pls.' Opp'n 2-3.  That is wrong.  Far from admitting anything, Defendants merely "assum[ed] only for the purpose of [the preliminary injunction] motion that 18-to-20-year-olds are part of the 'people' . . . and that the acquisition restrictions . . . implicate the right to 'keep and bear Arms.'" Defs.' PI Opp'n at 8-9 (ECF No. 111).  Defendants also stated that this issue is "better resolved in the summary judgment posture," and they explicitly "reserve[d] the right to make such arguments" at that juncture—which is now. *Id.* at 9 n.4.  The Court recognized as much, noting that Defendants made such assumptions "for purposes of [the preliminary injunction] motion" only. Order Deny'g Mot. for PI 9.

## II. SECTION 27510'S AGE LIMIT IS CONSISTENT WITH THE NATION'S HISTORICAL TRADITION OF FIREARM REGULATION

### A. Defendants Have Presented a Wealth of Historical Laws, Rules, Customs, and Case Law Relevantly Similar to Section 27510

Defendants should also prevail at *Bruen*'s second step.  Defendants and their experts have identified a wealth of analogous historical laws, rules, customs, and other sources, which, when examined in their totality, show that section 27510's age limit fits comfortably within the Nation's historical tradition of firearms regulation. Defs.' MSJ Mem. 13-25; Defs.' Opp'n 19-25.  To summarize:

5

Defs.' Reply ISO Motion for Summary Judgment (3:19-cv-01226-L-AHG)

- Laws restricting the sale, transfer, and possession of firearms by minors, including those under age 21, abounded from early American history and throughout the nineteenth and early twentieth centuries. Decl. of Todd Grabarsky ISO MSJ (ECF No. 133) Exs. **1-106**; *see also* Cornell Rpt. ¶¶ 109-133 & Exs. B, D; Spitzer Rpt. ¶¶ 16-25 & Exs. I & J; Rivas Rpt. ¶¶ 38-49 & Exs. 32-53; Roth Rpt. ¶¶ 38-43. These laws are directly analogous to section 27510's age limit, and many of them were *more* burdensome because they rarely provided exceptions.

- Colleges and universities widely prohibited possession of firearms by students during this time period. Grabarsky Decl. Exs. **107-170**; Cornell Rpt. ¶¶ 66-71; Spitzer Rpt. ¶¶ 26-35 & Ex. K; Brewer Rpt. ¶ 39; Rivas Rpt. ¶¶ 42-43.

- Historical accounts and legal commentary demonstrate that lawmakers, jurists, and the general public supported restrictions on the sale of firearms to minors and understood them to be lawful. *See* Patrick J. Charles, *Armed in America: A History of Gun Rights from Colonial Militias to Concealed Carry* 156 & n.212 (2019); Thomas M. Cooley, *Treatise on Constitutional Limitations* 740 n.4 (5th ed. 1883); Cornell Rpt. ¶ 140-142; Rivas Rpt. ¶ 38 & Exs. 71-77.

- Individuals were routinely prosecuted and convicted under statutes penalizing the sale of firearms to those under 21. *E.g.*, *Coleman v. State*, 32 Ala. 581 (1858); *State v. Allen*, 94 Ind. 441 (1884); *Tankersly v. Commonwealth*, 9 S.W. 702 (Ky. 1888); *State v. Quail*, 28 Del. 310 (Del. Gen. Sess. 1914). And in the single known pure constitutional challenge to an age-based restriction before *Bruen*, the court upheld the law at issue. *State v. Callicutt*, 69 Tenn. 714, 716-17 (1878).

- Historical militia laws that required or permitted minors (including those under age 21) to serve militia duty generally excused them from supplying their own arms or mandated that their parents, guardians, or masters provide (and be liable for) the arms to be used in their militia service. Grabarsky Decl. Exs. **171-204**; *see also* Brewer Rpt. ¶¶ 21-36, 46; Cornell Rpt. ¶¶ 39, 46 n.50, 71-96; Spitzer Rpt. ¶¶ 26-35, 80 & Ex. K; Rivas Rpt. ¶¶ 42-43. And the usage of firearms by

6

Defs.' Reply ISO Motion for Summary Judgment (3:19-cv-01226-L-AHG)

under-21-year-old militia members was done in a military-like setting that involved all-encompassing regulation, supervision, training, and discipline. *Id.*

- Regulations on the commercial sale of arms and ammunition to promote public safety have been widespread since the Founding. *See* Grabarsky Decl. Exs. **88, 94, 525-551**; Cornell Rpt. ¶¶ 14-20, 102-142, 171; William J. Novak, *The People's Welfare: Law and Regulation in Nineteenth Century America* 60-67 (Univ. of N.C. Press 1996); *see also Teixeira*, 873 F.3d at 685.

Taken together, this and other evidence demonstrates that section 27510 is consistent with a long tradition of historical age-based firearms restrictions.

### B. The Court Should Reject Plaintiffs' "Divide-and-Conquer" Approach to the Historical Evidence

Rather than addressing the analogous historical laws, rules, customs, and case law in context, Plaintiffs nitpick at a small sampling of Defendants' voluminous evidence. And, ignoring clear pronouncements from *Bruen*, 597 U.S. at 30, Plaintiffs inexplicably demand a "historical twin" or "dead-ringer" from the Founding Era, and *only* from the Founding Era. Pls.' Opp'n 14-15.

The Court should reject this "divide-and-conquer approach" as "miss[ing] the forest for the trees." *United States v. Perez-Garcia*, 96 F.4th 1166, 1191 (9th Cir. 2024). As the Ninth Circuit has instructed:

> In applying the Second Amendment, we do not isolate each historical precursor and ask if it differs from the challenged regulation in some way. We emphasize again: *Bruen* does not require the Government to identify a "historical twin" or an 18th century "dead ringer" . . . . We instead examine the historical evidence as a whole, determining whether it establishes a tradition of permissible regulation . . . , and whether the historical precedent and the modern regulation are "relevantly similar," so as to "evince[ ] a comparable tradition of regulation."

*Id.* (quoting *Bruen*, 597 U.S. at 27, 29, 30). The Court should also reject Plaintiffs' arguments against applying a "nuanced approach" to the historical inquiry (Pls.' Opp'n 13-14) as "divorced from both reality and the law." *United States v. Alaniz*, 69 F.4th 1124, 1129 (9th Cir. 2023). As Defendants' unrebutted evidence shows, modern-style violence involving modern-style firearms and modern-style social-

7

1 psychological issues among young adults implicates just the sort of "unprecedented
2 societal concerns [and] dramatic technological changes" that warrants such nuance.
3 *Bruen*, 597 U.S. at 27-28; Defs.' MSJ Mem. 14-17; Defs.' Opp'n 16-17.

4     In any event, although not required to do so, Defendants *have* provided
5 numerous laws as close to "historical twins" or "dead ringers" as can be: laws from
6 early American history that restricted firearms among minors, who were at the time
7 legally defined as those under age 21. *E.g.*, Grabarsky Decl. Exs. **2-5, 80-83**; *see*
8 *also* Defs.' MSJ Mem. 17-19. Plaintiffs fail to meaningfully address these laws
9 beyond casually dismissing them as arriving too late in history. Plaintiffs also
10 inexplicably ignore the bevy of laws setting 21 as an age minimum that proliferated
11 during the Reconstruction Era, when the Second Amendment was first understood
12 to apply to the States. *Id.* Exs. **6, 9, 11-14, 16, 18-20, 22-23, 25, 29, 35, 36, 38, 41,**
13 **44-46, 48, 50**; *see also Alaniz*, 69 F.4th at 1129 (noting the relevance of nineteenth
14 century laws); *Baird v. Bonta*, 81 F.4th 1036, 1042-43 (9th Cir. 2023) (same). And
15 further missing the forest for the trees, Plaintiffs do not grapple with the other
16 historical age limits that indicate that States had constitutional flexibility to regulate
17 arms among age groups to promote public safety. *See generally id.* Exs. **1-106**.

18     Plaintiffs also impermissibly disregard the broader historical context that can
19 be gleaned from other sources beyond the aforementioned laws. *See Perez-Garcia*,
20 96 F.4th at 1191 ("In assessing the Second Amendment's original meaning, we
21 must consult a variety of legal and other sources." (cleaned up)). For example, *in*
22 *loco parentis* firearms restrictions on college and university students proliferated
23 since the seventeenth century. Grabarsky Decl. Exs. **107-170**. Plaintiffs contend
24 that these rules did not apply to the general population and were not age-based
25 restrictions *per se*, Pls.' Opp'n 18-19, but this argument disregards the fact that
26 many of these campus rules were imposed by *public* institutions, and necessarily
27 affected those aged 18 to 22, the typical age for college students at the time.
28 Cornell Rpt. ¶¶ 66-71; Spitzer Rpt. ¶¶ 26-35; Brewer Rpt. ¶ 39; Rivas Rpt. ¶¶ 42-

8

Defs.' Reply ISO Motion for Summary Judgment (3:19-cv-01226-L-AHG)

43. Moreover, these campus firearms restrictions were not only widespread but also uncontroversial: Plaintiffs have not identified a single challenge to those rules or presented any evidence demonstrating a public distaste for them.

Defendants' other historical evidence also confirms that age restrictions were commonly understood to be within government authority. There are numerous instances of prosecutions and convictions for violations of these laws, which were consistently upheld as constitutional. *See supra* p. 6 (citing historical case law). Plaintiffs quibble with these cases by pointing to minor procedural and linguistic nuances or by attacking the precedent on which they rely. Pls.' Opp'n 19-22. But ultimately they do not dispute that these cases affirmed convictions for violations of age restrictions or declined to declare them unconstitutional.[4]

Plaintiffs speculate that no court rendered age restrictions unconstitutional because those laws were not commonly enforced, Pls.' Opp'n 22, but they provide no evidence for this postulation, let alone evidence rebutting the numerous criminal prosecutions that Defendants identify. And even if there were a dearth of known legal challenges to the historical age restrictions, that in combination with Defendants' other evidence would support the conclusion that the people in those historical times understood these "open [and] widespread" laws to be constitutional, and, so, did not seek to challenge them. *Bruen*, 597 U.S. at 36.

Plaintiffs also fail to rebut evidence from other sources that bolster the common historical understanding that restrictions on those under 21 were permissible. For example, Thomas Cooley—a "judge and professor" "who wrote a massively popular 1868 Treatise on Constitutional Limitations," *Heller*, 554 U.S. at 616—summarized the contemporary understanding that "the State may prohibit the

---

[4] While Plaintiffs are correct that the court in *Parman v. Lemmon*, 119 Kan. 323 (1925), reversed the conviction upon rehearing (Pls.' Opp'n 21), the reversal was based on the court's finding that the text of the age restriction at issue did not include shotguns, which was the weapon used in the underlying crime. The Court took no issue with the fact that the law prohibited furnishing other types of firearms to under-21-year-olds, and it declined to render it unconstitutional.

9

Defs.' Reply ISO Motion for Summary Judgment (3:19-cv-01226-L-AHG)

sale of arms to minors." Cooley, *supra*, at 740 n.4.  Plaintiffs brush aside this important historical source by again impermissibly relying on the Ninth Circuit's vacated *Jones* opinion.  Pls.' Opp'n 21.  And they fail to address the exhaustive analyses of Defendants' expert historians confirming Cooley's conclusion. *E.g.*, Rivas Rpt. ¶¶ 38-49 (explicating the "public support for limiting the access of young people to deadly weapons"); Spitzer Rpt. ¶ 13 ("Concerns over the prospect of minors obtaining ready access to firearms were often expressed in the nineteenth century[.]").

Similarly, Plaintiffs' arguments concerning militia conscription of under-21-year-olds (Pls.' MSJ 22-23) entirely ignore the fact that minors serving militia duty used firearms in a military-like setting that involved stringent supervision and discipline.  *E.g.*, Grabarsky Decl. Exs. **171, 173-176, 178-180, 182, 184, 186-189, 193, 194, 197** (sampling militia training and supervision requirements).  Plaintiffs also disregard the host of historical laws that required the parents or caretakers of militia-conscripted minors to provide the arms—along with the liability—for their minors' militia service. *E.g., id.* Exs. **171, 174, 176, 178, 183-185, 190, 192-195, 198**.  These militia laws thus further demonstrate the historical understanding and acceptance that under-21-year-olds should not possess and use firearms without the supervision of their guardians or the structure of a military setting.

Finally, Plaintiffs' attempt to sweep aside the robust historical tradition regulating the commercial sale of arms, gunpowder storage, and shooting galleries to promote public safety (Pls.' Opp'n 22-23) contravenes this Court's previous ruling, which deemed these regulations "relevant historic support."  Order Deny'g Mot. for PI 19.  Section 27510, which regulates—but in light of its numerous exceptions, does not prohibit—the sale of certain types of firearms to certain types of people for public safety purposes, is part and parcel of that tradition.

## CONCLUSION

The Court should enter summary judgment in Defendants' favor.

10

Defs.' Reply ISO Motion for Summary Judgment (3:19-cv-01226-L-AHG)

| | | |
|---|---|---|
| 1 | | |
| 2 | Dated: May 20, 2024 | Respectfully submitted, |
| 3 | | ROB BONTA<br>Attorney General of California |
| 4 | | ANYA BINSACCA<br>Supervising Deputy Attorney General |
| 5 | | JENNIFER E. ROSENBERG<br>STEPHANIE ALBRECHT |
| 6 | | CAROLYN DOWNS<br>Deputy Attorneys General |
| 7 | | |
| 8 | | /s/ *Todd Grabarsky*<br>TODD GRABARSKY<br>Deputy Attorney General |
| 9 | | *Attorneys for Defendants Rob Bonta, in his official capacity as Attorney General of the State of California, and Allison Mendoza, in her official capacity as Director of the Department of Justice Bureau of Firearms* |

11

Defs.' Reply ISO Motion for Summary Judgment (3:19-cv-01226-L-AHG)

**CERTIFICATE OF SERVICE**

I hereby certify that on May 20, 2024, I electronically filed the foregoing document and any attachments thereto with the Clerk of the Court by using the CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated:  May 20, 2024                    */s/ Todd Grabarsky*
                                        TODD GRABARSKY

12

Defs.' Reply ISO Motion for Summary Judgment (3:19-cv-01226-L-AHG)