John W. Dillon (Bar No. 296788)
Dillon Law Group APC
2647 Gateway Road
Suite 105, No. 255
Carlsbad, California 92009
Telephone: (760) 642-7150
Facsimile: (760) 642-7151
E-mail:  jdillon@dillonlawgp.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE CHAVEZ, *et al.*,<br><br>  Plaintiffs,<br><br>v.<br><br>ROB BONTA, in his official capacity as Attorney General of the State of California, *et al.*,[1]<br><br>Defendants. | Case No.: 3:19-cv-01226-L-AHG<br><br>Hon. M. James Lorenz and Magistrate Judge Allison H. Goddard<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**<br><br>Action Filed: July 1, 2019<br><br>Third Amended Complaint Filed March 22, 2023<br><br>No oral argument will be heard pursuant to local rules unless ordered by the Court |

---

[1] Rob Bonta is automatically substituted for his predecessor, Xavier Becerra, as California Attorney General, and Allison Mendoza is automatically substituted for her predecessors, former Directors Louis Lopez and Martin Horan, and former Acting Directors Brent E. Orick and Blake Graham. Fed.R. Civ.P. 25(d).

# TOPICAL INDEX

Page(s)

I. PLAIN TEXT PROTECTS THE ARMS, PEOPLE, AND CONDUCT ........ 1

    A. Section 27510 Imposes An "Almost Total Ban" On Centerfire Rifles and a Near-Total-Ban on Long Guns ................................................. 1

    B. Defendants' "Evidence" Does Not Prove That Legal Adults Are "Allowed To, And Do, Regularly Acquire" The Banned Firearms Under Section 27510 ............................................................................... 3

    C. Legal Adults (18-to-20-year-olds) Are Part Of "The People" Under The Second Amendment ............................................................. 4

    D. Purchasing Firearms Is Protected Conduct Under The Second Amendment ......................................................................... 6

II. DEFENDANTS' HISTORICAL EVIDENCE DOES NOT SUPPORT AGE RESTRICTION ON LEGAL ADULTS ................................................. 7

    A. Nuanced Approach is Inappropriate ........................................................ 7

    B. *Heller*, *Bruen*, *Duarte*, and *Fouts* Set Clear Limits on What Historical Evidence Matters ..................................................................... 7

    C. Historical "Hunting and Parental Consent" Exemptions Are Not Analogous To The Current Bans ............................................................. 8

    D. There Are No Analogues To Any Historical Law Imposing A Training Prerequisite To Purchase Or Acquire Firearms ........................................ 9

    E. College Rules Are Irrelevant ................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Brown v. Bureau of Alcohol, Firearms, Tobacco & Explosives,.*
    2023 WL 8361745 *10-13 (N.D. West Virg. 2023) ....................................... 6

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ...................................... Passim

*Firearms Policy Coalition, Inc. v. McCraw,*
    623 F.Supp.3d 740 (N.D. Tex. 2022) ........................................................ 5, 6

*Fouts v. Bonta*, 2024 WL 751001 (S.D. Cal. 2024) ............................................... 7, 8

*Fraser v. Bureau of Alcohol, Tobacco, Firearms & Explosives*
    672 F.Supp.3d 118 (E.D. Va. 2023) ........................................................ 1, 5, 6

*Hirschfeld v. Bureau of Alcohol, Firearms, Tobacco & Explosives*
    5 F.4th 407 (4th Cir. 2021) ........................................................................ 2, 6

*Jones v. Bonta*, 34 F.4th 704 (9th Cir. 2022) ............................................ Passim

*Jones v. Bonta*, 2023 WL 8530834 (S.D. Cal. 2023) ........................................ 1, 5, 6

*Koontz v. St Johns River Water Mgmt. Dist.*, 570 U.S. 595 (2013) ......................... 2

*Lara v. Commissioner Pennsylvania State Police,*
    91 F.4th 122 (3rd Cir. 2024) ........................................................................... 5

*New York State Rifle & Pistol Assn., Inc. v. Bruen*, 597 U.S. 1 (2022) .......... Passim

*United States v. Duarte*, 2024 WL 2068016 (9th Cir. 2024) ........................... 4, 7, 8

*Worth v. Harrington*, 666 F.Supp.3d 920 (D. Minn. 2023) .............................. 6, 10

**Penal Code**

Section 27510 ............................................................................... 1, 3, 4, 6, 10

**U.S. Constitution**

Second Amendment ................................................................................. Passim

Fourteenth Amendment ..................................................................................... 8

**Other**

*Times Magazine* (July 31, 1973, quoting Frank Robinson) ..................................... 7

## I. PLAIN TEXT PROTECTS THE ARMS, PEOPLE, AND CONDUCT

In reply to Defendants' opposition (ECF 140), Plaintiffs will start where Defendants begin. Plaintiffs are accused of "misstating" Penal Code section 27510 and its prohibitions on the ability of legal adults (18-to-20-year-olds) to purchase and possess centerfire semiautomatic rifles and long guns. ECF 140 at 1. Defendants rely solely on this Court's Order denying Plaintiffs' renewed preliminary injunction. This reliance is misplaced as shown below.

### A. Section 27510 Imposes An "Almost Total Ban" On Centerfire Rifles and A Near-Total-Ban On Long Guns.

Defendants assert "[t]his Court has already rejected" Plaintiffs' purported "misstatements of the law, concluding that *Section 27510 … is not a firearms ban, including [on] semiautomatic centerfire rifles* for individuals between 18 and 20 years of age." ECF 140 at 1 (emphasis added). Plaintiffs have not misstated the law. Instead, Plaintiff rely on the law itself and the Ninth Circuit's decision in this case. See *Jones v. Bonta*, 34 F.4th 704 (9th Cir. 2022), *vacated on reh'g*, 47 F.4th 1124 (9th Cir. 2022). This Court has indeed stated that due to exceptions, Section 27510 is not a firearms ban. *Jones v. Bonta*, 2023 WL 8530834 (S.D. Cal. 2023) at * 6. But this *directly conflicts* with the Ninth Circuit, holding that "the district court **erred** in not enjoining an **almost total ban** on semiautomatic centerfire rifles." *Jones*, 34 F.4th at 710 (emphasis added); and at 715 ("[S]emiautomatic rifles are nearly totally banned[.]"); and *Fraser v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 672 F. Supp. 3d 118, 129 (E.D. Virg. 2023) (citing cases finding "the ban on gun sales and transfers prevents" people "from fulfilling … the most fundamental pre-requisite of legal gun ownership—that of simple acquisition"). The Ninth Circuit further explained, "[a]s to the semiautomatic rifle ban, we part company with the district court ... *it is a blanket ban* for everyone except police officers and servicemembers." *Id*. at 724-725 (emphasis added). Thus, Section 27510 operates as an "almost total ban" on any sale, supply, delivery, possession, or control to legal adults (18-to-20-

1

year-olds) of semiautomatic centerfire rifles, and the law's long gun prohibition operates as a near-total-ban on such sales and possession to legal adults. The only difference between the centerfire rifle "almost total ban" and the long gun near-total prohibition is that long guns may be sold to legal adults who obtain a valid, non-expired hunting license. This means that, just to acquire a long gun, legal adults must take hunting classes, pass the hunters' education test, and then purchase a hunting license, and all while feigning interest in hunting. *E.g.*, ECF 103-3 at ¶¶ 2-5, 9-10, 11. Further, the hunting license exception, applicable only to the long gun prohibition (*Jones*, 34 F.4th at 724), is an unduly burdensome, duplicate, and non-objective licensing regime for the many reasons identified in Plaintiffs' opposition to Defendants' summary judgment motion. *See* ECF 139 at 14-17.

Moreover, while the Ninth Circuit stated that the long gun prohibition was a "condition … on the commercial sale of arms," citing *District of Columbia v. Heller*, 554 U.S. 570, 627 (2008), it nonetheless concluded that legal adults "have a Second Amendment right to keep and bear arms" and that "both" the almost total ban on centerfire rifles and the long gun prohibition "*still burden*[] Second Amendment rights" and that the "Supreme Court observation in *Heller* [regarding conditions on commercial sales of arms] *is no obstacle to this holding*." *Jones*, 34 F.4th at 723 (emphasis added); *see also Koontz v. St Johns River Water Mgmt. Dist.*, 570 U.S. 595, 607 (2013) (finding that "impermissibly" burdening enumerated constitutional rights is a "constitutionally cognizable injury"). Moreover, the Fourth Circuit, in *Hirschfeld v. Bureau of Alcohol, Firearms, Tobacco & Explosives*, 5 F.4th 407 (4th Cir. 2021), *vacated as moot* by *Hirschfeld v. Bureau of Alcohol, Firearms, Tobacco & Explosives*, 4th Cir. (Va.), Sept. 22, 2021; stated that the substance of the challenged law challenged there dictated that it was a "functional prohibition" and not "a mere condition or qualification on sellers." *Id*. at 417. The challenged law constituted a "ban" on "an entire group of adult, law-abiding citizens (18-20 years old) from purchasing handguns from licensed dealers." *Id*.

Importantly, the question of whether Section 27510 is an almost total ban on centerfire rifles and a near-total-ban on long guns, misses a key point. Nothing in *Heller*, *New York State Rifle & Pistol Assn., Inc. v. Bruen*, 597 U.S. 1 (2022), or any other Supreme Court case suggests that only total bans implicate Second Amendment rights. Indeed, *Bruen* itself involved a licensing regime that restricted public carry to those showing a "special need for self-defense." *Bruen*, 597 U.S. at 8-12.

### B. Defendants' "Evidence" Does Not Prove That Legal Adults Are "Allowed To, And Do, Regularly Acquire" The Banned Firearms Under Section 27510.

Despite Defendants' claim that 18-to-20-year-olds can freely purchase firearms in California, data shows Section 27510 has significantly restricted their ability to do so. In 2016, 2017, and 2018, total firearm transactions for this age group were 18,801, 12,672, and 14,002, respectively. Since Section 27510's implementation, these numbers dropped to 3,673 (2019), 4,677 (2020), and 5,497 (2021). *See* ECF 135, Ex. 55, at DX0603-0604.

Defendants assert that nearly 2,000 semiautomatic rifles (centerfire and rimfire) were purchased by 18-to-20-year-olds in 2020 and 2021 via exemptions. *See* ECF 135, Ex. 54, at DX0593. However, this data combines centerfire (banned) and rimfire (not banned) rifles, making it unclear how many centerfire rifles were bought, so this data does not support Defendants' claims. Of the transactions that seemingly were centerfire semiautomatic rifles, the evidence shows that at least these few hundred transfers are to military/law enforcement, as such they show no acquisitions by typical law-abiding 18-20-year-olds. *See* ECF 135, Ex. 55, at DX0628.

According to the Ariam Griffin Declaration (ECF No. 140-3), legal adults acquired only 4 unspecified firearms by "operation of law" in 2023. This does not prove that they "regularly acquire" firearms through such transfers. Instead, it supports Plaintiffs' point that "operation of law" transfers are very limited and don't allow legal adults to regularly purchase centerfire semiautomatic rifles and long guns.

3

The "intrafamilial transfers" evidence from the Griffin Declaration is also insufficient. Defendants claim these transfers (by gift, bequest, and succession) allow legal adults to acquire Section 27510-prohibited firearms, but only 338 such transfers occurred in 2023, showing these exemptions are rare. The Ninth Circuit in *Jones*, 34 F.4th at 726, has also *already rejected* these intrafamily transfers as a severe burden on Second Amendment rights.

### C. Legal Adults (18-to-20-year-olds) Are Part Of "The People" Under The Second Amendment.

Defendants assert Plaintiffs have not established that legal adults are part of "the people" under the plain text of the Second Amendment.[2] This is incorrect.

**First**, the Ninth Circuit, in *United States v. Duarte*, 2024 WL 2068016 (9th Cir. 2024), applied *Bruen*'s text, as informed by history framework and rejected the government's claim that "'the people' in the Second Amendment excluded felons like Duarte." *Id*. at *2. The Ninth Circuit stated that "*Bruen* and *Heller* foreclose that argument because both recognized the 'strong presumption' that the text of the Second Amendment confers an individual right to keep and bear arms that belongs to 'all Americans,' not an 'unspecified subset." *Id*. (citing *Bruen*, 597 U.S. at 70 (quoting *Heller*, 554 U.S. at 581)).

The *Duarte* Court's "own analysis of the Second Amendment's publicly understood meaning also confirm[ed] that the right to keep and bear arms was *every citizen's* fundamental right" and because "Duarte [was] an American citizen, he [was] 'part of the people' whom the Second Amendment protects." *Id*. (citing *Bruen*, 587 U.S. at 32) (emphasis added); *see also Duarte*, 2024 WL 2068016 at *9-13 ("'[B]y founding-era consensus,' the 'right of the people' to keep and bear arms was publicly understood as a fundamental right of every citizen[.]").

---

[2] Plaintiffs incorporate by this reference their summary judgment legal memorandum (ECF 136-1) and their opposition to Defendants' summary judgment motion (ECF 139), including all arguments and all supporting evidence. *See* ECF 136-2 through 136-6; and ECF 139-1.

|   |   |
|---|---|
| 1 | **Second**, Defendants have already conceded that 18-to-20-year-olds are part of "the people" protected by the Second Amendment and that the acquisition restrictions imposed through FFL dealers implicate the Second Amendment right to keep and bear arms, satisfying the *textual analysis* of the *Bruen* standard. *Jones*, 2023 WL 8530834 (S.D. Cal. 2023) at *4-5. Defendants now claim their judicial admission was only for purposes of the prior preliminary injunction motion (ECF 140 at 9, n. 4), but offer *no* explanation for their "about face." *See* ECF 139 at 6-8.

**Third**, this Court agreed that the textual analysis of the *Bruen* standard has been satisfied in this case. *See Jones*, 2023 WL 8530834 at *4-5. **Fourth**, the Ninth Circuit in this case agreed that the Second Amendment's plain text shows the right to keep and bear arms belongs to all Americans, including 18-to-20-year-olds. *Jones*, 34 F.4th at 714. The Ninth Circuit rejected virtually all Defendants' claims, including assertions that *Heller* and *Bruen* have not resolved this issue, the propriety of using other parts of the Constitution to justify its broad definition of "the people," and their *meritless* militia arguments. *Jones*, 34 F.4th at 713-14, 717-21; *see also Fraser*, 672 F. Supp. 3d at 138-43 (holding "the Founders understood that militia service began at the age of 18," and at that age, they had reached the age of majority and were not only allowed but *required* to keep and bear firearms"). **Fifth**, Plaintiffs, in their pending motion, have further demonstrated that legal adults are part of "the people" under the Second Amendment's plain text. ECF 136-1 at 9-12. **Sixth**, Plaintiffs, in their opposition to Defendants' summary judgment motion, have proven that the Second Amendment applies with equal force to legal adults. ECF 139 at 6-16. It doesn't stop there. **Seventh**, courts in other jurisdictions have similarly held that the Second Amendment extends to "all Americans," and in the context of 18-to-20-year-olds. *See Lara v. Commissioner Pennsylvania State Police,* 91 F.4th 122, 130-132 (3rd Cir. 2024) (holding that "18-to-20-year-olds are, like other subsets of the American public, presumptively among 'the people' to whom Second Amendment rights extend") (footnote omitted); *Firearms Policy Coalition, Inc. v. McCraw*, 623 |

F.Supp.3d 740, 747-50 (N.D. Tex. 2022) (concluding that "law-abiding 18-to-20-year-olds are a part of 'the people' referenced in the Second Amendment"); *Worth v. Harrington*, 666 F. Supp. 3d 920, 912-916 (D. Minn. 2023) (same). The Fourth Circuit in *Hirschfeld* also concluded "the Constitution's text, structure, and history reveals that 18-year-olds are covered by the Second Amendment" and that "Founding-era militia laws provide powerful historical evidence" that 18-to-20-year-olds are protected by the Second Amendment. 5 F.4th at 418-440; *see also Fraser*, 672 F. Supp. 3d at 130-36 (same)); and *Brown v. Bureau of Alcohol, et al.*, 2023 WL 8361745 *10-13 (N.D. West Virg. 2023) (same) *appeal pending*.

### D. Purchasing Firearms Is Protected Conduct Under The Second Amendment.

Defendants assert Plaintiffs' proposed course of conduct—purchasing and possessing the prohibited firearms from licensed dealers is "too sweeping." ECF 140 at 17. Note, however, Defendants cite no law or regulation that engrafts a "too sweeping" requirement onto the Second Amendment's plain text.

And if Defendants seek to justify Section 27510 by showing that other avenues remain are available and closing off the right to possess the prohibited firearms by an entire group of citizens based solely on their age is acceptable, Defendants must do so through Bruen's *historical analysis* by satisfying their heavy burden to justify the law by reference to a historical tradition of firearms regulations. *See* ECF 139 at 11-14. Moreover, Defendants' wrongly claim that there are *other* firearm alternatives for this age group. However, the *Heller* Court rejected the "alternative arms" argument, stating that, "It is no answer to say … that it is permissible to ban the possession of handguns so long as the possession of other firearms (*i.e.*, long guns) is allowed." *Id*. 554 U.S. at 629. Instead, the Second Amendment applies to all "Arms" in common use for lawful purposes, and as a constitutional right, it must be "elevate[d] above all other interests." *Id.* at 635. Defendants also assert that Plaintiffs' proposed course of conduct with respect to the hunting license exemption should be acceptable because it

is a "lawful" condition on commercial sales under *Bruen*. *Id*. at 18. Not so, and Plaintiffs have proven their point. *See* ECF 139 at 14-16; *see also Duarte*, 2024 WL 2068016 at *6-7.

## II. DEFENDANTS' HISTORICAL EVIDENCE DOES NOT SUPPORT AGE RESTRICTION ON LEGAL ADULTS

### A. Nuanced Approach is Inappropriate.

Defendants argue that nuanced analogical reasoning to satisfy their historical inquiry burden allows them to rely on historical laws/regulations that are close enough. ECF 140 at 16-17. But historical laws that only "remotely resemble[]" the bans at issue here are not enough under Ninth Circuit precedent. *See Duarte*, 2024 WL 2068016 at *13-14. Said differently, "close only counts in horseshoes and hand grenades." *Times Magazine* (July 31, 1973, quoting Frank Robinson). And when the societal interest (public safety) existed in early America, as here, "[o]nly straightforward historical prohibitions" on purchasing and possessing firearms by legal-age adults are relevant in this federal district and in the Supreme Court. *Fouts v. Bonta*, 2024 WL 751001 (S.D. Cal. 2024) at *4; *Bruen*, 597 U.S. at 26-29. Defendants fail to meet their burden to show any historical laws or regulations prohibiting 18-to-20-year-old adults from purchasing or possessing a firearm. *See also* Pl. 32-39, 49-84, and 86-100; and Plaintiffs' Opp. (ECF 139 at 17-18).

### B. *Heller*, *Bruen*, *Duarte*, and *Fouts* Set Clear Limits On What Historical Evidence Matters.

Defendants state that Plaintiffs' application of the *Bruen* analysis is "a laundry list" of laws that "they believe" the Court must disregard in reviewing the government's historical evidentiary showing. ECF 140 at 23. Not so. Plaintiffs' historical application is based not on their "beliefs" but rather the explicit limitations in *Heller*, *Bruen*, *Duarte*, and *Fouts*. *Bruen* noted that "not all history is created equal. 'Constitutional rights are enshrined with the scope they were understood to have *when the people adopted them*.' […] The Second Amendment was adopted in

1791; the Fourteenth in 1868." *Id.* at 34 (citing *Heller*, 554 U.S. at 634-35 (emphasis original). The *Bruen* Court further cautioned against "giving post enactment history more weight than it can rightly bear." 597 U.S. at 35; *see also Fouts*, at *3-5; *Duarte*, at *13-14. And "to the extent later history contradicts what the text says, the text controls." *Bruen*, 597 U.S. at 36 (citation omitted). Thus, "post-ratification adoption or acceptance of laws that are *inconsistent* with the original meaning of the constitutional text obviously cannot overcome or alter that text." *Id*. (citation omitted). And as recognized in *Heller*, "because post-Civil War discussions of the right to keep and bear arms 'took place 75 years after the ratification of the Second Amendment, they do not provide as much insight into its original meaning as earlier sources.'" 554 U.S. at 614. Importantly, *Bruen* explicitly stated, "we made clear in *Gamble* that *Heller*'s interest in mid-_to_late-19th-century commentary was secondary. *Heller* considered this evidence 'only after surveying what it regarded as a wealth of authority for its reading—including the text of the Second Amendment and state constitutions.'" *Bruen,* 597 U.S. at 37 (citation omitted). The 19th-century evidence was "treated as mere confirmation of what the Court thought had already been established." *Id*.

  **C. Historical "Hunting And Parental Consent" Exemptions Are Not Analogous To The Current Bans.**

  In arguing that "historical analogues with exemptions for hunting arms or parental consent are relevantly similar," Defendants do not dispute key facts. For example, Defendants concede that virtually all of their historical laws "generally leave the 18-to-20-year-old free to purchase shotguns, fowling pieces, hunting rifles, or other long guns, or provide for the purchase, use, loan, or receipt of a firearms from a parent or guardian, or with permission of a parent or guardian."  ECF 140 at 22. Indeed, Defendants admit that most of the restrictions they offer only restricted pistols or "concealable arms." *Id*. at 23. *Bruen* requires asking both "how and why" historical laws infringed on the Second Amendment right, and historical laws can

8

only serve as useful analogues if the modern law is "comparably justified." 597 U.S. at 27-30. Focusing on the "how" these historical statutes were enacted illustrates that they are distinguishable from the present prohibitions. First, under nearly all these statutes, 18-to-20-year-olds were free to purchase long guns without condition or qualification. ECF 134-5, Ex. I, p. 268-307; Ex. J, p. 308-12. And none required any kind of testing, training, or licensing for this age group to purchase long guns—or even pistols. *Id.* Moreover, many of the statutes that prohibited legal minors from purchasing pistols allowed for their sale with parental consent. *Id.*, at p. 268, 269, 2276, 282, 283, 284, 286, 287, 297, 2298, and 300. The government took no part in this consent, nor were these parental consents remotely close to a requirement that any firearm obtained by an 18-to-20-year-old must be obtained through a legal gift from a parent. *Id.* Thus, the "how" in which these prohibitions and restrictions were enforced is distinct from the present bans and cannot be considered analogous.

### D. There Are No Analogues To Any Historical Law Imposing A Training Prerequisite To Purchase Or Acquire Firearms.

Plaintiffs have shown that purchasing firearms falls under the Second Amendment and is presumptively protected (See **Section D** above; ECF 136-1 at 10). Thus, Defendants bear the heavy burden to justify their regulation through analogous historical regulation, which they have failed to do. Defendants claim they don't need to provide a historical analogue for their hunting license requirement for 18-to-20-year-olds but rely on parent consent. ECF 140 at 23-24. *Heller* and *Bruen* demand more specific analogues. Historical laws often allowed 18-to-20-year-olds to buy pistols with parental consent, sometimes needing only a signed note. Further, they could purchase long guns without supervision. The current requirement for a hunting license, involving courses and tests, is vastly different from these simple consent provisions.

Defendants also reference a 1925 West Virginia concealed carry permit law and a 1933 Hawaii permit-to-purchase law. ECF 140 at 24. However, both *Heller* and

*Bruen* dismissed 20th-century evidence. There are *no* training or licensing prerequisites for purchasing firearms from the Founding era through the 19th century.

Defendants' reliance on militia laws for "training requirements" is misplaced. Militia statutes *required* individuals to bring their own arms, implying they already owned firearms. While some militia statutes had training requirements, these did not apply to firearm purchases. Additionally, many militia statutes exempted those under 21 from training unless needed in emergencies. No historical training prerequisites for purchasing firearms existed for any age group from the Founding era through the 19th century.

### E. College Rules Are Irrelevant.

Defendants implicitly concede that college rules only affected approximately 1% of the population starting in 1860—and even less before 1860. ECF 140 at 30. They concede that no municipal and state laws or regulations existed that imposed any kind of firearm age restrictions in the state's where these colleges and universities were located. *Id*. And they concede the college rules applied to *all students regardless of age*. *Id*. Yet, they still claim these college rules "show that Founding-Era and Reconstruction-Era policymakers and legislators considered 18-20-year-olds … to be subject to *in loco parentis*…underscoring the notion "access to…weapons occurred in supervised situations." *Id*. **First**, Defendants' reliance on college rules should be rejected for all the reasons cited by Plaintiffs (see ECF 139 at 21-23); and **second**, the court in *Worth*, 666 F.Supp.3d at 921-923, rejected the government's reliance on the *same or similar* college rules to justify a current law barring 18-to-20-year-olds from obtaining handgun public carry permits. *Id*. at 922-923.

**In closing**, and based on the foregoing, Plaintiffs request that this Court deny Defendants' motion, grant Plaintiffs' motion, and order Penal Code section 27510 unconstitutional and permanently enjoin its enforcement.

| | |
|---|---|
| May 20, 2024 | Respectfully submitted, |
| | DILLON LAW GROUP APC |
| | Attorneys for Plaintiffs |
| | By:  */s/ John W. Dillon* |
| | John W. Dillon |